PAUL J. ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation, | Case No.: |
| Plaintiff, | **COMPLAINT FOR PATENT INFRINGEMENT** |
| v. | |
| BLUE COAT SYSTEMS, INC., a Delaware Corporation, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

1

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Finjan, Inc. ("Finjan") files this Complaint for Patent Infringement and Jury Demand against Defendant Blue Coat Systems, Inc. ("Defendant" or "Blue Coat") and alleges as follows:

## THE PARTIES

1.     Finjan is a Delaware corporation, with its corporate headquarters at 1313 N. Market Street, Suite 5100, Wilmington, Delaware 19801.  Finjan's U.S. operating business was previously headquartered at 2025 Gateway Place, San Jose, California 95110.

2.     Blue Coat is a Delaware corporation with its principal place of business at 420 North Mary Avenue, Sunnyvale, California 94085.

## JURISDICTION AND VENUE

3.     This action arises under the Patent Act, 35 U.S.C. § 101 *et seq*.  This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1338.

4.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b).

5.     This Court has personal jurisdiction over Defendant.  Upon information and belief, Defendant does business in this District and has, and continues to, infringe and/or induce the infringement in this District.  Defendant also markets its products primarily in and from this District. In addition, the Court has personal jurisdiction over Defendant because it has established minimum contacts with the forum and the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

## INTRADISTRICT ASSIGNMENT

6.     Pursuant to Local Rule 3-2(c), Intellectual Property Actions are assigned on a district-wide basis.

1

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

## **FINJAN'S INNOVATIONS**

7.     Finjan was founded in 1997 as a wholly-owned subsidiary of Finjan Software Ltd., an Israeli corporation.  Finjan was a pioneer in the developing proactive security technologies capable of detecting previously unknown and emerging online security threats recognized today under the umbrella of "malware."  These technologies protect networks and endpoints by identifying suspicious patterns and behaviors of content delivered over the Internet.  Finjan has been awarded, and continues to prosecute, numerous patents in the United States and around the world resulting directly from Finjan's more than decade-long research and development efforts, supported by a dozen inventors.

8.     Finjan built and sold software, including APIs, and appliances for network security using these patented technologies.  These products and customers continue to be supported by Finjan's licensing partners.  At its height, Finjan employed nearly 150 employees around the world building and selling security products and operating the Malicious Code Research Center through which it frequently published research regarding network security and current threats on the Internet. Finjan's pioneering approach to online security drew equity investments from two major software and technology companies, the first in 2005, followed by the second in 2006.  Through 2009, Finjan has generated millions of dollars in product sales and related services and support revenues

9.     Finjan's founder and original investors are still involved with and invested in the company today, as are a number of other key executives and advisors.  Currently, Finjan is a technology company applying its research, development, knowledge and experience with security technologies to working with inventors, investing in and/or acquiring other technology companies, investing in a variety of research organizations, and evaluating strategic partnerships with large companies.

2

10.     On October 12, 2004, U.S. Patent No. 6,804,780 ("the '780 Patent"), entitled SYSTEM AND METHOD FOR PROTECTING A COMPUTER AND A NETWORK FROM HOSTILE DOWNLOADABLES, was issued to Shlomo Touboul.  A true and correct copy of the '780 Patent is attached to this Complaint as Exhibit A and is incorporated by reference herein.

11.     All rights, title, and interest in the '780 Patent have been assigned to Finjan, who is the sole owner of the '780 Patent.  Finjan has been the sole owner of the '780 Patent since its issuance.

12.     The '780 Patent is generally directed towards methods and systems for generating a Downloadable ID.  By generating an identification for each examined Downloadable, the system allows the Downloadable to be recognized without reevaluation.  Such recognition increases efficiency while also saving valuable resources, such as memory and computing power.

13.     On June 6, 2006, U.S. Patent No. 7,058,822 ("the '822 Patent"), entitled MALICIOUS MOBILE CODE RUNTIME MONITORING SYSTEM AND METHODS, was issued to Yigal Mordechai Edery, Nimrod Itzhak Vered, David R. Kroll and Shlomo Touboul.  A true and correct copy of the '822 Patent is attached to this Complaint as Exhibit B and is incorporated by reference herein.

14.     All rights, title, and interest in the '822 Patent have been assigned to Finjan, who is the sole owner of the '822 Patent.  Finjan has been the sole owner of the '822 Patent since its issuance.

15.     The '822 Patent is generally directed towards computer networks and more particularly provides a system that protects devices connected to the Internet from undesirable operations from web-based content.  One of the ways this is accomplished is by determining whether any part of such web-based content can be executed and then trapping such content and neutralizing possible harmful effects using mobile protection code.  Additionally, the system provides a way to analyze such web-content to determine whether it can be executed.

3

16.     On January 12, 2010, U.S. Patent No. 7,647,633 ("the '633 Patent"), entitled MALICIOUS MOBILE CODE RUNTIME MONITORING SYSTEM AND METHODS, was issued to Yigal Mordechai Edery, Nimrod Itzhak Vered, David R. Kroll and Shlomo Touboul.  A true and correct copy of the '633 Patent is attached to this Complaint as Exhibit C and is incorporated by reference herein.

17.     All rights, title, and interest in the '633 Patent have been assigned to Finjan, who is the sole owner of the '633 Patent.  Finjan has been the sole owner of the '633 Patent since its issuance.

18.     The '633 Patent is generally directed towards computer networks, and more particularly, provides a system that protects devices connected to the Internet from undesirable operations from web-based content.  One of the ways this is accomplished is by determining whether any part of such web-based content can be executed and then trapping such content and neutralizing possible harmful effects using mobile protection code.

19.     On November 28, 2000, U.S. Patent No. 6,154,844 ("the '844 Patent"), entitled SYSTEM AND METHOD FOR ATTACHING A DOWNLOADABLE SECURITY PROFILE TO A DOWNLOADABLE, was issued to Shlomo Touboul and Nachshon Gal.  A true and correct copy of the '844 Patent is attached to this Complaint as Exhibit D and is incorporated by reference herein.

20.     All rights, title, and interest in the '844 Patent have been assigned to Finjan, who is the sole owner of the '844 Patent.  Finjan has been the sole owner of the '844 Patent since its issuance.

21.     The '844 Patent is generally directed towards computer networks, and more particularly, provides a system that protects devices connected to the Internet from undesirable operations from web-based content.  One of the ways this is accomplished is by linking a security profile to such web-based content to facilitate the protection of computers and networks from malicious web-based content.

4

22.     On November 15, 2005, U.S. Patent No. 6,965,968 ("the '968 Patent"), entitled POLICY-BASED CACHING, was issued to Shlomo Touboul.  A true and correct copy of the '968 Patent is attached to this Complaint as Exhibit E and is incorporated by reference herein.

23.     All rights, title, and interest in the '968 Patent have been assigned to Finjan, who is the sole owner of the '968 Patent.  Finjan has been the sole owner of the '968 Patent since its issuance.

24.     The '968 Patent is generally directed towards methods and systems for enabling policy-based cache management to determine if digital content is allowable relative to a policy.  One of the ways this is accomplished is scanning digital content to derive a content profile and determining whether the digital content is allowable for a policy based on the content profile.

25.     On August 26, 2008, U.S. Patent No. 7,418,731 ("the '731 Patent"), entitled METHOD AND SYSTEM FOR CACHING AT SECURE GATEWAYS, was issued to Shlomo Touboul.  A trued and correct copy of the '731 Patent is attached to this Complaint as Exhibit F and is incorporated by reference herein.

26.     All rights, title, and interest in the '731 Patent have been assigned to Finjan, who is the sole owner of the '731 Patent.  Finjan has been the sole owner of the '731 Patent since its issuance.

27.     The '731 Patent is generally directed towards methods and systems for enabling policy-based cache management to determine if digital content is allowable relative to a policy.  One of the ways this is accomplished is scanning digital content to derive a content profile, including at least one computer command the content would perform, and determining whether the digital content is allowable for a policy based on the content profile.

5

**BLUE COAT**

28.     Blue Coat makes, uses, sells, offers for sale, and/or imports into the United States and this District its ProxySG Appliances and Software, ProxyAV Appliances and Software and the WebPulse Cloud Service, shown below:



http://www.bluecoat.com/documents/download/d84549c4-05f3-4c64-920c-f48cdccad4ae/4e23e1a8-b292-4aff-9271-e2431918dc0f at 2 (attached as Exhibit G).

29.     The Blue Coat ProxySG Appliances and Software are a family of proxy appliances and software placed at the Internet gateway to provide security with respect to Web-based communications and support security, acceleration and policy control features of the appliance.  *See* http://www.sec.gov/Archives/edgar/data/1095600/000119312511161263/d10k.htm at 8 (attached as Exhibit H).  The ProxySG Appliances and Software include the ProxySG 300, ProxySG 600, ProxySG 900, PrxySG 9000, ProxySG software and Secure Web Gateway Virtual Appliance.  *See*

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

http://www.bluecoat.com/products/proxysg (attached as Exhibit I); *see also*

bcs_ds_SWG_VA_EN_v2a.pdf, at 1 (attached as Exhibit J).

30.     The Blue Coat ProxySG Appliances and Software enforce network policy utilizing the Blue Coat Content Policy Language ("CPL") that evaluates every Web request.  The Blue Coat ProxySG implements policy layers by selecting and customizing policy.  In this way, CPL is used to scan HTML and ASX files for active content and remove it or replace it with a customized message indicating a policy violation.  *See* Content_Policy_Language_Reference_Guide.c.pdf at 17-18, 476 (attached as Exhibit K).  CPL is also used to detect and remove executables with hidden file types. *See* Preventing_Malware_with_Blue_Coat_Proxies 2.pdf at 3-4 (attached as Exhibit L).

31.     The Blue Coat ProxySG Appliances and Software replace active content such as Script Tags, JavaScript Entities, JavaScript Strings, JavaScript Events, Embed Tags and Object Tags.  *See* SGOS_6.3.x_Visual_Policy_Manager_Reference.d.pdf at Ch. 4, 201-03 (attached as Exhibit M).

32.     CPL includes the "define active_content" rule for removing or replacing active content in HTML or ASX documents.  This definition is invoked by a transform action in a define action definition block, and that block in turn enables an action as a result of policy evaluation.  *See* Content_Policy_Language_Reference_Guide.c.pdf at 476 (attached as Exhibit N).

33.     The Blue Coat ProxySG Appliances and Software are able to cache an object each time a request is received and check its object store for a cached copy. Preventing_Malware_with_Blue_Coat_Proxies.pdf at 7 (attached as Exhibit K).

34.     The Blue Coat ProxyAV Appliances and Software are designed for use with ProxySG Appliances and Software and provide inline threat protection and malware scanning of Web content at the Internet gateway.  The ProxyAV Appliances and Software work in conjunction with BlueCoat WebPulse and WebFilter to prevent entry of viruses, Trojans, worms and other forms of malicious

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

content into the end user's network.  *See*

http://www.sec.gov/Archives/edgar/data/1095600/000119312511161263/d10k.htm at 9 (attached as

Exhibit H).  The ProxyAV Appliances and Software include the ProxyAV 510, ProxyAV 1200,

ProxyAV 1400, ProxyAV 2400 and ProxyAV software.  *See*

http://www.bluecoat.com/products/proxyav (attached as Exhibit O).

35.     The Blue Coat ProxyAV Appliances and Software scan objects such as webpages and

create a secure hash fingerprint of the file's content and compare its contents to a database of hashes

from previously scanned objects.  *See*

Integrating_the_ProxySG_and_ProxyAV_Appliances_(SGOS_5.4).e.pdf at 14 (attached as Exhibit

P).

36.     The Blue Coat WebPulse service is a cloud-based infrastructure utilizing multiple

technologies to analyze URL requests and can be used with the ProxySG Appliances and Software,

ProxyAV Appliances and Software, Blue Coat WebThreat Blade, Blue Coat WebFilter and Blue Coat

Web Security Service.  WebPulse includes Dynamic Real-Time Rating ("DRTR") to analyze

unknown content in real-time.  DRTR looks for characteristics of the content that may indicate

danger.  Access to suspicious content triggers a response from the real-time malware detection

modules indicating a category for the content to be blocked immediately.  *See*

Bcs_WebPulse_Tech_Overview_wp_v1b.pdf at 7-8 (attached as Exhibit Q); *see also*

bcs_ds_Web_Security_Service_EN_v5a.pdf at 1 (attached as Exhibit R).

**BLUE COAT'S INFRIGEMENT OF FINJAN'S PATENTS**

37.     Defendant has been and is now infringing the '780 Patent, the '822 Patent, the '633

Patent, the '844 Patent, the '968 Patent and the '731 Patent (collectively "the Patents-In-Suit") in this

judicial District, and elsewhere in the United States by, among other things, making, using,

8

importing, selling, and/or offering for sale the claimed system and methods on the Blue Coat ProxySG Appliances and Software, ProxyAV Appliances and Software and WebPulse.

38.     In addition to directly infringing the Patents-In-Suit pursuant to 35 U.S.C. § 271(a) either literally or under the doctrine of equivalents, Defendant indirectly infringes the Patents-In-Suit pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including its users and developers, to perform all or some of the steps of the method claims, either literally or under the doctrine of equivalents, of the Patents-In-Suit.

39.     In addition to directly infringing the '822 Patent and '633 Patent pursuant to 35 U.S.C. § 271(a) either literally or under the doctrine of equivalents, Defendant indirectly infringes the '822 Patent and the '633 Patent pursuant to 35 U.S.C. § 271(c) by selling a material component of a patented machine or apparatus for use in practicing the claims of the '822 Patent and '633 Patent, either literally or under the doctrine of equivalents, by its customers, users and developers, and especially adapted for use in an infringement of the '822 Patent and '633 Patent.

## COUNT I
### (Direct Infringement of the '780 Patent pursuant to 35 U.S.C. § 271(a))

40.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

41.     Defendant has infringed and continues to infringe one or more claims of the '780 Patent in violation of 35 U.S.C. § 271(a).

42.     Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

43.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

9

44.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including, but not limited to, the ProxyAV Appliances and Software, which embody the patented invention of the '780 Patent.

45.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

46.     Defendant's infringement of the '780 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

**COUNT II**
**(Indirect Infringement of the '780 Patent pursuant to 35 U.S.C. § 271(b))**

47.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

48.     Defendant has induced and continues to induce infringement of at least claims 1-8 and 16 of the '780 Patent under 35 U.S.C. § 271(b).

49.     In addition to directly infringing the '780 Patent, Defendant indirectly infringes the '780 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including, but not limited to, its customers, users and developers, to perform all or some of the steps of the method claims, either literally or under the doctrine of equivalents, of the '780 Patent, where all the steps of the method claims are performed by either Blue Coat or its customers, users or developers, or some combination thereof.  Defendant knew or was willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more method claims of the '780 Patent.

50.     Defendant knowingly and actively aided and abetted the direct infringement of the '780 Patent by instructing and encouraging its customers, users and developers to use the Blue Coat

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

ProxyAV Appliances and Software.  Such instructions and encouragement include, but are not limited to, advising third parties to use the Blue Coat ProxyAV Appliances and Software in an infringing manner, providing a mechanism through which third parties may infringe the '780 Patent, specifically through the use of the Blue Coat ProxyAV Appliances and Software, advertising and promoting the use of the Blue Coat ProxyAV Appliances and Software in an infringing manner, and distributing guidelines and instructions to third parties on how to use the Blue Coat ProxyAV Appliances and Software in an infringing manner.

51.     Blue Coat regularly updates and maintains the Blue Coat website (http://www.bluecoat.com) and the BlueTouch Online website (https://bto.bluecoat.com and https://kb.bluecoat.com) to provide demonstration, instruction, and technical assistance to users to help them use the Blue Coat ProxyAV Appliances and Software, including:

- Blue Coat® Systems ProxyAV® Appliance: Configuration and Management Guide (*see e.g.,* http://bto.bluecoat.com/doc/19366, attached as Exhibit S, directs users in the use and management of the Blue Coat ProxyAV Appliances and states that "it is vital to dedicate more attention to securing Web traffic.");

- Blue Coat ProxyAV 1200/1400/2400 Datasheet (*see e.g.,* bcs_ds_proxyav_1200_1400_2400_EN-v7a.pdf, attached as Exhibit T, states that "ProxyAV appliances also provide in-line threat protection and malware scanning of web content at the gateway.");

- Security Empowers Business (*see e.g.,* bcs_wp_Security_Empowers_Business_EN_2.3.pdf, attached as Exhibit U, states that "Implemented and used properly, security is about empowerment.  It's about boosting efficiency, driving productivity, accelerating innovation, increasing collaboration, optimizing user experiences, and expanding the awesome power of technology");

- Unified Web Security Solutions (*see e.g.,* bcs_wp_Unified_Security_EN_v2b.pdf, attached as Exhibit V, states that "IT and security professionals must be able to manage and enforce consistent policies throughout the entire work force").

52.     Blue Coat instructs users, including employees, to use and test the ProxyAV Appliances and Software.  For example, Blue Coat has the BlueTouch Training Services that provide a technical expert to assist users in installing, configuring, and troubleshooting Blue Coat products.

11

Blue Coat has training centers with courses and certification related to the Blue Coat products.  *See* http://www.bluecoat.com/support/training/bluetouch-training-services (attached as Exhibit W).

53.     Blue Coat provides value added resellers, system integrators and distributors with the Blue Coat Channel Advantage Program to encourage and expand use of the Blue Coat ProxyAV Appliances and Software.  The Blue Coat Channel Advantage Program offers "compelling top- and bottom-line growth opportunities to Blue Coat partners."  The Blue Coat Channel Advantage Program also offers several partner level tiers to further encourage and expand the use of the Blue Coat ProxyAV Appliances and Software.  *See* http://www.bluecoat.com/partners/channel-advantage-program (attached as Exhibit X).

54.     Blue Coat regularly updates and maintains the Blue Coat website and BlueTouch Online to provide demonstration, instruction, and technical assistance to users to help them use the Blue Coat ProxyAV Appliances and Software.  (http://bluecoat.com/support/technical-support, https://bto.bluecoat.com/ and https://kb.bluecoat.com).

55.     Defendant has had knowledge of the '780 Patent at least as of the time it learned of this action for infringement and, by continuing the actions described above, has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '780 Patent.

56.     Blue Coat actively and intentionally maintains its website to promote the Blue Coat ProxyAV Appliances and Software and to encourage potential customers, users and developers to use the Blue Coat ProxyAV Appliances and Software in the manner described by Finjan. (http://bluecoat.com/support/technical-support, https://bto.bluecoat.com/ and https://kb.bluecoat.com).

57.     Blue Coat actively updates its websites, including Blue Coat's BlueTouch Online information center, to promote the Blue Coat ProxyAV Appliances and Software, including the

Content Policy Language, to encourage customers, users and developers to practice the methods taught in the '780 Patent.  (http://bluecoat.com/support/technical-support, https://bto.bluecoat.com and https://kb.bluecoat.com).

### COUNT III
### (Direct Infringement of the '822 Patent pursuant to 35 U.S.C. § 271(a))

58.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

59.     Defendant has infringed and continues to infringe one or more claims of the '822 Patent in violation of 35 U.S.C. § 271(a).

60.     Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

61.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

62.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to the ProxySG Appliances and Software, which embody the patented invention of the '822 Patent.

63.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

64.     Defendant's infringement of the '822 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

### COUNT IV
### (Indirect Infringement of the '822 Patent pursuant to 35 U.S.C. §§ 271(b)-(c))

65.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

66. Defendant has induced and continues to induce infringement of at least claims 1, 4, 6 and 8 of the '822 Patent under 35 U.S.C. § 271(b).

67. In addition to directly infringing the '822 Patent, Defendant indirectly infringes the '822 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to its customers, users and developers, to perform all or some of the steps of the method claims, either literally or under the doctrine of equivalents, of the '822 Patent, where all the steps of the method claims are performed by either Blue Coat or its customers, users or developers, or some combinations thereof. Defendant knew or was willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more method claims of the '822 Patent.

68. Defendant has contributorily infringed and continues to contributorily infringe at least claims 1, 2, 4, 9, 10, 12, 15, 28, 31, 33, 34 and 35 of the '822 Patent under 35 U.S.C. § 271(c).

69. In addition to directly infringing the '822 Patent, Defendant indirectly infringes the '822 Patent pursuant to 35 U.S.C. § 271(c) by selling the ProxySG Appliances and Software, a material component of a patented machine or apparatus for use in practicing the claims of the '822 Patent by its customers, users and developers, and especially adapted for use in an infringement of the '822 Patent. The ProxySG Appliances and Software are not a staple article or commodity of commerce suitable for substantial non-infringing use. Defendant knew or was willfully blind to the fact that it contributed to the direct infringement of one or more claims of the '822 Patent by others, either literally or under the doctrine of equivalents, including customers, users and developers.

70. Defendant knowingly and actively aided and abetted the direct infringement of the '822 Patent by instructing and encouraging its customers, users and developers to use the Blue Coat ProxySG Appliance and Software. Such instructions and encouragement include, but are not limited

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

to, advising third parties to use the Blue Coat ProxySG Appliances and Software in an infringing manner; providing a mechanism through which third parties may infringe the '822 Patent, specifically through the use of the Blue Coat ProxySG Appliances and Software, advertising and promoting the use of the Blue Coat ProxySG Appliances and Software in an infringing manner, and distributing guidelines and instructions to third parties on how to use the Blue Coat ProxySG Appliances and Software in an infringing manner.

71.     Blue Coat regularly updates and maintains the Blue Coat website (http://www.bluecoat.com) and the BlueTouch Online website (https://bto.bluecoat.com and https://kb.bluecoat.com) to provide demonstration, instruction, and technical assistance to users to help them use the Blue Coat ProxySG Appliances and Software, including:

- Blue Coat® Systems ProxySG® Appliance Content Policy Language Reference (*see e.g.*, https://bto.bluecoat.com/doc/19587, attached as Exhibit K, directs the user in the use and syntax of CPL, stating that "[t]he Blue Coat® Content Policy Language (CPL) is a programming language with its own concepts and rules that you must follow.");

- Blue Coat® Systems SGOS Administration Guide (*see e.g.*, https://bto.bluecoat.com/doc/19615, attached as Exhibit Y, states that it "provides procedures for accessing the ProxySG so that you can perform administrative tasks using the Management Console and/or the command-line interface.");

- Web Application Policy Engine – Solution Brief (*see e.g.*, bcs_sb_Web_Action_Controls_EN_v3a.pdf, attached as Exhibit Z, states that "your organization needs the ability to identify, monitor, report on, and implement granular controls over web-based applications.");

- Security Empowers Business (*see e.g.*, bcs_wp_Security_Empowers_Business_EN_2.3.pdf, attached as Exhibit U, states that "Implemented and used properly, security is about empowerment.  It's about boosting efficiency, driving productivity, accelerating innovation, increasing collaboration, optimizing user experiences, and expanding the awesome power of technology");

- Unified Web Security Solutions (*see e.g.*, bcs_wp_Unified_Security_EN_v2b.pdf, attached as Exhibit V, states that "IT and security professionals must be able to manage and enforce consistent policies throughout the entire work force").

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

72.     Blue Coat instructs users, including employees, to use and test the ProxySG Appliances and Software.  For example, Blue Coat has the BlueTouch Training Services that provides a technical expert to assist users in installing, configuring, and troubleshooting Blue Coat products.  Blue Coat has training centers with courses and certification related to the Blue Coat products.  *See* http://www.bluecoat.com/support/training/bluetouch-training-services (attached as Exhibit W).

73.     Blue Coat provides value added resellers, system integrators and distributors with the Blue Coat Channel Advantage Program to encourage and expand use of the Blue Coat ProxySG Appliances and Software.  The Blue Coat Channel Advantage Program offers "compelling top- and bottom-line growth opportunities to Blue Coat partners."  The Blue Coat Channel Advantage Program also offers several partner level tiers to further encourage and expand the use of the Blue Coat ProxySG Appliances and Software.  *See* http://www.bluecoat.com/partners/channel-advantage-program (attached as Exhibit X).

74.     Blue Coat regularly updates and maintains the Blue Coat website and BlueTouch Online to provide demonstration, instruction, and technical assistance to users to help them use the Blue Coat ProxySG Appliances and Software.  (http://bluecoat.com/support/technical-support, https://bto.bluecoat.com/ and https://kb.bluecoat.com).

75.     Defendant has had knowledge of the '822 Patent at least as of the time it learned of this action for infringement and, by continuing the actions described above, has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '822 Patent.

76.     Blue Coat actively and intentionally maintains its website to promote the Blue Coat ProxySG Appliances and Software and to encourage potential customers, users and developers to use the Blue Coat ProxySG Appliances and Software in the manner described by Finjan.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

(http://bluecoat.com/support/technical-support, https://bto.bluecoat.com/ and

https://kb.bluecoat.com).

77.     Blue Coat actively updates its websites, including Blue Coat's BlueTouch Online

information center, to promote the Blue Coat ProxySG Appliances and Software, including the

Content Policy Language, to encourage customers, users and developers to practice the methods

taught in the '822 Patent.  (http://bluecoat.com/support/technical-support, https://bto.bluecoat.com/

and https://kb.bluecoat.com).

## COUNT V
### (Direct Infringement of the '633 Patent pursuant to 35 U.S.C. § 271(a))

78.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the

allegations of the preceding paragraphs, as set forth above.

79.     Defendant has infringed and continues to infringe one or more claims of the '633

Patent in violation of 35 U.S.C. § 271(a).

80.     Defendant's infringement is based upon literal infringement or, in the alternative,

infringement under the doctrine of equivalents.

81.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing

products and services have been without the permission, consent, authorization or license of Finjan.

82.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale,

importation and/or offer for sale of Defendant's products and services, including but not limited to

the ProxySG Appliances and Software, which embody the patented invention of the '633 Patent.

83.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to

suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled

to preliminary and/or permanent injunctive relief.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

84.     Defendant's infringement of the '633 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

## COUNT VI
### (Indirect Infringement of the '633 Patent pursuant to 35 U.S.C. §§ 271(b)-(c))

85.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

86.     Defendant has induced and continues to induce infringement of at least claims 1-7 and 28 of the '633 Patent under 35 U.S.C. § 271(b).

87.     In addition to directly infringing the '633 Patent, Defendant indirectly infringes the '633 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to its customers, users and developers, to perform all or some of the steps of the method claims, either literally or under the doctrine of equivalents, of the '633 Patent, where all the steps of the method claims are performed by either Blue Coat or its customers, users or developers, or some combinations thereof.  Defendant knew or was willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more method claims of the '633 Patent.

88.     Defendant has contributorily infringed and continues to contributorily infringe at least claims 8, 9, 10, 11 and 13 of the '633 Patent under 35 U.S.C. § 271(c).

89.     In addition to directly infringing the '633 Patent, Defendant indirectly infringes the '633 Patent pursuant to 35 U.S.C. § 271(c) by selling the ProxySG Appliances and Software, a material component of a patented machine or apparatus for use in practicing the claims of the '633 Patent by its customers, users and developers, and especially adapted for use in an infringement of the '633 Patent.  The ProxySG Appliances and Software is not a staple article or commodity of commerce suitable for substantial non-infringing use.  Defendant knew or was willfully blind to the

18

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

fact that it was contributed to the direct infringement of the '633 Patent by others, either literally or under the doctrine of equivalents, including customers, users and developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more claims of the '633 Patent.

90.     Defendant knowingly and actively aided and abetted the direct infringement of the '633 Patent by instructing and encouraging its customers, users and developers to use the Blue Coat ProxySG Appliance and Software.  Such instructions and encouragement include, but are not limited to, advising third parties to use the Blue Coat ProxySG Appliances and Software in an infringing manner; providing a mechanism through which third parties may infringe the '633 Patent, specifically through the use of the Blue Coat ProxySG Appliances and Software, advertising and promoting the use of the Blue Coat ProxySG Appliances and Software in an infringing manner and distributing guidelines and instructions to third parties on how to use the Blue Coat ProxySG Appliances and Software in an infringing manner.

91.     Blue Coat regularly updates and maintains the Blue Coat website (http://www.bluecoat.com) and the BlueTouch Online website (https://bto.bluecoat.com and https://kb.bluecoat.com) to provide demonstration, instruction, and technical assistance to users to help them use the Blue Coat ProxySG Appliances and Software, including:

- Blue Coat® Systems ProxySG® Appliance Content Policy Language Reference (*see e.g.*, https://bto.bluecoat.com/doc/19587, attached as Exhibit K, directs the user in the use and syntax of CPL, stating that "[t]he Blue Coat® Content Policy Language (CPL) is a programming language with its own concepts and rules that you must follow.");

- Blue Coat® Systems SGOS Administration Guide (*see e.g.*, https://bto.bluecoat.com/doc/19615, attached as Exhibit Y, states that it "provides procedures for accessing the ProxySG so that you can perform administrative tasks using the Management Console and/or the command-line interface.");

- Web Application Policy Engine – Solution Brief (*see e.g.*, bcs_sb_Web_Action_Controls_EN_v3a.pdf, attached as Exhibit Z, states that "your organization needs the ability to identify, monitor, report on, and implement granular controls over web-based applications.");

19

- Security Empowers Business (*see e.g.*, bcs_wp_Security_Empowers_Business_EN_2.3.pdf, attached as Exhibit U, states that "Implemented and used properly, security is about empowerment.  It's about boosting efficiency, driving productivity, accelerating innovation, increasing collaboration, optimizing user experiences, and expanding the awesome power of technology");

- Unified Web Security Solutions (*see e.g.*, bcs_wp_Unified_Security_EN_v2b.pdf, attached as Exhibit V, states that "IT and security professionals must be able to manage and enforce consistent policies throughout the entire work force").

92.    Blue Coat instructs users, including employees, to use and test the ProxySG Appliances and Software.  For example, Blue Coat has the BlueTouch Training Services that provides a technical expert to assist users in installing, configuring, and troubleshooting Blue Coat products.  Blue Coat has training centers with courses and certification related to the Blue Coat products.  *See* http://www.bluecoat.com/support/training/bluetouch-training-services (attached as Exhibit W).

93.    Blue Coat provides value added resellers, system integrators and distributors with the Blue Coat Channel Advantage Program to encourage and expand use of the Blue Coat ProxySG Appliances and Software.  The Blue Coat Channel Advantage Program offers "compelling top- and bottom-line growth opportunities to Blue Coat partners."  The Blue Coat Channel Advantage Program also offers several partner level tiers to further encourage and expand the use of the Blue Coat ProxySG Appliances and Software.  *See* http://www.bluecoat.com/partners/channel-advantage-program (attached as Exhibit X).

94.    Blue Coat regularly updates and maintains the Blue Coat website and BlueTouch Online to provide demonstration, instruction, and technical assistance to users to help them use the Blue Coat ProxySG Appliances and Software.  (http://bluecoat.com/support/technical-support, https://bto.bluecoat.com/ and https://kb.bluecoat.com).

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

95.     Defendant has had knowledge of the '633 Patent at least as of the time it learned of this action for infringement and, by continuing the actions described above, has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '633 Patent.

96.     Blue Coat actively and intentionally maintains its website to promote the Blue Coat ProxySG Appliances and Software and to encourage potential customers, users and developers to use the Blue Coat ProxySG Appliances and Software in the manner described by Finjan. (http://bluecoat.com/support/technical-support, https://bto.bluecoat.com/ and https://kb.bluecoat.com).

97.     Blue Coat actively updates its websites, including Blue Coat's BlueTouch Online information center, to promote the Blue Coat ProxySG Appliances and Software, including the Content Policy Language, to encourage customers, users and developers to practice the methods taught in the '633 Patent.  (http://bluecoat.com/support/technical-support, https://bto.bluecoat.com and https://kb.bluecoat.com).

### COUNT VII
**(Direct Infringement of the '844 Patent pursuant to 35 U.S.C. § 271(a))**

98.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

99.     Defendant has infringed and continues to infringe one or more claims of the '844 Patent in violation of 35 U.S.C. § 271(a).

100.    Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

101.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

21

102.    Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to the Blue Coat WebPulse Service, which embodies the patented invention of the '844 Patent.

103.    As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

104.    Defendant's infringement of the '844 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

## COUNT VIII
### (Indirect Infringement of the '844 Patent pursuant to 35 U.S.C. § 271(b))

105.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

106.    Defendant has induced and continues to induce infringement of at least claims 1, 3-8, 11, 14 and 23-27 of the '844 Patent under 35 U.S.C. § 271(b).

107.    In addition to directly infringing the '844 Patent, Defendant indirectly infringes the '844 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to its customers, users and developers, to perform all or some of the steps of the method claims, either literally or under the doctrine of equivalents, of the '844 Patent, where all the steps of the method claims are performed by either Blue Coat or its customers, users or developers, or some combinations thereof.  Defendant knew or was willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more method claims of the '844 Patent.

108.    Defendant knowingly and actively aided and abetted the direct infringement of the '844 Patent by instructing and encouraging its customers, users and developers to use the Blue Coat

22

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

WebPulse Service.  Such instructions and encouragement include but are not limited to, advising third parties to use the Blue Coat WebPulse Service in an infringing manner, providing a mechanism through which third parties may infringe the '844 Patent, specifically through the use of the Blue Coat WebPulse Service, advertising and promoting the use of the Blue Coat WebPulse Service in an infringing manner and distributing guidelines and instructions to third parties on how to use the Blue Coat WebPulse Service in an infringing manner.

109.    Blue Coat regularly updates and maintains the Blue Coat website (http://www.bluecoat.com) and the BlueTouch Online website (https://bto.bluecoat.com and https://kb.bluecoat.com) to provide demonstration, instruction, and technical assistance to users to help them use the Blue Coat WebPulse Service, including:

- Blue Coat WebPulse > Technical Overview of the WebPulse Collaborative Defense (*see e.g.*, bcs_WebPulse_Tech_Overview_wp_v1b.pdf, attached as Exhibit Q, states that "it is critical that web security solutions provide accurate site ratings, global diverse coverage, and real-time ratings of new URLs.");

- How does Blue Coat WebPulse work with Blue Coat WebFilter? (*see e.g.*, https://kb.bluecoat.com/index?page=content&id=KB3400, attached as Exhibit AA, states that "[c]ustomers that have used DRTR over several years note that it provides a 4-6% higher categorization rate than not using it.");

- Security Empowers Business (*see e.g.*, bcs_wp_Security_Empowers_Business_EN_2.3.pdf, attached as Exhibit U, states that "Implemented and used properly, security is about empowerment.  It's about boosting efficiency, driving productivity, accelerating innovation, increasing collaboration, optimizing user experiences, and expanding the awesome power of technology");

- Unified Web Security Solutions (*see e.g.*, bcs_wp_Unified_Security_EN_v2b.pdf, attached as Exhibit V, states that "IT and security professionals must be able to manage and enforce consistent policies throughout the entire work force").

110.    Blue Coat instructs users, including employees, to use and test the WebPulse Service. For example, Blue Coat has the BlueTouch Training Services that provides a technical expert to assist users in installing, configuring, and troubleshooting Blue Coat products.  Blue Coat has training

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

centers with courses and certification related to the Blue Coat products. *See* http://www.bluecoat.com/support/training/bluetouch-training-services (attached as Exhibit W).

111. Blue Coat provides value added resellers, system integrators and distributors with the Blue Coat Channel Advantage Program to encourage and expand use of the Blue Coat WebPulse Service. The Blue Coat Channel Advantage Program offers "compelling top- and bottom-line growth opportunities to Blue Coat partners." The Blue Coat Channel Advantage Program also offers several partner level tiers to further encourage and expand the use of the Blue Coat WebPulse Service. See http://www.bluecoat.com/partners/channel-advantage-program (attached as Exhibit X).

112. Blue Coat regularly updates and maintains the Blue Coat website and BlueTouch Online to provide demonstration, instruction, and technical assistance to users to help them use the Blue Coat WebPulse Service. (http://bluecoat.com/support/technical-support, https://bto.bluecoat.com/ and https://kb.bluecoat.com).

113. Defendant has had knowledge of the '844 Patent at least as of the time it learned of this action for infringement and by continuing the actions described above has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '844 Patent.

114. Blue Coat actively and intentionally maintains its website to promote the Blue Coat WebPulse Service and to encourage potential customers, users and developers to use the Blue Coat WebPulse Service in the manner described by Finjan. (http://bluecoat.com/support/technical-support, https://bto.bluecoat.com/ and https://kb.bluecoat.com).

115. Blue Coat actively updates its websites, including Blue Coat's BlueTouch Online information center, to promote the Blue Coat WebPulse Service to encourage customers, users and developers to practice the methods taught in the '844 Patent. (http://bluecoat.com/support/technical-support, https://bto.bluecoat.com/ and https://kb.bluecoat.com).

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

**COUNT IX**
**(Direct Infringement of the '968 Patent pursuant to 35 U.S.C. § 271(a))**

116.   Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

117.   Defendant has infringed and continues to infringe one or more claims of the '968 Patent in violation of 35 U.S.C. § 271(a).

118.   Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

119.   Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

120.   Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to, the ProxySG Appliances and Software and WebPulse Service, which embody the patented invention of the '968 Patent.

121.   As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

122.   Defendant's infringement of the '968 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

**COUNT X**
**(Indirect Infringement of the '968 Patent pursuant to 35 U.S.C. § 271(b))**

123.   Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

124.   Defendant has induced and continues to induce infringement of at least claims 13-16, 20-21 and 26 of the '968 Patent under 35 U.S.C. § 271(b).

25

125.    In addition to directly infringing the '968 Patent, Defendant indirectly infringes the '968 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to its customers, users and developers, to perform all or some of the steps of the method claims, either literally or under the doctrine of equivalents, of the '968 Patent, where all the steps of the method claims are performed by either Blue Coat or its customers, users or developers, or some combinations thereof.  Defendant knew or was willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more method claims of the '968 Patent.

126.    Defendant knowingly and actively aided and abetted the direct infringement of the '968 Patent by instructing and encouraging its customers, users and developers to use the Blue Coat ProxySG Appliance and Software and WebPulse Service.  Such instructions and encouragement include but are not limited to, advising third parties to use the Blue Coat ProxySG Appliances and Software and WebPulse Service in an infringing manner, providing a mechanism through which third parties may infringe the '968 Patent, specifically through the use of the Blue Coat ProxySG Appliances and Software and WebPulse Service, advertising and promoting the use of the Blue Coat ProxySG Appliances and Software and WebPulse Service in an infringing manner and distributing guidelines and instructions to third parties on how to use the Blue Coat ProxySG Appliances and Software and WebPulse Service in an infringing manner.

127.    Blue Coat regularly updates and maintains the Blue Coat website (http://www.bluecoat.com) and the BlueTouch Online website (https://bto.bluecoat.com and https://kb.bluecoat.com) to provide demonstration, instruction, and technical assistance to users to help them use the Blue Coat ProxySG Appliances and Software and WebPulse Service, including:

- Blue Coat® Systems ProxySG® Appliance Content Policy Language Reference (*see e.g.*, https://bto.bluecoat.com/doc/19587, attached as Exhibit K, directs the user in the use and

syntax of CPL, stating that "[t]he Blue Coat® Content Policy Language (CPL) is a programming language with its own concepts and rules that you must follow.");

- Blue Coat® Systems SGOS Administration Guide (*see e.g.*, https://bto.bluecoat.com/doc/19615, attached as Exhibit Y, states that it "provides procedures for accessing the ProxySG so that you can perform administrative tasks using the Management Console and/or the command-line interface.");

- Web Application Policy Engine – Solution Brief (*see e.g.*, bcs_sb_Web_Action_Controls_EN_v3a.pdf, attached as Exhibit Z, states that "your organization needs the ability to identify, monitor, report on, and implement granular controls over web-based applications.");

- Blue Coat WebPulse > Technical Overview of the WebPulse Collaborative Defense (*see e.g.*, bcs_WebPulse_Tech_Overview_wp_v1b.pdf, attached as Exhibit Q, states that "it is critical that web security solutions provide accurate site ratings, global diverse coverage, and real-time ratings of new URLs.");

- How does Blue Coat WebPulse work with Blue Coat WebFilter? (*see e.g.*, https://kb.bluecoat.com/index?page=content&id=KB3400, attached as Exhibit AA, states that "[c]ustomers that have used DRTR over several years not that it provides a 4-6% higher categorization rate than not using it.");

- Security Empowers Business (*see e.g.*, bcs_wp_Security_Empowers_Business_EN_2.3.pdf, attached as Exhibit U, states that "Implemented and used properly, security is about empowerment. It's about boosting efficiency, driving productivity, accelerating innovation, increasing collaboration, optimizing user experiences, and expanding the awesome power of technology");

- Unified Web Security Solutions (*See e.g.*, bcs_wp_Unified_Security_EN_v2b.pdf, attached as Exhibit V, states that "IT and security professionals must be able to manage and enforce consistent policies throughout the entire work force").

128.    Blue Coat instructs users, including employees, to use and test the ProxySG Appliances and Software and WebPulse Service. For example, Blue Coat has the BlueTouch Training Services that provides a technical expert to assist users in installing, configuring, and troubleshooting Blue Coat products. Blue Coat has training centers with courses and certification related to the Blue Coat products. *See* http://www.bluecoat.com/support/training/bluetouch-training-services (attached as Exhibit W).

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

129.    Blue Coat provides value added resellers, system integrators and distributors with the Blue Coat Channel Advantage Program to encourage and expand use of the Blue Coat ProxySG Appliances and Software and WebPulse Service.  The Blue Coat Channel Advantage Program offers "compelling top- and bottom-line growth opportunities to Blue Coat partners."  The Blue Coat Channel Advantage Program also offers several partner level tiers to further encourage and expand the use of the Blue Coat ProxySG Appliances and Software and WebPulse Service. *See* http://www.bluecoat.com/partners/channel-advantage-program (attached as Exhibit X).

130.    Blue Coat regularly updates and maintains the Blue Coat website and BlueTouch Online to provide demonstration, instruction, and technical assistance to users to help them use the Blue Coat ProxySG Appliances and Software and WebPulse Service. (http://bluecoat.com/support/technical-support, https://bto.bluecoat.com/ and https://kb.bluecoat.com).

131.    Defendant has had knowledge of the '968 Patent at least as of the time it learned of this action for infringement and, by continuing the actions described above, has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '968 Patent.

132.    Blue Coat actively and intentionally maintains its website to promote the Blue Coat ProxySG Appliances and Software and WebPulse Service and to encourage potential customers, users and developers to use the Blue Coat ProxySG Appliances and Software and WebPulse Service in the manner described by Finjan.  (http://bluecoat.com/support/technical-support, https://bto.bluecoat.com/ and htpps://kb.bluecoat.com).

133.    Blue Coat actively updates its websites, including Blue Coat's BlueTouch Online information center, to promote the Blue Coat ProxySG Appliances and Software, including the Content Policy Language, and the WebPulse Service to encourage customers, users and developers to

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

practice the methods taught in the '968 Patent.  (http://bluecoat.com/support/technical-support, https://bto.bluecoat.com/ and https://kb.bluecoat.com).

## COUNT XI
### (Direct Infringement of the '731 Patent pursuant to 35 U.S.C. § 271(a))

134.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

135.    Defendant has infringed and continues to infringe one or more claims of the '731 Patent in violation of 35 U.S.C. § 271(a).

136.    Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

137.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

138.    Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to, the Blue Coat ProxySG Appliances and Software, ProxyAV Appliances and Software and WebPulse Service, which embody the patented invention of the '731 Patent.

139.    As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

140.    Defendant's infringement of the '731 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

## COUNT XII
### (Indirect Infringement of the '731 Patent pursuant to 35 U.S.C. § 271(b))

141.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

142.    Defendant has induced and continues to induce infringement of at least claims 7-9, 11, and 14-16 of the '731 Patent under 35 U.S.C. § 271(b).

143.    In addition to directly infringing the '731 Patent, Defendant indirectly infringes the '731 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to, its customers, users and developers, to perform all or some of the steps of the method claims, either literally or under the doctrine of equivalents, of the '731 Patent, where all the steps of the method claims are performed by either Blue Coat or its customers, users or developers, or some combinations thereof.  Defendant knew or was willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more method claims of the '731 Patent.

144.    Defendant knowingly and actively aided and abetted the direct infringement of the '731 Patent by instructing and encouraging its customers, users and developers to use the Blue Coat ProxySG Appliance and Software, Blue Coat ProxyAV Appliance and Software and WebPulse Service.  Such instructions and encouragement include but are not limited to, advising third parties to use the Blue Coat ProxySG Appliances and Software, ProxyAV Appliances and Software and WebPulse Service in an infringing manner, providing a mechanism through which third parties may infringe the '731 Patent, specifically through the use of the Blue Coat ProxySG Appliances and Software, ProxyAV Appliances and Software and WebPulse Service, advertising and promoting the use of the Blue Coat ProxySG Appliances and Software, ProxyAV Appliances and Software and WebPulse Service in an infringing manner, and distributing guidelines and instructions to third parties on how to use the Blue Coat ProxySG Appliances and Software, ProxyAV Appliances and Software and WebPulse Service in an infringing manner.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

145.    Blue Coat regularly updates and maintains the Blue Coat website

(http://www.bluecoat.com) and the BlueTouch Online website (https://bto.bluecoat.com and

https://kb.bluecoat.com) to provide demonstration, instruction, and technical assistance to users to

help them use the Blue Coat ProxySG Appliances and Software, ProxyAV Appliances and Software

and WebPulse Service, including:

- Blue Coat® Systems ProxySG® Appliance Content Policy Language Reference (*see e.g.*, https://bto.bluecoat.com/doc/19587, attached as Exhibit K, directs the user in the use and syntax of CPL, stating that "[t]he Blue Coat® Content Policy Language (CPL) is a programming language with its own concepts and rules that you must follow.");

- Blue Coat® Systems SGOS Administration Guide (*see e.g.*, https://bto.bluecoat.com/doc/19615, attached as Exhibit Y, states that it "provides procedures for accessing the ProxySG so that you can perform administrative tasks using the Management Console and/or the command-line interface.");

- Blue Coat® Systems ProxyAV® Appliance: Configuration and Management Guide (*see e.g.,* http://bto.bluecoat.com/doc/19366, attached as Exhibit S, directs users in the use and management of the Blue Coat ProxyAV Appliances and states that "it is vital to dedicate more attention to securing Web traffic.");

- Blue Coat ProxyAV 1200/1400/2400 Datasheet (*see e.g.,* bcs_ds_proxyav_1200_1400_2400_EN-v7a.pdf, attached as Exhibit T, states that "ProxyAV appliances also provide in-line threat protection and malware scanning of web content at the gateway.");

- Web Application Policy Engine – Solution Brief (*see e.g.,* bcs_sb_Web_Action_Controls_EN_v3a.pdf, attached as Exhibit Z, states that "your organization needs the ability to identify, monitor, report on, and implement granular controls over web-based applications.");

- Blue Coat WebPulse > Technical Overview of the WebPulse Collaborative Defense (*see e.g.*, bcs_WebPulse_Tech_Overview_wp_v1b.pdf, attached as Exhibit Q, states that "it is critical that web security solutions provide accurate site ratings, global diverse coverage, and real-time ratings of new URLs.");

- How does Blue Coat WebPulse work with Blue Coat WebFilter? (*see e.g.*, https://kb.bluecoat.com/index?page=content&id=KB3400, attached as Exhibit AA, states that "[c]ustomers that have used DRTR over several years not that it provides a 4-6% higher categorization rate than not using it.");

- Security Empowers Business (*see e.g.*, bcs_wp_Security_Empowers_Business_EN_2.3.pdf, attached as Exhibit U, states that "Implemented and used properly, security is about

31

empowerment.  It's about boosting efficiency, driving productivity, accelerating innovation, increasing collaboration, optimizing user experiences, and expanding the awesome power of technology");

- Unified Web Security Solutions (*see e.g.*, bcs_wp_Unified_Security_EN_v2b.pdf, attached as Exhibit V, states that "IT and security professionals must be able to manage and enforce consistent policies throughout the entire work force").

146.    Blue Coat instructs users, including employees, to use and test the Blue Coat ProxySG Appliances and Software, ProxyAV Appliances and Software and WebPulse Service.  For example, Blue Coat has the BlueTouch Training Services that provides a technical expert to assist users in installing, configuring, and troubleshooting Blue Coat products.  Blue Coat has training centers with courses and certification related to the Blue Coat products.  *See* http://www.bluecoat.com/support/training/bluetouch-training-services (attached as Exhibit W).

147.    Blue Coat provides value added resellers, system integrators and distributors with the Blue Coat Channel Advantage Program to encourage and expand use of the Blue Coat ProxySG Appliances and Software, ProxyAV Appliances and Software and WebPulse Service.  The Blue Coat Channel Advantage Program offers "compelling top- and bottom-line growth opportunities to Blue Coat partners."  The Blue Coat Channel Advantage Program also offers several partner level tiers to further encourage and expand the use of the Blue Coat ProxySG Appliances and Software, ProxyAV Appliances and Software and WebPulse Service.  *See* http://www.bluecoat.com/partners/channel-advantage-program (attached as Exhibit X).

148.    Blue Coat regularly updates and maintains the Blue Coat website and BlueTouch Online to provide demonstration, instruction, and technical assistance to users to help them use the Blue Coat ProxySG Appliances and Software, ProxyAV Appliances and Software and WebPulse Service.  (http://bluecoat.com/support/technical-support, https://bto.bluecoat.com/ and https://kb.bluecoat.com).

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

149.     Defendant has had knowledge of the '731 Patent at least as of the time it learned of this action for infringement and, by continuing the actions described above, has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '731 Patent.

150.     Blue Coat actively and intentionally maintains its website to promote the Blue Coat ProxySG Appliances and Software, ProxyAV Appliances and Software and WebPulse Service and to encourage potential customers, users and developers to use the Blue Coat ProxySG Appliances and Software, ProxyAV Appliances and Software and WebPulse Service in the manner described by Finjan.  (http://bluecoat.com/support/technical-support, https://bto.bluecoat.com/ and https://kb.bluecoat.com).

151.     Blue Coat actively updates its websites, including Blue Coat's BlueTouch Online information center, to promote the Blue Coat ProxySG Appliances and Software, including the Content Policy Language, ProxyAV Appliances and Software and WebPulse Service to encourage customers, users and developers to practice the methods taught in the '731 Patent. (http://bluecoat.com/support/technical-support, https://bto.bluecoat.com/ and https://kb.bluecoat.com).

## **PRAYER FOR RELIEF**

WHEREFORE, Finjan prays for judgment and relief as follows:

A.     An entry of judgment holding Defendant has infringed, is infringing, has induced infringement of, and contributorily infringes the '780 Patent, the '822 Patent, the '633 Patent, the '844 Patent, the '968 Patent and the '731 Patent.

B.     A preliminary and permanent injunction against Defendant and its officers, employees, agents, servants, attorneys, instrumentalities, and/or those in privity with them, from infringing, or inducing the infringement of the '780 Patent, the '822 Patent, the '633 Patent, the '844 Patent, the

33

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

'968 Patent and the '731 Patent and for all further and proper injunctive relief pursuant to 35 U.S.C. § 283;

C.      An award to Finjan of such damages as it shall prove at trial against Defendant that is adequate to fully compensate Finjan for Defendant's infringement of the '780 Patent, the '822 Patent, the '633 Patent, the '844 Patent, the '968 Patent and the '731 Patent said damages to be no less than a reasonable royalty;

D.      A finding that this case is "exceptional" and an award to Finjan of its costs and reasonable attorney's fees, as provided by 35 U.S.C. § 285.

E.      An accounting of all infringing sales and revenues, together with postjudgment interest and prejudgment interest from the first date of infringement of the '780 Patent, the '822 Patent, the '633 Patent, the '844 Patent, the '968 Patent and the '731 Patent; and

F.      Such further and other relief as the Court may deem proper and just.

Respectfully submitted,

Dated:  August 28, 2013                    By:      _____/s/ Paul J. Andre_____
                                                    Paul J. Andre
                                                    Lisa Kobialka
                                                    James Hannah
                                                    KRAMER LEVIN NAFTALIS
                                                    & FRANKEL LLP
                                                    990 Marsh Road
                                                    Menlo Park, CA 94025
                                                    Telephone: (650) 752-1700
                                                    Facsimile: (650) 752-1800
                                                    pandre@kramerlevin.com
                                                    lkobialka@kramerlevin.com
                                                    jhannah@kramerlevin.com

                                                    *Attorneys for Plaintiff*
                                                    FINJAN, INC.

34

## **DEMAND FOR JURY TRIAL**

Finjan demands a jury trial on all issues so triable.

Respectfully submitted,

Dated:  August 28, 2013

By:  _____*/s/ Paul J. Andre*_____
Paul J. Andre
Lisa Kobialka
James Hannah
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com

*Attorneys for Plaintiff*
FINJAN, INC.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.