UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation, | Case No. 5:13-cv-03999-BLF |
| Plaintiff, | **ORDER GRANTING-IN-PART MOTION FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS** |
| v. | |
| BLUE COAT SYSTEMS, INC., a Delaware Corporation, | **(Re: Docket No. 68)** |
| Defendant. | |

A little over a year ago, Plaintiff Finjan Inc. brought this suit against Defendant Blue Coat Systems, Inc. for infringement of six of its patents. In its initial infringement contentions, Finjan accused ten specific Blue Coat products and services but did not accuse all ten of infringing all six patents. Instead, certain products and services were accused of infringing certain patents, but not others. With the benefit of various Blue Coat documents revealed during discovery, Finjan now seeks leave to amend its contentions to accuse more of the Blue Coat products and services of infringing more of the patents. Because most of the "new" information in the documents relied on by Finjan is, in fact, not so new, the court grants leave to amend to Finjan, but only in part, as set out below.

1

## I.

Patent cases are hard enough—and expensive enough—when the issues in dispute are fixed. When issues shift, or worse, grow in number, a case can become unmanageable for all concerned. And so our court's local patent rules "require parties to crystallize their theories of the case early in litigation and to adhere to those theories once they have been disclosed."[1] This crystallization takes the form of contentions about infringement, invalidity and the like.

A party may amend its contentions "only by order of the Court upon a timely showing of good cause."[2] Good cause requires a showing both diligence and lack of prejudice to the other side. In measuring diligence, the relevant question is when the moving party could have learned an amendment was necessary, not when it did.[3] If the moving party cannot establish its diligence, there is "no need to consider the question of prejudice."[4]

Finjan is the assignee of United States Patent Nos. 6,804,780, 7,058,822, 7,647,633, 6,154,844, 6,965,968 and 7,418,731. Pursuant to Patent L.R. 3-1, Finjan served infringement contentions that accuse various Blue Coat products and services as follows:

---

[1] *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 n.12 (Fed. Cir. 2006).

[2] Patent L.R. 3-6.

[3] *See Google, Inc. v. Netlist, Inc.*, Case No. 09-4144, 2010 U.S. Dist. LEXIS 144392, at *4 (N.D. Cal. May 5, 2010).

[4] *O2 Micro Int'l Ltd.*, 467 F.3d at 136.

2
Case No. 5:13-cv-03999-BLF
ORDER GRANTING-IN-PART MOTION FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS

| Accused Blue Coat Product | Asserted Patent | | | | | |
|---|---|---|---|---|---|---|
| | '822 | '633 | '968 | '844 | '780 | '731 |
| ProxySG | X | X | X | | | X |
| Secure Web Gateway Virtual Appliance | X | X | X | | | X |
| ProxyAV | | | | | X | X |
| *Content Analysis System* | X | X | | | | |
| *Malware Analysis System* | X | X | | | | |
| *WebPulse Service* | | | X | X | | X |
| WebFilter | | | X | | | X |
| MailThreat BLADE | | | | X | | |
| WebThreat BLADE | | | | X | | |
| FileThreat BLADE | | | | X | | |

Over the next several months, Blue Coat produced over 100,000 pages of documents in response to Finjan's demands. These documents included functional specifications, feature design documents, research reports, functional and operational overviews, developer's guides, requirements documents and technical overviews. A substantial portion were marked with the highest confidentiality designation under the stipulated protective order. Blue Coat also made public a number of other documents describing how the accused products and services work.

Citing what it claims is new information in the disclosures, Finjan proposed that Blue Coat stipulate that Finjan may amend its contentions. Under its proposal, Finjan would amend as follows:

- WebPulse Service additionally infringes claims 1-18 of the '780 Patent, claims 1-3 and 9-11 of the '822 Patent and claims 1-14 of the '633 Patent;

- the Content Analysis System additionally infringes claims 1-18 of the '780 Patent and claims 1, 4, 5, 7, 11-14, 17, 18, 20 and 22 of the '731 Patent; and

- the Malware Analysis Appliance additional infringes claims 1-18 of the '780 Patent, claims 1, 3-8, 11, 12, 15-17, 19, 21-23 and 41-44 of the '844 Patent, claims 1, 6, 7, 9, 10, 13, 23, 26, 32 and 33 of the '968 Patent and claims 1, 4, 5, 7, 11-12, 14, 17, 18 and 20 of the '731 Patent.

Blue Coat responded that all of the information relied on by Finjan was available to Finjan long ago, and so no amendment at this stage was warranted.

3

Case No. 5:13-cv-03999-BLF
ORDER GRANTING-IN-PART MOTION FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS

Finjan then brought this motion for leave to amend.  Finjan notes that it does not seek to add any new patents, products or theories to the case.  Finjan also notes that it did not delay in bringing the motion and that with many months remaining before fact discovery ends, Blue Coat faces no real prejudice.

## II.

This matter was referred by the presiding judge pursuant to Civil L.R. 72-1 and the court's June 9, 2014 case management order.[5]  This referral is further authorized under 28 U.S.C. § 636(b)(1)(A).

## III.

Patent L.R. 3-6 specifically identifies the "recent discovery of nonpublic information" as a circumstance demonstrating a party's diligence in pursuing an amendment of contentions.  But inherent in the reference to "recent" discovery is the notion that the same information was not available in some other form at an earlier time.  This is where Finjan largely falls short.

*First*, Finjan fails to identify any new information in the documents it cites suggesting additional infringement by WebPulse Service.  Pointing to the "mobile protection code" limitations of the '822 and '633 patents that it contends requires "code capable of monitoring or intercepting potentially malicious code," Finjan claims that only recently did Blue Coat disclose that WebPulse monitors for certain types of operations performed by malicious code.[6]  But a Blue Coat document publically available in 2013 explicitly taught that WebPulse includes "malware behavior scanners" that "make it possible to quickly identify malicious files based on their behaviors."  This was more than sufficient to put Finjan on notice of exactly what Finjan says the "mobile protection code" limitation requires.

---

[5] *See* Docket Nos. 64, 72.

[6] *See* Docket No. 70-13 at BC0077324.

4

Case No. 5:13-cv-03999-BLF
ORDER GRANTING-IN-PART MOTION FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS

Finjan does not dispute that Blue Coat disclosed monitoring generally well before its later production  It instead emphasizes the particular manner in which the monitoring takes place or what specific operations are monitored.  Even under Finjan's preferred construction, however, the limitation does not require any such manner of monitoring or the monitoring of particular operations.  The limitation just requires code capable of monitoring.  This was plainly disclosed.

***Second***, Finjan fails to identify any new information in the documents it cites suggesting additional infringement by Malware Analysis Appliance.  Finjan argues that only after it served its contentions did it learn that MAA "provides an overview of the sample file or URL, along with resources and any tasks that have been run in MAG2 using the sample in either the SandBox or the IntellliVM analysis environment."[7]  Finjan may be right that this is relevant to the '844 patent, which requires generating a security profile for a downloadable.[8]  But Finjan says nothing about the other three patents—the '968 patent, '780 patent and the '731 patent—for which it seeks to add infringement contentions against MAA.  Even as to the '844 patent, publicly available documents clearly disclose that "Hybrid Sandboxing technology [] includes traditional sandboxing and intelligent virtual machines (iVMs) . . . by providing a detailed report on the sample behavior."[9]  The court can offer no explanation as to how this is different from what Finjan claims is new, and Finjan does not even try.

Where Finjan gains traction is with its claim of new information in the documents about Content Analysis System.  Here, Finjan hangs its hat on limitations in two asserted patents: "policy-based cache manager" and "memory for storing a cache of digital content" in the '968 patent, and updating the "cache" in the '731 patent.  An  initial problem for Finjan is that while it

---

[7] *See* Docket No. 68-23 at BC0057484.

[8] *See* Docket No. 1-4 at 11.

[9] *See* Docket No. 68-15 at FINJAN-BC 011765.

relies on limitations in the '968 patents, Finjan does not even seek leave to add contentions that CAS infringes the '968 patent. Another problem is that for one of the two patents for which it does seek to add contentions against CAS, Finjan's papers say nothing at all about the '780 patent. But with respect to the '731 patent, Blue Coat's earlier disclosures do not speak of a "cache" or "caching" at all. The best reference Blue Coat can come up with is a reference to a "feedback loop" that provides "new intelligence" gleaned by CAS about advanced or unknown malware. While this may hint at a cache update, a hint is not enough. If anything, had Finjan relied on so little to charge CAS with infringement of the '731 patent, Blue Coat might have properly cried foul.

With several months left in the fact discovery period, Blue Coat faces little prejudice from an amendment that does not add any new patent or product to the mix. While the number of patent/product combinations will grow by one, Blue Coat has not identified any particular reason why it would have to seek leave to extend the case schedule or face any particular crunch. On balance, this limited amendment—but only this amendment—is warranted.

## IV.

No later than seven days from this order, Finjan may amend its infringement contentions to add contentions that CAS infringes the '731 patent. All other relief requested is denied.

**IT IS SO ORDERED.**

Dated: October 16, 2014

_/s/ Paul S. Grewal_
PAUL S. GREWAL
United States Magistrate Judge
