```
1                    IN THE UNITED STATES DISTRICT COURT

2                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                            SAN JOSE DIVISION

4

5

     FINJAN, INC.,                    )  CV-13-3999-BLF
6                                     )
                     PLAINTIFF,       )  SAN JOSE, CALIFORNIA
7                                     )
                VS.                   )  OCTOBER 29, 2014
8                                     )
     BLUE COAT SYSTEMS, INC.,         )  PAGES 1-37
9                                     )
                     DEFENDANT.       )
10                                    )

11

12                    TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE PAUL S. GREWAL
13                  UNITED STATES MAGISTRATE JUDGE

14

15   A P P E A R A N C E S:

16   FOR THE PLAINTIFF:      BY:  KRISTOPHER KASTENS
                             KRAMER LEVIN NAFTALIS & FRANKEL LLP
17                           990 MARSH ROAD
                             MENLO PARK, CA 94025
18

19   FOR THE DEFENDANT:      BY:  LAURA ELIZABETH EVANS
                                  EDWARD POPLAWSKI
20                           WILSON SONSINI GOODRICH & ROSATI
                             633 WEST FIFTH STREET, 15TH FLOOR
21                           LOS ANGELES, CA 90071

22

23   OFFICIAL COURT REPORTER:     SUMMER FISHER, CSR, CRR
                                  CERTIFICATE NUMBER 13185
24

25            PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                 TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1    SAN JOSE, CALIFORNIA                    OCTOBER 29, 2014

 2                     P R O C E E D I N G S

 3        (WHEREUPON, COURT CONVENED AND THE FOLLOWING PROCEEDINGS

 4    WERE HELD:)

 5                THE CLERK:  FINJAN INC. VERSUS BLUECOAT SYSTEMS, INC.

 6    CASE CV-13-3999.

 7        MATTER ON FOR DEFENDANT BLUECOAT'S MOTION TO COMPEL

 8    DISCOVERY, AND PLAINTIFF FINJAN'S SECOND MOTION TO COMPEL

 9    DISCOVERY.

10            PLEASE STATE YOUR APPEARANCES.

11                MR. KASTENS:  KRISTOPHER KASTENS ON BEHALF OF FINJAN.

12                THE COURT:  GOOD MORNING.

13                MS. EVANS:  LAURA EVANS ON BEHALF OF BLUECOAT.

14                MR. POPLAWSKI:  ALSO ED POPLAWSKI, GOOD MORNING,

15    YOUR HONOR.

16                THE COURT:  GOOD MORNING TO EACH OF YOU AS WELL.

17        ALL RIGHT.  NEXT UP IN THIS CASE WE HAVE A COUPLE OF

18    MOTIONS TO COMPEL, AS I UNDERSTAND IT.  IF I'VE GOT IT THIS

19    RIGHT, I'VE GOT ONE MOTION FROM EACH PARTY.

20        WITHOUT PREJUDICE FROM EITHER SIDE, I WILL TAKE THEM UP

21    IN THE ORDER THEY WERE FILED.  SO THAT MEANS BLUECOAT'S MOTION

22    IS FIRST.

23        WHY DON'T YOU GO AHEAD, COUNSEL.

24                MS. EVANS:  GOOD MORNING, YOUR HONOR.

25        IN THIS CASE FINJAN HAS FILED SIX PATENTS IN SUIT.  TWO
```

1    OF THESE PATENTS THE '780 AND THE '822 WERE PREVIOUSLY ASSERTED

2    BY FINJAN IN MULTIPLE LITIGATION.  FINJAN ALLEGES THAT THE

3    OTHER FOUR PATENTS IN THIS SUIT CLAIM PRIORITY TO SOME OF THE

4    PATENTS THAT WERE PREVIOUSLY ASSERTED, AND THREE OF THE PATENTS

5    IN SUIT ARE CONTINUATIONS IN PART OF THE PATENTS FINJAN

6    PREVIOUSLY ASSERTED.

7         I POINT THIS OUT BECAUSE THIS IS DIRECTLY RELEVANT TO THE

8    TWO AREAS IN OUR MOTION TO COMPEL.  BLUECOAT IS SEEKING TWO

9    TYPES OF DISCOVERY.

10         FIRST, WE ARE SEEKING KEY PRIOR LITIGATION DOCUMENTS FROM

11    FINJAN INCLUDING, FOR EXAMPLE, INFRINGEMENT CONTENTIONS

12    INFRINGEMENT REPORTS INVALIDITY REPORTS.

13             THE COURT:  THESE ARE REQUESTS 61 TO 66.

14             MS. EVANS:  THAT IS CORRECT, YOUR HONOR.

15             THE COURT:  SO ESSENTIALLY WHAT THESE REQUESTS ARE

16    GETTING AT ARE THE FORMAL LITIGATION POSITIONS THAT FINJAN HAS

17    TAKEN IN THESE EARLIER CASES.

18         MAY I JUST ASK, ARE EACH OF THESE EARLIER CASES RESOLVED

19    OR AT LEAST ONE OF THEM INTENDING, I DON'T KNOW IF IT MATTERS,

20    BUT I WOULD LIKE TO HAVE A CLEARER PICTURE

21             MS. EVANS:  I BELIEVE THAT'S THE CASE.  COUNSEL, DO

22    YOU KNOW?

23             MR. KASTENS:  I MEAN, I DON'T KNOW EXACTLY WHAT YOU

24    ARE ASKING FOR IN THE MOTION, I DON'T KNOW IF YOU ARE ASKING

25    FOR -- THERE ARE CASES CURRENTLY ONGOING.

1          MS. EVANS:  FOR EXAMPLE, MY UNDERSTANDING IS --

2          (OFF-THE-RECORD DISCUSSION.)

3          THE CLERK:  COUNSEL, CAN YOU PLEASE STATE YOUR

4    APPEARANCE.

5          MR. ERCOLINI:  MICHAEL ERCOLINI FOR ADAPTIX.

6          THE CLERK:  THANK YOU, COUNSEL.  WE WILL CALL THE

7    MATTER IN A FEW MINUTES.

8          MS. EVANS:  SO THE UNDERSTANDING, YOUR HONOR, IS ONE

9    OF THESE CASES HAS SETTLED AND THE OTHER CASE WENT TO APPEAL.

10   I'M NOT SURE IF THAT APPEAL IS RESOLVED OR NOT.

11         THE COURT:  ALL RIGHT.

12       SO IN ANY EVENT, THERE ARE PERHAPS VARYING STAGES OF

13   RESOLUTION, BUT YOUR POINT IS FINJAN IN THESE EARLIER CASES

14   TOOK POSITIONS WITH RESPECT TO PATENTS THAT ARE RELIED UPON FOR

15   PRIORITY IN THIS CASE AND ON THAT BASIS YOU ARE LOOKING FOR

16   THAT INFORMATION TO BE PRODUCED TO YOU.

17         MS. EVANS:  AS WELL AS TWO OF THE PATENTS IN SUIT

18   WERE PREVIOUSLY ASSERTED IN SOME OF THESE CASES.

19         THE COURT:  OKAY.

20       SO IT'S NOT ONLY A QUESTION OF THEIR BEING PARENTS TO

21   PATENTS IN THIS CASE, IN FACT SOME CASES THEY ARE THE ACTUAL

22   PATENTS IN THIS CASE.

23         MS. EVANS:  THAT IS CORRECT.

24         THE COURT:  OKAY.

25         MS. EVANS:  AND I WANTED TO LET YOUR HONOR KNOW RIGHT

1    UP FRONT WITH REGARD TO THAT REQUEST THAT WE HAVE BEEN ABLE TO

2    COME TO A SEPARATE AGREEMENT WITH A COUPLE OF THE THIRD

3    PARTIES, SPECIFICALLY MCAFEE AND SECURED COMPUTING HAVE BEEN IN

4    AGREEMENT WITH BLUECOAT TO PRODUCE DIRECTLY TO BLUECOAT SOME OF

5    THESE MATERIALS IN REDACTED FORM.

6         LIKEWISE WE HAVE ENTERED AN AGREEMENT WITH WEBSENSE

7    CONCERNING THEIR MATERIALS IN SIMILAR MANNER.

8         SO THAT LEAVES, MY UNDERSTANDING IS SOPHOS, WEBROUTE,

9    CYBERGUARD WEBWASHER AND I BELIEVE ALLADIN.  THOSE ARE THE

10   PARTIES THAT FINJAN HAS INFORMED US THAT THEY CONTACTED AND DID

11   NOT GIVE CONSENT FOR THIS PRODUCTION.

12        THE COURT:  OKAY.

13        AND BASED ON WHAT YOU WERE TOLD IN THE MEET AND CONFER

14   PROCESS HERE, WAS IT SIMPLY THE FAILURE OF THESE THIRD PARTIES

15   TO TENDER A CONSENT THAT FINJAN RELIES UPON IN WITHHOLDING THE

16   DOCUMENTS.

17        MS. EVANS:  THAT IS MY UNDERSTANDING YOUR HONOR, YES.

18        THE COURT:  OKAY.  AND THESE MATERIALS YOU ARE

19   LOOKING FOR ARE, PERHAPS I DID NOT APPRECIATE THE FULL SCOPE,

20   ARE THEY SIMPLY DISCOVERY THAT WAS TENDERED BY FINJAN TO

21   DEFENDANTS IN THESE EARLIER CASES OR IN SOME INSTANCES ARE THEY

22   ALSO DISCOVERY COMING THE OTHER WAY.

23        MS. EVANS:  IT'S NOT SO MUCH DISCOVERY, IT'S

24   MATERIALS COMING IN BOTH DIRECTIONS, FOR EXAMPLE INFRINGEMENT

25   CONTENTIONS THAT WOULD --

1          THE COURT:  I THINK OF THAT AS DISCOVERY.

2          MS. EVANS:  I'M SORRY.  OKAY.

3       SO YES, IT WOULD INCLUDE MATERIALS GOING BOTH DIRECTIONS.

4          THE COURT:  OKAY.

5       SO AS TO A SUBSET OF THESE DEFENDANTS IN THE PRIOR

6   LITIGATIONS, THEY HAVE NO PROBLEM, IN FACT THEY ARE WILLING TO

7   PRODUCE MATERIALS DIRECTLY TO YOU, THEY ARE NOT GOING TO

8   REQUIRE YOU TO GO THROUGH FINJAN.  IT'S THE SOPHOS'S OF THE

9   WORLD WHO ARE REQUIRING YOU TO GO THROUGH THIS MULTI STEP

10  PROCESS.

11         MS. EVANS:  YES, THAT IS CORRECT, YOUR HONOR.

12      SO THAT IS THE FIRST PORTION OF OUR MOTION.

13         THE COURT:  JUST ON THAT POINT BECAUSE THIS IS AN

14  ISSUE I WRESTLE WITH IN A LOT OF CASES.

15      SO WE HAVE A SITUATION WHERE THESE THIRD PARTIES WERE

16  THEMSELVES DEFENDANTS IN A PRIOR CASE, CORRECT, SO THEY WERE

17  PRESUMABLY SUBJECT TO AND SIGNED UP FOR THE PROTECTIVE ORDERS

18  IN THOSE CASES.

19         MS. EVANS:  YES.  SO OUR UNDERSTANDING IS THAT FINJAN

20  IS NOT PRODUCING THESE DOCUMENTS BASED ON THOSE PROTECTIVE

21  ORDERS.

22         THE COURT:  SURE.  SO ABSENT RELIEF FROM THIS COURT

23  FINJAN WOULD PUT ITSELF AT RISK OF VIOLATING THIS PROTECTIVE

24  ORDER BY GIVING YOU THOSE MATERIALS.  YOU DON'T QUIBBLE WITH

25  THAT.

1              MS. EVANS:  NO, YOUR HONOR.

2              THE COURT:  THE QUESTION I HAVE AGAIN, BECAUSE IT'S

3     SOMETHING I WRESTLE WITH IN A LOT OF CASES, IF I SAID TO FINJAN

4     PRODUCE IT, WOULD I HAVE THE AUTHORITY IN THAT SITUATION TO

5     EFFECTIVELY OVERRIDE A PROTECTIVE ORDER FROM ANOTHER JUDGE, OR

6     IS THERE ANY SUGGESTION IN THE CASE LAW THAT THE APPROPRIATE

7     COURSE HERE IS GO BACK TO THE COURT WHICH ENTERED THAT ORDER

8     AND SEEK RELIEF, MUCH AS YOU MAY HAVE HEARD US DISCUSS EARLIER

9     TODAY.

10             MS. EVANS:  SURE.

11          OUR RESEARCH INDICATED THIS IS THE PROPER PROCEDURE AND SO

12    THIS IS THE PROCEDURE WE PURSUED.  I'M NOT CURRENTLY AWARE OF

13    ANY CASE LAW TO THE CONTRARY.

14             THE COURT:  WELL, MAYBE THERE NEEDS TO BE, BUT THAT'S

15    THE REASON I ASKED.

16          OKAY.  I'M SORRY.  YOU HAD ANOTHER ISSUE WITH RESPECT TO

17    LEGAL PROCEEDINGS.

18             MS. EVANS:  YES.

19             THE COURT:  GO AHEAD.

20             MS. EVANS:  THE SECOND POINT CONCERNS BLUECOAT'S

21    INTERROGATORY NUMBER 7.  IN THAT INTERROGATORY WE ASKED FOR THE

22    DETAILS UNDERLYING FINJAN'S CLAIMS TO EARLY PRIORITY DATES FOR

23    THE SOME OF THE PATENTS.

24          THIS IS PARTICULARLY RELEVANT BECAUSE THREE OF THE

25    PATENTS IN SUIT OF CONTINUATIONS IN PART.

1        SO AS YOUR HONOR IS PROBABLY WELL AWARE, THAT MEANS THAT

2    THESE PATENTS HAVE NEW MATTER AS VERSUS THE PATENTS TO WHICH

3    THEY CLAIM PRIORITY.

4        SO WE HAVE BEEN SEEKING TO UNDERSTAND WHAT IT IS IN THE

5    OLDER PATENT APPLICATIONS THAT THEY BELIEVE SUPPORTS THEIR

6    CLAIM.

7            THE COURT:  SO YOU WANT ESSENTIALLY A CHAPTER AND

8    VERSE RECITATION OF THE SECTIONS OF THE OLDER PATENTS WHICH

9    JUSTIFY THE CLAIM TO --

10           MS. EVANS:  SOMETHING AKIN TO THAT.  AND LET ME GIVE

11   AN ANALOGOUS SITUATION.

12       IN CLAIM CONSTRUCTION FOR EXAMPLE, PARTIES EXCHANGE

13   CONTENTIONS AND POINT OUT HERE'S THE CLAIMS I WANT CONSTRUED,

14   HERE'S THE POSITION AS TO WHERE THEY SUSTAINED, THEN THE

15   PARTIES EXCHANGE EVIDENCE THEY ARE GOING TO USE TO RELY UPON.

16       WE ARE NOT ASKING FOR EXPERT OPINION, WE ARE NOT ASKING

17   FOR PREMATURE EXPERT REPORT, ALL WE ARE LOOKING FOR IS EARLY

18   IDENTIFICATION OF EVIDENCE THEY ARE GOING TO RELY ON.

19       IT'S IMPORTANT TO US BECAUSE WE ARE GOING TO BE FILING

20   OUR OPENING INVALIDITY REPORT WHEREIN WE PROVIDE INFORMATION AS

21   TO WHY WE BELIEVE THE LATER PRIORITY DATES ARE RELEVANT.  WE

22   DISCUSSED WITH THEM THIS ISSUE IN MEET AND CONFERS, AND FRANKLY

23   THE ONLY ISSUE THAT THEY RAISED IN THE MEET AND CONFER WAS A

24   CONCERN OF A LACK OF CLARITY AS TO WHAT THE INTERROGATORY WAS

25   SEEKING.

1      WE MET AND CONFERRED WITH THEM REPEATEDLY AND EXPLAINED

2  WHAT WE WERE LOOKING FOR, AND IT WAS REALLY ONLY IN THE

3  OPPOSITION TO THIS MOTION THAT WE LEARNED THESE ISSUE CONCERNS

4  THAT THEY HAD.

5      SO I'M HAPPY TO ADDRESS THOSE IN ANY LENGTH YOU WOULD

6  LIKE, BUT THE POINT THAT THEY MADE TO US IN MEET AND CONFER IS

7  THEY DIDN'T KNOW WHAT WE WERE LOOKING FOR.

8          THE COURT:  OKAY.

9      SO LET ME ASK YOU THIS, MS. EVANS.  SO THIS AGAIN IS NOT A

10  TERRIBLY UNIQUE SITUATION IN A CASE LIKE THIS, WHEREVER YOU

11  HAVE A PATENT CLAIMING PRIORITY, PARTICULARLY IN THE FORM OF A

12  CONTINUATION IN PART, YOU PRESUMABLY HAVE A SITUATION.

13      I DID MY BEST TO POKE THROUGH THE CASES LAST NIGHT AND I

14  CERTAINLY DIDN'T FIND A HECK OF A LOT OF GUIDANCE ON THE

15  OBLIGATION OF A PARTY CLAIMING SUCH PRIORITY TO PROVIDE OR

16  EFFECTIVELY RESPONSES TO CONTENTION INTERROGATORY.  I THINK YOU

17  FAIRLY CHARACTERIZE YOUR INTERROGATORIES IN THAT WAY.

18      WHAT YOU WANT TO KNOW, RIGHT, I TAKE IT, IS WHEN YOU SHOW

19  UP WITH SOME PRIOR ART AND BRING A MOTION FOR SUMMARY JUDGEMENT

20  AND INVALIDITY BEFORE JUDGE FREEMAN OR PERHAPS LATER, YOU WANT

21  TO KNOW WHAT THEY ARE GOING TO BE PLOWING UP ON THE SCREEN TO

22  EITHER THE JUDGE OR JURY AND SAYING NOPE, THAT'S WHAT WE ARE

23  CLAIMING PRIORITY FROM, THAT'S WHY THE LATER PATENT IS NOT NEW

24  MATTER.

25      IS THAT ESSENTIALLY IT?

1          MS. EVANS:  IN ESSENCE WE WANT AN IDENTIFICATION

2     WITHIN THE SPECIFICATION OF WHAT THEY ARE RELYING ON.

3          AND YOU KNOW, THEY MAKE THIS POINT ABOUT BURDEN AND

4     PERSUASION, BUT OUR ENTITLEMENT TO DISCOVERY DOESN'T REALLY

5     DEPEND ON WHO HAS THE BURDEN OF PROOF WITH INVALIDITY

6     ULTIMATELY.  WHAT WE ARE LOOKING FOR HERE IS JUST AN

7     IDENTIFICATION OF THE PARTS OF THE SPECIFICATION THEY ARE

8     RELYING ON FOR THEIR FACTUAL POSITIONS.

9          THE COURT:  I TAKE IT, MAYBE I'M EXAGGERATING HERE,

10    YOU FULLY EMBRACED YOUR OBLIGATION OR YOUR BURDEN OF PROOF AND

11    EVEN I SUSPECT YOU DON'T QUIBBLE THAT YOUR BURDEN IS BY CLEAR

12    AND CONVINCING EVIDENCE.  THE PROBLEM IS YOU DON'T KNOW WHAT IT

13    IS THEY ARE GOING TO RELY UPON.

14         MS. EVANS:  THAT IS CORRECT, YOUR HONOR.

15         AND THE POINT HERE IS THAT WE NEED TO BE ABLE TO DISCUSS

16    THIS ISSUE AS WE GO INTO OPENING EXPERT REPORTS.  WE GET

17    REBUTTAL REPORTS IN THE COURSE OF EVENTS AND SO WE DON'T GET

18    THE OPPORTUNITY TO SEE WHAT THEIR POSITIONS AND ARE COME BACK

19    AND REBUT THEM.

20         SO THAT'S WHY WE ARE SEEKING DISCOVERY SO WE ARE ABLE TO

21    ADDRESS IT ON A FACTUAL BASIS.  WE ARE NOT ASKING THEIR EXPERT

22    OPINION, WE ARE NOT ASKING TO FIND OUT HOW THEIR EXPERT CAN

23    INTERPRET THIS MATERIAL.

24         THE COURT:  CAN I ASK YOU MS. EVANS, I'M SORRY FOR

25    INTERRUPTING YOU, THIS IS A VERY PRODUCTIVE CONVERSATION.

```
 1          IS THE QUESTION OF NEW MATTER A QUESTION OF, A PURE
 2    QUESTION OF LAW, OR IS IT A QUESTION OF LAW WITH UNDERLYING
 3    FACTS?  OR IS IT A QUESTION OF FACT SUCH THAT EXPERTS MAY OFFER
 4    OPINIONS ULTIMATELY ON WHETHER THE LATER APPLICATION IS IN FACT
 5    SETTING OUT NEW MATTER; DO YOU HAPPEN TO KNOW THAT?
 6          MS. EVANS:  I DON'T KNOW THAT OFF THE TOP OF MY HEAD.
 7          MY UNDERSTANDING IS THE STANDARD IS TO DETERMINE WHETHER
 8    THE PRIOR ART OR RATHER THE SPECIFICATION AS INTERPRETED BY ONE
 9    OF ORDINARY SKILL IN THE ART IN FACT SUPPORTS THE CONTENTION.
10          AND WE ARE NOT ASKING FOR BOTH PORTIONS OF THAT
11    INFORMATION AT THIS POINT.  ALL WE ARE ASKING FOR IS THE
12    IDENTIFICATION IN THE SPECIFICATION.  WE ARE NOT ASKING FOR THE
13    EXPERT OPINION.  WE WILL GET THAT LATER, WE UNDERSTAND THAT
14    PROCESS.
15          THE COURT:  I TAKE YOUR POINT AND I THINK YOU
16    HIGHLIGHTED IT THAT IT MAY NOT ULTIMATELY MATTER FOR PURPOSES
17    OF THIS DISPUTE BECAUSE EVEN IF THIS WERE A PURE QUESTION OF
18    LAW IN CLAIM CONSTRUCTION YOU SIMILARLY ASK, WHAT DOES THIS
19    STUFF MEAN TO ONE OF ORDINARY SKILL IN THE ART.
20          AND UNDER PHILLIPS YOU SAY INTRINSIC EVIDENCE IS THE GOLD
21    STANDARD, WE ALLOW EXTRINSIC EVIDENCE UNDER CERTAIN
22    CIRCUMSTANCES.
23          YES, YOUR HONOR.  IN FACT, CARRYING THE ANALOGY OF THE
24    CLAIM CONSTRUCTION FORWARD, THE TYPICAL PROCEDURE IS WHERE YOU
25    IDENTIFY THE EVIDENCE AND THE EXPERT COMES IN LATER, THE EXPERT
```

1    MAKES A DECLARATION AND OPINES ABOUT WHAT THAT MEANS, BUT

2    THAT'S A SEPARATE ISSUE

3           THE COURT:  OKAY.  SO I TAKE IT THAT'S WHY YOU ARE

4    SAYING IT'S NOT GOOD ENOUGH SOME THAT IN EXPERT REPORT TO COME

5    MANY WEEKS OR MANY MONTHS DOWN THE ROAD, SOME EXPERT TELLS YOU

6    WHY THEY THINK IT'S NOT NEW MATTER, YOU NEED TO KNOW NOW IN

7    ORDER TO PREPARE YOUR PEOPLE ON THAT SAME QUESTION.

8           MS. EVANS:  YES.

9         AND IT'S ESPECIALLY RELEVANT BECAUSE WE DO HAVE COMPETING

10   PRIORITY DATES IN THIS CASE, SO WHAT PRIOR ART THAT WE RELY ON

11   AND WHAT PRIOR ART WE ARE IN FACT ABLE TO RELY ON DEPENDS ON

12   THIS ISSUE.

13        SO IF WE HAVE THAT EVIDENCE, WE CAN MAKE OUR OWN ASSESSMENT

14   OF THE STRENGTH OF THAT EVIDENCE AND BE ABLE TO ASSERT THE

15   PRIOR ART ACCORDINGLY.

16        WE HAVE ALREADY PUT FORWARD FOR THEM WHAT PRIOR ART WE

17   ARE LOOKING AT, WHAT CONTENTIONS, PRIORITY DATES WE BELIEVE WE

18   ARE ENTITLED TO.  AND THEY KNOW WHAT PRIOR ART WE ARE LOOKING

19   AT.

20        SO FOR THEM TO COME BACK AND SAY, ULTIMATELY DISCLOSE THE

21   PRIOR ART OR ONLY WHEN WE GET TO TRIAL IS THE PRIOR ART IN

22   FRONT OF US DO WE HAVE TO PROVE THE PRIORITY DATE, THEY ARE

23   WELCOME TO SUPPLEMENT THEIR INTERROGATORY RESPONSE AT ANY TIME,

24   WE ARE JUST LOOKING FOR THAT INFORMATION AT THIS POINT IN TIME.

25           THE COURT:  HAVE YOUR INVALIDITY CONTENTIONS BEEN

```
1       SERVED?

2               MS. EVANS:  YES.

3               THE COURT:  SO THEY HAVE THE PRIOR ART?

4               MS. EVANS:  YES, THEY'VE HAD IT FOR MONTHS.  THIS WAS

5       SERVED BACK IN MARCH.

6               THE COURT:  ALL RIGHT.  I APPRECIATE YOUR ARGUMENT.

7       I WANT TO HEAR ON THIS POINT, THEN WE WILL GO FORWARD.

8       THANK YOU.  I WILL GIVE YOU A CHANCE FOR REBUTTAL AS WELL.

9           GOOD MORNING.

10              MR. KASTENS:  GOOD MORNING, YOUR HONOR.

11          SO I WILL TAKE THAT IN REVERSE ORDER, IF YOU PREFER.

12              THE COURT:  SURE.

13              MR. KASTENS:  SO BASICALLY WHAT THEY ARE TRYING TO DO

14      IS SHIFT THE BURDEN ON WHAT IS REQUIRED ON THIS.  AND WE DON'T

15      BELIEVE IN A PRIMA FACIA CASE TO PUT ANY OF THE ELEMENTS AT

16      ISSUE FOR ANY OF THE CLAIMS THAT ARE CURRENTLY PENDING.

17          NOW WHAT THEIR INTERROGATORY ASKED FOR WAS BASICALLY TO

18      CITE BACK FOR EVERY SINGLE CONTINUATION, CID, EVERYTHING, EVERY

19      SINGLE ELEMENT WITHIN THOSE PATENTS FOR 70 SPECIFIC CLAIMS THAT

20      WERE ASSERTED.

21          THAT WAS COMPLETELY OVERBURDENED.  WE WOULD HAVE PROBABLY

22      A DIFFERENT DISCUSSION IF THEY HAD BEEN ABLE TO SAY WE DON'T

23      THINK THESE THREE ELEMENTS ARE AVAILABLE.

24              THE COURT:  SO -- WHAT I FIND SO INTRIGUING AND

25      ATTRACTIVE ABOUT THIS DISPUTE, AND PERHAPS IN CONTRAST TO SOME
```

1    OTHERS TODAY, IS THAT YOU HAVE RAISED A VERY INTERESTING ISSUE

2    ABOUT DISCLOSURES THAT OUR LOCAL RULES DO NOT ADDRESS.

3         AND AT THE SAME TIME YOU HAVE ALSO, I THINK HIGHLIGHTED,

4    THAT IF WE CREATE THE RIGHT INCENTIVES HERE, THERE MIGHT

5    ACTUALLY BE A WIN ON BOTH SIDES.  IT WOULD SEEM WHAT YOU ARE

6    SAYING, AMONG OTHER THINGS, IS 70 CLAIMS, YOU'VE GOT TO BE

7    KIDDING ME, THIS IS GOING TO TAKE US HUNDREDS OF HOURS.

8         ONE OBVIOUS RESPONSE TO THAT IS MAYBE YOU OUGHT TO DROP

9    DOWN TO 50 OR 40 OR 10 CLAIMS.

10        SO IN SOME WAYS, YOU HAVE SOME SELF-HELP AVAILABLE TO

11   YOU.

12             MR. KASTENS:  SO THERE IS A PROCEDURE IN PLACE WHERE

13   WE WILL CUT DOWN THE CLAIMS.  I'M TALKING ABOUT THE TIME THEY

14   FILED THE MOTION TO COMPEL WITH 70 CLAIMS, THIS IS ACTUALLY NOW

15   FEWER CLAIMS THAN THAT.

16             THE COURT:  I APPRECIATE THAT.

17        SO IF I RECALL, THIS CASE DOES HAVE SOME SERIES OF

18   MILESTONES BY WHICH THE CLAIMS ASSERTED CLAIMS AND PRIOR ART

19   REFERENCES GET DROPPED AND REFINED OVER TIME.

20        WHERE ARE WE AT RIGHT NOW IN THAT CASCADE?

21             MR. KASTENS:  WE HAVE DROPPED THE NUMBER OF CLAIMS

22   ASSERTED, WE ARE WAITING ON THEM TO DROP THE NUMBER OF PRIOR

23   ART REFERENCES.

24             THE COURT:  HOW MANY CLAIMS ARE YOU AT RIGHT NOW?

25             MR. KASTENS:  24 CLAIMS, YOUR HONOR.

```
1              THE COURT:  I TAKE IT BEFORE YOU GET TO THE CLOSE OF
2    PRETRIAL, JUDGE FREEMAN HAS REQUIRED, PERHAPS BY AGREEMENT OF
3    THE PARTIES, THAT YOU FURTHER DROP FROM THE 24.
4              MR. KASTENS:  YES, YOUR HONOR.
5         THAT IS GOING TO BE, I BELIEVE THAT IS POST-EXPERT
6    DISCOVERY.
7              THE COURT:  MAKES SENSE.
8         SO WHAT'S THE END GAME HERE, WHAT ARE YOU GUYS GOING TO
9    GET DOWN TO?  10, 5?
10             MR. KASTENS:  HONESTLY, I DON'T RECALL OFF THE TOP OF
11   MY HEAD, BUT THE MAJOR DROP HAS ALREADY TAKEN PLACE.  MAYBE 18
12   IS THE NEXT, BUT I DON'T HAVE THAT INFORMATION.
13             THE COURT:  PERHAPS THE TIMING IS A BIT PREMATURE
14   HERE, I TAKE YOUR POINT ON THAT.
15        LET'S ASSUME WE ARE TALKING ABOUT A SITUATION WHERE BY
16   THE TIME YOU DROP, MAKE YOUR LAST DROP, BUT BEFORE THEIR
17   EXPERTS HAVE BEEN FULLY ENGAGED, AND I DON'T KNOW IF THOSE TWO
18   EVENTS LINE UP NICELY OR NOT, THEY MAY NOT, BUT LET'S ASSUME
19   THERE'S AN OPPORTUNITY LIKE THAT.  WOULDN'T IT MAKE SENSE IN
20   THAT SITUATION FOR A PARTY THAT BEARS THE BURDEN OF PROOF TO
21   UNDERSTAND WHAT IT CONFRONTS IN TERMS OF MEETING THAT BURDEN
22   AND DEALING WITH A CLAIM TO PRIORITY BASED ON THE PARENT
23   APPLICATION THAT APPLIES NOT JUST TO ONE PATENT AT ISSUE HERE,
24   BUT IT SOUNDS LIKE MORE THAN ONE PATENT.
25             TELL ME WHAT THE PROBLEM IS.
```

1    MR. KASTENS:  I'M SORRY.  I MAY NOT UNDERSTAND YOUR

2    DESCRIPTION THERE, BUT WE WILL PROVIDE THE INFORMATION.   THEY

3    RAISE IT IN THEIR EXPERT REPORT.  YOU CAN'T CLAIM PRIORITY OF

4    THIS PATENT BECAUSE THE ELEMENTS ARE NOT THERE, WE ARE GOING TO

5    RESPOND TO THAT BECAUSE IF WE NEED TO --

6    THE COURT:  OH, MAYBE MY QUESTION WASN'T CLEAR AT

7    ALL.  WHAT I'M ASKING IS THEY BEAR THE PROOF ON VALIDITY AND

8    IT'S PROOF BY CLEAR AND CONVINCING EVIDENCE SO IT'S A HIGHER

9    BURDEN.

10   I TAKE IT UNDER JUDGE FREEMAN'S SCHEDULING ORDER BECAUSE

11   THEY BEAR THE BURDEN OF PROOF ON THAT ISSUE, THEY WILL HAVE TO

12   STEP UP WITH THEIR EXPERT REPORT FIRST THEN YOU WILL GET A

13   CHANCE TO SERVE YOUR OWN EXPERT REPORT IF YOU WISH.

14   MR. KASTENS:  THAT'S MY UNDERSTANDING.

15   THE COURT:  IF THAT'S TRUE AND IF THERE ARE NO

16   REBUTTAL REPORTS IN PLAY, WHY WOULDN'T IT MAKE SENSE FOR THEIR

17   EXPERT TO ADDRESS THIS ISSUE THAT WE ALL KNOW IS COMING IN THAT

18   OPENING REPORT WITHOUT HAVING TO WAIT TO SEE WHAT YOUR EXPERT

19   SAYS, THEN ASK JUDGE FREEMAN TO GET RELIEF FROM THE SCHEDULING

20   ORDER, HAVE JUDGE FREEMAN REFER SOME SPECIES OF THAT DISPUTE

21   OVER TO ME.  IT SEEMS LIKE WE ALL KNOW WHERE THIS IS HEADED,

22   TELL ME WHAT THE PROBLEM IS.

23   MR. KASTENS:  I THINK THE PROBLEM IS THEY ONLY HAVE

24   TO POINT OUT ONE SPECIFIC ELEMENT THEY BELIEVE IS NOT SUPPORTED

25   IN THE -- EXCUSE ME, YOUR HONOR, THE APPLICATION THAT WE ARE

1    CLAIMING PRIORITY TO.

2         SO THEY CAN SAY THESE TWO ELEMENTS ARE NOT MISSING THEN

3    WE CAN RESPOND AND SAY WHY THEY ARE.

4         THE COURT:  SO RIGHT NOW YOU ARE AT 24 CLAIMS AS OF

5    TODAY ANY WAY, IN THOSE 24 CLAIMS THEY WERE TO STEP UP WITH,

6    LET'S PICK A NUMBER, FIVE LIMITATIONS THAT THEY SAY ARE

7    UNSUPPORTED IN THE PARENT APPLICATIONS, YOU ARE SAYING MAYBE

8    IT'S FIVE, MAYBE IT'S THREE, MAYBE IT'S SEVEN, BUT WHATEVER

9    THAT NUMBER IS THAT MIGHT BE A REASONABLE BURDEN TO PUT ON YOU

10   TO IDENTIFY SUPPORT FOR.

11        MR. KASTENS:  THAT'S CERTAINLY A MUCH MORE REASONABLE

12   BURDEN, YOUR HONOR.

13      WE STILL THINK THERE ARE ISSUES THAT THEY ARE TRYING TO

14   SHIFT THE BURDEN ON US IN AN INAPPROPRIATE MANNER, BUT

15   CERTAINLY NOT HAVING TO TRACE EVERY SINGLE ELEMENT OF EVERY

16   SINGLE CLAIM IS -- IN DOING IT, JUST VERSUS THE MOTION IS

17   BURDENSOME.

18        I'M JUST GOING TO ALSO POINT OUT THAT THEY HAVE 600 PRIOR

19   ART REFERENCES CURRENTLY ASSERTED IN THIS CASE.  THEY WILL BE

20   CUTTING THOSE DOWN.  WE DON'T KNOW IF EVERY CLAIM TO PRIORITY

21   WILL BE CURRENTLY AN ISSUE.  I KNOW FOR SOME OF THEM THE

22   MAJORITY OF THE PRIOR ART THEY HAVE CHARTED DOES NOT PUT

23   PARTICULAR EARLIER APPLICATIONS AT ISSUE.  SO IT MAY NOT EVEN

24   BE AN ISSUE

25        THE COURT:  I UNDERSTAND.

1            MS. EVANS, DO YOU WANT TO SPEAK BRIEFLY ON THAT ISSUE?

2            MS. EVANS:  YES, VERY MUCH SO.

3        SO JUST TO POINT OUT WE ACTUALLY HAVE A DEADLINE OF THIS

4    WEEK TO LIMIT OUR PRIOR ART, AND IT WOULD HAVE BEEN EXTREMELY

5    HELPFUL FOR US TO HAVE DISCOVERY ON THAT ISSUE BEFORE WE HAVE

6    TO DO SO.  BECAUSE IF WE HAD THE ABILITY TO EVALUATE THEIR

7    POSITIONS, WE WOULD HAVE KNOWN THE STRENGTH OF THE PRIORITY

8    ISSUE.

9        SO WE ARE ALREADY WELL INTO THAT PROCESS.  WE'RE GOING TO

10   HAVE TO LIMIT OUR PRIOR ART CLAIMS THIS WEEK.  OPENING EXPERT

11   REPORTS ARE DUE IN JANUARY, AND THE ELECTION OF A FURTHER

12   LIMITATION ISN'T GOING TO BE UNTIL AFTER EXPERT DISCOVERY

13   CLOSES.  SO THAT TIMING IS GOING TO BE PRESENT SOME

14   DIFFICULTIES FOR US.

15       I WOULD ALSO NOTE THAT IF YOU FLIPPED THIS POSITION AND

16   LOOKED AT THE BURDEN THEY HAVE ON INFRINGEMENT AND ON DAMAGES,

17   THEY HAVE THE BURDEN ON THAT, BUT THAT HASN'T HELD THEM UP FROM

18   THE ABILITY TO INQUIRE DISCOVERY WITH REGARD TO US AND OUR

19   DAMAGES POSITIONS AND DAMAGES INFORMATION AND INFRINGEMENT

20   INFORMATION.

21       I WOULD ALSO ADD THAT THEY CHOSE TO ASSERT SIX PATENTS

22   AND CHOSE TO ASSERT 70 CLAIMS.  SO IN PART THE BURDEN THAT THEY

23   HAVE IS OF THEIR OWN MAKING.

24            THE COURT:  DO YOU HAVE A SENSE OF THE 24 CLAIMS THAT

25   ARE CURRENTLY AT ISSUE, HOW MANY LIMITATIONS AMONG THOSE CLAIMS

1    ARE SUSPECT IN TERMS OF PRIORITY?

2              MS. EVANS:  LET ME PUT IT THIS WAY, THERE ARE THREE

3    PATENTS IN THE SIX THAT ARE CONTINUATIONS IN PART.  SO THIS

4    ISSUE SPECIFICALLY FOCUSES ON SOME OF THOSE CLAIMS.

5         OUR POSITION WITH REGARD TO AT LEAST ONE OF THOSE PATENTS

6    IS THAT ALL OF THE CLAIMS INCLUDE ONE OR MORE VERY SPECIFIC

7    LIMITATIONS THAT WE DON'T THINK ARE IN THE EARLIER

8    APPLICATIONS.

9         SO THERE MIGHT BE A WAY TO NARROW THE SCOPE IF NECESSARY,

10   I MEAN IF THAT WOULD BE HELPFUL WE WOULD WELCOME THE

11   OPPORTUNITY TO GET SOME DISCOVERY.

12             THE COURT:  OKAY.  ALL RIGHT.

13        MR. KASTENS, I WANT TO ALSO HEAR FROM YOU ABOUT THE EARLIER

14   CASES.

15        AM I RIGHT IN UNDERSTANDING THE ONLY PROBLEM IS YOU'VE

16   GOT THIRD PARTIES SAYING OR NOT SAYING --

17             MR. KASTENS:  THAT IS THE ISSUE, AND I BELIEVE THAT

18   WAS THE ISSUE WE CRYSTALIZED PREVIOUSLY IN MEET AND CONFERS.

19        I THINK IN THEIR MOTION THEY MAY HAVE BROUGHT UP STUFF WE

20   WEREN'T AWARE THEY STILL WANTED.  THAT'S QUITE DE MINIMUS

21   COMPARED TO THE ISSUE REGARDING THE THIRD PARTY CONFIDENTIAL

22   INFORMATION.

23        AND I JUST WANTED TO GO THROUGH ONE OTHER THING.

24        SHE HAD MENTIONED CYBERGUARD AND WEBWASHER, I BELIEVE

25   HAVE NOT PROVIDED PERMISSION.  I UNDERSTAND THOSE ARE OWNED OR

1    RELATED TO MCAFEE IN SOME WAY, SO OUR UNDERSTANDING WAS THEY

2    HAD RESOLVED THAT FOR THOSE ENTITIES AS WELL, SO IT WAS JUST

3    WEBROUTE AND SO /TPOS.

4         THE COURT:  WOULD YOU AGREE THAT, I MEAN IN SOME

5    SENSE YOU ALL DON'T HAVE A PROBLEM WITH EACH OTHER ON THIS ONE,

6    IT'S A LEGITIMATE ISSUE WITH A THIRD PARTY.  THE THIRD PARTY

7    HAS LEGITIMATE RIGHTS AS WELL.

8         WOULD YOU AGREE IF I WERE TO SIMPLY ORDER YOU TO PRODUCE

9    THE SOPHOS AND WEBROUTE MATERIALS, THAT WOULD SUFFICE IN TERMS

10   OF INSULATING YOU AGAINST A CLAIM YOU WERE IN VIOLATION OF

11   ANOTHER PROTECTIVE ORDER.  WE TEND TO DO THAT ALL THE TIME

12        MR. KASTENS:  I BELIEVE SO, YOUR HONOR.

13        THE COURT:  THE REASON I ASK AND RAISE THIS ISSUE IS

14   WE SORT OF DO THINGS WITHOUT THINKING ABOUT WHETHER WE CAN.

15        AND IT OCCURRED TO ME THAT AT SOME POINT --

16        MR. KASTENS:  WE HAD NOTIFIED ALL PARTIES WE THOUGHT

17   WOULD BE POTENTIALLY IMPACTED BY THIS MOTION AS WE WERE

18   REQUIRED TO DO UNDER THE PROTECTIVE ORDERS IN THOSE CASES.

19        THE COURT:  ALL RIGHT.

20        MR. KASTENS:  BUT I JUST DON'T KNOW IF THEY ARE

21   REQUESTING INFORMATION FROM CURRENTLY PENDING CASES.

22        SO THERE IS ONE THAT I GUESS IS STILL PENDING.  WE HAVE A

23   DECISION FROM THE FEDERAL CIRCUIT, BUT I BELIEVE THERE MAY BE

24   SOME FURTHER --

25        THE COURT:  MS. EVANS, CAN YOU TELL ME WHICH SPECIFIC

1    CASES WE ARE TALKING ABOUT?

2            MS. EVANS:  YES, YOUR HONOR.

3        IN FACT, I BELIEVE FINJAN ACTUALLY LISTS THEM IN A FOOTNOTE

4    IN THEIR MOTION OR IN THEIR OPPOSITION, RATHER.

5            THE COURT:  FOOTNOTE 3.

6            MS. EVANS:  YES, THE FINJAN V. ALLADIN MATTER.

7    FINJAN SOFTWARE LIMITED V. SECURE COMPUTING AND THE FINJAN V.

8    MCAFEE CASE.  THOSE ARE THE THREE WE ARE CURRENTLY SEEKING

9    DOCUMENTS FOR.

10            THE COURT:  OKAY.

11            MS. EVANS:  JUST TO ADD TO WHAT MR. KASTENS SAID, WE

12    CAN CLARIFY THE ISSUE WITH REGARD TO CYBERGUARD WEBWASHER.  I'M

13    NOT SURE I PROBABLY DO NEED TO CLARIFY WITH MCAFEE'S COUNSEL IF

14    THOSE ARE INCLUDED OR NOT.

15            MR. KASTENS:  YOUR HONOR, I JUST DON'T WANT TO SPEAK

16    FOR THEM.

17            MS. EVANS:  NEITHER DO I.

18            THE COURT:  I AM OF THE UNDERSTANDING, MR. KASTENS,

19    THAT YOU PROVIDED NOTICE TO THE OTHER SIDE -- TO THESE THIRD

20    PARTIES AND THEY HAVE ELECTED NOT TO PROVIDE THE CONSENT.

21            MR. KASTENS:  YES.

22        I WOULD SAY THE ONE CAVEAT IS ALADEEN, WE NOTIFIED, WE

23    DON'T THINK WE HAVE ANY OF THEIR CONFIDENTIAL INFORMATION, WE

24    DON'T THINK THE CASE GOT TO THAT POINT, SO I DON'T BELIEVE

25    THERE'S AN ISSUE THERE.

```
1          THE COURT:  I WILL GIVE YOU ONE LAST POINT ON THIS.

2          MR. KASTENS:  THERE'S JUST ONE MORE CLARIFICATION.

3      WE HAVE CURRENTLY PENDING CASES THAT ARE DEFINITELY STILL

4   IN ACTIVE LITIGATION THAT I DO NOT KNOW IF THEY ARE REQUESTING

5   THIS INFORMATION.

6         SO THERE'S A PROOFPOINT CASE, THERE'S A CASE --

7          THE COURT:  WELL, I THINK SHE NARROWED IT TO FOOTNOTE

8   THREE.  SO I CAN TAKE THAT AND PUT IT IN MY POCKET --

9          MR. KASTENS:  OKAY.  YOUR HONOR, I JUST WANTED TO BE

10  CLEAR.

11         THE COURT:  OKAY.  HERE'S WHAT WE ARE GOING TO DO ON

12  THIS MOTION.

13      AS TO THE DOCUMENTS PERTAINING TO PREVIOUS LEGAL

14  PROCEEDINGS AS IDENTIFIED IN FOOTNOTE 3 OF FINJAN'S OPPOSITION.

15  WE ARE TALKING ABOUT THE 3RD DISTRICT OF DELAWARE CASES WHERE

16  THE -- WITH SINCERE APOLOGIES IF IT'S NECESSARY TO MY

17  COLLEAGUES AND FRIENDS IN WILMINGTON, I'M GOING TO ORDER THOSE

18  DOCUMENTS PRODUCED NO LATER THAN 14 DAYS FROM TODAY.

19      NO LATER THAN 7 DAYS FROM TODAY I WOULD LIKE NOTICE GOING

20  OUT FROM FINJAN TO THE PARTIES IN THOSE CASES WHO HAVE NOT YET

21  TENDERED CONSENT THAT THIS PRODUCTION HAS BEEN ORDERED BY THE

22  COURT, AND YOU MAY ALSO INDICATE IN THAT COMMUNICATION THAT IF

23  ANY OF THOSE PARTIES WISHES TO SEEK RELIEF FROM MY ORDER THEY

24  MAY BRING AN APPROPRIATION MOTION BEFORE ME BY FILING A

25  MISCELLANEOUS CASE OR HOWEVER ELSE THEY WISH TO PROCEED.
```

1          BUT I WANT THOSE MATERIALS PRODUCED AND I WOULD LIKE

2     NOTICE GIVEN WITHIN 7 DAYS.

3          AS FOR THE PRIORITY CLAIMS, THIS IS A VERY INTERESTING

4     ISSUE.  I THINK THE RIGHT ANSWER HERE IS TO, AGAIN, GRANT THE

5     REQUEST.  HOWEVER, AS A CONDITION OF GRANTING THE REQUEST, I DO

6     WANT BLUECOAT TO IDENTIFY THE SPECIFIC LIMITATIONS WHICH ARE AT

7     ISSUE IN THE 24 CURRENT CLAIMS SO THAT THE BURDEN ON FINJAN IS

8     MITIGATED.

9          I WOULD LIKE THOSE LIMITATIONS THAT ARE DISPUTED

10    IDENTIFIED NO LATER THAN 7 DAYS FROM TODAY.  AND I WANT LIKE NO

11    LATER THAN 21 DAYS FROM TODAY, SO 14 DAYS AFTER THE

12    IDENTIFICATION IS MADE, I WOULD LIKE FINJAN TO IDENTIFY WHERE

13    IN THE PARENT APPLICATIONS PRIORITY JUSTIFIED.

14         OKAY.  LET'S TURN TO THE SECOND MOTION WHICH HAS TO DO

15    WITH SOME DEPOSITIONS AND STUFF.

16         GO AHEAD, MR. KASTENS, WHAT'S THE ISSUE HERE?

17             MR. KASTENS:  YOUR HONOR, THE ISSUE HERE IS THAT WE

18    HAVE NOTED A NUMBER OF EMPLOYEES OF BLUECOAT FOR DEPOSITIONS

19    AND BLUECOAT HAS REFUSED TO PROVIDE DATES FOR THOSE EMPLOYEES

20    UNTIL WE HAVE CONCLUDED A NUMBER OF ALREADY PENDING

21    DEPOSITIONS.

22         OUR UNDERSTANDING IS THAT WE WOULD REQUIRE A WHOLE

23    SEPARATE NEGOTIATIONS AND THEY WANT US TO CONVINCE THEM THAT

24    THOSE DEPOSITIONS ARE NOT REDUNDANT.

25         ALSO --

1        THE COURT:  ARE ANY OF THESE PEOPLE APEX?

2        MR. KASTENS:  NO, YOUR HONOR.

3        THE COURT:  OKAY.

4        MR. KASTENS:  SOME OF THOSE PEOPLE, I MEAN, WE'VE

5    REQUESTED ALL OF THESE DEPOSITIONS AT LEAST BY MID-SEPTEMBER.

6    AND THEY HAVEN'T GIVEN US THAT INFORMATION.  IT'S TAKEN US --

7    FOUR MONTHS TO SCHEDULE CERTAIN DEPOSITIONS FOR THESE EMPLOYEES

8    AT THIS POINT.  WE HAVE EMPLOYEES WE NOTICED IN JULY THAT THEY

9    TOOK MONTHS TO GET US A DATE AND NOW THEIR DATE IS IN LATE

10   NOVEMBER.

11        AND WE HAVE -- I BELIEVE I COMPUTED IT TO BE 44 DAYS LEFT

12   OF FACT DISCOVERY IN THIS CASE WHICH INCLUDES THANKSGIVING.

13        THE COURT:  AND I UNDERSTOOD FROM YOUR REQUEST YOU

14   ARE NOT LOOKING FOR ANY INCREASE IN THE DEPOSITION HOURS CAP,

15   CORRECT?

16        MR. KASTENS:  NO, YOUR HONOR.  NOT AT THIS POINT.

17        SO AT THIS POINT WE HAVE ONLY USED I BELIEVE ABOUT 17 HOURS

18   OF OUR TOTAL DEPOSITION TIME.  SO I THINK IT'S A LITTLE

19   PREMATURE FOR THAT.

20        I WILL SAY IF WE RUN INTO CERTAIN ISSUES DOWN THE LINE I

21   DON'T WANT TO FORECLOSE THAT, BUT AT THIS POINT WE ARE NOT

22   REQUESTING ANY EXTENSION OF HOURS.

23        THE COURT:  ALL RIGHT.  I THINK HAVE THAT ISSUE.

24        LET ME RESOLVE THIS ONE BEFORE WE TURN TO THE DOCUMENT

25   REQUEST, IF I COULD, I WOULD LIKE TO HEAR FROM MS. EVANS.

```
 1            MS. EVANS, WHY AREN'T THESE EIGHT PEOPLE SCHEDULED FOR

 2    DEPOSITION?  WHAT'S THE ISSUE HERE?

 3            MS. EVANS:  SO YOUR HONOR, WE THINK THESE DEPOSITIONS

 4    WOULD BE CUMULATIVE AND BURDENSOME ON BLUECOAT.  THE

 5    INDIVIDUALS, AND I CAN RUN THROUGH THEM INDIVIDUALLY, FOR

 6    EXAMPLE MR. WHITCHURCH WHOM THEY SEEK A DEPOSITION ON THE

 7    TECHNICAL WITNESS SIDE, THEY'VE ALREADY GOT FIVE WITNESSES FROM

 8    THE SAME OFFICE IN UTAH ON THE SAME TOPICS, AND THEY HAVEN'T

 9    PROVIDED US WITH ANY REASON WHY THOSE FIVE WITNESSES COULD NOT

10    PROVIDE THE SAME INFORMATION.

11         WITH REGARD TO MARKETING --

12            THE COURT:  AND THOSE FIVE OTHER WITNESSES'

13    DEPOSITIONS ARE ALL COMPLETED?

14            MS. EVANS:  THEY ARE ALL SCHEDULED.  THEY ARE NOT ALL

15    COMPLETED.  TWO OF THEM HAVE TAKEN PLACE AND THE OTHER THREE

16    ARE STILL COMING FORWARD.

17            THE COURT:  OKAY.  GO AHEAD.

18            MS. EVANS:  SO WITH REGARD TO THE MARKETING WITNESSES

19    AS AN EXAMPLE, FINJAN IS SEEKING TO DEPOSE INDIVIDUALS WHO

20    EITHER WORK FOR THE MARKETING INDIVIDUAL THAT IS BEING DEPOSED

21    TOMORROW OR WHO HAVE REPLACED HIM.

22         SO THE INDIVIDUAL TESTIFYING ON THIS AREA HAS SUPERVISED

23    THESE INDIVIDUALS OR WORKED WITH THE INDIVIDUALS AND SHOULD BE

24    ABLE TO PROVIDE ALL THE INFORMATION THEY SEEK.

25            OUR POSITION IS THAT IF AFTER THE DEPOSITION IF THEY CAN
```

1    IDENTIFY SOMETHING THAT WAS MISSING, WE ARE HAPPY TO GO FORWARD

2    WITH THOSE DEPOSITIONS.

3         WITH REGARD TO THE -- IN FACT, I WILL POINT OUT THIS,

4    THEY SCHEDULED A DEPOSITION FOR ONE MARKETING WITNESS AND ONCE

5    WE INFORMED THEM WE WERE NOT TAKING THE PERSON TO TRIAL THEY

6    CANCELLED THE DEPOSITION.  WE AREN'T PLANNING ON TAKING ANY OF

7    THESE WITNESSES TO TRIAL EITHER.

8         AND THE LAST AREA IN WHICH THEY ARE SEEKING INDIVIDUAL

9    DEPOSITIONS INVOLVE SALES.

10        WE HAVE ALREADY PUT FORWARD OUR VICE PRESIDENT OF WORLD

11   SALES OPERATIONS, THAT DEPOSITION HAS BEEN SCHEDULED.  AND THEY

12   ARE ALSO SEEKING TO DEPOSE VERY SIMILAR POSITIONS, THE SENIOR

13   VICE PRESIDENT OF WORLDWIDE SALES AND THE VICE PRESIDENT OF

14   WORLDWIDE SALES.

15        SO AGAIN, WE THINK IT'S A BIT OF HARASSMENT AND BURDEN TO

16   DEPOSE THESE INDIVIDUALS.  THIS IS ESPECIALLY THE CASE IN LIGHT

17   OF NUMBER OF HOURS THEY USED WITH THE FIRST THREE WITNESSES AND

18   THE NUMBER OF HOURS THEY HAVE LEFT.

19        COUNSEL MENTIONED THEY USED 17 HOURS.  I'M NOT SURE OF

20   THE EXACT NUMBER, I HAD UNDERSTOOD IT WAS CLOSER TO 19.  THAT

21   LEAVES ABOUT 51 HOURS FOR AN ADDITIONAL 15 WITNESSES WHICH

22   WOULD BE AN AVERAGE OF ABOUT THREE HOURS PER WITNESS.

23        SO OUR CONCERN IS THAT THEY ARE GOING TO CONTINUE TO TAKE

24   FULL DEPOSITIONS OF THE WITNESSES THAT WE HAVE ALREADY

25   DESIGNATED AND THEN SEEK TO INCREASE THE TIME THAT THEY ARE

1    SEEKING FOR THESE ADDITIONAL WITNESSES.

2         AND WE HAD A PRIOR DISCUSSION WITH JUDGE CHEN ON THIS

3    ISSUE AND VERY CLOSELY DISCUSSED THE ISSUES AND FOCUSED ON THE

4    TOTAL NUMBER OF HOURS SOUGHT.

5         THE COURT:  THANK YOU FOR THAT ARGUMENT.  I WANT TO

6    TURN TO THE NEXT ISSUE.

7         LET ME JUST RESOLVE THIS ONE FIRST.

8         MR. KASTENS:  CAN I JUST --

9         THE COURT:  I WILL MAKE THIS VERY EASY FOR YOU,

10   MR. KASTENS.  YOU ARE GOING TO GET TO TAKE YOUR DEPOSITIONS.

11        DO YOU WANT TO ADD ANYTHING IN LIGHT OF THAT?

12        MR. KASTENS:  NO, YOUR HONOR.

13        THE COURT:  I'M NOT INTERESTED IN INCREASING THE

14   NUMBER OF HOURS, BUT I WILL GIVE YOU THE DEPOSITIONS.

15        IT SEEMS TO ME ONE OF THE SHORTCOMINGS OR SHORTFALLS OF

16   AN HOURS CAP, WHICH IS SORT OF A DAVID RIER WAY OF MANAGING

17   DEPOSITIONS WHICH IS THAT THERE IS THE POTENTIAL FOR A SERIES

18   OF LITTLE ONESIE, TWOSIES THAT ARE SOMEWHAT DUPLICATIVE BUT

19   THAT'S THE PRICE OF THE APPROACH THAT WE HAVE ALL SIGNED UP

20   FOR.  SO THAT REQUEST IS GRANTED.

21        LET'S TALK ABOUT DOCK REQUEST 74.

22        MR. KASTENS:  YOUR HONOR, IF I CAN, I WOULD LIKE TO

23   DISCUSS DOCK REQUEST 74 AND INTERROGATORY RESPONSE 12 TOGETHER

24   BECAUSE I THINK THERE ARE SOME RELATED ISSUES THERE.

25        BASICALLY WHAT WE ARE TRYING TO GET WITH THESE REQUESTS

1    IS UNDERSTANDING THE SUPPLY CHAIN FOR THEIR PRODUCTS.

2         FOR THE RFP WE DON'T REALLY UNDERSTAND WHY THEY HAVE

3    REFUSED TO ANSWER THAT ONE.  IT'S NARROWLY TAILORED JUST TO

4    FIND OUT ONE PARTICULAR PIECE OF INFORMATION REGARDING THE

5    HOSTING OF THEIR SOURCE CODE WHICH IS CERTAINLY A PART IN THEIR

6    SUPPLY CHAIN FOR MAKING THEIR PRODUCTS, AND WE DEFINITELY THINK

7    IT IS RELEVANT.

8         THE COURT:  SO I TAKE IT THE END GAME HERE IS YOU

9    WOULD LIKE TO ESTABLISH SOME PORTION OF THE ACCUSED

10   INSTRUMENTALITY OR FUNCTIONALITY IS MADE IN THE UNITED STATES

11   SUCH THAT IT'S SUBJECT TO 271(A) AND ALL OF THAT.

12        MR. KASTENS:  CORRECT, YOUR HONOR.

13        WE WANT TO ESTABLISH HOW THEY MAKE THE PRODUCTS AND I

14   THINK THAT IS DISCOVERABLE INFORMATION.

15        THE ISSUE WE HAVE RUN INTO IS THAT A NUMBER OF THE

16   PRODUCTS THAT THEY ARE BOOKING AS FOREIGN SALES WE BELIEVE ARE

17   ACTUALLY EITHER SOLD MADE OR HAVE ANOTHER NEXUS WHERE THEY ARE

18   ATTRIBUTABLE TO THE US.

19        THE COURT:  IS THERE A 271(F) ISSUE AS WELL?

20        MR. KASTENS:  271(F) HAS NOT BEEN ASSERTED.  FOR

21   EXAMPLE, WE BELIEVE THEIR SALES STAFF IS WITHIN THE U.S. AS

22   WELL, THE SALES ARE MADE WITHIN THE U.S.

23        BUT THAT GOES TO INTERROGATORY NUMBER 12 JUST REGARDS TO

24   THE MAKING WHICH IS WE DON'T BELIEVE THEY HAVE GIVEN US A FULL

25   RESPONSE.  THEY HAVE GIVEN 33(D), A NUMBER OF RANDOM DOCUMENTS

1   THAT GIVE SOME LITTLE PICTURES, IT SEEMS LIKE THEY ARE

2   CHERRY-PICKING WHAT KIND OF INFORMATION WE CAN KNOW ABOUT --

3           THE COURT:  WELL, BUT ROG 12 SIMILARLY ASKS, NOT

4   IDENTICALLY, BUT SIMILARLY ASKS FOR WHERE THE SERVERS ARE

5   LOCATED, CORRECT?

6           MR. KASTENS:  I DON'T KNOW IF IT ASKS WHERE THE

7   SERVERS ARE LOCATED, IT ASKS FOR THE SUPPLY CHAIN.  I BELIEVE

8   IT ASKS SOME INFORMATION REGARDING WHERE THE SERVERS ARE

9   LOCATED.

10      I DON'T KNOW IF IT ASKS SPECIFICALLY WHERE THE SERVERS

11  FOR THE SOURCE HOSTING ARE LOCATED.  BUT WE JUST WANT TO KNOW

12  WHAT THEIR SUPPLY CHAIN IS FOR MAKING THE PRODUCTS AND I THINK

13  THAT IS, YOU KNOW, VERY RELEVANT REGARDING TO SEE IF THERE'S

14  INFRINGEMENT FOR MAKING THE PRODUCTS IN THE U.S. IN ADDITION TO

15  TESTING THE PRODUCTS WITHIN THE U.S. AND OTHER ISSUES RELATED

16  TO THINGS THAT THEY ARE BOOKING AS FOREIGN SALES.

17          THE COURT:  THANK YOU.

18      MS. EVANS.

19          MS. EVANS:  ADDRESSING FIRST RFP NUMBER 74.  IT

20  NARROWLY ASKS FOR THE LOCATION OF WHERE SOURCE CODE IS HOST.

21  WE HAVE ALREADY AGREED TO PROVIDE INFORMATION ON THE LOCATION

22  WHERE BLUECOAT DOES RESIDE, INCLUDING WHERE BLUECOAT TESTS USES

23  ADMINISTERS CONTROLS INSTALLED CODE AND WHERE IT'S COMPILED.

24      OUR POSITION IS THAT WHERE IT'S ACTUALLY HOSTED IS

25  IRRELEVANT.  THAT INFORMATION, THEY HAVEN'T ACCUSED THE SERVERS

1    IN THIS CASE NOR DOES THE SERVER ITSELF HAVE SOURCE CODE THAT'S

2    OPERABLE TO PERFORM ANY OF THE CLAIMS.

3         THEY HAVEN'T MADE SUCH ASSERTIONS.  IT'S SIMPLY NOT

4    RELEVANT IN LIGHT OF THE FACT THAT IT'S NOT THE ACCUSED

5    INSTRUMENTALITY.  AND GIVEN THAT WE HAVE PROVIDED, OFFERED TO

6    PROVIDE ALL OF THIS ADDITIONAL MATERIAL, WE JUST DON'T SEE HOW

7    THAT SHOULD BE RELEVANT.

8         THE COURT:  YOU MAY ULTIMATELY BE RIGHT THAT HOSTING

9    SOURCE CODE ALONE IS INSUFFICIENT TO TRIGGER LIABILITY UNDER

10   271(A), BUT ISN'T IT AT LEAST DISCOVERABLE?

11        I MEAN, IT WOULD SEEM THAT UNTIL WE AMEND 26 IN A FEW

12   MONTHS OR I GUESS IT'S ABOUT A YEAR FROM NOW, WE ARE STUCK WITH

13   THIS RATHER BROAD STANDARD.  AND IT WOULD SEEM THAT IN ONE IS

14   HOSTING SOURCE CODE IN THE UNITED STATES, FOR EXAMPLE, THAT

15   WOULD BEAR ON WHETHER THAT SOURCE CODE IS BEING USED FOR

16   EXAMPLE IN THE UNITED STATES.

17        SO WHY ISN'T THAT ENOUGH TO JUSTIFY THE REQUEST?

18        MS. EVANS:  SO IF THE SOURCE CODE IS HOSTED, IT'S

19   JUST SITTING THERE, IT'S NOT DOING ANYTHING, IT'S NOT BEING US

20   USED, IT'S NOT EVEN OPERABLE TO DOING ANYTHING.  IT HASN'T BEEN

21   COMPILED, IT HASN'T BEEN RUN, IT'S NOT BEEN INSTALLED ON AN

22   ACCUSED PRODUCT, IT'S JUST DEAD SOURCE CODE.

23        THE COURT:  RIGHT.

24        BUT IF IT'S -- I TEND TO AGREE THAT AT LEAST AS I RECALL,

25   MOST SOURCE CODE REPOSITORIES HAVE SOME TYPE OF ESSENTIAL FORCE

1    SERVER.

2         FOR EXAMPLE, YOU HAVE A CHECK OUT SHUTTLE SYSTEM WHERE CODE

3    IS BASICALLY DOWNLOADED LOCALLY, UPON REQUEST OR DEMAND THE

4    DEVELOPER WORKS ON IT THEN CHECKS IT BACK IN.

5         THE SERVER ITSELF DOES NOTHING MORE, NOTHING LESS TO HOST

6    OR HOLD THE CODE.  I TEND TO AGREE WITH YOU THERE.

7              MS. EVANS:  AND WE HAVE EXPRESSLY AGREED TO PROVIDE

8    THE INFORMATION REGARDING THE LOCATION AND THE USES OF THE

9    SOURCE CODE AS WELL AS THE TESTING OF THE SOURCE CODE AS WELL

10   AS THE COMPILATION OF THE SOURCE CODE.

11             THE COURT:  YOU JUST DON'T WANT TO TELL THEM WHERE

12   YOU ARE HOSTING IT.

13             MS. EVANS:  IT JUST DOESN'T SEEM RELEVANT.

14             THE COURT:  WELL, BUT IF YOU ARE HOSTING THE -- LET'S

15   ASSUME JUST FOR THE SAKE OF OUR CONVERSATION BECAUSE I DON'T

16   KNOW WHAT THE FACTS ARE HERE.  BUT LET'S ASSUME THAT BLUECOAT

17   IS HOSTING SOURCE CODE FOR AN ACCUSED INSTRUMENTALITY IN UTAH.

18   LET'S JUST SAY THAT'S TRUE.  WOULDN'T THAT TEND TO SHOW THAT

19   THE SOURCE CODE HAS BEEN MADE IN UTAH?

20        TO THE EXTENT THE SOURCE CODE IS THE PRODUCT AND THE

21   PRODUCT, WHAT'S BEING ACCUSED OF DIRECT INFRINGEMENT?

22             MS. EVANS:  WE DON'T BELIEVE THE SOURCE CODE HAS BEEN

23   ACCUSED OF INFRINGEMENT ALONE IT'S ONLY AS IT'S INSTALLED ON

24   THE ACCUSED PRODUCTS.

25        THE ACCUSED PRODUCTS IN THIS CASE ARE VERY SPECIFIC, IT'S

```
 1   PROXY AV SERVER, PROXY SG SERVER.  THESE ARE DEVICES, THESE ARE

 2   ACCUSED FUNCTIONALITIES.

 3            THE COURT:  OKAY.  BUT AGAIN, MAYBE I DIDN'T FULLY

 4   APPRECIATE THE RESPONSE.  IF YOU'VE GOT A SERVER IN UTAH THAT

 5   IS HOSTING THE CODE IN SOURCE FORM, IT MAY BE THAT THAT SOURCE

 6   IS CHECKED OUT AND COMPILED AND ASSEMBLED OUTSIDE OF UTAH AND

 7   INDEED OUTSIDE OF THE UNITED STATES.

 8       WOULDN'T THAT TEND TO SHOW AND AGAIN IN THE DISCOVERY

 9   STAGE NOT AT THE PROOF STAGE, THAT THERE IS A MAKING OF THE

10   PRODUCT IN UTAH THAT TRIGGERS 271(A) LIABILITY.

11            MS. EVANS:  WE DON'T THINK SO BECAUSE THE PRODUCT

12   DOESN'T EXIST YET.  THE PRODUCT HAS TO BE, YOU'VE GOT YOUR

13   PHYSICAL BOX AND YOU INSTALL THE CODE ON IT AND IT'S THE

14   INSTALLATION OR COMPILATION AND USE OF THE CODE ON THE PRODUCT

15   THAT BECOMES THE ACCUSED DEVICE.

16       WHEN YOU'VE GOT SOURCE CODE THAT'S JUST BEEN WRITTEN BY

17   PROGRAMMERS AND IS SITTING ON A SERVER THAT DOESN'T DO ANYTHING

18   OTHER THAN HOLD THE SOURCE CODE IT'S NOT BEING USED FOR

19   ANYTHING OR BEING USED TO MAKE A PRODUCT THE PRODUCT IS ONLY

20   MADE AT A LATER STAGE IN TIME.

21       WE HAVE GIVEN DISCOVERY AND AGREED TO GIVE DISCOVERY AS

22   TO WHERE THE SOURCE CODE IS INSTALLED ON THE PRODUCTS AND SO

23   FORTH.

24            THE COURT:  PERHAPS I MISUNDERSTOOD THE NATURE OF THE

25   INFRINGEMENT CLAIMS HERE.  WE HAVE BEEN TALKING ABOUT 271(A).
```

1    IS THERE A CLAIM FOR CONTRIBUTORY INFRINGEMENT OR 271(C) IN

2    THIS CASE?

3              MS. EVANS:  I BELIEVE THERE HAVE BEEN ACCUSATIONS OF

4    INDIRECT INFRINGEMENT BUT THEY HAVE NOT BEEN MADE WITH ANY

5    SPECIFICITY.  THERE'S BEEN A GENERIC STATEMENT IN THEIR

6    INFRINGEMENT PLEADINGS.

7              THE COURT:  ALL RIGHT.

8              MS. EVANS:  AND THEN WITH REGARD TO INTERROGATORY 12,

9    IF I MAY ADDRESS THAT.

10        THAT INTERROGATORY ASKS FOR INFORMATION ABOUT THE

11   LOCATION OF BLUECOAT'S PRODUCTS WERE MANUFACTURED FROM THE DATE

12   OF FIRST SALE GOING FORWARD.

13        WE HAVE PROVIDED THE DOCUMENTS THAT WERE RESPONSIVE TO

14   THAT INFORMATION AS MAINTAINED IN THE ORDINARY COURSE OF OUR

15   CLIENT'S BUSINESS.

16        THE ISSUE WITH THIS INTERROGATORY IS THAT WE SUPPLEMENTED

17   THEN THEY NEVER GOT BACK TO US.  THEY NEVER SENT US A LETTER IS

18   SAID WE THINK THERE'S DEFICIENCIES.  THEY NEVER GAVE US A CALL

19   AND SAID THERE'S DEFICIENCIES.  THEY NEVER SAID, LET'S HAVE A

20   MEET AND CONFER AND TALK ABOUT THIS.

21        SO WE WEREN'T EVEN AWARE THAT THERE WAS AN ISSUE UNTIL WE

22   SAW THEIR MOTION.  AND THAT SEEMS BLATANTLY UNFAIR BECAUSE WE

23   DIDN'T GET THE OPPORTUNITY TO DISCUSS WITH THEM WHAT THE

24   PROBLEMS WERE, WHAT WE MIGHT BE ABLE TO DO TO SUPPLEMENT THAT.

25              THE COURT:  OKAY.

1      SO IF I UNDERSTAND WHAT YOU ARE SAYING THERE IS THIS IS

2   KIND OF A GARDEN VARIETY FAILURE ON FINJAN'S PART TO SATISFY

3   THE MEET AND CONFER OBLIGATIONS OF THIS COURT'S LOCAL RULES.

4      MS. EVANS:  YES.

5      AND JUST TO GIVE AN EXAMPLE, IN THEIR MOTION THEY MADE

6   REFERENCE TO DELL, FOR EXAMPLE, AND SAID THAT WE HADN'T

7   PRODUCED DOCUMENTS REGARDING DELL.  IF THEY HAD JUST GIVEN US A

8   CALL AND HAD A MEET AND CONFER WITH US, THEY WOULD HAVE LEARNED

9   THAT DELL ISN'T A MANUFACTURER OF ANY OF THE ACCUSED PRODUCTS.

10  DELL DOES MANUFACTURE HARDWARE FOR NON ACCUSED PRODUCTS, BUT

11  THEY ARE NOT AT ISSUE IN THIS CASE.  IF THEY WOULD HAVE CALLED

12  US WE COULD HAVE HAD THAT DISCUSSION --

13      THE COURT:  YOU ARE REFERENCING DOCUMENT PRODUCTION

14  EVEN THOUGH WE ARE TALKING ABOUT AN INTERROGATORY RESPONSE

15  BECAUSE YOU RELIED ON 33(D) AS PART OF YOUR RESPONSE?

16      MS. EVANS:  THAT'S CORRECT.

17      THE COURT:  OKAY.

18     ANY LAST POINTS, MS. EVANS, I THINK I HAVE YOUR POSITION.

19      MS. EVANS:  I THINK YOU DO AS WELL.

20      THE COURT:  MR. KASTENS, ANY LAST WORD HERE?

21      MR. KASTENS:  YES.

22     I WOULD JUST LIKE TO ADDRESS THE ASPECT RELATED TO NOT

23  MEETING AND CONFERRING.

24     WE DID MEET AND CONFER ON THIS INTERROGATORY.  THEY DID

25  SUPPLEMENT IT LATER.  THEY DIDN'T GIVE US THE INFORMATION WE

1    REQUESTED.  WE LATER SENT A LETTER, I BELIEVE IT WAS EXHIBIT E

2    TO OUR MOTION, AND MY UNDERSTANDING IS THERE ARE OTHER ISSUES

3    EXTENDED IN THERE WITH IT, BUT I BELIEVE INTERROGATORY 12 IS

4    ADDRESSED IN THERE.

5              THE COURT:  BUT AS TO INTERROGATORY 12, DID YOU EVER

6    PICK UP THE PHONE AND SAY LET'S TALK ABOUT THE SUPPLEMENTAL

7    RESPONSE, WE THINK THERE ARE PROBLEMS.

8              MR. KASTENS:  NO, I BELIEVE WE E-MAILED THEM ABOUT

9    IT.

10             THE COURT:  OKAY.  ANY LAST WORDS.

11             MR. KASTENS:  I'M SORRY, I DID HAVE ONE, IT'S JUST

12   VERY BRIEF.

13        THEY MENTION CITING THE DELL CONTRACT.  THERE'S NO CONTEXT

14   AT ALL TO THEIR -- THEY JUST HAVE 33(D), HERE'S 12 DOCUMENTS

15   THAT RELATE TO THIS ISSUE.  ABSOLUTELY NO CONTEXT.  THEY ARE

16   OBVIOUSLY IN THE BEST POSITION TO SAY WHO MAKES THE ACCUSED

17   PRODUCTS.  IT'S SOMETHING YOU CAN PUT IN A CHART EASILY AND IT

18   SHOULD BE QUITE SIMPLE.

19             THE COURT:  ALL RIGHT.  THANK YOU.

20        ON THIS LAST ISSUE, LET ME TAKE THESE ITEMS UP ONE AT A

21   TIME.

22        AS FOR THE INTERROGATORY RESPONSE, I AM NOT SATISFIED

23   THAT THE MEET AND CONFER REQUIREMENTS OF THIS COURT WERE MET.

24   AND ON THAT BASIS, THAT PROCEDURAL BASIS ALONE, I'M GOING TO

25   DENY THE REQUEST FOR FURTHER RELIEF.

1          AS FOR DOCUMENT REQUEST 74, THIS IS A VERY INTERESTING

2     AND HARD QUESTION.  BUT I THINK ON BALANCE THAT THE HOSTING OF

3     SOURCE CODE IS DISCOVERABLE TO THE EXTENT THAT IT CAN LEAD TO

4     ADMISSIBLE EVIDENCE ON THE QUESTION OF LIABILITY UNDER 271(A)

5     AND PERHAPS ALSO 271(C), SO I'M GOING TO ORDER THAT DOC REQUEST

6     74 BE SUPPLEMENTED.  BUT INTERROGATORY 12 NEED NOT.

7          UNLESS THERE'S ANYTHING FURTHER, I DO HAVE OTHER PARTIES

8     I NEED TO TURN TO.

9          THANK YOU.

10          THE COURT:  LET'S TAKE A FIVE-MINUTE MINUTE RECESS,

11     AND THEN WE WILL RESUME.

12          (WHEREUPON A RECESS WAS TAKEN.)

13          (WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13              THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____
     SUMMER A. FISHER, CSR, CRR
25   CERTIFICATE NUMBER 13185          DATED: 11/7/14