EDWARD G. POPLAWSKI (State Bar No. 113590)
epoplawski@wsgr.com
OLIVIA M. KIM (State Bar No. 228382)
okim@wsgr.com
BRIAN LAM (State Bar No. 272624)
blam@wsgr.com
FERRELL ALMAN (State Bar No. 287746)
falman@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

CHRISTOPHER D. MAYS (State Bar No. 266510)
cmays@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

Counsel for Defendant
BLUE COAT SYSTEMS, INC

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>BLUE COAT SYSTEMS, INC., a Delaware Corporation,<br><br>    Defendant. | CASE NO.: 13-cv-03999-BLF-PSG<br><br>**DEFENDANT BLUE COAT SYSTEMS, INC.'S MOTION TO STRIKE INFRINGEMENT THEORIES NOT DISCLOSED IN PLAINTIFF FINJAN, INC.'S INFRINGEMENT CONTENTIONS**<br><br>Date: June 4, 2015<br>Time: 9 a.m.<br>Place: Courtroom 3, 5th Floor<br>Before: Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................................... - 1 -

RELIEF REQUESTED ............................................................................................................. - 1 -

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... - 1 -

I.  INTRODUCTION ......................................................................................................... - 1 -

II.  BACKGROUND ........................................................................................................... - 2 -

III.  LEGAL STANDARD ................................................................................................... - 4 -

IV.  ARGUMENT ................................................................................................................ - 5 -

    A.  Finjan's Infringement Theories Identifying Accused Features Not Disclosed In Its Infringement Contentions Should Be Stricken. ......................................... - 5 -

    B.  Finjan's Boilerplate Language For Its Contentions Of Infringement Under The Doctrine Of Equivalents Is Not Sufficient. .................................................. - 8 -

    C.  Finjan Failed To Identify Any Pre-Litigation Conduct In Its Willful Infringement Contentions. ................................................................................. - 10 -

V.  CONCLUSION ........................................................................................................... - 12 -

# TABLE OF AUTHORITIES

**CASES**     **PAGE(S)**

*Adobe Sys. Inc. v. Wowza Media Sys.*, No. 11-cv-02243-JST, 2014 U.S. Dist. LEXIS 23153 (N.D. Cal. Feb. 23, 2014) ............................................................. 4, 7, 8, 9, 11

*Asus Computer Int'l v. Round Rock Research, LLC*, No. 12-cv-02099 JST (NC), 2014 U.S. Dist. LEXIS 50728 (N.D. Cal. Apr. 11, 2014) ............................................................. 7, 8

*Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.*, No. C 11-04049 JW, 2012 WL 1030031 (N.D. Cal. Mar. 22, 2012) ............................................................. 11

*Blue Spike, LLC v. Adobe Sys., Inc.*, No. 14-cv-01647-YGR (JSC), 2015 WL 335842 (N.D. Cal. Jan. 26, 2015) ............................................................. 9, 10, 11, 12

*Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, No. 11-cv-05973 PSG, 2013 U.S. Dist. LEXIS 120404 (N.D. Cal. Aug. 22, 2013) ............................................................. 8

*Finjan, Inc. v. Proofpoint, Inc.*, No. 13-cv-05808-HSG, 2015 WL 1517920 (N.D. Cal. Apr. 2, 2015) ............................................................. 1, 10

*Fujitsu Ltd. v. Belkin Int'l, Inc.*, No. 10-cv-03972-LHK, 2012 U.S. Dist. LEXIS 142102 (N.D. Cal. Sept. 28, 2012) ............................................................. 8

*In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007) ............................................................. 10, 11

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355 (Fed. Cir. 2006) ............................................................. 4, 8

*Oracle Am., Inc. v. Google, Inc.*, Case No. 10-cv-3561, 2011 U.S. Dist. LEXIS 121446, 2011 WL 4802535 (N.D. Cal. Oct. 11, 2011) ............................................................. 7

*SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278 (Fed. Cir. 2005) ............................................................. 8

**RULES**

Patent L.R. 3-1 ............................................................. 3, 4, 7, 8, 10

Patent L.R. 3-2 ............................................................. 3

Patent L.R. 3-6 ............................................................. 4, 7, 11

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on June 4, 2015, or as soon thereafter as the matter may be heard by the Honorable Beth Labson Freeman in Courtroom 3, 5th Floor, United States District Court for the Northern District of California, 280 South 1st Street, San Jose, CA 95113, Defendant Blue Coat Systems, Inc. ("Blue Coat") shall and hereby does move the Court to strike the following: (1) Plaintiff Finjan, Inc.'s ("Finjan") infringement theories identifying accused features not disclosed in its Infringement Contentions; (2) Finjan's theories of infringement under the doctrine of equivalents for failure to sufficiently assert them in its Infringement Contentions; and (3) Finjan's willful infringement theories for failure to set forth any allegations of Blue Coat's pre-litigation conduct in its willful infringement contentions.  The motion is based on this notice of motion and supporting memorandum of points and authorities, the Declaration of Olivia M. Kim in in support of the motion ("Kim Decl.") and exhibits attached thereto, and such other written or oral argument as may be presented at or before the time this motion is deemed submitted by the Court.

## RELIEF REQUESTED

Blue Coat seeks to strike (1) Finjan's infringement theories identifying accused features not disclosed in its Infringement Contentions; (2) Finjan's theories of infringement under the doctrine of equivalents for failure to sufficiently assert them in its Infringement Contentions; and (3) Finjan's willful infringement theories for failure to set forth any allegations of Blue Coat's pre-litigation conduct in its willful infringement contentions.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.  INTRODUCTION**

The Patent Local Rules in this district are designed to further the goal of full, timely discovery and provide all parties with adequate notice and information to litigate their cases. Accordingly, the parties are required to crystallize their theories early in the case and to adhere to those theories once they are disclosed.  Finjan failed to adhere to the Patent Local Rules.

First, Finjan for the first time disclosed new infringement theories in its expert reports:

- Cookie2 as satisfying the "security profile" limitation for the '844 and '731 patents;

- ProxySG indexing a file using a hash of the URL file as meeting element 1(c) of the '731 patent;
- ProxySG's policy cache meeting the "policy index" element of the asserted claims of the '968 patent;
- ProxySG's ability to inject code, in particular ProxySG's Pop-Up Blocker feature, as infringing the asserted claims of the '822 and '633 patents;
- Content Analysis System ("CAS") and Malware Analysis Appliance ("MAA") communicating "mobile protection code" found in the asserted claims of the '633 patent;
- MAA constituting as an "information re-communicator" for elements 14(b) and 14(c) of the '633 patent; and
- ProxySG sending "mobile protection code" to MAA as satisfying element 14(d) of the '633 patent.

These new infringement theories identifying new accused features were never disclosed in its Infringement Contentions. Accordingly, they should be stricken.

Second, for its contentions of infringement under the doctrine of equivalents, Finjan merely used the same boilerplate language for all of the asserted claims in its Infringement Contentions. Finjan failed to specifically explain how and why the doctrine of equivalents might lead to infringement. Consequently, Finjan's doctrine of equivalents assertions should be stricken.

Lastly, Finjan's willful infringement contentions should be stricken because Finjan failed to provide any allegations or basis in its Infringement Contentions as to whether Blue Coat willfully infringed based on its pre-litigation conduct, including any allegation that Blue Coat had any knowledge of the patents-in-suit prior to the filing of the Complaint.

II.  BACKGROUND

This case involves six patents-in-suit: U.S. Patent Nos. 6,804,780; 6,154,844; 7,418,731; 7,058,822; 7,647,633; and 6,695,968. On January 16, 2014, Finjan served its Infringement

1  Contentions pursuant to Patent L.R. 3-1 and 3-2.  (Ex. 1,[1] Finjan's Infringement Contentions.)  On July 22, 2014, Finjan filed a motion for leave to supplement its Infringement Contentions to add additional accused products.  (Dkt. 68.)  On October 16, 2014, Judge Grewal granted-in-part Finjan's motion for leave to supplement, allowing Finjan to add CAS as one of accused products for the '731 patent.[2]  (Dkt. 116, Order at 5-6.)  Judge Grewal denied all other relief.  (*Id.*)

On January 12, 2015, Finjan served its infringement expert reports of Dr. Michael Mitzenmacher for the '780, '968, and '731 patents (Ex. 9) and Dr. Eric Cole for the '844, '822, and '633 patents (Ex. 10).  Finjan also served an expert report of Dr. Nenad Medvidovic regarding technology of the patents-in-suit.  (Ex. 11.)  As discussed in detail below, Finjan disclosed for the first time in its infringement expert reports a number of new accused features, details of infringement theories under the doctrine of equivalents, and its assertions that Blue Coat copied Finjan's patents prior to the filing of the Complaint.  (*See* Exs. 9, 10 and 11.)

On March 2, 2015, Finjan served its Final Election of Asserted Claims.  (Ex. 8.)  In sum, Finjan's asserted claims and accused products are listed below:

| Patent | Asserted Claims | Accused Product(s) |
|---|---|---|
| '780 | 9, 13 and 18 | ProxySG + ProxyAV |
| '844 | 1, 7, 11, 15, 16 and 41 | WebPulse |
| '731 | 1 and 17 | ProxySG + WebPulse + WebFilter |
| '822 | 9 and 10 | ProxySG |
| '633 | 8 and 14 | 1. ProxySG (claim 8 only) <br> 2. MAA <br> 3. ProxySG + CAS + MAA |
| '968 | 1, 9 and 33 | ProxySG + WebPulse + WebFilter |

---

[1] All exhibits are attached to the Declaration of Olivia M. Kim in support of this motion filed concurrently herewith.

[2] Finjan no longer asserts CAS as one of the accused products for the '731 patent.  (*See, e.g.*, Dkt. 179-3, Finjan's Summary Judgment Motion at 6, listing accused products.)

## III. LEGAL STANDARD

Patent L.R. 3-1 requires, among other things, disclosure of the following information in patentee's Infringement Contentions:

* * *

(c) A chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function.

* * *

(e) Whether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality;

* * *

(h) If a party claiming patent infringement alleges willful infringement, the basis for such allegation.

Patent L.R. 3-1.

"The purpose of these disclosures is to further the goal of full, timely discovery and provide all parties with adequate notice of and information with which to litigate their cases." *Adobe Sys. Inc. v. Wowza Media Sys.*, No. 11-cv-02243-JST, 2014 U.S. Dist. LEXIS 23153, at *46-47 (N.D. Cal. Feb. 23, 2014) (internal citations omitted). Indeed, the Patent Local Rules are designed to "require parties to ***crystallize their theories of the case early in litigation and to adhere to those theories once they have been disclosed***." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 n.12 (Fed. Cir. 2006) (emphasis added). "Once served, the infringement contentions constitute the universe of infringement theories" and may only be amended by a showing of good cause. *Adobe,* 2014 U.S. Dist. LEXIS 23153 at *47 (citing Patent L.R. 3-6). Notably, in this case, Judge Grewal had found that: "Patent cases are hard enough—and expensive enough—when the issues in dispute are fixed. When issues shift, or worse, grow in number, a case can become unmanageable for all concerned. ***And so our court's local patent rules 'require parties to crystallize their theories of the case early in litigation and to adhere to those theories once they have been disclosed*.'** This crystallization takes the form of contentions

about infringement, invalidity and the like." (Dkt. 116, 10/16/14 Order at 2, emphasis added; *see also* Dkt. 168, 01/13/15 Hrg. Tr. at 18:15-25.)

## IV.   ARGUMENT

### A.   Finjan's Infringement Theories Identifying Accused Features Not Disclosed In Its Infringement Contentions Should Be Stricken.

Finjan disclosed for the first time in its expert reports the following infringement theories, which identified new accused features that were not disclosed in its Infringement Contentions:

- <u>'844 and '731 Patents</u>:  Cookie2 was identified in Finjan's infringement expert reports as satisfying the "security profile" limitation for the '844 and '731 patents. (*See, e.g.*, Ex. 10, Cole Report at ¶¶ 134-139 (element 1(c) of the '844 patent); Ex. 9, Mitzenmacher Report at ¶ 825 (element 1(b) of the '731 patent); *see also* Dkt. 175-4, Finjan's Summary Judgment Motion at 7:7-10, 18:18-19:5, and 19:11-18.)  However, Finjan failed to identify Cookie2 (or any of Cookie2 fields) as meeting the "security profile" limitation, let alone even mention Cookie2 as any infringing feature of the asserted claims of the '844 patent or the '731 patent in its Infringement Contentions.  (*See, e.g.*, Ex. 5, Finjan's App. D ('844 patent claim charts) to Infringement Contentions at 4-9 (element 1[c]); Ex. 7, Finjan's App. F ('731 patent claim charts) to Infringement Contentions at 3-7 (element 1(b)).)

- <u>'731 Patent</u>:  In addition to the above for the '731 patent, Finjan's infringement expert disclosed that ProxySG indexing a file using the hash of the URL file as meeting element 1(c).  (Ex. 9, Mitzenmacher Report at ¶ 857; *see also* Dkt. 175-4, Finjan's Summary Judgment Motion at 23:14-17.)  But such accused feature was not disclosed or even mentioned in its Infringement Contentions. (Ex. 7, Finjan's App. F ('731 patent claim charts) to Infringement Contentions at 7-10 (element 1(c)).)  Indeed, Finjan never disclosed any hashing, let alone hashing performed by ProxySG for the asserted claims of the '731 patent.  (*Id.*)

- <u>'968 Patent</u>:  Finjan's theory that the policy cache in the ProxySG meets the "policy index" element in the asserted claims of the '968 patent was identified for the first time in its infringement expert report.  (*See, e.g.*, Ex. 9, Mitzenmacher Report at ¶ 331 (element 1(b) of the '968 patent); *see also* Dkt. 175-4, Finjan's Summary Judgment Motion at 24:13-25:7.)  Finjan

failed to disclose such theory in its Infringement Contentions. (*See, e.g.*, Ex. 6, Finjan's App. E ('968 patent claim charts) to Infringement Contentions at 2-3 (element 1(b)).) Indeed, there is no mention of "policy cache" in Finjan's Infringement Contentions. (*Id.*)

- <u>'822 and '633 Patents</u>: Four new theories of infringement, which identified new accused features, were identified for the first time in Finjan's infringement expert report as follows:

(1) Finjan's theory that that ProxySG's ability to inject code, in particular ProxySG's Pop-Up Blocker feature, infringes the asserted claims of the '822 and '633 patents was identified for the first time its infringement expert report. (*See, e.g.*, Ex. 10, Cole Report at ¶¶ 500-502 (element 9(d) of the '822 patent) and ¶¶ 755-757 (element 8(d) of the '633 patent); *see also* Dkt. 175-4, Finjan's Summary Judgment Motion at 8:11-13, 20:10-21:1.) Such theory was never disclosed in its Infringement Contentions. (*See, e.g.*, Ex. 3, Finjan's App. B ('822 patent claim charts) to Infringement Contentions at 36-43 (element 9(d)); Ex. 4, Finjan's App. C ('633 patent claim charts) to Infringement Contentions at 48-56 (element 8(d)).) Indeed, the words "inject" or "Pop-Up" cannot be found in Finjan's Infringement Contentions. (*See id.*)

(2) Finjan's infringement theory that the accused products CAS and MAA communicate "mobile protection code" to infringe the asserted claims of the '633 patent was disclosed for the first time in its infringement expert report. (*See, e.g.*, Ex. 10, Cole Report at ¶ 746 (element 8(d) of the '633 patent); *see also* Dkt. 175-4, Finjan's Summary Judgment Motion at 20:15-21.) Finjan's Infringement Contentions never identified such theory. (*See, e.g.*, Ex. 4, Finjan's App. C ('633 patent claim charts) to Infringement Contentions at 48-56 (element 8(d)).)

(3) Finjan's infringement theory that MAA constitutes an "information-re-communicator" for elements 14(b) and 14(c) of the '633 patent was identified for the first time in Finjan's infringement expert report. (*See, e.g.*, Ex. 10, Cole Report at ¶¶ 881 and 920; *see also* Dkt. 175-4, Finjan's Summary Judgment Motion at 21:10-11, 21:21-26.) Finjan's Infringement Contentions never identified MAA as constituting an "information re-communicator." (*See, e.g.*, Ex. 4, Finjan's App. C ('633 patent claim charts) to Infringement Contentions at 94-97 (elements 14(b) and 14(c)).)

(4) Finjan's infringement theory that ProxySG sends mobile protection code to MAA for element 14(d) of the '633 patent was identified in its motion for summary judgment motion. (Dkt. 175-4, Finjan's Summary Judgment Motion at 22:10-12.)  But such theory was never disclosed in Finjan's Infringement Contentions. (*See, e.g.*, Ex. 4, Finjan's App. C ('633 patent claim charts) to Infringement Contentions at 97-99 (element 14(d)).)

The Patent Local Rules require a party asserting infringement to disclose "[a] chart *identifying specifically where* each limitation of each asserted claim is found within each Accused Instrumentality . . . ." Patent L.R. 3-1(c) (emphasis added).  Finjan failed to specifically identify the above-identified features in its Infringement Contention in accordance with Patent L.R. 3-1(c). Moreover, Finjan failed to seek leave to amend its Infringement Contentions to add these new infringement theories.  "Once served, the infringement contentions constitute the universe of infringement theories" and may only be amended by a showing of good cause. *Adobe*, 2014 U.S. Dist. LEXIS 23153 at *47 (citing Patent L.R. 3-6).  Finjan had plenty of opportunities to seek leave to add the undisclosed theories of infringement during this case.  For example, Blue Coat's source code was made available for inspection on April 4, 2014. (Kim Decl. at ¶ 2.)  But, Finjan never sought leave to amend its infringement contentions to add the above-identified undisclosed theories even after receiving Blue Coat's confidential documents and information.  Notably, when it moved to supplement its Infringement Contentions on July 22, 2014 to include additional accused products, it did not seek to add the undisclosed theories. (Dkt. 68.)

Indeed, "an expert report may not advance a new or alternate theory of infringement." *Adobe*, 2014 U.S. Dist. LEXIS 23153 at *47 (internal quotation marks omitted); *see also Asus Computer Int'l v. Round Rock Research, LLC*, No. 12-cv-02099 JST (NC), 2014 U.S. Dist. LEXIS 50728, at *1-2 (N.D. Cal. Apr. 11, 2014) ("[A] party may not use an expert report to introduce new infringement theories . . . not disclosed in the parties' infringement contentions . . . ."). Notably, "*[i]n the context of patent infringement cases involving software, an expert cannot theorize that certain functions satisfy a claim limitation, unless those functions were previously identified in the party's infringement contentions*." *Adobe*, 2014 U.S. Dist. LEXIS 23153 at *47 (citing *Oracle Am., Inc. v. Google, Inc.*, Case No. 10-cv-3561, 2011 U.S. Dist. LEXIS 121446,

2011 WL 4802535, at *2 (N.D. Cal. Oct. 11, 2011)). "[P]rejudice is inherent in the assertion of a new theory after discovery has closed" because to require the accused party to show prejudice would "create an incentive for late disclosure." *Adobe*, 2014 U.S. Dist. LEXIS 23153 at *53 n.7.

Here, instead of seeking leave to amend its Infringement Contentions, Finjan improperly injected new infringement theories into its infringement expert reports, and further improperly sought summary judgment based on these new infringement theories. The purpose of Finjan's Infringement Contentions was to crystallize its infringement theories early in the litigation, and importantly, to adhere to those theories once they have been disclosed. *O2 Micro*, 467 F.3d at 1366 n.12. Finjan cannot, in expert discovery, for the first time disclose its new infringement theories.

Accordingly, Finjan's theories of infringement not previously disclosed in its Infringement Contentions should be stricken. *See, e.g.*, *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1292 (Fed. Cir. 2005) (finding no abuse of discretion in exclusion of evidence pertaining to theories of infringement not disclosed as required by the local patent rules and the court's scheduling order); *Adobe Sys. Inc.*, 2014 U.S. Dist. LEXIS 23153, at *48-53 (striking plaintiff's new infringement theory presented for the first time in plaintiff's expert's report on infringement that was not disclosed in plaintiff's contentions); *Asus Computer Int'l*, 2014 U.S. Dist. LEXIS 50728, at *1-2 (striking plaintiff's new infringement theories presented for the first time in plaintiff's expert's report on infringement that were not disclosed in plaintiff's contentions); *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, No. 11-cv-05973 PSG, 2013 U.S. Dist. LEXIS 120404, at *6-7 (N.D. Cal. Aug. 22, 2013) (same); *Fujitsu Ltd. v. Belkin Int'l, Inc.*, No. 10-cv-03972-LHK, 2012 U.S. Dist. LEXIS 142102, at *24-29 (N.D. Cal. Sept. 28, 2012) (same).

### B. Finjan's Boilerplate Language For Its Contentions Of Infringement Under The Doctrine Of Equivalents Is Not Sufficient.

Patent L.R. 3-1(e) requires disclosure of "[w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality." However, all of Finjan's contentions of infringement under the doctrine of equivalents have the same language in the Infringement Contentions:

> To the extent that Blue Coat contends that it does not literally infringe this claim, Blue Coat infringes under the doctrine of equivalents. The above described functionality of Blue Coat is at most insubstantially different from the claimed functionality and performs the same function in the same way to achieve the same result. Once Finjan receives non-infringement positions, if any, Finjan may supplement its disclosure. In addition, Finjan may supplement its disclosure once it receives Blue Coat's production of documents with relevant and non-public information, particularly related to its source code.

(*See, e.g.*, Ex. 2, Finjan's App. A ('780 patent claim charts) to Infringement Contentions at 24 (element 9(c)); Ex. 3, Finjan's App. B ('822 patent claim charts) to Infringement Contentions at 43 (element 9(d)); Ex. 4, Finjan's App. C ('633 patent claim charts) to Infringement Contentions at 56 (element 8(d)); Ex. 5, Finjan's App. D ('844 patent claim charts) to Infringement Contentions at 9 (element 1[c]); Ex. 6, Finjan's App. E ('968 patent claim charts) to Infringement Contentions at 3 (element 1(b)); Ex. 7, Finjan's App. F ('731 patent claim charts) to Infringement Contentions at 7 (element 1(b)).) Finjan failed to provide in its Infringement Contentions any explanation as to how or why the accused products have substantially the same function, way, and result compared to the claimed elements. The explanation of Finjan's assertion of doctrine of equivalents was disclosed for the first time in its infringement expert reports. As discussed above, expert reports cannot for the first time disclose new infringement theories. *See, e.g.*, *Adobe*, 2014 U.S. Dist. LEXIS 23153 at *47.

Further, although Finjan stated that it "may supplement its disclosure once it receives Blue Coat's production of documents with relevant and non-public information, particularly related to its source code," Finjan never sought leave to amend its infringement contentions under the doctrine of equivalents, even after it received Blue Coat's production of documents, including Blue Coat's source code. Indeed, Blue Coat's source code was made available for inspection starting on April 4, 2014. (Kim Decl. at ¶ 2.) But even when Finjan moved to supplement its Infringement Contentions on July 22, 2014 to include additional accused products, it did not seek to amend its doctrine of equivalents assertions. (Dkt. 68.)

Because Finjan failed to disclose any specific doctrine of equivalents assertions, and only used boilerplate language without any explanation in its Infringement Contentions, Finjan's doctrine of equivalents contentions should be stricken. *See, e.g., Blue Spike, LLC v. Adobe Sys.,*

*Inc.*, No. 14-cv-01647-YGR (JSC), 2015 WL 335842, *6 (N.D. Cal. Jan. 26, 2015) (striking doctrine of equivalents assertions because "boilerplate language is not enough"; "must explain why the doctrine of equivalents might lead to infringement"); *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-cv-05808-HSG, 2015 WL 1517920, at *10 (N.D. Cal. Apr. 2, 2015) (striking all language in Finjan's infringement contentions asserting the doctrine of equivalents because a generic reservation of its right to argue the doctrine of equivalents is not sufficient).

### C. Finjan Failed To Identify Any Pre-Litigation Conduct In Its Willful Infringement Contentions.

"[T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. . . . The state of mind of the accused infringer is not relevant to this objective inquiry. If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). The Federal Circuit further stated:

> [I]n ordinary circumstances, willfulness will depend on an infringer's prelitigation conduct. It is certainly true that patent infringement is an ongoing offense that can continue after litigation has commenced. However, when a complaint is filed, ***a patentee must have a good faith basis for alleging willful infringement. So a willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct.*** By contrast, when an accused infringer's post-filing conduct is reckless, a patentee can move for a preliminary injunction, which generally provides an adequate remedy for combating post-filing willful infringement. A patentee who does not attempt to stop an accused infringer's activities in this manner should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct. Similarly, if a patentee attempts to secure injunctive relief but fails, it is likely the infringement did not rise to the level of recklessness.

*Id.* at 1374 (citations omitted) (emphasis added).

Patent L.R. 3-1(h) requires that "[i]f a party claiming patent infringement alleges willful infringement, the basis for such allegation." "The allegation must assert that the accused infringer had knowledge of the patent before the patent litigation began." *Blue Spike*, 2015 WL 335842 at

1  *8 (citing *Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.*, No. C 11-04049 JW, 2012 WL 1030031,
2  at *3 (N.D. Cal. Mar. 22, 2012) and *In re Seagate*, 497 F.3d at 1374). "A bare recitation of the
3  required elements for willful infringement is insufficient as is a mere allegation of actual
4  knowledge, without more." *Id*. (internal quotation marks and citations omitted).

5        In its Infringement Contentions, Finjan contended that Blue Coat "has willfully infringed
6  the '780 Patent, '822 Patent, '633 Patent, '844 Patent, '968 Patent, and '731 Patent ***at least as of***
7  ***the time it learned of this action for infringement, which was filed on August 28, 2013***. Despite
8  this knowledge, Defendant continues to proceed with its infringing conduct." (Ex. 1, Infringement
9  Contentions at 15, emphasis added.) Finjan failed to provide any allegations or basis as to
10 whether Blue Coat willfully infringed based on its pre-litigation conduct, including any allegation
11 that Blue Coat had any knowledge of the patents-in-suit prior to the filing of the Complaint. Only
12 for the first time did Finjan assert that Blue Coat copied Finjan's patents prior to the filing of the
13 Complaint in its expert reports. (*See, e.g.*, Ex. 11, Medvidovic Report at ¶¶ 99-100.) As discussed
14 above, expert reports cannot for the first time disclose new infringement theories. *See, e.g.*, *Adobe*,
15 2014 U.S. Dist. LEXIS 23153 at *47.

16       Further, Finjan stated in its Infringement Contentions that it "reserves the right to amend,
17 modify, supplement, or narrow these contentions pursuant to Patent Local Rule 3-6, including
18 providing additional bases for willful infringement, as it obtains additional information over the
19 course of discovery and in light of the Court's claim construction order." (Ex. 1, Infringement
20 Contentions at 16.) However, even after Finjan received Blue Coat's document production and
21 the Court issued its claim construction order on October 20, 2014 (Dkt. 118), Finjan never sought
22 to supplement its contentions with regards to willful infringement. This is true even when it
23 sought to supplement its Infringement Contentions on July 22, 2014 to include additional accused
24 products. (Dkt. 68.)

25       Accordingly, because Finjan failed to provide sufficient willful infringement contentions,
26 in particular that Blue Coat had knowledge of the patents-in-suit before the patent litigation began,

27

28

Finjan's willful infringement contentions should be stricken.[3] *See, e.g., Blue Spike*, 2015 WL 335842 at *8 (striking willful infringement contentions for failure to include any facts to suggest that defendant had any knowledge of the patents-in-suit prior to the filing of the lawsuit).

## V. CONCLUSION

For the foregoing reasons, Blue Coat respectfully submits that its motion to strike be GRANTED.

                         Respectfully submitted,

                         WILSON SONSINI GOODRICH & ROSATI
                         Professional Corporation

DATED:  May 7, 2015       By:  */s/ Olivia M. Kim*
                         EDWARD G. POPLAWSKI
                         OLIVIA M. KIM
                         BRIAN LAM
                         FERRELL ALMAN
                         CHRISTOPHER MAYS

                         Counsel for Defendant
                         BLUE COAT SYSTEMS, INC.

---

[3] Finjan's Complaint nowhere alleges that Blue Coat willfully infringed the patents-in-suit. (*See generally* Dkt. 1.)  This provides an additional independent basis for striking Finjan's willful infringement contentions.  *See Finjan, Inc. v. Proofpoint, Inc.*, 2015 WL 1517920 at *11 (striking willful infringement contentions where plaintiff did not seek willful infringement in complaint).