**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| FINJAN, INC., <br>    Plaintiff, <br> v. <br> BLUE COAT SYSTEMS, INC., <br>    Defendant. | Case No. 13-cv-03999-BLF <br><br> **ORDER ON PARTIES' MOTIONS *IN LIMINE* AND PRETRIAL ORDERS** <br><br> [Re: ECF 282, 284, 286, 288, 290, 300-304] |

  Plaintiff Finjan, Inc. asserts that defendant Blue Coat Systems, Inc. infringes six of its web security patents: U.S. Patent Nos. 6,154,844 ('844 Patent); 6,804,780 ('780 Patent); 6,965,968 ('968 Patent); 7,058,822 ('822 Patent); 7,418,731 ('731 Patent); and 7,647,633 ('633 Patent). This Order addresses the parties' motions *in limine*. For the reasons explained below and on the record at the July 2, 2015 pretrial conference, the motions are decided as follows:

  Plaintiff's Motion *in Limine* No. 1: GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART.

  Plaintiff's Motion *in Limine* No. 2: GRANTED IN PART and DENIED IN PART.

  Plaintiff's Motion *in Limine* No. 3: DENIED.

  Plaintiff's Motion *in Limine* No. 4: GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART.

  Plaintiff's Motion *in Limine* No. 5: GRANTED.

  Defendant's Motion *in Limine* No. 1: GRANTED IN PART and DENIED IN PART.

  Defendant's Motion *in Limine* No. 2: DENIED.

  Defendant's Motion *in Limine* No. 3: DENIED.

Defendant's Motion *in Limine* No. 4: GRANTED IN PART and DENIED IN PART.

Defendant's Motion *in Limine* No. 5: GRANTED IN PART and DENIED IN PART.

## I. PLAINTIFF'S MOTIONS *IN LIMINE*

Plaintiff brings five motions *in limine*, which the Court addresses in turn.

### 1. Plaintiff's Motion *in Limine* No. 1 to Exclude Evidence and Argument Concerning Other Proceedings and Patents.  GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART.

Plaintiff seeks to exclude argument and evidence regarding (1) any co-pending litigation involving Plaintiff; (2) any pending reexamination or *inter partes* review proceedings in the United States Patent and Trademark Office ("PTO") involving Plaintiff's patents; and (3) any patents other than those in suit or those that Defendant has properly asserted as prior art.  Pl.'s MIL #1, ECF 300.  It is Plaintiff's contention that each of these categories of evidence is irrelevant to the issues in this case.

Defendant argues that Plaintiff's litigation practices—in particular, its past and current practices in enforcing patent rights and licensing those rights—are relevant to the determination of a reasonable royalty under the *Georgia-Pacific* factors and that any prejudice can be mitigated by a limiting instruction.  Def.'s Opp. #1 at 1-2, ECF 325; *see also Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).  The Court agrees with Defendant.  Accordingly, Plaintiff's Motion *in Limine* No. 1 to exclude argument and evidence concerning prior and ongoing litigation involving Plaintiff's patents is DENIED.  Defendant shall prepare an appropriate limiting instruction for the Court's consideration.

As to evidence of ongoing PTO proceedings, Defendant admits that such evidence is only relevant to rebut any reliance by Plaintiff on preliminary statements by a PTO examiner that the '822 and '633 Patents are not obvious in light of prior art references asserted in this case.  Def.'s Opp. #1 at 2-4.  Because Plaintiff seeks to exclude "*any* argument and evidence concerning [PTO proceedings]," it would appear that Plaintiff does not intend to rely on the PTO examiner statements that Defendant wishes to rebut, but Plaintiff has not made this clear.  *See* Pl.'s MIL #1 at 3 (emphasis added).  As such, the Court DEFERS ruling on this portion of Plaintiff's first motion *in limine* and will allow Defendant to seek leave to introduce rebuttal evidence from the

1   ongoing PTO proceedings to the extent Plaintiff opens the door in its case in chief.

2   Finally, Defendant argues that evidence of its own patent portfolio is relevant to the
3   determination of damages and to rebut any attempts by Plaintiff to paint Defendant as a "bad
4   actor." Def.'s Opp. #1 at 4-5. Without the benefit of context, the relevance that Defendant argues
5   is not immediately apparent. However, it is plain at this stage that Plaintiff's motion sweeps too
6   broadly. Thus, to the extent Plaintiff seeks to preclude Defendant from introducing generalized
7   background information about its business and patented technology, that request is DENIED. To
8   the extent Plaintiff seeks to preclude Defendant from entering into evidence specific patents from
9   Defendant's portfolio, the Court DEFERS ruling on such request until such time as Defendant
10  actually seeks to introduce such evidence to the jury.

**2. Plaintiff's Motion *in Limine* No. 2 to Preclude Use of Derogatory or Misleading Characterizations of Plaintiff's Business. GRANTED IN PART and DENIED IN PART.**

13  Plaintiff moves to preclude Defendant from using any derogatory or misleading
14  characterizations about Plaintiff's business. Pl.'s MIL #2, ECF 301. Defendant agrees that it will
15  not refer to Plaintiff as a "patent troll." Def.'s Opp. #2 at 1, ECF 326. Defendant intends,
16  however, to present factual evidence concerning Plaintiff's business, which is relevant to a
17  damages analysis under the *Georgia-Pacific* factors. *Id.* 2-5; *Digital Reg of Texas, LLC v. Adobe*
18  *Sys., Inc.*, No. C 12-1971 CW, 2014 WL 4090550, at *12 (N.D. Cal. Aug. 19, 2014). Indeed, both
19  parties have a right to introduce their respective companies to the jury and to provide factual
20  background information concerning the companies. As such, Plaintiff's Motion *in Limine* No. 2 is
21  GRANTED as to uses of the terms "patent troll" and "patent assertion entity,"[1] but DENIED as to
22  neutral, factual statements concerning Plaintiff's business.

---

[1] Although the Court is aware that other courts have permitted use of the term "patent assertion entity," the Court finds that this term carries negative connotations similar to the term "patent troll." *Cf. Digital Reg*, 2014 WL 4090550, at *12; *HTC Corp. v. Tech. Properties Ltd.*, No. 5:08-CV-00882-PSG, 2013 WL 4782598, at *4 (N.D. Cal. Sept. 6, 2013). Furthermore, because there are factual disputes concerning whether Plaintiff is solely a patent *assertion* entity, such term is more likely to mislead a jury than other more neutral and factual terms such as "non-practicing entity."

3

**3. Plaintiff's Motion *in Limine* No. 3 to Exclude Evidence and Argument Concerning Non-Infringing Alternatives and Design Arounds.  DENIED.**

Plaintiff seeks to exclude evidence and argument concerning non-infringing alternatives to two accused features: Cookie2 in WebPulse, accused of infringing the '844 and '731 Patents; and Pop-Up Blocker in ProxySG, accused of infringing the '822 and '633 Patents. Pl.'s MIL #3, ECF 302. The Pop-Up Blocker aspect of Plaintiff's motion is moot in light of the Court's summary judgment ruling. *See* Summary J. Order at 18-22, ECF 256; Def.'s Opp. #3 at 1 n.1, ECF 327.

As to Cookie2, Plaintiff asserts that Defendant disclosed a non-infringing alternative for this accused feature for the first time in updated disclosures served February 13, 2015, two months after the close of fact discovery. As such, Plaintiff argues that it would be prejudiced by Defendant's reliance on such alternative in its damages case. Pl.'s MIL #3 at 2, 4-5. Defendant argues that it properly and timely disclosed Mr. Roger Harrison under Rule 26(a)(2)(C) as an expert who could offer opinions regarding non-infringing alternatives to and design arounds for Cookie2 and that such disclosure could not have been made earlier because Plaintiff's specific theory of infringement was not fully disclosed until its opening expert report. Def.'s Opp. #3 at 1, ECF 327. Defendant further contends that Plaintiff cannot complain of prejudice when it declined to depose Mr. Harrison regarding his non-infringing alternative opinions. *Id.* at 2-3.

Although the Court previously determined that Plaintiff had adequately disclosed its infringement theory under the Patent Local Rules, it does not necessarily follow that the disclosure was detailed enough for Defendant to identify an applicable non-infringing alternative or design around. *See* Order on Mot. to Strike at 4-5, ECF 271. Furthermore, the Court agrees that Plaintiff had ample opportunity to depose Mr. Harrison but chose not to do so. In any case, any prejudice from Defendant's disclosure is better addressed through discovery and the Court has ordered that Mr. Harrison be made available for a deposition not exceeding 3 hours on the subject of his opinions regarding available non-infringing alternatives or design arounds for the accused Cookie2 feature. Plaintiff's Motion *in Limine* No. 3 to exclude evidence and argument concerning non-infringing alternatives and design arounds for the accused features is therefore DENIED.

**4. Plaintiff's Motion *in Limine* No. 4 to Exclude Evidence and Argument Concerning Certain Invalidity and Non-Infringement Theories. GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART.**

Plaintiff's fourth motion *in limine* seeks to exclude evidence and argument regarding a variety of issues. First, Plaintiff moves to preclude Defendant's invalidity expert, Dr. George Necula, from offering any invalidity opinions based upon IBM's WebSphere product or on the Ferreira reference that describes that product. Pl.'s MIL #4 at 1-2, ECF 303. This request is largely moot in light of the Court's ruling on Plaintiff's motion to strike, Order on Mot. to Strike at 11-12, and Defendant acknowledged at the pretrial conference that Dr. Necula will rely only on descriptions of the WebSphere product found in the Braswell reference for his invalidity opinions, *see* Def.'s Opp. #4 at 1, ECF 328. Thus, Plaintiff's Motion *in Limine* No. 4 to preclude reliance on WebSphere and the Ferreira reference is GRANTED. Dr. Necula may testify about Braswell and its descriptions of the WebSphere product, but may not testify about WebSphere alone.

Second, Plaintiff seeks to exclude evidence and argument on Japanese Patent Publication No. 2002-358229 by Tanaka Shunsuke and Matsuda Hideyuki (the "Shunsuke" reference). Plaintiff contends that Defendant produced a different translation of the Shunsuke reference than was relied upon by Dr. Necula in his report and that the correct translation—including translations for diagrams excerpted in Dr. Necula's report not found in the originally produced translation—was not produced until well after the close of fact discovery. Pl.'s MIL #4 at 2-4. Although Defendant provides a sensible explanation for this mix-up, *see* Def.'s Opp. #4 at 1-2, the unfortunate fact is that the belated production of the correct translation of the Shunsuke reference violated Patent Local Rule 3-4(b)'s requirement of an English translation "*of the portion(s) relied upon.*" As such, Plaintiff's motion to exclude reliance on the Shunsuke reference is GRANTED.

Plaintiff next seeks to exclude from the jury's consideration evidence and argument concerning prosecution history estoppel and ensnarement. Pl.'s MIL#4 at 4. These issues are questions of law reserved for the Court and Defendant agrees that they should not be presented to a jury. Def.'s Opp. #4 at 2. Plaintiff's motion is thus GRANTED, subject to any renewed objection by Plaintiff that the issues were not properly preserved for the Court's consideration.

Finally, Plaintiff seeks to preclude Defendant's experts from opining on any theories of

non-infringement or invalidity that are not contained within their expert reports. Pl.'s MIL #4 at 4-5. As a general matter, this request is moot because the parties have stipulated that neither side will present theories outside of their respective expert reports. Def.'s Opp. #4 at 3; Proposed Pretrial Order at 17, ECF 293. As to specifics, Plaintiff's motion to preclude reliance on the pinpoint citations to the McClain reference in Dr. Necula's report is DENIED because the McClain reference as a whole and the invalidity *theory* based on that reference were properly and timely disclosed. With regard to other potentially "new" theories, Plaintiff's motion is largely anticipatory, as it cannot presently point to any opinions offered by Defendant's experts that are not contained within the expert reports. Thus, Plaintiff's fourth motion *in limine* to exclude new theories of non-infringement and invalidity is GRANTED generally, but the Court DEFERS ruling on specific other theories subject to renewed objections at trial.

**5. Plaintiff's Motion *in Limine* No. 5 to Exclude Mention of Total Payments to Plaintiff's Consultants. GRANTED.**

Plaintiff seeks to exclude argument or evidence concerning the total amount of money that it has paid to two consultants who may testify at trial. Pl.'s MIL #5, ECF 304. Plaintiff argues that the information has little probative value and violates the consultants' rights to privacy. Defendant counters that the consultants' compensation is probative of their credibility and, as such, outweighs their interest in keeping the information private. Def.'s Opp. #5, ECF 329.

The question is a close one, as compensation is unquestionably relevant to a witness's bias and is usually one of the first questions in cross-examining a retained expert. Here, however, the consultants' relationship with Plaintiff appears to be continuous, ongoing, and not limited to litigation purposes. As such, the consultants are more akin to employees than retained experts. Absent contextual information concerning the financial interests of other similarly-situated fact witnesses employed by or consulting for either party, the disclosure of total money payments to Plaintiff's two consultants would be more unfairly prejudicial than probative. Fed. R. Evid. 403. Thus, due to the particular nature of the consulting relationship between Plaintiff and its two consultants, Plaintiff's Motion *in Limine* No. 5 to exclude evidence of total money payments to those consultants is GRANTED.

## II. DEFENDANT'S MOTIONS *IN LIMINE*

Defendant brings five motions *in limine*, which the Court addresses in turn.

**1. Defendant's Motion *in Limine* No. 1 to Preclude Plaintiff from Using Evidence of Revenues Unrelated to Accused Features and Evidence of Settlement Agreements. GRANTED IN PART and DENIED IN PART.**

Defendant in its motion *in limine* #1 seeks to exclude several categories of financial information. Def.'s MIL #1, ECF 282.

Defendant moves to exclude evidence of its and third parties' financial information, including financial size, market capitalization, acquisition costs, and overall revenues of the companies and total revenues for the accused products. *Id.* at 1-3. Plaintiff contends that this information is relevant to its expert's analysis of the *Georgia-Pacific* factors. Pl.'s Opp. #1, ECF 335. The Court finds that Defendant's and third parties' financial size, market capitalization, and overall revenue is of little probative value and would unfairly prejudice Defendant by skewing "the damages horizon for the jury, regardless of the contribution of the patented component to this revenue." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320-21 (Fed. Cir. 2011). As to acquisition costs for technology containing the accused features and total revenues for the accused products, however, that information is relevant and probative if properly apportioned. *See Apple, Inc. v. Samsung Electronics Co.*, No. 11-CV-01846-LHK, 2014 WL 549324, at *7 (N.D. Cal. Feb. 7, 2014). Although it does not appear that Plaintiff's expert, Dr. Anne Layne-Farrar, actually relies on accused product revenues for any part of her analysis, the Court will permit Plaintiff to use such revenues and acquisition valuations as a *starting point* for a properly apportioned royalty base. To the extent Plaintiff fails to adequately develop such testimony concerning apportionment, Defendant may move to strike the evidence from the record. Defendant's Motion *in Limine* No. 1 is therefore GRANTED as to exclusion of Defendant's and third party companies' financial size, market capitalization, and overall revenue, and DENIED as to revenue of the accused products and acquisition prices for technology containing the accused features.

Defendant also seeks to exclude from the jury's consideration evidence relating to Plaintiff's three settlement agreements with other companies accused of infringing Plaintiff's patents. Def.'s MIL #1 at 3-5. Defendant asserts that these settlement agreements were not

7

1 entered willingly but rather under the coercive pressure of litigation and, as such, are not
2 comparable to the hypothetical negotiation analysis and do not accurately reflect the claimed
3 inventions' footprint in the marketplace. Defendant moreover notes that Plaintiff has sufficiently
4 comparable *license* agreements in its arsenal that it need not rely on the challenged settlement
5 agreements. *Id.* at 4-5. Plaintiff asserts that the three settlement agreements are relevant to several
6 of the *Georgia-Pacific* factors, including its own patent enforcement practices, and that Dr. Layne-
7 Farrar appropriately considered and accounted for the similarities and differences among the
8 license and settlement agreements in arriving at her damages opinion. Pl.'s Opp. #1 at 4-5.

9       Two of the challenged settlement agreements resolved litigation concerning one or more of
10 the patents asserted in this case and are therefore not wholly irrelevant. Def.'s MIL #1 3-4. The
11 third agreement with Webroot concerned similar technology invented by the same inventor of the
12 asserted patents in this case. *See* Decl. of Olivia M. Kim ECF 282-2, Exh. 3. Plaintiff moreover
13 represents that Dr. Layne-Farrar considered all similarities and differences among the various
14 agreements in arriving at her damages opinion. Pl.'s Opp. #1 at 5. So long as the jury is provided
15 evidence of these similarities and differences so that they may consider the relevance of the
16 challenged settlement agreements for themselves, the agreements may properly be admitted into
17 evidence. *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1331 (Fed. Cir. 2014). Defendant's
18 Motion *in Limine* No. 1 to exclude Plaintiff's three prior settlement agreements is therefore
19 DENIED and Plaintiff may introduce such agreements upon a proper foundation establishing the
20 similarities and differences that the jury may consider in assessing their relevance. Should such
21 foundation be wanting, Defendant may move to strike the settlement agreements from the record.

**2. Defendant's Motion *in Limine* No. 2 to Preclude Plaintiff from Using Newly Produced Information. DENIED.**

24       Defendant seeks to preclude Plaintiff from introducing evidence "newly produced on the
25 eve of trial." Def.'s MIL #2, ECF 284. It appears that this evidence largely pertains to a new
26 mobile application that Plaintiff first announced in April 2015 and subsequently released on June
27 3, 2015. *Id.* at 1-3; Decl. of Olivia M. Kim ECF 284-2, Exhs. 1-9. Plaintiff asserts that given the
28 recent release date, it could not have produced evidence regarding the application any earlier.

Plaintiff also admits that its only purpose in introducing this evidence is to "refute Blue Coat's claims that Finjan does not make or sell a product." Pl.'s Opp. #2 at 1, ECF 336. At the pretrial conference, Plaintiff indicated its intent to introduce the new application to the jury only as background and only through demonstratives containing general information about the product. Although this information is minimally probative, Plaintiff should have an opportunity to challenge assertions that it does not now make any products. Defendant's Motion *in Limine* No. 2 is therefore DENIED with the proviso that Plaintiff may only offer general and background information concerning its recent mobile application and may not enter into evidence any technical documents concerning the application.

### 3. Defendant's Motion *in Limine* No. 3 to Preclude Plaintiff from Alleging Copying. DENIED.

Defendant seeks to preclude Plaintiff from offering evidence of copying as a secondary consideration of nonobviousness. Def.'s MIL #3, ECF 286. Defendant asserts that Plaintiff's evidence of copying fails to satisfy the Federal Circuit's exacting requirements to prove such copying and furthermore argues that what evidence Plaintiff does have is highly and unfairly prejudicial. *Id.* at 3-5. Plaintiff argues that the challenged evidence is probative of Defendant's motive and opportunity to copy and is therefore relevant to secondary considerations of nonobviousness, infringement, and damages. Pl.'s Opp. #3, ECF 337.

"Not every competing product that arguably falls within the scope of a patent is evidence of copying; otherwise, "every infringement suit would automatically confirm the nonobviousness of the patent." *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010) (quoting *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1325 (Fed. Cir. 2004)). Federal Circuit case law holds that "copying requires evidence of efforts to replicate a specific product, which may be demonstrated through internal company documents, direct evidence such as disassembling a patented prototype, photographing its features, and using the photograph as a blueprint to build a replica, or access to the patented product combined with substantial similarity to the patented product." *Id.*; *Iron Grip*, 392 F.3d at 1324.

In *Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*, 344 F.3d 1186 (Fed. Cir.

2003), the court concluded that a plaintiff could show copying through internal communications establishing that the defendant's engineers had compared their own product to plaintiff's, considered their own product's shortcomings, and then redesigned the defendant's product to use plaintiff's approach. *Id.* at 1196-97. Here, there are some similar internal communications and documents. Decl. of James Hannah ECF 337-1, Exhs. 7-11. To be sure, "[a]ccess to, and analysis of, other products in the market is hardly rare, even in the design stages of competing devices." *Cable Elec. Products, Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1027 (Fed. Cir. 1985) *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999). However, "[a]ccess in combination with similarity can create a strong inference of copying" if shown. *Id.* Granted, Plaintiff's burden to show copying is significant: not only does it have to demonstrate access, analysis, and similarity between Defendant's accused products and Vital Security, Plaintiff must also establish that Vital Security embodied the claimed inventions of which Defendant is accused of infringing. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1366 (Fed. Cir. 2001) ("evidence of copying [the patentee's product] is legally irrelevant unless the [product] is shown to be an embodiment of the claims."). That Plaintiff's burden may be substantial, however, does not mean that the challenged evidence is not relevant, and Plaintiff should have an opportunity to convince the jury that Defendant copied its products.

With that said, there is significant prejudice associated with this evidence, as a jury may use evidence of copying to unfairly conclude that Defendant's products *infringe* the patents-in-suit. Indeed, Plaintiff has argued that the same evidence is relevant to both, even though the two analyses must necessarily be distinct. *See* Pl.'s Opp. #3 at 3-5; *Zenith Labs. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994) ("As we have repeatedly said, it is error for a court to compare in its infringement analysis the accused product or process with the patentee's commercial embodiment or other version of the product or process; the only proper comparison is with the claims of the patent."). Given the potential for unfair prejudice, the Court concludes that Plaintiff may only present evidence of copying in rebuttal to Defendant's theory of obviousness. Any potential confusion arising out of this limited use of the evidence may be mitigated through an appropriate limiting instruction to ensure that the jury does not impermissibly conflate the

10

copying inquiry with infringement. *Accord CBOE v. ISE*, No. 07 C 623, 2013 WL 987765, at *1 (N.D. Ill. Mar. 14, 2013). Defendant's Motion *in Limine* No. 3 is therefore DENIED, but Plaintiff will only be permitted to introduce the evidence challenged in this motion in rebuttal to Defendant's obviousness case. Plaintiff shall furthermore prepare an appropriate limiting instruction in connection with that use for the Court's consideration.

**4. Defendant's Motion *in Limine* No. 4 to Preclude Plaintiff from Advancing Any Evidence that Plaintiff's Products Practiced Any of the Asserted Patents. GRANTED IN PART and DENIED IN PART.**

Defendant seeks in its fourth motion *in limine* to preclude any of Plaintiff's experts from testifying that Plaintiff's Vital Security product practiced the patents-in-suit. Def.'s MIL #4, ECF 288. Defendant submits that Drs. Michael Mitzenmacher and Eric Cole testified that they had no opinions regarding practicing embodiments and, as such, cannot offer any opinions at trial. *Id.* at 2-3; Decl. of Olivia Kim ECF 288-2 Exh. 6 (Mitzenmacher Dep. Tr.) at 73:14-21; Kim Decl. Exh. 7 (Cole Dep. Tr.) at 79:20-80:1, 80:6-15. Defendant further argues that Drs. David Lyon and Trent Jaeger performed no independent analysis and instead adopted the assertions in Plaintiff's interrogatory responses that Vital Security practiced the patents-in-suit. Def.'s MIL #4 at 3-5.

Plaintiff contends that Drs. Lyon and Jaeger each testified that they independently analyzed Plaintiff's interrogatory responses as well as the testimony of named inventor (and Plaintiff's founder) Schlomo Touboul to satisfy themselves that Vital Security practiced the patents-in-suit. Pl.'s Opp. #4, ECF 338. Plaintiff offers no rejoinder in connection with Drs. Mitzenmacher and Cole. Defendant's Motion *in Limine* No. 4 is therefore GRANTED with regard to these two experts, and Drs. Mitzenmacher and Cole shall not offer any opinion at trial regarding whether Plaintiff's Vital Security product practiced the patents-in-suit.

As to Drs. Lyon and Jaeger, the Court is satisfied with each expert's testimony that they conducted an independent analysis. *See* Decl. of James Hannah ECF 338-1, Exh. 15 (Jaeger Dep. Tr.) at 145:5-25; *id.* Exh. 16 (Lyon Dep. Tr.) at 187:24-188:14. Both relied upon Plaintiff's interrogatory responses, including the response to Defendant's Interrogatory No. 15, which included substantial claim charts comparing Vital Security to the asserted claims of the patents-in-suit. *Id.* Exh. 12. Dr. Lyon's and Dr. Jaeger's independent analysis of the document excerpts in

11

the claim chart to form their opinions is sufficient for those opinions to reach the jury.[2]  To be sure, the experts may be cross-examined concerning the evidence underlying their opinions, and the persuasiveness of their testimony may be diminished by the fact that they reviewed only the evidence put in front of them by Plaintiff's attorneys.  That, however, goes to the weight of the testimony and is better left to the jury.  Defendant's Motion *in Limine* No. 4 to exclude Dr. Lyon's and Dr. Jaeger's opinions concerning Plaintiff's practicing embodiments is therefore DENIED.

### 5. Defendant's Motion *in Limine* No. 5 to Preclude Plaintiff from Relying on the Prior *Secure Computing* Case for Infringement and Validity.  GRANTED IN PART and DENIED IN PART.

Finally, Defendant moves to preclude Plaintiff from relying on the prior lawsuit of *Finjan v. Secure Computing Corp.*, et. al., No. 1:06-cv-00369-GMS (D. Del. 2006) for infringement and validity of the patents-in-suit on the ground that the outcome in that case is irrelevant to issues in this case and that informing the jury of the result in *Secure Computing* would only serve to confuse them and unfairly prejudice Defendant.  Def.'s MIL #5, ECF 290.  Plaintiff admits that it will not introduce evidence concerning the result in *Secure Computing* to prove liability but argues that the prior litigation is relevant to damages and secondary considerations of nonobviousness.  Pl.'s Opp. #5, ECF 339.

The Court finds that the outcome from the *Secure Computing* case is relevant only to the jury's consideration of damages.[3]  As Plaintiff properly notes, the jury verdict in that case occurred around the time of the hypothetical negotiation in this case and involved two of the six patents-in-suit here.  *Id.* at 2.  Particularly to the extent that Defendant was aware of the *Secure Computing* litigation at the time, the outcome from that litigation is relevant to Defendant's state of mind entering the hypothetical negotiation and to the parties' relative bargaining strength.  *See Georgia-Pac.*, 318 F. Supp. 1116 at 1121.

---

[2] The Court is not persuaded that Mr. Touboul's testimony forms an independent factual basis for Dr. Lyon's and Dr. Jaeger's opinions, as Mr. Touboul testified as a corporate representative and did not personally verify that Plaintiff's products practiced the patents-in-suit.  Hannah Decl. Exh. 14 (Touboul Dep. Tr.) at 418:17-24, 420:6-9.

[3] The Court misspoke on the record that *Secure Computing* would also be relevant to secondary considerations of non-obviousness.  This order corrects that misstatement.

12

The same cannot be said for secondary considerations of nonobviousness, for although "[p]rior litigation *may* be evidence of the 'secondary' considerations of commercial success or copying," *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1573 (Fed. Cir. 1993) (emphasis added), Plaintiff has offered no persuasive authority indicating that prior litigation success against a different party is probative evidence of commercial success or other secondary indicia of nonobviousness in this case. Indeed, the court in *Mendenhall* expressly disallowed reliance on a judicial opinion in lieu of factual evidence, which would appear to be Plaintiff's intent in noting that the *Secure Computing* court found that the defendant in that case had copied Plaintiff's patents. *See id.*; Pl.'s Opp. #5 at 1.

Nevertheless, the Court is persuaded that the *Secure Computing* case may be put to the limited purpose of supporting Plaintiff's damages analysis without unfairly prejudicing Defendant. Defendant's Motion *in Limine* No. 5 is therefore GRANTED with respect to Plaintiff's reliance on the *Secure Computing* outcome to prove infringement or validity but DENIED with respect to Plaintiff's reliance on the settlement agreement from that case for damages. Plaintiff shall prepare an appropriate limiting instruction for the Court's consideration.

## III. OTHER ORDERS

Following discussion with the parties at the July 2 and 6 hearings, the Court orders as follows:

1. **By no later than July 8, 2015**, Plaintiff shall disclose to and/or clarify for Defendant what remains of Plaintiff's infringement case with respect to the '968, '822, and '633 Patents.

2. **By no later than July 15, 2015**, Plaintiff shall notify the Court whether it will withdraw its willfulness and indirect infringement claims. To the extent possible, the parties are encouraged to stipulate to dismissal of those claims.

3. **By no later than July 15, 2015**, the parties shall stipulate to the hypothetical negotiation date for each of the patents-in-suit.

4. Where the Court has ordered a party to prepare a limiting instruction in connection with the rulings above, that party shall provide the limiting instruction to the Court

**by no later than July 17, 2015.**

5. As stated above, Defendant shall make Mr. Roger Harrison available before trial for a deposition regarding his opinions concerning non-infringing alternatives. Such deposition shall not exceed 3 hours.

6. To the extent the courtroom needs to be sealed, the party requesting sealing must submit a written request by 11:59 p.m. on the day before the testimony sought to be sealed.

7. All fact witnesses, with the exception of corporate designees sitting at counsel table, will be excluded from the courtroom and may not discuss their testimony with anyone else.

8. The parties' Joint Pretrial Statement at ECF 293-4 is hereby adopted as the order of the Court.

**IT IS ORDERED.**

Dated: July 8, 2015

_____
BETH LABSON FREEMAN
United States District Judge