EDWARD G. POPLAWSKI (State Bar No. 113590)
epoplawski@wsgr.com
OLIVIA M. KIM (State Bar No. 228382)
okim@wsgr.com
BRIAN LAM (State Bar No. 272624)
blam@wsgr.com
S. FERRELL ALMAN, JR. (State Bar No. 287746)
falman@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

VERA M. ELSON (State Bar No. 156327)
velson@wsgr.com
CHRISTOPHER D. MAYS (State Bar No. 266510)
cmays@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

Counsel for Defendant
BLUE COAT SYSTEMS, INC

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation, | CASE NO.: 13-cv-03999-BLF-PSG |
| Plaintiff, | **DEFENDANT BLUE COAT SYSTEMS, INC.'S TRIAL BRIEF** |
| v. | |
| BLUE COAT SYSTEMS, INC., a Delaware Corporation, | Trial: July 20, 2015<br>Time: 9:00 a.m.<br>Place: Courtroom 3, 5th Floor<br>Before: Hon. Beth Labson Freeman |
| Defendant. | |

## **TABLE OF CONTENTS**

I.   BACKGROUND ................................................................................................................ - 1 -

　　A.　Finjan's Allegations. ............................................................................................. - 1 -

　　B.　Blue Coat's Accused Products. ............................................................................ - 1 -

II.  NON-INFRINGEMENT ................................................................................................... - 2 -

　　A.　The '844 Patent. ..................................................................................................... - 2 -

　　B.　The '780 Patent. ..................................................................................................... - 4 -

　　C.　The '968 Patent. ..................................................................................................... - 5 -

　　D.　The '822 Patent And The '633 Patent. .................................................................. - 6 -

　　E.　The '731 Patent. ..................................................................................................... - 7 -

III. INVALIDITY .................................................................................................................... - 8 -

　　A.　The '844 Patent. ..................................................................................................... - 8 -

　　B.　The '780 Patent. ..................................................................................................... - 9 -

　　C.　The '968 Patent. ................................................................................................... - 10 -

　　D.　The '822 Patent And The '633 Patent. ................................................................ - 10 -

　　E.　The '731 Patent. ................................................................................................... - 10 -

IV. DAMAGES ...................................................................................................................... - 11 -

V.  OTHER ISSUES .............................................................................................................. - 12 -

# TABLE OF AUTHORITIES

## CASES

*Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201 (Fed. Cir. 2014) ...................................12

*Garretson v. Clark*, 111 U.S. 120 (1884) ..............................................................................12

*Grain Processing Corp. v. Am. Maize Prods. Co.*, 185 F.3d 1341 (Fed. Cir. 1999) ............11

*LaserDynamics v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012) ............................12

*Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) ...................................11

*O2 Micro Int'l v. Beyond Innovation Tech,* 521 F.3d 1351 (Fed. Cir. 2008) ..........................4

*ResQNet.com*, 594 F.3d 860 (Fed. Cir. 2010) .......................................................................11

*Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302 (Fed. Cir. 2002) .............................11

*Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) .................................12

*VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308 (Fed. Cir. 2014) .................................................12

## STATUTES

35 U.S.C. § 102 ...............................................................................................8, 9, 10, 11

35 U.S.C. § 103 ...............................................................................................8, 9, 10, 11

35 U.S.C. § 111(b) .........................................................................................................8

35 U.S.C. § 112 .........................................................................................................9, 10

35 U.S.C. § 120 .........................................................................................................9, 11

## RULES

FED. R. EVID. 403 ..........................................................................................................12

Pursuant to the Court's Standing Order Re Final Pretrial Conference – Jury Trial, Defendant Blue Coat Systems, Inc. ("Blue Coat") respectfully submits this Trial Brief.

## I. BACKGROUND

### A. Finjan's Allegations.

Plaintiff Finjan, Inc. ("Finjan") asserts that Blue Coat's accused products directly infringe 13 claims from six patents-in-suit:[1] U.S. Patent Nos. 6,154,844 ("the '844 patent"); 6,804,780 ("the '780 patent"); 6,965,968 ("the '968 patent"); 7,058,822 ("the '822 patent"); 7,418,731 ("the '731 patent"); and 7,647,633 ("the '633 patent"). The following table summarizes Finjan's allegations:[2]

| Patent | Asserted Claim(s) | Accused Product(s) |
|---|---|---|
| '844 | 1, 7, 11, 15, and 41 | WebPulse |
| '780 | 9 and 13 | ProxySG + ProxyAV |
| '968 | 1 | ProxySG + WebPulse + WebFilter |
| '822 | 9 and 10 | ProxySG |
| '633 | 14 | ProxySG + CAS + MAA |
| '731 | 1 and 17 | ProxySG + WebPulse + WebFilter |

### B. Blue Coat's Accused Products.

Blue Coat's WebPulse service is a cloud-based infrastructure that provides categorizations of web pages. The categorizations are content-based and include such categories as alcohol, auction, hacking, military, pornography, and suspicious. Among many components, WebPulse includes a component called Dynamic Real-Time Rating server ("DRTR"), which a real-time content categorizer. WebPulse also has background (non-real-time) processes, some of which look for evidence of malware activity.

---

[1] Although Finjan narrowed the number of asserted claims from 18 to 13, Blue Coat requested that Finjan further narrow the number of asserted claims and patents. Trying 13 asserted claims from six patents-in-suit are still unmanageable for the given 18 hours per side at trial.

[2] In light of the Court's orders on motions for summary judgment (Dkt. 256) and motions to strike (Dkt. 271), Blue Coat believes that Finjan no longer has any viable claims for the '968 and '822 patents.

Blue Coat's ProxySG is a proxy server that provides a number of capabilities, including web security through policy control over content, users, applications and protocols; Wide-Area-Network (WAN) optimization solutions and accelerations; caching of web objects; reverse proxy caching; and SLL support. WebFilter is an optional add-on feature of ProxySG, which allows the use of WebPulse.

Blue Coat's ProxyAV is an appliance that provides anti-virus and other malware detection services. ProxyAV is typically connected to, and used with, Blue Coat's ProxySG to protect networks at the gateway to the Internet by scanning web content coming into the network. Blue Coat announced that ProxyAV is at the end of its life.

Blue Coat's Content Analysis System, referred to as "CAS," replaces the ProxyAV appliance. CAS, just like the ProxyAV, provides antivirus scanning and is integrated with ProxySG. However, CAS also provides new functionality not available on the ProxyAV, including: (1) whitelisting and (2) the ability to integrate with Blue Coat's Malware Analysis Appliance, referred to as the "MAA." In this regard, CAS may be connected to the ProxySG and the Malware Analysis Appliance.

Blue Coat's Malware Analysis Appliance or "MAA" is a customizable sandboxing environment that integrates with the CAS to detect unknown and advanced malware. The MAA provides two environments in which a file may be run to generate a risk score based on monitoring various operations that occur during runtime: an emulated environment referred to as the "Sandbox" or a virtual environment referred to as "IntelliVM."

## II. NON-INFRINGEMENT

### A. The '844 Patent.

Finjan claims that Blue Coat's WebPulse service directly infringes claims 1, 7, 11, 15, and 41. Finjan cannot meet its burden to prove that Blue Coat's WebPulse service infringes—literally or under the doctrine of equivalents—claim 1 of the '844 patent. For example, claim 1 requires "generating by the inspector a first Downloadable *security profile that identifies suspicious code* in the received Downloadable." Finjan only identified Cookie2 from WebPulse as meeting this limitation. But Cookie2 is merely a metadata and does not identify any code. As such, claim 1

cannot be literally met. Moreover, because Cookie2 is substantially different—does not identify any code as required by the claim—there is no infringement under the doctrine of equivalents. Simply put, generating Cookie2 does not have the substantially the same function, way and result as the "generating . . . security profile that identifies suspicious code . . ." limitation.

Claim 1 of the '844 patent also requires "***linking*** by the inspector the first Downloadable security profile to the Downloadable ***before a web server makes the Downloadable available to web clients***." This limitation cannot be literally met by WebPulse because WebPulse does not link any security profile to the Downloadable. Further, there is no evidence that Cookie2 is linked to any Downloadable. In addition, any processing done by WebPulse happens *after*, not before, the web servers make any Downloadables available to web clients. Because WebPulse requests web content to web servers and the web servers send the requested web content to WebPulse, one of ordinary skill in the art would commonly refer to WebPulse as a web client. Accordingly, WebPulse cannot be both an "inspector" and "web client" required by claim 1.

Claims 7 and 11 are dependent on claim 1, thus requires all the elements found in claim 1. For the same reasons that claim 1 does not infringe, claims 7 and 11 also cannot be infringed. In addition, claim 11 further requires "wherein the first Downloadable security profile includes a list of operations deemed suspicious by the inspector." Finjan's assertion that Cookie2 is a "security profile" also fails here because Cookie2 does not identify any "list of operations."

Claims 15 and 41 are independent claims, but they require the same limitations of "generate [or generating] . . . security profile that identifies suspicious code" and "linking . . . before a web server makes the Downloadable available to web clients." Accordingly, for the same reasons as claim 1, claims 15 and 41 cannot be infringed by WebPulse—either literally or under the doctrine of equivalents.

The evidence relating to non-infringement of the asserted claims of the '844 patent will be provided by, among other things, Blue Coat's fact witnesses and its technical expert, Dr. Azer Bestavros.

### B. The '780 Patent.

Finjan claims that claims 9 and 13 of the '780 are directly infringed by the combination of Blue Coat's ProxySG and ProxyAV products. Finjan cannot meet its burden to prove that Blue Coat's ProxySG and ProxyAV infringe—literally or under the doctrine of equivalents—claim 9 of the '780 patent. For example, there is no "ID generator . . . for performing a hashing function on the Downloadable and the fetched software components to generate a Downloadable ID" as required by claim 9. Finjan asserted that ProxyAV contains the required "ID generator." The parties had agreed that the phrase "performing a hashing function on the Downloadable and the fetched software components" means "performing a hashing function on the Downloadable together with its fetched software components." (Dkt. 118 at 4.) The Court further clarified that:

> [W]hen "a hashing function" and "a Downloadable ID" are taken out of a vacuum and considered in the context of a specific Downloadable being processed, it is clear that the phrase "performing *a* hashing function on *the* Downloadable *together with* its fetched software components to generate *a* Downloadable ID," requires a computation or combination of computations that transmutes the Downloadable and its components into a unique and reproducible ID for that Downloadable.

(Dkt. 256 at 11, emphasis in original.) Accordingly, there cannot be any literal infringement of claim 9 because ProxyAV does not generate any unique ID for the combined Downloadable and the fetched software components. There also cannot be any infringement under the doctrine of equivalents because generating a unique ID for downloadable and another unique ID for a software component is substantially different than generating a unique ID for the combination. These separate unique IDs represent different things and have significantly different function and result.

As we indicated at the Pre-Trial Conference, Blue Coat is concerned that Finjan may attempt to introduce testimony, such as through its technical expert, Dr. Michael Mitzenmacher, which is contrary to the Court's statement that the aforementioned limitation requires the generation of a separate unique ID for the combination of the Downloadable and the fetched software components. Accordingly, Blue Coat has reserved the right to seek a further clarifying construction per the Federal Circuit's decision in *O2 Micro Int'l v. Beyond Innovation Tech.*, 521 F.3d 1351, 1362-63 (Fed. Cir. 2008) and/or to bar such anticipated testimony.

Claim 13 is a dependent claim which requires all elements of claim 9 to be present. As such, for the same reasons as claim 9, claim 13 cannot be infringed—literally or under the doctrine of equivalents.

The evidence relating to non-infringement of the asserted claims of the '780 patent will be provided by, among other things, Blue Coat's fact witnesses and its technical expert, Dr. Azer Bestavros.

### C. The '968 Patent.

Finjan asserts that claim 1 of the '968 is directly infringed by the combination of Blue Coat's ProxySG, WebPulse, and WebFilter. Finjan cannot meet its burden to prove that Blue Coat's ProxySG, WebPulse, and WebFilter infringe—literally or under the doctrine of equivalents—claim 1 of the '968 patent. For example, claim 1 requires "a memory storing . . . a ***policy index*** to the ***cache contents, the policy index including entries that relate cache content and policies by indicating cache content that is known to be allowable relative to a given policy*** . . ." Finjan now asserts that ProxySG's "categorization cache" meets the "policy index" limitation. Blue Coat has requested that Finjan withdraw this claim as Finjan's expert, Dr. Mitzenmacher, failed to disclose any opinion that the "categorization cache" meets the "policy index" limitation of the '968 patent—literally or under the doctrine of equivalents.

Even if Finjan is allowed to go forward with its "categorization cache" theory, these is no evidence that the "categorization cache" stores or caches (1) any content, (2) any information regarding policies, or (3) any entries that indicate "cache content that is known to be allowable relative to a given policy." Claim 1 further requires "a content evaluator . . . for determining whether a given digital content is allowable relative to a given policy, based on the content profile, ***the results of which are saved as entries in the policy index***." The accused "categorization cache" does not store any results of allowability—*i.e.*, there is no "policy index" required by the claim. Accordingly, there is no literal infringement. There is also no evidence of infringement under the doctrine of equivalents because Finjan's expert did not opine on this issue with regards to the "categorization cache." In any event, the function, way, and result for the limitations relating to

the "policy index" are completely missing, and therefore substantially different, in ProxySG's "categorization cache."

The evidence relating to non-infringement of the asserted claim of the '968 patent will be provided by, among other things, Blue Coat's fact witnesses and its technical expert, Dr. Azer Bestavros.

### D. The '822 Patent And The '633 Patent.

For the '822 patent, Finjan asserts that claims 9 and 10 are directly infringed by Blue Coat's ProxySG. Finjan cannot prove that claims 9 and 10 are infringed—literally or under the doctrine of equivalents—by Blue Coat's ProxySG. Finjan only identifies ProxySG's feature called "active content transformation" as meeting claim 9, and also claim 10, which depends on claim 9. But the "active content transformation" feature does not meet the requirements of claims 9 and 10. For example, the claims require "causing mobile protection code 'MPC' to be communicated to at least one information-destination of the downloadable information, if the downloadable-information is determined to include executable code." In this regard, the Court found—from reviewing the '633 patent specification, which share the same specification as the '822 patent—that when transmitting the MPC, "the MPC does *not modify* executable code found in the downloadable-information." (Dkt. 118 at 10, emphasis added; *see also id.* at 9.) Because ProxySG's "active content transformation" transforms, or modifies, the executable code found in the downloadable-information before sending it to the destination, claims 9 and 10 cannot be met—literally or under the doctrine of equivalents. Further, there is no evidence that any "mobile protection code" is communicated.

For the '633 patent, Finjan asserts that claim 14 is directly infringed by the combination of Blue Coat's ProxySG, CAS, and MAA. Finjan cannot prove that claim 14 is infringed—literally or under the doctrine of equivalents—by the accused products. For example, claim 14 requires "*mobile* protection code." The phrase "causing ***mobile protection code*** to be executed by the mobile code executor at a downloadable-information destination such that one or more operations of the executable code at the destination, if attempted, will be processed by the mobile protection code" was construed by the Court to mean "[p]lain and ordinary meaning, wherein the mobile

protection code was communicated to the downloadable-information destination without modifying the executable code." (Dkt. 118 at 14.) No "mobile protection code" found in any of the accused products. Further, no "mobile protection code" is *communicated* to any of the accused products, which is substantially different from the claimed requirements. Finjan also cannot identify any component in the accused products that meet the limitation "providing a system . . . wherein the distinct software modules comprise an information re-communicator . . ." In addition, Finjan cannot identify any component in the accused products that meet the limitation "receiving, at the information re-communicator, downloadable information including executable code."

The evidence relating to non-infringement of the asserted claim of the '822 and '633 patents will be provided by, among other things, Blue Coat's fact witnesses and its technical expert, Dr. Michael Hicks.

### E. The '731 Patent.

Finjan asserts that the combination of Blue Coat's ProxySG, WebPulse and WebFilter directly infringe claims 1 and 17 of the '731 patent. Finjan cannot meet its burden to prove infringement—literally or under the doctrine of equivalents—of claim 1 of the '731 patent. For example, claim 1 is directed to "[a] computer gateway for an intranet of computers." But the accused WebPulse service is not a part of the gateway for an intranet of computers because no web content or files flow through WebPulse from the Internet to the intranet. The WebPulse service merely provides categorization of the URLs to ProxySG. Claim 1 also requires "a scanner for . . . deriving security profiles . . . wherein each of the security profile comprises a list of computer commands." Similar to the asserted claims of the '844 patent discussed above, Finjan identifies WebPulse's Cookie2 as the "security profile" required by claim 1 of the '731 patent. But Cookie2 is merely a metadata and it does not list any computer commands.

In addition, claim 1 requires "a file cache for storing files . . . wherein each of the stored files is indexed by a file identifier." But the accused ProxySG cannot infringe because it caches network objects, rather than files, and the objects are not indexed by a file identifier. The requirement of "a security profile cache for storing the security profiles . . . wherein each of the security profiles is indexed in the security profile cache by a file identifier . . ." is also not met.

Firstly, as discussed above, there are no "security profiles" in the accused products. Secondly, there is no evidence of indexing—there is no evidence that any accused security profiles "is indexed in the security profile cache by a file identifier." The last requirement—"a security policy cache for storing security policies . . . the security policies each including a list of restrictions for files . . ."—is also not present in the accused products. There is no evidence that ProxySG contains any cache that stores security policies which include a list of restrictions of files.

Claim 17 is an independent claim which requires the same limitations as claim 1 discussed above. Accordingly, claims 1 and 17 of the '731 patent cannot be infringed literally by the accused products. Further, Finjan cannot prove infringement under the doctrine of equivalents because Finjan's expert, Dr. Mitzenmacher, did not provide opinions on infringement under the doctrine of equivalents for any asserted claims of the '731 patent.

The evidence relating to non-infringement of the asserted claims of the '731 patent will be provided by, among other things, Blue Coat's fact witnesses and its technical expert, Dr. Azer Bestavros.

### III. INVALIDITY

#### A. The '844 Patent.

The asserted claims of the '844 patent are invalid under anticipation and/or obviousness. As an initial matter, the effective filing date of the '844 patent is December 22, 1997. Finjan asserts that the '844 patent claims priority to the Provisional Application No. 60/030,639 ("the '639 Provisional Application"), which was filed on November 8, 1996. However, the '844 patent cannot claim priority to the '630 Provisional Application because the application for the '844 was filed more than one year after the filing of the Provisional Application. 35 U.S.C. § 111(b) (provisional application regarded as abandoned 12 months after the filing date).

The asserted claims of the '844 patent are anticipated by U.S. Patent No. 6,253,370 ("Abadi") under 35 U.S.C. § 102. The asserted claims of the '844 patent are obvious in view of Abadi under § 103. In addition, the asserted claims of the '844 patent are obvious in view of Abadi, U.S. Patent No. 6,622,247 ("Isaak") and U.S. Patent No. 5,983,348 ("Ji") under § 103.

The evidence relating to invalidity of the asserted claims of the '844 patent will be provided by, among other things, Blue Coat's technical expert, Dr. George Necula.

### B. The '780 Patent.

The asserted claims of the '780 patent are invalid under anticipation, obviousness, and/or lack of written description. As an initial matter, the effective filing date of the '780 patent is November 6, 1997, which is the filing date of its parent, U.S. Patent No. 6,092,194 ("the '194 patent"). Finjan asserts that the '780 patent claims priority to the '639 Provisional Application, which was filed on November 8, 1996. However, the '639 Provisional Application does not disclose or support all elements found in the asserted claims of the '780 patent. *See* 35 U.S.C. § 120. For example, the '639 Provisional Application does not disclose "fetching at least one software component identified by the one or more references" or "performing a hashing function . . ." Indeed, the '639 Provisional Application does not have any descriptions of "software components" or even mention the word "hashing."

The asserted claims of the '780 patent are anticipated by U.S. Patent No. 5,815,709 ("Waldo") under § 102. The asserted claims of the '780 patent are also invalid under obviousness in view of Waldo and U.S. Patent No. 6,263,442 ("Mueller") under § 103. In addition, the asserted claims of the '780 patent are invalid under lack of written description pursuant to § 112 ¶ 1 because the specifications of the '780 patent and of the '194 patent (and also the '639 Provisional Application) would not allow a person of ordinary skill in the art as of the effective filing date of the '780 patent to understand that the inventors possessed the subject matter of the inventions as claimed in claims 9 and 13. Nowhere is a "communications engine," much less "an ID generator *coupled to the communications engine*," described with enough specificity to convey clearly to one of skill in the art that the applicant had in fact invented an ID generator.

The evidence relating to invalidity of the asserted claims of the '780 patent will be provided by, among other things, Blue Coat's technical expert, Dr. George Necula.

### C. The '968 Patent.

The asserted claim of the '968 patent is invalid under anticipation and/or lack of written description. As an initial matter, there is no dispute that the effective filing date of the '968 patent is February 27, 2003.

The asserted claim of the '968 patent is anticipated by U.S. Patent No. 6,772,214 ("McClain") under § 102. The asserted claim of the '968 patent is also invalid under lack of written description pursuant to § 112 ¶ 1 because the specification and original claims of the '968 patent would not allow a person of ordinary skill in the art as of the effective filing date of the '968 patent to understand that the inventor possessed the subject matter of the invention as claimed in claim 1. For example, nowhere is a "content profile" or a "profile" described with enough specificity to convey clearly to one of skill in the art that the applicant had possession of the claimed invention

The evidence relating to invalidity of the asserted claims of the '968 patent will be provided by, among other things, Blue Coat's technical expert, Dr. George Necula.

### D. The '822 Patent And The '633 Patent.

The asserted claims of the '822 and '633 patents are invalid under anticipation and/or obviousness. As an initial matter, there is no dispute that the effective filing dates of the '822 and '633 patents are May 17, 2000.

The asserted claims of the '822 and '633 patents are anticipated by Ji under § 102. The asserted claims of the '822 and '633 patents are also invalid under obviousness in view of Ji, U.S. Patent No. 5,974,549 ("Golan") and David M. Martin Jr., Sivaramakrishan Rajagopalan, Abiel D. Rubin, "Blocking Java Applets at the Firewall," IEEE, 1997 ("Rubin") under § 103.

The evidence relating to invalidity of the asserted claims of the '822 and '633 patents will be provided by, among other things, Blue Coat's technical expert, Dr. Michael Hicks.

### E. The '731 Patent.

The asserted claims of the '731 patent are invalid under anticipation and/or obviousness. As an initial matter, the effective filing date of the '731 patent is May 3, 2004. Finjan asserts that the '731 patent claims priority to the '194 patent, which was filed on November 6, 1997.

However, the '194 patent does not disclose or support the elements found in the asserted claims of the '731 patent. *See* 35 U.S.C. § 120. For example, the '194 patent does not disclose or support "computer gateway," "a file cache for storing files," "each of the stored files is indexed by a file identifier," "a security profile cache . . .," and "security policies each including a list of restrictions of files . . ."

The asserted claims of the '731 patent are anticipated by *IBM WebSphere Edge Server: New Features and Functions in Version 2*, IBM Redbooks, Byron Braswell, Ming can Jing, Tomoyuki Ohta, and Henry Orton, April 2002 ("Braswell") under § 102. The asserted claims of the '731 patent are invalid under obviousness in view of Braswell under § 103. In addition, the asserted claims of the '731 patent are invalid under obviousness in view of Braswell and U.S. Patent No. 6,275,937 ("Hailpern") under § 103.

The evidence relating to invalidity of the asserted claims of the '731 patent will be provided by, among other things, Blue Coat's technical expert, Dr. George Necula.

## IV. DAMAGES

Because the asserted claims of the patents-in-suit are not infringed and/or invalid, Finjan should take nothing from this lawsuit.

In addition, Finjan cannot meet its burden to prove damages.[3] Its calculation of lump-sum royalty damages through its expert, Dr. Anne Layne-Farrar, fails to "carefully tie proof of damages to the claimed invention's footprint in the market place." *ResQNet.com*, 594 F.3d 860, 869 (Fed. Cir. 2010); *see also Grain Processing Corp. v. Am. Maize Prods. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999) ("To prevent the hypothetical from lapsing into pure speculation, this court requires sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture."); *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002).

---

[3] Finjan has the burden of proving damages by a preponderance of the evidence. *Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).

In particular, Finjan's damages asserted is not based on the incremental value that the allegedly patented inventions add to the accused products. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("The essential requirement is that the ultimate reasonable royalty award ***must*** be based on the incremental value that the patented invention adds to the end product.") (emphasis added). Indeed, Finjan's damages expert failed to apply proper apportionment between the patented feature and the unpatented features. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) ("[T]he patentee . . . must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages **between the patented feature and the unpatented features**, and such evidence must be reliable and tangible, and not conjectural or speculative . . .") (emphasis added) (citing *Garretson v. Clark*, 111 U.S. 120, 121 (1884)); *see also LaserDynamics v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012); *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014). There is not any proper apportionment of the royalty base attributable to the patented features or any establishment of a sufficient nexus between any proffered royalty rate and royalty base.

Blue Coat also reiterates its position that the settlements agreements are not sufficiently comparable to the hypothetical license. Nor are they admissible under FED. R. EVID. 403, particularly in light of the availability of non-litigation licenses in fact used by Dr. Layne-Farrar in establishing a royalty rate. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77-78 (Fed. Cir. 2012).

## V. OTHER ISSUES

The Court has reserved certain issues of law for separate proceedings; notably laches, the prosecution history estoppel and recapture defenses to infringement, and permanent injunctive relief.

| | | | |
|---|---|---|---|
| 1 | | | Respectfully submitted, |
| 2 | | | WILSON SONSINI GOODRICH & ROSATI |
| 3 | | | Professional Corporation |
| 4 | DATED: July 13, 2015 | By: | */s/ Olivia M. Kim* |
| 5 | | | EDWARD G. POPLAWSKI |
| | | | OLIVIA M. KIM |
| 6 | | | BRIAN LAM |
| | | | S. FERRELL ALMAN, JR. |
| 7 | | | VERA M. ELSON |
| | | | CHRISTOPHER MAYS |
| 8 | | | |
| 9 | | | Counsel for Defendant |
| | | | BLUE COAT SYSTEMS, INC. |