PAUL J. ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>BLUE COAT SYSTEMS, INC., a Delaware Corporation,<br><br>Defendant. | Case No.: 13-CV-03999-BLF<br><br>**PLAINTIFF FINJAN, INC.'S TRIAL BRIEF**<br><br>Date: July 20, 2015<br>Time: 9:00 a.m.<br>Place: Courtroom 3 – 5th Floor<br>Before: Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

| | Page |
|---|---|
| I. NATURE OF THE CASE | 1 |
| II. FACTUAL BACKGROUND | 1 |
|     A. Finjan and the Asserted Patents | 1 |
|     B. Blue Coat and the Accused Products | 3 |
| III. BLUE COAT INFRINGES THE ASSERTED PATENTS | 4 |
|     A. Blue Coat's Infringement Of Finjan's Patents | 4 |
| IV. THE ASSERTED PATENTS ARE VALID | 6 |
|     A. Blue Coat Cannot Meet Its Burden of Clear and Convincing Evidence | 7 |
|     B. There is No Basis for Invalidity Under Section 112 | 10 |
| V. RELIEF | 10 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Advanced Display Sys., Inc. v. Kent State Univ.*,
   212 F.3d 1272 (Fed. Cir. 2000) ................................................................................................ 9

*Becton Dickinson & Co. v. C.R. Bard, Inc.*,
   922 F.2d 792 (Fed. Cir. 1990) .................................................................................................. 4

*Connell v. Sears, Roebuck & Co.*,
   722 F.2d 1542 (Fed.Cir.1983) .................................................................................................. 8

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
   559 F.3d 1308 (Fed. Cir. 2009) ................................................................................................ 5

*Graham v. John Deere Co. of Kansas City*,
   383 U.S. 1 (1966) ..................................................................................................................... 9

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*,
   339 U.S. 605 (1950) ................................................................................................................. 5

*Impax Labs., Inc. v. Aventis Pharms. Inc.*,
   468 F.3d 1366 (Fed. Cir. 2006) ................................................................................................ 8

*In re Robertson*,
   169 F.3d 743 (Fed. Cir. 1999) .................................................................................................. 8

*InTouch Techs., Inc. v. VGO Communications, Inc.*,
   751 F.3d 1327 (Fed. Cir. 2014) ................................................................................................ 9

*Leo Pharmaceutical Prods., Ltd. v. Rea*,
   726 F.3d 1346 (Fed. Cir. 2013) ................................................................................................ 9

*Markman v. Westview Instruments, Inc.*,
   517 U.S. 370 (1996) ................................................................................................................. 4

*Microsoft Corp. v. i4i LTD P'ship*,
   131 S.Ct. 2238 (2011) .......................................................................................................... 6, 7

*Motorola Mobility, LLC v. Int'l Trade Comm'n*,
   737 F.3d 1345 (Fed. Cir. 2013) ................................................................................................ 8

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
   545 F.3d 1359 (Fed. Cir. 2008) ................................................................................................ 8

*Q.I. Press Controls, B.V. v. Lee*,
   752 F.3d 1371 (Fed. Cir. 2014) .............................................................................................. 10

*Ring & Pinion Serv. Inc. v. ARB Corp.*,
   743 F.3d 831 (Fed. Cir. 2014) .................................................................................................. 5

*Rockwell Int'l Corp. v. SDL, Inc.*,
   103 F.Supp. 2d. 1202 (N.D. Cal. 2000) ................................................................................... 8

FINJAN'S TRIAL BRIEF                                                                                      Case No.: 13-CV-03999-BLF

| | |
|---|---|
| *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361 (Fed. Cir. 2005) | 4 |
| *Spansion, Inc. v. Int'l Trade Commission*, 629 F.3d 1331 (Fed. Cir. 2010) | 8 |
| *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530 (Fed. Cir. 1983) | 9 |

**STATUTES**

| | |
|---|---|
| 25 U.S.C. § 285 | 10 |
| 28 U.S.C. § 1961 | 10 |
| 35 U.S.C. § 102 | 7 |
| 35 U.S.C. § 103 | 7, 9 |
| 35 U.S.C. § 271(a) | 4 |
| 35 U.S.C. § 282 | 6 |
| 35 U.S.C. § 283 | 10 |
| 35 U.S.C. § 284 | 10 |

# I. NATURE OF THE CASE

Plaintiff Finjan, Inc. ("Finjan") will prove at trial that defendant Blue Coat Systems, Inc. ("Blue Coat") infringes the following six Finjan patents, which cover pioneering technology for proactively detecting and preventing security threats to computers: U.S. Patent Nos. 6,154,844 (the "'844 Patent"), 7,058,822 (the "'822 Patent"), 7,647,633 (the "'633 Patent"), 7,418,731 (the "'731 Patent"), 6,965,968 (the "'968 Patent"), and 6,804,780 (the "'780 Patent") (collectively, the "Asserted Patents"). These patents are infringed by Blue Coat's core computer security products, specifically the ProxySG Products ("ProxySG"), which includes its virtual version called Secure Web Gateway Virtual Appliance ("SWGVA"), the ProxyAV Appliances ("ProxyAV"), WebPulse[1], WebFilter, Content Analysis System ("CAS"), and Malware Analysis Appliance ("MAA"). Specifically, Finjan will show that Blue Coat's products infringe thirteen claims of the Asserted Patents (the "Asserted Claims"), as shown below:

| Patent | Asserted Claims | Accused Product(s) |
| --- | --- | --- |
| '844 Patent | 1, 7, 11, 15, and 41 | • WebPulse |
| '822 Patent | 9 and 10 | • ProxySG/SWGVA |
| '633 Patent | 14 | • ProxySG/SWGVA with CAS and MAA |
| '731 Patent | 1 and 17 | • ProxySG/SWGVA with WebPulse |
| '968 Patent | 1 | • ProxySG/SWGVA with WebPulse |
| '780 Patent | 9 and 13 | • ProxySG/SWGVA and ProxyAV |

At trial, Finjan will seek monetary damages under the requirements of the law. Finjan will also present evidence that rebuts Blue Coat's defenses and counterclaims of non-infringement and invalidity, and any appropriate monetary damages related claims that Blue Coat intends to raise at trial.

# II. FACTUAL BACKGROUND

## A. Finjan and the Asserted Patents

Finjan formed in 1996 to develop technology to proactively detect a new generation of computer virus threats delivered over the Internet. After substantial investment and over the course of

---

[1] ProxySG needs WebFilter to communicate with WebPulse.

FINJAN'S TRIAL BRIEF                                       Case No.: 13-CV-03999-BLF

more than a decade, Finjan developed a suite of anti-malware technologies to address these new threats. Finjan's inventions included new content analysis technologies that focus on the behavior of malicious code, *i.e.*, what the code intends to do. This was a critical advance beyond traditional "signature" scanning techniques, which looked for an exact copy or "fingerprint" of viruses already known in the security industry. Based on Finjan's innovative technology, threats could be proactively blocked, allowing users to outsmart hackers by detecting previously unknown viruses. Finjan has been awarded various patents for its new techniques. For years, Finjan sold its Vital Security® product line, which incorporated Finjan's patented technology and generated tens of millions of dollars of sales. In addition to Finjan's products, Finjan has successfully licensed its patents to various leading technology and network and computer security companies.

The six Asserted Patents relate to a variety of systems and methods reflecting Finjan's innovative technology for computer protection described above, including techniques for optimization of this protection. The '844 Patent has claims for methods, systems and a computer readable storage medium that protects users against unknown downloadables that are potentially malicious using behavior detection. Generally, the system generates a "security profile" that identifies suspicious code within the downloadable. This profile is linked to the downloadable before it is made available to the client who requested the content so that appropriate actions can be taken. The '822 Patent system inspects downloadable information for executable code, such as downloadables, and injects mobile protection code into the content if executable code is found in order to monitor or intercept any malicious activity made by executable code. The downloadable content is then passed to the user. The '633 Patent involves a computer program product that can also run the downloadable in a protective virtual environment or "sandbox."

The remaining three patents provide a framework to optimize a security system. The computer gateway and computer-readable storage medium of the '731 Patent utilizes multiple caches (temporary memory) to store various components of a typical system that analyzes web traffic. The '968 Patent describes a different cache-based system, where after content is retrieved and scanned, security policies are applied efficiently in order to determine whether the content is allowable. The system of the '968
2

Patent stores these policy decisions in a "policy index" for quick retrieval in analyzing requested content. The '780 Patent protects users from downloadables by generating identifiers for incoming downloadables at a network security system before they arrive at a user's computer. "Hashing" is used in this process, which is a mathematical function to determine whether data was previously seen.

### B. Blue Coat and the Accused Products

Blue Coat was founded in 1996 under the name of CacheFlow as a company focused on web optimization and acceleration. It was not until 2002 that CacheFlow changed its name to Blue Coat and began providing security features in its product offering. For instance, in 2002, Blue Coat began partnering with other companies to add security features to its products, including a partnership with Finjan. Yet, as evidenced by a series of Blue Coat emails and development documents, Blue Coat realized it would be advantageous to have Finjan's innovative security techniques as part of its own product line. Thus, Blue Coat began a process in which it began incorporating Finjan's patented technology into its products. By 2007, Blue Coat began to explicitly acknowledge that its products included Finjan's proprietary methods.

Blue Coat's infringing products are the core of its defense solution and often work in conjunction with one another as part of a layered defense. In fact, WebPulse, ProxySG, CAS and MAA are collectively referred to as the "secure web gateway." WebPulse is the front line of defense against unknown threats in the Blue Coat security system. ProxySG/SWGVA receives a user's request for web content and sends the request for inspection to WebPulse if the content is unknown. WebPulse retrieves the content (*e.g.*, web pages, PDFs, JavaScript) from the web server and analyzes its operations looking for suspicious code. WebPulse performs its inspection in real-time using its Dynamic Real-Time Rating ("DRTR") technology, before any unknown web content is made available to any user of the Blue Coat system. Once the analysis is complete, WebPulse generates a security profile, known as the DRTR response, which includes a file called Cookie2. WebPulse provides the results of its analysis to ProxySG/SWGVA. If the result of the WebPulse analysis indicates that the user is allowed to view the web content, ProxySG/SWGVA then retrieves the web content from the web server.

3

In some scenarios, ProxySG/SWGVA sends the content to CAS and MAA in order to run the content in a virtual environment for further analysis. In other instances, ProxySG/SWGVA provides neutralizing, mobile protection code into the content before it is sent to the user. Because ProxySG is a proxy, it also caches a variety of information, including webpages, security information and policy decisions in order to increase the speed and efficiency of the system. ProxyAV is typically used in conjunction with ProxySG/SWGVA to provide anti-virus and other malware detection. ProxyAV performs an MD5 computation (*i.e.*, a mathematical algorithm used in hashing) on a webpage together with its components in order to generate an identifier that can later be used to retrieve the results of a previously scanned webpage.

### III. BLUE COAT INFRINGES THE ASSERTED PATENTS

#### A. Blue Coat's Infringement Of Finjan's Patents

It is undisputed that Finjan owns the rights and title to the Asserted Patents and that Blue Coat makes and sells the Accused Products. Dkt. No. 293-4, Pretrial Order at 8, ¶ 3. Patent infringement occurs when another party "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor . . . ." 35 U.S.C. § 271(a). To determine patent infringement, first, the court must determine as a matter of law the meaning of the particular patent claims at issue; second, it must consider whether the accused product infringes a properly construed claim. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). This Court has already issued its ruling construing the disputed claims terms in this case on October 20, 2014. Dkt. No. 118.[2]

To establish infringement, Finjan must show that Blue Coat's infringing products satisfy each element of any claim asserted against that product "either literally or under the doctrine of equivalents." *Seachange Int'l, Inc. v. C-COR, Inc*., 413 F.3d 1361, 1377 (Fed. Cir. 2005). Literal infringement requires a showing that each claim element is exactly present. *Becton Dickinson & Co. v. C.R. Bard, Inc*., 922 F.2d 792, 796 (Fed. Cir. 1990). Infringement under this doctrine of equivalents

---

[2] Blue Coat confirmed at the Pretrial Conference that it is not seeking construction of any additional claim terms. Ex. 1 attached hereto, Pretrial Conference Transcript at 90:4-13.

can be proven through showing that any difference between the claimed invention and the accused product is "insubstantial" to a person having ordinary skill in the art at time of infringement. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 607-08 (1950); *see also Ring & Pinion Serv. Inc. v. ARB Corp.*, 743 F.3d 831, 835 (Fed. Cir. 2014). One way of doing so is "by showing on a limitation by limitation basis that the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009)(citations omitted). Finjan bears the burden of proving Blue Coat's infringement by a preponderance of the evidence.

Finjan will prove by a preponderance of evidence that Blue Coat directly infringes the Asserted Claims of the Asserted Patents, literally and/or under the doctrine of equivalents, by making, using, selling, offering for sale and/or importing the Accused Products. As described in more detail below, Blue Coat has stipulated that its products satisfy a number of elements contained in the Asserted Claims. Dkt. No. 293-4, Pretrial Order at 8-9, ¶¶ 12, 13, 15, 18 and 19. The Court denied Blue Coat's motion for summary judgment that ProxySG[3], ProxyAV and WebPulse do not infringe the claims asserted against them. Dkt. No. 256. Blue Coat never moved for summary judgment of noninfringement of Claim 14 of the '633 Patent or with respect to the CAS or MAA products.

The specific infringement claims that Finjan will prove are as follows:

- **'844 Patent**: Finjan will present evidence that proves that WebPulse infringes Claims 1, 7, 11, 15 and 41 of the '844 Patent. Blue Coat stipulated that WebPulse meets the elements "wherein the Downloadable includes a JavaScript script" in Claim 7 and "receiving a Downloadable" in Claim 41. Dkt. No. 293-4, Pretrial Order at 8, ¶¶ 11-12.

- **'822 Patent**: Finjan will present evidence that proves that ProxySG/SWGVA infringes Claims 9 and 10 of the '822 Patent. Blue Coat stipulated that ProxySG/SWGVA meet the

---

[3] Apart from ProxySG's Pop-Up Blocker feature that was addressed in the Court's summary judgment order, Finjan identified other theories in which ProxySG infringes Claims 9 and 10 of the '822 Patent in its infringement contentions and expert report which Finjan will pursue at trial.

element "an information monitor for receiving downloadable-information" in Claim 9 of the '822 Patent. Dkt. No. 293-4, Pretrial Order at 8, ¶ 13.

- **'633 Patent**: Finjan will present evidence that proves that ProxySG/SWGVA, in combination with CAS and MAA, infringes Claim 14 of the '633 Patent.
- **'731 Patent**: Finjan will present evidence that proves that ProxySG/ SWVGA, in combination with WebPulse infringes Claims 1 and 17 of the '731 Patent.
- **'968 Patent**: Finjan will present evidence that proves that ProxySG/SWGVA, in combination with WebPulse infringes Claim 1 of the '968 Patent. Blue Coat stipulated that ProxySG/SWGVA with WebPulse meet the element "a content scanner, communicatively coupled with said memory, for scanning a digital content received, to derive a corresponding content profile" in Claim 1. Dkt. No. 293-4, Pretrial Order at 8, ¶ 15.[4]
- **'780 Patent**: Finjan will present evidence that proves that ProxySG/SWGVA with ProxyAV infringe Claims 9 and 13 of the '780 Patent. Blue Coat stipulated that ProxyAV and ProxySG/SWGVA with ProxyAV practice the elements "a communications engine for obtaining a Downloadable that includes one or more references to software components required to be executed by the Downloadable" in Claim 9, and "wherein the Downloadable includes HTML code" in Claim 13. Dkt. No. 293-4, Pretrial Order at 9, ¶¶ 18-19.

To the extent that Blue Coat has any defenses to infringement, they are limited to factual ones at trial, namely its allegations that Blue Coat does not practice certain claim elements.[5]

## IV. THE ASSERTED PATENTS ARE VALID

Blue Coat asserts that the Asserted Patents are invalid under Sections 101, 102, 103 and 112 of the Patent Act. Because the Asserted Patents are presumed valid, Blue Coat has the high burden to demonstrate invalidity by clear and convincing evidence. 35 U.S.C. § 282; *Microsoft Corp. v. i4i LTD*

---

[4] Finjan identified multiple structures in its infringement contentions and expert report that satisfy the policy index element of Claim 1 of the '968 Patent that Finjan will pursue at trial.

[5] Notably, Blue Coat has never articulated any theory under prosecution history estoppel or the recapture rule to rebut infringement under the doctrine of equivalents. These issues, however, are legal issues that should not be addressed before the jury.

*P'ship*, 131 S.Ct. 2238, 2242, 2251 (2011). Blue Coat will not be able to meet this burden for any of the Asserted Patents.

### A. Blue Coat Cannot Meet Its Burden of Clear and Convincing Evidence

Blue Coat alleges the following invalidity theories based on a total of ten prior art references:

| Asserted Patent | Asserted Prior Art | Asserted Invalidity Basis |
|---|---|---|
| '844 Patent | U.S. Patent No. 6,253,370 ("Abadi") | Anticipation under 35 U.S.C. § 102<br>Obviousness under 35 U.S.C. § 103 |
| | Abadi, U.S. Patent No. 6,622,247 ("Isaak") and U.S. Patent No. 5,983,348 ("Ji") | Obviousness under 35 U.S.C. § 103 |
| '822 Patent and '633 Patent | Ji | Anticipation under 35 U.S.C. § 102 |
| | Ji, U.S. Patent No. 5,974,549 ("Golan") and David M. Martin Jr., Sivaramakrishan Rajagopalan, Abiel D. Rubin, "Blocking Java Applets at the Firewall," IEEE, 1997 ("Rubin") | Obviousness under 35 U.S.C. § 103 |
| '731 Patent | IBM WebSphere Edge Server: New Features and Functions in Version 2, IBM Redbooks, Byron Braswell, Ming can Jing, Tomoyuki Ohta, and Henry Orton, April 2002 ("Braswell") | Anticipation under 35 U.S.C. § 102<br>Obviousness under 35 U.S.C. § 103 |
| | Braswell and U.S. Patent No. 6,275,937 ("Hailpern") | Obviousness under 35 U.S.C. § 103 |
| '968 Patent | U.S. Patent No. 6,772,214 ("McClain") | Anticipation under 35 U.S.C. § 102 |
| '780 Patent | U.S. Patent No. 5,815,709 ("Waldo") | Anticipation under 35 U.S.C. § 102 |
| | Waldo and U.S. Patent No. 6,263,442 ("Mueller") | Obviousness under 35 U.S.C. § 103 |

Blue Coat and its experts cannot demonstrate that any of these references or combinations shows anticipation or obviousness of any of the Asserted Patents. Finjan will present evidence (including expert testimony of Drs. Jaeger and Lyon) that undermine Blue Coat's contentions. Also, the Patent Office has already considered several of the references identified above during prosecution, including Ji and Golan for the '633 and '822 Patents, Ji for the '844 Patent, Mueller for the '780 Patent, and McClain for the '968 Patent.

With respect to anticipation, Blue Coat will not be able to meet its burden of proof. First, Blue Coat must demonstrate by clear and convincing evidence for each patent claim at issue that "the four

7

FINJAN'S TRIAL BRIEF                                                                 Case No.: 13-CV-03999-BLF

corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *Spansion, Inc. v. Int'l Trade Commission*, 629 F.3d 1331, 1356 (Fed. Cir. 2010). For each of its anticipation defenses, Blue Coat argues that certain elements are "inherently" disclosed in the reference.[6] Inherency is a difficult standard, requiring proof by clear and convincing evidence that the element not disclosed is "necessarily present" in the prior art reference. *See Motorola Mobility, LLC v. Int'l Trade Comm'n*, 737 F.3d 1345, 1348-50 (Fed. Cir. 2013). Inherency requires more than the recognition that it is possible, or that it would be obvious to a person of ordinary skill in the art; rather, it must be "clear that the missing descriptive matter is necessarily present in the things described in the reference." *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999). Indeed, "it is not enough that the prior art reference discloses part of the claimed invention, which an ordinary artisan might supplement to make the whole, or that it includes multiple, distinct teachings that the artisan might somehow combine to achieve the claimed invention." *Net MoneyIN, Inc. v. VeriSign, Inc*., 545 F.3d 1359, 1371 (Fed. Cir. 2008). Blue Coat does not have any evidence, much less clear and convincing evidence, to show at trial that the elements missing entirely from the alleged prior art references are "inherently present" or that the references disclose each and every element of the Asserted Claims.

Second, the non-patent references that Blue Coat relies upon are not enabled. "In order to be anticipating, a prior art reference must be enabling so that the claimed subject matter may be made or used by one skilled in the art." *Impax Labs., Inc. v. Aventis Pharms. Inc.*, 468 F.3d 1366, 1381 (Fed. Cir. 2006) (upholding a finding of no anticipation because the reference was not an enabling prior art reference). Blue Coat cannot demonstrate that such references describe Finjan's claimed invention sufficiently to enable a person of ordinary skill in the art to carry out the invention.

---

[6] As set forth in Finjan's *Daubert* and motion *in limine* briefing, Blue Coat uses the wrong standard to attempt to prove anticipation by inherency because the question of whether "'one of ordinary skill may in reliance on the prior art complete the work required for the invention' .... relate[s] to obviousness, not anticipation." *Rockwell Int'l Corp. v. SDL, Inc*., 103 F.Supp. 2d. 1202, 1206 (N.D. Cal. 2000)(quoting *Connell v. Sears, Roebuck & Co*., 722 F.2d 1542, 1548 (Fed.Cir.1983)).

8

FINJAN'S TRIAL BRIEF                                    Case No.: 13-CV-03999-BLF

Blue Coat also cannot meet its clear and convincing burden with respect to obviousness. Blue Coat has to prove by clear and convincing evidence that the differences between the subject matter of Finjan's Patents and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. 35 U.S.C. § 103. "Obviousness is a question of law based on underlying factual findings: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective indicia of nonobviousness," which are known as the *Graham* factors. *InTouch Techs., Inc. v. VGO Communications, Inc.*, 751 F.3d 1327, 1347 (Fed. Cir. 2014)(quoting *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966)). Thus, "[a] party seeking to invalidate a patent on obviousness grounds must 'demonstrate by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention and that the skilled artisan would have had a reasonable expectation of success in doing so.'" *InTouch*, 751 F.3d at 1347.

Finjan will rebut each of the requisite elements of obviousness that Blue Coat has to prove. Notably, Finjan has extensive evidence of objective indicia of nonobviousness (also referred to as secondary considerations) that confirm the validity of Finjan's Patents. In particular, the Federal Circuit "has emphasized that consideration of the objective indicia is *part of* the whole obviousness analysis, not just an afterthought." *Leo Pharmaceutical Prods., Ltd. v. Rea*, 726 F.3d 1346, 1357 (Fed. Cir. 2013). The importance of objective indicia cannot be overstated because they "help inoculate the obviousness analysis against hindsight." *InTouch*, 751 F.3d at 1347. In fact, "[o]bjective indicia of nonobviousness play a critical role in the obviousness analysis. They are 'not just a cumulative or confirmatory part of the obviousness calculus but constitute independent evidence of nonobviousness.'" *Leo Pharmaceutical*, 726 F.3d at 1358 (citations omitted); *see also Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1285 (Fed. Cir. 2000) ("Objective considerations such as failure by others to solve the problem and copying… 'may often be the most probative and cogent evidence' of nonobviousness.'")(quoting *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1983)).

Finjan's overwhelming evidence of objective indicia of nonobviousness at trial in combination with its rebuttal of the remaining elements of obviousness that Blue Coat will present will demonstrate the validity of Finjan's Patents.

### B. There is No Basis for Invalidity Under Section 112

Blue Coat alleges that Claims 9 and 13 of the '780 Patent and Claim 1 of the '968 Patent are invalid for failure to meet the written description requirement under § 112. Here, Blue Coat will not be able to prove by clear and convincing evidence that persons of ordinary skill in the art could not recognize that the inventors invented what is claimed. The disclosures contained in Finjan's Patents "convey to those skilled in the art that the inventor[s] had possession of the claimed subject matter as of the filing date." *Q.I. Press Controls, B.V. v. Lee*, 752 F.3d 1371, 1380 (Fed. Cir. 2014). As such, Blue Coat cannot meet its burden to prove that the Asserted Claims of the '780 and '968 Patents lack written description under § 112. Finjan will provide evidence, including expert testimony, rebutting these allegations. Notably, Blue Coat has withdrawn its theory that Claim 14 of the '633 is indefinite under § 112 following the Court's denial of its motion for summary judgment on this issue.[7]

## V. RELIEF

Finjan is entitled to no less than a reasonable royalty for Blue Coat's unauthorized use of Finjan's patented technology, along with interests and costs as fixed by the Court.[8] 35 U.S.C. § 284. Finjan's evidence includes Blue Coat's documents, Finjan's documents, the testimony of Blue Coat's and Finjan's witnesses, public documents, industry reports, and evidence supporting the value of the patented technology. In addition, there are at least two experts testifying on issues related to damages,

---

[7] Blue Coat alleges that Claims 1, 7, 11, and 41 of the '844 Patent are ineligible subject matter under § 101. As these are legal issues that Blue Coat should have raised earlier and not appropriate at trial, these challenges have been waived.

[8] Related issues to be addressed after trial include Finjan's request for an accounting of past damages for infringement up to the date of payment, along with prejudgment and postjudgment interest. 35 U.S.C. § 284; 28 U.S.C. § 1961. Furthermore, Finjan is entitled to an injunction under 35 U.S.C. § 283 to stop Blue Coat and those in privity with Blue Coat from engaging in any future infringement. Also, Finjan will seek a determination that this is an exceptional case, and Finjan should be awarded Finjan's costs, enhanced damages and reasonably attorney's fees under 25 U.S.C. § 285.

10

FINJAN'S TRIAL BRIEF     Case No.: 13-CV-03999-BLF

namely Dr. Medvidovic and Dr. Anne Layne-Farrar.[9]

                                          Respectfully submitted,

Dated:  July 13, 2015                     By: */s/ Paul J. Andre*
                                                 Paul J. Andre (SBN 196585)
                                                 Lisa Kobialka (SBN 191404)
                                                 James Hannah (SBN 237978)
                                                 KRAMER LEVIN NAFTALIS
                                                    & FRANKEL LLP
                                                 990 Marsh Road
                                                 Menlo Park, CA  94025
                                                 Telephone:  (650) 752-1700
                                                 Facsimile:   (650) 752-1800
                                                 pandre@kramerlevin.com
                                                 lkobialka@kramerlevin.com
                                                 jhannah@kramerlevin.com

                                                 *Attorneys for Plaintiff*
                                                 FINJAN, INC.

---

[9] Blue Coat has asserted a defense of laches, which it has agreed is not a proper issue for trial.

11