# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

FINJAN, INC.,

          Plaintiff,

    v.

BLUE COAT SYSTEMS, INC.,

          Defendant.

Case No.  13-cv-03999-BLF

**ORDER REGARDING NON-JURY LEGAL ISSUES**

Plaintiff Finjan, Inc. ("Plaintiff") brings this action, alleging that Defendant Blue Coat Systems, Inc.'s ("Defendant") Internet security software products infringe six of Finjan's patents. ECF 1.  Plaintiff alleges that Defendant infringes U.S. Patent Nos. 6,804,780 (the "'780 patent"), 6,154,844 (the "'844 patent"), 7,418,731 (the "'731 patent"), 6,965,968 (the "'968 patent"), 7,058,822 (the "'822 patent"), 7,647,633 (the "'663 patent") (collectively, the "Asserted Patents"). The Court conducted a jury trial, in which the jury found Blue Coat infringed five of the asserted patents and awarded damages.  ECF 438.  Following the jury's verdict, the Court conducted a bench trial regarding the priority dates for the '844 and '731 patents, prosecution history estoppel, the patent eligibility of the '844 patent, and laches.  The Court having heard live testimony, and considered the evidence and parties' briefing, makes the following findings of fact and conclusions of law in accordance with Fed. R. Civ. P. 52(a).[1]

## I.    BACKGROUND

The factual and procedural background of this case is well-known to the parties and need not be repeated in full here.  From July 20, 2015 to August 4, 2015, the Court held a jury trial

---

[1] To the extent that any conclusion of law is deemed to be a finding of fact, it is adopted as such; and likewise, any finding of fact that is deemed to be a conclusion of law is so adopted.

United States District Court
Northern District of California

United States District Court
Northern District of California

regarding Defendant's alleged infringement of the Asserted Patents.  On August 4, 2015, the jury returned a verdict finding that Defendant infringed claims 1, 7, 11, 15, and 41 of the '844 patent, claim 14 of the '633 patent, claims 1 and 17 of the '731 patent, claim 1 of the '968 patent, and claims 9 and 13 of the '780 patent.  ECF 438 at 2-3.  The jury found that Defendant did not infringe claims 9 and 10 of the '822 patent.  *Id*.  As part of the verdict, the jury was asked to provide an advisory verdict on the dates of invention for the '844 and '731 patents.  *Id*. at 4.  The jury found that the '844 patent was invented on November 8, 1996 and the '731 patent was invented on November 6, 1997.  *Id*.  The jury found that Defendant did not prove the Asserted Patents were anticipated by any prior art references.  *Id*. at 5.  Finally, the jury awarded a lump-sum damages award to Plaintiff for each of the patents Defendant infringed.  *Id*. at 6-7.

Following the jury's verdict, the Court set a bench trial on the non-jury legal issues for September 9, 2015.  ECF 466.  Defendant submitted its opening brief on August 20, 2015.  ECF 446.  Plaintiff filed its opposition brief on August 27, 2015.  ECF 451.  Defendant filed its reply brief on September 2, 2015.  ECF 459.  On September 3, 2015, Defendant also filed a motion to exclude certain witnesses from testifying about laches during the bench trial.[2]  ECF 460.  During the bench trial, Defendant elicited testimony from Steven Schoenfeld and Plaintiff elicited testimony from Dr. Harry Bims.  ECF 465 at 3.  The Court also heard argument from Plaintiff and Defendant about the non-jury legal issues.  *Id*.  The Court ordered the parties to submit proposed findings of fact and law by September 23, 2015.  ECF 470.  However, on September 18, 2015, the Federal Circuit issued its *en banc* decision in *SCA Hygiene Products Atiebolag v. First Quality Baby Products*, LLC, No. 2013-1564 (Fed. Cir. Sept. 18, 2015) which addressed the current status of laches in the patent context.  As a result, at the parties' request, the Court allowed the parties to file their findings of fact and law by September 28, 2015.  ECF 470.  On September 28, 2015, both parties submitted their proposed findings of fact and law.  ECF 472, 473.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 52(a) requires district courts to make findings of fact in an

---

[2] For the reasons addressed on the record during the bench trial, the Court TERMINATES AS MOOT Defendant's motion to exclude witnesses.

action "tried on the facts without a jury or with an advisory jury." Fed. R. Civ. P. 52(a)(1).  When a claim is submitted to an advisory jury, "the court is free to accept or reject the jury's advisory verdict in making its own findings." *Harris v. Sec'y. U.S. Dep't of Army*, 119 F.3d 1313, 1320 (8th Cir. 1997).  The Court is required to "find facts specially and state its conclusions of law separately." *Id*.  "One purpose behind Rule 52(a) is to aid the appellate court's understanding of the bases of the trial court's decision." *Simeonoff v. Hener*, 249 F.3d 883, 891 (9th Cir. 2001) (internal citations omitted).  The Court is not required to make findings on each and every fact presented at trial. *Id*.  Conflicting testimony must be resolved on relevant issues. *Zivkovic v. Southern California Edison, Co.*, 302 F.3d 1080, 1090 (9th Cir. 2002).

## III.    PRIORITY DATES

### A.    '844 Patent

Defendant argues that the '844 patent is not entitled to an effective filing date earlier than December 22, 1997 for two reasons.  Def.'s Mot. at 1-3, ECF 446-3.  First, Defendant argues that Plaintiff did not properly claim priority to an earlier effective filing date of November 8, 1996 through the '388 and '097 applications during prosecution.  *Id*. at 1-2.  Second, Defendant contends that Plaintiff has not put forth evidence to show it conceived of the invention covered by the '844 patent by November 8, 1996, and was diligent in reducing it to practice from November 8, 1996 to December 22, 1997. *Id*.  Plaintiff argues that it is not trying to claim priority to November 8, 1996 based on its actions during prosecution.  Sept. 9 Trial Tr. 218:2-7, ECF 465.  Instead, Plaintiff argues that it provided evidence that it conceived of the '844 patent invention by November 8, 1996.  Plaintiff contends it showed that the '639 provisional application which is listed on the front page of the '844 patent was filed on November 8, 1996.  Plaintiff also argues that it showed it was diligent between November 8, 1996 and December 22, 1997 in reducing the invention to practice by filing the '097 and '388 provisional applications. Pl.'s Opp. at 1-2, ECF 451-4.  The jury's advisory verdict found that the '844 patent's priority date is November 8, 1996. ECF 438 at 4.

### i.    Findings of Fact

With respect to the priority date of the '844 patent, the Court makes the following findings

3

of fact:

1. The '844 patent issued on November 28, 2000.  *See* JTX-2001.

2. The Provisional Application No. 60/030,639 ("the '639 provisional application") is listed on the first page of the '844 patent, *id*., and is also identified in the specification under the title "Priority Reference to Related Applications."  *Id*. at col. 1:8-12

3. The '639 provisional application was filed on November 8, 1996.  *Id*.

4. Dr. Trent Jaeger testified that the '844 patent specification told him that the idea for the patent was disclosed on November 8, 1996 by claiming benefit to the '639 provisional application.  Trial Tr. at 1918:8-1919:1.  Dr. Jaeger did not show that the '639 provisional application disclosed the claimed invention of the '844 patent and he did not testify as to why the disclosure of the '639 provisional application informed him that one of ordinary skill in the art had conceived of the claimed invention of the '844 patent.  *See id*.

5. Application Nos. 08/964,388 ("the '388 application) and 08/790,097 ("the '097 application") are listed within the "Priority Reference to Related Applications" section of the '844 patent.  *See* JTX-2001 at col. 1:5-20.

6. The '097 application was filed on January 29, 1997 and the '388 application was filed on November 6, 1997.  *Id*.

7. The '844 patent application was filed on December 22, 1997.  *Id*.

8. Dr. Jaeger did not provide any testimony regarding diligence in reduction to practice between November 8, 1996 and December 22, 1997.  *See* Trial Tr. 1918:8-1919:1.

9. Shlomo Touboul was the only named inventor of the '844 patent presented at trial.  He offered no evidence of conception or diligent reduction to practice for the '844 patent.  Trial Tr. 366:21.

10. There was no evidence of activities between November 8, 1996 and January 29, 1997 indicating diligent reduction to practice of the '844 patent.  *See generally* Trial Tr.

11. On January 29, 1997, the '097 application was filed.  *See* JTX-2001 at col. 1:5-20

12. There was no evidence of activities between January 29, 1997 and November 6, 1997

United States District Court
Northern District of California

1    indicating diligent reduction to practice of the '844 patent.  *See generally* Trial Tr.

2    13. On November 6, 1997, the '388 application was filed.  *See* JTX-2001 at col. 1:5-20

3    14. There was no evidence of activities between November 6, 1997 and December 22,

4        1997 indicating diligent reduction to practice of the '844 patent.  *See generally* Trial

5        Tr.

6    15. In 1996, Plaintiff was focused on computer security software and hardware security.

7        Trial Tr. 284:6-285:4.  By 1998, the company had around 150 to 200 employees

8        including a large research and development group.  *Id*.  There was no evidence about

9        how many people were working on the '844 patent.  *See id*.

10   16. Plaintiff's two main lines of business were investing, researching, and developing new

11       products and licensing its technology relating to software and hardware security.  Trial

12       Tr. 285:23-286:22; *see also* 317:16-21.  There was no evidence about how much

13       resources Plaintiff spent on the '844 patent.  *See id*.

14   17. Plaintiff spent more than $65 million in researching and developing the Asserted

15       Patents.  Trial Tr. 302:1-4.  There was no evidence about how much of that money was

16       spent developing the '844 patent.  *See id*.

17       **ii.    Conclusions of Law**

18       The date on which a patent application is filed is presumed to be the applicant's date of

19   invention.  *Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443, 449 (Fed. Cir.

20   1986) ("[T]he date of invention [is] presumed to be the filing date of the application until an

21   earlier date is proved.").  "Priority of invention is a question of law, based on findings of

22   evidentiary fact directed to conception, reduction to practice, and diligence."  *Scott v. Koyama*,

23   281 F.3d 1243, 1246 (Fed. Cir. 2002) (citation omitted).  "Conception is the formation, in the

24   mind of the inventor, of a definite and permanent idea of the complete and operative inventions, as

25   it is thereafter to be applied in practice."  *Cooper v. Goldfarb*, 154 F.3d 1321, 1327 (Fed. Cir.

26   1998).  "The filing of a patent application is constructive reduction to practice of the invention

27   disclosed therein."  *Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*, 774 F.3d 968, 975

28   (Fed. Cir. 2014).  In order to show diligence, there must be "reasonabl[e] continuing activity to

United States District Court
Northern District of California

1   reduce the invention to practice." *Brown v. Barbacid*, 436 F.3d 1376, 1380 (Fed. Cir. 2006).

2   "There is no rule requiring a specific kind of activity in determining whether the applicant was

3   reasonably diligent in proceeding toward…reduction to practice." *Id*. at 1382.

4          Since Plaintiff is not trying to claim an earlier effective priority date based on its action

5   during the prosecution of the '844 patent, the Court does not address Defendant's first argument.

6   With respect to whether Plaintiff has shown conception and diligent reduction to practice, the

7   jury's advisory verdict found that the priority date of the '844 patent is November 8, 1996.  ECF

8   438 at 4.  Based on the record, the Court will not adopt the jury's advisory verdict and instead

9   finds that Plaintiff did not put forth sufficient evidence to show that the '844 patent is entitled to a

10  November 8, 1996 priority date.

11         Starting with conception, Dr. Trent Jaeger testified only that the '844 patent was conceived

12  by November 8, 1996 because it claimed priority to the '639 provisional application.  However,

13  Dr. Jaeger did not provide evidence about how the '639 application showed that the invention of

14  the '844 patent had been conceived.  Without knowing whether Dr. Jaeger reviewed the '639

15  provisional application and whether the '639 provisional application disclosed enough information

16  to show that the inventor had "a definite and permanent idea of the complete ['844 patent]," the

17  Court finds that Plaintiff has not shown the '844 patent was conceived by November 8, 1996.  *See*

18  *Cooper*, 154 F.3d at 1327.

19         Plaintiff also failed to show that it was diligent in reducing to practice the invention of the

20  '844 patent.  Between November 8, 1996 and December 22, 1997, Plaintiff's sole evidence of

21  diligence is that the applications listed as priority references to the '844 patent were filed on

22  January 29, 1997 and November 6, 1997 and general information about its business plans and

23  research and development budget for all of the Asserted Patents.  At best, this evidence indicates

24  Plaintiff engaged in activity on two different days in a thirteen month span in an effort to reduce to

25  practice the invention of the '844 patent.  However, there is no evidence about how Plaintiff was

26  diligent during the remaining time within those thirteen months.  Additionally, general

27  information about business plans or research expenditures covering several patents is not sufficient

28  to establish that any amount of funds or effort was directly devoted to the development of the '844

United States District Court
Northern District of California

United States District Court
Northern District of California

1    patent.  Accordingly, the Court finds that Plaintiff has not met its burden to show that the '844

2    patent has a priority date of November 8, 1996 and therefore, the presumptive invention date of

3    the '844 patent is its filing date of December 22, 1997.

4        **B.    '731 Patent**

5            Defendant argues Plaintiff has not shown that claims 1 and 17 of the '731 patent are

6    entitled to a priority date earlier than May 3, 2004, the filing date of the '731 patent.  Def.'s Mot.

7    at 3, ECF 446-3.  Plaintiff argues that the '731 patent is entitled to an effective filing date of

8    November 6, 1997, based on an earlier continuation-in-part '667 patent application filed on March

9    30, 2000, which was a continuation of the '388 patent application filed on November 6, 1997.

10   Jury Instructions 38:22-26, ECF 437.  Defendant counters that Plaintiff cannot rely on the '667

11   and '338 applications to establish an earlier effective filing date because it failed to show that the

12   '667 and '388 applications supported every element of claims 1 and 17 of the '731 patent

13   application.  Def.'s Mot. at 3-4, ECF 446-3.  Specifically, Defendant argues that claims 1 and 17

14   of the '731 patent application contain the terms "cache," "file cache," and "security profile cache"

15   and claim 1 also contains the term "security profile cache" (collectively, "caching terms").  *Id*.

16   According to Defendant, none of the caching terms appear in the '667 and '388 patent applications

17   and Plaintiff has not shown that the caching terms are supported by the disclosures of the '667 and

18   '388 patent applications.  *Id*. Finally, Defendant notes that the '667 and '388 applications' failure

19   to mention any of the caching terms is fatal to Plaintiff's argument that these applications disclose

20   the caching terms.  *Id*.  Defendant contends that during the prosecution of the '731 patent, Plaintiff

21   distinguished the prior art reference Ji by arguing that it did not disclose a "security profile cache"

22   because it provided no discussion of a security profile cache or any cache at all.  *Id*.  Plaintiff

23   argues that it presented evidence through Dr. David Lyon's testimony that showed the '667 and

24   '338 patent applications disclosed every element of claims 1 and 17 of the '731 patent application.

25   Pl.'s Opp. at 2-3.  Plaintiff also argues that Defendant misconstrues Plaintiff's arguments with

26   respect to the Ji patent during prosecution.  *Id*.  The jury's advisory verdict found that the '731

27   patent's priority date is November 6, 1997.  ECF 438 at 4.

28       **i.    Findings of Fact**

7

With respect to the priority date of the '731 patent, the Court makes the following findings of fact:

1. The '731 patent issued on August 26, 2008.  *See* JTX-2005.

2. Plaintiff asserted claims 1 and 17 of the '731 patent.

3. The patent application that led to the '731 patent is a continuation-in-part of Application No. 09/539,667 ("the '667 application"), which was filed on March 30, 2000.  JTX-2005.  The '667 application is a continuation of Application No. 08/964,388 ("the '388 application"), which was filed on November 6, 1997.  *Id.*

4. The '388 issued as U.S. Patent No. 6,092,194 ("the '194 Patent").

5. The specification in the section entitled "Cross References to Related Applications" also identifies the relationship between the '731 Patent and the November 6, 1997 filing of the patent application for the '194 Patent.  JTX 2005 at col. 1:7-16.

6. The asserted claims 1 and 17 of the '731 patent contain the terms "cache," "file cache," and "security profile cache."  *Id.* at 11:35-55 and 13:26-44.

7. The words "cache" or "caching" do not appear within the '194 patent.  Trial Tr. 1907:6-8 (testimony of Dr. David Lyon).

8. The terms "cache," "file cache," "security profile cache," and "security policy cache" do not appear within the '388 application.  Exh. 8 to Kim Decl., ECF 447-9.

9. Dr. Lyon testified that the '194 patent disclosed the concepts of "cache" or "caching." Trial Tr. 1879:1-1880:8 and 1907:1-24.  Dr. Lyon further opined that all of the elements from claims 1 and 17 are disclosed in the '194 patent.  *Id.*  Dr. George Necula testified that the '194 patent did not disclose the concepts of "cache" or "caching."  *Id.* at 1822:24-1823:16.  The Court finds Dr. Lyon's testimony to be credible.

10. During the prosecution of the '731 patent, in order to overcome prior art, Plaintiff argued that the prior art Ji reference did not disclose a "security profile cache" because "Ji provides no discussion of a security profile cache, or, for that matter, any cache at all." Ex. 5 to Kim Decl. at FINJAN-BC 000982, ECF 447-6.

**ii.    Conclusions of Law**

8

United States District Court
Northern District of California

1    When determining the priority date of a patent, "the test for sufficiency of support in a

2    parent application is whether the disclosure of the application relied upon 'reasonably conveys to

3    the artisan that the inventor had possession at that time of the later claimed subject matter.'"

4    *Ralston Purina Co. v Far-Mar-Co, Inc.*, 772 F.2d 1570, 1575 (Fed. Cir 1985).

5    The Court agrees with Plaintiff and finds that the '731 patent is entitled to a priority date of

6    November 6, 1997.  Plaintiff presented persuasive evidence to show that all the elements of the

7    '731 patent are disclosed in the '667 and '338 applications.  Trial Tr. 1879:2-1880:7 (Dr. David

8    Lyon testifying that "[a]ll of the necessary terms from the '731 claims were [in the '667 and '388

9    applications].")  Thus, based on the '667 and '338 applications, an artisan would know "that the

10   inventor had possession of the later claimed subject matter."  *Ralston Purina*, 772 F.3d at 1575.

11   Although Defendant presented evidence through Dr. George Necula that the '667 and '338

12   application did not disclose the idea of caching terms, Trial Tr. 1822:24-1823:16, based on the

13   jury's advisory verdict, the jury necessarily found Dr. David Lyon's testimony credible.  The

14   Court agrees with the jury's credibility finding.

15   With respect to Defendant's belief that Plaintiff's presentation during the prosecution of

16   the '731 patent contradicts its position regarding the priority date of the '731 patent, the Court

17   finds Defendant's argument overgeneralizes Dr. David Lyon's testimony and the disclosure of the

18   Ji patent.  Dr. Lyon testified that the '667 and '337 patent applications disclose caching because

19   they disclose "a memory [which] can be a cache."  Trial Tr. 1879:17.  Defendant's argument

20   generalizes memory to include any storing of files and as a result argues that any storing of files

21   must include a cache.  Defendant then turns to the Ji patent and notes that it discloses "files stored

22   on a disk drive" which Defendant generalizes to the storing of files and then argues that based on

23   Plaintiff's theory about the '667 and '337 patent applications, the Ji patent must, contrary to

24   Plaintiff's position during prosecution, also disclose a cache. However, Defendant's argument

25   fails because Defendant has provided no evidence that a memory and disk drive are co-extensive

26   terms.  Given that they are two different terms, the reasonable inference, in the absence of any

27   evidence, is that these terms have different meanings.  Accordingly, the Court finds that the '731

28   patent is entitled to a priority date of November 6, 1997.

## IV.   PROSECUTION HISTORY ESTOPPEL

Defendant argues that Plaintiff is barred from asserting infringement under the doctrine of equivalents for the asserted claims of the '844, '633, '968, and '780 patents.  Def.'s Mot. at 4-9, ECF 446-3.  With respect to the '633 patent, Defendant argues that Plaintiff is estopped from asserting the doctrine of equivalents because of the position it took during the prosecution of the '633 patent to distinguish the claimed subject matter from the prior art.  Def.'s Mot. at 6-7, ECF 446-3.  Defendant notes that the Patent Office initially rejected the pending claims in view of the Golan prior art.  *Id*.  In responding to the rejection, Plaintiff stated:

> "In distinction with the claimed invention, Golan does not describe the packaging of protection code. Instead, Golan discusses a situation whereby a security monitor is already resident on a client computer, as illustrated in FIGS. 2, 5 and 9 of Golan, without concerning itself as to how the security monitor was installed. In fact, prima facie the methodology of the claimed invention, of packaging mobile protection code with downloadable information, seems wasteful and counter-intuitive, since such protection code is typically re-transmitted to the client computer many times - in particular, each time a downloadable with executable code is downloaded."

Id.  According to Defendant, this response clearly and unmistakably surrendered any method or system that does not have packaging of the protection code, transmitting the protection code to the client computer, and packaging and transmitting each time a downloadable with executable code is downloaded.  *Id*.  Defendant argues that Plaintiff is now trying to reclaim this abandoned subject matter by arguing that the "kernel scout" found in Defendant's MMA meets the causing limitation through the doctrine of equivalents even though the "kernel scout" is not packaged, transmitted, or packaged and transmitted each time a downloadable executable code is downloaded.  *Id*.  Plaintiff counters that it did not make any clear and unmistakable surrender of subject matter during the prosecution of the '633 patent.  Pl.'s Opp. at 5-6, ECF 451-4.

### A.   Findings of Fact

With respect to prosecution history estoppel, the Court makes the following findings of fact:

1.   Defendant disclosed its defense of prosecution history estoppel during discovery. Defendant's Third Supplemental Responses to Plaintiff's Second Set of Interrogatories at 24, ECF 451-6.

United States District Court
Northern District of California

2. The verdict form instructed the jury to decide whether the accused products literally infringed the asserted claims.  EC 438 at 2.  For each claim that was not literally infringed, the verdict form instructed the jury to decide whether the claim was infringed under the doctrine of equivalents.  *Id.* at 2-3.

3. The jury found all the claims literally infringed except for the claims of the '822 patent and the '633 patent.  *Id*. at 2.

4. Despite the instructions on the verdict form, the jury decided whether each asserted claim was infringed under the doctrine of equivalents.  *Id*. at 3.  The jury found all the claims were infringed under the doctrine of equivalents except for the claims of the '822 patent.  *Id*.

5. The parties waived this inconsistency and agreed to allow the jury to be discharged.  Trial Tr. 2192-2193.

6. Plaintiff asserted infringement under the doctrine of equivalents for the following limitation found in claim 14 of the '633 patent: "causing mobile protection code to be executed by the mobile code executor at a downloadable-information destination such that one or more operations of the executable code at the destination, if attempted, will be processed by the mobile protection code."  Trial Tr. at 610:21-612:14.

7. During the prosecution of the '633 patent, the Patent Office rejected the pending claims in view of a prior art called Golan.  Exh. 4 at FINJAN-BC 001281-286, ECF 447-5.

8. In a letter addressing the rejection under, Plaintiff remarked on the distinctions between the claimed invention and Golan:

> "In distinction with the claimed invention, Golan does not describe the packaging of protection code. Instead, Golan discusses a situation whereby a security monitor is already resident on a client computer, as illustrated in FIGS. 2, 5 and 9 of Golan, without concerning itself as to how the security monitor was installed. In fact, prima facie the methodology of the claimed invention, of packaging mobile protection code with downloadable information, seems wasteful and counter-intuitive, since such protection code is typically re-transmitted to the client computer many times - in particular, each time a downloadable with executable code is downloaded."

*Id*. at FINJAN-BC 001269.

9. In responding to the Examiner's Arguments, *see id*. at FINJAN-BC 001269-001274,

United States District Court
Northern District of California

1    Plaintiff dealt with the rejection of each claim individually.  *Id*. at FINJAN-BC

2    001270.

3    10. In addressing the rejection of claim 30 (current claim 14), Plaintiff asserted that claim

4        14 "is neither shown nor suggested in Golan."  *Id*. at FINJAN-BC 001271.  Plaintiff

5        did not reference its earlier general remarks.  *Compare id*. at FINJAN-BC 001271

6        (addressing rejection of claim 30 without referencing earlier general remarks) *with id*.

7        at FINJAN-BC 001270 (addressing rejection of claim 1 and referencing earlier general

8        remarks).

9    **B.    Conclusions of Law**

10    Prosecution history estoppel "is a legal question for the court."  *Glaxo Wellcome, Inc. v.*

11 *Impax Laboratories, Inc.*, 220 F. Supp. 2d 1089, 1093 (N.D. Cal. Aug. 21, 2002).  "To invoke

12 argument-based estoppel, the prosecution history 'must evince a clear and unmistakable surrender

13 of subject matter.'"  *Conoco, Inc. v. Energy & Envtl Int'l., L.C.*, 460 F.3d 1349, 1364 (Fed. Cir.

14 2006).  With argument-based estoppel, unlike amendment-based estoppel, "we do not presume a

15 patentee's arguments to surrender an entire field of equivalents through simple arguments and

16 explanations to the patent examiner."  *Id*.

17        As an initial matter, the Court finds Defendant's prosecution history estoppel defense with

18 respect to the '844, '968, and '780 patents is moot.  The jury found that these patents were literally

19 infringed by the accused products and were instructed not to consider whether these patents were

20 also infringed under the doctrine of equivalents.  As a result, the jury verdict with respect to the

21 doctrine of equivalents of the '844, '968 and '780 patents is surplusage and not necessary for the

22 resolution of this action.  Accordingly, the Court declines to issue an opinion on issues that are not

23 necessary to the resolution of this action.

24        With respect to the '633 patent, the Court agrees with Plaintiff and finds that it did not

25 clearly and unmistakably surrender subject matter that it is now trying to recapture.  "Generally,

26 courts will only find argument-based estoppel appropriate when the patentee has explicitly

27 disavowed a specific feature in the prior art; additional statements meant to further distinguish the

28 claimed invention from prior art do not constitute clear and unmistakable surrender." *Baseball*

United States District Court
Northern District of California

1    *Quick, LLC v. MLB Adv. Media L.P.*, No 11-CV-1735-KBF, 2014 WL 6850965, at *9 (S.D.N.Y.

2    Dec. 4, 2014) (collecting cases).  Contrary to Defendant's argument, Plaintiff's statements about

3    the Golan prior art did not amount to a clear and unmistakable surrender of subject material.

4    Rather, Plaintiff was explaining the novelty of its invention in light of the prior art.  If Defendant's

5    argument was true, it "would effectively eviscerate the doctrine of equivalents, because all patent

6    applicants must explain with particularity how their claimed invention differs from prior art in

7    order to obtain a patent."  *Id.*

8        Further, Defendant has not shown that Plaintiff's general statements about the Golan prior

9    art pertain to claim 14.  Reviewing Plaintiff's response to the patent office's rejection shows that

10   Plaintiff only referred to its general remarks about the Golan prior art in reference to claim 1.  Exh.

11   4 at FINJAN-BC 001270, ECF 447-5 (explaining the limitation "is neither shown nor suggested in

12   Golan, *as explained above hereinabove* [referring to Plaintiff's general statements about the Golan

13   prior art]) (emphasis added).  Meanwhile, with respect to claim 30 (current claim 14), Plaintiff

14   simply argues that Golan does not disclose the limitations present in clam 30 but its argument does

15   not reference the prior general statements about the Golan prior art.  *Id.* at FINJAN-BC 001271.

16   Given this uncertainty, Plaintiff's arguments do not constitute a clear and unmistakable surrender

17   of subject matter.  Accordingly, the Court finds that argument-based estoppel does not apply to the

18   '633 patent.

19   **V.    PATENT ELIGIBILITY UNDER 35 U.S.C. § 101**

20       **A.    Findings of Fact**

21           1.   Plaintiff asserted claims 1, 7, 11, 15, and 41 of the '844 patent.  EC 438 at 1.

22           2.   Contested terms are construed as set forth in the Court's order construing claims.  ECF

23               118.

24       **B.    Conclusions of Law**

25           Defendant argues that the '844 patent is ineligible under 35 U.S.C. § 101 because  its

26   claims are directed to an abstract idea and do not contain an inventive concept.  Def.'s Mot. at 9-

27   17.  The '844 patent claims a system and methods of network protection wherein an inspector

28   reviews a piece of downloadable-information for suspicious code or behavior.  JTX-2001 at col.

United States District Court
Northern District of California

2:3-19.  The inspector generates a profile characterizing the areas of suspicion and then attaches that profile to the downloadable-information.  *Id.*  The profile can include other unique identifiers and certificates that are later read by a protection engine to determine whether or not to trust the profile.  *Id.* at col. 2:20-48. By providing verifiable profiles, the object of the invention is to provide flexible, efficient protection against known and unknown hostile downloadable information without having to re-inspect the same piece of downloadable-information each time. *Id.* at col. 2:61-3:7.

The asserted claims of the '844 patent include three independent claims—claims 1, 15, and 41—and two dependent claims—claims 7 and 11, each of which is dependent on claim 1.  JTX-2001 at col. 11-14.  Claim 1 of the '844 patent, representative for § 101 purposes, recites:

> 1. A method comprising:
> receiving by an inspector a Downloadable;
> generating by the inspector a first Downloadable security profile that identifies suspicious code in the received Downloadable; and
> linking by the inspector the first Downloadable security profile to the Downloadable before a web server makes the Downloadable available to web clients.

*Id.* at col. 11:13-21.  Claim 15 differs from claim 1 through the addition of a memory for storing a "rule set," followed by a "content inspection engine for using the first rule set to generate a first Downloadable security profile."  *Id.* at col. 11:61-12:2.  Claim 41 differs from claim 1 through the addition of a "computer-readable storage medium."  *Id.* at col. 14:8-19.  Dependent claim 7 adds that the "[d]ownloadable includes a JavaScript script," *id.* at 11:34-35, and dependent claim 11 adds that the prolife "includes a list of operations deemed suspicious," *id.* at 11:44-46.

Section 101 of the Patent Act defines the classes of patentable subject matter: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. § 101.  Despite the apparent breadth of this language, § 101 has long contained "an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Ass'n for Molecular Pathology v. Myriad Genetics*, 133 S.Ct. 2107, 2116 (2013) (quoting *Mayo Collaborative Services v. Prometheus Laboratories*, 132 S.Ct.

1   1289, 1293 (2012)).

2   In *Alice Corp. v. CLS Bank Int'l*, 134 S.Ct. 2347 (2014), the Supreme Court clarified the

3   framework that should be used to determine whether a patent claims patent-eligible subject matter.

4   First, the claims at issue should be analyzed to determine if they are directed to one of those

5   patent-ineligible concepts.  Step two of the analysis is a "search for an 'inventive concept'—i.e.,

6   an element or combination of elements that is sufficient to ensure that the patent in practice

7   amounts to significantly more than a patent upon the ineligible concept itself."  *Id.* (internal

8   citations omitted).

9   The burden of proof applicable to a Section 101 challenge is not a settled question of law.

10  *See Intellectual Ventures I LLC v. Symantec Corp.*, No. 10-1067-LPS, 2015 WL 1843528, at *5-6

11  (D. De. April 22, 2015) (describing whether to apply a burden of clear and convincing evidence or

12  a burden of a preponderance of the evidence to patent eligibility).  However, this question does not

13  need to be resolved in the context of this motion because the Court's holding would be the same

14  whether the Court applied a burden of clear and convincing evidence or a burden of a

15  preponderance of the evidence.

16  The first step in a Section 101 analysis is to determine whether the claim at issue is

17  directed to a "patent-ineligible concept."  *Ultramercial, Inc. v. Hulu,* LLC, 772 F.3d 709, 714

18  (Fed. Cir. 2014).  Defendant argues that claim 1 of the '844 patent is directed towards an abstract

19  idea.  Def.'s Mot at 9-11, ECF 446-3.  According to Defendant, although the specification states

20  that the benefit of the '844 patent is to recognize computer viruses in a downloadable, the actual

21  claim does not provide a non-abstract solution to the problem of recognizing a computer virus in a

22  downloadable.  *Id.* at 10-11.  Defendant contends that claim 1 is directed to the abstract idea of

23  "receiving" a downloadable, "generating" information, and then "linking" the downloadable and

24  generated information.  *Id.*

25  Plaintiff argues that claim 1 of the '844 patent is not abstract because it is "necessarily

26  rooted in computer technology in order to overcome a problem specifically arising in the realm of

27  computer networks."  *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir.

28  2014).  Plaintiff contends that contrary to Defendant's overgeneralization of claim 1 of the '844

*United States District Court*
*Northern District of California*

15

patent, claim 1 covers a specific technique of protecting computer networks.  Pl.'s Opp. at 9-12, ECF 451-4.  As further support for its argument that the '844 patent is not directed towards an abstract idea, Plaintiff notes that guidance from the Patent Office has held a similar claim directed towards isolating and removing malicious code from electronic messages through receiving data, storing data, scanning data, and creating a new data file is not abstract.  *Id*. at 10-11.

      The Court concludes that claim 1 of the '844 patent is not directed towards an abstract idea.  The Court finds the claim at issue to be similar to the hypothetical claim in the Patent Office's guidance.  See "2014 Interim Guidance on Patent Subject Matter Eligibility (Interim Eligibility Guidance) for USPTO personnel to use when determining subject matter eligibility under 35 U.S.C. § 101 in view of recent decisions by the U.S. Supreme Court, including Alice Corp., Myriad, and Mayo", *available at* www.uspto.gov/patent/laws-and-regulations/examination-policy (last visited November 9, 2015) (hereinafter "Patent Office's Guidance).  Although Defendant argues and the Court recognizes that the Patent Office's guidance is not binding, the Court finds its reasoning persuasive.  *See Intellectual Ventures I*, 2015 WL 1843528 at *9 (discussing the Patent Office's guidance in a patent eligibility analysis).  In its guidance, the Patent Office analyzed a hypothetical claim covering "Isolating and Removing Malicious Code from Electronic Messages."  Patent Office's Guidance at Abstract Idea Examples, part 1, example 1, claim 1.  The hypothetical claim covers "receiving an electronic communication," "storing the communication," and "extracting…malicious code from the electronic communication to create a sanitized electronic communication."  *Id*.  The Patent Office explained that the hypothetical claim was not directed to an abstract idea because

> The claimed invention relates to software technology for isolation and extraction of malicious code contained in an electronic communication. The claim is directed towards physically isolating a received communication on a memory sector and extracting malicious code from that communication to create a sanitized communication in a new data file. Such action does not describe an abstract concept, or a concept similar to those found by the courts to be abstract, such as a fundamental economic practice, a method of organizing human activity, an idea itself (standing alone), or a mathematical relationship. In contrast, the invention claimed here is directed towards performing isolation and eradication of computer viruses, worms, and other malicious code, a concept inextricably tied to computer technology and distinct from the types of concepts found by the courts

16

to be abstract. Accordingly, the claimed steps do not recite an abstract idea. *Id*.

In this case, claim 1 of the '844 patent is directed towards receiving a downloadable, identifying suspicious or malicious code and generating a security profile, and associating the downloadable with the security profile.  These steps do not describe an abstract concept as they are directed towards performing steps leading to identifying malicious code to create a new data file containing a security profile.  Further, the Patent Office's hypothetical claim is "necessarily rooted in computer technology because malicious code or 'viruses' have no significance outside the realm of computer technology." *Intellectual Ventures I*, 2015 WL 1843528, at *9.  Similarly, claim 1of the '844 patent is also rooted in computer technology as it covers the identification of suspicious code which do not have significance outside the realm of computer technology.  *See DDR Holdings, LLC*, 773 F.3d at 1257; *see also Intellectual Ventures I, LLC v. Canon Inc.*, No. 13-473-SLR, 2015 WL 687446, at *19-*22 (D. De. Nov. 9, 2015) (finding computer-implemented invention eligible under 35 U.S.C. § 101).

Defendant relies on another *Intellectual Ventures* case to argue that claims directed to malware can still be abstract.  *See Intellectual Ventures II LLC v. JP Morgan Chase & Co.*, 13-CV-3777-AKH, 2015 WL 1941331 (S.D.N.Y. April 28, 2015).  But *Intellectual Ventures II* is distinguishable because preemption was an overriding concern with the claims in that case.  *Id*.  In *Intellectual Ventures II*, the claims were so broad that they had the potential to "monopolize every concrete application of post-distribution access to intellectual property and validating such a patent 'would tend to impede innovation rather than promote it, thereby thwarting the primary object of the patent laws.'"  Contrary to *Intellectual Ventures II*, the Court does not find a similar preemption concern in this case.  While Defendant argues that these patent claims would preempt a broad swath of network security-based innovation, Plaintiff counters that there are many possible ways and unclaimed alternatives to malware protection.  The Court agrees with Plaintiff and finds that the '844 patent has important and specific limitations about providing pro-active protection.  These limitations provide meaningful boundaries on the invention and thus, the '844 patent does not raise preemption concerns.  Accordingly, the '844 patent is not directed to an abstract idea and

United States District Court
Northern District of California

1   is therefore patent eligible under 35 U.S.C § 101.

2   **VI.   LACHES**

3       Defendant argues that Plaintiff should be barred from recovering any damages by the

4   doctrine of laches.  Def.'s Mot. at 17-25, ECF 446-3.  Plaintiff counters that the doctrine of laches

5   is irrelevant to this action because laches prevents the recovery of only pre-suit damages and

6   Plaintiff only sought damages from the filing date of this action.  Pl.'s Opp. at 18, ECF 451-4.

7       **A.   Findings of Fact**

8       With respect to laches, the Court makes the following findings of fact:

9       1.   On August 28, 2013, Plaintiff filed a Complaint for patent infringement against

10           Defendant.  ECF 1.

11       2.   Defendant disclosed a laches defense for the '968, '822, '731, and '633 patents.  Ex. 6

12           at 23-24, ECF 451-6.

13       3.   Defendant did not disclose a laches defense with respect to the '844 patent in its

14           interrogatories.  PTX 660.  However, Plaintiff did not disclose the specific accused

15           functionality of the '844 patent until expert discovery.  ECF 271 4:6.  One week after

16           the Court denied Defendant's motion to strike Plaintiff's disclosure of the specific

17           accused functionality, *see* ECF 271, the parties submitted a joint pretrial statement

18           where Defendant indicated it was asserting laches against the '844 patent.  ECF 293-4

19           at 6.

20       4.   Defendant did not timely disclose a laches defense with respect to the '780 patent.  Ex.

21           6 at 23-24, ECF 451-6.

22       5.   The damages calculation started from August 28, 2013, the filing date of the

23           Complaint.  Trial Tr. 1048:4-10 (testimony of Dr. Anne Layne-Farrar).

24       6.   Plaintiff only presented evidence for a lump sum damages award.  Trial Tr. 1049:7-14.

25           Dr. Anne Layne-Farrar testified that the parties would have agreed to "a lump sum

26           payment covering the royalties."  *Id*; *see also* Jury Instructions at 42:21-22, ECF 437

27           ("reasonable royalty damages in the form of a one-time lump payment").

28       7.   Plaintiff is not seeking prejudgment interest for any time period prior to filing the

1    Complaint.  Sept. 9 Trial Tr. 178:7-9, ECF 465.

2    8.   There was no evidence presented of extraordinary circumstances that would bar an

3    ongoing royalty.  *See generally* Trial Tr.

4    **B.    Conclusions of Law**

5    During the pendency of briefing on the non-jury legal issues, the Federal Circuit issued an

6 *en banc* decision in *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC.*, --- F.3d --

7 -, 2015 WL 5474261 (Fed. Cir. Sept. 18, 2015) which clarified the applicability of laches in the

8 patent context.  The Federal Circuit granted *en banc* review to consider whether "laches remains a

9 defense to legal relief in a patent infringement suit."  *Id*. at *1.

10    Although laches has long been recognized as a defense in patent cases, *see A.C. Aukerman*

11 *Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992) (en banc), in response to the

12 Supreme Court's ruling in *Petrella*, the Federal Circuit held an *en banc* hearing in *SCA Hygiene* to

13 determine whether laches can still bar claims for pre-suit damages in patent infringement actions

14 and whether laches could bar entire patent infringement suits.  After considering *Petrella*, the

15 relevant statutes, and the legislative history, the Federal Circuit upheld the viability of laches to

16 bar pre-suit damages in the patent infringement context.  *SCA Hygiene Prods. Aktiebolag v. First*

17 *Quality Baby Prods., LLC.*, --- F.3d ---, 2015 WL 5474261 (Fed. Cir. Sept. 18, 2015).  With

18 respect to whether laches could bar prospective relief, the Federal Circuit reexamined *Aukerman* in

19 light of *Petrella* and *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) and held that laches

20 may bar a permanent injunction and that consideration of injunctive relief "fits naturally" within

21 the *eBay*  framework.  *SCA Hygiene*, 2015 WL 5474261, at *15.  However, with respect to

22 ongoing royalties, the Federal Circuit held that "while the principles of equity apply, equity

23 normally dictates that courts award ongoing royalties, despite laches" and "absent egregious

24 circumstances, when injunctive relief is inappropriate, the patentee remains entitled to an ongoing

25 royalty."  *Id*. at *16.

26    The Court concludes that Defendant's disclosure of a laches defense to the '844 patent was

27 timely under the particular circumstances regarding Plaintiff's disclosure of infringement

28 contentions.  Plaintiff's infringement contentions were sufficiently vague as to the disclosure of

United States District Court
Northern District of California

19

the Cookie2 functionality as to require the Court to determine whether a sufficient disclosure had been made.  Upon issuance of that order, *see* ECF 271, Defendant disclosed its laches defense within one week, *see* ECF 293-4 at 6.  The Court finds Defendant's disclosure regarding the '844 patent to be timely.  The Court also concludes that Defendant did not timely disclose a laches defense to the '780 patent.  In responding to Plaintiff's interrogatory seeking the bases for its laches defense, Defendant did not assert laches for the '780 patent.  Ex. 6 at 23-24, ECF 451-6. Although the joint pretrial statement indicated that Defendant was asserting a laches defense to the '780 patent, unlike the '844 patent, there were not any circumstances excusing Defendant's delay in disclosing this information.  Thus, the Court finds that Defendant's disclosure of a laches defense to the '780 patent was untimely.

The Court finds that Defendant's laches defense, regardless of the outcome, will not affect any issue in this action.  In *SCA Hygiene*, the Federal Circuit confirmed that under the appropriate circumstances, laches may bar pre-suit damages, injunctive relief, and an ongoing royalty.  Here, Plaintiff did not seek pre-suit damages, injunctive relief, or an ongoing royalty as it only sought damages from the filing date of the complaint and in the form of a "one-time lump payment." Even if Plaintiff were seeking an ongoing royalty, there has been no evidence of extraordinary circumstances that would preclude such relief.  Defendant also does not dispute that Plaintiff is only seeking a lump-sum award covering damages from the filing of this action but rather appears to have hinged its laches argument on the hope that the Federal Circuit would dramatically expand the scope of laches in the face of *Petrella*.  That did not happen and while the *en banc* decision in *SCA Hygiene* may not be the last word on the issue of laches in the patent context, the Court, applying *SCA Hygiene*, finds the issue of laches MOOT.

## VII.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.     Plaintiff has not met its burden to show that the priority date of the '844 patent is November 8, 1996 and therefore the presumptive invention date of the '844 patent is December 22, 1997.

2.     The priority date of the '731 patent is November 6, 1997.

United States District Court
Northern District of California

3.      Plaintiff is not barred by prosecution history estoppel from asserting infringement under the doctrine of equivalents for the '633 patent.  Defendant's prosecution history estoppel defense with respect to the '844, '968, and '780 patents is MOOT.

4.      Defendant has not met its burden to show that the '844 patent is patent ineligible under 35 U.S.C. § 101.

5.      The issue of laches is MOOT.

Dated:  November 20, 2015

_____
BETH LABSON FREEMAN
United States District Judge