PAUL ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
HANNAH LEE (State Bar No. 253197)
hlee@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 752-1700
Facsimile:   (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation, | Case No.: 13-cv-03999-BLF |
| Plaintiff, | **PLAINTIFF FINJAN, INC.'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES PURSUANT TO FED. R. CIV. P. 54** |
| v. | |
| BLUE COAT SYSTEMS, INC., a Delaware Corporation, | Date:     April 7, 2016 |
| | Time:     9:00 a.m. |
| | Place:    Courtroom 3, 5th Floor |
| Defendant. | Before:  Hon. Beth Labson Freeman |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................................ 2

III.  ARGUMENT ............................................................................................................. 5

A.    Attorneys' Fees Should be Awarded Under Octane Fitness and 35 U.S.C. § 285 ........... 5

B.    Blue Coat Raised And Abandoned Several Invalidity Defenses During The Trial.......... 6

1.    Blue Coat's Untimely Abandonment of Its Frivolous Obviousness and Written Description Claims During Trial Harmed Finjan .................................... 7

2.    Blue Coat Abandoned Its Written Description Defense During Trial ................. 9

C.    Blue Coat Pursued Objectively Meritless Defenses ........................................................ 11

1.    Blue Coat's Anticipation Theories Were Meritless and Entirely Based on Inherency Arguments .......................................................................................... 11

2.    Blue Coat Improperly Pursued The Objectively Unreasonable Non-Infringement Defense That "Counting" Was Different From "Identifying" ....................................................................................................... 12

D.    Blue Coat's Raised Issues In A Bench Trial That Lacked Merit And Should Have Been Brought Earlier ................................................................................................ 13

1.    Blue Coat Raised a Laches Defense Despite the Fact That It Was Legally Irrelevant ............................................................................................................. 13

2.    Blue Coat Raised Prosecution History Estoppel Arguments With Respect to the '844, '968, and '780 Patents Which Were Moot ...................................... 15

IV.   FINJAN'S REQUESTED FEES ARE REASONABLE ........................................ 16

V.    CONCLUSION......................................................................................................... 18

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

CASES

3

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
4      598 F.3d 1336 (Fed. Cir. 2010)................................................................................. 10

5
*Bayer Cropscience AG v. Dow Agrosciences LLC*,
       No. 12-256, 2015 WL 1197436 (D. Del. Mar. 13, 2015) .......................................... 16
6

7
*Chalmers v. City of L.A.*,
       796 F.2d 1205 (9th Cir. 1986) ................................................................................... 17
8

9
*Dolby Labs., Inc. v. Lucent Techs., Inc.*,
       No. C01-20709-JF, 2006 WL 1320475 (N.D. Cal. May 15, 2006)............................. 16

10   *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,

11      778 F.3d 1059 (9th Cir. 2015) ..................................................................................... 6

12
*Finjan, Inc. v. Blue Coat Sys., Inc.*,
       No. 13-CV-03999-BLF, 2015 WL 7351450 (N.D. Cal. Nov. 20, 2015).......................... 15
13

14
*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
       87 F. Supp. 3d 928, 952 (N.D. Cal. Mar. 31, 2015) .................................................. 11

15   *Intex Recreation Corp. v. Team Worldwide Corp.*,

16      77 F. Supp. 3d 212, 217-18 (D.D.C. 2015)................................................................ 16

17
*Jordan v. Multnomah Cnty.*,
       815 F.2d 1258 (9th Cir. 1987) ................................................................................... 17
18

19
*Kilopass Tech. Inc. v. Sidense Corp.*,
       No. C-10-02066 SI, 2014 WL 3956703 (N.D. Cal. Aug. 12, 2014)............................. 11

20   *Logic Devices, Inc. v. Apple Inc.*,

21      No. C-13-02943-WHA, 2014 WL 6844821 (N.D. Cal. Dec. 4, 2014)........................... 11

22
*Mathis v. Spears*,
       857 F.2d 749 (Fed. Cir. 1988) ................................................................................... 17
23

24
*Motorola Mobility, LLC v. Int'l Trade Comm'n*,
       737 F.3d 1345 (Fed. Cir. 2013)................................................................................. 12

25   *Nilssen v. Osram Sylvania, Inc.*,

26      528 F.3d 1352 (Fed. Cir. 2008)................................................................................... 7

27
*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
       134 S. Ct. 1749 (2014) ....................................................................................... passim

28

ii

*Rockwell Int'l Corp. v. SDL, Inc.*,
 103 F.Supp.2d 1192 (N.D. Cal. 2000) ..................................................................... 13, 14

*Romag Fasteners, Inc. v. Fossil, Inc.*,
 No. 3-10-cv-01827, 2014 WL 4073204 (D. Conn. Aug. 14, 2014) ...................................... 7

*Syntex (USA) LLC v. Apotex Inc.*,
 No. C 01-02214 MJJ, 2006 WL 1390435 (N.D. Cal. May 18, 2006), *aff'd sub nom, Syntex (U.S.A.) LLC v. Apotex, Inc.*, 221 F. App'x 1002 (Fed. Cir. 2007) ...................................... 8

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*,
 549 F.3d 1381 (Fed. Cir. 2008) .......................................................................................... 16

*Taltech Ltd. v. Esquel Enters. Ltd.*,
 609 F. Supp. 2d 1195 (W.D. Wash. 2009), *aff'd in part, rev'd in part on other grounds, Taltech Ltd. v. Esquel Enters., Ltd.*, 604 F.3d 1324 (Fed. Cir. 2010) .................................. 7

*Trading Techs. Int'l, Inc. v. Open E Cry, LLC*,
 728 F.3d 1309 (Fed. Cir. 2013) .......................................................................................... 15

*Trintec Indus., Inc. v. Top-U.S.A. Corp.*,
 295 F.3d 1292 (Fed. Cir. 2002) .......................................................................................... 12

*Visto Corp. v. Sproqit Techs., Inc.*,
 No. C-04-0651 EMC, 2007 WL 160942 (N.D. Cal. Jan. 17, 2007) ..................................... 6

*Yue v. Storage Tech. Corp.*,
 No 07-05850 JW, 2008 U.S. Dist. LEXIS 68920 (N.D. Cal. Aug. 6, 2008) .......................... 17

**STATUTES**

35 U.S.C. § 103 ........................................................................................................................... 3

35 U.S.C. § 112 ...................................................................................................................... 3, 10

35 U.S.C. § 284 ........................................................................................................................... 1

35 U.S.C. § 285 .................................................................................................................. passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 54 ................................................................................................................ 1, 2, 16

Fed. R. Civ. P. 59(e) ................................................................................................................... 1

Civil Local Rule 54-5 ................................................................................................... 1, 2, 16, 18

FINJAN'S MOTION FOR ATTORNEY'S FEES                    Case No. 13-cv-03999-BLF

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on April 7, 2016 at 9:00 A.M., or as soon thereafter as this matter may be heard, Plaintiff Finjan, Inc. ("Finjan") shall, and hereby does, move this Court pursuant to Fed. R. Civ. P. 54(d)(2) and Civil Local Rule 54-5, for an award of reasonable attorneys' fees to the prevailing party, Finjan.[1]  Pursuant to Fed. R. Civ. P. 54(d)(2) and Civil Local Rule 54-5, Finjan estimates the amount of fees accrued to date to be approximately ▮▮▮▮ and expenses at least ▮▮▮▮

This motion is further based on this Notice of Motion and supporting Memorandum of Points and Authorities, the Declaration of Lisa Kobialka in Support of Finjan's Motion for Attorneys' Fees, exhibits thereto, and such other written evidence or oral argument as may be presented at or before the time this motion is deemed submitted by the Court.

## I.      INTRODUCTION

On August 4, 2015, after a 10 day trial, a jury found that Blue Coat infringed five of the six asserted Finjan patents, that Finjan's six patents are valid, and returned a damages award of nearly $40 million for Blue Coat's patent infringement.  For the two years of active litigation leading up to trial, Blue Coat pursued objectively unreasonable claims and defenses.  As a result, Finjan incurred substantial attorneys' fees and expenses to address such claims and defenses.  It was not until the eve of trial and during trial that Blue Coat finally dropped many of these claims and defenses.  Blue Coat pursued the remaining frivolous and incoherent claims and defenses at trial, such as its anticipation claims in which Blue Coat asserted that most of the claim elements were "inherently" disclosed in the

---

[1] This Motion, filed pursuant to Fed. R. Civ. P. 54(d)(2), is based in part on 35 U.S.C. § 285, which permits attorneys' fees in exceptional cases under the Patent Act.  Finjan also intends to file a motion pursuant to Fed. R. Civ. P. 59(e) for a finding that this case is exceptional warranting an enhancement in damages based on 35 U.S.C. § 284, which permits the Court to "increase the damages up to three times the amount found or assessed."

FINJAN'S MOTION FOR ATTORNEY'S FEES                    Case No. 13-cv-03999-BLF

alleged prior art reference.  Blue Coat's actions caused a significant waste of Finjan's time and

resources, warranting Finjan an award of attorneys' fees.

Blue Coat also demanded a bench trial after the jury verdict to present defenses on a number of

issues, including prosecution history and estoppel.  As this Court's November 20, 2015 Order noted,

these issues were not necessary to the resolution of the action (Dkt. No. 486 at 12 and 20), one laches

defense was untimely (Dkt. No. 486 at 20) and Finjan prevailed on nearly all of the issues Blue Coat

insisted needed to be presented at the bench trial.  *Id.*  Thus, Blue Coat's alleged defenses of laches and

prosecution history estoppel were baseless and should not have been presented at all.  Finjan would not

have had to incur unnecessary attorneys' fees and expenses in preparing for, presenting and cross

examining live witnesses at the bench trial or the briefing associated with the bench trial if Blue Coat

had not insisted on pursuing such defenses.

Blue Coat's conduct establishes a disregard for Finjan and the valuable time of the Court and

the jury, and disrespect for the judicial process as a whole.  Indeed, Blue Coat's pursuit of these

frivolous claims and defenses amounted to nothing more than a desperate and bad faith effort to force

Finjan to unnecessarily incur additional attorneys' fees and expenses and delay Finjan from pursuing

this case to final judgment.  For these reasons, Blue Coat's actions warrant a finding that this case is

exceptional pursuant to 35 U.S.C. Section 285 and an award of fees for ███████ under Rule 54 of

the Federal Rules of Civil Procedure ("Rule 54").

## II.     STATEMENT OF FACTS

To streamline the issues involved in the case, the Court provided a schedule for the parties to

narrow their case to reduce the costs associated with patent litigation.  Dkt. 98.  Finjan faithfully

followed the Courts guidance, and reduced its infringement case in a timely manner, drastically

reducing its asserted claims to 13 claims across six patents well before trial.  Dkt. No. 438; Declaration

FINJAN'S MOTION FOR ATTORNEY'S FEES                     Case No. 13-cv-03999-BLF

of Lisa Kobialka in Support of Finjan's Motion for Attorneys' Fees ("Kobialka Decl."), Exs. 3-4 (Preliminary and Final election of claims).  Blue Coat, in contrast, did not limit its case in a meaningful way, and refused to drop any of its defenses before trial.

Based on Blue Coat's lengthy and comprehensive opening statement, which did not refer to an obviousness or written description claim pursuant to 35 U.S.C. §§ 103 and 112, it was apparent that Blue Coat had determined it would not pursue these claims at trial.  During the pendency of the trial, Finjan repeatedly requested that Blue Coat confirm which invalidity claims it was pursuing.  Finjan did so to avoid spending precious time and resources during trial on issues that Blue Coat had no intention of presenting, as well as to notify relevant rebuttal witnesses who were travelling that they did not need to come to trial.  Kobialka Decl., ¶ 33.  Finjan was also attempting to identify the real issues that needed to be negotiated for the jury instructions and special verdict form, because Blue Coat was not responding to Finjan's proposed drafts of the jury instructions.

For over a week, Blue Coat refused to confirm whether it was withdrawing these defenses. Kobialka Decl., ¶ 33.  In fact, it was not until after Finjan closed its case that Blue Coat notified Finjan that it was no longer pursuing obviousness pursuant to 35 U.S.C. § 103 or a written description defense pursuant to 35 U.S.C. § 112.  Kobialka Decl., Ex. 2 (7/27/15 email).  Blue Coat did so only because the Court instructed it to notify Finjan of what claims it was pursuing in its case.  *Id.*, Ex. 5, Trial Tr. 1196: 21- 1197-8.  Blue Coat's notification about dropping these invalidity claims was ultimately untimely. By this time, which was over a week after the trial started, Finjan had already spent significant time preparing its expert witnesses and fact witnesses to rebut claims that Blue Coat had dropped.  Kobialka Decl., ¶¶ 34-35.  Finjan also spent time, as did the Court, in negotiating and discussing the obviousness and written description jury instructions, as well.  Kobialka Decl., ¶ 33.  Furthermore, due to the

FINJAN'S MOTION FOR ATTORNEY'S FEES                    Case No. 13-cv-03999-BLF

untimeliness of Blue Coat's disclosures regarding dropping obviousness, one rebuttal witness who was living in Prague had already travelled to California. *Id.*, ¶ 36.

Ultimately, the only invalidity defense that Blue Coat actually presented was built on the concept of "inherency." Kobialka Decl., Ex. 5, Trial Tr. at 1632:16-19, 1644:11-17, 1651:1-6; 1843:18-22; 1855:5-10, 1858:23-25, 1859:10-14. All of Blue Coat's anticipation arguments relied on at least one element, if not nearly all elements of an asserted claim, being "inherent" in the reference. In addition, for non-infringement of the '844 Patent, Blue Coat rested its case on the incoherent argument that one could "count" suspicious code without first "identifying" the suspicious code being counted. *Id.,* Ex. 5, Trial Tr. at 1523:23-1524:11. Finjan was able to demonstrate the baselessness of such a defense during the cross examination of Blue Coat's expert witness, Dr. Bestavros, by demonstrating with a handful of coins on the Elmo projector that no coin could be counted unless it was first identified. *Id.,* Ex. 5, Trial Tr. at 1538:18-1539:5.

The jury ultimately found Blue Coat's arguments unavailing. On August 4, 2015, after a 10-day trial, the jury awarded nearly $40 million in damages for Blue Coat's infringement of five of Finjan's patents, specifically U.S. Patent Nos. 6,804,780 (the "'780 Patent"), 6,154,844 (the "'844 Patent"), 7,418,731 (the "'731 Patent"), 6,965,968 (the "'968 Patent"), and 7,647,633 (the "'663 Patent"). Dkt. No. 438 (verdict of patent infringement of five of the six Asserted Patents).

After trial was complete and the jury had returned a verdict, Blue Coat demanded a bench trial for other defenses on alleged "non-jury" issues, which Blue Coat claimed required resolution by the Court after the jury trial had concluded. Of the four issues that Blue Coat identified as requiring a bench trial, two of those issues, namely prosecution history estoppel and laches, were meritless and entirely irrelevant to the outcome of the case. After a day-long bench trial on post-trial issues of

FINJAN'S MOTION FOR ATTORNEY'S FEES                    Case No. 13-cv-03999-BLF

1   patent eligibility, prosecution history estoppel, laches, and invention dates, the Court awarded

2   judgment in favor of Finjan.  Dkt. No. 487.

3   **III.    ARGUMENT**

4       **A.    Attorneys' Fees Should be Awarded Under *Octane Fitness* and 35 U.S.C. § 285**

5       Finjan is entitled to attorneys' fees based on 35 U.S.C. § 285 and the Supreme Court's recent

6   decision in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).  Under

7   35 U.S.C. § 285, a "court in exceptional cases may award reasonable attorney[s'] fees to the prevailing

8   party."  The Supreme Court recently held that "an 'exceptional' case is simply one that stands out from

9   others with respect to the substantive strength of a party's litigating position (considering both the

10  governing law and the facts of the case) or the unreasonable manner in which the case was litigated."

11  *Octane Fitness*, 134 S. Ct. at 1756.  Under *Octane Fitness*, '[d]istrict courts may determine whether a

12  case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the

13  circumstances." *Id.* "'[T]here is no precise rule or formula for making these determinations,' but

14  instead equitable discretion should be exercised 'in light of the considerations we have identified.'" *Id.*

15  (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)); *see also id.* at n.6 (identifying a

16  "nonexclusive" list of considerations imported from copyright context, including "frivolousness,

17  motivation, objective unreasonableness (both in the factual and legal components of the case) and the

18  need in particular circumstances to advance considerations of compensation and deterrence")(citation

19  omitted).  Entitlement to fees under Section 285 only needs to be shown by a preponderance of the

20  evidence.  *Octane Fitness*, 134 S. Ct. at 1758.

21      Here, the jury awarded nearly $40 million in damages for Blue Coat's infringement of five of

22  Finjan's patents, found all of Finjan's asserted patents to be valid, and, after the bench trial on issues

23  of patent eligibility, prosecution history estoppel, laches, and invention dates, the Court awarded

5

judgment in favor of Finjan.  Dkt. No. 487.  The jury's verdict and damages award, along with the

Court's Order on the bench trial and final judgment, establish that Finjan is the prevailing party in this

case.  *Visto Corp. v. Sproqit Techs., Inc.*, No. C-04-0651 EMC, 2007 WL 160942, at *1 (N.D. Cal. Jan.

17, 2007) ("Whether a party is a prevailing party under the statute depends on whether the party

obtains some relief on the merits."); *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059,

1078 (9th Cir. 2015) (affirming district court's finding that plaintiffs were prevailing party because

plaintiffs obtained "a material alteration in the legal relationship of the parties that is judicially

sanctioned.") (citations omitted); *San Diego Police Officers' Ass'n v. San Diego City Emps.' Ret. Sys.*,

568 F.3d 725, 741 (9th Cir. 2009) (a party need not prevail on all of its claims to be the prevailing

party).

As shown below, considered in totality, Blue Coat's continuous bad faith pursuit of frivolous

and objectively unreasonable defenses during the litigation warrants granting Finjan an award of its

attorneys' fees pursuant to § 285, as pursuit of such claims makes this case exceptional, and the

principles set forth in *Octane Fitness.*

### B.    Blue Coat Raised And Abandoned Several Invalidity Defenses During The Trial

Attorneys' fees are warranted because (1) Blue Coat raised meritless defenses and (2)

continued to pursue them well beyond the point where they were shown to be objectively

unreasonable.  In some cases, Blue Coat raised defenses, and then dropped them at trial after Finjan

had expended considerable resources in preparing its own experts to respond.  For example, Blue Coat

raised the defenses of invalidity relying on obviousness and written description that it dropped at the

last second at trial.  This type of wasteful litigation tactic makes this case exceptional and warrants

granting attorneys' fees to Finjan.  While Blue Coat did ultimately dropped two of its meritless

arguments at the last second, it also continued to pursue several other frivolous defenses all the way

through trial, which also required Finjan to waste precious time and resources in responding.

FINJAN'S MOTION FOR ATTORNEY'S FEES                    Case No. 13-cv-03999-BLF

### 1.   Blue Coat's Untimely Abandonment of Its Frivolous Obviousness and Written Description Claims During Trial Harmed Finjan

Attorneys' fees are merited due to Blue Coat's untimely abandonment of its frivolous obviousness and written description claims during trial.  Blue Coat waited until the last second to drop these claims, when it had no intention of actually pursuing them, showing that it was litigating in an "unreasonable" manner.  *See Octane Fitness*, 134 S. Ct. at 1756.  Blue Coat's failure to drop this defense in a timely fashion is grounds for finding this case exceptional.  In fact, Courts have found cases exceptional in even less egregious circumstances than here, for example, even when a party dropped a position months before trial.  *See, e.g., Nilssen v. Osram Sylvania, Inc*., 528 F.3d 1352, 1358-59 (Fed. Cir. 2008) (affirming award of attorneys' fees because of party's "numerous acts during litigation," including withdrawing claims from suit only "a few months before trial"); *see also Romag Fasteners, Inc. v. Fossil, Inc.*, No. 3-10-cv-01827, 2014 WL 4073204, at *3 (D. Conn. Aug. 14, 2014) (awarding attorneys' fees in part because defendant failed to formally withdraw a "woefully inadequate" defense until after the close of evidence, forcing plaintiff to continue to present evidence to counter that defense); *Taltech Ltd. v. Esquel Enters. Ltd.*, 609 F. Supp. 2d 1195, 1210 (W.D. Wash. 2009) (awarding attorneys' fees where a party's "litigation tactics caused [the opposing party] to needlessly expend significant resources," including dismissal of damages claim "shortly before trial"), *aff'd in part, rev'd in part on other grounds, Taltech Ltd. v. Esquel Enters., Ltd*., 604 F.3d 1324 (Fed. Cir. 2010).  Here, Blue Coat had many opportunities to inform Finjan that it was dropping these claims well before trial.  Rather than affirmatively and in good faith notify Finjan, however, Blue Coat refused to tell Finjan, despite its numerous requests *during* trial about Blue Coat's intentions to pursue such claims.  Kobialka Decl., ¶ 33.  As such, Blue Coat's untimely abandonment of its obviousness and written description defenses is sufficient grounds for determining this case is exceptional.

7

Blue Coat's conduct harmed Finjan, driving up the cost and expenditure of resources associated with addressing Blue Coat's frivolous claims.  For example, Finjan had two rebuttal expert witnesses who addressed Blue Coat's obviousness claims and one rebuttal expert witness to address the written description claims that Blue Coat did not present.  These experts reviewed and prepared for nearly double the number of invalidity claims than what Blue Coat ultimately pursued.  Indeed, based on the invalidity claims that Blue Coat presented at trial, Finjan's experts reviewed twelve references, when Blue Coat only presented five references in connection with its anticipation claims at trial.  Dkt. No. 293-4 at 5-7.  If Blue Coat had timely dropped these claims, Finjan would not have unnecessarily wasted resources to address these claims that Blue Coat had no intention of pursuing at trial.

Finjan's counsel also negotiated and drafted multiple versions of the jury instructions and verdict form that included these unnecessary concepts.  It was unnecessary for both the Court and counsel to have addressed these issues in chambers during their discussions of the jury instructions and special verdict form.  Kobialka Decl., ¶ 33.

Furthermore, dropping obviousness had a ripple effect throughout the testimony of the rebuttal expert witness, as obviousness includes specific considerations that are not present in other defenses such as anticipation.  For example, obviousness includes unique concepts such as motivation to combine, operability of the combined system, and secondary considerations of non-obviousness. *Syntex (USA) LLC v. Apotex Inc.*, No. C 01-02214 MJJ, 2006 WL 1390435, at *1 (N.D. Cal. May 18, 2006) ("Obviousness is a legal determination based on factual determinations, including: what a prior art reference teaches; whether a reference provides a motivation to combine its teachings with others; whether the invention experienced commercial success; and whether it satisfied a long-felt, but unmet need."), *aff'd sub nom, Syntex (U.S.A.) LLC v. Apotex, Inc.*, 221 F. App'x 1002 (Fed. Cir. 2007) (citing *Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1359 (Fed. Cir. 1999)).

FINJAN'S MOTION FOR ATTORNEY'S FEES                    Case No. 13-cv-03999-BLF

Here, Finjan unnecessarily had its former Chief Technology Officer, Yuval Ben-Itzhak, fly to California from Prague to attend the trial as a fact witness to rebut Blue Coat's obviousness claims. Mr. Ben-Itzhak was specifically identified to discuss secondary considerations of non-obviousness in the Pretrial Order, a topic only relevant to rebutting Blue Coat's claim of obviousness. Dkt. No. 293-5 at 6. Despite Finjan's repeated requests to Blue Coat during trial to confirm whether it was pursuing obviousness as a claim, Finjan discovered **after** Mr. Ben-Itzhak had already flown to the U.S. that Blue Coat no longer intended to pursue such obviousness defenses. Kobialka Decl., ¶ 36. As such, Blue Coat's untimeliness in dropping this frivolous claim resulted in needless expenses for Finjan in flying in Mr. Ben-Itzhak and inconvenience for an extremely busy witness.

Furthermore, Blue Coat's obviousness combinations were frivolous and should have been dropped well before trial. For example, Finjan's experts demonstrated that Blue Coat failed to demonstrate that there was a motivation to combine or that the resulting combination would be operable. *See* Dkt. No. 293-11 (Lyon Report) at ¶¶ 207-209, 223-227, 232-233, 369-371, 393-395, 418-420, 539-542, 575-580, 601-604, 636-640; Dkt. No. 210-6 (Jaeger Report) at ¶¶ 190-199, 237-242, 279-287, 327-330, 370-372, 494-500, 525-536, 647, 669. By keeping obviousness in the case through most of trial, Finjan had to prepare for a host of issues that Blue Coat never intended to raise at trial, evident from it being expressly omitted from Blue Coat's lengthy opening statement. Blue Coat's actions warrant granting Finjan's attorneys' fees under *Octane Fitness* to Finjan because they resulted in unnecessary waste of time and resources.

### 2.    Blue Coat Abandoned Its Written Description Defense During Trial

Attorneys' fees are also warranted because Blue Coat caused Finjan to expend unnecessary resources in preparing to respond to a frivolous argument on "written description." Similar to its obviousness defense, Blue Coat abruptly dumped this invalidity defense at the last second during trial,

9

after Finjan had already prepared a rebuttal.  Written description requires that the patent application supports the claims of the patent that issues from the application.  35 U.S.C. § 112.  A person of ordinary skill in the art should understand that the applicant was in possession of the claims when the application was filed.  *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (citations omitted).  The purpose of written description is to keep applicants from drafting patent claims that claim more than what was originally filed.  This was never an issue for the Finjan patents and Blue Coat's written description argument was completely without merit.  All of the terms raised by Blue Coat's experts were disclosed in the originally filed applications.  In fact, in many cases, the term was included <u>verbatim</u> in the original applications, proving how frivolous Blue Coat's position always was.  *See* Dkt. No. 293-11 (Lyon Report) at ¶¶ 125-146.

While Blue Coat's position was frivolous, it still required time and resources for Finjan to respond to since Blue Coat refused to drop this defense.  Blue Coat's expert, Dr. George Necula, opined in his expert report on the invalidity of the '780 Patent and '968 Patent based on the alleged lack of written description.  Dkt. No. 293-18 (Necula Report) at ¶¶ 197-201, 1471-1474.  Finjan's expert, Dr. David Lyon, rebutted these baseless allegations and identified numerous examples of support for the identified terms in the application as it was filed.  Dkt. No. 293-11 (Lyon Report) at ¶¶ 125-146.  Despite Dr. Lyon definitively proving that the claims were adequately supported by the filed application, Blue Coat continued to pursue its written description allegations by including them in the Pretrial Order.  Dkt. No. 293-4 at 6-7.  Finjan was also required to draft and respond to several versions of jury instructions on written description, which were ultimately irrelevant.  It was not until trial was nearly over that Blue Coat first informed Finjan that it was not pursing its allegations of lack of written description.  Kobialka Decl., Ex. 2.  At this point, Finjan had expended considerable resources in rebutting Blue Coat's allegations, including time in preparing Dr. Lyon to address these

FINJAN'S MOTION FOR ATTORNEY'S FEES                    Case No. 13-cv-03999-BLF

arguments at trial.  As with Blue Coat's abandoned invalidity defenses under obviousness, Courts have awarded attorney's fees when a party drops a position late in a case, even in the months before trial (in contrast to Blue Coat's decision to wait until during trial).

As such, Blue Coat's conduct warrants finding this case exceptional and a determination of attorneys' fees under *Octane Fitness*.

### C.    Blue Coat Pursued Objectively Meritless Defenses

Blue Coat raised several defenses that were objectively meritless, demonstrating a lack of good faith.  Raising frivolous arguments at trial is a further basis for granting attorneys' fees to Finjan. *Kilopass Tech. Inc. v. Sidense Corp.*, No. C-10-02066 SI, 2014 WL 3956703, at *15 (N.D. Cal. Aug. 12, 2014) (granting attorneys' fees because party asserted claims "that were objectively baseless, including literal infringement claims that were particularly meritless," as a result of gamesmanship that culminated "in a long and expensive patent litigation"); *Logic Devices, Inc. v. Apple Inc.*, No. C-13-02943-WHA, 2014 WL 6844821, at *5 (N.D. Cal. Dec. 4, 2014) (granting attorneys' fees because the "action was litigated in a wholly unreasonable manner").

### 1.    Blue Coat's Anticipation Theories Were Meritless and Entirely Based on Inherency Arguments

Blue Coat's anticipation arguments were frivolous, demonstrated by Blue Coat's reliance on "inherency" for every single one of its anticipation arguments presented at trial.  Anticipation is a strict standard that requires every single element of a claim be included within a <u>single</u> prior art reference. *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp. 3d 928, 952 (N.D. Cal. Mar. 31, 2015) (citing *Therasense, Inc. v. Becton, Dickinson & Co.,* 593 F.3d 1325, 1332-33 (Fed. Cir. 2010)). In some very limited instances, a party can prove that while a limitation is not explicitly stated within a prior art reference, the limitation is "inherent" because it is required to be present in the system disclosed in the reference.

---

11

FINJAN'S MOTION FOR ATTORNEY'S FEES                    Case No. 13-cv-03999-BLF

Proving inherency requires a party to meet the high burden of demonstrating that the limitation is "necessarily present" within a prior art reference. *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002) ("Inherent anticipation requires that the missing descriptive material is necessarily present, not merely probable or possibly present, in the prior art.") (internal quotations and citations omitted). In other words, what is described in the reference can only be accomplished in the same way as the limitation and no other way is possible. This is a very high and difficult burden, particularly since the evidentiary burden of invalidity is the higher standard of "clear and convincing evidence." *Motorola Mobility, LLC v. Int'l Trade Comm'n*, 737 F.3d 1345, 1348 (Fed. Cir. 2013) (citation omitted).

Despite this high burden, Blue Coat's anticipation claims relied entirely on inherency, establishing that its anticipation argument were fatally flawed from the outset and should never have been brought. Kobialka Decl., Ex. 5, Trial Tr. at 1632:16-19, 1644:11-17, 1651:1-6; 1843:18-22; 1855:5-10, 1858:23-25, 1859:10-14. It was simply not credible for Blue Coat to assert, as it did during trial, that every single reference it relied upon disclosed one or more elements "inherently" to prove anticipation. Thus, Blue Coat's anticipation claims were frivolous. As Finjan demonstrated at trial, Blue Coat's anticipation claims amounted to nothing more than hand waving. Indeed, in many cases Blue Coat did not even try to meet the requirements of the inherency standard. *Id.*, Ex. 5, Trial Tr. at 1644:11-25. As Blue Coat's anticipation arguments were frivolous, an award of attorneys' fees under *Octane Fitness* is appropriate.

> **2.** **Blue Coat Improperly Pursued The Objectively Unreasonable Non-Infringement Defense That "Counting" Was Different From "Identifying"**

Blue Coat raised a frivolous non-infringement argument for the '844 Patent that defied all common sense. The '844 Patent includes a limitation for a profile that "identifies suspicious code." Blue Coat argued that this element was not met in its products because they only "count" suspicious

12

code, but do not "identify" suspicious code.  Kobialka Decl., Ex. 5, Trial Tr. at 1523:23-1524:11.

Astonishingly, this was Blue Coat's non-infringement argument for the '844 Patent, one that it raised

time and time again throughout the case, including in its opening statements, during the testimony of

its witnesses and in its closing arguments.  *Id.*, Ex. 5, Trial Tr. at 244:22-245:3, 268:24-269:11, 271:2-

3, 2113:20-22, 2117:8-14, 2120:24-56, 2122:9-23.  The frivolous nature of this argument can be seen

when Blue Coat's expert, Dr. Bestavros, was unable to answer how one could "count" something

without first "identifying" what was being counted.  *Id.*, Ex. 5, Trial Tr. at 1538:18-1539:5.  As such,

Blue Coat again was shown to have raised a frivolous argument, one that warrants granting attorneys'

fees to Finjan under *Octane Fitness*.

> **D.     Blue Coat's Raised Issues In A Bench Trial That Lacked Merit And Should Have Been Brought Earlier**

After the jury verdict, Blue Coat identified several "legal" issues that it argued needed to be

addressed in a bench trial.  All of the issues Blue Coat raised were ones that could have been raised

earlier and thus were untimely.  Moreover, it was objectively unreasonable for Blue Coat to have

raised laches and prosecution history estoppel because these defenses had no impact on any issue in the

case.  Because Blue Coat pursued these defenses at the bench trial, Finjan had to respond to them,

forming additional grounds for granting attorneys' fees.

> **1.     Blue Coat Raised a Laches Defense Despite the Fact That It Was Legally Irrelevant**

An award of Finjan's fees is appropriate because (1) Blue Coat pursued laches defenses that,

regardless of the outcome, did not affect any issue in the case, (2) Blue Coat's laches defenses were not

based on the law and (3) with respect to the '780 Patent, Blue Coat's defense was untimely because it

that was not disclosed during discovery.  First, Blue Coat's laches defenses to Finjan's infringement

claims for damages was irrelevant to any issue in the case as a matter of law because Finjan only

sought damages after the Complaint was filed and laches only pertains to pre-suit damages.  *Rockwell*

13

*Int'l Corp. v. SDL, Inc.*, 103 F.Supp.2d 1192, 1196 (N.D. Cal. 2000) ("In patent infringement actions, laches bars recovery of damages plaintiff might have suffered before initiating litigation but does not bar prospective relief").  Indeed, the Court recognized in its Order after the bench trial that: "Defendant's laches defense, regardless of outcome, will not affect any issue in this action."  Dkt. No. 486 at 20 (citing *SCA Hygiene Prods. Aktiebolag SCA Personal Care, Inc. v. First Quality Baby Prods., LLC*, No. 2013-1564, 2015 WL 5474261 (Fed. Cir. Sept. 18, 2015)).  As the Court also noted, Blue Coat "appears to have hinged its laches argument on the hope that the Federal Circuit would dramatically expand the scope of laches in the face of Petrella." *Id*. at 20.

Second, Blue Coat's laches defenses were not based on any established understanding of the law of laches.  Blue Coat's reckless insistence on pursuing the laches defenses based on an unreasonable interpretation of the law caused Finjan to incur the unnecessary and unwarranted expense in having to defend against Blue Coat's defenses.  Indeed, Finjan had to prepare for and cross-examine Blue Coat's witness at the bench trial, as well as present evidence to rebut Blue Coat's laches defenses. This demonstrates the "unreasonable manner" in which Blue Coat litigated. *See Octane Fitness,* 134 S. Ct. at 1756.  Based on a wing and a prayer that the law on laches may drastically change, Blue Coat pursued these defenses at a bench trial and caused Finjan to have to spend substantial time and resources in responding to such baseless claims.

Finally, Blue Coat's laches defense related to the '780 Patent was untimely.  Dkt No. 486 at 20. As the Court noted, Blue Coat had not asserted laches for the '780 Patent in a response to an interrogatory seeking the bases for Blue Coat's laches defense. *Id.*  Nonetheless, Blue Coat pursued this laches defense at the bench trial, forcing Finjan to defend against a defense that it never disclosed to Finjan.

FINJAN'S MOTION FOR ATTORNEY'S FEES                    Case No. 13-cv-03999-BLF

Thus, attorneys' fees are warranted because Finjan should not have been forced to address Blue Coat's baseless laches defenses at the bench trial given Finjan's unequivocal damages claims at trial, the current statement of law and Blue Coat's failure to properly disclose its laches defense for the '780 Patent.

### 2.   Blue Coat Raised Prosecution History Estoppel Arguments With Respect to the '844, '968, and '780 Patents Which Were Moot

Blue Coat also raised at the bench trial the "moot" defense of prosecution history estoppel with respect to infringement of the '844, '968 and '780 Patents. Dkt No. 486 at 12. This is nonsensical, as prosecution history estoppel is only available as a defense when there is a finding of infringement under the <u>doctrine of equivalents</u>. *See Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309, 1318, 1321-22 (Fed. Cir. 2013); *see also Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-CV-03999-BLF, 2015 WL 7351450, at *7 (N.D. Cal. Nov. 20, 2015) (finding that prosecution history estoppel defense with respect to the '844, '968 and '780 Patents is moot because the jury found Blue Coat literally infringed these patents). For all three of these patents, the jury found <u>literal infringement</u>. Thus, Blue Coat's prosecution history estoppel arguments were meaningless and inapplicable to the jury's finding of literal infringement and would not change the jury's determination of infringement.[2] Dkt No. 487 (Judgment with Verdict Form). Accordingly, Blue Coat's decision to raise prosecution history estoppel arguments was frivolous, was a waste of judicial resources, and unnecessarily caused Finjan to incur expenses, fees and utilize resources to respond to Blue Coat's irrelevant arguments.

Thus, Blue Coat's decision to pursue meritless, untimely and irrelevant defenses at the bench trial provides additional grounds for attorneys' fees.

---

[2] While the jury found both literal infringement and infringement under the doctrine of equivalents on the verdict form, the parties elected to waive any dispute about any alleged inconsistency of these findings, and the finding of infringement under the doctrine of equivalents was merely "surplusage and not necessary for the resolution of the action." Dkt. No. 486 at 12.

**IV.     FINJAN'S REQUESTED FEES ARE REASONABLE**

Finjan and its counsel from Kramer Levin Naftalis & Frankel ("Kramer Levin") incurred a substantial amount of attorney and expert fees and expenses in defending against Blue Coat's baseless claims and defenses throughout the case, at trial and at the bench trial.  Based on the most recent set of invoices, Finjan incurred approximately ████████████████████████ to prosecute its case against Blue Coat and defend against Blue Coat's meritless claims and defenses. Sequencing the determination of whether fees are warranted before an accounting is common in patent cases.  *See, e.g., Bayer Cropscience AG v. Dow Agrosciences LLC*, No. 12-256, 2015 WL 1197436, at *1 (D. Del. Mar. 13, 2015) (awarding fees but reserving on amount); *see also Intex Recreation Corp. v. Team Worldwide Corp.*, 77 F. Supp. 3d 212, 217-18 (D.D.C. 2015) (finding case exceptional and ordering briefing on amounts); *Cognex Corp. v. Microscan Sys., Inc.*, no. 13-cv-2027 (JSR), 2014 WL 2989975, at *4 (S.D.N.Y. June 30, 2014).  For the sake of efficiency, Finjan requests leave of the Court to submit a detailed accounting to the extent necessary after this Court determines that fees are warranted.  The parties met and conferred prior to filing this motion and agreed that sequencing the determination of fees in this manner is appropriate.[3]  Kobialka Decl., Ex. 6 (12/4/15 Email from O. Kim to H. Lee).

Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure requires a party moving for attorneys' fees to "state the amount sought or provide a fair estimate of it."  A fair estimate is sufficient, as "[t]he court may decide issues of liability for fees before receiving submissions on the value of services." Fed. R. Civ. P. 54(d)(2)(C); *see also Dolby Labs., Inc. v. Lucent Techs., Inc.*, No. C01-20709-JF, 2006 WL 1320475, at *5 (N.D. Cal. May 15, 2006).  In addition to attorneys' fees, this Court may invoke its inherent power to impose sanctions in the form of reasonable expert fees in excess of what is provided

---

[3] Consistent with Local Rule 54-5(b)(2), Finjan is prepared to provide a much more detailed set of time records for the Court's *in camera* inspection, if the Court requests it.

FINJAN'S MOTION FOR ATTORNEY'S FEES                              Case No. 13-cv-03999-BLF

for by statute.  *See Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008) (affirming district court's award of expert fees); *see also Mathis v. Spears*, 857 F.2d 749, 758-59 (Fed. Cir. 1988)(noting that "full expert witness fees have been awarded, without specific statutory authorization, upon a finding of bad faith") (citations omitted).

Here, Finjan seeks reimbursement for its expert fees because Blue Coat's actions go sufficiently beyond "exceptional" within the meaning of Section 285 to justify an award of expert fees as a sanction under the court's inherent power.  As described above, Blue Coat intentionally raised and pursued frivolous defenses, such as its obviousness and written description defenses and non-infringement argument for the '844 Patent, forcing Finjan's experts to prepare rebuttals to these defenses.  As set forth in the accompanying declaration and exhibits, Finjan's estimated attorney and expert fees is an estimate of the hours that these timekeepers spent on the Blue Coat litigation.

In the Ninth Circuit, the starting point for determining reasonable fees is the calculation of the "lodestar," which is obtained by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate.  *See Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)) (citations omitted).  In determining the reasonableness of the amount requested, the Court reviews the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation and other indications of value of the services.  *See* Civil L.R. 54-3; *see also Chalmers v. City of L.A.*, 796 F.2d 1205, 1210-11 (9th Cir. 1986); *see also Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1171 (N.D. Cal. 2015)(citing AIPLA Economic Survey which reported the first quartile, median and third-quartile hourly rates for a partner in San Francisco area are 4500, $680, and $825, respectively, and the first quartile, median and third-quartile hourly rates for an associate in the San Francisco area are $321, $513, and $576, respectively.).  *See* Kobialka Decl., Ex. 7 (AIPLA).

FINJAN'S MOTION FOR ATTORNEY'S FEES                    Case No. 13-cv-03999-BLF

Here, in support of its Motion, Finjan submits the concurrently filed declaration from Lisa Kobialka (Exhibit 1), which supports the reasonableness of Kramer Levin's rates, and that describes the background and experience of each timekeeper and expert.  Kramer Levin's billing rates are reasonable and comparable to other full service Bay Area law firms.  *See, e.g., Yue v. Storage Tech. Corp.*, No 07-05850 JW, 2008 U.S. Dist. LEXIS 68920, at *13–14 (N.D. Cal. Aug. 6, 2008) (report and recommendation), *adopted by* No. C 07-05850 JW, 2008 U.S. Dist. LEXIS 68801 (N.D. Cal. Sept. 5, 2008) ("The hourly rates charged by Fenwick range from $245 per hour to $690 per hour.  These rates are comparable to other full service Bay Area law firms . . . and are reasonable.").  Similarly, the expert's rates are reasonable in light of their respective background and experience.

Furthermore, the number of hours that Finjan's timekeepers and experts spent was appropriate given the complexity of the issues involved in this litigation, including the number of patents and products at issue, the number of witnesses that testified at trial, the extensive evidence that Finjan provided at trial to prove its case, and the large damages at issue in this case.  Indeed, Finjan anticipates that Blue Coat spent at least this amount, if not more, in this litigation.  Finjan, nonetheless, is seeking ▮▮▮▮▮▮ with this motion, which is an estimate of the fees incurred to date.

## V.    CONCLUSION

For the reasons stated above, Finjan respectfully requests that the Court to award Finjan's fees pursuant to Rule 54 and Civil Local Rule 54-5.

///

///

///

FINJAN'S MOTION FOR ATTORNEY'S FEES                    Case No. 13-cv-03999-BLF

1

2                                          Respectfully submitted,

3   DATED:  December 4, 2015          By:  */s/ Lisa Kobialka*
                                          Paul Andre (State Bar. No. 196585)
4                                         Lisa Kobialka (State Bar No. 191404)
                                          James Hannah (State Bar No. 237978)
5                                         KRAMER LEVIN NAFTALIS & FRANKEL LLP
                                          990 Marsh Road
6                                         Menlo Park, CA  94025
7                                         Telephone: (650) 752-1700
                                          Facsimile: (650) 752-1800
8                                         pandre@kramerlevin.com
                                          lkobialka@kramerlevin.com
9                                         jhannah@kramerlevin.com

10
                                          Attorneys for Plaintiff
11                                        FINJAN, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FINJAN'S MOTION FOR ATTORNEY'S FEES                Case No. 13-cv-03999-BLF