EDWARD G. POPLAWSKI (State Bar No. 113590)
epoplawski@wsgr.com
OLIVIA M. KIM (State Bar No. 228382)
okim@wsgr.com
BRIAN LAM (State Bar No. 272624)
blam@wsgr.com
S. FERRELL ALMAN, JR. (State Bar No. 287746)
falman@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

VERA M. ELSON (State Bar No. 156327)
velson@wsgr.com
CHRISTOPHER D. MAYS (State Bar No. 266510)
cmays@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

Counsel for Defendant
BLUE COAT SYSTEMS, INC

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>BLUE COAT SYSTEMS, INC., a Delaware Corporation,<br><br>    Defendant. | CASE NO.: 13-cv-03999-BLF-PSG<br><br>**DEFENDANT BLUE COAT SYSTEMS, INC.'S RENEWED MOTION FOR JMOL PURSUANT TO FED. R. CIV. P. 50(b)**<br><br>Date: April 28, 2016<br>Time: 9 a.m.<br>Place: Courtroom 3, 5th Floor<br>Before: Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................... - 1 -

RELIEF REQUESTED ............................................................................................................. - 1 -

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... - 1 -

I.    THE '844 PATENT DAMAGES AWARD ................................................................. - 2 -

II.   THE '633, '731, '968, AND '780 PATENTS DAMAGES AWARD ........................... - 6 -

III.  INFRINGEMENT VERDICT ...................................................................................... - 8 -

IV.   THE VALIDITY VERDICT ...................................................................................... - 10 -

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Apple v. Motorola*, 757 F. 3d 1286 (Fed. Cir. 2014) ................................................................. 5

*Atlas IP, LLC v. Medtronic, Inc.*, No. 13-civ-23309, 2014 U.S. Dist. LEXIS 158787 (S.D. Fla. 2014) ................................................................................................................ 6

*Avocent Huntsville Corp. v. ClearCube Tech., Inc.*, No. CV-030S02875-NE, 2006 U.S. Dist. LEXIS 55307 (N.D. Ala. July 28, 2006) ................................................... 4

*Catalina Lighting v. Lamps Plus*, 295 F.3d 1277 (Fed. Cir. 2002) ........................................... 8

*Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, No. C-11-05973-PSG, 2013 U.S. Dist. LEXIS 120403 (N.D. Cal. Aug. 22, 2013) ............................................................ 6, 7

*Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201 (Fed. Cir. 2014) ........................................ 3

*Estee Lauder, Inc. v. L'Oreal, S.A.*, 129 F.3d 588 (Fed. Cir. 1997) ........................................ 7

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288 (Fed. Cir. 2009) ............................. 1

*Garretson v. Clark*, 111 U.S. 120 (1884) ......................................................................... 2, 6, 8

*Geo M. Martin Co. v. Alliance Mach. Sys. Int'l LLC*, 618 F.3d 1294 (Fed. Cir. 2009) .................................................................................................................... 1

*Good Tech. Corp. v. MobileIron, Inc.*, No. 5:12-cv-05826-PSG, 2015 U.S. Dist. LEXIS 87347 (N.D. Cal. July 5, 2015) ................................................................... 6

*Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341 (Fed. Cir. 1999) .............. 5

*Gustafson, Inc. v. Intersystems Indus. Prods.*, 897 F.2d 508 (Fed. Cir. 1990) ..................... 5

*Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075 (Fed. Cir. 1983) ........................... 4, 5

*Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860 (Fed. Cir. 2003) ...................... 4, 7

*LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012) .................. 4, 5

*Leader Techs., Inc. v. Facebook, Inc.*, 678 F.3d 1300 (Fed. Cir. 2012) ................................. 1

*Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 895 F.2d 1403 (Fed. Cir. 1990) ........................................................................................................... 5

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) .................................. 4

*Minks v. Polaris Indus., Inc.*, 546 F.3d 1364 (Fed. Cir. 2008) ............................................... 5

*Monsanto Co. v. McFairling*, 488 F.3d 973 (Fed. Cir. 2007) .................................................................5

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348
    (Fed. Cir. 2013) ..........................................................................................................................2

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. C 09-5253
    MMC, 2014 U.S. Dist. LEXIS 126294 (N.D. Cal. Sept. 9, 2014) ...........................................2

*ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) ...............................................4, 5, 6

*Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302 (Fed. Cir. 2002) ....................................4, 5, 6

*Stragent, LLC v. Intel Corp.*, No. 6:11-cv-421, 2014 U.S. Dist. LEXIS 106167
    (E.D. Tex. Mar. 6, 2014) ............................................................................................................7

*Unicom Monitoring, LLC v. Cencom, Inc.*, No. 06-1166-MLC, 2013 U.S. Dist.
    LEXIS 56351 (D. N.J. April 19, 2013) .....................................................................................4

*Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) ...............................................7

*United States v. Bentson*, 947 F.2d 1353 (9th Cir. 1991) ....................................................................4

*VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308 (Fed. Cir. 2014) ......................................................2, 6, 7, 8

*Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10 (Fed. Cir. 2012) ..................................5, 7

*Wordtech Sys. v. Integrated Network Solutions, Inc.*, 609 F.3d 1308 (Fed. Cir.
    2010) ............................................................................................................................................4

**STATUTES**

35 U.S.C. § 284 ........................................................................................................................................2

**RULES**

FED. R. CIV. P. 50(b) ................................................................................................................................1

Fed. R. Civ. P. 52(b) ..............................................................................................................................10

FED. R. CIV. P. 59(b) ................................................................................................................................1

FED. R. CIV. P. 59(e) ..............................................................................................................................10

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on April 28, 2016, or as soon thereafter as the matter may be heard by the Honorable Beth Labson Freeman in Courtroom 3, 5th Floor, United States District Court for the Northern District of California, 280 South 1st Street, San Jose, CA 95113, Defendant Blue Coat Systems, Inc. ("Blue Coat") shall and hereby does move the Court to enter judgment as a matter of law ("JMOL") under FED. R. CIV. P. 50(b).[1] The motion is based on this notice of motion and supporting memorandum of points and authorities, and such other written or oral argument as may be presented at or before the time this motion is deemed submitted by the Court.

**RELIEF REQUESTED**

Blue Coat seeks JMOL under FED. R. CIV. P. 50(b) that (1) Finjan is entitled to no damages or at best, nominal damages; (2) the '844, '731, '968, and '780 patents are not literally infringed and the '633 patent is not infringed under the doctrine of equivalents; and (3) all six asserted patents are invalid as anticipated.

**MEMORANDUM OF POINTS AND AUTHORITIES**

In patent cases the law of the regional circuit—here the Ninth Circuit—governs the standards for deciding a motion for JMOL under FED. R. CIV. P. 50(b). *See Leader Techs., Inc. v. Facebook, Inc.*, 678 F.3d 1300, 1305 (Fed. Cir. 2012). Rule 50(b) provides that the court may: (1) "allow judgment on the verdict, if the jury returned a verdict," (2) "order a new trial," or (3) "direct the entry of judgment as a matter of law." The test is "whether the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion." *Geo M. Martin Co. v. Alliance Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1300 (Fed. Cir. 2009) (citations omitted). That is, the moving party must show that the jury's findings are not supported by substantial evidence. *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1294 (Fed. Cir. 2009). "While the jury's factual findings receive substantial deference on [a] motion for judgment [as a matter of law], the legal standards that the jury applies, expressly or implicitly, in reaching its verdict are considered by the district court and by the appellate court *de novo* to determine whether

---

[1] In the alternative, Blue Coat moves for a new trial pursuant to FED. R. CIV. P. 59(b) filed concurrently hereto.

those standards are correct as a matter of law." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. C 09-5253 MMC, 2014 U.S. Dist. LEXIS 126294, at *10 (N.D. Cal. Sept. 9, 2014) (citation omitted).

## I.     THE '844 PATENT DAMAGES AWARD

Finjan's damages expert, Dr. Layne-Farrar ("DLF") provided no opinion at trial relating to the '844 patent damages. (Dkt. 427 at 1107:2-4, 1126:2-1126:4, 1126:14-1126:16, 1141:2-1141:5.) For the first time in closing arguments, however, Finjan's counsel asked the jury to award $24 million in damages for the '844 patent. Specifically, Finjan's counsel asked the jury to use 75 million users of WebPulse, multiply that number by 4% (representing the alleged portion of web requests processed by DRTR), and multiply that number by an alleged $8 per user royalty, which was adopted by the jury. (Dkt. 434 at 2084:6-2085:6.) This is not supported by fact or law for several reasons. ***First***, Finjan's counsel improperly entreated the jury to base its royalty calculation for the '844 patent on 75 million users. (Dkt. 434 at 2084:6-2085:6.) The evidence introduced at trial, however, showed that the 75 million users included ***worldwide*** users. (JTX-2013 at BC0210328 ("75 Million Users ***Worldwide***") (emphasis added); Dkt. 427 at 1176:10-1176:14, 1217:8-1217:17.) A party may not recover damages for infringement occurring outside of the United States. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1371 (Fed. Cir. 2013). Therefore, as a matter of law, the jury needed to exclude non-U.S. users from its damages calculations. Finjan, however, failed to introduce evidence into the record by which the jury could have apportioned out the non-U.S. users.

***Second***, the 4% of transactions given by Finjan's counsel to the jury in an attempt to delineate the royalty pool for DRTR transactions is contrary to the law and the evidence set forth at trial. The "patentee . . . must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and ***such evidence must be reliable and tangible, and not conjectural or speculative***." *Garretson v. Clark*, 111 U.S. 120, 121 (1884) (emphasis added); *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014). Under 35 U.S.C. § 284, the damages awarded for patent infringement "must reflect the value attributable to the infringing features of the product, and no

more." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). In closing argument, Finjan's counsel identified the DRTR component of WebPulse as the accused feature encompassing infringement, and because DRTR allegedly processes 40 million of the 1 billion WebPulse web requests, Finjan's counsel urged that the royalty base should be apportioned by a factor of 4%. (Dkt. 434 at 2084:6-2085:5.) However, there was undisputed evidence that the DRTR has many functions not accused of infringing the '844 patent. For example, a primary feature of DRTR analyzes web content and contains almost 90 categories from which it may choose to categorize (*i.e.*, gambling, news, pornography, etc.). (Dkt. 430 at 1235:2-6.) The underlying software analytics responsible for DRTR's categorizations were not charged with infringing the '844 patent, and most, if not all, of the almost 90 categories used by DRTR are not relevant to any issues before the jury. (*See* Dkt. 407 at 653:17-654:17, 655:15-656:15; Dkt. 427 at 988:6-989:9.) Moreover, the sole basis for infringement was the Cookie2 logs generated by DRTR; but Cookie2 is only a small part of DRTR and DRTR includes a variety of features unrelated to creating any security profile. (*See id.*; *see also* Dkt. 407 at 652:6-15; PTX-611 at 47:21-48:2.) Accordingly, Finjan's assertions that it may capture all transactions that go through DRTR is an improper method of apportionment required by law.

*Third*, Finjan's proffered $8 per user fee cannot reflect a valid license fee at the time of the hypothetical negotiation.[2] The sole location in the record in which the alleged $8 per user fee appears is from the testimony of Finjan's witness, Ivan Chaperot, who stated that Finjan's ***current starting point*** in negotiations is 8 to 16 percent or a "different structure like $8 per user fee." (Dkt. 426 at 907:10-908:1.) Mr. Chaperot provided no testimony concerning Finjan's ***past*** licenses or licensing practices—including at the hypothetical negotiation date of April 30, 2008 for the '844 patent (Dkt. 434 at 2011:2-2011:9.) This was confirmed when Finjan's counsel's objection to cross-examination on past licenses was sustained on the ground that it was outside of scope of Mr.

---

[2] The Court instructed the jury that it had to use the hypothetical negotiation "framework" in determining a reasonable royalty. (Dkt. 434 at 2016:18-22.) The Court's instructions further indicated that Finjan sought a lump sum royalty payment. (*Id.* at 2011:15-20.)

Chaperot's direct examination. (Dkt. 426 at 903:14-15, 911:11-912:3.)[3] JMOL is required because Mr. Chaperot's testimony cannot reflect the negotiations that would have occurred between Finjan and Blue Coat in *2008*, when the parties would have negotiated for a license to the '844 patent. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012); *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 870 (Fed. Cir. 2003); *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1312-13 (Fed. Cir. 2002); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1079 (Fed. Cir. 1983); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009); *Unicom Monitoring, LLC v. Cencom, Inc.*, No. 06-1166-MLC, 2013 U.S. Dist. LEXIS 56351, at *24-26 (D. N.J. April 19, 2013); *Avocent Huntsville Corp. v. ClearCube Tech., Inc.*, No. CV-030S02875-NE, 2006 U.S. Dist. LEXIS 55307, at *80-83 (N.D. Ala. July 28, 2006). In closing argument, Finjan's counsel misled the jury that an $8 user fee is what "Finjan would have asked for *at the time*. That's what they *did ask for. That was their licensing policies.*" (Dkt. 434 at 2146:3-6, emphasis added.) Further, there are no factual predicates that would tie the alleged $8 per user fee to the hypothetical negotiation between Finjan and Blue Coat set to occur in 2008. *Riles*, 298 F.3d at 1313. There was no evidence that Finjan ever made any "offer" to Blue Coat, much less to any third party. Finjan, therefore, has failed at the most basic level of accounting for the technological and economic differences that would have occurred between Mr. Chaperot's anecdotal $8 per user offer and the hypothetical negotiation that would have occurred in 2008. *See Wordtech Sys. v. Integrated Network Solutions, Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 873 (Fed. Cir. 2010).

By its very nature, Finjan's alleged *starting point in licensing negotiations* of $8 per user cannot be the reliable result of a hypothetical negotiation because Finjan has failed to set forth any evidence as to how the parties would have negotiated such a "per-user" license, much less the final per-user royalty that the parties would have agreed upon, if any. Finjan failed to produce any evidence that it has actually licensed—or even offered to license—its patents at an $8 per user royalty rate. DLF testified that she reviewed Finjan's licenses and prior negotiations and yet she

---

[3] This is a binding judicial admission against Finjan. *United States v. Bentson*, 947 F.2d 1353, 1356 (9th Cir. 1991).

did not identify a single license or negotiation mentioning an $8 per user fee. Similarly, the Court's instructions to the jury listed all licenses to be considered, and did not include any licensing documents that included such an $8 per user fee. (Dkt. 434 at 2013:15-21.) Further, there is absolutely no evidence that the alleged $8 per user royalty rate is a rate that Blue Coat or the market could bear. *See Hanson*, 718 F.2d at 1078; *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999); *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364 (Fed. Cir. 2008). The Federal Circuit has cautioned against even using "licensing proposals." *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 30 (Fed. Cir. 2012). Here, there is not even evidence of a proposal of $8 per user license.[4] Importantly, there was not any evidence that the alleged $8 per user fee corresponded to any individual patent. Rather, the evidence reflected that Finjan only had licenses for its entire portfolio of patents, and that Finjan believes that not any of its patents is of any more value than another. (Dkt. 405 at 323:21-324:3, 324:15-324:20, 325:24-326:1; Dkt. 427 at 1136:14-1137:1, 1137:2-1137:22.) Indeed, Finjan's licensing history demonstrates that it has never granted a license for less than its entire portfolio of patents. Yet here, the jury adopted the $8 per user royalty for only *one* of Finjan's approximately 22 U.S. patents in its portfolio. (Dkt. 405 at 323:21-324:3, 324:15-324:20, 325:5-16.)

In sum, Finjan's damages theory for the '844 patent was a mere argumentative recitation of numbers based on nothing more than rank speculation and guesswork, and not the sound economic and factual predicates required by Federal Circuit precedent. *LaserDynamics*, 694 F.3d at 67 (quoting *Riles*, 298 F.3d at 1311); *ResQNet.com*, 594 F.3d at 869. Thus, assuming liability, zero damages or at best nominal damages should be awarded. *Apple v. Motorola*, 757 F. 3d 1286, 1328 (Fed. Cir. 2014); *Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 895 F.2d 1403, 1407 (Fed. Cir. 1990); *Gustafson, Inc. v. Intersystems Indus. Prods.*, 897 F.2d 508, 509-10 (Fed. Cir. 1990).

---

[4] As the Federal Circuit has consistently held, "[a]ctual licenses to the patented technology are highly probative as to what constitutes a reasonable royalty for those patent rights because such actual licenses most clearly reflect the economic value of the patented technology in the marketplace." *LaserDynamics*, 694 F.3d at 79; *Monsanto Co. v. McFairling*, 488 F.3d 973, 978-79 (Fed. Cir. 2007).

## II. THE '633, '731, '968, AND '780 PATENTS DAMAGES AWARD

The '633, '731, '968, and '780 patents damages awarded by the jury are not supported by law or facts for at least three reasons. ***First***, Finjan's alleged apportionment was factually and legally improper.[5] The Federal Circuit has made it clear that proper calculation of patent damages requires "sound economic and factual predicates" coupled with a "careful tie [of] proof of damages to the claimed invention's footprint in the marketplace." *ResQNet.com*, 594 F.3d at 869; *Riles*, 298 F.3d at 1311. *VirnetX*, *Uniloc*, and *Garretson* require that in every case, reasonable royalty damages must be calculated by apportionment of the royalty base, particularly in the case of multifaceted product. The analysis of the royalty base needs to be inaugurated with the proper apportionment, and such information cannot be submitted to the jury without some legally cognizable apportionment as a matter of law. *See Good Tech. Corp. v. MobileIron, Inc.*, No. 5:12-cv-05826-PSG, 2015 U.S. Dist. LEXIS 87347, at *3 (N.D. Cal. July 5, 2015); *VirnetX, Inc.*, 767 F.3d at 1327; *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, No. C-11-05973-PSG, 2013 U.S. Dist. LEXIS 120403, at *10-12 (N.D. Cal. Aug. 22, 2013); *Atlas IP, LLC v. Medtronic, Inc.*, No. 13-civ-23309, 2014 U.S. Dist. LEXIS 158787, at *12-13 (S.D. Fla. 2014).

DLF's damages approach was fatally flawed because her approach lacked any foundation that properly apportioned out the value of the infringing features from the non-infringing features. For example, DLF claimed that the "Global Intelligence Network" ("GIN") function is captured



by the '731 and '968 patents. However, as Finjan's own expert admitted at trial, the WebPulse product is a part of the GIN, and that not all functions and features of WebPulse are accused of infringing the '731 and '968 patents. (*See* Dkt. 427 at 989:25-990:9, 991:8-13.) DLF's treatment of each of the "24 functions" of JTX-2013 as equal is also without

---

[5] DLF also arbitrarily applied a 6-8% rate per patent, rather than apportion per patent rates from Finjan's portfolio licenses. Finjan should have determined a royalty rate for each individual asserted patent; otherwise, Finjan is overcompensated by recovering 6-8% for ***each asserted patent***. (*See, e.g.*, Dkt. 405 at 323:21-326:1; Dkt. 427 at 1136:14-1137:1, 1137:2-22.)

evidentiary support. There is manifestly insufficient evidence to conclude that there has been anything other than an arbitrary allocation of technological functionality in addressing the "24 features" contained in JTX 2013. *Stragent, LLC v. Intel Corp.*, No. 6:11-cv-421, 2014 U.S. Dist. LEXIS 106167, at *12-18 (E.D. Tex. Mar. 6, 2014). Indeed, the evidence showed that Finjan's expert, Mr. Medvidovic, provided no opinion as to all of the non-accused functions listed in the chart of "24 functions" in JTX-2013 at BC0210379. (Dkt. 427 at 998:8-1005:18.) Similarly, DLF had no understanding as to the non-accused "functions" contained in the chart. (*Id.* at 1152:16-1153:24.) Yet DLF testified that she treated each of the 24 functions "equally" based solely on the document JTX-2013 itself and on Dr. Medvidovic. (*Id.* at 1117:2-1118:12.)

Blue Coat's Senior Vice President of Products, Mr. Steve Schoenfeld, confirmed that (with the exception of "Security Analytics Platform") each of the "24 functions" contained in JTX 2013 represented more than one individual feature or product. (Dkt. 430 at 1247:3-1252:25, 1253:14-153:23.) Further, Mr. Schoenfeld testified that based on his knowledge of the product line and services, it is not possible to equate any of the "24 functions" contained in JTX 2013 as having a specific set of values. (*Id.* at 1253:14-1253:23.) Accordingly, the jury relied upon an apportionment methodology that was contrary to both the law and evidence of the case. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011). A proper apportionment methodology should have calculated the value of the claimed invention isolated ***within*** the accused product without looking at the non-accused functions or at the functions made available by other non-accused products and services. *VirnetX*, 767 F.3d, at 1326-27; *Dynetix*, 2013 U.S. Dist. LEXIS 120403, at *10-12.

***Second***, the jury's doubling of damages was legally incorrect. During closing, Finjan's counsel asked the jury to double DLF's damages awards, and the jury did so without any evidentiary support. (Dkt. 434 at 2083:5-2084:5, 2086:16-2087:1, 2148:21-2149:2; Dkt. 438, Jury Verdict.) Finjan's counsel improperly instructed the jury multiple times that they should award damages higher than a reasonable royalty. (Dkt. 404 at 190:9-19; Dkt. 434 at 2081:14-19.) This contravened the law of damages, and the Court's instructions to the jury. *Whitserve*, 694 F.3d at

33; *see also Estee Lauder, Inc. v. L'Oreal, S.A.*, 129 F.3d 588, 595 (Fed. Cir. 1997); *Integra Lifesciences I*, 331 F.3d at 869-72.  (*See, e.g.*, Dkt. 434 at 2009:22-2011:20.)

***Third***, Finjan's damages approach improperly recovers damages multiple times for each accused feature.  DLF performed an improper apportionment analysis that captures more than the value of the patents as applied to each of the accused features.  The result of this error is that Finjan's damages calculations "double-dip"—and in some cases, "triple-dip"—the damages award for the accused functionality.  For example, in performing her apportionment analysis using the "24 functions" contained in JTX-2013 at BC0210379, DLF testified that the "Sandboxing" function implicated both the '822 and '633 patents and only those two patents.  (Dkt. 427 at 1112:8-22.)  DLF then multiplied the royalty base for the '822 patent by 1/24 and also multiplied the royalty base for the '633 patent by 1/24.  (*Id.* at 1115:15-1115:23.)  However, simple mathematics dictates that because the "Sandboxing" feature allegedly implicates ***both the '822 and '633 patents***, these patents cannot both have an apportionment factor of 1/24.  In other words, the apportionment factor for the '822 and '633 patents should have each been something less than 1/24, that when added together could equal—at most—1/24.  To hold otherwise would allow Finjan to recover damages twice for the "Sandboxing" feature.

The same flaws are present in Finjan's damages approaches for the following functions: (1) the "Policy/Enablement" function which is implicated by both the '731 and '968 patents and thus allows a ***doubled damages recovery***, (2) the "Object Caching" function which is implicated by both the '731 and '968 patents and thus allows a ***doubled damages recovery***; and (3) the GIN function which is implicated by the '844, '731, and '968 patents and thus allows a ***tripled damages recovery***.  (*See id.* at 1112:9-1112:22, 1118:18-23.)  Finjan's damages approach and the jury's verdict are not supported by any evidence and are contrary to the law requiring apportionment.  *See, e.g.*, *Garretson*, 111 U.S. at 121; *VirnetX*, 767 F.3d at 1326; *Catalina Lighting v. Lamps Plus*, 295 F.3d 1277, 1291-92 (Fed. Cir. 2002).

## III.   INFRINGEMENT VERDICT

There is no evidence of the accused WebPulse generating "Downloadable security profile that identifies suspicious code" required by the asserted claims of the '844 patent.  Although

1  Finjan claimed that Cookie2 logs generated by WebPulse is a "security profile," there is no
2  evidence that Cookie2 is a *profile that identifies code*. (Dkt. 407 at 497:14-21; 499:1-20, 636:20-
3  25, 652:14-15; DDX 1444 at 122:25-123:6; Dkt. 426 at 735:4-8; Dkt. 430 at 1424:3-1445:6; JTX
4  2018.)  There is also no evidence of WebPulse "linking . . . before a web server makes the
5  Downloadable available to web clients."  Finjan did not put forth any evidence that the accused
6  WebPulse meets this limitation under the Court's construction. (Dkt. 118 at 19:23-25; Dkt. 426 at
7  731:24-732:12; Dkt. 407 at 469:22-470:3; Dkt. 430 at 1448:10-1455:2.)  As in the '844 patent,
8  Finjan did not and cannot prove that the Cookie2 logs generated by WebPulse include the
9  "security profile" required by the asserted claims of the '731 patent because Cookie2 is not a
10 *profile* that comprises or lists "a list of *computer commands*."[6] (*See, e.g.*, Dkt. 407 at 636:20-25;
11 Dkt. 426 at 772:22-773:4; Dkt. 431 at 1494:3-1497:11; JTX 2018.)

12      Finjan also did not provide any evidence that the "policy index" required by claim 1 of
13 the '968 patent—and which meaning was agreed by the parties—is found in the accused products.
14 (*See* Dkt. 118 at 4.)  In particular, Finjan did not provide any evidence that the final decision (*i.e.*,
15 the result) of whether the content is allowable or not is saved in ProxySG as required by claim 1.
16 (*See, e.g.*, Dkt. 426 at 823:22-826:12, 839:1-23, 840:15-23, 885:7-23; Dkt. 430 at 1344:20-
17 1346:14; Dkt. 431 at 1509:17-1514:8.)  Further, Finjan did not provide any evidence that the
18 accused ProxyAV meets the limitation "an ID generator. . . for performing a hashing function on
19 the Downloadable and the fetched software components to generate a Downloadable ID," which
20 was agreed by the parties to mean "performing a hashing function on the Downloadable *together*
21 with its fetched software component" found in the asserted claims of the '780 patent. (Dkt. 118 at
22 4, emphasis added.)  Finjan completely ignored the "together" requirement at trial. (*See, e.g.*, Dkt.
23 426 at 852:18-853:5, 854:10-17.)  Further, there is no evidence that ProxyAV combines the
24 fingerprints after the hashing functions are performed as claimed by Finjan and its expert. (*See,*

---

[6] Because there is no evidence of the required "security profile," the limitation requiring "a security profile cache for storing the security profiles" also cannot be met.  Further, Blue Coat contends that Cookie2 is not cached (*i.e.*, there is no "security profile cache"). (*See, e.g.*, Dkt. 431 at 1497:12-1508:9.)

*e.g.*, Dkt. 431 at 1514:11-1523:6.) Lastly, Finjan did not prove with substantial evidence that the accused products infringe claim 14 of the '633 patent under the doctrine of equivalents for the following reasons:[7] (1) Finjan's expert did not testify that there were insubstantial differences between the accused products and asserted claim (Dkt. 407 at 610:21-612:9); (2) Finjan failed to proffer substantial evidence of *communication* of mobile protection code ("MPC") literally or under the doctrine of equivalents;[8] (3) Finjan proffered no evidence that the MAA literally satisfies or its equivalent to the claimed "downloadable-information destination."[9]

## IV. THE VALIDITY VERDICT

Blue Coat proved that all of the asserted claims of the '844 patent are anticipated by Abadi (DDX 1030). (*See, e.g.*, Dkt. Dkt. 431 at 1698:1-1712:18.) Blue Coat showed that the asserted claims of the '822 and '633 patents are anticipated by Ji (DDX 1036). (*See, e.g.*, Dkt. 431 at 1625:3-1673:21.) Blue Coat showed that the asserted claims of the '731 patent are not new and are anticipated by Braswell (DDX 1027).[10] (*See, e.g.*, Dkt. 433 at 1812:22-1821:9.) Blue Coat proved that claim 1 of the '968 patent is anticipated by McClain (DDX 1042). (*See, e.g.*, Dkt. 433 at 1796:16-1803:5.) Blue Coat proved that the asserted claims of the '780 patent are anticipated by Waldo (DDX 1029). (*See, e.g.*, Dkt. 431 at 1721:22-1723:22; Dkt. 433 at 1824:21-1828:18.) Accordingly, the jury's verdict that the asserted claims of patent-in-suit are not invalid is not supported by substantial evidence.

---

[7] As set forth in Blue Coat's Motion to Amend Judgment Pursuant to FED. R. CIV. P. 59(e), to the extent that the Court does not clarify the Judgment that Finjan takes nothing from the jury's surplusage verdict respect to the doctrine of equivalents of the '844, '968 and '780 patents, Blue Coat moves for a JMOL with regards to such verdict. (*See* Dkt. 486 at 12:20-22.) Also, JMOL is further warranted because Blue Coat's proposed claim constructions should be adopted and because of erroneous instructions the jury had. (Dkt. 118; Dkt. 437.)

[8] *See, e.g.*, Dkt. 430 at 1311:9-19, 1325:19-1326:20, 1332:4-1333:14; Dkt. 431 at 1618:21-1619:9, 1667:10-1669:15. In addition, Blue Coat continues to contend that Claim 14 requires that the MPC be packaged and communicated with the downloadable for the reasons stated in its claim construction brief.

[9] *See, e.g.*, Dkt. 430 at 1313:1-5; 1316:7-11; 1323:19-24, 1334:4-18, 1335:11-18; Dkt. 431 at 1591:18-23; 1615:23-1616:1; 1625:6-11, 1666:4-23; 1667:25-1668:10; Dkt. 407 at 580:9-581:16.

[10] Blue Coat's motion to amend findings under Fed. R. Civ. P. 52(b) is filed concurrently hereto which includes motion to amend the finding regarding the priority date of the '731 patent.

| | | |
|---|---|---|
| | | Respectfully submitted, |
| | | WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation |
| DATED:   December 18, 2015 | By: | */s/ Olivia M. Kim*<br>EDWARD G. POPLAWSKI<br>OLIVIA M. KIM<br>BRIAN LAM<br>S. FERRELL ALMAN, JR.<br>VERA M. ELSON<br>CHRISTOPHER MAYS |
| | | Counsel for Defendant<br>BLUE COAT SYSTEMS, INC. |