1  EDWARD G. POPLAWSKI (State Bar No. 113590)
   epoplawski@wsgr.com
2  OLIVIA M. KIM (State Bar No. 228382)
   okim@wsgr.com
3  BRIAN LAM (State Bar No. 272624)
   blam@wsgr.com
4  S. FERRELL ALMAN, JR. (State Bar No. 287746)
   falman@wsgr.com
5  WILSON SONSINI GOODRICH & ROSATI
6  Professional Corporation
   633 West Fifth Street, Suite 1550
7  Los Angeles, CA 90071
   Telephone: (323) 210-2900
8  Facsimile: (866) 974-7329
9  VERA M. ELSON (State Bar No. 156327)
10 velson@wsgr.com
   CHRISTOPHER D. MAYS (State Bar No. 266510)
11 cmays@wsgr.com
   WILSON SONSINI GOODRICH & ROSATI
12 Professional Corporation
   650 Page Mill Road
13 Palo Alto, CA 94304
   Telephone: (650) 493-9300
14 Facsimile: (650) 493-6811
15 Counsel for Defendant
16 BLUE COAT SYSTEMS, INC

17              IN THE UNITED STATES DISTRICT COURT

18           FOR THE NORTHERN DISTRICT OF CALIFORNIA

19                        SAN JOSE DIVISION

20 FINJAN, INC., a Delaware Corporation,      )   CASE NO.: 13-cv-03999-BLF-PSG
                                              )
21             Plaintiff,                     )   **DEFENDANT BLUE COAT**
                                              )   **SYSTEMS, INC.'S MOTION FOR A**
22        v.                                  )   **NEW TRIAL PURSUANT TO FED.**
                                              )   **R. CIV. P. 59(a); AND MOTION TO**
23 BLUE COAT SYSTEMS, INC., a Delaware        )   **AMEND JUDGMENT PURSUANT**
   Corporation,                               )   **TO FED. R. CIV. P. 59(e)**
24                                            )
               Defendant.                     )   Date: April 28, 2016
25                                            )   Time: 9 a.m.
                                              )   Place: Courtroom 3, 5th Floor
26                                            )   Before: Hon. Beth Labson Freeman
                                              )
27                                            )
                                              )
28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................ - 1 -

RELIEF REQUESTED ....................................................................................... - 1 -

MEMORANDUM OF POINTS AND AUTHORITIES ..................................... - 1 -

I.      MOTION FOR A NEW TRIAL ............................................................... - 1 -

     A.     The Court's Inclusion Of Settlement Agreements Was Contrary To Law And Highly Prejudicial. ........................................................... - 1 -

     B.     The Admission Of The Total Product Revenue Was Contrary To Law And Highly Prejudicial. ....................................................................... - 6 -

     C.     The Damages Awarded By The Jury Are Contrary To The Clear Weight Of Evidence And Warrants A New Trial. .......................................... - 6 -

     D.     The Infringement Verdict Is Contrary To The Clear Weight Of Evidence And Warrants A New Trial. ....................................................... - 7 -

          1.      Finjan Did Not Prove Literal Infringement Of The '844 Patent. ........... - 7 -

          2.      Finjan Did Not Prove Literal Infringement Of The '731 Patent. ........... - 9 -

          3.      Finjan Did Not Prove Literal Infringement Of The '968 Patent. ......... - 10 -

          4.      Finjan Did Not Prove Literal Infringement Of The '780 Patent. ......... - 11 -

          5.      Finjan Did Not Prove Infringement Of The '633 Patent Under The Doctrine Of Equivalents. ...................................................... - 11 -

     E.     The Validity Verdict Is Contrary to The Clear Weight Of Evidence And Warrants A New Trial. ........................................................... - 16 -

     F.     Finjan's Closing Arguments Were Highly Prejudicial And Confused The Jury And Warrants A New Trial. ................................................ - 19 -

II.     MOTION TO ALTER OR AMEND JUDGMENT ................................... - 20 -

     A.     The Judgment Needs Clarification. ............................................ - 20 -

     B.     In The Alternative, A Judgment As A Matter Of Law That There Is No Infringement Under The Doctrine Of Equivalents For The '844, '968, And '780 Patents Should Be Entered. ........................................... - 22 -

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*Adv. Display Sys. v. Kent State Univ.*, 212 F.3d 1272 (Fed. Cir. 2000)...........................2

*Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294 (Fed. Cir. 2001)........................................................................................................................2

*Aevoe Corp. v. AE Tech. Co.*, 727 F.3d 1375 (Fed. Cir. 2013)...................................20

*Apple, Inc. v. Samsung Elecs. Co.*, 926 F. Supp. 2d 1100 (N.D. Cal. 2013) ..................1

*Apple, Inc. v. Samsung Elecs. Co.*, No. 5:11-cv-01846, 2013 U.S. Dist. LEXIS 160337 (N.D. Cal. Nov. 7, 2013) ...........................................................................3, 5

*Apple v. Motorola*, 757 F. 3d 1286 (Fed. Cir. 2014)........................................................1

*AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320 (Fed. Cir. 2007)....................13, 23, 24, 25

*Arthur A. Collins v. N. Telecom Ltd.*, 216 F.3d 1042 (Fed. Cir. 2000) ...........................10

*Astrazeneca AB v. Apotex Corp.*, 782 F.3d 1324 (Fed. Cir. 2015) ...................................6

*Atlas, IP LLC v. Medtronic, Inc.*, No. 13-CIV-23309, 2014 U.S. Dist. LEXIS 158787 (S.D. Fla. Oct. 6, 2014) ...............................................................................4

*Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629 (Fed. Cir. 2011) ........................17

*Brocade Communs. Sys. v. A10 Networks, Inc.*, No. C 10-3428 PSG, 2013 U.S. Dist. LEXIS 8113 (N.D. Cal. Jan. 10, 2013)...............................................................6

*Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247 (Fed. Cir. 2004) ...................................2

*Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317 (Fed. Cir. 2002).........................................................................................................24, 25

*Devex Corp. v. Gen. Motors Corp.*, 667 F.2d 347 (3d Cir. 1981) .....................................1

*Dolly, Inc. v. Spalding & Evenflo Co.*, 16 F.3d 394 (Fed. Cir. 1994).......................24, 25

*E.E.O.C. v. Pape Lift, Inc.*, 115 F.3d 676 (9th Cir. 1997)................................................2

*Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201 (Fed. Cir. 2014) ..............................5, 6, 19

*Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323 (Fed. Cir. 2008)...............................2

*Finjan, Inc. v. McAfee Inc. et al.*, No. 1-10-cv-00593-GMS (D. Del. 2010) ....................2

*Finjan Software Ltd. v. Secure Computing Corp.*, No. 1:06-cv-00369-GMS (D. Del. 2006)..........................................................................................................2, 3

*Golden Bridge Tech. v. Apple Inc.*, No. 5:12-cv-04882-PSG, 2014 U.S. Dist. LEXIS 76339 (N.D. Cal. June 1, 2014) ...........................................................6

*Gustafson, Inc. v. Intersystems Indus. Prods.*, 897 F.2d 508 (Fed. Cir. 1990) ...............................1

*Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075 (Fed. Cir. 1983) ....................................3, 5

*Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314 (Fed. Cir. 2003) ............................12, 23

*HTC Corp. v. Tech. Props.*, No. 5:08-cv-00992-PSG, 2013 U.S. Dist. LEXIS 129263 (N.D. Cal. Sept. 6, 2013) ...................................................................6

*Intellectual Ventures I, LLC v. Canon Inc.*, No. 11-792-SLR, 2015 U.S. Dist. LEXIS 64465 (D. Del. May 18, 2015) ..................................................................20

*Interwoven, Inc. v. Vertical Computer Sys.*, No. CV 10-04645 RS, 2013 WL 3786633 (N.D. Cal. July 18, 2013) .....................................................12, 23

*IPVX Patent Holdings, Inc. v. Voxernet LLC*, No. 5:13-cv-01708 HRL, 2014 U.S. Dist. LEXIS 158037 (N.D. Cal. Nov. 6, 2014) ....................................................20

*Jang v. Boston Sci. Corp.*, 532 F.3d 1330 (Fed. Cir. 2008) .........................................................22

*Johnson v. Acevedo,* 572 F.3d 398 (7th Cir. 2009) ....................................................................21

*Johnson v. IVAC Corp.*, 885 F.2d 1574 (Fed. Cir. 1989)......................................................8, 11, 23

*LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012)................3, 4, 5, 6, 7

*Lear Siegler, Inc. v. Sealy Mattress Co. of Michigan*, 873 F.2d 1422 (Fed. Cir. 1989)..........................................................................................................12

*Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 895 F.2d 1403 (Fed. Cir. 1990) ..............................................................................................1

*Lucent Techs., Inc. v. Gateway, Inc.*, 509 F. Supp. 2d 912 (S.D. Cal. 2007).........................5, 7, 19

*McCandless v. United States*, 298 U.S. 342 (1936) ..................................................................20

*McDowell v. Calderon*, 197 F.3d 1253 (9th Cir. 1999) ..............................................................20

*Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540 (6th Cir. 2004) ...............................................19

*Otis v. City of Chicago*, 29 F.3d 1159 (7th Cir. 1994) ................................................................21

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. C 09-5235 MMC, 2014 U.S. Dist. LEXIS 171587 (N.D. Cal. Nov. 25, 2014) ......................................7

*Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506 (Fed. Cir. 1984) ...................................1

*Rambus Inc. v. Hynix Semiconductor Inc.*, No. C-05-00334 RMW, 2008 WL 5411564 (N.D. Cal. Dec. 29, 2008) ..........................................................12, 13, 23, 24, 25

*Read Corp. v. Portec, Inc.*, 970 F.2d 816, 23 U.S.P.Q.2d 1426 (Fed. Cir. 1992)..........................12

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358 (Fed. Cir. 2009) ........................1

*Silicon Graphics, Inc. v. ATI Techs., Inc.*, 607 F.3d 784 (Fed. Cir. 2010)......................................16

*Standard Havens Products, Inc. v. Gencor Industries, Inc.*, 953 F.2d 1360 (Fed. Cir. 1991) ...............................................................................................................................17

*Turner v. Burlington N. Santa Fe R. Co.*, 338 F.3d 1058 (9th Cir.2003) ......................................20

*Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) .........................................6, 7

*United States v. 4.0 Acres of Land*, 175 F.3d 1133 (9th Cir. 1999) .................................................2

*VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308 (Fed. Cir. 2014) ............................................................6

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17 (1997) .....................24, 25

*Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10 (Fed. Cir. 2012)..............................7, 20

*Wordtech Sys. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308 (Fed. Cir. 2010)...............................................................................................................................2, 5, 19

## RULES

FED. R. CIV. P. 50(b) ..........................................................................................................................1

FED. R. CIV. P. 52(b)..........................................................................................................17, 18, 22

FED. R. CIV. P. 59(a) ..........................................................................................................................1

FED. R. CIV. P. 59(e) .....................................................................................................................1, 20

## MISCELLANEOUS

Rule 3.4(e) of the Model Rules of Professional Conduct.................................................................19

Rutter Group Prac. Guide Fed. Civ. Trials & Ev. Ch. 18-B Rule 58 ................................................21

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on April 28, 2016, or as soon thereafter as the matter may be heard by the Honorable Beth Labson Freeman in Courtroom 3, 5th Floor, United States District Court for the Northern District of California, 280 South 1st Street, San Jose, CA 95113, Defendant Blue Coat Systems, Inc. ("Blue Coat") shall and hereby does move the Court to order a new trial under FED. R. CIV. P. 59(a), and to amend Judgment under FED. R. CIV. P. 59(e).[1]  The motion is based on this notice of motion and supporting memorandum of points and authorities, and such other written or oral argument as may be presented at or before the time this motion is deemed submitted by the Court.

## RELIEF REQUESTED

Blue Coat seeks a new trial under FED. R. CIV. P. 59(a), and an order amending Judgment under FED. R. CIV. P. 59(e).[2]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      MOTION FOR A NEW TRIAL

Under FED. R. CIV. P. 59(a), the Court may grant a new trial on some or all of the issues and to any party after a jury trial.  In patent cases, the law of the regional circuit governs the

---

[1] In the alternative, Blue Coat moves for a judgment as a matter of law pursuant to FED. R. CIV. P. 50(b) filed concurrently hereto ("Blue Coat's JMOL Motion").

[2] Alternatively, Blue Coat seeks remittitur that Finjan gets no or at best, nominal damages. *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1372 (Fed. Cir. 2009) ("A jury's supportable finding of the amount of damages must be upheld unless the amount is grossly excessive or monstrous.") (citation omitted); *Apple, Inc. v. Samsung Elecs. Co.*, 926 F. Supp. 2d 1100, 1109-10 (N.D. Cal. 2013) (When a court detects an error in the jury's damages verdict, the Court may order a new trial on damages, or reduce the award to a supportable amount.); *Apple v. Motorola*, 757 F. 3d 1286, 1328 (Fed. Cir. 2014); *Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 895 F.2d 1403, 1407 (Fed. Cir. 1990) ("As above indicated, the statute obviates the need to show the fact of damage when infringement is admitted or proven, but that does not mean that a patentee who puts on *little or no satisfactory evidence of a reasonable royalty* can successfully appeal on the ground that the amount awarded by the court is not 'reasonable' and therefore contravenes section 284.") (emphasis added) (citing *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1519 (Fed. Cir. 1984) and *Devex Corp. v. Gen. Motors Corp.,* 667 F.2d 347, 363 (3d Cir. 1981); *Gustafson, Inc. v. Intersystems Indus. Prods.*, 897 F.2d 508, 509-10 (Fed. Cir. 1990) (finding that the district court had not erred in awarding "*no damages* to [Plaintiff] because *none were proven*.") (emphasis added).

standards for deciding a motion for new trial. *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1328 (Fed. Cir. 2008). In the Ninth Circuit, "[t]he trial court may grant a new trial, even though the verdict is supported by substantial evidence, if the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." *Wordtech Sys. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1313 (Fed. Cir. 2010) (citing *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999)) (internal quotations omitted). A trial court should grant a motion for a new trial if (1) the jury instructions were erroneous or inadequate, (2) the court made incorrect and prejudicial admissibility rulings, or (3) the verdict is contrary to the great weight of the evidence. *See, e.g., Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1308 (Fed. Cir. 2001); *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1258 (Fed. Cir. 2004); *E.E.O.C. v. Pape Lift, Inc.*, 115 F.3d 676, 680 (9th Cir. 1997). Erroneous jury instructions are prejudicial when they are "inconsistent with substantial justice." *Adv. Display Sys. v. Kent State Univ.*, 212 F.3d 1272, 1283 (Fed. Cir. 2000).

### A. The Court's Inclusion Of Settlement Agreements Was Contrary To Law And Highly Prejudicial.

Finjan was allowed to introduce at trial the settlement agreements that it entered into to support its damages theories.[3] There were three settlement agreements admitted at trial: (1) settlement agreement with Webroot entered in 2012 (PTX 288; Dkt. 405 at 296:2; Dkt. 427 at 1065:22, 1088:4, 1136:7); (2) settlement agreement with Intel/McAfee entered in 2010[4] (PTX 289;

---

[3] Blue Coat had moved to exclude settlement agreements before trial. (*See* Dkt. 281-3; Dkt. 367 at 7-8.)

[4] In 2008, a jury awarded Finjan damages against Secure Computing Corp. ("Secure Computing"), who was accused of infringing two of the six patents-in-suit in the present case and one patent that is not asserted against Blue Coat. *Finjan Software Ltd. v. Secure Computing Corp.*, No. 1:06-cv-00369-GMS (D. Del. 2006) ("Secure Computing Litigation") at Dkt. 1, 242, 305, 336. The Court entered a permanent injunction and awarded interest and enhanced damages. *Id.* In 2012, Finjan filed a Motion for Contempt for alleged violation of the Court's injunction. *Id.* at Dkt. 251. Finjan filed suit against McAfee, Inc. ("McAfee") in 2010, asserting two patents that are not asserted against Blue Coat in the present action. *Finjan, Inc. v. McAfee Inc. et al.*, No. 1-10-cv-00593-GMS (D. Del. 2010) at Dkt. 1. Secure Computing was acquired by McAfee in 2008, and McAfee, in turn, was acquired by Intel in 2011. In 2012, Finjan and Intel entered into a settlement agreement resolving the Secure Computing and McAfee litigation (continued...)

Dkt. 405 at 298:9; Dkt. 427 at 1086:6, 1087:15, and 1136:7); and (3) settlement agreement with Websense entered in 2014 (PTX 296; Dkt. 405 at 300:4; Dkt. 427 at 1065:18, 1089:13, 1136:7, 1137:13.) The jury was provided with jury instructions with regards to these settlement agreements, merely informing the jury that the settlement agreements cover patents other than what is being asserted, that the license fees negotiated during the course of a lawsuit *may* be influenced by factors unrelated to the value of the patents, and that settlement agreements are negotiated on dates that are earlier or later than the date on which the alleged infringement began. (Dkt. 437 at 47-48, 50; Dkt. 434 at 2016:23-2018:7.) The Federal Circuit has emphasized that "the propriety of using prior settlement agreements to prove the amount of a reasonable royalty is questionable" and only permissible, if at all, "under certain circumstances." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012). A settlement agreement entered into years after the hypothetical negotiation date "is in many ways not relevant," especially in "light of the changing technological and financial landscape." *Id.* at 78. Indeed, the Federal Circuit has long noted that settlements entered into "after the infringement had begun and litigation was threatened or probable . . . 'should not be considered evidence of an 'established royalty,''" as such negotiated agreements may merely reflect the desire to avoid the high costs of full litigation. *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078-79 (Fed. Cir. 1983) (citation omitted). Courts in this District have noted that settlement agreements in technology cases, which involve rapidly changing technological and economic environments, fail to properly reflect a hypothetical negotiation between parties, have little probative value, and are greatly outweighed by the risk of unfair prejudice. *See, e.g.*, *Apple, Inc. v. Samsung Elecs. Co.*, No. 5:11-cv-01846, 2013 U.S. Dist. LEXIS 160337, at *4-6 (N.D. Cal. Nov. 7, 2013).

Here, the settlement agreements admitted into evidence were not comparable to the hypothetical negotiation[5] and fail to reflect the proper economic and technical demands for the

---

(...continued from previous page)
(PTX 289), including Finjan's then-pending motion for contempt. *See* Secure Computing Litigation at Dkt. 375.

[5] The Court instructed the jury that it had to use the hypothetical negotiation "framework" in determining a reasonable royalty; namely "the payment that would have resulted from a
(continued...)

claimed technology. *See LaserDynamics*, 694 F.3d at 77. The settlement agreement with Intel/McAfee was executed while the defendant in the underlying litigation faced the looming threat of sanctions for an alleged violation of the Court-mandated permanent injunction, and the underlying litigation included enhanced damages, damages awarded by a jury,[6] and pre- and post-judgment interest. The settlement with Webroot is further divorced from the context of the hypothetical negotiation because Finjan's compensation included both shares in Websense (a non-public company) as well as an explicit cash payment. (*See* PTX 288 at FINJAN-BC135456-458.) Additionally, the settlement agreements with Intel/McAfee and Webroot were both executed in 2012, and the settlement agreement with Websense was executed in 2014. In contrast, the hypothetical negotiations dates between Finjan and Blue Coat would have occurred in 2004, 2006, 2008, or 2013 for the six respective patents-in-suit. (Dkt. 437 at 42; Dkt. 434 at 2011:9-14.) Because of the changing technological and economic landscapes between the dates of the settlement agreements and the hypothetical negotiation dates, the admitted settlement agreements are clearly irrelevant to an analysis of the hypothetical negotiation in the present case.

Notably, the Federal Circuit in *LaserDynamics* instructed that settlement licenses may be admitted only "under certain limited circumstances," and more specifically, only when it is the most relevant and reliable license in the record and stands out when compared to all other licenses in the record. 694 F.3d at 77-78. In contrast, "[a]ctual licenses to the patented technology are highly probative as to what constitutes a reasonable royalty for those patent rights because actual licenses most clearly reflect the economic value of the patented technology in the marketplace." *Id.* at 69-70. Here, as in *LaserDynamics*, the patentee, Finjan, has executed a number of licenses with Microsoft, Corp. (JTX 2046), M86 Security, Inc. (JTX 2047, JTX 2083), and Trustwave Holdings, Inc. (JTX 2048), which are not settlements of active litigation and do not involve the

---

(...continued from previous page)

negotiation between Finjan and Blue Coat taking place at a time prior to when the infringement began." (Dkt. 434 at 2016:18-22.)

[6] *See Atlas, IP LLC v. Medtronic, Inc.*, No. 13-CIV-23309, 2014 U.S. Dist. LEXIS 158787, at *16 (S.D. Fla. Oct. 6, 2014) ("[I]t is self-evident jury-determined damages are not evidence of arms-length negotiations between parties.").

unique coercive circumstances of a settlement agreement.  They all have been admitted into evidence at trial.  (*See, e.g.*, Dkt. 405 at 292:23, 293:22, 295:11; Dkt. 427 at 1082:18.)  The Federal Circuit has held such non-settlement licenses to be "far more reliable indicators of what willing parties would agree to in a hypothetical negotiation."  *LaserDynamics,* 694 F.3d at 77-78.

Accordingly, the admission of the settlement agreements was contrary to law and highly prejudicial to Blue Coat.  Further, the jury instructions concerning settlement agreements did not cure the prejudicial effect.  (Dkt. 437 at 47-48, 50; Dkt. 434 at 2016:23-2018:7.)  The jury instructions merely informed the jury that the settlement agreements cover patents other than what is being asserted, that the license fees negotiated during the course of a lawsuit *may* be influenced by factors unrelated to the value of the patents, and that settlement agreements are negotiated on dates that are earlier or later than the date on which the alleged infringement began.  (*Id.*)  But such instructions do not inform the jury that the settlement agreements fail to properly reflect a hypothetical negotiation between the parties, and in light of the other non-settlement licenses that were admitted into evidence, the settlement agreements have little probative value to the question of royalty damages.[7]  *See, e.g.*, *LaserDynamics*, 694 F.3d at 69-70; *Hanson*, 718 F.2d at 1078-79; *Apple*, 2013 U.S. Dist. LEXIS 160337, at *4-6.  As such, the instructions on settlement agreements were erroneous.[8]

In sum, because the admission of settlement agreements was highly prejudicial and the jury instructions with regards to settlement agreements were erroneous, a new trial is warranted. *See, e.g., LaserDynamics*, 694 F.3d 51, 81; *Wordtech*, 609 F.3d at 1315; *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1235 (Fed. Cir. 2014); *Lucent Techs., Inc. v. Gateway*, *Inc.*, 509 F. Supp. 2d 912, 928 (S.D. Cal. 2007).  Blue Coat also requests entry of judgment consistent with its motion for judgment as a matter of law ("JMOL").

---

[7] In addition, Finjan's counsel at closing argument told the jury the following, which was very prejudicial: "The fact of the matter is that people have paid substantial sums to license Finjan's patents because they were very valuable."  (Dkt. 434 at 2082:3-12.)

[8] There were other erroneous jury instructions which prejudiced Blue Coat as set forth in its objections to the jury instructions.  (*See, e.g.*, Dkt. 425.)

**B.** **The Admission Of The Total Product Revenue Was Contrary To Law And Highly Prejudicial.**

Finjan was allowed to admit into evidence the total product revenue for the accused products and services.[9] (*See, e.g.*, Dkt. 427 at 1051:11-23, 1107:5-1108:7.) The Federal Circuit has made it abundantly clear that disclosure to the jury of financial information not tied to the claimed inventions at issue, including the total product revenue, is extremely prejudicial, regardless of whether the court issues a limiting instruction. *LaserDynamics*, 694 F.3d at 68; *Ericsson*, 773 F.3d at 1226-27; *Astrazeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1337 (Fed. Cir. 2015); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011); *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014); *Brocade Communs. Sys. v. A10 Networks, Inc.*, No. C 10-3428 PSG, 2013 U.S. Dist. LEXIS 8113, at *54 (N.D. Cal. Jan. 10, 2013); *HTC Corp. v. Tech. Props.*, No. 5:08-cv-00992-PSG, 2013 U.S. Dist. LEXIS 129263, at *19 (N.D. Cal. Sept. 6, 2013); *Golden Bridge Tech. v. Apple Inc.*, No. 5:12-cv-04882-PSG, 2014 U.S. Dist. LEXIS 76339, at *6 (N.D. Cal. June 1, 2014). Accordingly, admitting the total product revenue of the accused products and services, when Finjan only sought only a portion of such revenue through apportionment, was contrary to law and highly prejudicial, which warrants a new trial.

**C.** **The Damages Awarded By The Jury Are Contrary To The Clear Weight Of Evidence And Warrants A New Trial.**

As set forth in Blue Coat's JMOL Motion filed concurrently, there is no factual or legal support for the '844 patent damages awarded by the jury. Although Finjan's own damages expert, Dr. Layne-Farrar, did not provide any opinion with regards to the damages for the '844 patent, Finjan's counsel for the first time in closing arguments asked the jury to award $24 million in damages for the '844 patent. Specifically, Finjan's counsel asked the jury to use 75 million users of WebPulse, multiply that number by 4% (representing the alleged portion of web requests processed by DRTR), and multiply that number by an alleged $8 per user royalty, which was adopted by the jury. (Dkt. 434 at 2084:6-2085:6.) This was highly improper. First, Finjan's use of 75 million users improperly includes extraterritorial instances of alleged infringement and

---

[9] Blue Coat had moved to exclude total product revenue before trial. (*See* Dkt. 281-3; Dkt. 367 at 7-8.)

Finjan failed to appropriately apportion the U.S. users. Second, Finjan's use of a "4% apportionment" is not supported by the evidence and is contrary to the law. Lastly, Finjan's proffered $8 per user fee cannot reflect a valid license fee at the time of the hypothetical negotiation and is not supported by the evidence.

There is also no factual or legal support for the damages awarded for the '633, '731, '968, and '780 patents. First, Finjan's apportionment methodology used for the damages of the '633, '731, '968, and '780 patents are against the law and the great weight of evidence in this case. Second, the jury's adoption of Finjan's argument that the damages for these patents be "doubled" is contrary to law. Third, Finjan's damages approach improperly recovers damages multiple times—double-dipping or triple-dipping—for each accused feature.

Accordingly, as set forth in Blue Coat's JMOL Motion, assuming liability, zero damages or at best, nominal damages should be awarded as a matter of law. In the alternative and for the same reasons, a new trial should be granted as the damages awarded by the jury are contrary to the clear weight of evidence.[10] *See, e.g.*, *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 33-34 (Fed. Cir. 2012); *LaserDynamics*, 694 F.3d at 66-71; *Uniloc*, 632 F.3d at 1318; *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. C 09-5235 MMC, 2014 U.S. Dist. LEXIS 171587, at *5 (N.D. Cal. Nov. 25, 2014); *Lucent Techs.*, 509 F. Supp. 2d at 940.

**D.** **The Infringement Verdict Is Contrary To The Clear Weight Of Evidence And Warrants A New Trial.**[11]

**1.** **Finjan Did Not Prove Literal Infringement Of The '844 Patent.**

Finjan did not prove that the accused service, Blue Coat's WebPulse, infringes the asserted claims 1, 7, 11, 15, and 41 of the '844 patent. ***First***, there is no evidence of WebPulse generating "Downloadable security ***profile*** that ***identifies suspicious code***" as required by all asserted claims. The Court construed this phrase to mean "a profile that identifies code in the received

---

[10] The erroneous jury instructions with regards to damages also warrants a new trial. (*See* Dkt. 425.) So too do erroneous claim constructions. (*See* Dkt. 118.)

[11] For the same reasons as set forth herein, Blue Coat alternatively moves for JMOL of no infringement.

Downloadable that performs hostile or potentially hostile operations."[12] (Dkt. 118 at 18:1-4.) During jury trial, Finjan claimed that Cookie2 logs generated by WebPulse include the "security profile" required by the asserted claims. (Dkt. 407 at 497:14-21; 652:14-15; DDX 1444 at 122:25-123:6; Dkt. 430 at 1425:7-17.) However, Finjan did not provide any evidence that Cookie2 is "a *profile* that *identifies code* in the received Downloadable that performs hostile or potentially hostile operations." Rather, Finjan vaguely referred to WebPulse as tracking "suspicious activity" and "suspicious information," but failed to point to any *profile* that *identifies code*. (*See, e.g.*, Dkt. 407 at 499:1-20; Dkt. 426 at 735:4-8.) This is not sufficient to prove literal infringement. The patentee must prove that "every limitation set forth in a claim must be found in an accused product or process *exactly*." *Johnson v. IVAC Corp.*, 885 F.2d 1574, 1577-78 (Fed. Cir. 1989) (emphasis added). Indeed, the actual evidence is fatal to Finjan's theory of literal infringement. Cookie2 is merely a string of numbers and characters as shown below. (Dkt. 407 at 636:20-25; Dkt. 430 at 1430:19-23.)

1:0:404:0.text/html:1::0.90:0:0:0:0:0::0.0:1521:172:0:0.133:0:124:0:0.0::216.239.134.132:0:0:0.0:0:0.0:0./TR/xhtml1/DTD/xhtml1-transitional.dtd:0:0:0:0:0:0:0:0:0:0:0:0.Apache:0:0:0:0:0:0:0:0:0.000000000000000000000:0:0:1239300461:0:0:

(JTX 2018.) It is just logged metatdata (*i.e.*, data about data). (*See, e.g.*, Dkt. 430 at 1426:16-25.) As such, it does not (and cannot) identify any code as required by the claims. (*See, e.g.*, JTX 2018 (Cookie2 format); Dkt. 430 at 1424:3-1445:6.)

**Second**, there is no evidence of WebPulse "linking . . . the first Downloadable security profile to the Downloadable *before a web server makes the Downloadable available to web clients*" as required by the asserted claims. The court construed the bolded phrase to mean "before [a/]the non-network gateway web server make[s] the Downloadable available to web clients." (Dkt. 118 at 19:23-25.) Finjan did not put forth any evidence that the accused WebPulse meets this limitation. Rather, Finjan ignored the claim construction and proffered a theory that the limitation "refer[s] to the real-time analysis in which the analysis will be performed to determine whether there is anything suspicious and that analysis is done before the client ever receives that

---

[12] Blue Coat still contends that the meaning of this phrase should have had more specificity as proposed by Blue Coat during the claim construction phase. (*See, e.g.*, Dkt. 118 at 16:1-18:4.)

information." (Dkt. 426 at 731:24-732:12.) But this is inconsistent with the agreed fact that WebPulse already received the Downloadable from a non-network gateway web server in order to analyze the Downloadable. (Dkt. 407 at 469:22-470:3 ("WebPulse would actually go out to that cnn.com and they would pull out that download.").) Because WebPulse is receiving a Downloadable from a web server (*e.g.*, a web server of cnn.com), it is a web client. (Dkt. 430 at 1448:10-1455:2.) Accordingly, there is no substantial evidence to support that WebPulse performs the required linking function ***before*** a web server makes the Downalodable available to web client. (*Id.*) Rather, any linking function accused by Finjan would be performed ***after*** such Downloadable is made available by the web server (*e.g.*, cnn.com) to WebPulse (*i.e.*, the web client). (*Id.*) Accordingly, the infringement verdict with regards to the '844 patent is against the clear weight of evidence.

### 2. Finjan Did Not Prove Literal Infringement Of The '731 Patent.

Finjan asserted claims 1 and 17 of the '731 patent. (Dkt. 438.) Finjan did not prove that the accused products—ProxySG and WebPulse in combination—meet the following limitation: "deriving security profiles . . . [wherein each of] the ***security profile[s]*** [comprises/includes] ***a list of [at least one] computer command[s]*** . . ."[13] As in the '844 patent, Finjan claimed that Cooki2 logs generated by WebPulse include the "security profile" required by the asserted claims. (*See, e.g.*, Dkt. 426 at 772:22-773:4.) But Finjan did not provide any evidence that Cookie2 is a ***profile*** that comprises or lists "a list of ***computer commands***." As discussed above, there is no dispute that Cookie2 is merely a string of numbers and characters. (Dkt. 407 at 636:20-25.) As such, Cookie2 does not (and cannot) include or comprise a list of computer commands. (*See, e.g.*, JTX 2018; Dkt. 431 at 1494:3-1497:11.) Accordingly, the infringement verdict with regards to the '731 patent is against the clear weight of evidence.

---

[13] Because there is no evidence of the required "security profile," the limitation requiring "a security profile cache for storing the security profiles" also cannot be met. Further, Blue Coat contends that Cookie2 (which Finjan alleged as the "security profile" required by the asserted claims) is not cached (*i.e.*, there is no "security profile cache") as required by the asserted claims. (*See, e.g.*, Dkt. 431 at 1497:12-1508:9.)

### 3. Finjan Did Not Prove Literal Infringement Of The '968 Patent.

Finjan asserted claim 1 of the '968 patent. (Dkt. 438.) Finjan did not prove that the accused products—ProxySG and WebPulse in combination—meet the following limitation: "a memory storing . . . a policy index to the cache contents, *the policy index including entries* that relate cache content and policies by *indicating cache content that is known to be allowable* relative to a given policy . . ." Similarly, Finjan did not prove that the limitation "content evaluator . . . for determining *whether a given digital content is allowable* relative to a given policy, based on the content profile, *the results of which are saved as entries in the policy index*" is met.

The parties agreed that the term "policy index" means "a data structure indicating allowability of cached content relative to a plurality of policies." (Dkt. 118 at 4.) Finjan did not provide any evidence that the "policy index" required by claim 1 is found in the accused products. Finjan proffered at trial that ProxySG's Policy Checkpoint indicates that there is a policy index in ProxySG. (*See, e.g.*, Dkt. 426 at 823:22-826:12.) But as admitted by Finjan's own expert, Dr. Mitzenmacher, ProxySG's Policy Checkpoint applies policies in multiple stages when analyzing content. (*Id.* at 823:22-825:9; 839:1-23.) It saves each policy evaluations as the content goes through the system for analysis. (*Id.*) In other words, the final decision as to whether the content is allowed or not is made later, after going through these multiple stages of policy evaluations, which are in pieces. (*Id.*; *see also id.* at 885:7-23.) Dr. Mitzenmacher only testified that "pieces" leading up to a final decision as to whether to allow or block content are saved, not that the final decision is saved. (*Id.* at 839:9-12.) But Finjan did not provide any evidence that the final decision (*i.e.*, the result) of whether the content is allowable or not is saved in ProxySG as required by claim 1. (*See id.* at 840:15-23, 885:16-23.) *See Arthur A. Collins v. N. Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000) (expert may not simply testify that claim limitation is met without showing specific structure that equates with the limitation). This is because ProxySG does not save such results. (*See, e.g.*, Dkt. 430 at 1344:20-1346:14; Dkt. 431 at 1509:17-1514:8.) Accordingly, the infringement verdict with regards to the '968 patent is against the clear weight of evidence.

**4.  Finjan Did Not Prove Literal Infringement Of The '780 Patent.**

Finjan asserted claims 9 and 13 of the '780 patent.  (Dkt. 438.)  Claim 9 is an independent claim and claim 13 depends on claim 9.  Finjan did not prove that the accused products—ProxySG and ProxyAV in combination—meet the second element of claim 9, which requires "an ID generator coupled to the communications engine . . . for ***performing a hashing function on the Downloadable and the fetched software components*** to generate a Downloadable ID."  The parties agreed that the bolded phrase means "performing a hashing function on the Downloadable ***together*** with its fetched software component."  (Dkt. 118 at 4, emphasis added.)  But Finjan completely ignored the "together" requirement at trial.  Finjan's expert, Dr. Mitzenmacher, opined that ProxyAV meets the limitation because after hashing function was performed on objects to create fingerprints, the fingerprints are then combined to correspond to a specific I.D.  (*See, e.g.*, Dkt. 426 at 852:18-853:5, 854:10-17.)   But this ignores the Court's claim construction.  Combining fingerprints ***after*** the hashing function was performed on different objects is not "performing a hashing function on the Downloadable ***together*** with its fetched software component ***to generate a Downloadable I.D.***"  (*See, e.g.*, Dkt. 431 at 1514:11-1523:6.)   In addition, there is no evidence that ProxyAV combines the fingerprints after the hashing functions are performed as claimed by Finjan and its expert.  (*See, e.g.*, *id.*)  Accordingly, the infringement verdict with regards to the '731 patent is against the clear weight of evidence.

**5.  Finjan Did Not Prove Infringement Of The '633 Patent Under The Doctrine Of Equivalents.**

Finjan failed to prove with substantial evidence that the combination of the ProxySG, CAS, and MAA ("the '633 Accused Products") infringe claim 14 of the '633 patent under the doctrine of equivalents ("DOE").  ***First***, Finjan did not prove doctrine of equivalents under the "function, way, result" test.  Finjan's expert Dr. Cole did not testify that there were insubstantial differences between the '633 Accused Products and claim element 14(d).  Rather, Dr. Cole testified that the '633 Accused Products "functioned in the ***same*** manner," "functioned in the ***same*** way," and "yielded the ***same*** results," and concluded the '633 Accused Products "clearly meets all of those requirements that are in that element."  (Dkt. 407 at 610:21-612:9.)  But this is not DOE; Dr. Cole's testimony only goes to literal infringement.  *See Johnson*, 885 F.2d at 1577-78 (for literal

infringement, the patentee must prove that "every limitation set forth in a claim must be found in an accused product or process *exactly*.") (emphasis added). Indeed, Dr. Cole's testimony falls far short of the correct "function, way, result" test for DOE. *See, e.g.*, *Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1322-23 (Fed. Cir. 2003) (testimony as to the *same* function, *same* way, and *same* result "falls far short of the long-standing evidentiary requirements for proof of infringement under the doctrine of equivalents," in particular such testimony fails provide particularized testimony and linking argument evidence on a limitation by limitation basis and, more to the point, "does not even address the issue of equivalence of function."); *Interwoven, Inc. v. Vertical Computer Sys.*, No. CV 10-04645 RS, 2013 WL 3786633, at *5-6 (N.D. Cal. July 18, 2013) (expert testimony directed only to the "same function", "same result", and "same way," without discussion of the claim limitations or differences with such limitations, speaks to literal infringement, not infringement under the doctrine of equivalents); *Rambus Inc. v. Hynix Semiconductor Inc.*, No. C-05-00334 RMW, 2008 WL 5411564, at *2 (N.D. Cal. Dec. 29, 2008) (opinion that goes to the accused products accomplishing the *same* function does not explain "how the equivalent of any of the actual claim limitations can be found in the [] accused products.").

Dr. Cole also testified that the '633 Accused Products "functioned in the same *manner*" (*id.* at 610:21-611:1), not that they performed substantially the same *function* as claim element 14(d). Additionally, when asked about the results of the '633 Accused Products, Dr. Cole testified only as to the operation of the '633 Accused Products, not the results they achieved (and without comparison to the results achieved by claim 14(d)). Each of these failures is an independent basis to enter judgment as a matter of law for Blue Coat. *See Lear Siegler, Inc. v. Sealy Mattress Co. of Michigan*, 873 F.2d 1422, 1425 (Fed. Cir. 1989) ("substantial identity must be proven with regard to all three elements of the doctrine specified in Graver Tank: *function* performed, *means* by which function is performed, and *result* achieved."); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 822, 23 U.S.P.Q.2d 1426 (Fed. Cir. 1992) ("Under the doctrine of equivalents, a patentee must show that the accused device performs substantially the same function, in substantially the same way, to achieve substantially the same result.") (citation omitted).

Finjan also failed to proffer particularized testimony linking the '633 Accused Product's function, way, and result to the limitations of claim element 14(d), as required by the Federal Circuit. *See, e.g.*, *AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1328-29 (Fed. Cir. 2007) (to prove DOE patentee must "provide particularized testimony and linking argument on a limitation-by-limitation basis"). Dr. Cole merely testified regarding the operations of the '633 Accused Products, and conclusorily stated that these "clearly meets all of those requirements that are in that element." This is not sufficient to prove DOE. *See Rambus Inc.*, 2008 WL 5411564, at *2 ("Mr. Murphy does not compare or explain the equivalence between any particular feature and a limitation of an asserted patent claim.").

***Second***, Finjan failed to proffer substantial evidence of ***communication*** of mobile protection code ("MPC") literally or under the doctrine of equivalents. The Court previously construed limitations within claim element 14(d) to require that MPC be ***communicated*** to the downloadable-information destination without modifying the executable code. (*See* Dkt. 118 at 14-15, 25.) During trial, Finjan failed to proffer substantial evidence that the '633 Accused Products ever communicate MPC to the downloadable-information destination.[14] Setting aside the fact that the MAA cannot constitute the information destination (as discussed below), Finjan still failed to submit substantial evidence that the alleged MPC is communicated to the MAA. The evidence in the record shows that (a) the software for the MAA is pre-installed by a third party during the manufacturing process and before the MAA is ever operated, and (b) during operation Blue Coat does not send or push any updates of the kernel scout or sandbox hooks to various MAA devices in service.[15] Finjan did not rebut this evidence at trial.

The sole issue for the Court to decide is whether pre-installing the kernel scout and/or sandbox hooks (the "MPC" according to Finjan) satisfies the Court's requirement that MPC be communicated. However, it is clear that such pre-installation cannot satisfy this requirement

---

[14] Finjan's expert Dr. Cole identified the MPC in the '633 Accused Products as either the kernel scout found in the IntelliVM virtual machine component or the "hooks" found in the sandbox environment. (Dkt. 407 at 601:17-602:2.)

[15] *See, e.g.*, Dkt. 430 at 1311:9-19, 1325:19-1326:20, 1332:4-1333:14; Dkt. 431 at 1618:21-1619:9, 1667:10-15, 1668:11-1669:15.

because the act of installing software is external to the claimed computer program product's "computer readable program code." (JTX-2006, '633 Patent at 21:58-61.) Finjan proffered no evidence that any portion of the '633 Accused Products' program code contains any functionality for transmitting, communicating, receiving, or even installing the kernel scout or sandbox hooks. Moreover, because the act of pre-installation is done once during manufacturing, such installation begins and ends with a third party before Blue Coat or its customers ever receive the MAA device, not during operation.[16] This comports with the specification and file history of the '633 patent, which make clear that MPC must be communicated during operation of the device, not as part of a pre-installation process.[17]

Accordingly, Finjan has failed to show that the '633 Accused Products infringe literally or under the doctrine of equivalents the requirement of claim element 14(d); in particular, Finjan proffered no evidence that the act of pre-installing software performs substantially the same function, in substantially the same way, to achieve substantially the same result as the communication requirement.

**Third**, Finjan proffered no evidence that the MAA literally satisfies or its equivalent to the claimed "downloadable-information destination." In its June 16, 2014 claim construction brief, Finjan offered a definition of the term "downloadable-information destination" found in claim 14 by arguing "the terms 'information-destination' and 'Downloadable-information destination' simply refer to the destination of information and the destination of Downloadable-information, respectfully. **For example, if a computer or server requests a webpage (i.e. information), the information-destination is simply the requesting computer or server**." (Dkt. 65 at 16-17,

---

[16] Blue Coat still contends that claim 14 is invalid for the reasons explained in its claim construction brief and motion for summary judgment motion. (*See* Dkt. 66 at 22-23; Dkt. 173-4 at 23-25.)

[17] *See* JTX-2006 ('633 Patent) at 2:44-49, 2:66-3:2, 3:5-11, 3:23-25, 3:41-48, 3:51-58, 3:63-67, 4:16-21, 5:44-48, 7:12-15, 9:25-30, 9:58-63, 10:11-15, 10:39-45, 10:49-58, 10:61-11:3, 11:8-13, 19:57-61, and Figs. 1b, 1c, 3, 4, 6b, 7b, 10b, 11; JTX-2012 ('633 Patent File History) at FINJAN-BC 001389 & 001269. Moreover, Blue Coat continues to contend that Claim 14 requires that the MPC be packaged and communicated with the downloadable for the reasons stated in its claim construction brief. This only strengthens the notion that the MPC must be communicated during runtime.

emphasis added.) The scope of "downloadable-information destination" is the device sought to be protected or, in other words, the device that requested the webpage and accompanying executable code.[18]

Finjan failed to proffer substantial evidence that the "downloadable-information destination" element is met literally or under the doctrine of equivalents. At trial, Finjan argued that the MAA is the downloadable-information destination. (*See, e.g.*, Dkt. 407 at 591:4-11.) Finjan offered no evidence that the MAA either requested the downloadable or is the device that is intended to be protected. On the other hand, Blue Coat submitted substantial evidence that the MAA is not the downloadable-information destination because it never issues a request for any file.[19]

Further, Finjan failed to show that the MAA is the downloadable-information destination for the additional reason because Finjan failed to establish that the MAA ever receives the downloadable-information. During its case-in-chief, Finjan's expert Dr. Cole presented only surface-level testimony regarding the nature of the information submitted by the alleged re-communicator (*i.e.*, ProxySG) to the MAA. (*See, e.g.,* Dkt. 407 at 580:9-581:16.) After Finjan closed its case in chief, Blue Coat's witnesses explained in more detail that when the ProxySG receives the downloadable-information, it creates a first ***separate file*** that is sent on to the CAS which, in turn, creates a second ***separate file*** that is sent to the MAA. (Dkt. 430 at 1334:4-18.) The downloadable-information retrieved by ProxySG is sent to the device that originated the request, not the MAA. (*Id.* at 1335:11-18; Dkt. 431 at 1666:4-23, 1667:25-1668:10.) The MAA never receives that downloadable-information, because it is sent to the client, not the MAA. (*Id.*)[20] Further, Finjan draws no distinction between the downloadable-information and the

---

[18] JTX-2006 ('633 Patent) at 6:12-32, 7:1-8, 7:28-32, 7:35-42, 7:58-62, 9:25-30, 9:44-50, 9:54-57, 10:39-45, 10:49-54, 10:61-65, 11:19-23, 18:53-57, 19:5-14; JTX-2012 ('633 Patent File History) at FINJAN-BC 001389 & 001269.

[19] Dkt. 430 at 1313:1-5, 1316:7-11, 1323:19-24; Dkt. 431 at 1591:18-23, 1615:23-1616:1, 1625:6-11.

[20] Finjan Dr. Cole's surface level testimony repeatedly conflates the notion of the downloadable information with the executable. These are two distinct elements. Finjan failed to submit substantial evidence that the files received by the MAA contain the downloadable-information.

executable code, and did not establish with substantial evidence that the separate files received by the MAA satisfy either the claimed downloadable-information or the claimed executable code limitations. This failure is critical given the evidence on the record that the downloadable-information originally received by ProxySG is ***always sent on to the client*** irrespective of what happens in the MAA. (*Id.*) This evidence further shows that the device that requested the downloadable-information is the downloadable-information destination, not the MAA which receives a separate file for analysis.

Accordingly, the infringement verdict with regards to the '633 patent is against the clear weight of evidence.

**E.      The Validity Verdict Is Contrary to The Clear Weight Of Evidence And Warrants A New Trial.[21]**

'844 Patent: Blue Coat proved that claims 1, 7, 11, 15, and 41 of the '844 patent are anticipated by U.S. Patent No 6,253,370 ("Abadi") (DDX 1030). Blue Coat's expert, Dr. George Necula, presented clear and convincing evidence that the asserted claims are not new by showing in great detail how Abadi disclosed all the elements found in the asserted claims. (*See, e.g.,* Dkt.431 at 1698:1-1699:14 (claim 1, element 1); 1699:19-1701:22 (claim 1, element 2); 1701:23-1705:1 (claim 1, element 3); 1707:12-1708:13 (claim 7); 1708:18-1709:13 (claim 11); 1709:23-1711:11 (claim 15); and 1711:20-1712:18 (claim 41).) *See Silicon Graphics, Inc. v. ATI Techs., Inc.*, 607 F.3d 784, 796 (Fed. Cir. 2010) ("To show that a patent claim is invalid as anticipated, the accused infringer must show by clear and convincing evidence that a single prior art reference discloses each and every element of a claimed invention."). Finjan did not provide any substantial evidence that Abadi was missing any claimed element. Accordingly, the jury's verdict that the asserted claims of the '844 patent are not invalid is against the clear weight of evidence.

'822 Patent: Blue Coat showed by clear and convincing evidence that claims 9 and 10 are anticipated by U.S. Patent No. 5,983,348 ("Ji") (DDX 1036). With regard to claim 9 of the '822 Patent, Dr. Michael Hicks explained how Ji explicitly or inherently discloses each and every

---

[21] For the same reasons as set forth herein, Blue Coat alternatively moves for JMOL of invalidity.

elements found in the asserted claims. (Dkt. 431 at 1625:3-1628:25, 1629:1-5; 1632:16-23, 1633:6-1635:6, 1637:10-1638:20, 1638:21-1642:22, 1643:1-20, 1644:11-25, 1645:3-8, 1671:22-1672:21, 1673:1-10, 1673:13-18, 1673:20-21.)[22] *See Standard Havens Products, Inc. v. Gencor Industries, Inc.*, 953 F.2d 1360, 1369 (Fed. Cir. 1991); *Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 639-40 (Fed. Cir. 2011). Finjan did not provide any substantial evidence that Ji was missing any claimed element. Accordingly, the jury's verdict that the asserted claims of the '822 patent are not invalid is against the clear weight of evidence.

'633 Patent: Blue Coat shows by clear and convincing evidence that claim 14 of the '633 patent is not new and is anticipated by Ji. Dr. Hicks testified in detail how Ji disclosed each and every element of claim 14. (Dkt. 431 at 1640:17-1642:22, 1643:1-20, 1648:18-1650:12.) Finjan did not provide any substantial evidence that Ji was missing any claimed element. Accordingly, the jury's verdict that the asserted claim of the '633 patent is not invalid is against the clear weight of evidence.

'731 Patent: Blue Coat shows by clear and convincing evidence that claims 1 and 17 of the '731 patent are not new and are anticipated by a publication entitled "IBM Websphere Edge Server: New Features and Functions in Version 2" dated April 2002 ("Braswell") (DDX 1027).[23] Blue Coat's expert, Dr. Necula, provided a detailed testimony how each and every element of the asserted claims are found in Braswell. (*See, e.g.*, Dkt. 433 at 1812:22-1814:21 (claim 1, element 1); 1814:24-1815:15 (claim 1, element 2); 1815:19-1816:23 (claim 1, element 3); 1816:24-1817:16 (claim 1, element 4); 1818:4-1819:1 and 1820:20-1821:9 (claim 17).) Finjan did not provide any substantial evidence Braswell was missing any claimed element. Accordingly, the

---

[22] The Court sustained an objection to Dr. Hicks' testimony providing further details how claim 10's requirements were met through determining whether the downloadable contains executable code or not. (Dkt. 431 at 1646:16-24 (objection at 1647:3-5).) Blue Coat respectfully submits that this objection was in error—because claim 10 depends on claim 9 and provides further detail to claim clement 9(E)'s detection indicator element, there is nothing objectionable to making reference to claim clement 9(E)'s detection indicator element when discussing how claim 10 is anticipated.

[23] Blue Coat's motion to amend findings under FED. R. CIV. P. 52(b) is filed concurrently hereto which includes motion to amend the finding regarding the priority date of the '731 patent.

jury's verdict that the asserted claims of the '731 patent are not invalid is against the clear weight of evidence.

'968 Patent: Blue Coat proved by clear and convincing evidence that claim 1 of the '968 patent is anticipated by U.S. Patent No. 6,772,214 ("McClain") (DDX 1042). Blue Coat's expert, Dr. Necula, specifically shows how McClain discloses all the elements of claim 1. (*See, e.g.*, Dkt. 433 at 1796:16-1799:12 (claim 1, element 1); 1799:16-1801:7 (claim 1, element 2); 1801:10-1803:5 (claim 1, element 3).) Finjan did not provide any substantial evidence that Ji was missing any claimed element. Accordingly, the jury's verdict that the asserted claim of the '968 patent are not invalid is against the clear weight of evidence.

'780 Patent: Blue Coat proved that claims 9 and 13 of the '780 patent are anticipated by U.S. Patent No. 5,815,709 ("Waldo") (DDX 1029). Blue Coat's expert, Dr. Necula, presented clear and convincing evidence that the asserted claims are not new by showing in great detail how Waldo disclosed all the elements found in the asserted claims. (*See, e.g.*, Dkt. 431 at 1721:22-1723:1 and 1723:14-22 (claim 9, element 1); Dkt. 433 at 1824:21-1826:10 (claim 9, element 1); 1826:13-1827:24 (claim 9, element 2); 1827:25-1828:18 (claim 13).) Finjan did not provide any substantial evidence Waldo was missing any claimed element. Accordingly, the jury's verdict that the asserted claims of the '780 patent are not invalid is against the clear weight of evidence.

In addition, a new trial is further warranted because the jury instructions on the dates of the inventions for the asserted claims of the '844 and '731 patents were confusing to the jury and highly prejudicial to Blue Coat. (Dkt. 437 at 36-37; Dkt. 434 at 2002:24-2008:7.) The jury was asked to determine the invention dates of the '844 and '731 patents. But regardless of the determination of such dates, the jury was also asked to determine whether the same asserted claims of the same patents are invalid or not. Indeed, the Court has ruled after the jury verdict that the invention date for the '844 patent is not earlier than December 22, 1997, which is contrary to what the jury found.[24] (*Compare* Dkt. 486 at 3:11-7:3 *with* Dkt. 438 at 4 (finding invention date

_____

[24] Blue Coat also contends that the invention date of the '731 patent is not earlier than May 3, 2004, contrary to what the jury and the Court found. (*See* Blue Coat's Motion to Amend Findings Pursuant to Fed. R. Civ. P. 52(b) filed concurrently hereto.)

of the '844 patent to be November 8, 1996).)  Consequently, it is not clear whether the jury found the '844 patent to be invalid because the jury believed that the prior art introduced by Blue Coat— Abadi—is dated after November 8, 1996.  (*See* Dkt. 437 at 36 ("However, prior art does not include a publication that describes the inventor's own work and was published less than one year before the date of invention."); Dkt. 434 at 2003:5-7.)  Accordingly, because the jury instructions on the dates of the invention for the asserted claims of the '844 and '731 patents were confusing to the jury and highly prejudicial to Blue Coat, a new trial is warranted.  *See, e.g.*, *Wordtech*, 609 F.3d at 1315 ("However, because the jury instructions were plainly erroneous, we conclude that the proceedings rested on 'a mistake of law' that warrants retrial.") (citation omitted); *Ericsson*, 773 F.3d at 1235 (vacating the jury's damages award due to legal error in the jury instructions); *Lucent Techs.*, 509 F. Supp. 2d at 928 (granting a new trial due to erroneous jury instructions).

## F.  Finjan's Closing Arguments Were Highly Prejudicial And Confused The Jury And Warrant A New Trial.

Finjan made several improper statements in closing arguments that were highly prejudicial and confusing to the jury.  First, as discussed in Blue Coat's JMOL Motion, for the first time in closing arguments, Finjan's counsel requested the jury to award $24 million in damages for the '844 patent without any factual or legal basis.  (Dkt. 434 at 2084:6-2085:6.)  Second, Finjan's counsel questioned the credibility of Blue Coat's witnesses by giving his own personal opinion that he did not believe them.  (*See, e.g.*, *id.* at 2057:6-7 ("I didn't believe him either.  I didn't.  I didn't think he was credible.") (referring to Blue Coat's expert, Dr. Bestavros); 2057:19 ("I didn't believe Dr. Bestavros."); 2058:5 ("I didn't believe him.").)  Such statements are not only highly prejudicial, it is improper under Rule 3.4(e) of the  Model Rules of Professional Conduct, which states that "a lawyer shall not . . . in trial . . . state a personal opinion as to . . . the credibility of a witness . . ."

Accordingly, because Finjan's counsel's statement at closing arguments were highly improper, a new trial is warranted.[25]  *Whitserve*, 694 F.3d at 34 n. 18 ("Because there are separate

---

[25] Further, Blue Coat was denied its right to cross-examine Finjan's witness, Mr. Chaperot, after the Court sustained Finjan's objection to inquiry as to Finjan's past licenses.  (Dkt. 426 at 903:14-15, 911:11-912:3.)  *See Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 559 (6th Cir.
(continued...)

grounds for remand, we do not decide whether the trial court's correcting statements, which did not clearly indicate that WhitServe was not entitled to 'compensation' for 'four years of hell,' were sufficient to prevent undue prejudice to CPi from this impermissible argument. On remand, we trust that the trial court will ensure such blatantly improper statements are not repeated."); *Intellectual Ventures I, LLC v. Canon Inc.*, No. 11-792-SLR, 2015 U.S. Dist. LEXIS 64465 (D. Del. May 18, 2015) (granting a new trial on infringement because "counsel improperly played the role of expert witness by inferring from factual testimony that the accused devices do not meet the claim limitations.").

## II.    MOTION TO AMEND JUDGMENT

FED. R. CIV. P. 59(e) provides that a party may file a motion to alter or amend a judgment. In the Ninth Circuit, a Rule 59(e) motion may be granted if: (1) the motion is necessary to correct manifest errors of law or fact upon which the appealable order is based; (2) the moving party presents newly discovered or previously unavailable evidence; (3) the motion is necessary to prevent manifest injustice; or (4) there is an intervening change of law. *Aevoe Corp. v. AE Tech. Co.*, 727 F.3d 1375, 1378-79 (Fed. Cir. 2013) (citing *Turner v. Burlington N. Santa Fe R. Co.*, 338 F.3d 1058, 1063 (9th Cir.2003)). The district court enjoys considerable discretion in granting or denying the motion. *IPVX Patent Holdings, Inc. v. Voxernet LLC*, No. 5:13-cv-01708 HRL, 2014 U.S. Dist. LEXIS 158037, *4 (N.D. Cal. Nov. 6, 2014) (citing *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999)).

### A.    The Judgment Needs Clarification.

Blue Coat asks for clarification of the judgment. As an initial matter, this Court did not specify the relief awarded to Finjan in the judgment document ("Judgment"). (Dkt. 487.) A judgment should be self-contained document, stating "who has won and what relief has been

---

(...continued from previous page)

2004); *McCandless v. United States*, 298 U.S. 342, 347-48 (1936) ("[A]n erroneous ruling which relates to substantial rights of a party is ground for reversal unless it *affirmatively* appears from the whole record that it was not prejudicial.") (emphasis in original). Also, evidentiary rulings, such as on infringement issues and offer of proof prejudiced substantial rights of Blue Coat. (*See, e.g.*, Dkt. 405 at 209:20-239:1; Dkt. 407 at 446:19-451:2; Dkt. 426 at 683:8-708:24; Dkt. 427 at 974:2-23, 975:9-977:25, 978:11-15, 979:9-15, 1118:2-16, 1122:25-1125:15, 1141:2-9; Dkt. 430 at 1396:8-1399:3; Dkt. 433 at 1865:11-1866:6; Dkt. 367; Dkt. 378.)

awarded." *Otis v. City of Chicago*, 29 F.3d 1159, 1163 (7th Cir. 1994). "A judgment needs to do more than just say that some petition or motion has been granted; it must provide the relief to which the victor is entitled." *Johnson v. Acevedo,* 572 F.3d 398, 400 (7th Cir. 2009).

The Judgment states: "It is so ordered and adjudged that pursuant to the jury verdict filed on August 4, 2015 (ECF No. 438) and the Court's order regarding non-jury legal issues filed on November 20, 2015 (ECF No. 486), judgment is entered in favor of Plaintiff." (Dkt. 487.) The Court's use of "pursuant to" is unclear as to whether the Court is incorporating by reference the verdict form and adopting the relief in the verdict form. The fact that "pursuant" is used in the context of both the jury verdict and the Court's order regarding non-jury legal issues ("Order") implies that the documents are not to be incorporated into the Judgment because the order contains the Court's reasons and opinions. Rutter Group Prac. Guide Fed. Civ. Trials & Ev. Ch. 18-B ("An order that clearly constitutes a final decision and does not contain the court's opinion (*i.e.*, a statement of reasons for the judgment) satisfies Rule 58.").

Notwithstanding whether the Order and verdict are incorporated into the Judgment, the Court must clarify the Judgment because these documents contradict each other. Question 1 of the verdict asks the jury to identify which claims of the asserted patents Blue Coat's products literally infringe. (Dkt. 438, Verdict Form at 2.) The jury marked "yes" for all the asserted claims of the '844, '731, '968, and '780 patents. The verdict form then states, "For each claim you did not find to be literally infringed, answer Question 2." Question 2 asks the jury to identify which claims of the asserted patents Blue Coat's products infringe under the doctrine of equivalents. (*Id.* at 3.) This question should have only been answered regarding the patents that were not found to be literally infringed, *i.e.*, the '822 and '633 patents. Instead, the jury found infringement under the doctrine of equivalents for the '844, '968, and '780 patents. Therefore, the verdict form is unclear as to whether these patents were infringed under literal infringement or doctrine of equivalents.

While the Court attempts to explain the inconsistency in its Order, the Judgment does not reflect the resolution of the doctrine of equivalents issue regarding the '844, '968, and '780 patents. (Dkt. 486 at 12 ("The jury found that these patents were literally infringed by the accused products

and were instructed not to consider whether these patents were also infringed under the doctrine of equivalents. As a result, the jury verdict with respect to the doctrine of equivalents of the '844, '968, '780 patents is surplusage and not necessary for the resolution of this action. Accordingly, the Court declines to issue an opinion on issues that are not necessary to the resolution of this action.").) Although this Court found that the doctrine of equivalents issue "not necessary" for the resolution of the case, uncertainty still exists as to whether Finjan has prevailed on the doctrine of equivalents with regards to these patents. To be consistent with the Court's Order, Blue Coat requests an amendment to the Judgment stating that the infringement by the doctrine of equivalents is moot for the '844, '968, '780 patents and Finjan is not entitled to any relief under the doctrine of equivalents for these patents. This is especially important in the likely event the parties appeal to the Federal Circuit, the record is clear as to what theories of infringement the appellate court must review. *See Jang v. Boston Sci. Corp.*, 532 F.3d 1330, 1335 (Fed. Cir. 2008) ("The Supreme Court has recognized the authority to remand for clarification judgments that suffer from ambiguity, particularly when the ambiguity implicates jurisdictional concerns. . . . The Courts of Appeals in general and our court in particular have recognized that a remand for clarification is appropriate where a judgment is ambiguous.").

Therefore, subject to the Court's ruling on Blue Coat's JMOL, Blue Coat requests that the Court amend its Judgment to explicitly state within the document what issues Finjan has won and the relief that Finjan is entitled to receive.

**B.** **In The Alternative, A Judgment As A Matter Of Law That There Is No Infringement Under The Doctrine Of Equivalents For The '844, '968, And '780 Patents Should Be Entered.**[26]

'844 Patent: Finjan did not prove infringement under the doctrine of equivalents for the asserted claims of the '844 patent. ***First***, with regards to the "Downloadable security profile that identifies suspicious code" limitation, Finjan's expert, Dr. Cole testified that WebPulse functioned

---

[26] Blue Coat also contends that the '844, '968, and '780 patents are not literally infringed. *See* Section I.D *supra* and Blue Coat's JMOL Motion filed concurrently hereto. Blue Coat also contends that prosecution history estoppel applies to these patents. (*See* Blue Coat's Motion to Amend Findings Pursuant to FED. R. CIV. P. 52(b).)

in the "**exact same**" way (Dkt. 407 at 513:5-25), functioned "**the same way**" (*id.* at 514:1-18), and yielded in "**the same result**" (*id.* at 514:19-515:4). Indeed Dr. Cole provided no testimony that this limitation is not literally present in the accused WebPulse. *See Johnson*, 885 F.2d at 1577-78 (for literal infringement, the patentee must prove that "every limitation set forth in a claim must be found in an accused product or process *exactly*.") (emphasis added). Dr. Cole's testimony speaks only to literal infringement, not doctrine of equivalents, and Finjan failed to satisfy the three prongs of the test for the doctrine of equivalents. *See, e.g.*, *Mustek Sys., Inc.*, 340 F.3d at 1322-23; *Interwoven*, 2013 WL 3786633, at *5-6; *Rambus*, 2008 WL 5411564, at *2.

Finjan also failed to proffer particularized testimony linking WebPulse's function, way, and result to the "Downloadable security profile that identifies suspicious code" limitation, as required by the Federal Circuit. *See AquaTex Indus., Inc.*, 479 F.3d at 1328-29 (to prove doctrine of equivalents patentee must "provide particularized testimony and linking argument on a limitation-by-limitation basis"). Dr. Cole merely conclusorily stated that the function-way-result is met. (Dkt. 407 at 513:5-25, 514:1-18, 514:19-515:4.) This is not sufficient to prove doctrine of equivalents. *See Rambus Inc.*, 2008 WL 5411564, at *2 ("Mr. Murphy does not compare or explain the equivalence between any particular feature and a limitation of an asserted patent claim.").

**Second**, Finjan did not prove that the limitation "linking . . . the first Downloadable security profile to the Downloadable *before a web server makes the Downloadable available to web clients*" is met under the doctrine of equivalents. Indeed, Finjan provided no evidence that the phrase "before a web server makes the Downloadable available to web clients" found in the limitation is met under the doctrine of equivalents. Although Dr. Cole opined that the "linking by the inspector the first Downloadable security profile to the Downloadable before a web server makes the Downloadable available to web clients" limitation is met under the function-way-result test, Dr. Cole only opinioned on the first part of the limitation—namely "linking by the inspector the first Downlaodable security profile to the Downlaodable." (*See, e.g.*, Dkt. 407 at 515:17-24, 527:21-529:15.) Dr. Cole's opinion completely omitted the latter phrase of the limitation— "before a web server makes the Downloadable available to web clients." As such, Finjan's

evidence of doctrine of equivalents with regards to the "linking . . ." limitation is incomplete and cannot support the jury verdict that the asserted claims are infringed under the doctrine of equivalents. *See, e.g.*, *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 29 (1997) ("It is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety."); *Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317, 1321 (Fed. Cir. 2002) (stating that the patentee "cannot escape application of the all-limitations rule by recharacterizing its claim so as to ignore a material limitation."); *Dolly, Inc. v. Spalding & Evenflo Co.*, 16 F.3d 394, 398 (Fed. Cir. 1994) ("The doctrine of equivalents is not a license to ignore claim limitations.").

In addition, Finjan failed to proffer particularized testimony linking the accused products' function, way, and result to the "linking . . ." limitation, as required by the Federal Circuit. *See AquaTex Indus.*, 479 F.3d at 1328-29. Dr. Mitzenmacher merely conclusorily stated that the function-way-result is met. (*See, e.g.*, Dkt. 407 at 515:17-24, 527:21-529:15.) This is not sufficient to prove doctrine of equivalents. *See Rambus Inc.*, 2008 WL 5411564, at *2. Accordingly, the doctrine of equivalents infringement verdict with regards to the '844 patent is not supported by substantial evidence and a judgment of non-infringement should be entered as a matter of law. In the alternative, a new trial is warranted.

'968 Patent: Finjan did not prove infringement under the doctrine of equivalents for the '968 patent. Finjan alleged that the following limitation found in the asserted claim 1 of the '968 patent was met by doctrine of equivalents: "a memory storing a cache of digital content, a plurality of policies, and a policy index to the cache contents, the policy index including entries that relate cache content and policies by indicating cache content that is known to be allowable relative to a given policy, for each of a plurality of policies." Similar to the '844 patent, Finjan failed to proffer particularized testimony linking the accused products' function, way, and result to the limitation, as required by the Federal Circuit. *See AquaTex Indus.*, 479 F.3d at 1328-29. Dr. Mitzenmacher merely conclusorily stated that the function-way-result is met. (*See, e.g.*, Dkt. 426 at 833:5-834:6; 834:7-17, 834:18-835:23.) This is not sufficient to prove doctrine of equivalents.

1  *See Rambus Inc.*, 2008 WL 5411564, at *2. Accordingly, the doctrine of equivalents infringement

2  verdict with regards to the '968 patent is not supported by substantial evidence and a judgment of

3  non-infringement should be entered as a matter of law. In the alternative, a new trial is warranted.

4       '780 Patent: Finjan did not prove infringement under the doctrine of equivalents for

5  the '780 patent. Finjan alleged that the following limitation found in the asserted claims 9 and 13

6  of the '780 patent are met under the doctrine of equivalents: "an ID generator coupled to the

7  communications engine that fetches at least one software component identified by the one or more

8  references, and for performing a hashing function on the Downloadable and the fetched software

9  components to generate a Downloadable ID." But Finjan provided no evidence that the phrase "an

10  ID generator coupled to the communications engine that fetches at least one software component

11  identified by the one or more references" found in the limitation is met under the doctrine of

12  equivalents. Although Dr. Mitzenmacher opined that the "performing a hashing function on the

13  Downloadable and the fetched software components to generate a Downloadable ID" limitation is

14  met under the function-way-result test (which was improperly conclusory as discussed below), this

15  is only a part of the whole limitation. (*See, e.g.*, Dkt. 426 at 855:17-857:13.) Dr. Mitzenmacher

16  opinion completely omitted the phrase "an ID generator coupled to the communications engine

17  that fetches at least one software component identified by the one or more references " found in

18  the limitation. As such, Finjan's evidence of doctrine of equivalents with regards to the "an ID

19  generator . . ." limitation is incomplete and cannot support the jury verdict that the asserted claims

20  are infringed under the doctrine of equivalents. *See, e.g., Warner-Jenkinson*, 520 U.S. at 29;

21  *Cooper Cameron Corp..*, 291 F.3d at 1321; *Dolly, Inc.*, 16 F.3d at 398.

22       In addition, Finjan failed to proffer particularized testimony linking the accused products'

23  function, way, and result to the limitation, as required by the Federal Circuit. *See AquaTex Indus.*,

24  479 F.3d at 1328-29. Dr. Mitzenmacher merely conclusorily stated that the function-way-result is

25  met. (*See, e.g.*, Dkt. 426 at 855:17-857:13.) This is not sufficient to prove doctrine of equivalents.

26  *See Rambus Inc.*, 2008 WL 5411564, at *2. Accordingly, the doctrine of equivalents infringement

27  verdict with regards to the '780 patent is not supported by substantial evidence and a judgment of

28  non-infringement should be entered as a matter of law. In the alternative, a new trial is warranted.

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

DATED:   December 18, 2015       By:   _/s/ Olivia M. Kim_
                                       EDWARD G. POPLAWSKI
                                       OLIVIA M. KIM
                                       BRIAN LAM
                                       S. FERRELL ALMAN, JR.
                                       VERA M. ELSON
                                       CHRISTOPHER MAYS

                                       Counsel for Defendant
                                       BLUE COAT SYSTEMS, INC.