1  EDWARD G. POPLAWSKI (State Bar No. 113590)
   epoplawski@wsgr.com
2  OLIVIA M. KIM (State Bar No. 228382)
   okim@wsgr.com
3  BRIAN LAM (State Bar No. 272624)
   blam@wsgr.com
4  S. FERRELL ALMAN, JR. (State Bar No. 287746)
5  falman@wsgr.com
   WILSON SONSINI GOODRICH & ROSATI
6  Professional Corporation
7  633 West Fifth Street, Suite 1550
   Los Angeles, CA 90071
8  Telephone: (323) 210-2900
   Facsimile: (866) 974-7329
9
   VERA M. ELSON (State Bar No. 156327)
10 velson@wsgr.com
   CHRISTOPHER D. MAYS (State Bar No. 266510)
11 cmays@wsgr.com
   WILSON SONSINI GOODRICH & ROSATI
12 Professional Corporation
13 650 Page Mill Road
   Palo Alto, CA 94304
14 Telephone: (650) 493-9300
   Facsimile: (650) 493-6811
15
   Counsel for Defendant
16 BLUE COAT SYSTEMS, INC

17                 IN THE UNITED STATES DISTRICT COURT

                FOR THE NORTHERN DISTRICT OF CALIFORNIA
18
                            SAN JOSE DIVISION
19

20 | FINJAN, INC., a Delaware Corporation, | ) | CASE NO.: 13-cv-03999-BLF-PSG |
|---|---|---|
| Plaintiff, | ) ) | **DEFENDANT BLUE COAT** |
| v. | ) ) | **SYSTEMS, INC.'S MOTION TO AMEND FINDINGS AND** |
| BLUE COAT SYSTEMS, INC., a Delaware Corporation, | ) ) ) | **JUDGMENT PURSUANT TO FED. R. CIV. P. 52(b)** |
| Defendant. | ) ) ) ) ) | Date: April 28, 2016
Time: 9 a.m.
Place: Courtroom 3, 5th Floor
Before: Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................. - 1 -

RELIEF REQUESTED .......................................................................................................... - 1 -

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ - 1 -

I. INTRODUCTION ..................................................................................................... - 1 -

II. LEGAL STANDARD ................................................................................................ - 2 -

III. THE FINDINGS RELATING TO THE '731 PATENT PRIORITY DATE SHOULD BE AMENDED ............................................................................................. - 2 -

IV. THE FINDING RELATING TO THE '633 PATENT PROSECUTION HISTORY ESTOPPEL SHOULD BE AMENDED ..................................................... - 5 -

V. THE FINDINGS RELATING TO PATENT ELIGIBILITY OF THE '844 PATENT UNDER 35 U.S.C. § 101 SHOULD BE AMENDED ................................. - 7 -

VI. THE FINDINGS RELATING TO LACHES SHOULD BE AMENDED ................... - 8 -

VII. CONCLUSION ........................................................................................................ - 11 -

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Biogen Idec. Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090 (Fed. Cir. 2013) ................................. 4

*Canton Bio-Med., Inc. v. Integrated Liner Tech., Inc.*, 216 F.3d 1367 (Fed. Cir. 2000) ................................................................................................................................. 7

*Cephalon, Inc. v. Watson Pharms., Inc.*, 707 F.3d 1330 (Fed. Cir. 2013) ....................................... 4

*Computer Docketing Stations Corp. v. Dell, Inc.*, 519 F.3d 1366 (Fed. Cir. 2008) ......................... 4

*Dragon Intellectual Prop., LLC v. AT&T Servs.*, No. 13-2058-RGA, 2015 U.S. Dist. LEXIS 119506 (D. Del. Sept. 9, 2015) ......................................................... 6, 7

*Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354 (Fed. Cir. 2006) ................. 2, 5, 7, 8

*GPNE Corp. v. Apple, Inc.*, No. 12-CV-02885-LHK, 2013 U.S. Dist. LEXIS 116647 (N.D. Cal. Aug. 13, 2013) .......................................................................... 6

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, No. 201301564, 2015 U.S. App. LEXIS 16621 (Fed. Cir. Sept. 18, 2015) ................... 3, 5, 7, 9

*SK Hynix Inc. v. Rambus Inc.*, No. C-00-20908 RMW, 2013 U.S. Dist. LEXIS 66554 (N.D. Cal. May 8, 2013) ............................................................... 2, 3, 5, 7, 9

*Summit6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283 (Fed. Cir. 2015) ........................................... 9

*Tegal Corp. v. Tokyo Electron Am., Inc.*, 257 F.3d 1331 (Fed. Cir. 2001) ...................................... 6

*Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295 (Fed. Cir. 2007) .......................... 6

*Wanlass v. Gen. Elec. Co.*, 148 F.3d 1334 (Fed. Cir. 1998) ..................................................... 10, 11

### STATUTES

35 U.S.C. § 101 ......................................................................................................................... 2, 7, 8

### RULES

FED. R. CIV. P. 52(b) ............................................................................................................. 1, 2, 11

FED. R. CIV. P. 59(e) ......................................................................................................................... 5

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on April 28, 2016, or as soon thereafter as the matter may be heard by the Honorable Beth Labson Freeman in Courtroom 3, 5th Floor, United States District Court for the Northern District of California, 280 South 1st Street, San Jose, CA 95113, Defendant Blue Coat Systems, Inc. ("Blue Coat") shall and hereby does move the Court to amend findings set forth in the November 20, 2015 Order Regarding Non-Jury Legal Issues (Dkt. 486) under FED. R. CIV. P. 52(b), and to correspondingly amend the Court's Judgment (Dkt. 487). The motion is based on this notice of motion and supporting memorandum of points and authorities, and such other written or oral argument as may be presented at or before the time this motion is deemed submitted by the Court.

# RELIEF REQUESTED

Blue Coat seeks amendment of findings set forth in the November 20, 2015 Order Regarding Non-Jury Legal Issues (Dkt. 486) under FED. R. CIV. P. 52(b), and correspondingly to amend the Court's Judgment (Dkt. 487).[1]

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Blue Coat respectfully requests that the Court amend its findings, and the Judgment, in that the current findings are insufficient, lack specificity, and contain errors. First, the findings relating to the '731 patent priority date should be amended. The facts clearly reflect that Finjan made definite statements during the patent prosecution that "cache" must be discussed in order to disclose the concept of cache, regardless of whether prior art discloses storing of files. But in litigation, Finjan took a contrary position to the definite statement made—which the public relied on to understand the scope of the invention—in order to improperly obtain an earlier invention date.

---

[1] Blue Coat reserves its right to appeal issues relating to the Court's conclusions of law set forth in the November 20, 2015 Order Regarding Non-Jury Legal Issues (Dkt. 486).

Second, the findings relating to the '633 patent history estoppel should be amended. In particular, the Court erroneously found that the statements made during the prosecution of the '633 patent did not apply to the asserted claim. But the statements clearly and unequivocally referred to "the claimed invention," which applied to the invention as a whole—*i.e.*, applied to all claims. Further, the statements made during the patent prosecution unmistakably disavowed prior art system and clearly surrendered the subject matter found in prior art.

Third, the findings relating to patent eligibility of the '844 patent under 35 U.S.C. § 101 should be amended. The Court incorrectly found that the hypothetical claim from the Patent Office's Guidance is comparable to the asserted claims of the '844 patent. Notably, unlike the hypothetical claim, the '844 patent does not contain the words "malicious," "virus," "malware," or any cognates thereof. In addition, the Court's finding that the '844 patent does not raise any preemptive concerns is erroneous because there is no evidence of unclaimed alternative.

Lastly, because the extraordinary and egregious nature of Finjan's delay and prejudice to Blue Coat, the Court should amend its finding to find that laches bars Finjan from recovering damages beyond the date of the Court's entry of judgment.

## II. LEGAL STANDARD

FED. R. CIV. P. 52(b) states that "the court may amend its findings—or make additional findings—and may amend the judgment accordingly." "[A] party may move to amend the findings of fact even if the modified or additional findings in effect reverse the judgment. If the trial court has entered an erroneous judgment, it should correct it." *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1358 (Fed. Cir. 2006) (citation omitted). "Rule 52(b) motions are appropriately granted in order to correct manifest errors of law or fact or to address newly discovered evidence or controlling case law." *SK Hynix Inc. v. Rambus Inc.*, No. C-00-20908 RMW, 2013 U.S. Dist. LEXIS 66554, *64 (N.D. Cal. May 8, 2013) (citations omitted).

## III. THE FINDINGS RELATING TO THE '731 PATENT PRIORITY DATE SHOULD BE AMENDED

The Court found that: "Dr. Lyon testified that the '194 patent disclosed the concepts of 'cache' or 'caching.' Trial Tr. 1879:1-1880:8 and 1907:1-24. Dr. Lyon further opined that all of

the elements from claims 1 and 17 are disclosed in the '194 patent. *Id.* Dr. George Necula testified that the '194 patent did not disclose the concepts of 'cache' or 'caching.' *Id.* at 1822:24-1823:16. The Court finds Dr. Lyon's testimony to be credible." (Dkt. 486 at 8:19-23.) The Court also found that:

> With respect to Defendant's belief that Plaintiff's presentation during the prosecution of the '731 patent contradicts its position regarding the priority date of the '731 patent, the Court find Defendant's argument overgeneralizes Dr. David Lyon's testimony and the disclosure of the Ji patent. Dr. Lyon testified that the '667 and '337 [*sic*] applications disclose caching because they disclose "a memory [which] can be a cache." Trial Tr. 1879:17. Defendant's argument generalizes memory to include any storing of files and as a result argues that any storing of files must include a cache. Defendant then turns to the Ji patent and notes that it discloses "files stored on a disk drive" which Defendant generalizes to the storing of files and then argues that based on Plaintiff's position during prosecution, also disclose a cache. However, Defendant's argument fails because Defendant has provided no evidence that a memory and disk drive are co-extensive terms. Given that they are two different terms, the reasonable inference, in the absence of any evidence, is that these terms have different meanings.

(*Id.* at 9:15-27.) Blue Coat respectfully requests that these findings be amended to correct manifest factual errors. *See SK Hynix Inc.*, 2013 U.S. Dist. LEXIS 66554, at *64.

***First***, the statements made by Finjan during the prosecution of U.S. Patent No. 7,418,731 ("the '731 patent") supports a finding that Application No. 09/539,667 ("the '667 application") and Application No. 08/964,388 ("the '388 application") do not disclose any "cache" and thus, the priority date of the '731 patent cannot be any earlier than its filing date of May 3, 2004. The Court correctly found that: "During the prosecution of the '731 patent, in order to overcome prior art, Plaintiff argued that the prior art Ji reference did not disclose a 'security profile cache' because 'Ji provides no discussion of a security profile cache, or, for that matter, any cache at all.' Ex. 5 to Kim Decl. at FINJAN BC 000982, ECF 447-6." (Dkt. 486 at 8:24-28.) Similar to prior art Ji (U.S. Patent No. 5,983,348), which was distinguished by Finjan, neither the '667 nor the '388 applications disclose any cache at all.

1    At trial, Dr. Lyon testified that: "In fact, here on the slide I point out in these two
2 references JTX 2078 at page 23, this, I believe, is the provisional application which led to the '194
3 patent, that there is reference by the inventors to a system and the system comprises a memory that
4 ***stores*** known hostile downlodables, ***so there's a file cached***. A memory can be a cache." (Dkt.
5 433, 07/31/15 Trial Tr. at 1879:12-17, emphasis added.) Dr. Lyon's theory was that storing is
6 synonymous with caching. This is in direct contradiction to Finjan's own statements made to the
7 PTO in order to obtain its patent. Finjan had argued that there is no caching disclosed in Ji during
8 the prosecution of the '731 patent. Finjan's key argument was that Ji had "no discussion of a
9 security profile cache, or, for that matter, any cache at all." (Dkt. 486 at 8:24-28.) In other words,
10 because Ji did not discuss "cache," Finjan's argument was that caching was not disclosed. This
11 argument was made despite the fact that Ji disclosed "***files stored*** on a disk drive" (DDX 1036 at
12 4:60-62). But in litigation, Finjan's expert, Dr. Lyon took a contrary position, equating ***storing*** to
13 ***caching***. As such, whether the files are stored in memory or disk drives is irrelevant. It is the fact
14 that the files are ***stored*** that matters.

15    Accordingly, because Finjan had already distinguished that storing is different from
16 caching during the prosecution of the '731 patent, Finjan cannot now in litigation assert a theory
17 that is contrary to its public statement made in order to obtain a patent. *See, e.g.*, *Biogen Idec. Inc.*
18 *v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013) (statement made during the
19 prosecution history is "public notice" and the public relies "on definitive statements made during
20 prosecution."); *Computer Docketing Stations Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374-75 (Fed. Cir.
21 2008) (precluding "patentees from recapturing through claim interpretation specific meanings
22 [clearly and unmistakably] disclaimed during prosecution").

23    ***Second***, in light of Finjan's own statements made to the PTO during the prosecution of
24 the '731 patent, Dr. Lyon's testimony is unsupported and carries little weight in determining the
25 priority date for the '731 patent. *See, e.g.*, *Cephalon, Inc. v. Watson Pharms., Inc*., 707 F.3d 1330,
26 1338 (Fed. Cir. 2013) ("Despite the district court's finding according credibility to Dr. Mumper,
27 his testimony is largely unsupported, and therefore, carries little weight in this analysis."). As
28 such, the Court's finding that Dr. Lyon's testimony was credible should be amended.

As a result of these amendments to the findings, the Judgment should be corrected to hold that the priority date of the '731 patent cannot be any earlier than May 3, 2004. *See Golden Blount, Inc.*, 438 F.3d at 1358.

## IV. THE FINDING RELATING TO THE '633 PATENT PROSECUTION HISTORY ESTOPPEL SHOULD BE AMENDED

With regards to the patent prosecution history estoppel of the '633 patent, the Court found that:[2]

> In addressing the rejection of claim 30 (current claim 14), Plaintiff asserted that claim 14 "is neither shown nor suggested in Golan." *Id.* at FINJAN-BC 001271. Plaintiff did not reference its earlier general remarks. *Compare id.* at FINJAN-BC 001271 (addressing rejection of claim 30 without referencing earlier general remarks) *with id.* at FINJAN-BC 001270 (addressing rejection of claim 1 and referencing earlier general remarks).

(Dkt. 486 at 12:3-8.) The Court also found that: "With respect to the '633 patent, the Court agrees with Plaintiff and finds that it did not clearly and unmistakably surrender subject matter that it is now trying to recapture." (*Id.* at 12:24-25.) Blue Coat respectfully requests that these findings be amended to correct manifest factual errors. *See SK Hynix Inc.*, 2013 U.S. Dist. LEXIS 66554, at *64.

*First*, the Court's finding that the "general remarks" made about prior art Golan during the prosecution of the '633 patent did not apply to the pending claim 30 (later issued as the asserted claim 14). As the Court correctly found, Finjan distinguished Golan during the prosecution of the '633 from its pending claims as follows:

> ***In distinction with the claimed invention***, Golan does not describe the packaging of protection code. Instead, Golan discusses a

---

[2] Blue Coat also contends that prosecution history estoppel applies to the '844, '968, and '780 patents. But the Court found that "the jury verdict with respect to the doctrine of equivalents of the '844, '968 and '780 patents is surplusage and not necessary for the resolution of this action." (Dkt. 486 at 12:20-22.) As set forth in Blue Coat's Motion to Amend Judgment Pursuant to FED. R. CIV. P. 59(e), to the extent that the Court does not clarify the Judgment that Finjan takes nothing from the jury's surplusage verdict with respect to the doctrine of equivalents of the '844, '968 and '780 patents, Blue Coat moves for a judgment as a matter of law with regards to such verdict.

> situation whereby a security monitor is already resident on a client computer, as illustrated in FIGS. 2, 5 and 9 of Golan, without concerning itself as to how the security monitor was installed. In fact, prima facie the methodology of the claimed invention, of packaging mobile protection code with downloadable information, seems wasteful and counter-intuitive, since such protection code is typically re-transmitted to the client computer many times - in particular, each time a downloadable with executable code is downloaded.

(Dkt. 486 at 11:21-27, emphasis added.) Finjan's use of the language "*the claimed invention*" is unequivocal and clear, and does not limit the distinction to only some of the pending claims. In other words, Finjan made the distinction to the claimed invention as a whole, which applied to all then pending claims. *See, e.g., Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007) ("When a patent thus describes the features of the '*present invention*' as a whole, this description limits the scope of the invention.") (emphasis added); *Tegal Corp. v. Tokyo Electron Am., Inc.*, 257 F.3d 1331, 1343 (Fed. Cir. 2001) ("In the prosecution history, Tegal also distinguished over the Cotton reference by stating that 'the electrodes *claimed in the present invention* are not the same as those disclosed in Cotton,' which Tegal described as being spiked electrodes. Accordingly, the term 'electrode' must be construed so as not to cover a spiked electrode.") (emphasis added); *GPNE Corp. v. Apple, Inc.*, No. 12-CV-02885-LHK, 2013 U.S. Dist. LEXIS 116647, at *25 (N.D. Cal. Aug. 13, 2013) (finding statements such as "*this invention* pertains to . . ." in the specification as limiting) (emphasis added); *Dragon Intellectual Prop., LLC v. AT&T Servs.*, No. 13-2058-RGA, 2015 U.S. Dist. LEXIS 119506, at *12-13 (D. Del. Sept. 9, 2015) (finding that the prosecution history was "replete" with disclaimers, such as "*the instant invention as claimed* is further distinguished . . .") (emphasis added). Therefore, the Court should amend the finding to find that the statement made by Finjan during the prosecution of the '633 patent distinguishing Golan applied to all pending claims, including original claim 30 which issued as the asserted claim 14.

***Second***, Finjan clearly and unmistakably surrendered subject matter that it is now trying to recapture during the prosecution of the '633 patent—namely that the claimed invention requires (1) ***packaging*** of protection code; (2) ***transmitting*** the protection code to the client computer; and (3) packaging and transmitting ***each time*** a downloadable with executable code is downloaded. (*See*

Dkt. 486 at 11:21-27.) In other words, Finjan clearly disavowed prior art system that had a security monitor that is already resident on a client computer as found in Golan. (*Id.*) In determining argument-based estoppel, the Federal Circuit found that "amendment is not essential when argument is made, and relied on, to ***distinguish*** the claimed subject matter from the prior art." *Canton Bio-Med., Inc. v. Integrated Liner Tech., Inc.*, 216 F.3d 1367, 1371 (Fed. Cir. 2000) (finding that arguments made to distinguish prior art give rise to estoppel) (emphasis added) (citations omitted). Here, Finjan had clearly distinguished the claimed invention against Golan in order to obtain its patent, informing the public as to what is not included in its alleged invention. Accordingly, the Court's finding should be amended to find that Finjan clearly and unmistakably surrendered subject matter that it is now trying to recapture.

As a result of these amendments to the findings, the Judgment should be corrected to hold that there is no infringement under the doctrine of equivalents for the '633 patent. *See Golden Blount, Inc.*, 438 F.3d at 1358.

## V. THE FINDINGS RELATING TO PATENT ELIGIBILITY OF THE '844 PATENT UNDER 35 U.S.C. § 101 SHOULD BE AMENDED

Blue Coat respectfully requests that the following findings relating to patent eligibility of U.S. Patent No. 6,154,844 ("the '844 patent") under § 101 be amended to correct manifest factual errors. *See SK Hynix Inc.*, 2013 U.S. Dist. LEXIS 66554, at *64.

***First***, the Court found that:

> [T]he claim at issue to be similar to the hypothetical claim in the Patent Office's guidance. See "2014 Interim Guidance on Patent Subject Matter Eligibility (Interim Eligibility Guidance) for USPTO personnel to use when determining subject matter eligibility under 35 U.S.C. § 101 in view of recent decisions by the U.S. Supreme Court, including Alice Corp., Myriad, and Mayo", *available at* www.uspto.gov/patent/laws-and-regulations/examination-policy (last visited November 9, 2015) (hereinafter "Patent Office's Guidance)."

(Dkt. 486 at 16:7-12.) However, the claim in the Patent Office's Guidance relied on by Finjan is ***hypothetical***; thus, it has no accompanying specification to indicate what the hypothetical patentee might have conceded was already known and therefore not a potential inventive concept. This is

contrary to what is found in the specification of the '844 patent. (*See* Dkt. 473-3, Blue Coat's Proposed Findings and Conclusions of Law at ¶¶ 80-161.) Further, the Patent Office's Guidance states that the PTO applies a different standard than a District Court to interpret claims—namely, the PTO uses the "broadest reasonable interpretation." Notably, unlike the hypothetical claim of the Patent Office's Guidance, none of the asserted claims of the '844 patent contain the words "malicious," "virus," "malware," or any cognates thereof. Accordingly, the Court should find that the hypothetical claim in the Patent Office's Guidance is not comparable to the asserted claims of the '844 patent.

***Second***, the Court found that: "The Court agrees with Plaintiff and finds that the '844 patent has important and specific limitations about providing pro-active protection. These limitations provide meaningful boundaries on the invention and thus, the '844 patent does not raise preemption concerns." (Dkt. 486 at 17:25-28.) However, the only example Finjan offered of an unclaimed alternative was of the use of "floppy disks." (*See, e.g.*, Dkt. 451-4, Finjan's Opp. at 14:1-3.) But the specification of the '844 patent does not exclude the use of floppy disks. Rather, the specification states that "[o]ne skilled in the art will also recognize that the programs and data may be received by and stored in the system in alternative ways. For example, [a variety of readers] may be coupled to the signal bus 310 for reading a **computer-readable storage medium (CRSM)** 375 **such as a magnetic disk**, a hard disk, a magneto-optical disk, RAM, **etc.**" from the scope of any claimed invention. (JTX 2001, the '844 patent at 6:56-65, emphasis added; *see also id.* at 7:30-40, 10:51-11:11.) Accordingly, the Court should amend its findings to find that the '844 patent raises serious preemption concerns.

As a result of these amendments to the findings, the judgment should be corrected to hold that the '844 patent is patent ineligible under § 101. *See Golden Blount, Inc.*, 438 F.3d at 1358.

## VI. THE FINDINGS RELATING TO LACHES SHOULD BE AMENDED

The Court found that the laches issues "will not affect any issue in this action" because Finjan "did not seek … an ongoing royalty." (Dkt. 486 at 20:11-15.) The Court also found that "[t]here was no evidence presented of extraordinary circumstances that would bar an ongoing

royalty." (*Id.* at 19:2-3.) Blue Coat respectfully requests that these findings be amended to correct manifest factual errors.[3] *See SK Hynix Inc.*, 2013 U.S. Dist. LEXIS 66554, *64.

***First***, the laches issue does have an effect on damages. Finjan's damages approach at trial confirmed that Finjan sought an ongoing royalty for the life of the patents reduced to a one-time lump sum payment. (*See* Dkt. 427, 7/27/15 Trial Tr. (Layne-Farrar) at 1105:3-1106:1, 1127:12-1127:16 ("But recall that these licenses were going to run until the end of the life of the patent. So I have to get ***forward looking revenues as well***, and so I had to use ***projected revenues for those up to the end date of that patent***, whichever patent it was.") (emphasis added).) Accordingly, the Court's finding should be amended to correctly reflect that the laches issue does indeed affect the damages issue because Finjan did seek an ongoing royalty, which was incorporated into the lump sum payment demanded at trial. *See Summit6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1300 (Fed. Cir. 2015) (affirming denial of ongoing royalties because the jury's award of lump sum compensated plaintiff for both past and future infringement through the life of the patent).

***Second***, there is evidence of extraordinary circumstances that would bar an ongoing royalty. Finjan's delay in filing suit against Blue Coat was unreasonable as a matter of law, caused economic and evidentiary prejudice to Blue Coat, and due to its extraordinary nature, should bar Finjan from recovering ongoing royalty damages.

The Federal Circuit has recently affirmed that laches "remains a viable defense to legal relief in patent law." *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, No. 201301564, 2015 U.S. App. LEXIS 16621, at *43 (Fed. Cir. Sept. 18, 2015). In addition, laches are to be taken into account in considering an injunction, and in egregious or extraordinary circumstances, laches will bar an ongoing royalty. *Id.* at *52-53. To establish the defense of

---

[3] The Court also found that "Defendant did not timely disclose a laches defense with respect to the '780 patent. Ex. 6 at 23-24, ECF 451-6." (Dkt. 486 at 18:20-21.) However, Blue Coat's disclosures during discovery made clear that Finjan was aware of the accused ProxySG product since at least 2002, which Finjan had included as an infringing product for the '780 patent. (*See, e.g.*, Dkt. 451-6, Ex. 6 to Kobialka Decl. at 24.) Because of this clear disclosure, Blue Coat had a good-faith and reasonable basis for pursuing a defense under the doctrine of laches for the '780 patent. Accordingly, Blue Coat requests that the Court amend the finding to find that Blue Coat timely disclosed a laches defense with respect to the '780 patent.

laches, a defendant must show by a preponderance of the evidence that (1) the plaintiff delayed filing suit for an unreasonable or an inexcusable length of time after the plaintiff knew or reasonably should have known of its claim against the defendant; and (2) the delay resulted in material prejudice or injury to the defendant. *Wanlass v. Gen. Elec. Co.*, 148 F.3d 1334, 1337 (Fed. Cir. 1998).

Finjan's unreasonable delay was egregious because Finjan knew or should have known that the accused products allegedly infringed Finjan's asserted patents from as early as 2004 to 2010 for its respective asserted patents. (Dkt. 473-3, Blue Coat's Proposed Findings and Conclusions of Law at ¶¶ 196-201.) Finjan, alleging to be Blue Coat's strategic partner since 2002, stayed quiet for at least 9 years before filing a lawsuit against Blue Coat. (*Id.* at ¶¶ 202-211.) Specifically, Finjan was aware of Blue Coat's accused ProxySG product at least as of 2002, and it continued to be aware of the ProxySG product by monitoring the market and Blue Coat's products. (*Id.* at ¶¶ 212-225.) Finjan was aware of the Blue Coat's accused ProxyAV products at least as of 2004, and it continued to be aware of the ProxyAV product by monitoring the market and Blue Coat's products. (*Id.* at ¶¶ 226-232.) Finjan was also aware of Blue Coat's accused WebPulse/WebFilter products at least as of 2005, and it continued to be aware of the WebPulse/WebFilter products by monitoring the market and Blue Coat's products. (*Id.* at ¶¶ 233-240.) Finjan believed that Blue Coat became an infringer from the moment it "launched products similar to what Finjan had invented," but Finjan delayed filing suit after it knew or should have known of the alleged infringement of each of its asserted patents. (*Id.* at ¶¶ 241-249.) Blue Coat had no notice of infringement prior to the filing of the lawsuit in August 2013. (*Id.* at ¶ 242.) During this delayed period, Blue Coat's allegedly infringing business and product lines continued and significantly expanded. (*Id.* at ¶¶ 250-261.)

Because of Finjan's delay in filing the lawsuit without any notice while Blue Coat's products expanded, it is much harder for Blue Coat to design around or change its products' direction and functionalities in order to ameliorate any damages. (*Id.* at ¶¶ 253-257.) Moreover, pertinent evidence and memory of key witnesses lost during the delayed period highly prejudiced Blue Coat from obtaining relevant evidence for its defenses. (*Id.* at ¶¶ 262-317.) Finjan did not

assert a claim of willfulness in this case, and it did not introduce evidence sufficient to show that Blue Coat was aware of any of the specific Finjan patents asserted in this case or that Blue Coat copied any of the specific Finjan patents asserted in this case. (*Id.* at ¶¶ 318-319.) Finjan also did not introduce evidence sufficient to establish that any Finjan products practiced the specific Finjan patents asserted in this case. (*Id.* at 318.)

Accordingly, the Court's findings should be amended so as to include the findings identified above that Blue Coat proposed in its Proposed Findings of Fact and Conclusions of Law. Further, in light of Finjan's activities in monitoring Blue Coat's business and products and Finjan's characterization of the parties as technology and business partners, the Court should find that Finjan cannot maintain that its negligent or willful obliviousness justifies escaping the application of the doctrine of laches. *See Wanlass*, 148 F.3d at 1338.

Because of the extraordinary and egregious nature of Finjan's delay and the prejudice to Blue Coat, the Court should amend its findings to find that laches bars Finjan from recovering damages beyond the date of the Court's entry of judgment. Further, the judgment should be amended accordingly.

**VII. CONCLUSION**

For the foregoing reasons, Blue Coat's Motion to Amend Findings and Judgment Pursuant to FED. R. CIV. P. 52(b) should be GRANTED.

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

DATED: December 18, 2015     By: */s/ Olivia M. Kim*
EDWARD G. POPLAWSKI
OLIVIA M. KIM
BRIAN LAM
S. FERRELL ALMAN, JR.
VERA M. ELSON
CHRISTOPHER MAYS

Counsel for Defendant
BLUE COAT SYSTEMS, INC.