EDWARD G. POPLAWSKI (State Bar No. 113590)
epoplawski@wsgr.com
OLIVIA M. KIM (State Bar No. 228382)
okim@wsgr.com
BRIAN LAM (State Bar No. 272624)
blam@wsgr.com
S. FERRELL ALMAN, JR. (State Bar No. 287746)
falman@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
Telephone:  (323) 210-2900
Facsimile:  (866) 974-7329

VERA M. ELSON (State Bar No. 156327)
velson@wsgr.com
CHRISTOPHER D. MAYS (State Bar No. 266510)
cmays@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304
Telephone:  (650) 493-9300
Facsimile:  (650) 493-6811

Counsel for Defendant
BLUE COAT SYSTEMS, INC

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>BLUE COAT SYSTEMS, INC., a Delaware Corporation,<br><br>          Defendant. | CASE NO.: 13-cv-03999-BLF-PSG<br><br>**DEFENDANT BLUE COAT SYSTEMS, INC.'S OPPOSITION TO PLAINTIFF FINJAN, INC.'S MOTION FOR ATTORNEYS' FEES PURSUANT TO FED. R. CIV. P. 54**<br><br>Date:  April 7, 2016<br>Time:  9 a.m.<br>Place:  Courtroom 3, 5th Floor<br>Before:  Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..............................................................................................1

II.   STATEMENT OF FACTS ...............................................................................2

III.  LEGAL STANDARD .......................................................................................5

IV.  FINJAN CANNOT MEET ITS BURDEN UNDER § 285 ...............................5

    A.    Finjan Has Not Shown That This Case Is Exceptional. ..........................5

    B.    Finjan's Theories Fail To Make This Case Exceptional. .......................6

        1.    Finjan's Untimeliness Complaint Does Not Merit A Fee Award. ..............7

            a.    Finjan Distorts The Record In Suggesting The Blue Coat's Withdrawal Of Defenses Following Finjan's Case-In-Chief Was In Any Way Improper—Much Less In Bad Faith...................7

            b.    The Cases Upon Which Finjan Relies Are Distinguishable. ..........9

        2.    Finjan Fails To Show That Blue Coat's Defenses Lacked Merit.............10

            a.    Finjan Fails To Show That Blue Coat's Obviousness Defense Lacked Merit. ............................................11

            b.    Finjan Fails To Show That Blue Coat's Written Description Defense Lacked Merit. ............................................13

            c.    Finjan Fails To Show That Blue Coat's Anticipation Defense Lacked Merit. ............................................14

            d.    Finjan Fails To Show That Blue Coat's Non-Infringement Defense As To The '844 Lacked Merit.........................14

            e.    Finjan's Cases Are Irrelevant To The Merits Of Blue Coat's Defenses. ............................................16

    C.    Blue Coat's Laches And PHE Defenses Were Not Frivolous...............17

        1.    Finjan's Argument That Blue Coat's Laches And PHE Defenses Were Untimely Is Inconsistent With The Record. ...................17

        2.    Blue Coat's Latches Defense Was Relevant And Properly Brought. .......17

        3.    Blue Coat's PHE Defenses Were Not Frivolous....................................19

    D.    Finjan's Residual Points Are Also Irrelevant........................................20

1

E.   Finjan's Requested Fees Are Unreasonable ......................................................... 21

2

1.   Finjan Has Failed To Meet Its Burden Of Proving Any Relation To The Extent Of The Alleged Misconduct. ................................................. 21

3

4

2.   It Is Finjan That Fails To Address The Totality Of The Circumstances. ....................................................................................... 23

5

V.   SANCTIONS UNDER THE COURT'S INHERRENT POWER ARE NOT

6

APPROPRIATE ................................................................................................................ 24

7

VI.   CONCLUSION ................................................................................................................ 25

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adaptix, Inc. v. Apple, Inc.*, No. 5:13-cv-01776-PSG, 2015 U.S. Dist. LEXIS 117275 (N.D. Cal. Sept. 2, 2015)....................................................................7

*AngioScore, Inc. v. TriReme Med., Inc.*, No. 12-cv-03393-YGR, 2015 U.S. Dist. LEXIS 165190 (N.D. Cal. Dec. 9, 2015) .......................................................6

*AntiCancer, Inc. v. Pfizer, Inc.*, 769 F.3d 1323 (Fed. Cir. 2014)....................................24

*Ateliers De La Haute-Garonne v. Broetje Automation-USA Inc.*, 85 F. Supp. 3d 768 (D. Del. 2015)....................................................................................10, 15

*Cambrian Sci. Corp. v. Cox Comms., Inc.*, 79 F. Supp. 3d 1111 (C.D. Cal. 2015) .........................5

*France Telecom S.A. v. Marvell Semiconductor Inc.*, No. 12-CV-04967-WHO, 2015 U.S. Dist. LEXIS 93470 (N.D. Cal. July 17, 2015) ....................................16

*Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*, 790 F.3d 1369 (Fed. Cir. 2015)....................................................................................................5

*Gen Motors Corp. v. Devex Corp.*, 461 U.S. 648 (1983)................................................18

*Gerawan Farming, Inc. v. Rehrig Pac. Co.*, 2013 U.S. Dist. LEXIS 173279 (E.D. Cal. Dec. 10, 2013)....................................................................................21

*Homeland Housewares, LLC v. Sorensen Research & Dev. Trust*, No. CV 11-3720-GW, 2013 U.S. Dist. LEXIS 189078 (C.D. Cal. June 27, 2013) ....................11

*Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066 SI, 2014 U.S. Dist. LEXIS 112321 (N.D. Cal. Aug. 12, 2014)..................................................15, 16, 21

*Kreative Power, LLC v. Monoprice, Inc.*, No. 14-cv-02991-SI, 2015 U.S. Dist. LEXIS 57073 (N.D. Cal. Apr. 30, 2015) ....................................10, 12, 13, 14

*Logic Devices, Inc. v. Apple Inc.*, No. C-13-02943-WHA, 2014 U.S. Dist. LEXIS 168380 (N.D. Cal. Dec. 4, 2014) ....................................................................16

*Monsanto Co. v. E.I. Du Pont de Nemours & Co.*, 748 F.3d 1189 (Fed. Cir. 2014) ....................24

*Nilssen v. Osram Sylvania, Inc.*, 528 F.3d 1352 (Fed. Cir. 2008)....................................9

*O2 Micro Int'l v. Beyond Innovation Tech.*, 521 F.3d 1351 (Fed. Cir. 2008)....................3, 15

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (U.S. 2014) ....................................................................5, 6, 7, 10, 22

*Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644 (9th Cir.1997) ....................24

*Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081 (Fed. Cir. 2003) ........................................21, 22

*Roadway Express*, 447 U.S. at 767, 100 S. Ct. 2455 ................................................................24

*Romag Fasteners, Inc. v. Fossil, Inc.*, No. 3-10-cv-01827, 2014 U.S. Dist. LEXIS
        113061 (D. Conn. Aug. 14, 2014).......................................................................9, 10

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods.*, No. 2013-1564, 2015
        U.S. App. LEXIS 16621 (Fed. Cir. Sept. 18, 2015)......................................17, 18, 19

*SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344 (Fed. Cir. 2015).........................................6

*Sports Dimension, Inc.* v. *Coleman Co.*, No. CV 14-00438 BRO, slip op (C.D. Cal.
        June 4, 2015) ..............................................................................11, 12, 13, 14

*Stragent, LLC v. Intel Corp.*, No. 6:11-cv-421, 2014 U.S. Dist. LEXIS 169080
        (E.D. Tex. Aug. 6, 2014)..........................................................................6, 8

*Taltech Ltd. v. Esquel Enters.*, 609 F. Supp. 2d 1195 (W.D. Wash. 2009)......................................10

*Yagman v. Republic Ins.*, 987 F.2d 622 (9th Cir.1993) ................................................................24

## STATUTES

35 U.S.C. § 285 ..................................................................................1, 2, 5, 6, 10, 11

## RULES

FED. R. CIV. P. 50(b)..........................................................................................................20

FED. R. CIV. P. 52(c)..........................................................................................................10

FED. R. CIV. P. 54 ..........................................................................................................1, 22

1    Defendant Blue Coat System's Inc. ("Defendant" or "Blue Coat") submits herewith its

2   answering brief in opposition to Plaintiff Finjan, Inc.'s ("Plaintiff" or "Finjan") Notice of Motion

3   and Motion for Attorney's Fees Pursuant to FED. R. CIV. P. 54 ("Fee Motion") (Dkt. 492).[1]

## I.    INTRODUCTION

5    In essence, Finjan's motion argues that it: (i) prevailed on some of its claims at trial; (ii)

6   had to prepare for a week longer than it wished on a few select defenses with which Finjan

7   disagreed; and therefore (iii) is entitled to recover "at least" its entire $7.8 million in fees and

8   costs for the entire course of the litigation.[2]   However, the fact that Finjan subjectively disagreed

9   with Blue Coat's timely and fully-disclosed defenses does not come close to meeting its burden

10  of showing how and why those defenses were so *objectively baseless* as to be "exceptional"

11  under § 285.  Even assuming *arguendo* that there was any "exceptional" conduct, Finjan makes

12  no effort to relate the specific instances of alleged late-stage litigation misconduct to the sum

13  total of its fees and costs for over two years of litigation—a position that in and of itself is

14  contrary to controlling authority.

15    The correct inquiry is for the Court to evaluate whether the complained-of defenses were

16  so frivolous or objectively baseless as to be "exceptional."  Finjan weaves in numerous irrelevant

17  factors since it cannot genuinely contest that Blue Coats defenses were well-supported and had

18  merit.  When those irrelevant factors are stripped away, Finjan's only real attack on the actual

19  merits of Blue Coat's defenses is to string-cite to portions of its own experts' reports that respond

20  to Blue Coat's defenses.   The fact that Finjan and its experts disagreed with Blue Coat's

21  defenses, and devoted some portion of their expert reports to contesting those defenses, does not

22  render them meritless, much less "exceptional."  To merely argue, as Finjan does, that Blue

23  Coat's anticipation defense must meet a "high burden," fails to demonstrate how or why the

---

24  [1] Finjan violated the 10-page limit set forth in the Court's Standing Order Re Civil Cases.
25  Accordingly, Blue Coat files concurrently a motion to strike Finjan's motion for failure to
    comply with the Standing Order.  Because Finjan filed a motion with more than 10 pages, Blue
26  Coat is unable to respond within the 10 page-limit and thus, files this opposition with more than
27  10 pages.

28  [2] To the extent any of Finjan's requested fees are revealed to be duplicative with any costs
    demanded through its Bill of Costs (Dkt. 490), Blue Coat reserves the right to address this.

defense as to any one patent somehow lacked merit—which it did not.  That there was a battle of the experts at trial is hardly exceptional.  And the fact that Blue Coat presented (or chose not to present) a defense at trial does not obviate the fact that each of Blue Coat's defenses survived the Court's multi-staged gauntlet of claim construction, summary judgment motions, motions *in limine*, *Daubert* and Pretrial proceedings.  Indeed, Finjan moved for summary judgment of infringement on each of its patents.  Those motions were denied because the Court concluded that there were issues of fact appropriate for the jury to decide—including the "identifying suspicious code" dispute regarding the '844 patent of which Finjan now complains.  Significantly, Finjan never moved for summary judgment on the very invalidity defenses it now contends were completely baseless and frivolous, which belies its current allegations regarding the merits of those defenses.

Each one of the defenses of which Finjan complains was fully disclosed in the parties' Joint Pretrial Statement and Order.  Finjan had every opportunity to address the Court's treatment and staging of those defenses at the Pretrial Conference, including the understanding that there would likely be a subsequent bench trial.  Lastly, and in contrast with the cases upon which Finjan relies, here Finjan does not point to a single instance of where the Court singled out any of the positions or defenses of which Finjan complains as legally unsupported, meritless, or frivolous during the course of the litigation.  Moreover, Blue Coat made several meritorious objections during Finjan's case-in-chief to Finjan's injection of new theories and issues underlying infringement and damages which, in turn, impacted Blue Coat's presentation of its defenses.  Thus, when the totality of the circumstances are considered, Finjan simply fails to meet its burden to show that this case is "exceptional" under § 285.

## II.      STATEMENT OF FACTS

Finjan filed its complaint against Blue Coat on August 28, 2013.  (Dkt. 1.)   Fact discovery closed on December 12, 2014—fifteen months later.  (Dkt. 98, Case Scheduling Order at 3:14–15.)  Expert discovery closed on February 27, 2015.  (*Id*. at 3:19–20.)  Finjan made its Final Election of Asserted Claims on March 2, 2015, limiting its number of asserted claims to eighteen.  (*Id*. at 3:20–22.)

**'844 Patent Non-Infringement.**  On March 12, 2015, Blue Coat moved for summary judgment of non-infringement on all asserted patents including U.S. Patent No. 6,154,844 ("the '844 patent").  (Dkt. 175-4, Blue Coat's MSJ at 25:5–14)  The parties recognized that "[a]ll [of] the asserted claims [of the '844 Patent] require generating 'first Downloadable security profile that *identifies suspicious code* in the received Downloadable.'" (*Id.* at 11:7–9, emphasis added.) Finjan belatedly identified metadata called Cookie2 as being the required security profile that identified suspicious code.  (*Id.* at 12:5–11.)  Blue Coat argued that Cookie2 merely contained numbers and characters, and did not identify suspicious code.  (*Id.* at 15:2–10.)

On March 12, 2015, Finjan also filed its own motion for summary judgment of infringement as to all patents including the '844 patent.  (Dkt. 175-4, Finjan's MSJ at 25:24–26.) Finjan's motion was denied as to all claims on June 2, 2015.  (Dkt. 256, MSJ Order at 24:8–21.) The Court also found that "[t]he parties' dispute concerning the actual operation and use of Cookie2 precludes summary judgment for either side." (*Id.* at 15:11–12.)

On June 18, 2015, the parties submitted a Joint Pretrial Statement and Order ("Joint Pretrial Order.")  (Dkt. 293-4, Joint Pretrial Order at 29:1–28.)  As to the '844 patent, Blue Coat acknowledged that, "the parties dispute. . . the phrase 'Downloadable security profile that identifies suspicious code in the received Downloadable' found in the asserted claims of the '844 patent." (*Id.* at 16:5–10.)  Blue Coat invited the Court to clarify the meaning of this disputed term under *O2 Micro Int'l v. Beyond Innovation Tech.*, 521 F.3d 1351, 1362–63 (Fed. Cir. 2008). (Dkt. 293-4, Joint Pretrial Order at 14:18–21.)  In response, Finjan acknowledged the dispute, but contended that it was "a factual determination for the jury to decide." (*Id.* at 13.)

Later, at the July 2, 2015 Pretrial Conference, the Court considered Finjan's motion *in limine* to preclude Blue Coat's expert from opining as to non-infringement of the '844 patent by Cookie2 based on what Finjan characterized as his untimely supplemental expert report.  (Dkt. 356, 07/02/15 Pre-Trial Conference Tr. at 18:10–23:15.)  The Court denied Finjan's motion recalling that it was Finjan who had failed to timely or adequately disclose Cookie2 as the allegedly infringing feature, commenting that, "I'm actually more sympathetic to the defense on this because it's not unreasonable that they [Blue Coat] didn't focus on Cookie2 when you

[Finjan] didn't identify it.  I let you keep it in, but that was a broad, generous ruling on my part. . . . [.]"  (*Id.* at 19:13–18; s*ee also* Dkt. 271, Order Granting in part Blue Coat's Motion to Strike Infringement Theories at 4–6.)   In that entire discussion of Blue Coat's defense (*i.e.*, that Cookie2 only counts and does not "identify suspicious code,") Finjan did not contend that the defense lacked merit.  (Dkt. 356, 07/02/15 Pre-Trial Conference Tr. at 18:10–23:15.)

**Anticipation, Obviousness and Written Description.**  Despite now alleging that these invalidity defenses are meritless, Finjan never moved for summary judgment on any of these defenses.  The parties' Joint Pretrial Order also set forth Blue Coat's anticipation, obviousness and written description defenses.  (Dkt. 293-4, Joint Pretrial Order at 4–6, 10–11.)  Blue Coat also notes that its written description defense was limited to two of the six asserted patents (*i.e.*, the '780 and the '968).  (*Id.*)

Finjan filed its *Daubert* Motion on May 28, 2015.  (Dkt. 250, Finjan's *Daubert* Motion.) Finjan's only argument with respect to Dr. Necula was that he allegedly inappropriately combined references for an anticipation argument.  (*Id.* at 1:13–24.)  Finjan never claimed he had applied "inherency" incorrectly in the context of anticipation.  With respect to Dr. Hicks, Finjan only alleged that he "speculate[d] how a person ordinary skill in the art would implement 'a content inspection engine' to detect whether a downloadable includes executable code, such that he could not "show how the Ji reference necessarily discloses the missing element."  (*Id.* at 2:1–10.)  This Court denied Finjan's requested relief as to Dr. Hicks, and stated that as to both experts resolving the dispute as to anticipation and inherency necessitated a question of "fact for the jury."  (Dkt. 365, *Daubert* Hrg. Tr. at 100:1–10; *see also* Dkt. 378, Order on *Daubert* Motions at 4–5.)  Trial began July 20, 2015.  (Dkt. 397, Minute Entry for Proceedings.)

**Laches and Prosecution History Estoppel ("PHE").**  All four non-jury defenses were also disclosed in the Joint Pretrial Order, including the two that are the subject of Finjan's present motion.  (Dkt. 293-4, Joint Pretrial Order at 4 ("prosecution history estoppel") and 6 ("laches"); *see also* 16.)  It was also set out that Blue Coat was requesting a bench trial as to these issues.  (Dkt. 293-4, Joint Pretrial Order at 17.)  At the June 2, 2014 Pretrial Conference the Court and the parties agreed that PHE and laches would later "be tried to the Court without a

jury[.]"  (Dkt. 356, 07/02/20 Pre-Trial Conference Tr. at 83:15-85:8.)  Finjan did not raise the merits of those defenses.

## III.     LEGAL STANDARD

A prevailing party may recover attorneys' fees only in "exceptional cases."  35 U.S.C. § 285.  In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (U.S. 2014), the Supreme Court anticipated that an "exceptional" case under § 285 would also be a "rare case[.]"  *Id*. at 1757, 1753 n.1 (citing legislative history).  An exceptional case "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Id*. at 1756.  Under *Octane*, "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, ***considering the totality of the circumstances***."  *Id*. (emphasis added).  In short, the conduct of which Finjan complains should be put in the context of how Blue Coat litigated the case as a whole.

## IV.     FINJAN CANNOT MEET ITS BURDEN UNDER § 285

### A.     Finjan Has Not Shown That This Case Is Exceptional.

In support of its fee motion, Finjan essentially reasons that, because it obtained a favorable jury verdict as to some claims and a favorable outcome as to "nearly all of the issues" at the bench trial, it is therefore entitled to recover its full fees and expenses.  (*See e.g.*, Dkt. 492, Fee Motion at 1–2.)  Aside from the fact that Finjan did not prevail in all of its claims at either the jury trial or bench trial, an unfavorable verdict alone is not a proper basis for fee shifting.  "[A]s the Supreme Court made clear in *Octane*, fee awards are not to be used 'as a penalty for failure to win a patent infringement suit.'"  *Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015) (rejecting the "fact that Gaymar lost at the PTO" as a basis for fee shifting).  "In other words, fees are not awarded solely because one party's position did not prevail."  *Id*.  It is not the purpose of § 285 to chill the vigorous pursuit of a potentially meritorious defense case.  Were it otherwise, application of § 285 "would have negative implications for access to justice."  *Cambrian Sci. Corp. v. Cox Commc'ns., Inc.*, 79 F. Supp. 3d 1111, 1114–15 (C.D. Cal. 2015).

As to the specific late-stage conduct upon which Finjan relies in support of its motion, as Blue Coat will methodically address below, Finjan has failed to show that any of those Blue Coat's defenses or positions were frivolous or made in bad faith.  To the contrary, they were well-supported defenses.  "In *Octane Fitness*, the Supreme Court made clear that it is the 'substantive strength of the party's litigating position that is relevant to an exceptional case determination, not the correctness or eventual success of that position.  A party's position on issues of law ultimately need not be correct for them to not 'stand[ ] out,' or be found reasonable."  *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015) (quoting *Octane*, 134 S. Ct. at 1756); *Stragent, LLC v. Intel Corp.*, No. 6:11-cv-421, 2014 U.S. Dist. LEXIS 169080, at *12 (E.D. Tex. Aug. 6, 2014) ("[T]he mere fact that the losing party made a losing argument *is not a relevant consideration*; rather, the focus must be on arguments that were frivolous or made in bad faith." (emphasis added).

While this case was unquestionably vigorously contested, it is not "exceptional" within the meaning of § 285.  Finjan asserted six patent infringement claims against Blue Coat.  As in most high-stakes patent litigation, Blue Coat developed well-supported and timely invalidity defenses, including lack of written description, obviousness and anticipation.  Blue Coat also developed timely-disclosed non-infringement theories based on fully-disclosed issues of fact that passed muster on summary judgment, including the complained-of defense that its products did not identify suspicious code.  (Dkt. 256, MSJ Order at 15:11–12.)  As recently and aptly noted by Judge Yvonne Gonzalez Rogers, "if mere contentious litigation warranted an award of attorney's fees, the granting of such fees in patent cases would be the rule rather than the exception."  *AngioScore, Inc. v. TriReme Med., Inc.*, No. 12-cv-03393-YGR, 2015 U.S. Dist. LEXIS 165190, at *8 n.3 (N.D. Cal. Dec. 9, 2015).

**B.      Finjan's Theories Fail To Make This Case Exceptional.**

Finjan's motion relies heavily on its litigators' basic disagreement with Blue Coat's defenses. However, as Judge Dyk observed, *Octane* is not an "invitation to a 'kitchen sink' approach where the prevailing party questions each argument and action of the losing party in an effort to secure attorney's fees[.]"  *Stragent, LLC*, 2014 U.S. Dist. LEXIS 169080, at *11.  In

essence, Finjan proffers three specific bases for its fee request.  First is a timeliness complaint; namely, that Blue Coat should have *voluntarily* informed Finjan one week earlier that it would not present its written description and obviousness defenses following the close of Finjan's case-in-chief.  (Dkt. 492, Fee Motion.)  Second, Finjan alleges that those same invalidity defenses, Blue Coat's anticipation defenses as to all six patents, and its non-infringement argument as to the '844 patent, were all objectively baseless.  And third, that two of the four bench trial issues were allegedly meritless; and in the specific case of the '780 patent, untimely.  Blue Coat will address each of these bases in turn, and show that Finjan has only provided conclusory and demonstrably incorrect allegations of untimeliness and/or baselessness.  Moreover, Finjan has ignored the totality of the circumstances (*e.g.*, Finjan's own inability to seek and/or obtain summary judgment on the allegedly "meritless" defenses), which the *Octane* test requires.

> **1.      Finjan's Untimeliness Complaint Does Not Merit A Fee Award.**
>
> **a.      Finjan Distorts The Record In Suggesting The Blue Coat's Withdrawal Of Defenses Following Finjan's Case-In-Chief Was In Any Way Improper—Much Less In Bad Faith.**

Finjan complains that Blue Coat untimely delayed (by one week) in informing Finjan that it would ultimately elect not to present its obviousness or written description defenses at trial. (*See e.g.*, Dkt. 492, Fee Motion at 3–4.)  Finjan points to no Court Order or instruction obligating Blue Coat to do so.  There is nothing exceptional about a defendant preserving defenses fully and timely disclosed in the parties' Joint Pretrial Order until after it finally knows what the plaintiff has presented in its case-in-chief.  (Dkt. 293-4, Joint Pretrial Order at 4–6 (clearly disclosing all of the defenses of which Finjan complains in its motion.))  This is the normal distilling process at trial to which this Court referred when Finjan *also* demanded to know before trial exactly what witnesses Blue Coat would call in its defense case.  (Dkt. 356, 07/02/20 Pre-Trial Conference Tr. at 98:17–99:25 (denying Finjan's demand to know what witnesses Blue Coat intended to actually call at trial and referring to the "evolving concept of how the case is going to be tried.  So I'm not going to require that.").)

As Judge Grewal of the Northern District has recognized, such decisions are part and parcel of the normal litigation process. *Adaptix, Inc. v. Apple, Inc.*, No. 5:13-cv-01776-PSG,

2015 U.S. Dist. LEXIS 117275, at *21 (N.D. Cal. Sept. 2, 2015) (denying motion for fees under § 285 where plaintiff "shift[ed] the focus of its infringement case" to a different, previously disclosed theory, before trial).   Similarly, Judge Dyk of the Federal Circuit, sitting by designation, stated simply that such actions are not exceptional: "[Defendant] argues that [Plaintiff] delayed in disclosing certain positions and in abandoning certain other claims and positions, and that this constituted litigation misconduct. It did not." *Stragent, LLC*, 2014 U.S. Dist. LEXIS 169080, at *17.

And while Finjan does its best to make the timing of Blue Coat's withdrawal of defenses sound nefarious, if the Court reads the actual snippet of trial transcript upon which Finjan relies, the passage is a very brief and collegial conversation between the parties and the Court on July 27—*after* the close of Finjan's case and *already* one week into the trial.  (Dkt. 492, Fee Motion at 3:19–20.)  Specifically, Finjan's counsel states:

> We would request. . ., now that we have closed our case, that the defendants give us some insight as to what they're going to do on validity. . . it's time now to let us know so that we can prepare for travel plans for our witnesses. . . .

(Dkt. 427, 07/27/15 Trial Tr. at 1196:21–97:8.)  Finjan's counsel made no argument that Finjan was somehow prejudiced by a delay, and made no mention of Mr. Ben-Itzhak or issues with his travel.  Finjan also omits from its citation the very next line of transcript where Mr. Poplawski immediately agreed to provide the requested information and, indeed, Blue Coat notified Finjan of the defenses it would withdraw later ***that same day***.  (*Id.* at 1197:9.)

Lastly, as the Court may recall, the parties were under strict time constraints at trial.  Due to the numerous claims and theories, counsel for Blue Coat proposed "12 to 13 days (excluding jury selection, openings, and closing)" for the trial, which would have left room for additional evidence and/or defenses.  (Dkt. 293-4, Joint Pretrial Order at 16:14–16.)  However, the Court could only spare 18 hours (less than Blue Coat's proposal):

> I know that there are still six patents in this case and 18 claims. It is on the verge of unmanageable but no one has budged in reducing it any. And I'm still hoping that maybe something will happen there, but I am prepared give each side 18 hours for your direct and cross-examination.

1    (Dkt. 356, 07/02/20 Pre-Trial Conference Tr. at 79:5–9.)   As the Court acknowledged, both

2    parties were reserving their right to preserve positions disclosed in the Joint Pretrial Order.

3    Indeed, Blue Coat had to repeatedly ask Finjan—and ultimately had to seek the Court's

4    assistance—to get Finjan to disclose whether, and on what basis, Finjan maintained that it was

5    still entitled to present a case on the '968, '822, and '633 patents.   (Dkt. 356, 07/02/2015 Pre-

6    Trial Conference Tr. at 85:24–87:9; Dkt. 365, *Daubert* Hrg. Tr. at 101:17–102:11).   In sum, Blue

7    Coat's conduct is not exceptional when considered under the totality of the circumstances.

8                  **b.       The Cases Upon Which Finjan Relies Are Distinguishable.**

9              Finjan's cases involve dramatically different conduct than the late-stage trial events on

10   which Finjan relies, and are distinguishable.   Finjan contends that "Courts have found cases

11   exceptional in even less egregious circumstances" (Dkt. 492, Fee Motion at 7:7–12) and cites

12   *Nilssen v. Osram Sylvania, Inc.*, 528 F.3d 1352, 1358–59 (Fed. Cir. 2008).   In *Nilssen*, however,

13   the Federal Circuit declined to overturn a district court's finding of exceptionality under the

14   abuse of discretion standard where the "district court's exceptional case decision relied on three

15   separate grounds: inequitable conduct, frivolous lawsuit, and litigation misconduct.   *Id.* at 1357.

16   The litigation misconduct included "provid[ing] incorrect responses to interrogatories and never

17   fil[ing] a formal correction, then attempt[ing] to exclude the interrogatories for impeachment

18   purposes because they were not signed."   *Id.* at 1358–59.   While Finjan provides *Nilssen* as

19   authority for that proposition that "withdrawing claims from suit only 'a few months before

20   trial'" creates an exceptional case under § 285 (Dkt. 492, Fee Motion at 7:10–12), what actually

21   occurred in *Nilssen* was that the plaintiff "withdrew sixteen of the originally-filed patents from

22   their suit, but did not do so formally until a few months before trial."   528 F.3d at 1359.   The

23   sanctioned conduct in *Nilssen* was of a completely different ilk and magnitude than the

24   preservation of fully-vetted defenses that Blue Coat ultimately elected not to present at the trial.

25            Finjan's citation of *Romag Fasteners, Inc. v. Fossil, Inc*., No. 3-10-cv-01827, 2014 U.S.

26   Dist. LEXIS 113061, at *10 (D. Conn. Aug. 14, 2014) is similarly misplaced.   (Dkt. 492, Fee

27   Motion at 7:11–13.)   In *Romag Fasteners*, the court found the case exceptional for two reasons.

28   *Id*. at *10, 12.   The first was "Defendants' pursuit of its indefiniteness invalidity defense" in light

1   of the fact that "Judge Young [had] further likened Defendants' evidence in support of its

2   indefiniteness defense to a 'woefully inadequate showing' and granted summary judgment *sua*

3   *sponte* in favor of Plaintiff on the claim." *Id*. at *10. The second was that Defendants' "failure

4   to formally withdraw its remaining invalidity defenses until after the close of evidence weigh[ed]

5   in favor of an award of fees in this case" as Defendants already represented that they would not

6   pursue these claims at the pre-trial conference. *Id*. at *12. Finjan does not point to any such

7   misrepresentations by Blue Coat, nor were any of the complained of defenses found to be

8   meritless by this Court. The facts of this case could not be more dissimilar.

9       Finjan's use of *Taltech Ltd. v. Esquel Enters.*, 609 F. Supp. 2d 1195 (W.D. Wash. 2009)

10   is also misguided. This case involved a witness who had a "pattern of changing his testimony to

11   suit the theory du jour and in light of plaintiffs' shifting contentions" along with

12   "misrepresentations to the PTO." *Id.* at 1210–11. The "litigation tactics" that served as part of

13   the basis for the fee award included "plaintiffs dismiss[ing] their damages claim" shortly before

14   trial, waiving the right to a jury trial weeks before trial, and "voluntarily dismiss[ing] with

15   prejudice five of their claims of infringement rather than responding to defendants' motion for

16   entry of judgment pursuant to Fed. R. Civ. P. 52(c)." *Id*. The facts of *Taltech* and Finjan's other

17   cases in support of its untimeliness argument, and Blue Coat's decision to pare down its defenses

18   after the close of Finjan's case-in-chief, are simply not comparable.

19       **2.    Finjan Fails To Show That Blue Coat's Defenses Lacked Merit.**

20       Finjan attempts to demonstrate that four of Blue Coat's Defenses lack merit: invalidity

21   due to (1) obviousness; (2) lack of written description; (3) anticipation and (4) non-infringement

22   of the '844 patent due to Blue Coat's products counting, not identifying, suspicions code. After

23   *Octane*, courts in the Northern District continue to analyze fee requests under § 285 by assessing

24   whether the non-moving party's "position was objectively unreasonable or baseless." *Kreative*

25   *Power, LLC v. Monoprice, Inc.*, No. 14-cv-02991-SI, 2015 U.S. Dist. LEXIS 57073, at *21

26   (N.D. Cal. Apr. 30, 2015). Finjan has put forth nothing relevant to satisfy its burden as the

27   moving party that any Blue Coat defense lacked merit whatsoever, much less anything that could

28   show that any "position was objectively unreasonable or baseless."

1    Finjan's arguments as to the merits of these defenses are simply advocacy positions that

2    Finjan either lost or failed to bring at the pre-trial motion stage, rendering them moot under §

3    285.  *Ateliers De La Haute-Garonne v. Broetje Automation-USA Inc.*, 85 F. Supp. 3d 768, 782

4    (D. Del. 2015) (refusing to grant fees under § 285 where "[Plaintiff] contend[ed] that [defendant]

5    maintained baseless defenses during litigation, such as unsupported claim construction positions

6    and unfounded invalidity defenses" where the court had previously refused to find summary

7    judgment of infringement); *Sport Dimension, Inc.* v. *Coleman Co.*, No. CV 14-00438 BRO

8    (MRWx), slip op. at 11 (C.D. Cal. June 4, 2015) (refusing to grant fees under § 285 where

9    "[plaintiff] argue[d] that [defendant] engaged in litigation misconduct by withholding key

10   documents during discovery and advancing 'groundless' litigation positions" yet never filed a

11   motion to compel and thus "failed to raise [the issue] at the appropriate time.") (citing *Homeland*

12   *Housewares, LLC v. Sorensen Research & Dev. Trust*, No. CV 11-3720-GW (JEMx), 2013 U.S.

13   Dist. LEXIS 189078, at *22–24 (C.D. Cal. June 27, 2013) (finding it "too late" to make

14   argument for attorney's fees under section 285 based on discovery misconduct where party "had

15   the opportunity to demonstrate [defendant's] discovery misconduct when litigating its motions to

16   compel" but "failed to do so.")).

17        Likewise here Finjan fails to point to any effort on its part—much less a successful

18   effort—to seek a finding of litigation misconduct prior to trial.  In contrast to most § 285 cases,

19   Finjan fails to point to any forewarning or harbinger from the Court that Blue Coat was pursuing

20   a frivolous defense, including during discovery, claim construction or summary judgment.

21                    **a.     Finjan Fails To Show That Blue Coat's Obviousness Defense
                               Lacked Merit.**
22

23        Finjan devotes a single paragraph to its blanket allegation that Blue Coat's obviousness

     combinations lacked merit.  (Dkt. 492, Fee Motion at 9:11–22.)  Finjan's analysis consists of
24
     string citing to the expert reports of Dr. Lyon and Dr. Jaeger in support of its contention that
25
     "Finjan's experts demonstrated that Blue Coat failed to demonstrate that there was a motivation
26
     to combine or that the resulting combination would be operable."  (*Id.* at 9:11–17.)  First, Blue
27
     Coat's experts proffered different combinations of references for each of the six asserted patents.
28

1    Finjan makes no effort to parse out or address the specifics of any one obviousness defense with

2    respect to any one patent.[3]   Second, the fact that Finjan's experts disagreed with Blue Coat's

3    experts on issues such as motivation to combine or operability is markedly unexceptional in

4    patent litigation and does nothing to show that Blue Coat's position lacked merit, especially to

5    the point of being "objectively unreasonable or baseless."   *Kreative*, 2015 U.S. Dist. LEXIS

6    57073, at *21.   (*See e.g.*, Dkt. 228-1, 01/12/20 Hicks Invalidity Rep., ¶¶ 27, 31–35, 50, 65, 70,

7    81, 86, 100, 118, 122, 129, 136, 141, 155, 159, 161, 192, 198, 199, 206, 211, 231, 236, 237, 248,

8    263, 267, 270, 271, 278, 283, 290, 295, 309, 327, 332, 336, 341, 351, 366, 372, 377, 391, 396,

9    397, 428, 433, 437, 442, 452, 480, 500, 505, 506, 512, 532, 545, 551, 553, 564, 579, 584, 596

10   (discussing motive and operability); Dkt. 293-17, Necula Invalidity Rep., ¶¶ 23, 28, 157, 166,

11   229, 230, 250, 251, 283, 284, 305, 306, 330, 331, 351, 352, 357, 358, 382, 383, 419, 420, 518,

12   519, 520, 527, 534, 570, 571, 578, 593, 599, 687, 694, 822, 934, 935, 1119, 1120, 1145, 1146,

13   1197, 1198, 1206, 1207, 1250, 1251, 1258, 1259, 1298, 1299, 1302, 1303, 1306, 1307, 1312,

14   1313, 1317, 1318, 1322 and 1323 (discussing motive and operability).)

15   Tellingly, Finjan did not seek a ruling of summary judgment regarding these obviousness

16   theories, did not seek to bar these theories through its Motions *in Limine*, and did not seek to

17   preclude Blue Coat's experts from testifying on these topics during the *Daubert* phase.   (*See* Dkt.

18   175-4, Finjan's MSJ; Dkt. 256, MSJ Order; Dkt. 367, Order on Parties' Motions *In Limine* and

19   Pretrial Orders; Dkt. 365, *Daubert* Hrg. Tr. at 58:6–12.)   As such, it is disingenuous to now

20   argue that these defenses are so facially meritless as to be frivolous.   *Sport Dimension*, No. CV

21   14-00438 BRO (MRWx), slip op. at 11.

22   Lastly, Finjan alleges that as a consequence of not knowing earlier that Blue Coat would

23   elect not to present its obviousness defenses, it incurred the unnecessary expense of having Mr.

24   Ben-Itzhak fly to California for the trial.   Finjan thereby implies that Blue Coat should have

25   known that the only subject matter on which Mr. Ben-Itzhak was going to testify was to rebut

---

[3] Nor should Finjan only first provide any further specificity in its Reply when Blue Coat would
be prejudiced by not having the opportunity to response in its Opposition.   Any such attempt
should be stricken.

1    obviousness.  But on Finjan's Witness List, Finjan described the Subject Matter of Mr. Ben-

2    Itzhak's testimony as relating to, "Finjan's products, history, development and recognition of

3    Finjan's technology, the market and competition for Finjan's technology." (Dkt. 293-5, Finjan's

4    Witness List at 6.)  There was no express statement that Mr. Ben-Itzhak's testimony would be

5    limited to only secondary considerations in rebuttal to obviousness.  While the disclosed subject

6    matter could encompass secondary considerations, it just as well describes "face of the

7    Company" testimony relevant to Finjan's case-in-chief.  That Blue Coat failed to divine Mr.

8    Ben-Itzhak's purpose or travel schedule is not exceptional conduct.

9
            **b.      Finjan Fails To Show That Blue Coat's Written Description
                      Defense Lacked Merit.**
10

11          In support of its argument that Blue Coat's written description defense lacks merit, Finjan

12   again cites to portions of Dr. Lyon's reports.  (Dkt. 492, Fee Motion at 10:5–20.)  Finjan simply

13   asserts that "Dr. Lyon definitively prov[ed] that the claims were adequately supported by the

14   filed application[.]"  (*Id.* at 10:19–22.)  As before, Finjan's preference for its own experts

15   opinion does nothing to establish that Blue Coat's written description defense lacked merit,

16   especially to the point of being "objectively unreasonable or baseless." *Kreative*, 2015 U.S. Dist.

17   LEXIS 57073, at *21.  Finjan also fails to mention that Blue Coat's written description defense

18   only applied to two of the six asserted patents (*i.e.*, the '780 and the '968 Patents).  (Dkt. 293-4,

19   Joint Pretrial Order at 4–6.)

20          Again, Finjan never attacks the actual merits of the defense for either of the two patents.

21   This is consistent with the fact that Finjan made no attempt to dispose of these allegedly

22   meritless written description theories on summary judgment, Motions *in Limine*, or *Daubert*.

23   (*See* Dkt. 175-4, Finjan's MSJ; Dkt. 256, MSJ Order; Dkt. 367, Order on Parties' Motions *In*

24   *Limine* and Pretrial Orders; Dkt. 365, *Daubert* Hrg. Tr. at 58:6–12.)  Thus, Finjan has failed to

25   show that Blue Coat's written description defenses lacked merit.  *Sport Dimension*, No. CV 14-

26   00438 BRO (MRWx), slip op. at 11.

27

28

      **c.**      **Finjan Fails To Show That Blue Coat's Anticipation Defense Lacked Merit.**

Finjan also makes a blanket allegation that Blue Coat's anticipation theories as to all six patents lacked merit because Blue Coat relied on an element of each claim being inherently present in a reference.  Finjan's primary argument appear to be that proving inherency is "a very high and difficult burden."  (Dkt. 492, Fee Motion at 12:6.)  While that may be, the fact that a defense requires "clear and convincing evidence" is nothing exceptional in a patent case.  Each of Blue Coat's anticipation arguments was tailored to the particular claim and patent.  Yet Finjan makes no effort to address what exactly made any one of Blue Coat's anticipation defenses so objectively meritless as to be exceptional.

In support of its sweeping allegation Finjan string-cites to a few snippets of the direct and cross examination testimony of Blue Coat's experts Drs. Hicks and Necula, leaving Blue Coat and the Court to divine the substance of the alleged egregious deficiency.  (Dkt. 492, Fee Motion at 12:11–22.)  Again, the mere fact that the jury did not invalidate the patent claims as anticipated is not legally sufficient to prove that Blue Coat's reliance upon inherency for certain claim elements was meritless to the point of being "objectively unreasonable or baseless." *Kreative*, 2015 U.S. Dist. LEXIS 57073, at *21.

Again, Finjan did not seek a ruling on summary judgment regarding these anticipation theories, did not seek to bar these theories via its Motions *in Limine*, nor did it seek to bar Blue Coat's experts from testifying on these topics during the *Daubert* phase.  (*See* Dkt. 175-4, Finjan's MSJ; Dkt. 256, MSJ Order; Dkt. 367, Order on Parties' Motions *In Limine* and Pretrial Orders; Dkt. 365, *Daubert* Hrg. Tr. at 58:6–12.)  As before, it is disingenuous for Finjan now to contend that Blue Coat's anticipation defenses lacked merit.  *Sport Dimension*, No. CV 14-00438 BRO (MRWx), slip op. at 11.

      **d.**      **Finjan Fails To Show That Blue Coat's Non-Infringement Defense As To The '844 Lacked Merit.**

Finjan alleges that Blue Coat's non-infringement argument for the '844 patent (*i.e.*, that Blue Coat's WebPulse counted rather than identified suspicious code) merits the award of sanctions.  However, Finjan's motion for summary judgment of infringement on the '844 patent

1   was denied due to "genuine disputes of material fact concerning the operation" of the accused

2   products, including the use of Cookie2.  (Dkt. 256, MSJ Order at 24:7–12.)  The Court devoted

3   three pages to explaining the complicated issues and factual disputes involved.  (*Id.* at 13:13–

4   15:22.)  Ultimately the Court found that "[t]he parties' dispute concerning the actual operation

5   and use of Cookie2 precludes summary judgment for either side."  (Dkt. 256, MSJ Order at

6   15:11–12.)

7          Finjan's argument as to the '844 is particularly brash when set in the context of the

8   totality of the circumstances.  As laid out in § II (Statement of Facts) above, in the parties' Joint

9   Pretrial Conference Statement, it was Blue Coat who invited the Court to further clarify the

10  meaning of the '844 disputed term under *O2 Micro*, 521 F.3d at 1362–63.  (Dkt. 293-4, Joint

11  Pretrial Order at 14:18–21.)  In response, Finjan never even suggested that Blue Coat's defense

12  lacked merit.  To the contrary, it was *Finjan* who contended that the '844 dispute was "***a factual***

13  ***determination for the jury to decide***."  (*Id*. at 13:21–22, emphasis added.)  Later, at the July 2,

14  2015 Pretrial Conference, Finjan sought to preclude Blue Coat's defense as untimely in its

15  Motion *In Limine* No. 3.  However, that motion was denied based on Finjan's *own* untimeliness

16  in disclosing Cookie2 as the accused feature.  (Dkt. 356, 07/02/15 Pre-Trial Conference Tr. at

17  19:12–18.)  Given the scrutiny that the Court gave this disputed term during the course of the

18  litigation—and the utter absence of any protest by Finjan that the defense lacked merit prior to

19  filing its Fee Motion—Blue Coat's use of this defense at trial cannot be held "objectively

20  unreasonable or baseless."  *Ateliers De La Haute-Garonne*, 85 F. Supp. 3d at 782 (denying fees

21  under § 285 where the Court had previously denied summary judgment of infringement).

22         Lastly, the snippet of Dr. Bestavros's testimony on which Finjan relies provides no

23  support for its fee demand.  That during cross Dr. Bestavros actually *disagreed* that the code at

24  issue operates like a coin analogy with which Finjan's counsel was apparently enamored does

25  nothing to advance an allegation of objective baselessness.  (Dkt. 431, 07/29/15 Trial Tr. at

26  1539:5 ([Dr. Bestavros:] "I disagree.  When it comes to the code, I disagree.").)

27

28

### e.     Finjan's Cases Are Irrelevant To The Merits Of Blue Coat's Defenses.

The cases on which Finjan relies to argue that Blue Coat pursued objectively meritless defenses are readily distinguishable.  *Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066 SI, 2014 U.S. Dist. LEXIS 112321, at *49 (N.D. Cal. Aug. 12, 2014) involved a plaintiff that "failed to conduct an adequate pre-filing investigation prior to filing the present action" where "[i]ts pre-filing investigation essentially consisted of getting an opinion from one counsel that there was no literal infringement and getting an incomplete opinion from a different counsel as to infringement under the doctrine of equivalents" such that "[t]he theories of infringement that [it] asserted during the present action against [the defendant] were objectively baseless, and its claims for literal infringement were exceptionally meritless."  *Id.*  Finjan has failed to show or identify any conduct on par with the conduct in *Kilopass*.

Finjan also relies on *Logic Devices, Inc. v. Apple Inc.*, No. C-13-02943-WHA, 2014 U.S. Dist. LEXIS 168380 (N.D. Cal. Dec. 4, 2014).  However, very recently in *France Telecom S.A. v. Marvell Semiconductor Inc.*, No. 12-CV-04967-WHO, 2015 U.S. Dist. LEXIS 93470 (N.D. Cal. July 17, 2015), Judge Orrick of this District distinguished *Logic Devices* in denying sanctions.  (*Id.* at *10–11 (citing *Logic Devices, Inc.*, 2014 U.S. Dist. LEXIS 168380, at *3)).  In support of his denial of sanctions in *France Telecom*, Judge Orrick found it instructive to contrast the conduct at issue with the plaintiff's egregious acts in *Logic Devices*:

> [C]ounsel for [plaintiff] blindly adopted and filed a complaint drafted (but not filed) by another firm, waited four months before serving Apple, misrepresented that a terminal disclaimer had been filed when no such terminal disclaimer existed, demanded $977.3 million in reasonable royalties, ignored Apple's repeated warnings about the invalidity of the only timely-asserted claim based on the doctrine of obviousness-type double patenting, failed to comply with several patent local rules, waited nearly a year into the lawsuit to finally admit that no terminal disclaimer had been filed, and sandbagged Apple at the tutorial by introducing a new, untimely "distinction" based on phrases not appearing in the asserted patent. (It is also worth noting that plaintiff's counsel requested a continuance of the summary judgment ruling so that he could take discovery even though he took zero depositions during the eleven-month discovery period.)

2015 U.S. Dist. LEXIS 93470, at *10–11.  Thus, despite the *France Telecom* defendant's contention that   plaintiff's "manner of litigation was unreasonable, including relitigating

1   evidentiary issues already resolved and trying to introduce inadmissible evidence," Judge Orrick

2   denied sanctions under § 285.  He concluded that the plaintiff's handling of the case was merely

3   "the result of good faith zealous advocacy" and therefore not exceptional.[4]  *Id.* at *11.

### C.   Blue Coat's Laches And PHE Defenses Were Not Frivolous.

#### 1.   Finjan's Argument That Blue Coat's Laches And PHE Defenses Were Untimely Is Inconsistent With The Record.

6   Finjan argues that both the laches and PHE issues were untimely because they "could

7   have been raised earlier."  (Dkt. 492, Fee Motion at 13–14.)   Finjan's argument distorts the

8   record.  As to five of the six asserted patents, the Court expressly found that Blue Coat's laches

9   defense was timely.  (Dkt. 486, Order Regarding Non-jury Legal Issues at 18:11–19, 19:26–28.)

10  Hence, the bench trial on laches would have proceeded regardless of the '780 patent.

11  Contrary to Finjan's allegation that laches was "a defense that [Blue Coat] never

12  disclosed to Finjan," it was clearly disclosed in the parties' Joint Pretrial Statement.  (Dkt. 492,

13  Fee Motion at 14:24–25; Dkt. 293-4, Joint Pretrial Order at 6:7–8.)   Indeed, Blue Coat's

14  disclosures during discovery made clear that Finjan was aware of the accused ProxySG product

15  since at least 2002, which Finjan had included as an infringing product for the '780 patent.  (*See,*

16  *e.g.*, Dkt. 451-6, Ex. 6 to Kobialka Decl. at 24.)  Although the Court concluded the disclosure of

17  the '780 laches defense was untimely, Finjan can point to no indication that the Court earmarked

18  the post-discovery disclosure of the '780 laches defense as somehow frivolous or objectively

19  baseless, as opposed to a relatively ordinary occurrence in litigation.  Likewise with PHE, the

20  Court's Findings of Fact show that Blue Coat's PHE defenses were timely disclosed.  (Dkt. 486,

21  Order Regarding Non-jury Legal Issues at 10:26–28.)

#### 2.   Blue Coat's Latches Defense Was Relevant And Properly Brought.

23  On December 31, 2014, the Federal Circuit granted a request for an *en banc* rehearing in

24  *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods.*, No. 2013-1564, 2015 U.S. App.

---

26  [4] Moreover, Blue Coat made several meritorious objections during Finjan's case-in-chief to
27  Finjan's injection of new theories and issues underlying infringement and damages which, in
    turn, impacted Blue Coat's presentation of its defenses.  (*See, e.g.*, Dkt. 405, 07/21/15 Trial Tr. at
    209:20-221:1, 222:1-239:1; Dkt. 426, 07/24/15 Trial Tr. at 683:8-708:24; Dkt. 427, 07/27/15
28  Trial Tr. at 974:2-9, 974:17-23, 975:9-977:25, 978:11-15, 979:9-15, 1122:25-1125:15.)

LEXIS 16621, at *11 (Fed. Cir. Sept. 18, 2015) to consider the question: "In light of the fact that there is no statute of limitations for claims of patent infringement and in view of Supreme Court precedent, should the defense of laches be available under some circumstances to bar an entire infringement suit for either damages or injunctive relief?  (citations omitted)."

As of June 18, 2015, Finjan was still seeking (i) "an injunction"; and (ii) "[t]o the extent that injunctive relief is not available, Finjan is seeking an ongoing royalty[.]"  (Dkt. 293-4, Joint Pretrial Order at 6.)  Finjan hereby never clearly foreclosed its pursuit of an injunction, even if it did later obtain a lump-sum reasonable royalty.[5]

By the time of the bench trial on September 9, 2015, the Federal Circuit had not yet issued its *SCA Hygiene* decision.  Thus, the extent to which laches would bar any post-filing damages, or weigh against the issuance of an injunction, was a live issue.  Given that Finjan had left the door open to pursuing an injunction despite the jury's award of a lump-sum reasonable royalty, Blue Coat was well within its rights to establish a record that might later weigh against the issuance of an injunction.

Indeed, in *SCA Hygiene*, which issued after the bench trial, the Federal Circuit reaffirmed that laches "remains a viable defense to legal relief in patent law."  *SCA Hygiene*, 2015 U.S. App. LEXIS 16621, at *43.  There, the Federal Circuit held that laches could bar a permanent injunction and "courts must weigh the facts underlying laches in the *eBay* framework when considering and injunction."  *Id.* at *53.  In addition, the Federal Circuit also held that under extraordinary circumstances laches could preclude an on-going royalty.  *Id.*  Further, the Supreme Court had previously held that laches might also operate to reduce or eliminate prejudgment interest. *Gen Motors Corp. v. Devex Corp.*, 461 U.S. 648, 656–57 (1983).

---

[5] Blue Coat's position was that if Finjan obtained a lump-sum reasonable royalty, it was not entitled to an injunction—a position with which Finjan, as far as Blue Coat can discern, would not agree.  *Id.* at 7.  In fact, at a jury instructions charge conference during trial, Finjan's counsel suggested that Finjan could seek a permanent injunction.  While the Court's statement that Finjan "did not seek. . . injunctive relief" before the jury, Finjan points to nowhere in the record where it expressly abandoned its demand for an injunction even post-verdict.

1    As of the time of the bench trial, for Blue Coat to lay a record that might have: (i)

2    established facts that could weigh against the grant of any injunctive relief; (ii) barred post-filing

3    damages; and/or (iii) operated to reduce or eliminate prejudgment interest, is rational and well

4    within the bounds of zealous and permissible advocacy.  Finjan advances its argument with the

5    use of hindsight.  At the time of the bench trial, neither the parties or the Court knew that the

6    Federal Circuit would expressly refer to an "ongoing royalty," rather than more broadly to post-

7    filing royalties, which factored into the Court's conclusion that the issue was moot.  (Dkt. 486,

8    Order Regarding Non-jury Legal Issues at 20.)   Indeed, applying hindsight, it was Finjan's

9    position that laches could only apply to pre-filing damages that proved incorrect because the

10   Federal Circuit held that it can also apply to "ongoing royalties."  Accordingly, since the issues

11   in *SCA Hygiene* were still pending, it was not objectively baseless for Blue Coat to pursue its

12   laches defense at the bench trial, even though the Court—with the benefit of the by-then issued

13   Federal Circuit's *SCA Hygiene* opinion—ultimately found the laches issue to be moot.  (*Id.*)

14   As to the merits of the '780 patent, Blue Coat's disclosures during discovery showed that

15   Finjan was aware of the accused ProxySG product since at least 2002.  Finjan included ProxySG

16   as an infringing product for the '780 patent at trial.  (*See, e.g.*, Dkt. 451-6, Ex. 6 to Kobialka

17   Decl. at 24.)   For this reason as well, Blue Coat had a good-faith and reasonable basis for

18   pursuing a defense under the doctrine of laches for the '780 patent.

19                    **3.        Blue Coat's PHE Defenses Were Not Frivolous.**

20   Finjan attempts to cast Blue Coat's PHE argument as to the '844, '968 and '780 patents

21   as exceptional.  (Dkt. 492, Fee Motion at 15:7–23.)   As this Court noted during side bar with

22   counsel, "[d]espite the instructions on the verdict form, the jury decided whether each asserted

23   claim was infringed under the doctrine of equivalents."  (Dkt. 486, Order Regarding Non-jury

24   Legal Issues at 11:7–10.)   The jury found that the '844, '968 and '780 patents were infringed

25   literally and under the doctrine of equivalents.  (*Id.*)   During a post-verdict side bar with counsel,

26   this Court sought counsel's opinion:

> The Court: The inconsistency is that we have D.O.E. on the ones where they
> found literal.  I don't think that's actually inconsistent under the law, but before I
> released them I just want your view of it.

> Mr. Poplawski: I think, your honor, to the extent it's an inconsistency ***it's one that we can resolve on Post-trial motions***. I don't think we need a jury.

(Dkt. 441, 08/04/15 Trial Tr. at 2192:17–23 (emphasis added).)  Blue Coat reserved its right to deal with this inconsistency in post-trial motions and has done so, including laying the record regarding the jury's findings on this issue for appeal should it become necessary.  This is not exceptional and Finjan cites no authority to the contrary.

### D.   Finjan's Residual Points Are Also Irrelevant.

**Amount of Verdict.**   Finjan emphasizes throughout its motion that the jury awarded nearly $40 million.  As discussed above in § II, Finjan's attempt to rely on the amount of the award in an effort to support an inference that any one or more of Blue Coat's positions must therefore lack merit must be disregarded as irrelevant.  Moreover, as the Court is aware, by far the largest component of damages throughout the case was the $24 million for the '844 patent, which was a result of Finjan's counsel asking the jury to award such amount without any basis for the first time in closing argument.[6]  (Dkt. 434, 08/03/15 Trial Tr. at 2148:15-20.)  Indeed, the damages expert for Finjan did not opine on the damages of the '844 patent at trial because the majority of her damages opinion for the '844 patent was stricken at the Court's pre-trial *Daubert* hearing based on an unreliable methodology.  Thus, Blue Coat's disputation of the award remains at issue for post-trial resolution, and does not support a finding of objective baselessness.

**Jury Instructions.**   Finjan provides no authority for the proposition that otherwise unremarkable changes to jury instructions as a case evolves at trial can support a fee request.  (Dkt. 492, Fee Motion at 8.)

**Claim Reduction.**   Finjan raises that it reduced its original number of 18 asserted claims to 13 for trial, apparently to contrast its own "good" behavior.  (Dkt. 293-4, Joint Pretrial Order at 2:8; Dkt. 492, Fee Motion at 2.)  However, that Finjan complied with the parties' stipulation and this Court's Order to reduce its number of asserted claims for trial is: (i) merely compliance with what has become common practice in this District; (ii) self-serving in that Finjan (nor any

---

[6] *See* Blue Coat's Renewed Motion for JMOL Pursuant to Fed. R. Civ. P. 50(b).

1    rational Plaintiff) would normally try more than 1-2 patent claims per patent to a jury, especially

2    given the time constraints; and most importantly (iii) is irrelevant to the question of whether any

3    one or more of Blue Coat's defenses is frivolous or asserted in bad faith.

4        **E.     Finjan's Requested Fees Are Unreasonable[7]**

5        Blue Coat has methodically addressed above how none of the specific, late-stage

6    activities about which Finjan complains were frivolous, baseless, or in any way rise to the level

7    of sanctionable conduct.  Nevertheless, assuming *arguendo* that the court concludes that one or

8    more of the complained-of positions taken by Blue Coat merit further consideration, Finjan has

9    also failed to meet its burden of showing that its exorbitant demand for the entirety of its fees and

10   costs—apparently estimated at $7.8M since the filing of its Complaint—bears some relation to

11   the extent of the alleged misconduct.[8]

12           **1.     Finjan Has Failed To Meet Its Burden Of Proving Any Relation To
                      The Extent Of The Alleged Misconduct.**

13       The Federal Circuit has made it clear that where the alleged ground for the award is

14   litigation misconduct, "the amount of the award must bear some relation to the extent of the

15   misconduct."  *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1105–06 (Fed. Cir. 2003)

16   (citations omitted) (award vacated and remanded); reiterated more recently in *Kilopass* at *1166

17   and *Gerawan Farming, Inc. v. Rehrig Pac. Co.*, No. 1:11-cv-1273 LJO BAM, 2013 U.S. Dist.

18   LEXIS 173279, at *28 (E.D. Cal. Dec. 10, 2013) (litigation misconduct found where plaintiff

19   had fabricated evidence).   In short, it is the movant's burden to demonstrate a relationship

20

21   [7] Finjan implies in footnote 3 that it will only provide its "detailed set of time records" to the
     Court for *in camera* inspection.  While it is hopefully unnecessary to get to get to this second
22   stage of Finjan's motion, if we do, Blue Coat of course objects to such records only being
     provided for *in camera* inspection.  Obviously Blue Coat must review the detailed time entries
23   among other information to assess the reasonableness of the fees.  *Kilopass* at 1169.

24   [8] Finjan's briefing injects ambiguity into even its purported estimates: "Finjan estimates the
     amount of *fees* accrued to date to be approximately $6.4 million and **expenses** at least $1.4
25   million" (Dkt. 492, Fee Motion at 1, 16, emphasis added); "*fees* for $7.8 million" (*id.* at 2, 18,
     emphasis added); Dkt. 496-1, Kobialka Decl., ¶ 5, which purports to approximate hours spent on
26   the entire litigation matter, and identifies *at least* $1.4M as the "estimated **expert** witness fees
     accrued to date" (emphasis added).  The only inference is that Finjan demands the entirety of its
27   fees and expenses for the entirety of the litigation since inception.  (*See* Dkt. 492-2, Ex. 1 to
     Kobialka Decl. (identifying the "Relevant time period" for Finjan's fee demand as "2013-2015").
28

1    between its monetary demand and the alleged misconduct—a critical step that Finjan did not

2    trouble itself to undertake.[9]   Nor does Finjan's demand for the sum total to date of the its fees

3    and expenses since the *inception* of the lawsuit meet the criteria that even Finjan acknowledges

4    is required pursuant to set forth in FED. R. CIV. P. 54(d)(2)(B); namely, that the movant must

5    provide a "fair estimate" of its fees and costs attributable to the alleged misconduct.  (*See* Dkt.

6    492, Fee Motion at 16.)

7          In *Rambus*, the District Court initially awarded Infineon the whole of its attorneys' fees

8    and expenses based on significantly more than litigation misconduct, such as Rambus' fraudulent

9    conduct.  However, on appeal the finding of fraud was reversed.  The award was likewise

10   reversed and remanded for the District Court to consider: (i) whether any fee award was even

11   warranted, and if so, (ii) to take into account that the sole remaining ground for any fee award

12   was the alleged litigation misconduct; and (iii) how under those circumstances the award related

13   to the alleged misconduct.

14         In any event, the nature of Rambus's alleged litigation misconduct was a far cry from the

15   ardent advocacy in which Blue Coat engaged.  The District Court in *Rambus* found that

16   Rambus's misconduct included:

17   • "false and misleading testimony by Rambus executives";

18   • "obfuscatory discovery responses";

19   • "refusing to admit facts not genuinely at issue (e.g., date of Rambus's JEDEC

20      membership)"; and

21   • "destroying documents before suit."

22   318 F.3d at 1106.  Even when cast by Finjan in the most negative light, the conduct of which

23   Finjan complains fails to constitute misconduct, much less to rise to the type of egregious

24   conduct at issue in *Rambus* or the other cases upon which Finjan relies.

---

27   [9] Nor can Finjan fall back on the parties' agreement to defer a "detailed accounting" to a
     subsequent stage.  The detailed accounting is just that—the non-movant can challenge the ***details***
28   of what the movant should have ascribed to the alleged litigation misconduct in the first instance.

**2.      It Is Finjan That Fails To Address The Totality Of The Circumstances.**

Under *Octane*, the District Court should consider the "totality of the circumstances" in deciding whether a fee award is warranted.  Here, Finjan leapfrogs the bulk of the litigation and selectively identifies a few events during the final trial phase of a two-year litigation as the basis of its motion.  Finjan then makes an unwarranted leap and demands *all* of its fees and expenses since the inception of the case.  It is Finjan's burden to establish entitlement to its demand, and not Blue Coat's burden to identify and exclude meritorious conduct.

Nevertheless, to underscore how little relationship Finjan's demand bears to the alleged misconduct, Blue Coat notes that the Fact Discovery Cutoff in this case was December 12, 2014—fifteen months into the litigation.  Finjan does not allege any impropriety, much less any sanctionable behavior, during the first fifteen months of fact discovery.  Yet Finjan makes no effort to back out any of its fees or expenses relating to those first fifteen months of the case.

Finjan does not (nor can it) point to any misconduct by Blue Coat during the entire Claim Construction process.  In contrast to § 285 cases where courts often make a point of when a party has taken an unsupported or frivolous position during *Markman*, here, while the Court sometimes disagreed with arguments made by both parties in construing claim terms, there is no indication that the Court ever considered Blue Coat's arguments to be unsupported or somehow non-meritorious.  (*See* Dkt. 118, *Markman* Order.)  Again, Finjan makes no attempt to back out fees and expenses related to the tutorial or claim construction.  To the contrary, at least three billers appear to only have done work related to discovery and/or claim construction.  (Dkt. 496-1, Kobialka Decl., ¶¶ 13, 28, 29.)

Other than disagree with the positions taken by Blue Coat's experts, Finjan fails to identify any misconduct during expert discovery.  Yet again Finjan makes no effort to reconcile its dollar demand with the scope of the few late-stage events it alleges constitute misconduct.  Continuing through the litigation, Finjan now emphatically contends that certain of Blue Coat's defenses were non-meritorious (*e.g.*, anticipation, obviousness, written description).  Yet the totality of the circumstances reveal that, had Finjan genuinely believed one or more of Blue

1    Coat's defenses to be so non-meritorious as to be frivolous, it had every opportunity to bring its

2    own motions for summary judgment as to those defenses.  Finjan's summary judgement motion,

3    in which it moved for a finding of infringement as to all asserted claims, was denied.  (Dkt. 256,

4    MSJ Order at 24:8–21.)  In contrast, Blue Coat's motion for summary judgement was granted as

5    "to non-infringement (both literal and under the doctrine of equivalents) of the '822 and '633

6    Patents by the ProxySG Pop-Up Blocker." (*Id.* at 25:19–20.)  Finjan does not (and cannot) point

7    to any of this Court's Orders on the parties' motions for summary judgment where the Court

8    takes issue with a Blue Coat position as unsupported or frivolous.  Again, Finjan does not make

9    even a cursory attempt to exclude any fees or costs related to the summary judgment process.

10       With respect to Finjan's complaints regarding Blue Coat's defenses, Blue Coat's defenses

11   were laid out in detail in the parties Joint Pretrial Order.  It defies reason to conclude that Finjan

12   is entitled to any sanctions as to Blue Coat's defenses when it is Finjan who failed to either move

13   for summary judgment as to that defense, move *in limine* if it believed that Blue Coat's position

14   lacked any Rule 26 or other evidentiary support, or file its own *Daubert* if Finjan truly believed

15   there was no reliable methodology underpinning Blue Coat's defense.  Which brings us up to the

16   trial.  The pretrial motion practice was zealously employed by both sides, thoroughly vetted by

17   the Court, and to the extent those motions were denied, it is because the Court concluded that it

18   was legitimate for those issues to proceed to either the jury trial or bench trial.

19       Lastly, Blue Coat notes that Ms. Kobialka's Declaration never actually avers that the

20   amount that Finjan now demands from Blue Coat were ever actually billed to Finjan or are now

21   owed by Finjan to her firm.

22   **V.    SANCTIONS UNDER THE COURT'S INHERRENT POWER ARE NOT
23          APPROPRIATE**

24       The Federal Circuit has recognized that "[i]nvocation of the district court's inherent

25   powers is a matter of regional circuit law, rather than Federal Circuit law." *AntiCancer, Inc. v.*

26   *Pfizer, Inc.*, 769 F.3d 1323, 1328 (Fed. Cir. 2014) (citing *Monsanto Co. v. E.I. Du Pont de*

27   *Nemours & Co.*, 748 F.3d 1189, 1196 (Fed. Cir. 2014)).  "Under Ninth Circuit precedent,

28   '[b]efore awarding sanctions under its inherent powers . . . the court must make an explicit

finding that counsel's conduct 'constituted or was tantamount to bad faith.'" *AntiCancer*, 769 F.3d at 1329 (citing *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir.1997), quoting *Roadway Express v. Piper*, 447 U.S. 752, 767 (1980)). "This rigid imposition that district courts make an explicit finding of bad faith is justified under Ninth Circuit law because of the 'very potency [of] inherent powers.'" *AntiCancer*, 769 F.3d at 1329 (quoting *Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir.1993)).

This Court has never made any finding that any action of Blue Coat "constituted or was tantamount to bad faith," nor does Finjan cite to anything in the record to the contrary.  As such any such sanctions are inappropriate.

## VI.   CONCLUSION

For all of the above reasons, Blue Coat respectfully asks that Finjan's Fee Motion be denied.

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

DATED:  December 18, 2015        By:      /s/ Olivia M. Kim
                                         EDWARD G. POPLAWSKI
                                         OLIVIA M. KIM
                                         BRIAN LAM
                                         S. FERRELL ALMAN, JR.
                                         VERA M. ELSON
                                         CHRISTOPHER D. MAYS

                                         Counsel for Defendant
                                         BLUE COAT SYSTEMS, INC.