PAUL ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 752-1700
Facsimile:   (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>BLUE COAT SYSTEMS, INC., a Delaware Corporation,<br><br>        Defendant. | Case No.: 13-cv-03999-BLF<br><br>**PLAINTIFF FINJAN, INC.'S NOTICE OF MOTION AND MOTION PURSUANT TO FED. R. CIV. P. 59(e) TO AMEND THE JUDGMENT TO INCLUDE ENHANCED DAMAGES AND PRE- AND POST-JUDGMENT INTEREST**<br><br>Date:     April 28, 2016<br>Time:     9:00 a.m.<br>Place:    Courtroom 3, 5th Floor<br>Before:  Hon. Beth Labson Freeman |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# TABLE OF CONTENTS

**Page**

I.   STATEMENT OF ISSUES PRESENTED ........................................................... 1

II.   INTRODUCTION ........................................................... 1

III.   PROCEDURAL BACKGROUND ........................................................... 2

IV.   ARGUMENT ........................................................... 3

    A.   Finjan is Entitled to Enhanced Damages Under 35 U.S.C. § 284 ................... 3

        1.   Blue Coat Knew of Finjan's Patents and Intentionally Copied the Covered Technology ........................................................... 4

        2.   Blue Coat Did Not Have a Good Faith Belief that Finjan's Patents Were Invalid or Not Infringed ........................................................... 7

        3.   Blue Coat Engaged in a Vexatious Litigation Strategy ....................... 7

            a.   Blue Coat Raised and Abandoned Frivolous Obviousness and Written Description Defenses During the Trial ........................... 8

            b.   Blue Coat Pursued Objectively Meritless Defenses of Anticipation and Noninfringement of the '844 Patent .......................... 11

            c.   Blue Coat Raised Untimely and Moot Defenses Of Laches and Prosecution History Estoppel in a Bench Trial ........................... 13

        4.   Blue Coat is a Large Company With Substantial Revenues ............... 15

        5.   The Case Was Not a Close Question ........................................... 15

            a.   Blue Coat's Noninfringement Arguments Were Baseless and Weak ........................................................... 16

            b.   Blue Coat's Invalidity and Laches Defenses Were Frivolous ............... 18

        6.   Blue Coat Has Infringed for Years ........................................... 19

        7.   Blue Coat Has Not Engaged in Any Remedial Action to Avoid Infringement of Finjan's Patents ........................................... 19

        8.   Blue Coat was Motivated By Financial Gain to Steal Finjan's Technology ........................................................... 20

    B.   Finjan is Entitled to Pre-Judgment Interest ....................................... 21

1.     Awarding Prejudgment Interest to a Prevailing Patentee is the Rule ................. 21

2.     Prejudgment Interest Should Be Awarded at the Prime Rate,
       Compounded Annually From the Date Finjan Filed the Complaint ................. 22

    C.     Finjan is Entitled to Post-Judgment Interest ................................................................... 24

V.     CONCLUSION ......................................................................................................................... 25

## TABLE OF AUTHORITIES

Page(s)

CASES

*AAT Bioquest, Inc. v. Texas Fluorescence Labs., Inc.*,
  No. 14-CV-03909-DMR, 2015 WL 7708332 (N.D. Cal. Nov. 30, 2015)....................................8, 19

*Air Separation, Inc. v. Underwriters at Lloyd's of London*,
  45 F.3d 288 (9th Cir. 1995) ...........................................................................................................25

*Amsted Indus. Inc. v. Buckeyes Steel Castings Co.*,
  24 F.3d 178 (Fed. Cir. 1994)..........................................................................................................25

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
  598 F.3d 1336 (Fed. Cir. 2010).......................................................................................................10

*Asetek Danmark A/S v. CMI USA, Inc.*,
  No. 13-cv-00457-JST, 2015 WL 5568360 (N.D. Cal. Sept. 22, 2015) .....................................21, 23

*Bio-Rad Labs., Inc. v. Nicolet Inst. Corp.*,
  807 F.2d 964 (Fed. Cir. 1986).........................................................................................................22

*Comcast IP Holdings I, LLC v. Sprint Communications Co.*,
  No. 12-cv-0205-RGA, 2015 WL 4730899 (D. Del. Aug. 10, 2015) ................................................24

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*,
  246 F.3d 1336 (Fed. Cir. 2001).......................................................................................................21

*DataTreasury Corp. v. Wells Fargo & Co.*,
  No. 2:06-CV-72 DF, 2010 WL 5140718 (E.D. Tex. Sept. 27, 2010)................................................23

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  No. 2:06-cv-42-JRG, 2013 WL 3187163 (E.D. Tex. June 20, 2013).................................................24

*Finjan Software, Ltd. v. Secure Computing Corp.*,
  No. 06-369, 2009 WL 2524495 (D. Del. Aug. 18, 2009), aff'd.........................................................22

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
  No. C 03-1431 SBA, 2008 WL 928535 (N.D. Cal. Apr. 4, 2008) ....................................................23

*Gen. Motors Corp. v. Devex Corp.*,
  461 U.S. 648 (1983).........................................................................................................................21

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  780 F.3d 1357 (Fed. Cir. 2015) (O'Malley, J., dissenting) ................................................................4

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
   134 S.Ct. 1744 (2014) ........................................................................................................ 3, 4

*I-Flow Corp. v. Apex Med. Techs., Inc.*,
   No. 07CV1200 DMS (NLS), 2010 WL 114005 (S.D. Cal. Jan. 6, 2010) ......................................... 19

*i4i Ltd. P'ship v. Microsoft Corp.*,
   598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 131 S.Ct. 2238 (2011) ............................................. 15

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
   87 F.Supp.3d 928 (N.D. Cal. 2015) ......................................................................................... 12

*IMX, Inc. v. LendingTree, LLC*,
   469 F.Supp.2d 203 (D. Del. 2007) ........................................................................................... 22

*Intra Corp. v. Hamar Laser Instruments, Inc.*,
   662 F.Supp. 1420 (E.D. Mich. 1987), *aff'd*, 862 F.2d 320 (Fed. Cir. 1988) ................................... 20

*Ivac Corp. v. Terumo Corp.*,
   No. 87-0413-B(M), 1990 WL 180201 (S.D. Cal. Aug. 8, 1990)...................................................... 25

*Junker v. HDC Corp.*,
   No. C-07-0594 JCS, 2008 WL 3385819 (N.D. Cal. July 28, 2008) ................................................ 23

*Kaufman Co. v. Lantech, Inc.*,
   807 F.2d 970 (Fed. Cir. 1986)............................................................................................. 8, 18

*Lam, Inc. v. Johns–Manville Corp.*,
   718 F.2d 1056 (Fed. Cir. 1983).............................................................................................. 23

*Maxwell v. Angel-Etts of Calif.*,
   No. 99-10516 DT, 2001 U.S. Dist. LEXIS 25418 (C.D. Cal. July 9, 2001),
   *aff'd*, 53 Fed. Appx. 561 (Fed. Cir. 2002) ................................................................................ 15

*Mondis Tech. Ltd. v. Chimei Innolux Corp.*,
   No. 2:11-CV-378-JRG, 2012 WL 1554645 (E.D. Tex. Apr. 30, 2012) ........................................... 24

*Mondis Tech. Ltd. v. LG Elecs., Inc.*,
   No. 2:07-cv-565-TJW-CW, Dkt. No. 666 (E.D. Tex. Aug. 30, 2011) ............................................ 24

*Motorola Mobility, LLC v. Int'l Trade Comm'n*,
   737 F.3d 1345 (Fed. Cir. 2013).......................................................................................... 12, 18

*Nickson Indus., Inc. v. Rol Mfg. Co.*,
   847 F.2d 795 (Fed. Cir. 1988)............................................................................................... 22

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   134 S.Ct. 1749 (2014)................................................................................................. 3, 4, 21

*Read Corp. v. Portec, Inc.*,
   970 F.2d 816 (Fed. Cir. 1992)........................................................................... 1, 3, 4

*Rockwell Int'l Corp. v. SDL, Inc.*,
   103 F.Supp.2d 1192 (N.D. Cal. 2000) ..................................................................... 13

*Syntex (USA) LLC v. Apotex Inc.*,
   No. C 01-02214 MJJ, 2006 WL 1390435 (N.D. Cal. May 18, 2006),
   *aff'd sub nom*, 221 F. App'x 1002 (Fed. Cir. 2007) ........................................... 10

*Thereasense, Inc. v. Becton, Dickinson & Co.*,
   593 F.3d 1325 (Fed. Cir. 2010)................................................................................ 12

*Trading Techs. Int'l, Inc. v. Open E Cry, LLC*,
   728 F.3d 1309 (Fed. Cir. 2013)................................................................................ 14

*Trintec Indus., Inc. v. Top-U.S.A. Corp.*,
   295 F.3d 1292 (Fed. Cir. 2002)................................................................................ 12

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*,
   939 F.2d 1540 (Fed. Cir. 1991)................................................................................ 22

*Univ. of Pitts. v. Varian Med. Sys., Inc.*,
   No. 08cv1307, 2012 WL 1436569 (W.D. Pa. Apr. 25, 2012) *aff'd in part, vacated in
   part on other grounds by* 561 Fed. Appx. 934 (Fed. Cir. 2014)...................... 20

STATUTES

28 U.S.C. § 1961 ........................................................................................... 1, 2, 24, 25

35 U.S.C. § 101............................................................................................................ 2, 18

35 U.S.C. § 103.................................................................................................................. 8

35 U.S.C. § 112.......................................................................................................... 8, 10

35 U.S.C. § 284....................................................................................................... passim

35 U.S.C. § 285...................................................................................................... 3, 4, 25

OTHER AUTHORITIES

Federal Rule of Civil Procedure 59(e) ......................................................................... 1

S. Rep. No. 79-1503 (1946) ........................................................................................... 3

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on April 28, 2016 at 9:00 A.M., or as soon thereafter as this matter may be heard, Plaintiff Finjan, Inc. ("Finjan") shall, and hereby does, move this Court pursuant to Fed. R. Civ. P. 59(e) to amend the judgment in this action (Dkt. No. 487) to include enhanced damages as well as pre- and post-judgment interest.  This motion is further based on this Notice of Motion and supporting Memorandum of Points and Authorities, the Declaration of Benu Wells in Support of Finjan's Motion, exhibits thereto, and such other written evidence or oral argument as may be presented at or before the time this motion is deemed submitted by the Court.

**I.    STATEMENT OF ISSUES PRESENTED**

1)    Whether damages should be enhanced by trebling the jury award in view of the totality of the circumstances, including those enumerated in *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-27 (Fed. Cir. 1992);

2)    Whether prejudgment interest in the amount of $2,922,229.26 should be granted based on the prime rate of 3.25% with interest accrued from the date the complaint was filed and compounded annually; and

3)    Whether postjudgment interest should be granted under 28 U.S.C. § 1961 on the entirety of the judgment.

**II.    INTRODUCTION**

On November 20, 2015, this Court entered judgment for Finjan in this action (Dkt. No. 487), following a jury trial in July and August 2015 and bench trial in September 2015.  The jury awarded Finjan nearly $40 million based on Blue Coat's infringement of five Finjan patents.  Finjan seeks to amend this judgment to include enhanced damages, and pre- and post-judgment interest.

First, Finjan requests that the Court enhance the damages award pursuant to 35 U.S.C. § 284, which allows a Court to "increase the damages [for infringement] up to three times the amount found or assessed."  Here, the $40 million damages award should be trebled based on the totality of circumstances, including Blue Coat's deliberate copying of Finjan's patented technology, Blue Coat's lack of a good faith basis for invalidity or noninfringement, Blue Coat's vexatious litigation strategy including pursuit of objectively unreasonable and frivolous defenses, Blue Coat's large size and

1

substantial revenues, the lack of closeness on the merits of the action, the extent of Blue Coat's infringement, Blue Coat's failure to employ any remedial action to avoid infringement, and Blue Coat's bad faith motivation to destroy Finjan for financial gain.

Second, Finjan is entitled to pre-judgment interest to make Finjan whole for the foregone use of the royalty payment between the time of infringement and the date of the judgment.  Granting pre-judgment interest for this purpose is the rule not the exception.  Here, Finjan should be awarded $2,922,229.26 based on the conservative approach of applying the prime rate of 3.25% to the damages award from the date the complaint was filed and compounded annually.

Third, Finjan is entitled to post-judgment interest, which should be granted automatically under the rate set forth in the governing statute, 28 U.S.C. § 1961.  This amount should be assessed on the entirety of the judgment, including prejudgment interest, enhanced damages, attorneys' fees and costs.

## III.    PROCEDURAL BACKGROUND

Finjan filed this lawsuit on August 28, 2013, alleging infringement of six Finjan patents, *i.e.*, U.S. Patent Nos. 6,154,844 (the "'844 Patent"), 6,804,780 (the "'780 Patent"), 7,418,731 (the "'731 Patent"), 6,965,968 (the "'968 Patent"), 7,647,633 (the "'663 Patent"), and 7,058,822 (the "'822 Patent").  Dkt. No. 1.  On August 4, 2015, after a 10-day trial that began on July 20, 2015, a jury found that Blue Coat infringed all asserted claims of five of these six patents, specifically, *i.e.,* claims 1, 7, 11, 15 and 41 of the '844 Patent, claims 9 and 13 of the '780 Patent, claims 1 and 17 of the '731 Patent, claim 1 of the '968 Patent and claim 14 of the '633 Patent).  Dkt. No. 438.   The jury further found that all six patents are valid.  The jury awarded Finjan a total lump sum damages award of $39,528,487 million for Blue Coat's infringement for the life of each infringed patent.  *Id*.  On September 9, 2015, the Court held a bench trial on "non-jury legal issues" to address defenses raised by Blue Coat concerning laches, prosecution history estoppel, invalidity of the '844 Patent pursuant to 35 U.S.C. § 101, and priority dates for the '844 Patent and '731 Patent.  On November 20, 2015, the Court entered an Order ruling against Blue Coat on all issues except the priority date for the '844 Patent.  Dkt. No. 486.  On November 20, 2015, the Court entered judgment in favor of Finjan.  Dkt. No. 487.

FINJAN'S MOTION FOR ENHANCED DAMAGES                    Case No. 13-cv-03999-BLF
AND PRE- AND POST-JUDGMENT INTEREST

# IV.       ARGUMENT

## A.       Finjan is Entitled to Enhanced Damages Under 35 U.S.C. § 284

Finjan is entitled to enhanced damages based on 35 U.S.C. § 284, which allows the court to "increase the damages [for infringement] up to three times the amount found or assessed."  35 U.S.C. § 284.  "The paramount determination in deciding to grant enhancement and the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances."  *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992)(citation omitted).  The purpose of Section 284 is to deter defendants from acting improperly.  *See, e.g.*, S. Rep. No. 79-1503, at 2 (1946) ("[T]he present discretion to award triple damages, will discourage infringement of a patent by anyone thinking that all he would be required to pay if he loses the suit would be a royalty.").

The Federal Circuit has set forth nine factors that "taken together assist the trial court in evaluating the degree of the infringer's culpability and in determining whether to exercise its discretion to award enhanced damages and how much the damages should be increased."  *Read*, 970 F.2d at 828.  The *Read* factors applied here are: (1) whether Blue Coat deliberately copied the ideas or design of another; (2) whether Blue Coat failed to investigate in good faith the validity and infringement of the patents-in-suit; (3) Blue Coat's behavior in the litigation; (4) Blue Coat's size and financial condition; (5) whether the result of the case shows that the case was close; (6) the duration of Blue Coat's misconduct; (7) whether Blue Coat took any remedial action; (8) Blue Coat's motivation for harm; and (9) whether Blue Coat attempted to conceal its misconduct.  *Id.* at 826-27 (citations omitted).  Not all factors need to be present for a court to award enhanced damages; rather, a court "must consider factors that render defendant's conduct more culpable, as well as factors that are mitigating or ameliorating."  *Id*. at 826 (citations omitted).

In addition, the analysis for enhanced damages under 35 U.S.C. § 284 should be made in view of the Supreme Court's recent decisions in *Octane Fitness* and *Highmark*, which applied a more flexible approach to analysis of "exceptional case" for finding attorneys' fees under 35 U.S.C. § 285.  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 134 S.Ct. 1749, 1756 (2014) ("District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion,

FINJAN'S MOTION FOR ENHANCED DAMAGES                     Case No. 13-cv-03999-BLF
AND PRE- AND POST-JUDGMENT INTEREST

considering the totality of the circumstances . . . in light of the considerations we have identified.")

(citations and internal quotations omitted); *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S.Ct.

1744, 1747 (2014).  Based on this recent Supreme Court precedent, a case can be deemed exceptional

by the preponderance of the evidence showing "frivolousness, motivation, objective unreasonableness

(both in the factual and legal components of the case) and the need in particular circumstances to

advance considerations of compensation and deterrence."  *See Octane Fitness*, 134 S.Ct. at 1756 n.6

(citation omitted).  While enhanced damages fall under Section 284 not Section 285, these two sections

are considered in parallel and involve many of the same considerations.[1]  Indeed, the enhanced

damages standard under Section 284 is even less stringent than the Section 285 standard because it

does not require an "exceptional case" finding.

Thus, in view of the Court's recent *Octane Fitness* and *Highmark* decisions, a flexible approach

should be used here in determining whether enhanced damages are appropriate.  Based on a careful

consideration of the totality of the circumstances, including the factors enumerated in *Read* as

addressed below, it is evident that enhanced damages are warranted here.

### 1.    Blue Coat Knew of Finjan's Patents and Intentionally Copied the Covered Technology

Blue Coat engaged in a bad faith campaign of deliberately copying Finjan's patented

technology.  Blue Coat was founded as a company named CacheFlow in 1996 focused on web

optimization and acceleration. In 2002, CacheFlow changed its name to Blue Coat and shifted its focus

to security, believing that "security sells."  Ex. 1[2], JTX 2013.  Blue Coat began partnering with other

companies to add security features to its products, including a partnership with Finjan.  Ex. 2, Trial Tr.

at 1271:5-13; Ex. 3, PTX 177; Ex. 4, PTX 253; Ex. 5, PTX 476; Ex. 6, PTX 619; Ex. 7, PTX 621.

---

[1] *See, e.g.*, *Halo Elecs., Inc. v, Pulse Elecs., Inc.*, 780 F.3d 1357, 1361 (Fed. Cir. 2015) (O'Malley, J., dissenting) (noting that the Federal Circuit's test for exceptional cases under Section 285 is "analogous" to its test for enhanced damages under Section 284, and the jurisprudence on both statutes has been "closely mirrored").

[2] Unless otherwise noted, all "Ex." citations are to exhibits attached to the Declaration of Benu Wells in Support of Finjan's Motion for Enhanced Damages.

4

Pursuant to this partnership, Blue Coat was able to distribute Finjan's security software with its products and instructed its users on how to integrate Finjan's products with its own products.  *Id.*

Yet Blue Coat began to realize how advantageous it would be to have Finjan's innovative security techniques as part of its own product line.  By the fall of 2003, there was an increasing awareness in the industry regarding the dramatic increase in number and severity of threats entering corporate networks.  Ex. 8, PTX 281.  Finjan was recognized as "a pioneer in proactive content behavior inspection" and "the inventor of proactive content behavior inspection" by leading market analysts.  *Id.*; *see also*, Ex. 5, PTX 476.  In mid-2007, Gartner issued a report noting that "Finjan offers one of the stronger anti-malware solutions, especially for targeted or zero-hour threats" while at the same time noting that "Blue Coat has no malware filtering capabilities of its own; it relies solely on its partners for this purpose...We expect Blue Coat to refocus on security in 2007."  Ex. 9, PTX 623.

FINJAN'S MOTION FOR ENHANCED DAMAGES                    Case No. 13-cv-03999-BLF
AND PRE- AND POST-JUDGMENT INTEREST



). Blue Coat's blatant disregard of Finjan's patent rights was persistent, as further shown in this internal email to Steve Schoenfeld:

> Competitors like M86/Finjan … have active content filters in their web gateways, thus more than just one AV engine.  The analysts like this level of protection and for three years have asked BC to build into ProxySG. One concern is Finjan patents….  We should build the active script filters, no question there, just blend in with what WebPulse does today.

Ex. 23, PTX 214 at BC0314140.

FINJAN'S MOTION FOR ENHANCED DAMAGES          Case No. 13-cv-03999-BLF
AND PRE- AND POST-JUDGMENT INTEREST

Therefore, Blue Coat's steadfast efforts to copy Finjan's patented technology into the accused products were successful, as further demonstrated by the fact that the jury found Blue Coat infringed multiple claims of five different patents. Thus, Finjan's request for trebled damages is appropriate to deter Blue Coat from believing that all it is required to pay for knowingly copying and infringing Finjan's patents is the royalty it would have paid had it properly sought a license.

### 2.    Blue Coat Did Not Have a Good Faith Belief that Finjan's Patents Were Invalid or Not Infringed

There is no evidence that Blue Coat had any belief, let alone a good faith belief or opinion of counsel, that the patents were invalid or that its products did not infringe. As shown above, Blue Coat was aware of Finjan's patents and that its products practiced Finjan's technology, yet it continued its infringing activity. Blue Coat did not take any precautions to avoid infringement—rather Blue Coat deliberately modeled its products after Finjan's technology. Thus, this factor weighs in favor of Finjan's requested enhanced damages.

### 3.    Blue Coat Engaged in a Vexatious Litigation Strategy

For the two years of active litigation leading up to trial, Blue Coat pursued objectively unreasonable claims and defenses and failed to limit its case in a meaningful way before trial.[3]  It was

---

[3] To streamline the issues involved in the case, the Court had provided a schedule for the parties to narrow their case to reduce the costs associated with patent litigation. Dkt. 98. In contrast to Blue Coat, Finjan faithfully followed the Courts guidance, and reduced its infringement case in a timely manner, drastically reducing its asserted claims to 13 claims across six patents well before trial. Dkt. No. 438; *see also* Dkt. Nos. 492-4, 492-5, Declaration of Lisa Kobialka in Support of Finjan's Motion for Attorneys' Fees ("Kobialka Decl."), Exs. 3-4 (Preliminary and Final election of claims).

FINJAN'S MOTION FOR ENHANCED DAMAGES                    Case No. 13-cv-03999-BLF
AND PRE- AND POST-JUDGMENT INTEREST

not until the eve of trial and during trial that Blue Coat finally dropped many of these claims and defenses, including its obviousness and written description defenses pursuant to 35 U.S.C. §§ 103 and 112.  Blue Coat pursued the remaining frivolous and incoherent defenses at trial, such as its anticipation defense based on "inherency," and its noninfringement defense that "counting" suspicious code did not involve "identifying" it.  Blue Coat also demanded a bench trial after the jury verdict to present moot defenses of prosecution history estoppel and laches.

Blue Coat's actions caused Finjan to waste precious time and resources preparing for trial and during trial.  Such misconduct establishes a disregard for Finjan and the valuable time of the Court and the jury, and disrespect for the judicial process as a whole.  Blue Coat's pursuit of these frivolous defenses was nothing more than a desperate and bad faith effort to force Finjan to unnecessarily incur additional expenses and delay Finjan from pursuing this case to final judgment.  This type of vexatious strategy during the litigation, as described further below, is an important consideration when deciding whether to enhance damages.  *Amsted Indus. Inc. v. Buckeyes Steel Castings Co.*, 24 F.3d 178, 183-84 (Fed. Cir. 1994) (affirming enhanced damages to "full potential legal effect" when "inappropriate litigation behavior" was a particularly important consideration); *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 978 (Fed. Cir. 1986) (affirming double damages where infringer "copied the claimed invention, took an untenable position regarding validity of the patent, and presented a frivolous defense"); *AAT Bioquest, Inc. v. Texas Fluorescence Labs., Inc.,* No. 14-CV-03909-DMR, 2015 WL 7708332, at *13 (N.D. Cal. Nov. 30, 2015) (enhancing damages where defendant's "misguided belief" in invalidity "rested on the weak position that the [prior art] anticipated or rendered obvious.").

### a. Blue Coat Raised and Abandoned Frivolous Obviousness and Written Description Defenses During the Trial

Blue Coat litigated in an unreasonable manner by pursuing frivolous invalidity defenses of obviousness and written description that it dropped at the last second at trial, when it had no intention of actually pursuing them.  Despite many opportunities well before trial to inform Finjan in good faith that it was dropping these defenses, Blue Coat refused to do so.  Then based on Blue Coat's lengthy and comprehensive opening statement, which did not refer to obviousness or written description, it was

8

apparent that Blue Coat did not intend to pursue these claims at trial.  During the pendency of the trial, Finjan repeatedly requested that Blue Coat confirm which invalidity claims it was pursuing.  Finjan did so to avoid spending precious time and resources during trial on issues that Blue Coat had no intention of presenting, as well as to notify relevant rebuttal witnesses who were travelling that they did not need to come to trial.  Dkt. No. 496-1, Kobialka Decl., ¶36.  Finjan was also attempting to identify the real issues that needed to be negotiated for the jury instructions and special verdict form, because Blue Coat was not responding to Finjan's proposed drafts of the jury instructions.

For over a week, Blue Coat refused to confirm whether it was withdrawing these defenses.  *Id.*, ¶33.  It was not until after Finjan closed its case that Blue Coat notified Finjan that it was no longer pursuing obviousness or written description defenses.  Dkt. No. 492-3, Kobialka Decl., Ex. 2.  Blue Coat did so only because the Court instructed it to notify Finjan of what claims it was pursuing in its case.  Ex. 2, Trial Tr. 1196: 21-1197-8.  By this time, which was over a week after the trial started, Finjan had already spent significant time preparing its expert witnesses and fact witnesses to rebut the defenses that Blue Coat had dropped.   Dkt. No. 496-1, Kobialka Decl., ¶¶33-36.

Blue Coat's untimely disclosure harmed Finjan, driving up the cost and expenditure of resources associated with addressing Blue Coat's frivolous claims.  For example, Finjan had two expert witnesses to rebut Blue Coat's obviousness claims and one expert witness to rebut the written description claims that Blue Coat did not present.  These experts reviewed and prepared for nearly double the number of invalidity defenses than what Blue Coat ultimately pursued.  Indeed, Finjan's experts prepared to address twelve references, when Blue Coat only presented five references in connection with its anticipation defenses at trial. Dkt. No. 293-4 at 5-7.  If Blue Coat had timely dropped these references, Finjan would not have unnecessarily wasted resources to prepare for them when Blue Coat had no intention of pursuing them at trial.  Finjan's counsel also negotiated and drafted multiple versions of the jury instructions and verdict form that included these unnecessary obviousness and written description defenses.  Dkt. No. 496-1, Kobialka Decl., ¶33.  It was unnecessary for both the Court and counsel to have addressed these issues in chambers during their discussions of the jury instructions and special verdict form.

9

1    Furthermore, obviousness includes unique concepts for which Finjan was required to prepare,

2  such as motivation to combine, operability of the combined system, and various secondary

3  considerations of non-obviousness such as commercial success and copying.  *Syntex (USA) LLC v.*

4  *Apotex Inc.*, No. C 01-02214 MJJ, 2006 WL 1390435, at *1 (N.D. Cal. May 18, 2006), *aff'd sub nom,*

5  *Syntex (U.S.A.) LLC v. Apotex, Inc.*, 221 F. App'x 1002 (Fed. Cir. 2007).  Indeed, due to the

6  untimeliness of Blue Coat's disclosures, Finjan unnecessarily had its former Chief Technology Officer,

7  Yuval Ben-Itzhak, fly to California from Prague to attend the trial as a fact witness to rebut Blue

8  Coat's obviousness claims.  Mr. Ben-Itzhak was specifically identified to discuss secondary

9  considerations of non-obviousness in the Pretrial Order, a topic only relevant to rebutting Blue Coat's

10  claim of obviousness. Dkt. No. 293-5 at 6.  Despite Finjan's repeated requests to Blue Coat during

11  trial to confirm whether it was pursuing obviousness, Finjan discovered **after** Mr. Ben-Itzhak had

12  already flown to the U.S. that Blue Coat no longer intended to pursue it.   Dkt. No. 496-1, Kobialka

13  Decl., ¶36.  As such, Blue Coat's untimeliness in dropping this frivolous defense resulted in needless

14  expenses for Finjan in flying in Mr. Ben-Itzhak and inconvenience for an extremely busy witness.

15    Further, Blue Coat's obviousness combinations were frivolous and should have been dropped

16  well before trial.  For example, Finjan's experts demonstrated that Blue Coat failed to show motivation

17  to combine or that the resulting combination would be operable.  *See* Dkt. No. 293-11 (Lyon Report) at

18  ¶¶ 207-209, 223-227, 232-233, 369-371, 393-395, 418-420, 539-542, 575-580, 601-604, 636-640; Dkt.

19  No. 210-6 (Jaeger Report) at ¶¶ 190-199, 237-242, 279-287, 327-330, 370-372, 494-500, 525-536,

20  647, 669.

21    Blue Coat also caused Finjan to expend unnecessary resources in preparing to respond to a

22  frivolous defense of "written description."  Similar to its obviousness defense, Blue Coat abruptly

23  dumped this invalidity defense at the last second during trial, after Finjan had already prepared a

24  rebuttal.  Written description requires that the patent application supports the claims of the patent that

25  issues from the application.  35 U.S.C. § 112.  A person of ordinary skill in the art should understand

26  that the applicant was in possession of the claims when the application was filed.  *Ariad Pharms., Inc.*

27  *v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (citations omitted).  The purpose of written

28

10

description is to keep applicants from drafting patent claims that claim more than what was originally filed. This was never an issue for the Finjan patents and Blue Coat's written description defense was completely without merit. All of the terms raised by Blue Coat's experts were disclosed in the originally filed applications. In fact, in many cases, the term was included verbatim in the original applications, proving how frivolous Blue Coat's position always was. *See* Dkt. No. 293-11 (Lyon Report) at ¶¶ 125-146.

While Blue Coat's position was frivolous, it still required time and resources for Finjan to respond to since Blue Coat refused to drop this defense. Blue Coat's Dr. Necula opined in his expert report on the invalidity of the '780 and '968 Patents based on the alleged lack of written description. Dkt. No. 293-18 (Necula Report) at ¶¶ 197-201, 1471-1474. Finjan's expert Dr. Lyon rebutted these baseless allegations and identified numerous examples of support for the identified terms in the application as it was filed. Dkt. No. 293-11 (Lyon Report) at ¶¶ 125-146. Despite Dr. Lyon definitively proving that the claims were adequately supported by the filed application, Blue Coat continued to pursue its written description allegations by including them in the Pretrial Order. Dkt. No. 293-4 at 5-7. Finjan was also required to draft and respond to several versions of jury instructions on written description, which were ultimately irrelevant. It was not until trial was nearly over that Blue Coat first informed Finjan that it was not pursing its written description defense. Dkt. No. 492-3, Kobialka Decl., Ex. 2. At this point, Finjan had expended considerable resources in rebutting Blue Coat's allegations, including time in preparing Dr. Lyon to address these arguments at trial.

### b. Blue Coat Pursued Objectively Meritless Defenses of Anticipation and Noninfringement of the '844 Patent

Blue Coat also raised several defenses that were objectively meritless, demonstrating a lack of good faith. Ultimately, the only invalidity defense that Blue Coat actually presented at trial was built on the concept of "inherency." Ex. 2, Trial Tr. at 1632:16-19, 1644:11-17, 1651:1-6; 1843:18-22; 1855:5-10, 1858:23-25, 1859:10-14. All of Blue Coat's anticipation arguments relied on at least one element, if not nearly all elements of an asserted claim, being "inherent" in the reference.

11

FINJAN'S MOTION FOR ENHANCED DAMAGES                    Case No. 13-cv-03999-BLF
AND PRE- AND POST-JUDGMENT INTEREST

Blue Coat's inherency-based anticipation arguments were frivolous.  Anticipation is a strict standard that requires every single element of a claim be included within a <u>single</u> prior art reference. *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F.Supp.3d 928, 952 (N.D. Cal. 2015) (citing *Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1332-33 (Fed. Cir. 2010)).  In some very limited instances, a party can prove that while a limitation is not explicitly stated within a prior art reference, the limitation is "inherent" because it is "necessarily present" within a prior art reference.  *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002) ("Inherent anticipation requires that the missing descriptive material is necessarily present, not merely probable or possibly present, in the prior art.") (internal quotations and citations omitted).  In other words, what is described in the reference can only be accomplished in the same way as the limitation and no other way is possible.  This is a very high and difficult burden, particularly since the evidentiary burden of invalidity is the higher standard of "clear and convincing evidence."  *Motorola Mobility, LLC v. Int'l Trade Comm'n*, 737 F.3d 1345, 1348 (Fed. Cir. 2013) (citation omitted).

Despite this high burden, Blue Coat's anticipation defenses relied entirely on inherency, establishing that they were fatally flawed from the outset and should never have been brought.  Ex. 2, Trial Tr. at 1632:16-19, 1644:11-17, 1651:1-6; 1843:18-22; 1855:5-10, 1858:23-25, 1859:10-14.  It was simply not credible for Blue Coat to assert, as it did during trial, that each reference it relied upon disclosed one or more elements "inherently" to prove anticipation.   Indeed, in many cases Blue Coat did not even try to meet the requirements of the inherency standard.  *Id.*, Trial Tr. at 1644:11-25.  Thus, Blue Coat's anticipation defenses were frivolous.

In addition, for non-infringement of the '844 Patent, Blue Coat rested its case on the incoherent defense that one could "count" suspicious code without first "identifying" the suspicious code being counted.  *Id.*, Trial Tr. at 1523:23-1524:11.  The '844 Patent includes a limitation for a profile that "identifies suspicious code."  Blue Coat argued that this element was not met in its products because they only "count" suspicious code, but do not "identify" suspicious code.  *Id.*, Trial Tr. at 1523:23-1524:11.  Astonishingly, this was Blue Coat's non-infringement defense for the '844 Patent, one that it raised time and time again throughout the case, including in its opening statements, during the

FINJAN'S MOTION FOR ENHANCED DAMAGES          Case No. 13-cv-03999-BLF
AND PRE- AND POST-JUDGMENT INTEREST

testimony of its witnesses and in its closing arguments.  *Id.*, Trial Tr. at 244:22-245:3, 268:24-269:11, 271:2-3, 2113:20-22, 2117:8-14, 2120:24-25, 2122:9-23.  The frivolous nature of this defense could be seen when Blue Coat's expert, Dr. Bestavros, was unable to answer how one could "count" something without first "identifying" what was being counted.  *Id.*, Trial Tr. at 1537:18-1539:5.  Finjan demonstrated the baselessness of this defense with a handful of coins on the Elmo projector showing that no coin could be counted unless it was first identified.  *Id.*

### c. Blue Coat Raised Untimely and Moot Defenses of Laches and Prosecution History Estoppel in a Bench Trial

After trial was complete and the jury had returned a verdict, Blue Coat demanded a bench trial for other defenses on alleged "non-jury" issues that it claimed required resolution.  All of the issues Blue Coat raised could have been raised earlier and thus were untimely.  Of the four issues that Blue Coat identified as requiring a bench trial, two of those issues, namely prosecution history estoppel and laches, were meritless, entirely irrelevant to the outcome of the case and should never have been raised. Because Blue Coat pursued these defenses at the bench trial, Finjan and the Court had to expend time and resources to address them.  After a day-long bench trial on these issues, the Court awarded judgment in favor of Finjan.  Dkt. No. 487.

Blue Coat's conduct with respect to its laches defenses warrants enhanced damages because (1) Blue Coat pursued laches defenses that, regardless of the outcome, did not affect any issue in the case, (2) Blue Coat's laches defenses were not based on the law and (3) with respect to the '780 Patent, Blue Coat's defense was untimely because it was not disclosed during discovery.  First, Blue Coat's laches defenses were irrelevant to any issue in the case as a matter of law because Finjan only sought post-complaint damages, yet laches only pertains to pre-suit damages.  *Rockwell Int'l Corp. v. SDL, Inc.*, 103 F.Supp.2d 1192, 1196 (N.D. Cal. 2000) ("In patent infringement actions, laches bars recovery of damages plaintiff might have suffered before initiating litigation but does not bar prospective relief") (citation omitted).  Indeed, the Court recognized in its Order after the bench trial that: "Defendant's laches defense, regardless of outcome, will not affect any issue in this action."  Dkt. No. 486 at 20.  As

FINJAN'S MOTION FOR ENHANCED DAMAGES                    Case No. 13-cv-03999-BLF
AND PRE- AND POST-JUDGMENT INTEREST

the Court also noted, Blue Coat "appears to have hinged its laches argument on the hope that the Federal Circuit would dramatically expand the scope of laches in the face of *Petrella*." *Id*. at 20.

Second, Blue Coat's laches defenses were not based on any established understanding of the law of laches. Blue Coat's reckless insistence on pursuing the laches defenses, based on an unreasonable interpretation of the law and a very unlikely chance that the law may drastically change, forced Finjan and the Court to devote unnecessary resources to address these defenses. Indeed, Finjan had to prepare for, present and cross-examine live witnesses and present evidence at the bench trial, as well as prepare briefing associated with the bench trial. Third, Blue Coat's laches defense related to the '780 Patent was untimely. Dkt. No. 486 at 20. As the Court noted, Blue Coat had not asserted laches for the '780 Patent in a response to an interrogatory seeking the bases for Blue Coat's laches defense. *Id.* Nonetheless, Blue Coat pursued this laches defense at the bench trial, forcing Finjan to defend against a defense that it never disclosed to Finjan.

Blue Coat also raised at the bench trial the defenses of prosecution history estoppel with respect to infringement of the '844, '968 and '780 Patents. The Court found these defenses moot. Dkt. No. 486 at 12. Indeed, raising this defense was nonsensical, as prosecution history estoppel is only available as a defense when there is a finding of infringement under the doctrine of equivalents. *See Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309, 1318, 1321-22 (Fed. Cir. 2013). For all three of these patents, the jury found literal infringement. Thus, Blue Coat's prosecution history estoppel defenses were meaningless and inapplicable to the jury's finding of literal infringement and would not change the jury's determination of infringement.[4] Dkt. No. 487. By raising these frivolous, irrelevant defenses, Blue Coat unnecessarily wasted Finjan's and the Court's resources.

Therefore, Blue Coat's insistence on pursuing and failing to timely withdraw numerous frivolous defenses demonstrates the unreasonable manner in which Blue Coat litigated. This vexatious litigation conduct warrants the enhanced damages that Finjan seeks.

---

[4] While the jury found both literal infringement and infringement under the doctrine of equivalents on the verdict form, the finding of infringement under the doctrine of equivalents was merely "surplusage and not necessary for the resolution of the action." Dkt. No. 486 at 12.

FINJAN'S MOTION FOR ENHANCED DAMAGES                    Case No. 13-cv-03999-BLF
AND PRE- AND POST-JUDGMENT INTEREST

### 4.     Blue Coat is Large Company With Substantial Revenues

Blue Coat is a large multinational corporation with over 1,400 employees worldwide.  Ex. 25 (Blue Coat Corporate Fact Sheet).  █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.  At trial, Blue Coat boasted of its commercial success.  Ex. 2, Trial Tr. at 194-95; *see also* Ex. 27 (Blue Coat opening slides).  In February 2012, Blue Coat was acquired by Thoma Bravo for $1.3 billion and then in May 2015 by Bain Capital for $2.4 billion.  *See* Ex. 25.  In contrast, Finjan is a small company with only twelve full-time employees and a single office.  Finjan's annual revenues in 2014 were $6 million.  Ex. 28, JTX-2085 at 4.  The relative size difference between Finjan and Blue Coat supports enhancement of damages.  *See Maxwell v. Angel-Etts of Calif.*, No. 99-10516 DT, 2001 U.S. Dist. LEXIS 25418, at *42-43 (C.D. Cal. July 9, 2001), *aff'd*, 53 Fed. Appx. 561 (Fed. Cir. 2002) (enhancing where supported by disparate financial conditions).

Moreover, Blue Coat is capable of paying trebled damages without severe financial impact on the company.  Here, an award of about $120 million will not dramatically impact Blue Coat's financial condition.  ███████████████████████████████████████████████  Dkt. 293-16 (Davis Expert Report) at 45; *see also i4i Ltd. P'ship v. Microsoft Corp.,* 598 F.3d 831, 858 (Fed. Cir. 2010), *aff'd*, 131 S.Ct. 2238 (2011) (enhancing damages where "the jury's award [of $200 million] was only a small fraction" of infringing profits).  While the jury's damages award of approximately $40 million may compensate Finjan for infringement, it does not serve a punitive function to deter Blue Coat from future bad faith infringement because of Blue Coat's high profit margins and revenue.  Thus, Blue Coat's size and financial condition favor an enhancement of damages.

### 5.     The Case Was Not a Close Question

The decision in this case was unequivocally in Finjan's favor and did not reflect a close question on the merits.  The jury found that Blue Coat infringed five of Finjan's patents and that all six of Finjan's asserted patents are valid.  For four of the five infringed patents, the jury specifically found

FINJAN'S MOTION FOR ENHANCED DAMAGES                    Case No. 13-cv-03999-BLF
AND PRE- AND POST-JUDGMENT INTEREST

that multiple claims of the patents were infringed literally as well as under the doctrine of equivalents. As a further indication that the jury decision was strongly in Finjan's favor, the jury granted Finjan damages at or higher than the conservative minimum damages amount that Finjan's damages expert identified for the '731, '968, '780 and '633 Patents, and granted Finjan the full amount of minimum royalty it requested for the '844 Patent.  Blue Coat's noninfringement and invalidity defenses did not pose close questions because Blue Coat did not offer meritorious arguments in support of these defenses.  Finjan put forward overwhelming expert testimony, percipient witnesses, and documentary evidence that all elements of the claims were infringed and valid.  Blue Coat failed to rebut this evidence. In fact, often Blue Coat's own witnesses verified the evidence.

> **a.    Blue Coat's Noninfringement Arguments Were Baseless and Weak**

Blue Coat did not provide plausible noninfringement defenses at trial.  With respect to the '844 Patent, which accounts for $24 million of the jury's $40 million verdict, Blue Coat tellingly did not present a single fact witness at trial to testify regarding the accused WebPulse product.  Blue Coat also failed to rebut evidence that the elements of the asserted claims are satisfied, such as the evidence showing that the inspector receives the downloadable and that "PDF_Launch1" and eval, unescape, and document.write calls are suspicious code.  Blue Coat's main noninfringement defense was the baseless argument described above that suspicious code does not need to be "identified" as required by the claims in order to be "counted."  Finjan easily demonstrated the futility of this defense on cross-examination of Dr. Bestavros using coins, as described above.  The jury found literal infringement of each asserted claim of the '844 Patent and awarded the full amount of damages that Finjan requested.

With respect to the '731 Patent, Blue Coat's engineer *admitted* at his deposition that the caching required by the claims was present in the accused products. Ex. 2, Trial Tr. at 1558:3-15 (referring to Tyler Anderson's deposition testimony).  Dr. Bestavros was never able to rebut this testimony and in fact failed to address the specific language of the accused claim elements.  *Id*., Trial. Tr. at 1558:5-1559:13.  The jury found literal infringement of each asserted claim of the '731 Patent and awarded Finjan $6,000,000 in damages for this patent (where Finjan's damages expert had

FINJAN'S MOTION FOR ENHANCED DAMAGES          Case No. 13-cv-03999-BLF
AND PRE- AND POST-JUDGMENT INTEREST

1  identified $3,973,073 as the higher end of the minimum conservative damages range for this patent).

2  Dkt. No. 438.

3       With respect to the '968 Patent, Blue Coat never rebutted the substantial infringement evidence

4  that Finjan put forward, including the testimony of Dr. Mitzenmacher, Blue Coat's documents, the

5  testimony of Blue Coat's personnel and Dr. Mitzenmacher's testing of Blue Coat products.  The jury

6  found literal infringement of the asserted claim of the '968 Patent and awarded Finjan $7,750,000 in

7  damages for this patent (where Finjan's damages expert had identified $5,166,470 as the higher end of

8  the minimum conservative damages range for this patent).  Dkt. No. 438.

9       With respect to the '780 Patent, Blue Coat's noninfringement defense hinged on the wrong

10  construction for the hashing element.  Specifically, Dr. Bestavros used a construction that would

11  require performing a hashing function on the combination of a downloadable and at least one fetched

12  software component, which was not the parties' agreed-upon construction.  Dkt. No. 118 at 4

13  (construing this element as "performing a hashing function on the Downloadable together with its

14  fetched software components)."  Dr. Bestavros also failed to dispute the evidence that Finjan presented

15  regarding the functionality of the accused products with respect to the '780 Patent.  The jury found

16  literal infringement of each asserted claim of the '780 Patent and awarded Finjan $111,787 in damages

17  for this patent (where Finjan's damages expert had identified $111,787 as the higher end of the

18  minimum conservative damages range for this patent).  Dkt. 438.

19       With respect to the '633 Patent, Blue Coat's main defense was that the accused products do not

20  employ mobile protection code as required by the asserted claim.  However, on cross-examination,

21  Blue Coat's expert Dr. Hicks *admitted* that "Kernel Scout" is mobile protection code and that it must

22  be loaded into the accused MAA product.  Ex. 2, Trial Tr. at 1667:3-24.  The jury found infringement

23  of the asserted claim of the '633 Patent and awarded Finjan $1,666,700 (where Finjan's damages

24  expert had identified $1,111,133 as the higher end of the minimum conservative damages range for

25  this patent).  Dkt. 438.   Blue Coat later made the weak claim of argument-based prosecution history

26  estoppel during the bench trial, even though the prosecution history was devoid of any statements close

27

28

FINJAN'S MOTION FOR ENHANCED DAMAGES          Case No. 13-cv-03999-BLF
AND PRE- AND POST-JUDGMENT INTEREST

1    to a "clear and unmistakable surrender" of subject matter as required to apply prosecution history

2    estoppel.  Dkt. 486 at 12-13.  The Court rejected Blue Coat's argument in its Order.  *Id.*

3                    **b.    Blue Coat's Invalidity and Laches Defenses Were Frivolous**

4            Blue Coat did not mount any sustainable invalidity defense, and thus unsurprisingly, the jury

5    found all six asserted patents to be valid.   In fact, Blue Coat never came close to meeting its burden of

6    clear and convincing evidence for invalidity.  For the '822, '633, and '968 Patents, the Patent Office

7    had already considered and rejected invalidity based on the Ji reference (for the '822 and '633 Patents)

8    and the McClain reference (for the '968 Patent), which were the only prior art references asserted by

9    Blue Coat at trial for these patents.

10           With respect to obviousness and written description, Blue Coat dropped these frivolous

11   defenses during trial.  Instead, Blue Coat relied entirely on an inherency theory of anticipation for each

12   patent.  As described above, inherency is a very difficult standard to prove, requiring clear and

13   convincing evidence that elements not disclosed in a single prior art reference are "necessarily . . .

14   present" in that reference.  *See Motorola Mobility*, 737 F.3d at 1348-50.  Blue Coat could not come

15   close to demonstrating by clear and convincing evidence that disputed elements were "necessarily

16   present" in the asserted anticipatory references, and at times did not even try.  Ex. 2, Trial Tr. at

17   1632:16-19, 1644:11-17, 1651:1-6; 1843:18-22; 1855:5-10, 1858:23-25, 1859:10-14.

18           Blue Coat also made a last-ditch attempt after the jury trial to invalidate the '844 Patent under

19   Section 101 during the bench trial.  However, this was a weak defense, particularly in view of the

20   hypothetical claim in the Patent Office's guidance that is strikingly similar to the claim at issue in the

21   '844 Patent, which the Patent Office has specifically explained is not abstract under Section 101.  *See*

22   Dkt. 486 at 15-17 (rejecting this defense and finding that the '844 Patent has "important and specific

23   limitations about providing pro-active protection").  Blue Coat also pursued an irrelevant defense of

24   laches, which the Court found was in part untimely and in any event moot because Finjan did not seek

25   pre-suit damages.  *Id.* at 19-20.

26           Therefore, Blue Coat's inability to put forward plausible defenses in this action directly

27   supports enhancing damages.  *See Kaufman,* 807 F.2d at 978-79 (affirming award of double damages

28
                                                        18

where the infringer's noninfringement defense was weak); *AAT Bioquest*, 2015 WL 7708332, at *14

(awarding enhanced damages where the case was not close on the merits due to the defendant's "weak

presentation of its defenses").

### 6.   Blue Coat Has Infringed for Years

As discussed above, after Finjan and Blue Coat became partners in 2002 and Blue Coat decided

to shift its focus to security, Blue Coat explicitly and repeatedly acknowledged a desire to copy

Finjan's technology despite knowledge of Finjan's patents.  Blue Coat succeeded in doing so and

began infringing the '780 Patent in 2004, the '844, '731, and '968 Patents in 2008, and the '633 Patent

in 2013, as reflected by the parties' agreed-upon hypothetical negotiation dates. Ex. 2, Trial Tr. at

1047-48.   Based on Blue Coat's own representations, Blue Coat's accused products have enjoyed

substantial commercial success at the expense of Finjan's patent rights during Blue Coat's years of

infringement.  *See* Ex. 29, Bench Trial Tr. at 34-46 (Blue Coat arguing that there has been "a constant

growth of revenue and growth of customer base"); Dkt. No. 473-3 (Blue Coat's Findings of Fact) at ¶¶

258-260; *see also* Ex. 26, JTX 2021 (Blue Coat claiming that there was substantial growth in North

America revenue for ProxySG, ProxyAV and WebFilter from 2007 to 2014).

In fact, Blue Coat has continued to sell its infringing products through the course of the

litigation and still sells its infringing products today.  Thus, the length and extent of Blue Coat's

misconduct and infringement warrants significant enhanced damages.  *See I-Flow Corp. v. Apex Med.

Techs., Inc.,* No. 07CV1200 DMS (NLS), 2010 WL 114005, at *3 (S.D. Cal. Jan. 6, 2010) ("Six years

of misconduct is substantial, and thus this factor weighs in favor of an award of enhanced damages.").

### 7.   Blue Coat Has Not Engaged in Any Remedial Action to Avoid Infringement of Finjan's Patents

Blue Coat has not taken any remedial action to avoid infringement of Finjan's patents.  In fact,

the evidence proves that Blue Coat deliberately copied Finjan's patented technology, and that Blue

Coat knew of Finjan's patents yet continued to develop and sell the infringing products.  Indeed, Blue

Coat unabashedly continued to sell the infringing products throughout this litigation and after the

jury's finding and Court's judgment of infringement.  Blue Coat never attempted to design around

FINJAN'S MOTION FOR ENHANCED DAMAGES                        Case No. 13-cv-03999-BLF
AND PRE- AND POST-JUDGMENT INTEREST

Finjan's patents, even after Finjan filed this lawsuit.  Blue Coat even proceeded to acquire Norman

Shark to sell Blue Coat's accused MAA product (which, in combination with ProxySG and CAS,

infringes the '633 Patent) in December 2013, *after* Finjan filed this suit, with full knowledge of

Finjan's patents and infringement claims.  Ex. 2, Trial Tr. at 1173:12-20; Ex. 29, Bench Trial Tr. at

83:13-84:10.

Blue Coat's ongoing callous disregard of Finjan's patent rights has prompted Finjan to file a

second lawsuit against Blue Coat, involving additional Blue Coat products and systems that infringe

three of the same patents that the jury found valid and infringed in this case, as well as four additional

Finjan patents.  Blue Coat is also continuing to release products that infringe Finjan's patents, which

Blue Coat cannot dispute it is well aware of by this point.  *See* Dkt. No. 1 of Blue Coat II case.  Thus,

Blue Coat has taken no remedial action to attempt to cure its infringing actions that would justify a

lower amount of enhanced damages.  Instead, Blue Coat has engaged in an unrepentant campaign to

continue its infringement.  *See Intra Corp. v. Hamar Laser Instruments, Inc.*, 662 F.Supp. 1420, 1439

(E.D. Mich. 1987), *aff'd*, 862 F.2d 320 (Fed. Cir. 1988), *cert. denied*, 490 U.S. 1021 (1989) (enhanced

damages awarded but only doubled because defendant "voluntarily ceased manufacture and sale of

infringing systems during the pendency of this litigation…").

Thus, Blue Coat's lack of remedial action and persistent flouting of Finjan's patent rights

further warrant Finjan's requested enhanced damages to deter Blue Coat from such misconduct.  *See*

*Univ. of Pitts. v. Varian Med. Sys., Inc.*, No. 08cv1307, 2012 WL 1436569, at *6-7 (W.D. Pa. Apr. 25,

2012) *aff'd in part, vacated in part on other grounds by* 561 Fed. Appx. 934 (Fed. Cir. 2014) (finding

"[defendant's] lack of remedial measures weigh in favor of enhanced damages" because "[defendant]

did not successfully re-design around the products or voluntarily stop making them once litigation

began.") (citations omitted).

### 8.   Blue Coat Was Motivated by Financial Gain to Steal Finjan's Technology

Blue Coat was clearly motivated by financial gain to copy Finjan's technology at any expense,

including the knowing trampling of Finjan's patent rights.  As discussed above, Blue Coat was aware

of Finjan's patents and technology, employed Finjan's products through the companies' partnership,

20

realized that Finjan's proactive technology was critical to succeed in the industry, and proceeded to deliberately copy Finjan's patented technology with no regard to Finjan's patent rights.  Indeed, Blue Coat specifically employed strategies referred to internally as "Finjan Killer" and "Finjan Attack" in its concerted attempts to drive Finjan out of the market.  And Blue Coat's strategy worked: by Blue Coat's own admissions, its revenue for the accused products substantially increased in the periods after its copying of Finjan's patented technology.  *See* Ex. 29, Bench Trial Tr. at 34-46; Dkt. No. 473-3 (Blue Coat's Findings of Fact) at ¶¶ 258-260; *see also* Ex. 26, JTX 2021.  Thus, Blue Coat's bad faith motivation warrants Finjan's requested enhancement of damages.

Therefore, in view of the totality of the factors set forth above, as considered under *Read* and in view of *Octane Fitness* and *Highmark*, Finjan is entitled to enhanced damages in this action.

### B.      Finjan is Entitled to Pre-Judgment Interest

#### 1.      Awarding Prejudgment Interest to a Prevailing Patentee is the Rule

Under 35 U.S.C. § 284, "[u]pon a finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement . . . **together with interest** and cost as fixed by the court."  (emphasis added).  Awarding prejudgment interest to a prevailing patentee in a patent infringement action is "the rule, not the exception."  *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1361 (Fed. Cir. 2001); *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 656 (1983) ("[P]rejudgment interest should be awarded under [35 U.S.C.] § 284 absent some justification for withholding such an award.").  A prevailing patentee is entitled to prejudgment interest, absent extraordinary circumstances.  *Asetek Danmark A/S v. CMI USA, Inc.*, No. 13-cv-00457-JST, 2015 WL 5568360, at *23 (N.D. Cal. Sept. 22, 2015) (citations omitted).

Prejudgment interest is awarded "to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement."  *Gen. Motors*, 416 U.S. at 655-56.  "An award of interest from the time that the royalty payments would have been received merely serves to make the patent owner whole, since his damages consist not only of the value of the royalty payments but also of the foregone use of the money between the time of infringement and the date of the judgment."  *Id.*

FINJAN'S MOTION FOR ENHANCED DAMAGES                    Case No. 13-cv-03999-BLF
AND PRE- AND POST-JUDGMENT INTEREST

### 2. Prejudgment Interest Should Be Awarded at the Prime Rate, Compounded Annually From the Date Finjan Filed the Complaint

Finjan is entitled to prejudgment interest running from the date Finjan filed its complaint, i.e., August 28, 2013, to the Court's entry of judgment on November 20, 2015. It is well-settled that "prejudgment interest should be awarded from the date of infringement to the date of judgment." *Nickson Indus., Inc. v. Rol Mfg. Co.*, 847 F.2d 795, 800 (Fed. Cir. 1988) (citations omitted); *see also Bio-Rad Labs., Inc. v. Nicolet Inst. Corp.*, 807 F.2d 964, 967 (Fed. Cir. 1986). Here, the Court instructed the jury, pursuant to the stipulation of the parties, that "the date that damages begin to be calculated in this case is the date this lawsuit was filed, which is August 28, 2013." Ex.2, Trial Tr. at 2018:8-10. Thus, notwithstanding that Finjan is entitled to prejudgment interest from the date of the hypothetical negotiation of each of the infringed patents (which date back as early as 2004), Finjan is conservatively only seeking prejudgment interest from the date it filed its complaint (i.e., August 28, 2013) through the entry of judgment on November 20, 2015.

In this case, the appropriate rate and compounding structure for prejudgment interest is the prime rate compounded annually. The rate of prejudgment interest is left to the wide discretion of this Court, "which may award interest at or above the prime rate." *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991) (citations omitted). Courts recognize "that the prime rate best compensate[s] a patentee for lost revenues during the period of infringement because the prime rate represents the cost of borrowing money, which is a better measure of the harm suffered as a result of the loss of the use of money over time." *See e.g., Finjan Software, Ltd. v. Secure Computing Corp.*, No. 06-369, 2009 WL 2524495, at *13 (D. Del. Aug. 18, 2009), aff'd in part, rev'd in part on other grounds, 626 F.3d 1197 (Fed. Cir. 2010) (internal quotations and citations omitted). The prime rate is appropriate regardless of whether the patentee borrowed at that rate. *IMX, Inc. v. LendingTree, LLC*, 469 F.Supp.2d 203, 227 (D. Del. 2007) (citing *Uniroyal*, 939 F.2d at 1545 ("[I]t is not necessary that a patentee demonstrate that it borrowed at the prime rate in order to be entitled to prejudgment interest at that rate.") (citation omitted)).

FINJAN'S MOTION FOR ENHANCED DAMAGES
AND PRE- AND POST-JUDGMENT INTEREST

Case No. 13-cv-03999-BLF

The Federal Circuit has endorsed awarding prejudgment interest at the prime rate, as have the Northern District of California and numerous district courts in patent cases. *See, e.g., Lam, Inc. v. Johns–Manville Corp.*, 718 F.2d 1056, 1066 (Fed. Cir. 1983) ("The district court may fix the interest and select an award above the statutory rate, or select an award at the prime rate.") (internal quotations and citations omitted); *Junker v. HDC Corp.*, No. C-07-0594 JCS, 2008 WL 3385819, at *6 (N.D. Cal. July 28, 2008); *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-1431 SBA, 2008 WL 928535, at *3 (N.D. Cal. Apr. 4, 2008) (collecting cases in Northern District of California that awarded prejudgment interest based on the prime rate); *Asetek Danmark*, 2015 WL 5568360, at *24 ("The Court finds it reasonable to award Asetek prejudgment interest at the prime rate, compounded monthly."). Thus, the prime rate should be applied to determine the amount of prejudgment interest to which Finjan is entitled.

In addition, the prime rate should be compounded annually. In "applying prejudgment interest, courts have recognized that compounding is necessary to fully compensate the patentee." *Fresenius*, 2008 WL 928535, at *2 (citation and internal quotations omitted). "Because a patentee's damages include the foregone use of money, compounding is needed to account for the time value of money." *Id.* Thus, "courts have approved annual compounding and even daily compounding." *Id.* Here, annual compounding is appropriate for determining prejudgment interest because Blue Coat provided its revenue data on an annual basis. *See* Ex. 26, JTX 2021 (Product Revenue, Annual (FY2007-2014)).

Moreover, it is undisputed that the jury awarded Finjan a lump sum damages award through the life of each the infringed patents that would have been paid at the time of the first infringement. Dkt. No. 438.[5] Courts routinely calculate prejudgment interest based on the entire amount of a lump sum award as of the date of first infringement. *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-CV-72 DF, 2010 WL 5140718, at *6 (E.D. Tex. Sept. 27, 2010) ("This prejudgment interest is on the lump

---

[5] As the Court explicitly instructed the jury in this manner: "Finjan is seeking reasonable royalty damages in the form of a one-time lump sum payment. **A one-time lump sum payment is a payment that the infringer would have paid at the time of the hypothetical negotiation** for a license covering all sales of that licensed product for the life of the patent, both past and future." Ex. 2, Trial Tr. at 2011:15-20 (emphasis added).

FINJAN'S MOTION FOR ENHANCED DAMAGES                    Case No. 13-cv-03999-BLF
AND PRE- AND POST-JUDGMENT INTEREST

sum awarded by the jury and therefore runs on the entire lump sum from the time of the hypothetical negotiation."); *see also* Ex. 32, *Mondis Tech. Ltd. v. LG Elecs., Inc.*, No. 2:07-cv-565-TJW-CW, Dkt. No. 666, at *3 n.2 (E.D. Tex. Aug. 30, 2011) ("the Court will consider the award to be a lump sum payment paid on [the date of first infringement]"); *Mondis Tech. Ltd. v. Chimei Innolux Corp.*, No. 2:11-CV-378-JRG, 2012 WL 1554645, at *4 (E.D. Tex. Apr. 30, 2012) (subsequent history omitted) (awarding prejudgment interest on lump sum supplemental damages award as of the date of first infringement); *DDR Holdings, LLC v. Hotels.com, L.P.*, No. 2:06-cv-42-JRG, 2013 WL 3187163, at *2 (E.D. Tex. June 20, 2013) (awarding prejudgment interest as of date of first infringement in 2006 notwithstanding that expert only provided data for 2010-2012); *Comcast IP Holdings I, LLC v. Sprint Communications Co.*, No. 12-cv-0205-RGA, 2015 WL 4730899, at *8-9 (D. Del. Aug. 10, 2015) (awarding prejudgment interest for all infringed patents as of the time of the first hypothetical negotiation notwithstanding that several patents issue later).

Thus, prejudgment interest should be calculated based on the entire value of the jury's lump sum damages award from the date the complaint was filed (which, in most cases, is years after the date of first infringement, demonstrating the conservative nature of Finjan's request for interest) through the entry of judgment and compounded annually.  This best compensates Finjan for the harm it suffered as a result of the loss of the use of money over time.  Because there are no exceptional circumstances that warrant a withholding of prejudgment interest, Finjan requests that the Court award prejudgment interest at the prime rate of 3.25%, compounded annually, to the jury's damages award, which results in a prejudgment interest award of $2,922,229.26.  Ex. 30 (table calculating interest rates); *see also*, Ex. 31 (Prime Interest Rate History).

## C.    Finjan is Entitled To Post-Judgment Interest

The granting of postjudgment interest is automatic under the governing statute.  28 U.S.C. § 1961 ("Interest shall be allowed on any money judgment in a civil case recovered in a district court.").  Under § 1961, the amount of postjudgment interest is determined by using the "weekly average 1-year constant maturity Treasury yield . . . compounded annually."  Postjudgment interest should be

24

FINJAN'S MOTION FOR ENHANCED DAMAGES          Case No. 13-cv-03999-BLF
AND PRE- AND POST-JUDGMENT INTEREST

1  compounded upon the entirety of the final money judgment entered in favor of Finjan.  Thus, any

2  augmentation of damages beyond the jury verdict—including prejudgment interest, enhanced damages

3  under 35 U.S.C. § 284, attorneys' fees and related expenses under 35 U.S.C. § 285, and costs—should

4  be added to the jury's damages award and serve as the aggregate principal upon which postjudgment

5  interest must be compounded.  28 U.S.C. § 1961; *see also Air Separation, Inc. v. Underwriters at*

6  *Lloyd's of London*, 45 F.3d 288, 291 (9th Cir. 1995) ("[P]ostjudgment interest under 28 U.S.C. § 1961

7  applies to the prejudgment interest component of a monetary award."); *Ivac Corp. v. Terumo Corp.*,

8  No. 87-0413-B(M), 1990 WL 180201, at *2 (S.D. Cal. Aug. 8, 1990) (awarding prevailing patentee

9  postjudgment interest on damages, fees, costs and prejudgment interest).

10  The precise amount of postjudgment interest due to Finjan will depend upon any damages

11  awarded by the Court beyond the jury verdict (*e.g*., costs, attorneys' fees and/or enhanced damages) as

12  well as when Blue Coat pays Finjan—a date that cannot be ascertained at this time.  Accordingly,

13  Finjan requests that the Court order that the postjudgment interest be awarded on the final money

14  judgment entered in favor of Finjan using the "weekly average 1-year constant maturity Treasury yield

15  . . . compounded annually" as mandated by 28 U.S.C. § 1961.

16  **V.     CONCLUSION**

17  For the reasons stated above, Finjan respectfully requests that the Court award Finjan (1)

18  enhanced damages of treble the amount of damages awarded, (2) prejudgment interest in the amount of

19  $2,922,229.26 and (3) postjudgment interest pursuant to the statutory rate under 28 U.S.C. § 1961 for

20  the aggregate money judgment.

21

22

23

24

25

26

27

28

FINJAN'S MOTION FOR ENHANCED DAMAGES                    Case No. 13-cv-03999-BLF
AND PRE- AND POST-JUDGMENT INTEREST

Respectfully submitted,

DATED:  December 18, 2015        By:  */s/ Lisa Kobialka*
                                      Paul Andre (State Bar. No. 196585)
                                      Lisa Kobialka (State Bar No. 191404)
                                      James Hannah (State Bar No. 237978)
                                      KRAMER LEVIN NAFTALIS & FRANKEL LLP
                                      990 Marsh Road
                                      Menlo Park, CA  94025
                                      Telephone: (650) 752-1700
                                      Facsimile: (650) 752-1800
                                      pandre@kramerlevin.com
                                      lkobialka@kramerlevin.com
                                      jhannah@kramerlevin.com

                                      Attorneys for Plaintiff
                                      FINJAN, INC.

26