PAUL J. ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 752-1700
Facsimile:   (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>             Plaintiff,<br><br>     v.<br><br>BLUE COAT SYSTEMS, INC., a Delaware Corporation,<br><br>             Defendant. | Case No.: 13-CV-03999-BLF<br><br>**PLAINTIFF FINJAN, INC.'S OPPOSITION TO DEFENDANT BLUE COAT SYSTEM INC.'S MOTION TO AMEND FINDINGS AND JUDGMENT PURSUANT TO FED. R. CIV. P. 52(b)**<br><br>Date:     April 28, 2016<br>Time:    9:00 a.m.<br>Place:    Courtroom 3 – 5th Floor<br>Before:  Hon. Beth Labson Freeman |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..........................................................................................................1

II.  LEGAL STANDARD....................................................................................................1

III. ARGUMENT..................................................................................................................2

    A.  THE FINDINGS RELATING TO THE '731 PATENT PRIORITY DATE SHOULD NOT BE AMENDED. ..................................................................2

    B.  THE FINDINGS RELATING TO THE '633 PATENT PROSECUTION HISTORY ESTOPPEL SHOULD NOT BE AMENDED. ................................4

    C.  THE FINDINGS RELATING TO PATENT ELIGIBILITY OF THE '844 PATENT UNDER 35 U.S.C. § 101 SHOULD NOT BE AMENDED. ............6

    D.  THE FINDINGS RELATING TO LACHES SHOULD NOT BE AMENDED..............8

IV.  CONCLUSION.............................................................................................................14

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
 134 S. Ct. 2347 (2014) .................................................................................................................. 6

*ATS Prods. Inc. v. Ghiorso*,
 No. C10-4880 BZ, 2012 WL 1067547 (N.D. Cal. Mar. 28, 2012) ................................................ 1

*Canton Bio-Med., Inc. v. Integrated Liner Techs., Inc.*,
 216 F.3d 1367 (Fed. Cir. 2000). .................................................................................................... 5

*Cephalon, Inc. v. Watson Pharms., Inc.*,
 707 F.3d 1330 (Fed. Cir. 2013). .................................................................................................... 4

*Contentguard Holdings, Inc. v. Amazon.com, Inc.*,
 No. 2:13-CV-1112-JRG, 2015 WL 4698436 (E.D. Tex. Aug. 6, 2015) ........................................ 6

*DDR Holdings, LLC v. Hotels.com, L.P.*,
 773 F.3d 1245 (Fed. Cir. 2014) ..................................................................................................... 6

*Dragon Intellectual Prop., LLC v. AT&T Servs.*,
 No. 1:13-cv-02068-RGA, 2015 WL 5298938 (D. Del. Sep. 9, 2015) ....................................... 5, 6

*GPNE Corp. v. Apple, Inc.*,
 No. 5:12-cv-02885-LHK, 2013 WL 4446819 (N.D. Cal. Aug. 13, 2013) .................................... 5

*Guzik Technical Enters., Inc. v. W. Digital Corp.*,
 No. 5:11-CV-03786-PSG, 2013 WL 6116129 (N.D. Cal. Nov. 20, 2013) ................................... 9

*Lucent Techs., Inc. v. Gateway, Inc.*,
 580 F.3d 1301 (Fed. Cir. 2009) ..................................................................................................... 9

*Microstrategy, Inc. v. Bus. Objects, S.A.*,
 429 F.3d 1344 (Fed. Cir. 2005) ..................................................................................................... 9

*Open Text S.A. v. Box, Inc.*,
 No. 13-cv-04910-JD, 2015 WL 466815 (N.D. Cal. Jan. 28, 2015) ............................................... 9

*PMI Mortgage Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*,
 No. C 02-1774 PJH, 2007 WL 1864780 (N.D. Cal. June 28, 2007) *aff'd*, 291 Fed.
 Appx. 40 (9th Cir. 2008) ............................................................................................................... 1

*R.C. Fischer & Co. v. Cartwright*,
 No. C-09-02316 EDL, 2011 WL 6025659 (N.D. Cal. Dec. 5, 2011) .................................... 1, 4, 5

*SCA Hygiene Prods. Aktiebolag SA v. First Quality Baby Prods., LLC*,
   807 F.3d 1311 (Fed. Cir. 2015) ........................................................................................ 9, 10

*Summit 6 LLC v. Samsung Elecs. Co.*,
   802 F.3d 1283 (Fed. Cir. 2015) ............................................................................................. 9

*Tegal Corp. v. Tokyo Electron Am., Inc.*,
   257 F.3d 1331 (Fed. Cir. 2001) ............................................................................................. 6

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*,
   939 F.2d 1540 (Fed. Cir. 1991) ............................................................................................. 4

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
   503 F.3d 1295 (Fed. Cir. 2007) ............................................................................................. 5

**Statutes**

35 U.S.C. § 101 ................................................................................................................... 6, 8

**Other Authorities**

Fed. R. Civ. P. 37(c)(1) ............................................................................................................ 9

Fed. R. Civ. P. 52 .......................................................................................... 1, 2, 4, 6, 8, 14

FINJAN'S OPPOSITION TO BLUE COAT'S MOTION
TO AMEND FINDINGS AND JUDGMENT

Case No.: 13-CV-03999-BLF

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY**

## I. INTRODUCTION

With its Motion to Amend Findings and Judgment Pursuant to Rule 52(b) ("Motion"), Blue Coat files a *pro forma* brief with the sole purpose of preserving all possible issues for appeal. Nowhere does Blue Coat present any manifest errors of law or fact in its Motion, nor provide any meaningful insight as to why Blue Coat believe the Court's original finding of facts and conclusions of law are incorrect. Instead, Blue Coat takes the tact of (1) rehashing the same arguments it already presented to the Court and complains that the Court just got it wrong, and (2) raises new arguments for the first time that it did not provide to the Court in its original briefing. Such tactics fail to meet the high burden imposed on Rule 52 motions, and moreover are a tremendous waste of judicial resources. Accordingly, and as discussed in detail below, the Court should deny Blue Coat's Motion and stand by its finding of facts and conclusions of law.

## II. LEGAL STANDARD

Motions under Federal Rule of Civil Procedure 52(b) are "designed to correct findings of fact which are central to the ultimate decision." *ATS Prods. Inc. v. Ghiorso*, No. C10-4880 BZ, 2012 WL 1067547, at *1 (N.D. Cal. Mar. 28, 2012) (citations omitted). Such motions may only be granted to "correct manifest errors of law or fact or to address newly discovered evidence or controlling case law." *Id.* (citations omitted). The moving party may not use a motion under Rule 52(b) "as a vehicle for a rehearing" nor as a way to "re-litigate facts and legal theories that have previously been rejected by the court." *Id.* (citations omitted); *R.C. Fischer & Co. v. Cartwright*, No. C-09-02316 EDL, 2011 WL 6025659, at *4 (N.D. Cal. Dec. 5, 2011) (citations omitted). Moreover, Rule 52(b) motions are "not be granted if [they are] based on arguments that either were, or could have been, raised at any point prior to the entry of judgment." *PMI Mortgage Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, No. C 02-1774 PJH, 2007 WL 1864780, at *2 (N.D. Cal. June 28, 2007) *aff'd*, 291 Fed. Appx. 40 (9th Cir. 2008).

### III. ARGUMENT

### A. THE FINDINGS RELATING TO THE '731 PATENT PRIORITY DATE SHOULD NOT BE AMENDED.

Finjan's undisputed expert testimony, in addition to the prosecution history of the '731 Patent, unequivocally demonstrate that the '731 Patent is entitled to the priority date of November 6, 1997. Finjan's expert, Dr. Lyon, provided specific citations to the disclosure of the '731 Patent and incorporated references that support the claim priority date. As part of his analysis, Dr. Lyon provided specific citations showing that the incorporated '194 Patent disclosed a "file cache" and a "security profile cache" found in the claims of the '731 Patent. In fact, Dr. Lyon opined that the "file cache" and "security profile cache" elements are disclosed in the '194 Patent and its provisional application. Ex. 1[1], Trial Tr. at 1822:24-1823:3; 1879:2-1880:7; *see also,* JTX-2078; JTX 2084; JTX 2005. Dr. Lyon's opinion was reiterated and further demonstrated during Blue Coat's cross-examination during trial. *See, e.g.*, Ex. 1, Trial Tr. at 1907:1-24; 1911:24-1912:11 (while the specific term "cache" was not used in the early application, caches were described in sufficient detail for a person of ordinary skill in the art to ascertain they were present). In its Motion, Blue Coat does not raise any new issues of fact or law that contradict this finding. Instead, Blue Coat's arguments are based on a faulty and incomplete interpretation of the file history of the '731 Patent, and are issues that Blue Coat could have raised in its post-trial motions for findings of the law, which it failed to do.

Specifically, Blue Coat has not established that Finjan disclaimed all types of "storage in memory" as part of a cache. Blue Coat's convoluted argument distorts both Dr. Lyon's testimony and the file history and fails because: (1) Dr. Lyon never argued that all types of "storage in memory" are a cache and (2) Finjan can rely on statements from the '194 Patent related to caching files in memory because the Applicant never disclaimed caching from storing files in memory when overcoming the Ji reference. Motion at 3-4.

---

[1] Unless otherwise noted, all "Ex." citations are to exhibits attached to the Declaration of Paul Andre in Support of Finjan's Opposition to Blue Coat's Motion to Amend Findings and Judgment Pursuant to Fed. R. Civ. P. 52(b).

2

1  First, Dr. Lyon never argued that simply the disclosure of "storing files" discloses the claimed caches. At no point did he state that all types of memory or storage is a cache. Dr. Lyon argued, correctly, that a cache is memory that stores *a particular type of content* for use in a system, and provided two citations supporting this conclusion. Ex. 1, Trial Tr. at 1879:2-1880:1. These citations include that the "security program 255 operates in conjunction with the security database 240, which includes ... known Downloadables ... and Downloadable Security Profile (DSP) data ..." (emphasis added); *see also* JTX-2084 ('194 Patent) at Col. 4, ll. 14-18. As such, Blue Coat's argument fails, as it is not consistent with Dr. Lyon's arguments and the support he relied on in reaching his conclusion.

Second, during prosecution the Applicant never represented that a cache does not store files in memory. To reach its faulty conclusion, Blue Coat relies on a single argument made during prosecution that Ji has "no discussion of a security profile cache, or, for that matter, any cache at all." Dkt. 486 ("Bench Trial Order") at 8:24-28. Blue Coat then cites to a section of Ji that states that in one embodiment, the system has "files stored on a disk drive." Motion at 3-4 (citing DDX 1036). Blue Coat takes the citation out of context, because the line has nothing to do with caching files of any type, and certainly are not the same as the citations relied on by Dr. Lyon. Instead, this citation only mentions that the system is "typically a personal computer" and includes these "files stored on a disk drive." DDX 1036 at Col. 4, ll. 57-60. This would be the type of storage present on any personal computer and does not mean that a cache is present, and certainly not the specific types of caches in the '731 Patent. In fact, Blue Coat provides no explanation or support as to how the disk drive disclosed in Ji is also a cache. As such, Blue Coat has utterly failed to provide "evidence that a memory and disk drive are co-extensive terms." Dkt. 486 at 9. Furthermore, this section of the specification of Ji was not even being considered by the Examiner or Applicant during prosecution. As such, on its face, Blue Coat cannot establish that the Applicant made a clear disclaimer or scope as to cache over this single line that was not addressed during prosecution.

Blue Coat also alleges, in a conclusory fashion, that "Dr. Lyon's testimony is unsupported," yet provides no explanation as to how it is unsupported. The Court has recognized Dr. Lyon's credibility (Dkt. 486 at 8) and Blue Coat has not presented any reason to doubt it. Moreover, the case law relied

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY**

upon by Blue Coat is misplaced.  In *Cephalon, Inc. v. Watson Pharms., Inc.*, the expert was discussing the satisfaction of the enablement requirement and not infringement, and he also did not provide <u>any</u> support during his testimony.  707 F.3d 1330, 1338 (Fed. Cir. 2013).  As demonstrated above, Dr. Lyon provided ample support for his opinions regarding the priority date of the '731 Patent.  *See e.g.*, Ex. 1, Trial Tr. at 1822:24-1823:3; 1879:2-1880:7.

For these reasons, and the arguments made in Finjan's original briefing (Dkt. 451-4), and because Blue Coat failed to meet its burden for a Rule 52 motion, the Court's finding of facts and conclusions of law should be confirmed.

### B. THE FINDINGS RELATING TO THE '633 PATENT PROSECUTION HISTORY ESTOPPEL SHOULD NOT BE AMENDED.

The Court properly found that Finjan "did not clearly and unmistakably surrender subject matter that it is now trying to recapture" with respect to the '633 Patent.  Dkt. 486 at 12.  As the passage from the prosecution history provided in Blue Coat's Motion demonstrates, during prosecution of the '633 Patent, Finjan simply noted that the Golan reference did not disclose a packaging engine or mobile protection code.  *See e.g.*, Dkt. 486 at 11:21-27; *see also* Dkt. 447-5, Declaration of Olivia Kim in Support of Blue Coat's Opening Brief on Non-Jury Legal Issues ("Kim Decl."), Ex. 4 (JTX-2012) at FINJAN-BC001268-69 (5/26/09 Applicant arguments).  These statements merely provided a description of the Golan reference without any import to the specific claim elements of the '633 Patent, further supporting the Court's conclusion that "Plaintiff was explaining the novelty of its invention in light of the prior art."  Dkt. 486 at 13:4.  Distinguishing a prior art device does not "curtail the scope of equivalents in such a manner as to preclude a finding that [the accused device] infringes" under the doctrine of equivalents.  *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1544 (Fed. Cir. 1991).

Blue Coat's Motion should be denied because it simply rehashes arguments Blue Coat already raised in its post-trial motion on legal issues that the Court addressed in its Bench Trial Order.  Dkt. 446-3 at 6-7; *see also* Ex. 9, Bench Trial Tr. at 207:24-210:3; Dkt. 486 at 12-13.  And as the Court is aware, a Rule 52 motion may not be used "as a vehicle for a rehearing" nor as a way to "re-litigat[e] facts and legal theories that have previously been rejected by the court."  *Id.; see also R.C. Fischer &*

4

FINJAN'S OPPOSITION TO BLUE COAT'S MOTION                    Case No.: 13-CV-03999-BLF
TO AMEND FINDINGS AND JUDGMENT

*Co. v. Cartwright*, No. C-09-02316 EDL, 2011 WL 6025659, at *4 (N.D. Cal. Dec. 5, 2011) (citations omitted).

In this case, Finjan, the Applicant, did not disavow a "prior art system that had a security monitor that is already resident on a client computer as found in Golan." Motion at 7. Rather, the Applicant discussed the scope of the Golan reference without reference to specific claim elements. The Court recognized Blue Coat's failures to "show[] that Plaintiff's general statements about the Golan prior art pertain to claim 14," noting that "Plaintiff only referred to its general remarks about the Golan prior art in reference to claim 1." Dkt. 486 at 13:8-13. Tellingly, the primary support provided by Blue Coat – *Canton Bio-Med., Inc. v. Integrated Liner Techs., Inc.* – is inapplicable to Blue Coat's argument. In particular, *Canton Bio-Med* relates to an inventor's explanation, during prosecution, that the invention was limited only to a "'particular primer solution,' distinguished by its use of [] three specific components from the extensive cited prior art." 216 F.3d 1367, 1371 (Fed. Cir. 2000). Notably, in *Canton Bio-Med*, the actual primer compounds accused were cited in a prior art reference and distinguished by the Applicant. *Id*. at 1371. This is inapposite as here, because there was no showing that Golan disclosed Blue Coat's accused system, and certainly no showing that any arguments were made in relationship to specific claim elements of Claim 14 of the '633 Patent.

Of the other cases Blue Coat relied upon, all but one relate to claim construction, and are therefore inapposite. ***First***, several of the cases relate to the significance of specific statements in the patent's ***specification*** discussing the scope of the entire "present invention" and not statements made during prosecution, which were not correlated with actual claim language. *See Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007) ("In the course of describing the 'present invention,' ***the specification*** then states . . . ." (emphasis added)); *see also GPNE Corp. v. Apple, Inc.*, No. 5:12-cv-02885-LHK, 2013 WL 4446819, at *6 (N.D. Cal. Aug. 13, 2013) (referencing the "'Technical Field' portion of the specification [that] states that '*this invention* pertains to communications paging . . . .'" ***Second***, in *Dragon Intellectual Prop., LLC v. AT&T Servs.*, the "disclaimers" referenced as being "replete" in the prosecution history were made in connection with specific ***amendments*** to add new claim language into the asserted claims in the litigation. No. 1:13-cv-

5

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY**

02068-RGA, 2015 WL 5298938, at *4 (D. Del. Sep. 9, 2015). Here, Finjan made *no amendments* to Claim 14 of the '633 Patent which Blue Coat purports is limited by prosecution history estoppel. ***Third***, *Tegal Corp. v. Tokyo Electron Am., Inc.* relates to the construction of a specific claim term – "electrode" – and, in particular, a specific type of electrode that was disclaimed during prosecution. 257 F.3d 1331, 1342-43 (Fed. Cir. 2001). The discussion of "present invention" was used directly in conjunction with the "electrode" element, showing that the applicant intended to disclaim the scope of a particular element. Here, the Applicant made no such limitations with respect to "types" of a claim element in the '633 Patent and did not tie the statements to particular claim elements in the Claim 14 of the '633 Patent.

Because the Court has already considered and rejected Blue Coat's arguments regarding this issue, and because Blue Coat failed to meet its burden for a Rule 52 motion, the Court's finding of facts and conclusions of law should be confirmed.

### C. THE FINDINGS RELATING TO PATENT ELIGIBILITY OF THE '844 PATENT UNDER 35 U.S.C. § 101 SHOULD NOT BE AMENDED.

The Court's findings regarding the claims of the '844 Patent should remain undisturbed because the Court correctly concluded that claims are patent eligible under 35 U.S.C. § 101 as they are directed to non-abstract ideas with inventive concepts. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). The claims cover systems that are concrete because they are "rooted in computer technology" and offer tangible benefits for computer security that does not lead to broad preemption. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014); *Contentguard Holdings, Inc. v. Amazon.com, Inc.*, No. 2:13-CV-1112-JRG, 2015 WL 4698436, at *3 (E.D. Tex. Aug. 6, 2015). As such, they are patent eligible under 35 U.S.C. § 101, and Blue Coat has not raised any reason why the Court's findings should be amended.

Tellingly, Blue Coat sidesteps the core findings of the Court and instead misrepresents the basis for the Court's opinion as being solely based on "the hypothetical claim in the Patent Office's Guidance [being] [] comparable to the asserted claims of the '844 Patent." Motion at 8. A ***complete*** overview of the Court's discussion reveals the unequivocal explanation that "the Patent Office's guidance is ***not binding***" but that the Court "finds its reasoning persuasive." Dkt. 486 at 16:12-14

6

(emphasis added).  As such, from the outset, Blue Coat's arguments are baseless, as the Court did not rely on the Patent Office's Guidance as binding, and only considered it to be persuasive.

Moreover, the Court provided a thorough analysis and comparison between the hypothetical claim and Claim 1 of the '844 Patent, showing that both are "rooted in computer technology" and directed to the concrete idea of "performing steps leading to identifying malicious code to create a new data file containing a security profile."  *See generally,* Dkt. 486 at 16-18.  Blue Coat's argument that the Court's reliance on the Patent Office's guidance was improper because it presents a "hypothetical [and] has no accompanying specification," ignores the fact that the Court considered all relevant evidence as to the '844 Patent, including the specification, and concluded that its claims are patent eligible.  *Id.; see* also Motion at 7-8.  Blue Coat failed to provide any explanation for why the lack of specification for the hypothetical claim would be relevant or impact this consideration.  Furthermore, Blue Coat's argument that "the PTO applies a different standard than a District Court to interpret claims" was not shown to have any relevance to the Court's findings.  Motion at 8.  Blue Coat does not demonstrate nor support its position for why any alleged differences in the interpretation of claim terms would change the ultimate conclusion.  Blue Coat has also failed to show why the fact that "none of the asserted claims of the '844 Patent contain the words 'malicious,' 'virus,' 'malware,' or any cognates thereof" is relevant.  *Id*.  The Court explained the similarities between the hypothetical claim and the '844 Patent in concluding that the '844 Patent is patent eligible, and found that in light of the claim and the specification, the claims were directed to protecting a computer network.  The '844 Patent's use, or non-use, of certain specific terminology was not shown to be material to the Court's conclusion.

Blue Coat also disregards the entirety of the '844 Patent in requesting that the Court "amend its findings to find that the '844 [P]atent raises serious preemption concerns."  Motion at 8.  Blue Coat fails to acknowledge that the '844 Patent discloses an inventive network security method and system that is based on generating a security profile for a specific received Downloadable.  In fact, it is undisputed that there are number of proactive technologies that can be implemented in different ways, showing that there can be no preemption issue.  Ex. 9, Bench Trial Tr. 116:24-118:4.  Furthermore, the "Downloadable" used in the claims was construed as "an executable application program, which is

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY**

1  downloaded from a source computer and run on the destination computer" by agreement of the parties. *See* Dkt. 118 at 4 (Claim Construction Order); JTX-2001 ('844 Patent) at Col. 1, ll. 44-47.  As such, contrary to Blue Coat's arguments, a Downloadable under the '844 Patent cannot be a floppy disk as discs are not downloaded from a source computer to a destination computer.

Blue Coat's citations to the specification of the '844 Patent misinterprets the '844 Patent with its citations by reciting only a limited portion of the specification.  Motion at 8.  First, Blue Coat cites to a section of the '844 Patent discussing the inspector as having a "computer-readable storage medium" such as a "magnetic disk" as meaning a Downloadable can be received through a floppy disk.  *Id.* at 8.  Blue Coat ignores that this is simply a general description of a computer system used by the *developer*, and does not describe how the Downloadable is received by an inspector, with no indication that Downloadables are received for inspection through a disk.  JTX-2001 ('844 Patent) at Col. 6, ll. 25-65.  Further contradicting Blue Coat's interpretation is the fact that the specification discloses how the '844 Patent shields clients from a virus *before* it is received, as opposed to prior art which provided for the inspection of files only *after* they were already placed on a computer through a file with a floppy disc.  *Id.* at Col. 2, l. 67-Col. 3, l. 2.  Yet another example contradicting Blue Coat's interpretation that the claimed system covers floppy discs is that the '844 Patent provides protection from *web-based threats* received from the Internet which were new at the time of the invention and different from, for example, files transferred onto a floppy disk which were known at the time.  As such, Blue Coat's arguments that the claimed system would preempt systems using a "floppy disk" are unsupported.

Because the Court correctly found the '844 Patent claims patent eligible under Section 101, and because Blue Coat failed to meet its burden for a Rule 52 motion, the Court's finding of facts and conclusions of law should be confirmed.

### D.  THE FINDINGS RELATING TO LACHES SHOULD NOT BE AMENDED.

None of Blue Coat's arguments with respect to its laches defense prove that the judgment or any of the Court's findings with respect to laches should be amended.  Notably, Blue Coat does not cite any change in the law since the Court's issuance of its Bench Trial Order discussing the latest relevant Federal Circuit decision on laches that supports the Court's findings and judgment.  As the

8

FINJAN'S OPPOSITION TO BLUE COAT'S MOTION          Case No.: 13-CV-03999-BLF
TO AMEND FINDINGS AND JUDGMENT

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY**

Court cited in its Bench Trial Order, in *SCA Hygiene Prods. Aktiebolag SA v. First Quality Baby Prods., LLC,* 807 F.3d 1311 (Fed. Cir. 2015), the Federal Circuit confirmed that under the appropriate circumstances, laches may bar pre-suit damages, injunctive relief, or an ongoing royalty. Dkt. 486 at 19-20. Because Finjan sought damages in the form of a lump sum payment from the start of the Complaint and did not seek pre-suit damages, injunctive relief, or an ongoing royalty, the Court correctly determined that laches in this case has no effect on any issue in the case[2]. Dkt. 486 at 20.

Blue Coat first attempts to argue that laches does have an effect on damages because Finjan sought damages through the life of the patents, and this was effectively, an ongoing royalty. However, the Federal Circuit was clear in *Lucent* that a lump sum payment is different from an ongoing royalty. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1326 (Fed. Cir. 2009)("Significant differences exist between a running royalty license and a lump-sum license"); *see also Open Text S.A. v. Box, Inc.*, No. 13-cv-04910-JD, 2015 WL 466815, at *1 (N.D. Cal. Jan. 28, 2015)(holding the jury will decide whether to award a fully paid-up royalty for the life of the patents or a running royalty). Further, Blue Coat's citation to *Summit 6 LLC v. Samsung Elecs. Co.*, is inapposite. 802 F.3d 1283 (Fed. Cir. 2015). In *Summit 6 LLC*, the Federal Circuit held that a lump sum payment for damages through the life of a patent precludes also requesting ongoing royalties after trial. *Id.* at 1300-01. Nothing in that decision states that a lump sum payment through the life of a patent is equivalent to an ongoing royalty. In fact, Blue Coat cites to no cases that hold a lump sum payment of damages is the same thing as an ongoing royalty. Moreover, the jury did not award damages for the '822 Patent because it did not find

---

[2] In a footnote, Blue Coat argues that Blue Coat's disclosure of a laches defense to the '780 Patent was not untimely. Motion at 9 n.3. Blue Coat's hand-waving cannot cure the fatal omission within its interrogatory response. Blue Coat's response to an interrogatory on laches explicitly referenced only certain patents, and excluded any mention of the '780 and '844 Patents. *See* Ex. 2 at 24 (Blue Coat's Supp. Resp. to Finjan's Interrogatory No. 10). Simply knowing about the infringing product does not equate to knowing of infringement. Blue Coat articulates no good reason for Blue Coat's omission of the '780 Patent from its discovery response if it intended to rely upon a laches defense for that patent, despite its different position now. Blue Coat does not dispute that it failed to disclose the '780 and '844 Patents or the law that information requested, but not disclosed during discovery, cannot later be used to support a claim or defense. *See* Fed. R. Civ. P. 37(c)(1); *Microstrategy, Inc. v. Bus. Objects, S.A.,* 429 F.3d 1344, 1356-58 (Fed. Cir. 2005) (excluding evidence at trial not disclosed in response to an interrogatory requesting identification of evidence supporting a theory); *Guzik Technical Enters., Inc. v. W. Digital Corp.*, No. 5:11-CV-03786-PSG, 2013 WL 6116129, at *9 (N.D. Cal. Nov. 20, 2013) (precluding a party from introducing evidence at trial for failing to substantively respond to an interrogatory).

9

FINJAN'S OPPOSITION TO BLUE COAT'S MOTION    Case No.: 13-CV-03999-BLF
TO AMEND FINDINGS AND JUDGMENT

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY**

infringement, so any laches argument with respect to the '822 Patent is irrelevant.

Second, the Federal Circuit recently held that "while the principles of equity apply, equity normally dictates that courts award ongoing royalties, despite laches" and "absent egregious circumstances, when injunctive relief is inappropriate, the patentee remains entitled to an ongoing royalty." *SCA Hygiene*, 807 F.3d at 1332-33; Dkt. 486 at 19.  There are no "egregious circumstances" here to support Blue Coat's claim that Finjan should be barred from recovering damages based on laches because Finjan could not have known that Blue Coat infringed its patents years before the filing of the Complaint in 2002, 2004, and 2005.[3]  Blue Coat merely repeats the arguments it made in its Proposed Findings of Fact and Conclusions of Law.  Motion at 10-11; *see also* Dkt. 473-3.  For the same reasons set forth in the Court's Bench Trial Order (Dkt. 486), such arguments fail.

It is undisputed that Blue Coat was not publicly using or selling the infringing technology in WebPulse until sometime in 2010 and the ProxySG, CAS, and MAA combination of products until 2013.  *See* Dkt. 452 at 19-21. In fact, it was uncontested at trial that Blue Coat first began *privately* making and using Finjan's patented technology in WebPulse in mid-2008.  Dr. Cole, Finjan's infringement expert, provided detailed testimony of Blue Coat's development of WebPulse that started with Blue Coat's development of WebPulse in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, with the infringing technology incorporated in a commercial product no later than 2011.  Ex. 1, Trial Tr. at 483:6-491:25.  This testimony was based on Blue Coat's internal documents, and testimony of Blue Coat's engineers.  *See, e.g.,* PTX-105, PTX-200, PTX-203, PTX-204 and JTX-2019.  Blue Coat did not rebut this evidence at trial, so it cannot argue that Finjan knew of Blue Coat's infringement of its patents simply because Blue Coat was a partner of Finjan's at one time, or because it was one of Finjan's many competitors in the marketplace.  Just because Finjan had certain documents about Blue Coat's products in its possession does not prove that Finjan knew of Blue Coat's infringement of specific patents.

Likewise, Blue Coat's statement that "Finjan believed that Blue Coat became an infringer from the moment it 'launched products similar to what Finjan had invented,'" is a complete

---

[3] The parties stipulated to the first dates of infringement as 2008 for the '968 Patent and '731 Patent, and 2013 for the '633 Patent. Any laches argument for infringement of the '780 Patent, '844 Patent, and '822 Patent is irrelevant for reasons discussed herein.  *See* Ex. 3 (Stipulation).

10

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY**

mischaracterization of testimony of Finjan's President, Mr. Hartstein, who actually testified that: "the moment [Blue Coat] stopped doing that and then launched products similar to what Finjan had invented, they became a patent infringer." Ex. 1, Trial Tr. at 333:20-22; Motion at 10.  Mr. Hartstein did not testify to Finjan knowing that Blue Coat infringed when the launch of infringing products occurred, only that infringement began when it did.  *Id.*

In fact, evidence introduced at trial showed that Finjan believed Blue Coat's technology to be different from its patented technology as of October 2007.  At that time, in a Finjan document titled "Competitive Analysis of Blue Coat," Finjan stated: "comparing between Blue Coat offering and Finjan's is like comparing apples to oranges (reactive vs proactive)."  DDX-1306 at FINJAN-BC 166278; Ex. 1, Trial Tr. at 258:15-23, 1133:13-1135:1.  At that time, Finjan also believed that "Blue Coat is based on reactive security solutions (anti-virus, URL, filtering) and 3rd party reactive solutions. Blue Coat product is missing proactive/behavior-based security capabilities."  DDX-1306 at FINJAN-BC 166271; *see also id.* at FINJAN-BC 166275.  As discussed in Finjan's Opposition to Blue Coat's Opening Brief Regarding Non-Jury Issues, the October 2007 competitive analysis also shows a number of other statements that unquestionably indicate that Finjan believed Blue Coat's technology was not infringing at that time:

- "Reactive security approach: Blue Coat can only scan for known malware with signature-based engines provided by their OEM partners.  Unlike Finjan, which offers real-time content inspection, Blue Coat provides no viable solution for unknown or targeted malware."  DDX-1306 at FINJAN-BC 166276.

- "Blue Coat shows no sign of re-focusing on security, although such an estimation was made by Gartner in the Magic Quadrant report 2007."  *Id.* at FINJAN-BC 166269.

- "Customers do complain about the DRTR categorizations…**Not a word about security.**"  *Id.* at FINJAN-BC 166270.

- "Blue Coat is limited in analyzing and detecting malicious scripts, incapable of understanding what the code aims to do, unable to analyze obfuscated code, cannot perform dynamic code analysis or detect other malicious scripts or malicious binary files which are not pre-included in the signatures database."  *Id*. at FINJAN-BC 166276; Dkt. 451-4 at 20.

In addition, while Blue Coat points to other documents, those also do not show that Finjan knew of Blue Coat's infringement years before the Complaint was filed.  The October 10, 2005 e-mail itself

11

FINJAN'S OPPOSITION TO BLUE COAT'S MOTION                                   Case No.: 13-CV-03999-BLF
TO AMEND FINDINGS AND JUDGMENT

1  states that [REDACTED]
2  [REDACTED]
3  [REDACTED]
4  [REDACTED]
5  [REDACTED]
6  [REDACTED]
7  [REDACTED]
8  [REDACTED]. Moreover, the other documents cited by Blue Coat
9  again only state that the two parties were competitors, which is not the same as knowledge of
10 infringement.  For such reasons, Blue Coat's request to amend the Court's finding and judgment
11 should be denied.
12      Furthermore, Blue Coat's arguments that it suffered prejudice are conclusory, and wholly
13 unsupported by the evidence in the case.  While Blue Coat claims it is much harder now for it to design
14 around Finjan's patents in order to "ameliorate any damages," this was not the position Blue Coat took
15 during fact and expert discovery where it claimed [REDACTED]
16 [REDACTED]
17 [REDACTED]. Importantly, Blue Coat was forced
18 to drop any evidence of a non-infringing alternative or design-around after Finjan moved to exclude
19 such alleged evidence because it was belatedly disclosed and speculative.[4]
20      In addition, Blue Coat's claim that evidence was lost during the delayed period is fictional.
21 Throughout the case, Blue Coat never once complained of the sufficiency of testimony from Finjan's
22 witnesses as a basis for which it could not fully prepare its case, and did not identify any of this
23 information during discovery in response to Finjan's interrogatory on laches.  Ex. 2 at 24 (Blue Coat's
24 Supp. Resp. to Interrogatory No. 10).

---

[4] Blue Coat elected to drop evidence of a non-infringing alternative to the Patents-in-Suit after Finjan moved *in limine* to exclude such belatedly disclosed and speculative evidence and the Court ordered an additional deposition on the issue.  Dkt. 367 at 4.  Rather than offer a witness to be deposed on the non-infringing alternatives/design-arounds, Blue Coat stated it would not present evidence of a non-infringing alternative/design-around at trial.  Ex. 7 (July 13, 2015 E-mail).

12

FINJAN'S OPPOSITION TO BLUE COAT'S MOTION                    Case No.: 13-CV-03999-BLF
TO AMEND FINDINGS AND JUDGMENT

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY**

During discovery, in response to Blue Coat's specific Requests for Production, Finjan produced deposition testimony of 15 Finjan employees and consultants from as far back as 2007, including Finjan's Chief Technology Officer (Mr. Ben-Itzhak), Finjan's founder and inventor, (Mr. Touboul), and Finjan's past Presidents, (Mr. Chinn and Mr. Vigouroux), which covered the subject matter that Blue Coat sought discovery for, including key information about Finjan's patents, products, business, and licenses.  *See* Ex. 8 (Blue Coat's Requests for Production Nos. 62-66); *see, e.g.,* Dkt. 451, Ex. 14 to Kobialka Decl. (2015 Hartstein Tr. at 453:24-455:16), Ex. 23 to Kobialka Decl. (Maier Tr. at 13:3-53:25, 101:15-113:25), Ex. 24 to Kobialka Decl. (Polani Tr. at 94:11-96:2, 177:3-178:19), Ex. 25 (Brin Tr. at 28:5-35:25), Ex. 26 to Kobialka Decl. (Vigouroux Tr. at 25:19-27:12, 57:5-58:7, 72:22-75:6); Dkt. 452-16, Ex. 15 to Kobialka Decl. (Touboul 1/30/15 Tr. at 452:2-16); *see also* Dkt. 446, Ex. 37 to Kim Decl. (2014 Hartstein Tr. at 50:21-52:14, 90:20-93:24, 169:16-182:25, 184:24-193:15, 278:9-283:13); Ex. 23 to Kim Decl. (Touboul Tr. at 56:3-63:2, 71:4-87:25, 92:7-96:10, 103:2-104:1, 153:4-9, 154:25-157:20, 183:21-185:12, 195:16-196:8, 214:9-231:9); Ex. 22 to Kim Decl. (2014 Chinn Tr. at 148:8-152:16, 161:9-185:12, 191:5-209:10); Ex. 25 to Kim Decl. (2011 Chinn Tr. at 87:22-96:3, 96:24-102:3).

Mr. Ben-Itzhak and Mr. Touboul provided substantial testimony about Finjan, Blue Coat, the marketplace between 2002 and 2009, including how Blue Coat's ProxySG product worked with Finjan's Vital Security product, technologies related to Finjan's Vital Security product, what Finjan knew of Blue Coat and its products, whether Blue Coat was a competitor, and the names of individuals who worked at Finjan.  Dkt. 446, Ex. 21 to Kim Decl. (Ben-Itzhak Tr. at 169:2-176:22, 189:9-195:4, 228:5-233:12, 242:6-294:9, 301:6-17); Ex. 23 to Kim Decl. (Touboul Tr. at 153:3-9, 163:12-164:3); *see also* PTX-610 (Touboul Video Clip).  Blue Coat's argument that memories of deponents would have been better at an earlier time does not show that Blue Coat was prejudiced by the filing date of the litigation given the substantial information that Blue Coat reviewed and received during discovery regarding Finjan's history of its business, products and patented technology.  *Id.*

Additionally, Finjan produced more than 34,000 pages of technical, business, financial and marketing documents, including hundreds of pages of documents from 1996 through 2009, before M86

13

1  acquired Finjan's operations.  In 2006, Finjan was involved in separate litigation against Secure
2  Computing Corporation that required it to issue a litigation hold memo for documents that concerned
3  the '780 Patent, and related patents, as well as any other documents that would have been relevant to
4  the current litigation against Blue Coat, given that Blue Coat operated in the same marketplace as the
5  parties involved in that litigation.  Dkt. 452-17, Ex. 16 to Kobialka Decl. at 11-12 (Finjan's First Supp.
6  Resp. to Interrogatory No. 17).  Thus, while Blue Coat alleges that additional documents were "lost"
7  that could have been produced, it fails to identify any documents other than a 2002 OEM agreement
8  between Finjan and Blue Coat that it already possessed.  Given the substantial amount of information
9  relevant to the patents and the market involving Blue Coat that Finjan retained and produced to Blue
10 Coat, it is hard to imagine what was highly relevant that was not already produced during this case.

11         Moreover, while Blue Coat alleges that Finjan failed to produce evidence sufficient to establish
12 that any Finjan products practiced the specific Finjan patents asserted in this case, it fails to show how
13 any additional information would have made any material difference in the case.  None of Blue Coat's
14 arguments on JMOL or for a new trial are based on the issue of whether Finjan products practiced the
15 specific Finjan patents asserted in this case.  Notwithstanding this, using its own standard that a party
16 could determine the scope of a product based on even just public information, Blue Coat should also
17 have been able to determine the scope of Finjan's products in the marketplace years before the
18 Complaint was filed based on the public and confidential Finjan produced regarding its products
19 during discovery.  Ex. 10 (Finjan First Supp. Resp. to BC Interrog. No. 15); *see also* PTX-617 at
20 33:05-33:21 (Schoenfeld Video Clip).  For such reasons, the Court should deny Blue Coat's Motion to
21 Amend.

22 **IV.    CONCLUSION**

23         For the reasons discussed above, Blue Coat fails to show that the Court's findings or judgment
24 should be amended under Fed. R. Civ. P. 52(b).

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSELS' EYES ONLY**

                                            Respectfully submitted,

Dated: January 4, 2016            By: */s/ Paul Andre*
                                            Paul J. Andre (SBN 196585)
                                            Lisa Kobialka (SBN 191404)
                                            James Hannah (SBN 237978)
                                            KRAMER LEVIN NAFTALIS
                                              & FRANKEL LLP
                                            990 Marsh Road
                                            Menlo Park, CA  94025
                                            Telephone:  (650) 752-1700
                                            Facsimile:  (650) 752-1800
                                            pandre@kramerlevin.com
                                            lkobialka@kramerlevin.com
                                            jhannah@kramerlevin.com

                                            *Attorneys for Plaintiff*
                                            FINJAN, INC.