PAUL J. ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
HANNAH LEE (State Bar No. 253197)
hlee@kramerlevin.com
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>BLUE COAT SYSTEMS, INC., a Delaware Corporation,<br><br>Defendant. | Case No.: 13-CV-03999-BLF<br><br>**PLAINTIFF FINJAN, INC.'S OPPOSITION TO BLUE COAT SYSTEMS, INC.'S RENEWED MOTION FOR JMOL PURSUANT TO FED. R. CIV. P. 50(b)**<br><br>Date: April 28, 2016<br>Time: 9:00 a.m.<br>Place: Courtroom 3 – 5th Floor<br>Before: Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 1

    A. Substantial Evidence Supports the $24 Million Award ....................................... 1

    B. Substantial Evidence Supports the Jury's Remaining Damages Findings ........... 5

    C. Infringement Verdict ............................................................................................ 9

    D. Validity Verdict ................................................................................................. 10

III. CONCLUSION ............................................................................................................. 10

i

FINJAN'S OPPOSITION TO BLUE COAT'S  
RENEWED MOTION FOR JMOL

Case No.: 13-CV-03999-BLF

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple, Inc. v. Motorola, Inc.*,
 757 F.3d 1286 (Fed. Cir. 2014) ............................................................................................ 2, 8

*Asetek Danmark A/S v. CMI USA, Inc.*,
 No. 13-CV-00457-JST, 2015 WL 5568360 (N.D. Cal. Sept. 22, 2015) .................................. 9

*Asetek Danmark A/S/ v. CMI USA, Inc.*,
 100 F.Supp.3d 871 (N.D. Cal. 2015) ....................................................................................... 3

*Brocade Comm'ns Sys., Inc. v. A10 Networks, Inc.*,
 No. C 10-3428 PSG, 2013 WL 831528 (N.D. Cal. Jan. 10, 2013) .......................................... 1

*Callicrate v. Wadsworth Mfg., Inc.*,
 427 F.3d 1361 (Fed. Cir. 2005) ............................................................................................... 1

*Cornell Univ. v. Hewlett-Packard Co.*,
 609 F.Supp.2d 279 (N.D.N.Y. 2009) ...................................................................................... 4

*CPG Products Corp. v. Pegasus Luggage, Inc.*,
 776 F.2d 1007 (Fed. Cir. 1985) ............................................................................................... 2

*Dow Chem. Co. v. Mee Indus., Inc.*,
 341 F.3d 1370 (Fed. Cir. 2003) ............................................................................................... 2

*Finjan, Inc. v. Secure Computing Corp.*,
 626 F.3d 1197 (Fed. Cir. 2010) ............................................................................................... 5

*Golden Bridge Tech., Inc. v. Apple, Inc.*,
 No. 5:12-CV-04882-PSG, 2015 WL 1262836 (N.D. Cal. Mar. 18, 2015) ............................. 1

*Golden Bridge Tech. v. Apple Inc.*,
 No. 5:12-CV-04882-PSG, 2014 WL 4057187 (N.D. Cal. June 1, 2014) ................................ 2

*Johnson v. Paradise Valley Unified Sch. Dist.*,
 251 F.3d 1222 (9th Cir. 2001) ............................................................................................ 1, 7

*King Instruments Corp. v. Perego*,
 65 F.3d 941 (Fed. Cir. 1995) ................................................................................................... 8

*Lisle Corp. v. A.J. Mfg. Co.*,
 398 F.3d 1306 (Fed. Cir. 2005) ............................................................................................... 3

*Little v. City of Richmond*,
  No. 13-CV-02067-JSC, 2015 WL 3543127 (N.D. Cal. June 5, 2015) ............................... 7

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) .......................................................................................... 4

*MeadWestVaco Corp. v. Rexam Beauty & Closures, Inc.*,
  731 F.3d 1258 (Fed. Cir. 2013) .......................................................................................... 3

*Micro Chem, Inc. v. Lextron, Inc.*,
  317 F.3d 1387 (Fed. Cir. 2003) .......................................................................................... 9

*Motorola Mobility, LLC v. Int'l Trade Comm'n*,
  737 F.3d 1345 (Fed. Cir. 2013) ........................................................................................ 10

*NTP, Inc. v. Research in Motion, Ltd.*,
  418 F.3d 1282 (Fed. Cir. 2005) .......................................................................................... 3

*Oracle Am., Inc. v. Google Inc.*,
  No. C 10-03561 WHA, 2012 WL 877125 (N.D. Cal. Mar. 15, 2012) .............................. 5

*Reeves v. Sanderson Plumbing Prods., Inc.*,
  530 U.S. 133 (2000) ............................................................................................................ 1

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010) ............................................................................................ 4

*Summit 6 LLC v. Samsung Elecs. Co.*,
  802 F.3d 1283 (Fed. Cir. 2015) .......................................................................................... 4

*VirnetX, Inc. v. Cisco Sys., Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014) .......................................................................................... 4

**Statutes**

35 U.S.C. § 284 ............................................................................................................................. 8

**Other Authorities**

Federal Rule of Civil Procedure 50(b) ........................................................................................ 1

FINJAN'S OPPOSITION TO BLUE COAT'S
RENEWED MOTION FOR JMOL                                   Case No.: 13-CV-03999-BLF

## I. INTRODUCTION

After a 10 day trial in which Finjan presented over a hundred trial exhibits, including numerous citations within Blue Coat's source code, 18 fact and expert witnesses, and product testing demonstrating infringement, the jury concluded that Blue Coat infringed five of Finjan's six asserted patents, Finjan's six patents were valid, and damages were appropriate. Dkt. No. 438 at 2-3. This is not a case of an absence of "substantial evidence" to support the jury's verdict." *Golden Bridge Tech., Inc. v. Apple, Inc.*, No. 5:12-CV-04882-PSG, 2015 WL 1262836, at *1 (N.D. Cal. Mar. 18, 2015) (citing *Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1366 (Fed. Cir. 2005)). Rather Blue Coat lacked evidence to support its positions. For example, no fact witness testified about Blue Coat's licensing practices and Blue Coat did not have an expert witness rebut Finjan's damages expert.

The verdict must be upheld because there is "evidence adequate to support the jury's conclusion." *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001) (citation omitted); *Brocade Comm'ns Sys., Inc. v. A10 Networks, Inc.*, No. C 10-3428 PSG, 2013 WL 831528, at *2 (N.D. Cal. Jan. 10, 2013) (the moving party's burden is to show an absence of "substantial evidence."). Drawing all reasonable inferences in Finjan's favor, Blue Coat's Renewed Motion For JMOL ("Motion") should be denied given the substantial evidence supporting the jury's verdict. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (when presented with a renewed JMOL motion, the Court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.") (citations omitted).

## II. ARGUMENT

### A. Substantial Evidence Supports the $24 Million Award.

The substantial evidence for the $24 million damages award for the '844 Patent includes numerous documents, identified herein, fact and expert testimony regarding the value and importance of the '844 Patent (Ex. 1[1], Trial Tr. at 963:15-964:2, 964:25-965:9, 1011:15-25), Blue Coat's use of the infringing Dynamic Real-time Rating ("DRTR") functionality (*id.*, 472:2-475:7, 477:5-481:3, 492:1-

---

[1] All references to "Ex." herein are to the Declaration of Hannah Lee in Support of Finjan's Opposition to Blue Coat's renewed Motion for JMOL Pursuant to Fed. R. Civ. P. 50(b) filed herewith.

1

493:23, 495:7-497:21, 503:4-11, 505:6-18, 507:9-19, 510:7-515:4, 515:17-517:9, 519:14-521:17, 525:19-527:20, 530:2-22, 535:19-538:23; JTX-2018; JTX-2019; JTX-2022; JTX-2076; PTX-33; PTX-38; PTX-105; PTX-204; PTX-426), the parties' licensing practices (Ex. 1, Trial Tr. at 290:12-292:11, 464:5-24; 907:17-908:1, 1084:3-1085:6, 1091:11-1092:7, 1104:4-12, 1266:4-1275:16; PTX-177; DDX-1245), and the importance Blue Coat's witnesses and documents placed on Webpulse that used the DRTR (PTX-611 at 8:11-9:24; Ex. 1, Trial Tr. at 1066:16-1067:6; 1069:14-1071:17 (PTX-271)).

Finjan presented ***unrebutted*** factual evidence that, at the time of the 2008 hypothetical negotiation, the parties would have agreed to a $24 million license for the life of the '844 Patent. This figure was based on a $.32 per user royalty (4% of an $8 per user royalty) for the 75 million Webpulse users for Blue Coat's making, use, sales and offers for sale of Finjan's patented technology. Ex. 1, Trial Tr. at 194:9, 194:18-19, 260:11-13, 474:18-475:1, 495:21-22, 907:17-908:1, 1069:14-1071:14 (PTX-271), 1084:3-1085:6, 1176:12-13, 1100:17-1101:5, 1219:24-1220:17, 1234:12-14. Blue Coat did not challenge Finjan's factual evidence by way of cross examination or contrary evidence, nor did it offer an alternative reasonable royalty for the '844 Patent. Thus, the ***only*** evidence the jury was presented with concerning a reasonable royalty for the '844 Patent was Finjan's evidence.

Finjan's damages expert was not required to opine on a specific amount for the '844 Patent because a jury is not required to rely upon on an expert to determine damages. *See Apple, Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1330 (Fed. Cir. 2014), *overruled on other grounds, Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) (expert evidence is not necessary for determining a reasonable royalty); *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1382 (Fed. Cir. 2003) ("[S]ection 284 is clear that expert testimony is not necessary to the award of damages, but rather 'may [be] receive[d]…as an aid'") (quoting 35 U.S.C. § 284); *Golden Bridge Tech. v. Apple Inc.*, No. 5:12-cv-04882-PSG, 2014 WL 4057187, at *2 (N.D. Cal. June 1, 2014); *CPG Products Corp. v. Pegasus Luggage, Inc.*, 776 F.2d 1007, 1010-11 (Fed. Cir. 1985).

Some of the substantial trial evidence included (1) the parties' 2002 OEM licensing agreement with a per user rate of $14 to $35, where this partnership lasted for years thereafter (Ex. 1, Trial Tr. at 1091:11-1092:7; 1266:4-1275:16; PTX-177; PTX-621), (2) Webpulse's 75 million users (Ex. 1, Trial

Tr. at 194:9, 474:18-19, 1176:12-13, 1100:17-23, 1219:24-1220:17; JTX-2027), (3) Webpulse's receipt of a billion requests ***a day*** (Ex. 1, Trial Tr. at 194:18-19, 260:11-13, 474:20-22, 495:21-22, 1069:14-1071:14 (PTX-271), 1100:24-1101:2), (4) DRTR, the infringing functionality, processes 40 million (or 4%) of those daily requests (Ex. 1, Trial Tr. at 474:23-475:1, 1101:3-5, 1234:12-14), (5) Finjan used a 8-16% rate for licensing negotiations based on the 2008 Secure Computing verdict on two of the Patents-in-Suit (Ex. 1, Trial Tr. at 907:17-908:1, 1084:3-1085:6), (6) Finjan used a $8 per user fee consistent with a 8-16% rate (Ex. 1, Trial Tr. at 907:17-21), and (7) Finjan's expert licensed Webpulse for $18 a year, which is how Blue Coat licenses the product (Ex. 1, Trial Tr. at 464:5-24; DDX-1245). Ex. 1, Trial Tr. at 2084:10-2085:6; 2145:19-2146:9.

Blue Coat argues for the first time that some of the 75 million Webpulse users are located outside the U.S. It, however, did not present any such evidence at trial. As such, Blue Coat waived this argument, which was never presented to the jury. *See MeadWestVaco Corp. v. Rexam Beauty & Closures, Inc.,* 731 F.3d 1258, 1271 (Fed. Cir. 2013) (defendants waived a defense by failing to raise it at trial); *see also Lisle Corp. v. A.J. Mfg. Co.,* 398 F.3d 1306, 1316-17 (Fed. Cir. 2005) (same); *Asetek Danmark A/S/ v. CMI USA, Inc.*, 100 F.Supp.3d 871, 891-94 (N.D. Cal. 2015) (same). Moreover, because all Webpulse users benefit from the development and updating of Webpulse which is ***only*** done in the U.S., the jury properly considered all Webpulse users. *See NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1317 (Fed. Cir. 2005) (infringement occurs "where control of the system is exercised and beneficial use of the system obtained"). Dr. Layne-Farrar testified to where Webpulse was developed and updated and Blue Coat never challenged this fact. Ex. 1, Trial Tr. at 1106:2-15.

Further, Finjan apportioned Webpulse to the patented invention's footprint, meeting the requirements of the *VirnetX, Ericsson,* and *Garretson* cases. Webpulse was apportioned down by 96% to just its DRTR functionality. *Cf. VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014) (the patentee relied on the "entire value of the iOS devices as the 'smallest salable units,' without attempting to apportion the value attributable to the VPN On Demand and FaceTime features"). This was done because the unrebutted trial evidence was that DRTR processed 40 million of Webpulse's 1 billion daily requests (or 4% of daily requests). Ex. 1, Trial Tr. at 194:18-19, 260:11-

1  13, 474:20-475:1, 495:21-22, 1069:14-1071:14 (PTX-271), 1100:24-1101:5, 1234:12-14.  By using

2  4%, Finjan had apportioned Webpulse before calculating the $24 million damages award (4% of $8 a

3  user = 32 cents multipled by 75 million users), and because Finjan only used the metrics for a single

4  day, Finjan had further apportioned notwithstanding Blue Coat's extensive use of DRTR.

5  Apportionment does not require "absolute precision."  *VirnetX*, 767 F.3d at 1328 (recognizing "the

6  difficulty … in assigning value to a feature that may not have ever been individually sold," such that

7  "it is well-understood that the process may involve some degree of approximation and uncertainty").

8       Blue Coat's claim that DRTR should have been apportioned to the Cookie2 logs is misplaced

9  because Finjan's infringement case was not limited to the Cookie 2 logs.  The Cookie2 logs only

10  related to how Blue Coat infringed *one* element of the asserted claims, as other parts of DRTR

11  infringed the remaining claim elements.  Ex. 1, Trial Tr. at 472:6-25, 492:5-493:23, 497:14-21, 503:4-

12  11, 507:4-19, 511:5-513:4, 514:4-515:4, 516:16-517:6, 529:24-530:22, 630:18-631:3, 634:1-15.

13       The substantial and only evidence was that an $8 per user fee was the starting point for

14  licensing negotiations.  Mr. Chaperot's testimony was not limited to Finjan's current licensing

15  practices.  He testified about the 8-16% rate used since the 2008 Secure Computing jury award that

16  was upheld on appeal and relevant because these rates were around the 2008 hypothetical negotiation

17  date.  Ex. 1, Trial Tr. at 907:17-908:1; *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207-

18  13 (Fed. Cir. 2010).  He further testified that the $8 per user was "consistent" with this 8-16% rate.

19  Ex. 1, Trial Tr. at 907:17-908:1; *see also Oracle Am., Inc. v. Google Inc.,* No. C 10-03561 WHA, 2012

20  WL 877125, at *3 (N.D. Cal. Mar. 15, 2012) (post-infringement information can be helpful in

21  assessing a reasonable royalty) (citing *Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1333-34

22  (Fed. Cir. 2009); *ResQNet.com, Inc. v. Lansa, Inc.,* 594 F.3d 860, 872 (Fed. Cir. 2010) ("the district

23  court may also consider the panoply of events and facts that occurred thereafter and that could not have

24  been known or predicted by the hypothesized negotiatiors") (internal quotations and citation omitted).

25  There was substantial trial evidence about the parties' prior agreements where the royalty payments

26  were based on a per user fee. Ex. 1, Trial Tr. at 290:12-292:11; 1091:11-1092:7, 1104:4-12.  The

27  parties' OEM license agreement that lasted for years had a $14-35 per user fee. *Id.*, 1091:11-1092:7;

28

4

FINJAN'S OPPOSITION TO BLUE COAT'S            Case No.: 13-CV-03999-BLF
RENEWED MOTION FOR JMOL

1266:4-1275:16. Blue Coat licensed WebPulse to Dr. Cole, at a rate of $18 per user a year. *Id.*, 464:5-24. Thus, there was substantial trial evidence for the $8 per user starting point.

Blue Coat's claim that Finjan cannot tie the $8 per user fee to the hypothetical negotiation date because it was unable to cross-examine Mr. Chaperot regarding past licenses is a red herring. Mr. Chaperot did not testify about Finjan's past license agreements. As set forth in the Pretrial Order, he testified about Finjan's "licensing practices" and Mr. Hartstein, Finjan's President, testified about Finjan's past licenses. Dkt. No. 293-5 at 1 and 6; Ex. 1, Trial Tr. at 292:16-292:25. Thus, cross-examination of Mr. Chaperot on Finjan's past licenses was outside the scope of his direct testimony. Ex. 1, Trial Tr. at 911:15-912:1. Moreover, Blue Coat made no attempt to cross examine Mr. Chaperot about the $8 per user fee or the 8-16% – there was no question whatsoever on the substance of this testimony. Blue Coat's failure to cross-examine him about the $8 per user fee is the real issue, not past licenses, highlighting the only trial evidence regarding licensing that supports the jury's verdict.

Blue Coat's claim that the jury did not consider the '844 Patent separately from other patents is incorrect. The special verdict form and the jury instructions required the jury to consider infringement and damages for each patent separately based on the evidence. Dkt. No. 438 at 2-3, 6-7; Dkt. No.437 at 31-34, 41-44. The substantial trial evidence specific to the '844 Patent was an $8 per user fee, apportioned to the 4% that was specifically tied to a one day usage of the infringing DRTR functionality and applying the $0.32 a user to the 75 million Webpulse users. Because this was tied specifically to the infringing DRTR functionality at issue for the '844 Patent, the damages reflected the footprint of the invention, not Finjan's entire patent portfolio which implicates different functionality.

**B.     Substantial Evidence Supports the Jury's Remaining Damages Findings.**

Substantial evidence supports the jury's award for Blue Coat's infringement of the '633, '731, '968, and '780 Patents. Blue Coat ignores this evidence, which includes testimony from its fact and expert witnesses, that the internal, confidential Blue Coat document, "Blue Coat Technologies 101" (JTX-2013), was a reliable source of information regarding Blue Coat's products, technologies and development thereof. Ex. 1, Trial Tr. at 784:24-785:23, 805:24-806:4, 813:15-21, 823:22-826:12, 838:4-840:5, 899:3-900:6, 966:19-969:14, 970:19-975:7, 1009:11-1011:14, 1108:16-1118:12,

1247:15-16; 1144:3-1145:11, 1167:6-1168:24, 1172:22-1174:9, 1212:25-1213:20, 1227: 14-1228:18, 1246:22- 1247:2, 1297:6-1298:4, 1342:17-1346:14, 1511:18-23.  The parties used this document at trial to describe a chronological history of Blue Coat and its product development.  *Id.*, 250:24-252:10, 1172:22-1174:9, 1212:25-1213:20, 1227:14-1228:18, 1246:22-1247:2, 1297:6-1298:4.

Near the end of this document, there is a page titled "Secure Web Gateway: Functions" identifying 24 functions of Blue Coat's security products.  JTX-2013 at BC0210379.  The substantial trial evidence was that Blue Coat sells its products as part of a layered system of security, and these 24 functions were equal parts of a layered defense.  Ex. 1, Trial Tr. at 957:7-15-959:15, 970:19-972:1, 1117:12-1118:12, 1247:7-21; PTX-149; JTX 2013; JTX-2022.  Dr. Layne-Farrar testified that she gave have equal value to the 24 functions based on this document, her discussions with Finjan's technical experts, and a Blue Coat engineer's deposition.  Ex. 1, Trial Tr. at 1110: 5-24; 1118:2-12, 1144:3-1145:11.  Blue Coat's argument that Dr. Layne-Farrar should have looked at the accused products without looking at non-accused products works against Blue Coat.  As Dr. Layne-Farrar testified, had she chosen to look at the functions for only the infringing products, rather than the system as a whole, the apportionment denominator would have been smaller and the damages much higher.  *Id.*, 1153:6-18, 1156:5-18.  She explained that because by including these other functions, she was overly conservative weighing the 24 functions with equal value.  *Id.*, 1108:8-1118:12.

Other Blue Coat documents established that using the 24 functions as the denominator for apportionment was extremely conservative, as they showed fewer components/ features of Blue Coat's infringing products, such that apportionment could reasonably have been much larger.  Ex. 1, Trial Tr. at 592:10-593:17; PTX-160 (showing 2 of 6 functions of the MAA infringe the '633 Patent); Ex. 1, Trial Tr. at 784:4-23; JTX-2013 at 49 (showing 2 of 11 functions of the ProxySG infringe the '731 Patent); *see also* Ex. 1, Trial Tr. at 783:24-784:23; 805:24-806:4, 813:15-21; 817:2-818:20; JTX-2013 (showing 2 of 11 functions of the ProxySG infringe the '968 Patent); Ex. 1, Trial Tr. at 853:6-854:17; PTX-615 at 57:18-58:23 (showing one of four functions of ProxyAV, i.e. hashing, infringes the '780 Patent); Ex. 1, Trial Tr. at 1112:23-1114:24; 1116:21-1118:1; 1150:17-1151:6; 1153:6-15; 1158:17-20.  For example, Mr. Schoenfeld, Blue Coat's current VP of Products, testified that ProxySG had 11

FINJAN'S OPPOSITION TO BLUE COAT'S            Case No.: 13-CV-03999-BLF
RENEWED MOTION FOR JMOL

1  functions, 2 of which were accused of infringement, and MAA had six functions, 2 of which were
2  accused of infringement.  Ex. 1, Trial Tr. at 1289:12-1290:11.  When Blue Coat cross-examined Dr.
3  Layne-Farrar on apportionment, they showed a Webpulse architecture document that had 4 functions.
4  *See* JTX 2019 at 64.  Based on this architecture document, which was used multiple times at trial,
5  apportionment of the SSPPU revenues could have been 50% given that 2 of the 4 functions shown (SG
6  and DRTR) were accused of infringement.  Ex. 1, Trial Tr. at 1146:5-1149:24; JTX 2019.  Finjan's
7  expert, however, used a 1/24 or 3/24 apportionment of the SSPPU revenues, even though 2/11 of
8  ProxySG's, 1/3 of MAA's, and 1/4 of ProxyAV's SSPPU revenues could have been used.  Ex. 1, Trial
9  Tr. at 1066:16-1067:6; 1069:14-1071:17 (PTX-271); PTX-611 at 9:21-22, 24.  Thus, Finjan's expert
10 was extremely conservative, despite the importance of the infringing products, as Webpulse was the
11 "backbone" and ProxySG was the "heart" of Blue Coat's products.  Ex. 1, Trial Tr. at 1067:2-6;
12 1071:5-17; 1150:6-25.

13  Blue Coat's claim that the '731 and '968 Patents should not have been apportioned based on
14 the Global Intelligence Network ("GIN") because Webpulse is only part of GIN ignores the substantial
15 trial evidence.  The jury had substantial evidence to make its finding, despite it being "possible to draw
16 a contrary conclusion from the same evidence," as Blue Coat suggests.  *Johnson*, 251 F.3d at 1227.
17 While Blue Coat may have argued that GIN had more features than Webpulse, the only document Blue
18 Coat showed at trial regarding GIN was one created for purposes of litigation.  Ex. 1, Trial Tr. at
19 1287:16-1288:5.  In contrast, Finjan used Blue Coat confidential documents created in the ordinary
20 course of business about its infringing products to prove its case.  For example, Finjan's expert
21 testified about how Blue Coat's confidential documents equate Webpulse with GIN, and if there were
22 any additional features within the GIN, such features were not critical, such as the user interface.  Ex.
23 1, Trial Tr. at 988:9-12, 990:10-15, 1006:11-1008:8; 1142:9-12; JTX-2022; JTX-2025; JTX-2027.

24  Moreover, while Mr. Schoenfeld could not equate any of the 24 functions to have any specific
25 value, the jury could have found that Mr. Schoenfeld was not credible given the substantial trial
26 evidence of Blue Coat confidential documents.  *See e.g., Little v. City of Richmond*, No. 13-CV-02067-
27 JSC, 2015 WL 3543127, at *2 (N.D. Cal. June 5, 2015).  Thus, Dr. Layne-Farrar had significant
28

7

foundation for her apportionment testimony for the '633, '731, '968, or '780 Patent. Ex. 1, Trial Tr. at 1108:8-1118:12.

Contrary to Blue Coat's assertions otherwise, Dr. Layne-Farrar's testimony that her reasonable royalty opinion was the floor for damages was appropriate. Ex. 1, Trial Tr. at 1044:21-1045:2-7; 1112:23-1114:24; 1116:21-1118:1; 1158:17-20; *see also id.*, 1113:9-14; 1150:17-1151:6; 1153:6-15 (testimony about her conservative method removed 87-95% of SSPPU revenues after apportionment). The jury was properly instructed about how to assess damages to compensate Finjan for Blue Coat's infringement. *See* 35 U.S.C. § 284 ("… damages adequate to compensate for the infringement, but *in no event less than a reasonable royalt*y for the use made of the invention by the infringer….") (emphasis added); *see also Apple*, 757 F. 3d at 1327-28 ("Because no less than a reasonable royalty is required, the fact finder must determine what royalty is supported by the record" even where a "patentee's evidence fails to support its specific royalty estimate") (citations omitted); *King Instruments Corp. v. Perego*, 65 F.3d 941, 947 n.2 (Fed. Cir. 1995) ("Congress set the reasonable royalty as the floor, not the ceiling of damages for infringement"). Given that Dr. Layne-Farrar's reasonable royalties were the floor and very conservative, it was entirely appropriate based on the substantial trial evidence for the jury to find that a higher amount is a reasonable royalty. Contrary to Blue Coat's Motion, the jury did not "double" the reasonable royalty; rather it awarded approximately 1.5 times the amount of the "lower bound" reasonable royalty for 3 of the 4 patents and adopted the reasonable royalty that Finjan's damages expert opined for the '780 Patent. Dkt. No. 438 at 6-7; Ex. 1, Trial Tr. at 1119:18-1120:22. Thus, Finjan's closings were based on the substantial trial evidence.

Finally, Finjan did not "double-dip" or "triple-dip" on damages. The jury separately identified the reasonable royalty for Blue Coat's making, use, sale and offers for sale of the specific infringing functionality for *each* patent. While one product may have infringed several different patents, each patent claims different patented technology, such that the royalty was specific to Blue Coat's infringement of that particular technology. And for the '968 and '731 Patents, Finjan did not seek a specific value for Blue Coat's use of Webpulse with other products, such that the award does not reflect any double or triple dipping on damages. Thus, the jury awarded the appropriate damages

8

award based on the unrebutted substantial trial evidence.  *Asetek Danmark A/S v. CMI USA, Inc.*, No. 13-CV-00457-JST, 2015 WL 5568360, at *8 (N.D. Cal. Sept. 22, 2015) (citing *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387 (Fed. Cir. 2003) (a "reasonably royalty is an issue of fact, and the jury's damages award is reviewed under the substantial evidence standard.")).

### C. Infringement Verdict.

Finjan presented overwhelming evidence that Blue Coat infringes the '844, '731, '780, '968 and '633 Patents, including (1) testimony by Dr. Bims (Ex. 1, Trial Tr. at 367-385) and testimony and testing by Dr. Cole (*id.*, 453-742) and Dr. Mitzenmacher (*id.*, 744-901); (2) numerous Blue Coat documents identified with these witnesses, (3) testimony of Blue Coat personnel (PTX 611-616), and (4) testimony of  inventors (PTX 610; Ex. 1, Trial Tr. at 337-366).  Thus, Blue Coat cannot show, as it must, that the only conclusion reasonably permitted by the evidence is that Finjan did not prove infringement by a preponderance of the evidence.

Finjan proved by substantial evidence that WebPulse meets the security profile elements for the asserted claims of the '844 Patent (*e.g*., Ex. 1, Trial Tr. at 497:14-499:20, 511:5-513:4, 732:13-736:16; JTX 2018; *see also* JTX 2022; JTX 2018; JTX 2019; JTX 2076; PTX 32; PTX 33; PTX 38; PTX 426; Dkt. No. 256 at 15) and '731 Patent (*e.g.*, Ex. 1, Trial Tr. at 763:11-767:4, 769:9-783:3, 790:14-797:16; JTX 2018, 2076; PTX 33, PTX 84, PTX 85).  Finjan specifically proved that the security profile generated by WebPulse is a "profile" that "identifies code" for the '844 Patent (*e.g.*, Ex. 1, Trial Tr. at 509:510:6, 733:3-735:13, 769:15-779: 21,1538:18-1539:5; JTX 2022) and that comprises "a list of computer commands" for the '731 Patent[2] (*e.g*., Ex. 1, Trial Tr. at 769:15-770:2, 772:9-773:4,781:20-782:13, 794:3-23, 873:16-883:19, 881:18-882:6).  Finjan also proved that WebPulse satisfies the "before" aspect of the linking element of the '844 Patent (*e.g*., Ex. 1, Trial Tr. at 478:23-479:16, 493:18-23, 500:14-24, 525:6-527:20, 731:24-732:12; PTX 38).

Finjan proved by substantial evidence that the policy index element of Claim 1 of the '968

---

[2] In response to Blue Coat's footnote 6, Finjan also proved by substantial evidence that the security profile cache element is satisfied, including because there is a security profile as explained above, as well as because the security profile, including Cookie2, is stored in a cache in the SG part of WebPulse.  *E.g.*, Ex. 1, Trial Tr. at 792:5-25, 797:3-6, 867:13-22, 868:20-869:13, 871:12-23; 763:11-767:4, 769:9-783:3, 790:14-797:16; PTX 33; JTX 2018; JTX 2076; PTX 84; PTX 333; PTX 85.

1  Patent is met by ProxySG (*e.g*., Ex. 1, Trial Tr. at 820:12-823:21, 823:14-26:12, 833:5-35:23, 836:1-
2  10, 840:6-842:4, 898:14-900:6; JTX 2013; JTX 2076; PTX 616 at 36:4-18), including that the policy
3  index indicates "cache content that is known to be allowable relative to a given policy…" (*e.g*., Ex. 1,
4  Trial Tr. at 834:25-835:23, 899:4-900:6).  Finjan also proved by substantial evidence that the hashing
5  element of the asserted claims of the '780 Patent is met by ProxyAV, and specifically that the
6  "together" requirement of the parties' agreed-upon construction is satisfied (*e.g*., Dkt. No. 256 at 12,
7  842:13-858:6, 889:23-890:14, 891:14-17, 893:21-894:11, 1549:10-1555:10; JTX 2041; JTX 2015;
8  JTX 2076; PTX 615 at 57:14-58:9).  Finjan also proved by substantial evidence that Claim 14 of the
9  '633 Patent is infringed under DOE, including because (1) Dr. Cole testified that the accused products
10 have the same function, way and result as the claim elements (Ex. 1, Trial Tr. at 610:21-612:9), (2) the
11 Court's claim construction does not require "communication" of mobile protection code (MPC) (Dkt.
12 No. 118 at 15), and in any event, MPC is communicated to MAA during installation (*e.g.*, Ex. 1, Trial
13 Tr. at 1668:11-15, 1668:24-1669:5, 1654:9-1655:3), and (3)  MAA is the required "downloadable-
14 information destination" (*e.g.*, Ex. 1, Trial Tr. at 738:20-740:3; *see also id.*, 578:15-584:12, 589:3-
15 612:15, 1666:4-23, 1668:7-10; PTX 380; PTX 160; PTX 152; PTX 149; PTX 161; PTX 612; JTX
16 2076).  Thus, Blue Coat is not entitled to JMOL of noninfringement.

17 **D.     Validity Verdict.**

18     Blue Coat falls far short of showing that the only conclusion that the evidence reasonably
19 permits is that it proved validity with clear and convincing evidence.  Blue Coat makes only
20 conclusory statements without any explanation of how it allegedly proved invalidity on an element-by-
21 element basis and completely ignores Finjan's extensive rebuttal evidence.  Ex. 1, Trial Tr. at 1835-
22 1955.  Blue Coat based its entire invalidity defense on inherency but never showed that elements not
23 disclosed in its asserted prior art reference for each patent were "necessarily [] present" in that
24 reference.  *See Motorola Mobility, LLC v. Int'l Trade Comm'n*, 737 F.3d 1345, 1348-50 (Fed. Cir.
25 2013).  Thus, Blue Coat is not entitled to JMOL of invalidity.

26 **III.    CONCLUSION**

27     For the foregoing reasons, Finjan respectfully requests that the Court deny Blue Coat's motion.

28

|   |   |
|---|---|
|   | Respectfully submitted, |
| Dated:  January 4, 2016 | By: */s/ Hannah Lee* |
|   | Paul J. Andre (SBN 196585) |
|   | Lisa Kobialka (SBN 191404) |
|   | James Hannah (SBN 237978) |
|   | Hannah Lee (SBN 253197) |
|   | KRAMER LEVIN NAFTALIS |
|   |   & FRANKEL LLP |
|   | 990 Marsh Road |
|   | Menlo Park, CA  94025 |
|   | Telephone:  (650) 752-1700 |
|   | Facsimile:   (650) 752-1800 |
|   | pandre@kramerlevin.com |
|   | lkobialka@kramerlevin.com |
|   | jhannah@kramerlevin.com |
|   | hlee@kramerlevin.com |
|   |   |
|   | *Attorneys for Plaintiff* |
|   | FINJAN, INC. |

11

FINJAN'S OPPOSITION TO BLUE COAT'S　　　　　　　　　　　　　　Case No.: 13-CV-03999-BLF
RENEWED MOTION FOR JMOL