EDWARD G. POPLAWSKI (State Bar No. 113590)
epoplawski@wsgr.com
OLIVIA M. KIM (State Bar No. 228382)
okim@wsgr.com
BRIAN LAM (State Bar No. 272624)
blam@wsgr.com
S. FERRELL ALMAN, JR. (State Bar No. 287746)
falman@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

VERA M. ELSON (State Bar No. 156327)
velson@wsgr.com
CHRISTOPHER D. MAYS (State Bar No. 266510)
cmays@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

Counsel for Defendant
BLUE COAT SYSTEMS, INC

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>BLUE COAT SYSTEMS, INC., a Delaware Corporation,<br><br>    Defendant. | CASE NO. 3:13-cv-03999-BLF-PSG<br><br>**DEFENDANT BLUE COAT SYSTEMS, INC.'S REPLY IN SUPPORT OF ITS RENEWED MOTION FOR JMOL PURSUANT TO FED. R. CIV. P. 50(b)**<br><br>Date: April 28, 2016<br>Time: 9 a.m.<br>Place: Courtroom 3, 5th Floor<br>Before: Hon. Beth Labson Freeman |

Defendant Blue Coat Systems, Inc. ("Blue Coat") respectfully submits this Reply in Support of Its Renewed Motion for JMOL Pursuant to FED. R. CIV. P. 50(b).

### A. Finjan Cannot Set Forth A Basis For The '844 Patent Damages.

Finjan had the burden of proving damages under the hypothetical negotiation ("HNG") framework premised on a 2008 license negotiation date. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) (vacating jury award for lack of substantial evidence that "at the time of the hypothetical negotiation" the "patented feature would have been so frequently used or valued so as to command a lump sum payment" of about 8%). Moreover, there is an essential predicate no matter whether damages expert testimony from the patentee is always required: Finjan must present a legally sound and reliable methodology, including a proper comparability and apportionment analysis, sufficiently tied to the extent of the infringing use. *Ericsson, Inc v. D-Link Sys.*, 773 F.3d 1201, 1227-28 (Fed. Cir. 2014). "Superficial testimony" on royalty numbers or on a royalty rate in effect at trial time is unsustainable "speculation and guesswork." *See, e.g., Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 30 (Fed. Cir. 2012); *Riles v. Shell Exploration & Production Co.*, 298 F.3d 1302, 1311, 1313 (Fed. Cir. 2002); *Lucent*, 580 F.3d at 1335; *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011).

Licensing proposals are inherently unreliable as benchmarks for a HNG royalty. *See, e.g., Whitserve*, 694 F.3d at 30. There is no evidence of a prior $8 user fee proposal to anyone. Rather, Finjan relies only on Mr. Chaperot's cursory testimony that Finjan's current practice is to start with an 8-16% rate per the 2008 Secure Computing ("SC") judgment or for "a different structure" something "consistent with" such rate "like $8 per user fee." (Dkt. 426 at 907:10-908:1.) He vaguely says that the 8-16% rates were for unidentified hardware and software revenues respectively. He thus neither identifies any $8 user fee proposal nor provides any evidence of the technologic or economic comparability of the 8-16% rate to the $8 user fee or otherwise shows how it is linked with a 8-16% royalty rate from prior, unrelated litigation. He fails to explain how the SC products are comparable to WebPulse/DRTR, or account for

different patents.[1]  *Uniloc*, 632 F.3d 1292 at 1317 ("[T]here must be a basis in fact to associate the royalty rates used in prior licenses to the particular hypothetical negotiation at issue in the case."); *Wordtech Sys., Inc. v. Integrated Network Solutions, Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010) (rejecting proffered licenses as "[n]either license describe[d] how the parties calculated each lump sum, the licensees' intended products, or how many products each license expected to produce").  Further, as a lay witnesses, Mr. Chaperot cannot testify about what would have happened in the HNG and cannot link Finjan's current starting point in negotiations with a 8-16% royalty rate from prior, unrelated litigation.  *See, e.g.*, *AVM Techs., LLC v. Intel Corp.*, 927 F. Supp. 2d 139, 146 (D. Del. 2013) ("expert, not lay, witness may address hypothetical questions") (citation omitted); *Veritas Operating Corp. v. Microsoft Corp.*, No. 06-0703, 2008 U.S. Dist. LEXIS 35627, at *102-03 (W.D. Wash. Jan. 17, 2008) (lay witness may not offer an opinion on ultimate patent damages, "including determining a reasonable royalty").

There was abundant evidence that there are about 75 million ***worldwide*** users of WebPulse who access WebPulse through data centers that are located around the world.  (Dkt. 427 at 1176:10-14; Dkt. 430 at 1217:8-1218:17, 1245:5-1246:16, 1247:1-1252:25; JTX 2013 at BC 0210328; JTX 2022 at BC0182927.)

In addition, Finjan improperly relies on Dr. Layne-Farrar's ("DLF") testimony and mischaracterizes it.  (Dkt. 427 at 1106:2-15.)  DLF had no opinion concerning the '844 patent.  And her testimony was limited to reasonable royalty calculation, not to the technical or operational aspects of the accused products.  (Dkt. 427 at 1039:22-25, 1107:2-4.)  DLF did not testify that "updating" or "developing" of WebPulse was only done in the U.S.; or refute the unrebutted evidence that WebPulse users access WebPulse through separate data centers located around the world.[2]  No evidence corroborates Finjan's mischaracterized *ipse dixit* of DLF.

---

[1] The *Secure Computing* litigation **did not involve the '844 patent** and the verdict/judgment was years before the *Uniloc, Lucent* and *ReqQNet* decisions which introduced strict comparability and apportionment requirements.  (Dkt. 427 at 1084:3-16.)

[2] DLF refers to WebFilter ("WF"), not WebPulse ("WP"), and vaguely opines that "it's the cloud" and "it's pushed out of Utah."  (Dkt. 427 at 1106:2-15.)  WF can be used with CacheFlow and  ProxySG and WP supports five different products besides ProxySG.  (Dkt. 430 at 1245:5-1246:13.)

Similarly, Finjan's citation to *NTP* is misplaced, since there users of the infringing system (*e.g.*, Blackberry phones) were located in the U.S. and exercising control and use of the system from within the U.S. *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1317 (Fed. Cir. 2005). Accordingly, Finjan failed to show any evidence, much less substantial evidence, of damages attributable to 75 million users or equated them with 4% domestic transactions. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1375-76 (Fed. Cir. 2013) (denying damages for infringing extraterritorial sales where patentee failed to establish connection between sales and direct infringement); *Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.*, No. 2014-1492, 2015 U.S. App. LEXIS 13622, at *53-57 (Fed. Cir. Aug. 4, 2015).

Finjan also asserts that its apportionment satisfied *VirnetX, Ericsson*, and *Garretson*, since it apportioned WebPulse to "just its DRTR functionality." (Dkt. 516 at 3.) But, these cases require isolating within DRTR "the value attributable to the infringing features of the product, ***and no more***." *Ericsson,* 773 F.3d at 1226 (emphasis added). Finjan has not shown any evidence that the '844 patent implicates the ***entirety*** of DRTR's functionality. Rather, Finjan's own experts (Drs. Mitzenmacher and Cole) and Blue Coat's documents confirm that DRTR's categorization functionality implicates more than 85 non-accused categories (*e.g.*, gambling, alcohol) besides the lone category (*i.e.*, "suspicious") implicated. (Dkt. 426 at 780:23-781:14, 838:4-839:23; Dkt. 407 at 475:14-23, 525:19-526:15, 632:15-24; PTX-38 at BC0222149, 159-161; JTX 2022 at BC0182929 (showing DRTR categories).) Nor did Finjan properly apportion further down to the Cookie2 logs that DRTR generates, each of which has many non-accused fields. (*See, e.g.*, Dkt. 407 at 636:17-25, 638:8-18; JTX 2018.)

In sum, in closing argument Finjan put the jury to sea without guiding charts, thereby causing a verdict not based on "sound economic and factual predicates," but rather on "speculation and guesswork." *Riles v*, 298 F.3d at 1311; *Lucent*, 580 F.3d at 1335.

**B.     Finjan's Assertions Cannot Support The Remaining Damages.**

Proper calculation of patent damages requires "sound economic and factual predicates" coupled with a "careful tie [of] proof of damages to the claimed invention's footprint in the marketplace." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010). Finjan

argues that DLF's basis for giving equal value to the 24 functions is based on JTX-2013, Finjan's technical experts, and a Blue Coat engineer's deposition; yet Finjan does not dispute or even address the clear facts that Mr. Medvidovic provided no opinion as to the non-accused functions and DLF had no understanding as to the non-accused functions contained in the exhibit. (Dkt. 427 at 998:8-1005:18, 1152:16-1153:24.) Finjan continues, arguing that its apportionment was "conservative" and that it "could have" performed less of an apportionment. (Dkt. 516 at 6-7.) Such argument ignores the clear, unambiguous directive to apportion by isolating the value of the claimed invention and only confirms the legal impropriety of Finjan's damages approach.[3] As the Federal Circuit and courts in this district have made abundantly clear, "a careful inspection of *Lucent*, *LaserDynamics*, *VirnetX* and the rest shows the basic methodological rule for expert [damages] analysis remains the same: calculate the value of those features that infringe, and cut out the value of all the rest." *Good Tech. Corp. v. MobileIron, Inc.*, No. 5:12-cv-05826-PSG, 2015 U.S. Dist. LEXIS 87347, at *2-3 (N.D. Cal. July 5, 2015); *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1326-27 (Fed. Cir. 2014).

Finjan's assertions that the jury did not double the royalty proffered by DLF, but rather multiplied the "lower bound" by 1.5 is mathematically incorrect as confirmed when comparing DLF's testimony, Finjan's closing, and the jury awards. (Dkt. 427 at 1120:4-12; Dkt. 434 at 2083:5-18; Dkt. 438 at 6-7.) Apart from the mathematical inaccuracies, Finjan does not dispute that its counsel instructed the jury multiple times that they should "double" the damages or award damages higher than a reasonable royalty. (Dkt. 404 at 190:9-19; Dkt. 434 at 2081:14-19, 2083:5-2084:5, 2086:16-2087:1, 2148:21-2149:2.) Similarly, Finjan fails to cite any evidence in the record to factually support the jury's doubling of damages. Accordingly, the jury's award contravened the law of damages and the Court's instructions. *Whitserve*, 694 F.3d at 33.

Finjan's argument concerning the double-dipping and triple-dipping of its damages award

---

[3] While Finjan argues that the only document introduced at trial showing the GIN functionality was one created for purposes of litigation, the Blue Coat employee in charge of supervising the GIN testified that it includes numerous non-accused products and functions, existing in data centers around the world. (Dkt. 430 at 1217:8-1220:17, 1222:12-1224:6.)

fares no better as it does not dispute that its apportionment approach allowed multiple recoveries where multiple patents implicated the *same, single product feature*. Rather, Finjan's arguments address the situation in which several different patents implicated a *single product*, which is one step removed from the apportioned revenue base, and thus not analogous to the actual royalty calculation.

Despite the statutory language ("in no event less than a reasonable royalty"), the Supreme Court requires a patent owner to prove actual damages; lest it be left with zero or nominal damages. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 504-05 (1964). This requires predicate methodology tied to sufficient record evidence.

### C. Infringement And Validity Verdict

Finjan failed to (and cannot) cite to any substantial evidence that the "security profile" required by the asserted claims of the '844 and '731 patents are met by the accused WebPulse. In addition, Finjan cannot point to any evidence that the accused WebPulse meets the limitation "linking . . . before a web server makes the Downloadable available to web clients" required in the asserted claims of the '844 patent. Finjan also cannot provide any evidence that the final decision (*i.e.*, the result) of whether the content is allowable or not is saved in ProxySG as required by claim 1 of the '968 patent. With regards to the '780 patent, Finjan completely ignored the "together" requirement, wherein the asserted claims require "performing a hashing function on the Downloadable *together* with its fetched software component." Lastly, Finjan failed to provide any substantial evidence that claim 14 of the '633 patent is infringed under the doctrine of equivalents.

Blue Coat proved by clear and convincing evidence that the patents-in-suit are invalid as anticipated. Blue Coat's experts applied the correct inherency standard when applicable. *See Standard Havens Products, Inc. v. Gencor Industries, Inc.*, 953 F.2d 1360, 1369 (Fed. Cir. 1991); *Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 639-40 (Fed. Cir. 2011); *In re Graves*, 69 F.3d 1147, 1152 (Fed. Cir. 1995).

### D. Conclusion

For the foregoing reasons, Blue Coat respectfully submits that its Motion be GRANTED.

|   |   |   |
|---|---|---|
| 1 |  | Respectfully submitted, |
| 2 |  | WILSON SONSINI GOODRICH & ROSATI |
| 3 |  | Professional Corporation |
| 4 | DATED: January 11, 2016 | By: */s/ Olivia M. Kim* |

EDWARD G. POPLAWSKI
OLIVIA M. KIM
BRIAN LAM
S. FERRELL ALMAN, JR.
VERA M. ELSON
CHRISTOPHER MAYS

Counsel for Defendant
BLUE COAT SYSTEMS, INC.