PAUL ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
HANNAH LEE (State Bar No. 253197)
hlee@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 752-1700
Facsimile:   (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>BLUE COAT SYSTEMS, INC., a Delaware Corporation,<br><br>Defendant. | Case No.: 13-cv-03999-BLF<br><br>**PLAINTIFF FINJAN, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION PURSUANT TO FED. R. CIV. P. 59(e) TO AMEND THE JUDGMENT TO INCLUDE ENHANCED DAMAGES AND PRE-AND POST-JUDGMENT INTEREST**<br><br>Date:    April 28, 2016<br>Time:    9:00 a.m.<br>Place:   Courtroom 3, 5th Floor<br>Before:  Hon. Beth Labson Freeman |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

---

FINJAN'S REPLY IN SUPPORT OF MOTION                                              Case No. 13-cv-03999-BLF
FOR ENHANCED DAMAGES AND INTEREST

# TABLE OF CONTENTS

Page

I. FINJAN IS ENTITLED TO ENHANCED DAMAGES ................................................................1

    A. Enhanced Damages Are Proper Under The Law ................................................................1

    B. All of Read Factors Weigh In Favor Of Enhanced Damages ............................................2

        1. Read Factor 1: Blue Coat Deliberately Copied Finjan's Patented Technology. ..................................................................................................2

            a. Blue Coat Misapplies the Law Regarding Copying. ................................3

            b. Blue Coat Fails to Refute the Evidence Demonstrating Copying..............4

        2. Read Factor 2: Blue Coat Lacked Any Good Faith Belief That Finjan's Patents Were Invalid Or Not-Infringed..................................................8

        3. Read Factor 3: Blue Coat Engaged in Vexatious Litigation Strategies. ...............9

        4. Read Factor 4: Blue Coat Is Financially Capable Of Providing Enhanced Damages..................................................................................................11

        5. Read Factor 5: This is Far From a Close Case......................................................12

        6. Read Factor 6: Blue Coat's Misconduct Has Been Ongoing For Years..............12

        7. Read Factor 7: Blue Coat Took No Action To Remedy Its Wrongdoing............12

        8. Read Factor 8: Blue Coat Had Motivation to Copy Finjan's Technology. ..................................................................................................12

II. FINJAN IS ENTITLED TO PREJUDGMENT INTEREST..........................................................13

    A. Blue Coat's Arguments Regarding Delay are Meritless...................................................13

    B. Blue Coat's Calculation of Prejudgment Interest is Legally Unsupported......................13

    C. Prejudgment Interest Should be Awarded at the Prime Rate...........................................14

III. CONCLUSION................................................................................................................................16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AAT Biquest, Inc. v. Texas Fluorescence Labs., Inc.*,
  No. 14-cv-03909-DMR, 2015 WL 7708332 (N.D. Cal. Nov. 30, 2015) .......................................... 12

*Asetek Danmark A/S v. CMI USA, Inc.*,
  100 F.Supp.3d 871, 891-93 (N.D. Cal. 2015) .................................................................................. 4

*Bio-Rad Labs., Inc. v. Nicolet Inst. Corp.*,
  807 F.2d 964 (Fed. Cir. 1986) ........................................................................................................ 15

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l Inc.*,
  246 F.3d 1336 (Fed. Cir. 2001) ...................................................................................................... 13

*DataTreasury Corp. v. Wells Fargo & Co.*,
  No. 2:06-CV-72 DF, 2010 WL 5140718 (E.D. Tex. Sept. 27, 2010) ............................................. 15

*Finjan Software, Ltd. v. Secure Computing Corp.*,
  No. CA 06-369 (GMS), 2009 WL 2524495 (D. Del. Aug. 18, 2009)
  *aff'd in part, rev'd in part sub nom. Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010) ........................................................................................................ 7

*General Motors Corp. v. Devex Corp.*,
  416 U.S. 648 (1983) ....................................................................................................................... 14

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
  134 S.Ct. 1744 (2014) .................................................................................................................. 1, 2

*iLOR, LLC v. Google, Inc.*,
  631 F.3d 1372 (Fed. Cir. 2011) ........................................................................................................ 2

*Nickson Indus., Inc. v. Rol Mfg. Co.*,
  847 F.2d 795 (Fed. Cir. 1988) ........................................................................................................ 15

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  134 S.Ct. 1749 (2014) .................................................................................................................. 1, 2

*Old Reliable Wholesale, Inc. v. Cornell Corp.*,
  635 F.3d 539 (Fed. Cir. 2011) .......................................................................................................... 2

*Read Corp. v. Portec, Inc.*,
  970 F.2d 816 (Fed. Cir. 1992) .................................................................................................. *passim*

*SCA Hygiene Prods. Aktiebolag SCA v. First Quality Baby Prods., LLC*,
  807 F.3d 1311 (Fed. Cir. 2005) ...................................................................................................... 11

*Server Tech., Inc. v. Am. Power Conversion Corp.*,
    No. 3:06-cv-00698-LRH-VPC, 2015 U.S. Dist. LEXIS 41987
    (D. Nev. March 31, 2015) .................................................................................................. 14, 15

*Spectralytics, Inc. v. Cordis Corp.*,
    649 F.3d 1336 (Fed. Cir. 2011) ................................................................................................... 2

*Studiengesellschaft Kohle v. Dart Indus., Inc.*,
    862 F.2d 1564 (Fed. Cir. 1988) ................................................................................................. 14

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*,
    939 F.2d 1540 (Fed. Cir. 1991) ........................................................................................... 14, 15

**Statutes**

35 U.S.C. § 103 ................................................................................................................................ 10

35 U.S.C. § 284 .............................................................................................................................. 2, 4

35 U.S.C. § 285 .............................................................................................................................. 1, 2

**Other Authorities**

Civil Local Rule 3-4(c)(2) ................................................................................................................. 4

Civil Local Rule 7-4(b) ..................................................................................................................... 4

Federal Rule of Civil Procedure 59(e) ........................................................................................... 1, 2

The enhanced damages requested in Finjan Inc.'s ("Finjan") Motion Pursuant to Rule 59(e) to Amend The Judgment to Include Enhanced Damages and Pre- And Post-Judgment Interest (Dkt. No. 504) (the "Motion") are favored here in view of the totality of the circumstances under *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 826 (Fed. Cir. 1992). In its Opposition to Finjan's Motion ("Opp."), Blue Coat ignores the sea change in this area of law based on *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 134 S.Ct. 1749, 1756 (2014) and *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.,* 134 S.Ct. 1744, 1747-48 (2014), which counsel for a flexible approach to determining enhanced damages in view of the totality of the circumstances. Blue Coat does not refute the ample evidence that enhanced damages are warranted here—instead Blue Coat misapplies the *Read* factors, effectively concedes certain facts, and otherwise raises unsupported or irrelevant facts. Finally, Blue Coat's claim that the jury's damages was "excessive" is not grounds to claim that damages should not be enhanced, where the totality of circumstances demonstrate otherwise. Moreover, as described in Finjan's opposition to Blue Coat's JMOL (Dkt. No. 516), the damages award is proper and based on ample factual evidence.

Further, Blue Coat has not shown any delay or prejudice that precludes application of the general rule that prejudgment interest should be awarded. It also provides no support for awarding prejudgment on any amount less than the full damages award found by the jury, calculated at the prime rate compounded annually. Finally, Blue Coat concedes that post-judgment interest should be granted based on the aggregate damages awarded to Finjan.

## I.     FINJAN IS ENTITLED TO ENHANCED DAMAGES

### A.     Enhanced Damages Are Proper Under The Law

The determination of whether and by how much to enhance damages is committed to the trial court's discretion. *Read*, 970 F.2d at 826. While Blue Coat argues that a willful infringement finding is required before enhancing damages, the Supreme Court in *Octane Fitness* and *Highmark* rejected the underlining rationale for this requirement by overruling the *Brooks Furniture* objective baselessness standard for finding a case exceptional under 35 U.S.C. § 285 ("§ 285"). *Octane*, 134 S.Ct. at 1756; *Highmark,* 134 S.Ct. at 1747-48. Courts have consistently found that this objective

1

baselessness standard under *Brooks Furniture* is "identical to the objective reckless standard for enhanced damages." *iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1377 (Fed. Cir. 2011)); *see also Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 544 (Fed. Cir. 2011) (finding that the standard for fee-shifting under § 285 is "identical to" the willfulness standard for enhanced damages under 35 U.S.C. § 284). Thus, consistent with the Supreme Court rulings in *Octane* and *Highmark*, the issue of enhanced damages should be analyzed in view of the totality of the circumstances, such as the factors set forth in *Read*, 970 F.2d at 826.

Blue Coat's repeated attempts to impose a willfulness requirement on each individual *Read* factor is improper because the law requires that the *Read* factors be considered *separately* from willfulness. *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1348-49 (Fed. Cir. 2011) (finding that the district court misapplied the willfulness standard to the "distinct and separate" determination of whether to enhance damages). Thus, willfulness is a separate determination, even though certain factors that support a willfulness finding also support finding enhanced damages under the totality of the circumstances. Here, such facts include Blue Coat's knowledge of Finjan's technology and patents, and Blue Coat's deliberate copying of this technology without regard to whether it was infringing valid patents. *See* Opp. at 2 ("copying of the patented invention with knowledge of the patent can be evidence of willfulness"). Further, Blue Coat's argument that there is "nothing for the Court to alter or amend" under Rule 59(e) because there is no willfulness finding is nonsensical (Opp. at 3), as Finjan is seeking to *amend the damages judgment* based on 35 U.S.C. § 284.

As described below and in Finjan's Motion, the evidence shows that the *Read* factors support enhancing damages in this case.

> **B.     All of *Read* Factors Weigh In FavorOf Enhanced Damages**
>
> **1.     *Read* Factor 1: Blue Coat Deliberately Copied Finjan's Patented Technology.**

Finjan presented overwhelming evidence that Blue Coat deliberately copied Finjan's patented technology, and thus this *Read* factor strongly weighs in Finjan's favor. Blue Coat fails to dispute much of this evidence, including that (1) Blue Coat was well aware of Finjan's innovative technology

2

and aspired to have it in its own products, (2) Blue Coat knew that Finjan had patents protecting its technology, (3) despite this knowledge Blue Coat deliberately incorporated the infringing technology into its products, and (4) Blue Coat's products thereafter practiced the infringing technology.

### a. Blue Coat Misapplies the Law Regarding Copying.

Blue Coat improperly attempts to superimpose a requirement that, to show copying, there must be "evidence of…efforts to replicate a *specific product* [of Finjan]." Yet copying in the context of the *Read* factors concerns the "culpability" of Blue Coat's conduct and does not require the evidence to be tied to a specific product. *Read,* 970 F.2d at 827-28. Rather, this *Read* factor concerns "whether the infringer deliberately copied the *ideas* or design of another." *Id.* at 827 (emphasis added). The cases Blue Coat cited regarding copying are inapposite, as they deal with copying in the context of obviousness, not enhanced damages. *See* Opp. at 6 and 10-11. Moreover, the Finjan technology that Blue Coat sought to emulate, as discussed throughout Blue Coat's internal documents, is the same technology incorporated into Finjan's Vital Security product line, which was marked with Finjan's patent numbers, including the '844, '731 and '968 Patents. *See, e.g.,* Ex. 1[1], PTX 564 at FINJAN-BC 013030; *see also* Ex. 2, PTX 565 at FINJAN-BC 013111; Ex. 3, PTX 566 at FINJAN-BC 013192; Ex. 4, DDX 1413 at FINJAN-BC 038029. Thus, Blue Coat specifically copied the patented technology in Finjan's Vital Security products.

Furthermore, Finjan never "waived" a finding of copying, as Blue Coat claims. As an initial matter, this argument is fundamentally flawed because it fails to recognize that evidence of copying is relevant to various claims and defenses, including willfulness, obviousness and enhanced damages. Thus, "copying" in and of itself is not a claim or defense that can be "waived." Here, Finjan was permitted the ability to present evidence of copying to the jury as it related to obviousness, a defense that Blue Coat dropped at the last minute at trial. Dkt. No. 367 at 10-11. While the Court limited the introduction of copying evidence for certain other purposes, this decision was based on the potential

---

[1] All references to "Ex. __" are to exhibits to the Declaration of Lisa Kobialka in Support of Finjan's Reply in Support of Its Motion filed herewith ("Kobialka Reply Decl.") unless otherwise indicated.

prejudice to the jury. *Id.* The Court never excluded copying evidence for the purposes of an enhanced damages analysis, where copying is a specific factor the Court considers under *Read*.

Moreover, there is more than sufficient evidence in the record to demonstrate copying. Finjan presented ample evidence at trial showing Blue Coat's development of the infringing technology—which was the same evidence that proved Blue Coat copied the infringing technology. *See* Ex. 5, Trial Tr. at 482:22-489:25, 977:6-980:22, 1094:19-1100:16. Finjan also presented this evidence during the September 9, 2015 bench trial to demonstrate copying in rebuttal to Blue Coat's defense of laches. *See* Ex. 6, Bench Trial Tr. 70:4-72:8; Dkt. No. 451-4 at 25; Dkt. No. 472. The case that Blue Coat relies on to support its claim of waiver is entirely inapplicable here, because it found waiver of certain ***defenses*** that were ***explicitly withdrawn*** prior to trial. *Asetek Danmark A/S v. CMI USA, Inc.*, 100 F.Supp.3d 871, 891-93 (N.D. Cal. 2015). Here, Finjan did not withdraw any defense, much less any claim of copying. Accordingly, Finjan's copying allegations, which were presented at both trials, are in no manner waived.

Blue Coat also provides no support for its claim that copying must be determined by the jury. This argument makes no sense here, where copying pertains to an enhanced damages determination, which is an equitable issue for the Court to decide, and not an issue for the jury. 35 U.S.C. § 284 ("When the damages are not found by a jury, the court shall assess them. In either event ***the court*** may increase the damages up to three times the amount found or assessed.") (emphasis added). Thus, Finjan has properly satisfied the legal requirements to show copying under this *Read* factor.

### b. Blue Coat Fails to Refute the Evidence Demonstrating Copying.

A wealth of evidence demonstrates Blue Coat's deliberate copying of Finjan's technology. Blue Coat's attempts to explain away its admissions in each exhibit are unavailing.[2]

---

[2] Blue Coat's Opposition attempts to end run the page limit requirements of the Civil Local Rules and this Court's Standing Order by including pages of lengthy single-spaced argument. *See* Opp. at 6-10. Because this single-spacing gets around the 25-page limit, these single-spaced portions of Blue Coat's Opposition should not be considered. Dkt. No. 512; Civil Local Rule 3-4(c)(2), 7-4(b); Standing Order re Civil Cases, Section E(1)(a).

While Blue Coat attempts to downplay its OEM partnership with Finjan, this at a minimum shows that Blue Coat was aware of Finjan as early as 2002, and that Finjan and Blue Coat were partners. ████████████████████████████████████████████████████████████████
████████████████████████████████████████████████ Motion at 4; Opp. at 6.[3] For the time period of 2002 through 2007, Blue Coat faults Finjan for not including internal Blue Coat documents to demonstrate copying.  This claim, however, is disingenuous because Blue Coat *refused to produce* internal documents and emails related to Finjan dated prior to 2007 during discovery in this action, despite Finjan's requests for such information.  *See* Dkt. No. 117 at 2-5; Dkt. No. 87-12 at Ex. 12; Kobialka Reply Decl., ¶6.  Moreover, this gap in time is irrelevant because the Blue Coat internal documents that were produced prove Blue Coat's intent to copy Finjan from at least as early as 2007.

While Blue Coat argues that certain evidence dated 2007 and 2008 that Finjan cited relates only to ***ProxyAV*** (Opp. at 7, 10)[4], this is incorrect, as shown below.  Moreover, the product at issue is irrelevant.  This evidence is significant because it is the first evidence proving when Blue Coat *sought to add Finjan's patented technology* to its existing product offering, supported by other evidence of Blue Coat's continued copying of Finjan's patented technology over time.  Specifically, in 2007 and early 2008, Blue Coat had not yet begun making and using the infringing technology for the '844, '731, '968 and '633 Patents.  Thus, the 2007 and 2008 documents only referred to the anti-malware technology that Blue Coat made and sold at the time, which was ProxyAV.  ████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████████████████████████████████

---

[3] Blue Coat's claim in footnote 7 that Finjan "never made a profit" from its products is irrelevant and misleading.  Finjan generated millions of dollars in sales from its products incorporating its patented technology and invested this revenue in research and development.  Dkt. No. 187-28 at ¶731.

[4] Blue Coat's claim that '780 Patent does not concern security is wrong.  Rather, the hashing function described in '780 Patent is a critical component of Finjan's security technology.  Ex. 5, Trial Tr. at 842:13-850:25.

5



Further, Blue Coat does not dispute that Finjan and Blue Coat competed, or that Finjan was targeted as a competitor on various internal Blue Coat documents.  Motion at 6; Opp. at 6-10.  Instead, Blue Coat attempts to minimize its focus on Finjan's technology by claiming that certain documents mention other competitors as well.  However, Blue Coat neglects to acknowledge that Secure Computing acquired Webwasher, both of whom were found to willfully

1  infringe Finjan's patents, including the '780 Patent.  *Finjan Software, Ltd. v. Secure Computing Corp.*,
2  No. CA 06-369 (GMS), 2009 WL 2524495, at *8 (D. Del. Aug. 18, 2009) *aff'd in part, rev'd in part*
3  *sub nom. Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197 (Fed. Cir. 2010); *see also* PTX 180
4  ████████████████████████████████████████████████████████████████████████
5  ████████████████████████████ (Dkt. No. 504-27 at Ex. 22).  Blue Coat also fails to recognize that
6  the competitor, Websense, has licensed Finjan's patent portfolio.  *See* Ex. 5, Trial Tr. at 1065:16-20,
7  1089:13-19.  Thus, it is irrelevant whether Blue Coat was targeting these competitors in addition to
8  Finjan, because these competitors were using Finjan's patented technology—the same technology Blue
9  Coat sought to emulate.  ████████████████████████████████████████████
10 ████████████████████████████████████████████████████████████████████
11 ████████████████████████████████████████████████████████████████████
12 ████████████████████████████████████████████████████████████████████████
13 ████████████████████████████████████████████████████████████████████████
14 ████████████████████████████████████████████████████████████████████████
15 ██████
16     ████████████████████████████████████████████████████████████████████
17 ████████████████████████████████████████████████████████████████████
18 ████████████████████████████████████████████████████████████████████████
19 ████████████████████████████████████████████████████████████████████████
20 ████████████████████████████████████████████████████████████████████
21 ████████████████████████████████████████████████████████████████████
22 ██████████████████████████████████████████████████████████████████
23 ████████████████████████████████████████████████████████████████████
24 ████████████████████████████████████████████████████████████████████████
25 ████████████████████████████████████████████████████████████████████████
26 ██████████████████████████████████████████████████████████████████
27 ████████████████████████████████████████████████████████████████

28



2. *Read* Factor 2: Blue Coat Lacked Any Good Faith Belief That Finjan's Patents Were Invalid Or Not-Infringed.

---

[5] Blue Coat also makes the nonsensical argument that documents dated after M86's acquisition of Finjan's operations are not relevant to copying. Opp. at 10. While Finjan sold its operations to M86, it maintained ownership of its patents. Ex. 5, Trial Tr. at 286:23-287:21. As such, Blue Coat's knowledge of Finjan's patents and copying of the patented technology after the acquisition is relevant.

FINJAN'S REPLY IN SUPPORT OF MOTION  Case No. 13-cv-03999-BLF
FOR ENHANCED DAMAGES AND INTEREST

███████████████   ███████████████████   Yet Blue Coat offers no evidence that it formed any belief (let alone a good faith belief) that it did not infringe or that the patents were invalid. Rather, Blue Coat continued to copy Finjan's technology and engage in infringing activity without any precautionary measures. While Blue Coat claims that it developed defenses to infringement *after* Finjan filed suit, Blue Coat's invalidity defense for all of the patents-in-suit, as well as its primary non-infringement defense for the '844 and '731 Patents, were frivolous in nature. *See* Motion at 8-13 and *infra*, discussing *Read* Factor 5. Blue Coat's argument that it succeeded in obtaining partial summary judgment of non-infringement for the '822 Patent and '633 Patents does not help to show good faith. The '822 Patent summary judgment finding is irrelevant, since the '822 Patent is not at issue in Finjan's Motion. The '633 Patent summary judgment finding concerned one isolated feature that Finjan claimed infringed for that patent and did not address the other infringing features. Thus, Blue Coat cannot show that it had a good faith belief under this factor.

### 3. *Read* Factor 3: Blue Coat Engaged in Vexatious Litigation Strategies.

Blue Coat does not dispute Finjan's arguments that it pursued frivolous claims at trial. Rather, it counters that Finjan should have raised these issues in the pretrial statements or pretrial motions. Opp. at 13-15. Finjan did dispute that Blue Coat's arguments had merit, which is why it went to trial. In fact, these defenses were so baseless that Finjan did not use precious Court resources to address them and focused its motion practice on the case's merits, namely infringement. Finjan was, frankly, astonished when Blue Coat did not drop them before trial. For instance, Blue Coat was well aware of its inappropriate claims of anticipation since Finjan raised these issues during *Daubert* proceedings. *See* Dkt. No. 250 at 6-8. Blue Coat's claim that Finjan should have addressed Blue Coat's frivolous arguments with pretrial motions ignores the fact that Blue Coat had numerous baseless invalidity claims and Finjan did not know which ones Blue Coat was going to pursue and the Court's limits on motions. It also attempts to improperly shift the burden on Finjan to address before the Court all of Blue Coat's meritless claims, and invites gamesmanship because an infringer will raise endless frivolous defenses so all defenses cannot be addressed with motions if Finjan were required to address all of them prior to trial. Blue Coat relies on inapposite cases for its untenable position. Both *Adaptix*

1  and *Stragent* (Opp. at 12) involved parties who shifted the focus of their infringement theory before the
2  close of discovery—not a party such as Blue Coat who completely abandoned defenses one week into
3  trial without justification.  *See* Ex. 7, *Stragent, LLC v. Intel Corp.*, No. 6:11-cv-421, Dkt. No. 355,
4  Intel's Amended Motion to Recover Attorneys' Fees, at 14 (E.D. Tex. May 8, 2014).  Blue Coat failed
5  to address the relevant case law Finjan cited showing that vexatious litigation behavior of asserting
6  frivolous claims is a ground for enhanced damages.  *See* Motion at 8.
7     Blue Coat had no reasonable basis for dropping its obviousness claim so late during trial or for
8  combining references under 35 U.S.C. §103.  Blue Coat did not respond to Finjan's expert's various
9  examples for why there was no motivation to combine these references because the result would be
10 inoperable and the art was often not from analogous fields.  Motion at 10.  While Blue Coat complains
11 that Finjan did not identify examples for specific patents or claims (Opp. at 13), there was nothing for
12 Finjan to identify because Blue Coat never provided such an analysis in the first place.  Nonetheless,
13 Blue Coat still forced Finjan to prepare for these claims, including flying Mr. Ben-Itzhak to the United
14 States, the sole witness identified in Finjan's discovery responses (as well as in the Pretrial Order and
15 initial disclosures) with knowledge of the products practicing Finjan's patents, a key secondary
16 consideration Finjan identified to Blue Coat.  *See* Dkt. No. 186-7.  This cannot be compared to
17 Finjan's conduct.  Blue Coat knew for months the theories that Finjan asserted at trial based on
18 Finjan's infringement contentions, expert reports, and summary judgment motion.  *See* Dkt. No. 293-4
19 at 1-3.  Blue Coat's claim that it "had to repeatedly ask Finjan" whether it was pursuing certain patents
20 is wrong.  Finjan informed Blue Coat several times that it was pursuing these patents, and the fact that
21 Blue Coat kept asking the same question nonetheless does not excuse Blue Coat's bad faith conduct.
22 Exs. 8-10.  Finally, the "time constraints at trial" has nothing to do with Blue Coat's pursuit of
23 meritless claims or dropping them late, because this conduct wasted judicial and Finjan's resources.
24    Blue Coat had no written description claim, as the terms Blue Coat disputed were nearly
25 identical to those in the original application or specification, such that no new material was added.  *See*
26 Motion at 10-11.  Blue Coat, nonetheless, failed to drop this defense until well into trial and only
27 argues that its behavior was reasonable because it "only applied to two of the six asserted patents."
28

Opp. at 14.  This argument, however, does not address the meritless nature of Blue Coat's claim in the first place.  Blue Coat also does not deny that its anticipation theories relied entirely on inherency or that inherency is an extremely high standard, particularly under the heightened burden of "clear and convincing evidence."  Opp. at 14; *see also* Motion at 10-11.  Rather than address the basis for its anticipation claims, Blue Coat's claims that Finjan's complaints are not specific enough to respond to, only further highlighting why Blue Coat could not have pursued these claims in good faith in the first place.  Opp. at 14-15.  Blue Coat's only counter regarding its expert's "count" versus "identify" theory is that its expert stated that counting was different from identifying for "code."  *Id.*  Its expert never explained this inherent inconsistency because none exists and there was no reason for Finjan to file a pretrial motion on such a ridiculous position.  *See* Motion at 12.

Blue Coat also failed to explain why, unlike the defendant in *SCA Hygiene Prods. Aktiebolag SCA v. First Quality Baby Prods., LLC*, 807 F.3d 1311 (Fed. Cir. 2005) it waited to raise laches in a bench trial rather than with a summary judgment motion.  It cited no evidence that Finjan knew that ProxySG was infringing the '780 Patent in 2002 and why the '780 Patent was not disclosed as part of its laches claim during discovery.  It also failed to provide a reasonable explanation why it pursued laches post trial, after it was unambiguous that Finjan only sought damages from the filing of the complaint, and *after* the Supreme Court ruled on laches.  This only forced the parties to expend further resources in briefing and a Court order relating to laches after the law was well settled.  Blue Coat gave no explanation why it raised prosecution history estoppel (PHE) post-trial after the jury had disposed of this issue.  Any purported reservation of PHE on sidebar does not go to the fact that PHE was moot because the jury had also found literal infringement.  Thus, Blue Coat fails to refute its vexatious litigation conduct.

### 4. *Read* Factor 4: Blue Coat Is Financially Capable Of Providing Enhanced Damages.

[redacted]

11

1  ███████████████████████████████████████████████████████████  *See* Motion at
2  15; Opp. at 17.  It also does not dispute Finjan's relative small size and revenues.  *Id.*  Blue Coat
3  incorrectly claims that Finjan is comparing Blue Coat to Microsoft—rather, Finjan has shown that
4  given Blue Coat's specific size and financial condition, it is capable of providing enhanced damages.

            **5.**     ***Read* Factor 5: This is Far From a Close Case.**

Blue Coat provides no meaningful rebuttal for this factor and does not address the description in Finjan's Motion regarding how Blue Coat's infringement was not a close call.  Instead, Blue Coat argues that this factor should address the closeness of a willfulness claim, not the closeness of the merits of the action.  Blue Coat's arguments are contrary to the law.  Courts apply this factor to the merits of the action, not a willfulness claim.  *See*, *e.g. AAT Biquest, Inc. v. Texas Fluorescence Labs., Inc.*, No. 14-cv-03909-DMR, 2015 WL 7708332, at *11, 14 (N.D. Cal. Nov. 30, 2015) (finding this *Read* factor supports enhancement because defendants' invalidity defenses were "weak").

            **6.**     ***Read* Factor 6: Blue Coat's Misconduct Has Been Ongoing For Years.**

Blue Coat's argument that Finjan seeks pre-suit damages via this factor is incorrect.  Rather, this factor addresses the length of Blue Coat's misconduct under the totality of the circumstances to determine if enhancement is warranted.  Here, Blue Coat's misconduct of copying and infringement has been ongoing for many years, facts which Blue Coat does not dispute, and it continues to this day.

            **7.**     ***Read* Factor 7: Blue Coat Took No Action To Remedy Its Wrongdoing.**

Blue Coat does not deny that it continued to sell the infringing products during the litigation and never attempted to design around Finjan's patents.  In fact, Blue Coat purchased infringing technology after the lawsuit was filed and continues to infringe to this day, which forced Finjan to file a second lawsuit against Blue Coat.  Thus, Blue Coat has not taken any remedial action to remedy its wrongdoings.

            **8.**     ***Read* Factor 8:  Blue Coat Had Motivation to Copy Finjan's Technology.**

As shown above and in Finjan's Motion, the evidence proves that Blue Coat was motivated by financial gain to copy Finjan's technology in bad faith.  Blue Coat has no rebuttal to this evidence.

## II. FINJAN IS ENTITLED TO PREJUDGMENT INTEREST

### A. Blue Coat's Arguments Regarding Delay are Meritless

There is no legal or factual merit to Blue Coat's argument that Finjan is not entitled to prejudgment interest because Finjan purportedly delayed filing suit. ***First***, Blue Coat already raised and lost its motion seeking to preclude Finjan from recovering damages based on purported delay in filing suit. The Court determined that Blue Coat's laches defense was untimely with respect to the '780 Patent and moot with respect to the other patents at issue because laches prevents the recovery of only pre-suit damages, and Finjan only sought damages after the filing date of this action. Dkt. No. 486 at 20. The Court declined to find either undue delay or prejudice. *Id.* ***Second***, prejudgment interest may not be denied absent a finding of both undue delay *and* prejudice. *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l Inc.*, 246 F.3d 1336, 1361-62 (Fed. Cir. 2001). Neither exist here. As explained more fully in other briefing, Finjan did <u>not</u> delay instituting this action and Blue Coat has not suffered any prejudice. Dkt. No. 451-3 at 19-24; Dkt. No. 514-3 at 8-12.[6] Thus, Blue Coat's effort to preclude prejudgment interest necessarily fails. *Crystal Semiconductor*, 246 F.3d at 1361 ("In *General Motors*, the Supreme Court made prejudgment interest the rule, not the exception.")..

### B. Blue Coat's Calculation of Prejudgment Interest is Legally Unsupported

Blue Coat's calculation of prejudgment interest ignores the form and amount of the jury's verdict and is entirely unsupported. Blue Coat calculates prejudgment interest by "apportioning" between damages that purportedly occurred prior to the date of judgment and what Blue Coat mischaracterizes as "future damages." Yet there is no basis to characterize any portion of the damages award coming due after the date of judgment. Rather, the cases Finjan cited in its Motion awarded prejudgment interest on the <u>entire</u> lump sum damages award without any such apportioning. Dkt. No.

---

[6] Blue Coat was not publicly using or selling the infringing technology in WebPulse until sometime in 2010 and the ProxySG, CAS, and MAA combination of products until 2013. Dkt. No. 451-3 at 19; Dkt. No. 514-3 at 10. Also, Finjan did not believe Blue Coat was using its patented technology as of October 2007. Dkt. No. 451-3 at 20; Dkt. No. 514-3 at 11. Moreover, Blue Coat did not provide any evidence to show prejudice. Dkt. No. 451-3 at 22-25; Dkt. No. 514-3 at 12. Thus, Blue Coat's allegations of undue delay and prejudice are unsupported.

1  504-3 at 23-24.  That those cases involved past and ongoing royalties is inapposite.  Prejudgment
2  interest is awarded to make the patent owner whole for the loss of money that it would have received at
3  the time royalties would have been paid.  *General Motors Corp. v. Devex Corp.*, 416 U.S. 648, 655-56
4  (1983).  Here, the jury awarded damages for the life of the patents, and that entire amount would have
5  come due on the date of infringement.  Prejudgment interest must be awarded on the entire lump sum.
6      Blue Coat also asks this Court to ignore the amount of damages awarded by the jury in favor of
7  a lower sum based on nothing more than Blue Coat's misguided argument that the jury "doubled" its
8  damages award.  Opp. at 21-22.  However, the jury verdict does <u>not</u> reflect an enhancement or a
9  "doubling" of damages.  Rather, as explained in Finjan's opposition to Blue Coat's renewed JMOL
10 (Dkt. No. 516), the jury awarded approximately 1.5 times the amount of the "lower bound" reasonable
11 royalty for 3 of the 4 patents based on the evidence of record and adopted the reasonable royalty that
12 Finjan's damages expert opined for the '780 Patent.  Blue Coat similarly argues that the Court should
13 simply disregard the jury's damages award for the '844 Patent and award prejudgment interest on
14 some arbitrary lower amount determined by Blue Coat.  Tellingly, Blue Coat does not cite a single
15 case in support of its argument.  The jury's damages award for the '844 Patent was based on the
16 evidence presented (Dkt. No. 516).  Finjan is entitled to prejudgment interest on that amount.

17      **C.   Prejudgment Interest Should be Awarded at the Prime Rate**

18      Contrary to Blue Coat's assertion, prejudgment interest should be awarded at the prime rate,
19 ***not*** the lower Treasury Bill ("T-Bill") rate.  Indeed, most cases Blue Coat cited awarded prejudgment
20 interest at the prime rate.  *See Studiengesellschaft Kohle v. Dart Indus., Inc.*, 862 F.2d 1564, 1579-80
21 (Fed. Cir. 1988) (upholding award of prejudgment interest at prime rate compounded quarterly);
22 *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991) (upholding award of
23 prejudgment interest at prime rate, compounded daily); *Server Tech., Inc. v. Am. Power Conversion*
24 *Corp.*, No. 3:06-cv-00698-LRH-VPC, 2015 U.S. Dist. LEXIS 41987, at *20 (D. Nev. March 31, 2015)
25 (awarding prejudgment interest at the prime rate).  In fact, *Server Tech.*, a case Blue Coat cited, found
26 that the T-Bill is "often inappropriate" in the context of a patent infringement action, "as its lower rate
27 of return has the potential to result in a windfall for the infringer."  *Id.*  As explained in Finjan's
28

14

FINJAN'S REPLY IN SUPPORT OF MOTION                                     Case No. 13-cv-03999-BLF
FOR ENHANCED DAMAGES AND INTEREST

Motion, courts in this District regularly endorse awarding prejudgment interest at the prime rate as the most effective way to make the patent owner whole. Dkt. No. 504-3 at 23.

Both of Blue Coat's arguments in support of the T-Bill rate fail. **First,** Blue Coat states that the prejudgment interest period began on the date the action was filed (i.e., August 23, 2013), and thus is relatively short. Opp. at 23. This is incorrect. As explained in Finjan's moving brief, it is well settled that prejudgment interest should be awarded **from the date of infringement** to the date of judgment. *Nickson Indus., Inc. v. Rol Mfg. Co.*, 847 F.2d 795, 800 (Fed. Cir. 1988) (citations omitted); *see also Bio-Rad Labs., Inc. v. Nicolet Inst. Corp.*, 807 F.2d 964, 967 (Fed. Cir. 1986). Thus, Finjan is entitled to prejudgment interest from the date of the hypothetical negotiation of each of the infringed patents (i.e., as early as October 2004) to the date of entry of judgment (i.e., November 20, 2015). This is a period of **over 11 years**, which is longer than the 9-year period that led the district court in *Server Tech.* (the only case Blue Coat cited in support of its argument) to award prejudgment interest at the prime rate, to best account for inflation over the infringement period. 2015 U.S. Dist. LEXIS 41987, at *19-20. The fact that Finjan conservatively seeks prejudgment interest only from the date of the complaint does not shorten the interest period, which runs from the date of infringement.

***Second***, Blue Coat argues that the T-Bill should be used because "the risks inherent in borrowing . . . are not present in this case," (Opp. at 23), claiming that Finjan did not produce evidence of borrowing. However, "it is not necessary that a patentee demonstrate that it borrowed at the prime rate in order to be entitled to post-judgment interest at that rate." *Uniroyal*, 939 F.2d at 1545. Also, Finjan is a relatively small company, which has led other courts in this district to determine that the prime rate is appropriate. *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-CV-72 DF, 2010 WL 5140718, at *6 (E.D. Tex. Sept. 27, 2010)(finding that Plaintiff, as a small company "is more likely to have had to borrow funds at the prime rate or higher during the period of infringement.").

Thus, prejudgment interest should be calculated at the prime rate and compounded annually.[7]

---

[7] Blue Coat does not cite any precedent that prejudgment interest should not be compounded based on purported delay in filing the instant action. Opp. at 25. Finjan did not delay, as noted above, and Blue Coat's position is unsupported. Thus, prejudgment interest should be compounded annually.

## III. CONCLUSION

For the reasons stated above, Finjan respectfully requests that the Court enhances damages awarded to Finjan and grants both pre- and post-judgment interests.

Respectfully submitted,

DATED: January 11, 2016         By: /s/ Lisa Kobialka
                                    Paul Andre (State Bar. No. 196585)
                                    Lisa Kobialka (State Bar No. 191404)
                                    James Hannah (State Bar No. 237978)
                                    KRAMER LEVIN NAFTALIS & FRANKEL LLP
                                    990 Marsh Road
                                    Menlo Park, CA  94025
                                    Telephone: (650) 752-1700
                                    Facsimile: (650) 752-1800
                                    pandre@kramerlevin.com
                                    lkobialka@kramerlevin.com
                                    jhannah@kramerlevin.com

                                    Attorneys for Plaintiff
                                    FINJAN, INC.