EDWARD G. POPLAWSKI (State Bar No. 113590)
epoplawski@wsgr.com
OLIVIA M. KIM (State Bar No. 228382)
okim@wsgr.com
BRIAN LAM (State Bar No. 272624)
blam@wsgr.com
S. FERRELL ALMAN, JR. (State Bar No. 287746)
falman@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

VERA M. ELSON (State Bar No. 156327)
velson@wsgr.com
CHRISTOPHER D. MAYS (State Bar No. 266510)
cmays@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

Counsel for Defendant
BLUE COAT SYSTEMS, INC

## IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

#### SAN JOSE DIVISION

|  |  |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>BLUE COAT SYSTEMS, INC., a Delaware Corporation,<br><br>          Defendant. | CASE NO. 3:13-cv-03999-BLF-PSG<br><br>**DEFENDANT BLUE COAT SYSTEMS, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR A NEW TRIAL PURSUANT TO FED. R. CIV. P. 59(a); AND MOTION TO AMEND JUDGMENT PURSUANT TO FED. R. CIV. P. 59(e)**<br><br>Date: April 28, 2016<br>Time: 9 a.m.<br>Place: Courtroom 3, 5th Floor<br>Before: Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

**Page**

I.    MOTION FOR NEW TRIAL ........................................................1

    A.    The Inclusion Of Settlement Agreements Was Contrary To Law. ........................1

    B.    Finjan Improperly Presented Total Product Revenues. ...........................................3

    C.    The Jury's Damages Award Is Not Supported By The Clear Weight Of The Evidence. ..................................................................................................4

    D.    The Infringement Verdict Is Not Supported By The Clear Weight Of The Evidence. ..................................................................................................5

        1.    Finjan Did Not Prove Literal Infringement Of The '844 Patent. ................5

        2.    Finjan Did Not Prove Literal Infringement Of The '731 Patent. ................7

        3.    Finjan Did Not Prove Literal Infringement Of The '968 Patent. ................7

        4.    Finjan Did Not Prove Literal Infringement Of The '780 Patent. ................7

        5.    Finjan Did Not Prove Infringement Under The DOE For The '633 Patent. ..................................................................................................8

    E.    The Validity Verdict Is Not Supported By The Clear Weight Of The Evidence. ..................................................................................................11

    F.    Finjan's Closing Arguments Were Highly Prejudicial. ........................................13

II.   MOTION TO AMEND JUDGMENT ................................................14

    A.    The Judgment Needs Clarification. .....................................................................14

    B.    In The Alternative, JMOL for DOE For The '844, '068, And '780 Patents Should Be Entered. ...............................................................................................14

III.  CONCLUSION ......................................................................................15

## TABLE OF AUTHORITIES

**Page**

### CASES

*Apple, Inc. v. Samsung Elecs. Co.*,
    No. 5:11-cv-01846, 2013 U.S. Dist. LEXIS 160337 (N.D. Cal. Nov. 7,
    2013)......................................................................................................................1

*AquaTex Indus., Inc. v. Techniche Sols.*,
    479 F.3d 1320 (Fed. Cir. 2007)....................................................................14, 15

*Bettcher Indus., Inc. v. Bunzl USA, Inc.*,
    661 F.3d 629 (Fed. Cir. 2011)................................................................................11

*Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.*,
    No. 2:09-cv-00290-NBF, 2012 U.S. Dist. LEXIS 158112 (W.D. Pa. Nov. 5,
    2012)......................................................................................................................3

*Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*,
    291 F.3d 1317 (Fed. Cir. 2002).............................................................................15

*Digital-Vending Services Intern., LLC v. Univ. of Phoenix, Inc.*,
    672 F.3d 1270 (Fed. Cir. 2012).............................................................................10

*Dolly, Inc. v. Spalding & Evenflo Co.*,
    16 F.3d 394 (Fed. Cir. 1994).................................................................................15

*Dome Patent L.P. v. Pilkington Visioncare, Inc.*,
    No. C-95-20225 RPA, 1995 WL 507034 (N.D. Cal. Aug. 18, 1995)...................9

*Dow Chem. Co. v. Mee Indus., Inc.*,
    341 F.3d 1370 (Fed. Cir. 2003)...............................................................................4

*Espinosa v. United Student Aid Funds, Inc.*,
    530 F.3d 895 (9th Cir. 2008).................................................................................14

*Fantasy Sports Properties, Inc. v. Sportsline.com, Inc.*,
    287 F.3d 1108 (Fed. Cir. 2002).............................................................................10

*Finjan, Inc. v. Secure Computing Corp.*,
    626 F.3d 1197 (Fed. Cir. 2010).............................................................................10

*Graver Tank & Mfg. Co. v. Linde Air Products Co.*,
    339 U.S. 605 (1950) .......................................................................................8, 9, 11

*Harman v. Harper*,
    7 F.3d 1455 (9th Cir. 1933)...................................................................................14

*In re Donohue*,
    766 F.2d 531 (Fed. Cir. 1985)................................................................................11

*In re Graves,*
    69 F.3d 1147 (Fed. Cir. 1995) ........................................................................11

*Intellectual Ventures I, LLC v. Canon, Inc.,*
    No. 11-792-SLR, 2015 U.S. Dist. LEXIS 64465 (D. Del. May 18, 2015) ...................13, 14

*Johns Hopkins Univ. v. Datascope Corp.,*
    543 F.3d 1342 (Fed. Cir. 2008) .................................................................5, 7, 8

*LaserDynamics, Inc. v. Quanta Computer, Inc.,*
    694 F.3d 51 (Fed. Cir. 2012) ...................................................................1, 2, 4

*Lear Siegler, Inc. v. Sealy Mattress Co. of Michigan,*
    873 F.2d 1422 (Fed. Cir. 1989) ........................................................................9

*Lucent Techs., Inc. v. Gateway, Inc.,*
    580 F.3d 1301 (Fed. Cir. 2009) ........................................................................4

*Multimedia Patent Trust v. Apple, Inc.,*
    No. 10-cv-2618, 2012 U.S. Dist. LEXIS 165928 (S.D. Cal. Nov. 20, 2012) ......................4

*Norian Corp. v. Stryker Corp.,*
    363 F.3d at 1321 (Fed. Cir. 2004) ....................................................................2

*ParkerVision, Inc. v. Qualcomm Inc.,*
    No. 2014-1612, 2015 U.S. App. LEXIS 17752 (Fed. Cir. Oct. 2, 2015) ...........................5

*Read Corp. v. Portec, Inc.,*
    970 F.2d 816 (Fed. Cir. 1992) ......................................................................8, 9

*Read Corp. v. Powerscreen of Am., Inc.,*
    44 F. App'x 502 (Fed. Cir. 2002) .....................................................................9

*ResQNet.com, Inc. v. Lansa, Inc.,*
    594 F.3d 860 (Fed. Cir. 2010) ......................................................................1, 4

*Sentius Int'l, LLC v. Microsoft Corp.,*
    No. 5:13-cv-00825-PSG, 2015 U.S. Dist. LEXIS 10423 (N.D. Cal. Jan. 27,
    2015) ...............................................................................................1

*Standard Havens Products, Inc. v. Gencor Industries, Inc.,*
    953 F.2d 1360 (Fed. Cir. 1991) ......................................................................11

*Texas Instruments Inc. v. Cypress Semiconductor Corp.,*
    90 F.3d 1558 (Fed. Cir. 1996) ........................................................................9

*Uniloc USA, Inc. v. Microsoft Corp.,*
    632 F.3d 1292 (Fed. Cir. 2011) ....................................................................3, 4

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.,*
    520 U.S. 17 (1997) ...................................................................................15

*Whitserve, LLC v. Computer Packages, Inc.*,
    694 F.3d 10 (Fed. Cir. 2012) ................................................................................5

**RULES**

FED. R. CIV. P. 59(a) ...........................................................................................1

FED. R. CIV. P. 59(e) ......................................................................................1, 14

FED. R. CIV. P. 60(a) .........................................................................................14

FED. R. EVID. 103(a) ........................................................................................3, 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant Blue Coat Systems, Inc. ("Blue Coat") respectfully submits this Reply in Support of Its Motion for a New Trial Pursuant to FED. R. CIV. P. 59(a); and Motion to Amend Judgment Pursuant to FED. R. CIV. P. 59(e).

## I.   MOTION FOR NEW TRIAL

### A.   The Inclusion Of Settlement Agreements Was Contrary To Law.

Finjan's argument and assertions ignore the fundamental principle that the Federal Circuit has consistently reinforced, namely, that settlement agreements are permissible for admission only where they are the most reliable licensing agreement available. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77-78 (Fed. Cir. 2012). Here, Finjan makes no assertions that the Webroot, Websense, and McAfee/Intel settlement agreements were the most reliable license agreements in the record. Finjan also does not dispute the fact that there were other, more reliable licenses available, specifically, the M86, Trustwave, and Microsoft patent licenses.

Finjan's citation to *ResQNet.com* confirms the impropriety of admitting the settlement agreements in the present case as the *ResQNet.com* court found a single settlement agreement to be admissible only because it was the most reliable license in the record. *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010). Improper testimony on the underlying litigation (*e.g.*, Secure Computing) amplified this undue prejudice. (*See* Dkt. 428 at 1084:3-1085:6, 1086:3-1087:16; Dkt. 426 at 907:17-908:1; Dkt. 429 at 294:13-295:9.) Importantly, the Federal Circuit's *LaserDynamics* opinion subsequently clarified *ResQNet.com*'s proposition, emphasizing that settlement agreements are admissible only in this limited circumstance. *LaserDynamics*, 694 F.3d at 77-78. As courts in this district have noted, although settlement agreements may be admitted if they are the most reliable licenses in the record, "such licenses are hardly now *per se* admissible; the Federal Circuit has cautioned as much." *Sentius Int'l, LLC v. Microsoft Corp.*, No. 5:13-cv-00825-PSG, 2015 U.S. Dist. LEXIS 10423, at *2 (N.D. Cal. Jan. 27, 2015) (excluding expert testimony that relied upon settlement agreements); *see Apple, Inc. v. Samsung Elecs. Co.*, No. 5:11-cv-01846, 2013 U.S. Dist. LEXIS 160337, at *4-6 (N.D. Cal. Nov. 7, 2013) (noting that settlement agreements in technology cases have little probative value

1  and are greatly outweighed by the risk of unfair prejudice).   Finjan's attempts to distinguish

2  *LaserDynamics et al.* are thus without merit.

3          Here, Finjan has wholly failed to show that the admitted settlement agreements are the

4  most reliable licenses in the record.  *See LaserDynamics*, 694 F.3d at 77-78.  Rather, the record

5  indicated that, as in *LaserDynamics*, Finjan has executed a number of patent licenses with

6  Microsoft Corp., M86 Security, Inc. and Trustwave Holdings, Inc., which were not settlements

7  of litigation.   Such license agreements were more appropriate where, as emphasized by the

8  Federal Circuit, "[a]ctual licenses to the patented technology are highly probative as to what

9  constitutes a reasonable royalty for those patent rights because actual licenses most clearly

10 reflect the economic value of the patented technology in the marketplace."  *LaserDynamics*, 694

11 F.3d at 69-70.

12         Surprisingly, Finjan argues at length as to the ***differences*** between the settlement

13 agreements and the license agreements.  (Dkt. 518 at 3-4.)  This lack of relevance and reliability

14 is confirmed where, during her direct examination, Dr. Layne-Farrar testified that "litigation

15 settlements can still be informative, but they're less informative than arms length agreements."

16 (Dkt. 427 at 1090:15-17.)  Such statements reinforce the limited probative value, if any, of these

17 settlement agreements and demonstrate that any such relevance was substantially outweighed by

18 the prejudice of presenting such settlement agreements to the jury.

19         This misleading and prejudicial effect was amplified where, during closing argument,

20 Finjan's counsel displayed Finjan's settlement agreements and patent licenses and stated that

21 "people have paid substantial sums to license Finjan's patents because they were very valuable."

22 (Dkt. 434 at 2082:6-12.)  Similarly, after displaying Finjan's settlement agreements and patent

23 licenses during opening statements, Finjan's counsel stated that "Finjan has showed you what

24 they are willing to license their patents for.   It's a lot of money because it's valuable

25 technology." (Dkt. 404 at 190:6-17.)

26         Finjan's citation to *Norian Corp. v. Stryker Corp.*, 363 F.3d at 1321, 1329-30 (Fed. Cir.

27 2004) is likewise inapposite given that Finjan's own characterization of the case states that there

28 was "no objection to the jury instruction" in that case.  In the present case, however, Finjan

1  concedes that Blue Coat timely submitted its objection to the jury instructions.  Further, Blue

2  Coat preserved its objection to the introduction of these agreements before trial began.  (Dkt.

3  281-3; Dkt. 367 at 7-8); *see also* FED. R. EVID. 103(a) ("Once the court makes a definitive ruling

4  on the record admitting or excluding evidence, either at or before trial, a party need not renew an

5  objection or offer of proof to preserve a claim of error for appeal."); *Uniloc USA, Inc. v.*

6  *Microsoft Corp.*, 632 F.3d 1292, 1319 (Fed. Cir. 2011).[1]

7        **B.**      **Finjan Improperly Presented Total Product Revenues.**

8        Finjan's disingenuous assertion that it "did not present total product revenues to the jury"

9  is belied by the unambiguous statements of the direct examination of its own damages expert,

10  who testified as to the annual revenues of Blue Coat products.  (*See, e.g.*, Dkt. 427 at 1051:11-

11  23, 1107:5-1108:7.)  Aside from the impropriety of displaying the total product revenues at any

12  time, Dr. Layne-Farrar testified as to annual revenue for Blue Coat products apart from the time

13  at which she was identifying the alleged SSPPU.  (*Compare id.* at 1051:11-23 *with id.* at

14  1106:16-1108:7.)

15        Finjan's reliance on *Carnegie Mellon* is unpersuasive as the facts are distinguishable

16  from the present case.  As an initial matter, the expert in *Carnegie Mellon* used an average

17  operating profit as a starting point, not total product revenues like Finjan.  Notwithstanding the

18  differences in revenue, the court in *Carnegie Mellon* also predicated allowance of the expert

19  testimony of total revenue on reliable evidence that the patents-in-suit are "must have"

20  technology.  *Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.*, No. 2:09-cv-00290-NBF,

21  2012 U.S. Dist. LEXIS 158112, at *14-16 (W.D. Pa. Nov. 5, 2012) ("Once CMU enters into

22  evidence its basis for the argument that the patents-in-suit are 'must have' technology and this

23  Court finds such evidence sufficiently reliable, then Ms. Lawton can provide her expert

24  analysis.").  Finjan fails to explain how its patents qualify under the "must-have" standard in

25  *Carnegie Mellon*, nor does it provide any reliable evidence to support this characterization.

26

---

27  [1] As set forth in Blue Coat's Opening Brief and during trial, additional evidentiary rulings
   prejudiced the substantial rights of Blue Coat.  (*See* Dkt. 499 at 19-20; Dkt. 427 at 923:14-926:7,
28  975:8-977:4.)

Thus, the court's decision in *Carnegie Mellon* is irrelevant to the present case, and the standard in *LaserDynamics*, *Ericsson*, and *Uniloc* still applies.

Finjan thus cannot demonstrate that its use of the total product revenue was relevant and not prejudicial.  As the Federal Circuit has instructed, disclosure of total infringing product revenue "cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue."  *Uniloc*, 632 F.3d at 1320 ("As the district court aptly noted, '[t]he $19 billion dollar cat was never put back into the bag . . . .'").  Finjan could have simply avoided using Blue Coat's total product revenues by introducing only apportioned revenue numbers or by calculating a per unit revenue formula.  *See, e.g., Multimedia Patent Trust v. Apple, Inc.*, No. 10-cv-2618, 2012 U.S. Dist. LEXIS 165928, at *23-25 (S.D. Cal. Nov. 20, 2012).

Finjan further argues that Blue Coat did not object to the introduction of total product revenue; yet Blue Coat clearly objected to the introduction of such evidence.  (Dkt. 281-3; Dkt. 367 at 7-8); *see also* FED. R. EVID. 103(a) ("Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal."); *Uniloc*, 632 F.3d at 1319.

**C.     The Jury's Damages Award Is Not Supported By The Clear Weight Of The Evidence.**

As set forth in Blue Coat's Renewed JMOL Motion and Reply in Support of Renewed JMOL Motion, filed concurrently, Finjan has failed to set forth any factual or legal basis for the '844 patent damages awarded by the jury.  Indeed, Finjan's arguments as to the '844 damages award rely solely on the allegation that Blue Coat did not rebut Finjan's damages theories.  This argument, however, ignores the consistent and unambiguous law in patent cases, namely, that ***Finjan—not Blue Coat***—bears the burden of proving damages.  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009); *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381 (Fed. Cir. 2003); *Uniloc*, 632 F.3d at 1315.  It is irrelevant whether Blue Coat used a damages expert.  *ResQNet.com*, 594 F.3d at 872.  Finjan has also failed to establish any factual or legal support for the damages awarded for the '633, '731, '968, and '780 patents.

Accordingly, assuming liability, zero damages or at best, nominal damages should be awarded as a matter of law.  *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 504-05 (1964).  In the alternative and for the same reasons, a new trial should be granted as the damages awarded by the jury are contrary to the clear weight of the evidence.  *See, e.g.*, *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 33-34 (Fed. Cir. 2012).

**D.      The Infringement Verdict Is Not Supported By The Clear Weight Of The Evidence.[2]**

**1.      Finjan Did Not Prove Literal Infringement Of The '844 Patent.**

Finjan now attempts to argue that it proved infringement of the claims of the '844 patent because it identified "DRTR response" as the required "security profile" and Cookie2 was only "evidence of" security profile.  (Dkt. 518 at 7-9; *see also id.* at n.3.)  But Cookie2 is the only "DRTR response" that Finjan identified at trial, as evinced by Dr. Cole's testimony.[3]  (*See, e.g.*, Dkt. 407 at 634:24-636:10.)  For example, Finjan's expert, Dr. Cole, further testified:  "The second element is you have your inspector, which are the shadies, you look at the PDF shadies and others that would go in and analyze and look for suspicious activity, and that would create the ***security profile***, which we saw evidence of that within ***Cookie2***."  (*Id.* at 530:12-17, emphasis added.)  Incredibly, despite his testimony reflecting that Cookie2 is the only place where he found a security profile, Dr. Cole later attempted to disavow his own testimony and was then impeached with his own prior deposition testimony:  "Q: . . . ***Is there anywhere else, besides in Cookie2***, where you found any parts of a downloadable security profile that identifies suspicious code?  A:  ***If we're focusing solely on suspicious code, Cookie2 is what was used to directly infringe on this claim***."  (DDX 1444, emphasis added; *see also* Dkt. 407 at 652:6-15.)  Of course, Dr. Cole's self-contradictory disavowal of his trial testimony and his earlier deposition testimony is not substantial evidence and is against the clear weight of the evidence.

---

[2] Finjan refers to testimony of Dr. Bims as evidence of Blue Coat's infringement (Dkt. 518 at 7:1-4), but Dr. Bims did not offer any opinions on issue of infringement or validity.  (Dkt. 405 at 401:2-14.)

[3] Even so, Finjan failed to and cannot provide any substantial evidence that a "DRTR response" actually identifies suspicious code as required by the asserted claims.

*ParkerVision, Inc. v. Qualcomm Inc.*, No. 2014-1612, 2015 U.S. App. LEXIS 17752, at *7 (Fed. Cir. Oct. 2, 2015) (non-precedential), citing, *inter alia*, *Johns Hopkins Univ. v. Datascope Corp.*, 543 F.3d 1342, 1348-49 (Fed. Cir. 2008).   Indeed, Cookie 2 was "the center of the parties' dispute" in the summary judgment phase, and the Court found that "[t]he parties' dispute concerning the actual operation and use of Cookie2 precludes summary judgment for either side." (Dkt. 256 at 14:19, 15:11-12.)

As Cookie2 is merely a string of number and characters (a/k/a metadata), it does not and cannot identify any code, let alone suspicious code, as required by the asserted claims.  (*See, e.g.*, JTX 2018 (Cookie2 format); Dkt. 430 at 1424:3-1445:6; Dkt. 407 at 650:4-10; Dkt. 426 at 873:19-23, 877:4-879:12.)   Finjan's argument that "Metarule Label 29" in Cookie2 identifies suspicious code or operations is red herring as "Metarule Label 29" is another field in Cookie2 represented by a string of numbers and characters.  (*See, e.g.*, JTX 2018 (Cookie2 format).)   Indeed, Dr. Cole—who provided opinion on the '844 patent—did not even testify about "Metarule Label 29."  (*See* Dkt. 518 at 8:21 (citing only to Dr. Mitzenmacher's testimony regarding "Metarule Label 29.")

With regards to the "linking . . ." element, Finjan argues that the "web client" required by the asserted claims can only be the user who originally requested the webpage.  (Dkt. 518 at 12-14.)  But this is contrary to evidence and ignores the ordinary meaning of "web client."  There is no dispute that the user who originally requested the webpage is a web client, but WebPulse is also a web client as it separately requests a downloadable from web servers.  (*See, e.g.*, Dkt. 407 at 469:22-470:3.)   In addition, the Court construed that the web server that makes the "Downloadable available to web client*s*" as required by the asserted claims must be a "non-network gateway web server."  (Dkt. 118 at 19:23-25.)  As such WebPulse, which is a part of a gateway, cannot be a web server.  (*See, e.g.*, Dkt. 430 at 1452:8-22.)  Rather, it is a web client. Accordingly, there is no substantial evidence to support that WebPulse performs the required "linking. . ." function **before** a web server makes the Downalodable available to web clients.  (*Id.* at 1448:10-1455:2.)

**2.  Finjan Did Not Prove Literal Infringement Of The '731 Patent.**

For the same reasons Finjan failed to prove literal infringement of the '844 patent with regards to the "security profile" limitation, Finjan failed to and cannot prove literal infringement of the '731 patent as it failed to meet the "deriving security profiles . . . [wherein each of] the *security profile[s]* [comprises/includes] *a list of [at least one] computer command[s]* . . ." limitation.

**3.  Finjan Did Not Prove Literal Infringement Of The '968 Patent.**

Finjan continues to ignore the language of the asserted claim 1.  It is clear from the language of the claim that the "*results*" of "*whether a given digital content is allowable*" are "*saved as entries in the policy index*."  Finjan did not provide any evidence that the "*results*"— whether the digital content was allowed or not—is saved anywhere in the accused ProxySG. (Dkt. 426 at 840:15-23, 885:16-23.)   Rather, Finjan only provided evidence that ProxySG's Policy Checkpoint applies policies in multiple stages when analyzing content and only saves policy evaluations as the content goes through the system for analysis.  (*Id.* at 823:22-825:9; 839:1-23.)  The final decision—whether the digital content was allowed or not—is *not* saved. (*Id.*; *see also id.* at 885:7-23.)

Indeed, Finjan admits that it did not provide any evidence that the final decision— whether the digital content was allowed or not—is saved.  (Dkt. 518 at 11:17-12:7.)  In this regard, Finjan attempts to shift the burden on Blue Coat by arguing that "Blue Coat never proffered any evidence to show that the final or any other decisions are *not* stored." (Dkt. 518 at 12:8-9, emphasis in original.)   It is not Blue Coat's burden to prove non-infringement. Regardless, as set forth in its Opening Brief, Blue Coat provided evidence that ProxySG never stores the final decision, including through the testimony of Gary Tomic and Dr. Bestavros. (*See, e.g.*, Dkt. 430 at 1344:20-1346:14; Dkt. 431 at 1509:17-1514:8.)

**4.  Finjan Did Not Prove Literal Infringement Of The '780 Patent.**

Finjan argues that it is Blue Coat that bases its argument on a wrong construction.  (Dkt. 518 12:21-24.)  However, it is Finjan who completely ignores the parties' agreed construction. Finjan admits that it only alleged that multiple "hashes" were created for the webpage and its

1  components. (Dkt. 518at 13:6-8.) But this does not meet the requirement of "performing *a*

2  *hashing function* on the Downloadable *together* with its fetched software component" to

3  generate "a Downloadable ID." Additionally, Finjan failed to provide any evidence that the

4  alleged multiple "hashes" are combined to generate "a Downloadable ID" in the accused

5  ProxyAV. (*See, e.g.*, Dkt. 431 at 1514:11-1523:6.)

6          **5.      Finjan Did Not Prove Infringement Under The DOE For The '633**
               **Patent.**
7

8          Infringement under the doctrine of equivalents "requires substantial identity of function,

9  means, and result." *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 609

10  (1950). The *Graver Tank* test requires Finjan to show that "the accused device performs

11  substantially the same function, in substantially same way, to achieve substantially the same

12  result." *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 822 (Fed. Cir. 1992).

13          As an initial matter, as discussed at length in Blue Coat's Opening Brief, Dr. Cole's

14  testimony does not truly speak to doctrine of equivalents ("DOE"). Dr. Cole did not testify

15  regarding a substantial identify of function, way, and result, but as Finjan acknowledged, Dr.

16  Cole in fact testified as to *sameness* of manner, way, and result. (Dkt. 518 at 14.) Dr. Cole also

17  testified that the accused system "clearly meets" each limitation of claim element 14(d). (Dkt.

18  407 at 610:21-612:9.) Dr. Cole never uttered the word equivalence or even testified that any

19  differences—let alone insubstantial differences—exist between the element and the accused

20  system. Taken as a whole, his testimony is really directed to literal infringement, of which Blue

21  Coat was acquitted.

22          Setting this point aside, however, Dr. Cole's testimony failed to establish prongs one

23  (function) and three (result) of the *Graver Tank* test. As to prong one, Dr. Cole testified that the

24  MAA functioned "in the same manner," but did not testify as to whether the MAA "performed

25  substantially the same function" as required by prong one of the *Graver Tank* test. (*Id.* at

26  610:20-611:10.)[4] Dr. Cole's response to this question, moreover, was to describe the operations

27  
   _____

28  [4] Finjan's Opposition acknowledges that Dr. Cole only testified as to "same manner, way and
    yielded the same results." (Dkt. 518 at 14.)

performed by the MAA.  (*Id.*)  As to element three, when asked about the results achieved by the MAA, Dr. Cole's response simply (again) identified the operations performed by the MAA and failed to identify any results of the process.  (*Id.* at 611:23-612:9.)  By merely restating the operation of the MAA each time, Dr. Cole's testimony failed to set forth each of the prongs of the *Graver Tank* test.  This is legally insufficient for DOE, which requires particularized testimony about function, way, and result.  *Read Corp.*, 970 F.2d at 822.

Dr. Cole also failed to establish equivalence by failing to proffer particularized testimony linking the function, way, and result of claim element 14(d) to the function, way, and result of the accused system.  The Federal Circuit time and again held that "the three *Graver Tank* elements must be presented in the form of particularized testimony and linking argument."  *Lear Siegler, Inc. v. Sealy Mattress Co. of Michigan*, 873 F.2d 1422, 1425-26 (Fed. Cir. 1989).  Here, however, Dr. Cole's abbreviated testimony merely recited the operation of the accused system and failed to provide the required comparisons of function/way/result of claim element 14(d) to the function/way/result of the accused system.  Dr. Cole's testimony is insufficient to establish DOE as a matter of law.  *See Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1568 (Fed. Cir. 1996); *Read Corp. v. Powerscreen of Am., Inc.*, 44 F. App'x 502, 506 (Fed. Cir. 2002); *Dome Patent L.P. v. Pilkington Visioncare, Inc.*, No. C-95-20225 RPA, 1995 WL 507034, at *3 (N.D. Cal. Aug. 18, 1995).

Finjan next argues that it established DOE because it proved the mobile protection code element of Claim 14.  Finjan's argument misses the point:  mobile protection code must be ***communicated***, and Finjan failed to establish this requirement.  Finjan's argument that communication is not required cherry-picks the Court's construction.  The Court was clear on this point:  ". . . with the understanding—for purposes of clarification—that the mobile protection code **was communicated** to the downloadable-information destination without modifying the executable code."  (Dkt. 118 at 15, emphasis added.)  Tellingly, Finjan's Opposition brief fails to respond to the numerous intrinsic evidence Blue Coat cited in its

1   Opening Brief showing the requirement of communication.[5]

2       Finjan also fails to rebut Blue Coat's argument that pre-installation of software during the

3   manufacturing process cannot qualify as communication because such installation is external to

4   Claim 14's claimed computer readable code.   The Federal Circuit has held that claims to

5   computer program products—known as *Beauregard* claims—must be treated as a method for the

6   purpose of analyzing claim scope.   *Digital-Vending Services Intern., LLC v. Univ. of Phoenix,*

7   *Inc.*, 672 F.3d 1270, 1275 n.1 (Fed. Cir. 2012).   Accordingly, the required communication must

8   be something capable of actually being performed during operation of the computer program

9   product.   However, even under Finjan's argument that Claim 14 is a product claim,[6] the

10  functionality to perform the communication must still form part of the computer program

11  product itself.   *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1205 (Fed. Cir.

12  2010) (affirming verdict of infringement where software for performing the claimed functions

13  existed in the products when sold); *Fantasy Sports Properties, Inc. v. Sportsline.com, Inc.*, 287

14  F.3d 1108, 1118 (Fed. Cir. 2002) (finding infringement where "the user is only activating means

15  that are already present in the underlying software.").   Here, Finjan proffered no evidence

16  showing that any portion of the accused system has the ability to communicate mobile protection

17  code and has not therefore proven infringement.   Moreover, taken to its logical conclusion,

18  Finjan's argument would eviscerate the requirement of communication, ***because all software***

19  ***must be installed on hardware at some point***.

20      Finally, Finjan's argument that the MAA can constitute a downloadable-information

21  destination is contrary to both the intrinsic record of the '633 Patent ***and Finjan's own***

22  ***statements in its claim construction arguments***.   In Finjan's own words:  "if a computer or

23  server requests a webpage (i.e. information), the information-destination is simply the requesting

24  computer or server."  (Dkt. 65 at 16-17, emphasis added.)   Finjan cannot credibly walk away

25  from these statements, and fails to rebut Blue Coat's citations to the intrinsic record of the '633

26

---

27  [5] Dr. Hicks was clear that the kernel scout is never "communicated" as required by the claim.
    (Dkt. 431 at 1618:19-1619:9.)

28  [6] Blue Coat still contends that this claim is indefinite as previously argued.

Patent showing that the requesting device is the information destination.  Finjan also provides no response to Blue Coat's arguments that what the MAA receives is not the downloadable-information because the ProxySG creates a **separate file** to send the MAA—not the downloadable-information.  Finjan's silence on these points is deafening.  Finally, Finjan's argument that the MAA can satisfy the downloadable-information destination element "at the very least, under DOE," fails utterly because Finjan's expert, Dr. Cole, provided no testimony under the *Graver Tank* test regarding any alleged equivalence of the "downloadable-information destination" element and the MAA.  For these reasons, and those submitted in Blue Coat's opening brief, Finjan has failed to prove DOE for the '633 Patent and is not supported by the clear weight of the evidence.

E.     **The Validity Verdict Is Not Supported By The Clear Weight Of The Evidence.**

Contrary to Finjan's argument (Dkt 518 at 17:26-18:9), Blue Coat met its burden to show invalidity of the patents-in-suit, including providing clear evidence if inherency when required.  *See Standard Havens Products, Inc. v. Gencor Industries, Inc.*, 953 F.2d 1360, 1369 (Fed. Cir. 1991) ("Anticipation can occur when a claimed limitation is 'inherent' or otherwise implicit in the relevant reference."); *Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 639-40 (Fed. Cir. 2011) (inherency is found where a characteristic that is not explicitly disclosed in a reference is nevertheless *necessarily* present).  In addition, it is well established that the understanding of one of ordinary skill in the art is relevant to understanding whether a prior art reference's disclosure anticipates a patent.  *In re Graves*, 69 F.3d 1147, 1152 (Fed. Cir. 1995);  *In re Donohue*, 766 F.2d 531, 533 (Fed. Cir. 1985).  Accordingly, Finjan's argument throughout (Dkt. 118 at 18-21) that Blue Coat's experts improperly relied on the understanding of a person of ordinary skill in the art is without any merit.

**'844 Patent**:  Blue Coat provided clear and convincing evidence through Dr. Necula, who explained in detail, how each and every limitation of the asserted claims is disclosed by Abadi.  (*See, e.g.*, Dkt. 431 at 1698:1-1699:14 (element 1 of claim 1), 1699:19-1701:22 (element 2 of claim 1), 1701:23-1705:1 (element 3 of claim 1), 1707:12-1708:13 (claim 7), 1708:18-

1709:13 (claim 11), 1709:23-1711:11 (claim 15), 1711:20-1712:18 (claim 41).)   Accordingly, the validity verdict is against the clear weight of evidence.

**'822 and '633 Patents**:  Contrary to Finjan's arguments, Dr. Hicks did not rely on "an undisclosed trick for Ji" to anticipate the '822 and '633 Patents' claims.  Rather, Dr. Hicks specifically testified that Ji disclosed a technique well known in the art as dynamic linking—a way to communicate mobile protection code without modifying the executable.  (Dkt. 431 at 1640:17-1642:22, 1643:1-20.)  Dr. Jaeger offered no testimony related to dynamic linking and failed to rebut Dr. Hicks' testimony that dynamic linking communicates mobile protection code without modifying the executable.  (Dkt. 433 at 1938:9-15, 1938:20-1939:2, 1939:7-1.)  As to Claim 9 of the '822 Patent, Dr. Hicks testified in detail how both the content inspection engine detects executable code and has the downloadable-information analyzers and the inspection controller.  (Dkt. 431 at 1629:1-5; 1632:16-23; 1633:6-1635:6; 1637:10-1638:20; 1638:21-1639:1; 1644:11-25; 1671:22-1672:21; 1673:1-10; 1673:13-18; 1673:20-21.)  Regarding Claim 10, Finjan is incorrect in that Dr. Hicks did not testify that Claim 10 was invalid because Claim 9 was invalid.  Rather, Dr. Hicks testified that Ji inherently disclosed the additional limitations of Claim 10.  (*Id.* at 1645:3-8.)  Regarding Claim 14 of the '633 Patent, Dr. Hicks testified how Ji expressly disclosed the elements of Claim 14.  (*Id*. at 1640:17-1642:22, 1643:1-20; 1648:18-25; 1649:1-19; 1649:20-1650:4; 1650:5-12.)  Dr. Hicks did not testify that Claim 14 was invalid "because" Claim 9 of the '822 Patent was invalid, but instead indicated that his reasoning for Claim 14 of the largely tracked that of Claim 9.  (*Id.*)  Also, Finjan's expert Dr. Jaeger testified that Ji did not anticipate Claim 14 solely because he concluded Ji modified the executable code.  As noted above, however, Dr. Jaeger did not rebut Dr. Hicks' testimony regarding dynamic linking, another method disclosed in Ji to communicate MPC without modifying executable code.  (Dkt. 433 at 1938:9-15, 1938:20-1939:2, 1939:7-1.)

**'780 Patent**:  Blue Coat provided clear and convincing evidence through Dr. Necula, who explained in detail, how each and every limitation of the asserted claims is disclosed by Waldo.  (*See, e.g.*, Dkt. 431 at 1721:22-1723:22, Dkt. 433 (element 1 of claim 9); Dkt. 433, 07/31/15 Trial Tr. at 1824:21-1826:10 (element 1 of claim 9), 1826:13-1827:24 (element 2 of

1   claim 9), 1827:25-1828:18 (claim 13).)   Accordingly, the validity verdict is against the clear

2   weight of evidence.

3        **'731 Patent**:   Blue Coat provided clear and convincing evidence through Dr. Necula,

4   who explained in detail, how each and every limitation of the asserted claims maps to Braswell.

5   (*See, e.g.*, Dkt. 433 at 1812:22-1814:21 (element 1 of claim 1), 1814:24-1815:15 (element 2 of

6   claim 1), 1815:19-1816:23 (element 3 of claim 1), 1816:24-1817:16 (element 4 of claim 1),

7   1818:4-1821:9 (claim 17).)   Accordingly, the validity verdict is against the clear weight of

8   evidence.

9        **'968 Patent**:   Blue Coat provided clear and convincing evidence through Dr. Necula,

10  who explained in detail, how each and every limitation of the asserted claim is disclosed by

11  McClain.   (*See, e.g.*, Dkt. 433 at 1796:16-1799:12 (element 1 of claim 1), 1799:16-1801:7

12  (element 2 of claim 1), 1801:10-1803:5 (element 3 of claim 1).)   Accordingly, the validity

13  verdict is against the clear weight of evidence.

14        **F.        Finjan's Closing Arguments Were Highly Prejudicial.**

15        As noted in Blue Coat's Renewed Motion for JMOL, Finjan's closing arguments as to the

16  speculative construction of its own hypothetical negotiation and argues that the jury award $24

17  million in damages for the '844 patent was not based on fact or law.   Additionally, Finjan's

18  opinions as to the veracity of Dr. Bestavaros's testimony were highly prejudicial and

19  unnecessary.   Finjan argues that its counsel's statements during closing arguments were merely

20  "conclusory" and did not substitute for "competent, substantiated expert testimony."   (Dkt. 518

21  at 21-22.)   The portion of counsel's testimony discussing this issue, however, confirms that is

22  exactly what was done.   (Dkt. 434 at 2056:13-2057:19, 2059:9-11.)   Specifically, Finjan's

23  counsel summarizes Dr. Bestavros's opinions as to the evidence and expert conclusions and then

24  asserts his own opinion that Dr. Bestavros was neither credible nor believable, essentially

25  vouching for the evidence himself.   As in *Intellectual Ventures*, Finjan's counsel assumed the

26  place of an expert and essentially inferred from the testimony that infringement must be found.

27  *See Intellectual Ventures I, LLC v. Canon, Inc.*, No. 11-792-SLR, 2015 U.S. Dist. LEXIS 64465,

28  at *67 (D. Del. May 18, 2015).

## II.   MOTION TO AMEND JUDGMENT

### A.   The Judgment Needs Clarification.

Assuming the Judgment properly incorporates the verdict form and Order, Finjan has still failed to explain how all three documents can be harmonized.   Regardless of whether literal infringement and infringement under the doctrine of equivalents may be found simultaneously, the jury was explicitly instructed not to find infringement under the doctrine of equivalents if literal infringement was found, and yet decided against these instructions.   An appropriately worded judgment can reconcile the verdict form, but the Court's subsequent Order explicitly states that "the jury verdict with respect to the doctrine of equivalents of the '844, '968, and '780 patents is surplusage and not necessary for the resolution of this action."   (Dkt. 486 at 12.)   The Court then declined to issue an opinion on the prosecution history estoppel defense with respect to those three patents, because the issue was "moot."   *Id*.   Therefore, whether there is a judgment with respect to infringement under the doctrine of equivalents for the '844, '968, and '780 patents is uncertain.   To be consistent with the Court's Order, the Court should amend the judgment stating that infringement by the doctrine of equivalents is moot for the '844, '968, '780 patents and Finjan is not entitled to any relief under the doctrine of equivalents.[7]

### B.   In The Alternative, JMOL for DOE For The '844, '068, And '780 Patents Should Be Entered.

**'844 Patent**:   Finjan fails to (and cannot) explain how Dr. Cole's testimony that WebPulse functioned in the "***exact same***" way, functioned "**the same way**", and yielded in "**the same result**" meets the DOE requirement.   As explained in Blue Coat's Opening Brief (Dkt. 499 at 22-23), such testimony speaks only to literal infringement, and not DOE.   Further, with regards to the "Downloadable security profile that identifies suspicious code" limitation, Dr. Cole's conclusory testimony (*see, e.g.*, Dkt. 518 at 23:21-24:5) does not meet the particularized testimony requirement by the Federal Circuit.   *See, e.g., AquaTex Indus., Inc. v. Techniche Sols.*,

---

[7] If the Court is not willing to clarify the judgment under Rule 59(e), then the Court may on its own initiative correct the judgment pursuant to Rule 60(a).   *Espinosa v. United Student Aid Funds, Inc.*, 530 F.3d 895, 899 (9th Cir. 2008); *see also Harman v. Harper*, 7 F.3d 1455, 1457 (9th Cir. 1933) (a judge may use Rule 60(a) "to make a judgment reflect the actual intentions and necessary implications of the court's decision.").

1   479 F.3d 1320, 1328-29 (Fed. Cir. 2007).  With regards to the "linking. . ." limitation, Finjan

2   only provided incomplete allegations of DOE, as Dr. Cole ignored the second part of the

3   limitation, which requires:   "linking . . . the first Downloadable security profile to the

4   Downloadable *before a web server makes the Downloadable available to web clients*."  Indeed,

5   Finjan cannot provide any citation from the record that this part of the limitation was even

6   discussed by Dr. Cole when opining on DOE.  This is fatal to Finjan's allegation of DOE.  *See,*

7   *e.g.*, *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 29 (1997); *Cooper*

8   *Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317, 1321 (Fed. Cir. 2002); *Dolly,*

9   *Inc. v. Spalding & Evenflo Co.*, 16 F.3d 394, 398 (Fed. Cir. 1994).

10       **'968 Patent**:    As shown in Finjan's argument (Dkt. 518 at 24:18-25:3), Dr.

11   Mitzenmacher merely parroted the claim language and failed to explain how and why the

12   accused WebPulse performed substantially the same function, in substantially the same way, to

13   achieve substantially the same result.  Dr. Mitzenmacher's conclusory testimony does not meet

14   the particularized testimony requirement by the Federal Circuit.  *See, e.g.*, *AquaTex*, 479 F.3d at

15   1328-29.

16       **'780 Patent**:  Similar to the '844 patent, Finjan failed to provide full evidence of DOE

17   with regards to the "*an ID generator coupled to the communications engine that fetches at*

18   *least one software component identified by the one or more references*, and for performing a

19   hashing function on the Downloadable and the fetched software components to generate a

20   Downloadable ID" limitation.   Finjan cannot cite to any testimony by Dr. Mitzenmacher

21   regarding DOE that goes to the first part of the limitation.  Consequently, Finjan's evidence of

22   DOE is incomplete and cannot support the jury verdict that the asserted claims are infringed

23   under DOE.  *See, e.g.*, *Warner-Jenkinson*, 520 U.S. at 29; *Cooper Cameron Corp.*, 291 F.3d at

24   1321; *Dolly, Inc.*, 16 F.3d at 398.

25   **III.   CONCLUSION**

26       For the foregoing reasons, Blue Coat respectfully submits that its Motion be GRANTED.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

DATED:  January 11, 2016        By:   /s/ Olivia M. Kim
EDWARD G. POPLAWSKI
OLIVIA M. KIM
BRIAN LAM
S. FERRELL ALMAN, JR.
VERA M. ELSON
CHRISTOPHER MAYS

Counsel for Defendant
BLUE COAT SYSTEMS, INC.