EDWARD G. POPLAWSKI (State Bar No. 113590)
epoplawski@wsgr.com
OLIVIA M. KIM (State Bar No. 228382)
okim@wsgr.com
BRIAN LAM (State Bar No. 272624)
blam@wsgr.com
S. FERRELL ALMAN, JR. (State Bar No. 287746)
falman@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

VERA M. ELSON (State Bar No. 156327)
velson@wsgr.com
CHRISTOPHER D. MAYS (State Bar No. 266510)
cmays@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

Counsel for Defendant
BLUE COAT SYSTEMS, INC

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BLUE COAT SYSTEMS, INC., a Delaware Corporation,<br><br>　　　　Defendant. | CASE NO. 3:13-cv-03999-BLF-PSG<br><br>**DEFENDANT BLUE COAT SYSTEMS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO AMEND FINDINGS AND JUDGMENT PURSUANT TO FED. R. CIV. P. 52(b)**<br><br>Date: April 28, 2016<br>Time: 9 a.m.<br>Place: Courtroom 3, 5th Floor<br>Before: Hon. Beth Labson Freeman |

Defendant Blue Coat Systems, Inc. ("Blue Coat") respectfully submits this Reply in Support of Its Motion to Amend Findings and Judgment Pursuant to FED. R. CIV. P. 52(b).

### A. The Findings Relating To The '731 Patent Priority Date Should Be Amended.

The asserted claims of the '731 patent expressly require different "caches," including "a file cache," "a security profile cache," and "a security policy cache." But in order to obtain earlier invention date, Finjan relied on applications that do not discuss or disclose any "cache." Instead, Finjan relied on its expert who equated storage with cache. (Dkt. 433, 07/31/15 Trial Tr. at 1879:12-17.) Finjan's argument that "Dr. Lyon never argued simply the disclosure of 'storing files' discloses the claimed caches" (Dkt. 515 at 3:1-2) misses the mark. Finjan admits that Dr. Lyon argued that "a cache is a memory that *stores* a particular type of content." (*Id.* at 3:3, emphasis added.) Indeed, Dr. Lyon equated cache with "a memory that *stores* known hostile downloadables," "security database [that] can *hold* known downloadables and also downloadable security profile data," and "database *holding* a downloadable security profile." (Dkt. 433, 07/31/15 Trial Tr. at 1879:16-24, emphasis added.) In other words, Dr. Lyon equated caching with storing (or holding) any content.

This is contrary to the statement made to the public by Finjan when distinguishing prior art in order to obtain the '731 patent. "During the prosecution of the '731 patent, in order to overcome prior art, Plaintiff argued that the prior art Ji reference did not disclose a 'security profile cache' because 'Ji provides no discussion of a security profile cache, or, for that matter, any cache at all.' Ex. 5 to Kim Decl. at FINJAN BC 000982, ECF 447-6." (Dkt. 486 at 8:24-28.) Ji involved storing files in a disc drive. To be clear, Blue Coat is not arguing that a disc drive is a cache. (Dkt. 515 at 3:19-20.) It was Finjan that had the burden to show that the prior applications disclose cache, and its own expert had equated storing content with caching while previously, Finjan argued that merely storing cannot be caching. Finjan should not be allowed to a position in litigation that is contrary to its public statement made in order to obtain a patent. *See, e.g.*, *Biogen Idec. Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013); *Computer Docketing Stations Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374-75 (Fed. Cir. 2008).

**B.  The Findings Relating To The '633 Patent Prosecution History Estoppel Should Be Amended.**

Finjan clearly stated during the patent prosecution with regards to prior art Golan:  "In *distinction* with *the claimed invention* . . ."  (Dkt. 486 at 11:21-27, emphasis added.)  Contrary to Finjan's argument (Dkt. 515 at 5:4-6), this is not merely discussing the scope of Golan reference.  Rather, the statement clearly *distinguishes* the claimed invention to the subject matter from Golan.  As discussed in the Opening Brief (Dkt. 500 at 6:6-25), the "claimed invention" encompasses all claims pending at the time the statement was made.  As such, there is unmistakable surrender of subject matter for the '633 patent, including claim 14, as an "argument [was] made, and relied on, to *distinguish* the claimed subject matter from the prior art."  *Canton Bio-Med., Inc. v. Integrated Liner Tech., Inc.*, 216 F.3d 1367, 1371 (Fed. Cir. 2000) (emphasis added).  Accordingly, prosecution history estoppel applies to the '633 patent and the Judgment should be corrected to hold that there is no infringement under the doctrine of equivalents for the '633 patent.

**C.  The Findings Relating To The Patent Eligibility Of The '844 Patent Under 35 U.S.C. § 101 Should Be Amended.**

Finjan does not (and cannot) provide any explanation why the hypothetical claim in the Patent Office's Guidance is similar to the asserted claims of the '844 patent.  Unlike the hypothetical claim of the Patent Office's Guidance, none of the asserted claims of the '844 patent contain the words "malicious," "virus," "malware," or any cognates thereof.  Contrary to Finjan's argument (Dkt. 515 at 7:3-20), this is very relevant.  The Patent Office's reasoning for patent eligibility for the hypothetical patent was because the hypothetical claim was "directed towards physically isolating a received communication on a memory sector and extracting malicious code from that communication to create a sanitized communication in a new data file."  (Dkt. 452-2 at 3.)  No such similar technology is found in the asserted claims of the '844 patent.  Rather, the '844 patent itself indicated that the steps found in the asserted claims were already known and therefore no potential inventive concepts are claimed.  Accordingly, the Court should find that the hypothetical claim in the Patent Office's Guidance is not comparable to the asserted claims of the '844 patent.

Further, the Court should amend its findings to find that the '844 patent raises serious preemption concerns. The only argument Finjan provided against preemption was that an unclaimed alternative was the use of "floppy disks." (*See, e.g.*, Dkt. 451-4, Finjan's Opp. at 14:1-3.) But the use of floppy disks was already covered by the '844 patent. Finjan appears to confuse Blue Coat's argument as equating floppy disk to a "Downloadable." (Dkt. 515 at 8:2-4.) This is not correct. As explained in its Opening Brief (Dkt. 500 at 8:9-21), the specification of the '844 patent states that "[o]ne skilled in the art will also recognize that the ***programs*** and data ***may be received by and stored*** in the system in alternative ways. . . a ***computer-readable storage medium (CRSM) 375 such as a magnetic disk***, a hard disk, a magneto-optical disk, RAM, ***etc.***" (JTX 2001, the '844 patent at 6:56-65, emphasis added; *see also id.* at 7:30-40, 10:51-11:11.) In other words, a "Downloadable"—which was agreed to mean "an executable application ***program***, which is downloaded from a source computer and run on the destination computer"— can be received by or stored in the system through floppy disk. (Dkt. 518 at 7:21-8:4.)

### D. The Findings Relating To Laches Should Be Amended.

Finjan argues that laches cannot have an effect on damages because of the lump-sum nature of the damages award. Yet Finjan's arguments place the form over the substance of what was actually awarded. None of the cases cited by Finjan hold that a lump sum cannot include a royalty for the future life of the patents; rather they address the considerations in choosing between lump sum and running royalty licenses and whether a jury may award a fully-paid up lump sum covering the life of the patents-in-suit, such that additional relief might be foreclosed. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1326-27 (Fed. Cir. 2009); *Open Text S.A. v. Box, Inc.*, No. 13-cv-04910-JD, 2015 U.S. Dist. LEXIS 10644, at *2-3 (N.D. Cal. Jan. 28, 2015). Indeed, Finjan does not dispute that subsumed within the lump sum award it received, is the portion of damages representing a royalty for Blue Coat's forward looking revenues. That it was awarded at once, rather than over a certain period, does not preclude the fact that the award represents future damages. This fact was confirmed where Dr. Layne-Farrar testified that she calculated her damages award for the life of the patents, and Finjan's award for the '844 patent was likewise for the life of the patent. (Dkt. 427 at 1105:3-1106:1.)

Indeed, Finjan's interpretation of this issue is illogical given the Federal Circuit's holding in *SCA Hygiene Prods. Aktiebolag v. First Quality baby Prods., LLC*, No. 201301564, 2015 U.S. App. LEXIS 16621, at *52-53 (Fed. Cir. Sept. 18, 2015), which held that in egregious or extraordinary circumstances, laches will bar an ongoing royalty. The Federal Circuit's admonition that laches can bar an ongoing royalty would be rendered sterile if a party could simply request future damages in lump sum form to avoid this preclusive effect.

Finjan also asserts that Blue Coat's products did not use the allegedly infringing technology until 2010 and 2013. (Dkt. 515 at 10.) Several Blue Coat documents, dated 2007, describe several of the technologies that Finjan accused of infringing several of its patents-in-suit. (Dkt. 447-20, Ex. 40 to Kim Decl., PTX 456[1] at FINJAN-BC011216; DDX 1231 at BC065463.) Testimony from Blue Coat's VP of Products, Mr. Steve Schoenfeld, confirmed that, for example, the "suspicious" categorization listed in these documents was available from WebFilter's DRTR service since at least 2007. (Dkt. 465 at 23:8-25:4.) In fact, Finjan's sole basis for its allegations that Blue Coat did not sell or use this technology until 2010 or 2013 is the testimony of its expert, Dr. Cole, who did not testify as a fact witness and did not even address these Blue Coat documents.

While Finjan points to documents from fact discovery and expert discovery—which are not evidence in this case—for the proposition that a design-around of Finjan's patents may be "simple," this does not foreclose the fact that such changes would have been easier to implement earlier in a product's life cycle. This is particularly true where, as here, Blue Coat's accused products had received substantial developments and maintained a widespread customer base. (*See* Dkt. 465 at 28:20-29:1, 30:18-32:3.)

Lastly, Finjan's arguments as to the evidentiary prejudice suffered by Blue Coat confuse the quantity with the quality of Finjan's document retention and production. Notably, Finjan does not—and cannot—argue that documents preserved and produced in a 2006 litigation against an unrelated third-party involving only one of the presently asserted patents can satisfy its

---

[1] PTX 456 was produced from Finjan's own files.

discovery obligations relevant to litigation against Blue Coat that was filed seven years later in 2013.  Similarly, Finjan conclusorily states that the faded memories of its witnesses and former employees have no prejudicial effect despite the fact that several witnesses were unable to recall the details of key meetings memorialized in documents that were disputed during trial.  (*See, e.g.*, Dkt. 446-18, Ex. 24 at 47:18-48:3; Dkt. 446-16, Ex. 22 at 106:16-108:21.)

Finjan argues that—apart from the 2002 OEM Agreement between Finjan and Blue Coat—Blue Coat failed to identify any additional documents that were not produced. (Dkt. 515 at 14.)  This statement, in itself, confirms and amplifies Blue Coat's concerns as to Finjan's failure to retain documents relevant to this litigation; namely, Blue Coat cannot possibly know or identify additional missing documents because Blue Coat simply does not know what documents Finjan has destroyed or discarded over time.

As to the OEM Agreement itself, this is an example of a document introduced by Finjan at trial, concerning an OEM reselling agreement between the parties.  Finjan went on, at length, during trial as to speculations of a relationship between Blue Coat and Finjan that allegedly had a genesis in this document.  (*See* Dkt. 434 at 2039:21-2040:2, 2084:13-16.)  Yet, despite its protestations that it produced thousands of pages of documents and dozens of witnesses, Finjan cannot dispute that it failed to retain the very document on which it relied for such speculative narrative, in addition to any additional documents relating to the parties' OEM Agreement.

Because of the extraordinary and egregious nature of Finjan's delay and the prejudice to Blue Coat, the Court should amend its findings to find that laches bars Finjan from recovering damages beyond the date of the Court's entry of judgment.  Further, the Judgment should be amended accordingly.

### E. Conclusion

For the foregoing reasons, Blue Coat respectfully submits that its Motion be GRANTED.

| | | |
|---|---|---|
| 1 | | Respectfully submitted, |
| 2 | | WILSON SONSINI GOODRICH & ROSATI |
| 3 | | Professional Corporation |
| 4 | DATED: January 11, 2016 | By: */s/ Olivia M. Kim* |
| | | EDWARD G. POPLAWSKI |
| 5 | | OLIVIA M. KIM |
| | | BRIAN LAM |
| 6 | | S. FERRELL ALMAN, JR. |
| 7 | | VERA M. ELSON |
| | | CHRISTOPHER MAYS |
| 8 | | Counsel for Defendant |
| 9 | | BLUE COAT SYSTEMS, INC. |