# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

FINJAN, INC.,

               Plaintiff,

    v.

BLUE COAT SYSTEMS, INC.,

               Defendant.

Case No.  13-cv-03999-BLF

**ORDER REGARDING POST-JUDGMENT MOTIONS**

[RE: ECF 492, 498, 499, 500, 505]

United States District Court
Northern District of California

Following a ten-day jury trial, the jury returned a verdict finding that Defendant Blue Coat Systems, Inc. infringed five of Plaintiff Finjan, Inc.'s patents involving computer and network security: U.S. Patent Nos. 6,804,780 (the "'780 patent"), 6,154,844 (the "'844 patent"), 7,418,731 (the "'731 patent"), 6,965,968 (the "'968 patent"), and 7,647,633 (the "'663 patent").  Verdict 2-3, ECF 438.  The jury found Blue Coat did not infringe U.S. Patent No. 7,058,822 (the "'822 patent").  *Id.*  The jury also rejected Blue Coat's invalidity defense of anticipation, *id.* at 5, and issued an advisory verdict that on invention dates of the '844 and '731 patents, *id.* at 4.  The jury awarded Finjan a total of $39,528,487 in lump-sum damages.  *Id.* at 6-7.  Following the jury's verdict, the Court held a bench trial on non-jury legal issues regarding the priority dates for the '844 and '731 patents, prosecution history estoppel, patent eligibility under 35 U.S.C. § 101, and laches.  ECF 466.

Blue Coat now moves on several grounds to amend the Court's judgment as a matter of law, ECF 498, and for a new trial, ECF 499, findings of facts and conclusions of law, ECF 500. For the reasons herein, Blue Coat's motion to amend the Court's findings of facts and conclusions of law is DENIED; Blue Coat's motion for judgment as a matter of law is DENIED; Blue Coat's motion for a new trial and motion to amend the judgment is GRANTED IN PART AND DENIED

United States District Court
Northern District of California

1    IN PART; Finjan's motion for enhanced damages and pre- and post-judgment interest is

2    GRANTED IN PART AND DENIED IN PART; and Finjan's motion for attorneys' fees is

3    DENIED.

4    **I.    BACKGROUND**

5        Finjan filed its original complaint on August 28, 2013.  ECF 1.  Finjan asserted Blue Coat

6    infringed its '780, '844, '968, '822, and '633 patents.  *Id.* at 9-33.

7        All of the asserted patents are directed toward behavior-based Internet security. That is,

8    rather than scanning and maintaining a list of known viruses and malicious code signatures, the

9    asserted patents provide a system and methods for identifying, isolating, and neutralizing

10   potentially malicious code based on the behavior of that code.

11       The '822 and '633 patents, both titled "Malicious Mobile Code Runtime Monitoring

12   System and Methods," are related and share the same specification. The '822 patent issued on

13   June 6, 2006 and lists Yigal Mordechai Edery, Nimrod Itzhak Vered, and David R. Kroll as

14   inventors.  The '633 patent is a continuation of the '822 Patent, and issued on January 12, 2010.

15   The '633 Patent lists Yigal Mordechai Edery, Nimrod Itzhak Vered, David R. Kroll, and Shlomo

16   Touboul as inventors.  These patents provide systems and methods for protecting devices on an

17   internal network from code, applications, and/or information downloaded from the Internet that

18   performs malicious operations.  '633 patent at Abstract.  At a high level, the disclosed

19   embodiments describe a protection engine that generally resides on a network server and inspects

20   incoming downloads for executable code.  *Id.* col. 2:20-3:4. Upon detection of executable code,

21   the protection engine deploys "mobile protection code" and protection policies to the download

22   destination.  *Id.* col. 3:5-21.  At the destination, the downloadable-information is executed,

23   typically within a sandboxed environment, and malicious or potentially malicious operations that

24   run or attempt to run are intercepted and neutralized by the mobile protection code according to set

25   protection policies.  *Id.* col. 3:22-40.

26       The '844 patent, titled "System and Method for Attaching a Downloadable Security Profile

27   to a Downloadable," issued on November 28, 2000 and lists Shlomo Touboul and Nachshon Gal

28   as inventors.  This patent claims a system and methods of network protection wherein an inspector

reviews a piece of downloadable-information for suspicious code or behavior according to a set of rules. '844 patent at col. 2:3-19. The inspector generates a profile characterizing the areas of suspicion and then attaches that profile to the downloadable-information. *Id.* The profile can include other unique identifiers and certificates that are later read by a protection engine to determine whether or not to trust the profile. *Id.* col. 20-48.  By providing verifiable profiles, the object of the invention is to provide flexible, efficient protection against known and unknown hostile downloadable information without having to re-inspect the same piece of downloadable-information each time. *Id.* col. 2:61-3:7.

The '731 patent, titled "Method and System for Caching at Secure Gateways," issued on August 26, 2008 and lists Shlomo Touboul as the sole inventor.  This patent describes systems and methods of operating computer and network gateways that protect an intranet of computers. The claimed invention provides for caching of security information and policies at the gateway.  '731 patent at Abstract. This caching mitigates network latency—delay in the transmission of data—caused when the gateway processes downloadable information to protect intranet devices.  *Id.* col. 1:55-67.

The Court held a *Markman* hearing on August 22, 2014 and construed ten terms.  ECF 118.  Finjan moved for summary judgment of infringement, ECF 179, and Blue Coat moved for summary judgment of non-infringement of the asserted patent claims, ECF 174.  The Court denied Finjan's motion for summary judgment and finding Blue Coat's ProxySG Pop-Up Blocker did not infringe the '822 and '633 patents, granted in part Blue Coat's motion. Order on SJ 25, ECF 184.

From July 20, 2015 to August 3, 2015, the Court held a jury trial regarding Blue Coat's alleged infringement.  At trial, Finjan asserted claims 1, 7, 11, 15, and 41 of the '844 patent, claims 9 and 10 of the '822 patent, claim 14 of the '633 patent, claims 1 and 17 of the '731 patent, claim 1 of the '968 patent, and claims 9 and 13 of the '780 patens.  Verdict 2, ECF 438.  At the close of Finjan's case, Blue Coat moved for judgment as a matter of law on all claims of infringement, judgment as a matter of law pursuant to the Court's claim constructions, and judgment as a matter of law on damages.  Trial Tr. 1179:4-18, ECF 428.  At the close of all evidence, Blue Coat renewed its request for judgment as a matter of law as to infringement and

1  damages, and moved for judgment as a matter of law as to invalidity of all asserted claims.  Trial

2  Tr. 1977:15-21, ECF 433.  Finjan moved for judgment as a matter of law on all asserted claims

3  with respect to infringement, validity, and damages.  Trial Tr. 1867:11-14.  The Court allowed all

4  issues to reach the jury.  Trial Tr. 1987:24-1988:1.

5      On August 4, 2015, the jury returned its verdict. Verdict, ECF 438.  The jury found that

6  Blue Coat literally infringed claims 1, 7, 11, 15, and 41 of the '844 patent, claims 1 and 17 of the

7  '731 patent, claim 1 of the '968 patent, and claim 9 and 13 of the '780 patent.  *Id.* at 2.  The jury

8  also found that Blue Coat infringed claim 14 of the '633 patent under the doctrine of equivalents.

9  *Id.* at 3.  The jury found Blue Coat did not infringe, either literally or under the doctrine of

10  equivalents, claims 9 and 10 of the '822 patent.  *Id.* 2-3.  In addition, the jury found Blue Coat did

11  not prove the asserted claims were anticipated by clear and convincing evidence.  *Id.* at 5.  The

12  jury awarded Finjan $24,000,000 for Blue Coat's infringement of the '844 patent, $1,667,000 for

13  infringement of the '633 patent, $6,000,000 for infringement of the '731 patent, $7,750,000 for

14  infringement of the '968 patent, and $111,787 for infringement of the '780 patent.  *Id.* 6-7.

15      On September 9, 2015, the Court held a bench trial regarding priority dates for the '844

16  and '731 patents, prosecution history estoppel, patent eligibility of the '844 patent, and laches.  On

17  November 20, 2015, the Court issued its findings of facts and conclusions of law.  Order

18  Regarding Non-Jury Legal Issues, ECF 486.  The Court found that Finjan had not met its burden

19  to show that the priority date of the '844 patent is November 8, 1996 and thus, the presumptive

20  invention date of the '844 patent is December 22, 1997; the priority date of the '731 patent is

21  November 6, 1997; prosecution history estoppel does not preclude Finjan from asserting

22  infringement of the '633 patent under the doctrine of equivalents; Blue Coat had not met its

23  burden to show the '844 patent is patent ineligible; and Blue Coat's defense of laches is moot.  *Id.*

24  That same day, the Court entered judgment.  ECF 487.

25      The parties filed their respective post-trial motions on December 4, 2015, ECF 492, and

26  December 18, 2015, ECF 498, 499, 500, 505, and the Court held a hearing on these motions on

27  April 28, 2016, ECF 538.

28

## II.   BLUE COAT'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR A NEW TRIAL AND AMEND THE JUDGMENT

### A.   Legal Standard

In a patent infringement case, the Federal Circuit applies the law of the regional circuit with respect to matters of procedural law.  *Wordtech Sys., Inc. v. Integrated Network Solutions*, 609 F.3d 1308, 1318-19 (Fed. Cir. 2010).

### 1.   Motion for Judgment as a Matter of Law

Federal Rule of Civil Procedure 50(b) allows a party to renew no later than 28 days after the entry of judgment, a motion of for judgment as a matter law made under Rule 50(a) that was not granted by the Court.  Fed. R. Civ. P. 50(b).  Under Ninth Circuit law, a renewed motion for judgment as a matter of law should be granted "if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict."  *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002); *see also Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309, 1314 (Fed. Cir. 2006) ("A motion for JMOL is properly granted only if no reasonable juror could find in the non-movant's favor.") (citing *Sanghvi v. City of Claremont*, 328 F.3d 532, 536 (9th Cir. 2003)).

In reviewing a motion for a judgment as a matter of law, "the court must draw all reasonable inferences in favor of the nonmoving party." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1241 (9th Cir. 2014).  "'[A]lthough the court should review the record as a whole, it must disregard evidence favorable to the moving party that the jury is not required to believe,' and may not substitute its view of the evidence for that of the jury." *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001)(quoting *Reeves v. Sanderson Plumbing Prods. , Inc.*, 530 U.S. 133, 150 (2000)).  "[T]he court must not weigh the evidence, but should simply ask whether the plaintiff has presented sufficient evidence to support the jury's conclusion." *Harper v. City of Los Angeles*, 533 F3d 1010, 1021 (9th Cir. 2008).

### 2.   Motion for a New Trial

Under Federal Rule of Civil Procedure 59(a)(1), a court "may, on motion, grant a new trial on all or some of the issues."  A court may grant a new trial "if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of

5

justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007).  A judge should not grant a new trial unless she "is left with the definite and firm conviction that a mistake has been committed." *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987) (internal citations omitted). In considering a Rule 59(a) motion for a new trial, the court "is not required to view the trial evidence in the light most favorable to the verdict.  Instead, the district court can weigh the evidence and assess the credibility of the witnesses." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014).  "Ultimately, the district court can grant a new trial under Rule 59 on any ground necessary to prevent a miscarriage of justice." *Id.* (citing *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990)).  A trial court should grant a motion for a new trial if (1) the jury instructions were erroneous or inadequate, (2) the court made incorrect and prejudicial admissibility rulings, or (3) the verdict is contrary to the great weight of the evidence.  *See Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1258 (Fed. Cir. 2004).

### B.   Overview

All of the issues raised in Blue Coat's Rule 50(b) motion are also raised in Blue Coat's Rule 59 motion for a new trial.  As a result, the Court addresses the issues in the order set forth in Blue Coat's Rule 59 motion.  Where issues overlap between the Rule 59 and Rule 50(b) motion, the Court discusses them together.

In both motions, Blue Coat moved for relief on some issues only in short conclusory statements, often in footnotes.  *See, e.g.* Mot. for New Trial 7 n. 10 ("The erroneous jury instructions with regards to damages also warrants a new trial. (*See* Dkt. 425.)  So too do erroneous claim constructions."); *see also id.* at 14 n. 16 ("Blue Coat still contends that claim 14 is invalid for the reasons explained in its claim construction brief and motion for summary judgment motion.").  Where Blue Coat made conclusory arguments or attempted to incorporate other filings by reference, the Court will not address those arguments further and summarily denies the motions on the grounds previously stated by the Court.  *See Asetek Danmark A/S v. CMI USA, Inc.*, Case No. 13-cv-00457-JST, 2015 WL 5568360, at *10; *Kohler v. Inter-Tel Techs.*, 244 F.3d 1167, 1182 (9th Cir. 2001) ("Issues raised in a brief which are not supported by argument are deemed

abandoned.").

### C.    Settlement Agreements

In support of its damages case, Finjan presented a number of settlement agreements in other cases along with other licensing agreements.  Blue Coat argues the admission of the following three settlement agreements was contrary to law and highly prejudicial: (1) 2012 settlement agreement with Webroot; (2) 2010 settlement agreement with Intel/McAfee; (3) 2014 settlement agreement with Websense.  Mot. for New Trial 2-5, ECF 499.  According to Blue Coat, under the Federal Circuit's decision in *Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009), settlement agreements are only admissible in limited circumstances that are not present in this case.  Moreover, Blue Coat argues the settlement agreements were not comparable to the hypothetical negotiation because they took place years after the hypothetical negotiation.  *Id*. at 3. Finally, Blue Coat argues the jury instructions regarding settlement agreements were erroneous because they did not inform the jury that the admitted settlement agreements did not properly reflect a hypothetical negotiation between the parties.  *Id*. at 5.  Finjan responds that the admission of these three settlement agreements does not warrant a new trial.  Opp. to New Trial 1-4, ECF 518.

The Court disagrees with Blue Coat and finds the admission of the three settlement agreements was not contrary to law and not highly prejudicial.  First, Blue Coat's reliance on *Lucent* is not persuasive.  In *Lucent*, plaintiff's expert relied upon one settlement agreement that was drastically different than other available license agreements and resulted in a damages award three to four times larger than any amount in evidence.  *Id*. at 1328-32.  Here, Finjan used the three disputed settlement agreements as further support for a reasonable royalty within the range suggested by Finjan's other license agreement.  *See, e.g.*, Trial Tr. 1089:6-9 ("But here the royalty that they used here to calculate the settlement payment falls exactly in the range of both the arms length agreements…"); *see also GPNE Corp. v. Apple, Inc.*, Case No. 12-cv-02885-LHK, 2014 WL 1494247, at *7 (N.D. Cal. Apr. 16. 2014).

As to the fact that the settlement agreements took place after the date of the hypothetical negotiation, under the facts of this case, where Finjan's business model is based "entirely on

United States District Court
Northern District of California

United States District Court
Northern District of California

litigation and licensing of [its] patents," Finjan's licenses are probative of the royalty to which the parties would have agreed in a hypothetical negotiation.  *GPNE*, 2014 WL 1494247, at *7.

Finally, the Court does not find persuasive Blue Coat's argument that the jury instruction regarding settlement agreements did not inform the jury that "the settlement agreements fail to properly reflect a hypothetical negotiation between the parties…[and]… have little probative value to the question of royalty damages."  The Court provided a separate instruction that specifically addressed Blue Coat's concern by stating that "settlement agreements are negotiated on dates earlier or later than the [hypothetical negotiation date]" and that the license fees negotiated by a settlement may be influenced by factors unrelated to the value of a patent.  Jury Instructions 47, ECF 437.   The record shows that Blue Coat had ample opportunity to distinguish these settlement agreements through fact and expert testimony and to argue to the jury, consistent with the jury instruction given by the Court, that no weight should be given to them.  However, admission of these agreements in light of the other evidence of comparable licenses was not erroneous and not prejudicial.   The Court concludes a new trial is not warranted as a result of the admission of the settlement agreements.

### D.    Total Product Revenues

Blue Coat argues that allowing evidence of the total product revenue for the accused products and services was contrary to law and highly prejudicial.  Mot. for New Trial 6, ECF 499. In response, Finjan argues that Blue Coat waived this argument by not objecting to the presentation of this testimony.   Opp. to New Trial 4, ECF 518.  In reply, Blue Coat argues that it objected to this testimony by making a motion in limine to preclude the admissibility of the total revenue for each of the accused products.  Reply to New Trial 4, ECF 526.

The admission of total product revenue was neither contrary to law nor highly prejudicial.  The Court allowed total product revenue into evidence because it was potentially relevant to Dr. Layne-Farrar's damages analysis under the *Georgia-Pacific* factors. Order Regarding MILS 7, ECF 367.  Contrary to Blue Coat's argument, there is not a per se prohibition on the admission of total product revenue.  Blue Coat now claims that Finjan did not properly utilize total product revenue during trial, but anticipating this concern, the Court previously stated in its order

8

United States District Court
Northern District of California

regarding the parties' motions in limine that it "w[ould] permit [Finjan] to use such revenues and acquisition valuations as a starting point for a properly apportioned royalty base. [If Finjan] fails to adequately develop such testimony concerning apportionment, [Blue Coat] may move to strike the evidence from the record."  Blue Coat's argument, however, comes too late.  To the extent that Finjan never connected total product revenues to a properly apportioned royalty base, Blue Coat never made that objection at trial and has thus waived that objection.  Accordingly, a new trial is not warranted on the basis of the admission of total product revenues.

### E.   Damages Award

#### 1.   '844 Patent

Blue Coat argues that there is no factual or legal support for the jury's damages award regarding the '844 patent.  Mot. for New Trial 6-7, ECF 499.  According to Blue Coat, Finjan asked the jury to award it $24 million based on WebPulse's 75 million users multiplied by 4%, the portion of web requests processed by DRTR, multiplied by an $8 per user royalty.  *Id*.  Blue Coat argues that Finjan's use of 75 million users improperly includes extraterritorial instances of alleged infringement.  *Id*.  Blue Coat also argues that Finjan's use of a 4% apportionment did not properly apportion out the non-infringing functions of DRTR.  JMOL 3, ECF 498.  Finally, Blue Coat argues that the $8 per user fee did not reflect Finjan's licensing practices at the time of the hypothetical negotiation.  *Id*. at 3-5.

Finjan responds that it presented unrebutted evidence that WebPulse was developed and updated within the United States, Opp. to New Trial 6, ECF 518 and that at the time of the hypothetical negotiation the parties would have agreed to $8 per user royalty, Opp. to JMOL 2, ECF 516.  Finjan also argues that it properly apportioned WebPulse to the patented invention's footprint.  *Id*. at 3.

After reviewing the evidence, the Court agrees with Finjan.  First, Finjan expressly addressed the territoriality of WebPulse's users during trial.  Dr. Layne-Farrar discussed how "with the patents you only have to pay if the accused product is made or use or sold within the jurisdiction of that patent."  Trial Tr. 1106:4-6.  With respect to WebPulse, Dr. Layne-Farrar testified that it was "made in the U.S., it's the cloud product…that's pushed and it's pushed out of

1    Utah.  So, again, that would have been covered out of these patents because it was made in the

2    U.S." Trial Tr. 1106:11-15.  This was unrebutted as Blue Coat did not contest Finjan's evidence

3    that WebPulse was made and pushed out of Utah.  Accordingly, there was substantial evidence for

4    the jury to conclude that WebPulse was made in the United States.

5         Second, Finjan submitted evidence to the jury apportioning WebPulse to the scope of '844

6    patent.  Finjan apportioned WebPulse to its DRTR functionality and based its damages request on

7    the fact that DRTR processed approximately 4% of WebPulse's 1 billion daily requests.  Trial Tr.

8    474:20-475:1, 495:21-22.  Although Blue Coat argues that Finjan should have apportioned DRTR

9    further to the Cookie2 logs, Finjan's infringement case implicated other parts of DRTR as well.

10   Trial Tr. at 472:6-25, 492:5-493:23, 497:14-21, 503:4-11, 507:4-19, 511:5-513:4, 514:4-515:4,

11   516:16-517:6, 529:24-530:22, 630:18-631:3, 634:1-15.  Thus, there was substantial evidence in

12   the record for the jury to conclude that 4% was a proper apportionment.

13        Third, Finjan proffered evidence that at the time of the hypothetical negotiation in 2008,

14   the starting point for licensing negotiation was approximately $8 per user.  Mr. Chaperot testified

15   that since the 2008 Secure Computing jury award was upheld on appeal, Finjan used a licensing

16   rate of 8-16% and that $8 per user was consistent with this rate.  Trial Tr. 907:17-908:1.  Since

17   this licensing rate came from a 2008 judgment, it provided evidence regarding the negotiations

18   that would have occurred between Finjan and Blue Coat in 2008.  Accordingly, there was

19   substantial evidence for the jury to conclude that $8 per user was an appropriate licensing fee.

20        Thus, in summary, the jury's award was based on substantial evidence.  In assessing the

21   credibility of witnesses under Rule 59, to the extent any Blue Coat witness offered testimony

22   relevant to damages on the '844 patent, the Court does not find Blue Coat's witnesses persuasive.

23   *See Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987) ("The

24   judge can weigh the evidence and assess the credibility of witnesses, and need not view the

25   evidence from the perspective most favorable to the prevailing party.").  Moreover, the Court finds

26   the jury's award was not against the clear weight of the evidence.  Thus, the Court also denies

27

28

United States District Court
Northern District of California

1   Blue Coat's request for a new trial under the Rule 59 standard.[1]

2               **2.   '633, '731, '968, and '780 Patents**

3           Blue Coat argues the damages award for the '633, '731, '968, and '780 patents are not

4   supported by law or facts and seeks judgment as a matter of law or a new trial for three reasons.

5   JMOL 6-8, ECF 498.  First, Blue Coat argues Finjan improperly apportioned the value of the

6   infringing features from the non-infringing features.  *Id*. at 6.  Second, Blue Coat argues that the

7   jury improperly doubled the damages award at the request of Finjan's counsel during closing

8   arguments.  *Id*. at 7-8.  Third, Blue Coat claims Finjan's improper apportionment led to a damages

9   award that allowed Finjan to recover damages multiple times for each accused feature.  *Id*. at 8.

10          Finjan argues that there was substantial evidence supporting Dr. Layne-Farrar's

11  apportionment method.  Opp. to JMOL 6-8, ECF 516.  Next, Finjan argues that Dr. Layne-Farrar

12  provided a "very conservative" floor for a reasonable royalty and that the jury properly found it

13  was entitled to a higher reasonable royalty based on the trial evidence.  *Id*. at 8.  Finally, Finjan

14  argues that it did not recover damages multiple times as the jury separately identified the

15  reasonable royalty for the specific infringing functionality of each patent.  *Id*. at 8-9.

16          After reviewing the evidence in the record, the Court finds there was substantial evidence

17  to support the jury's damages award for the '633, '731, '968, and '780 patents.  Dr. Layne-Farrar

18  testified that she apportioned the 24 functions of Blue Coat's security products equally based on

19  Blue Coat's documents, her discussions with Finjan's technical experts, and a Blue Coat

20  engineer's deposition.  Trial Tr. 1110: 5-24; 1118:2-12, 1144:3-1145:11.  Finjan also proffered

21  evidence that although WebPulse is a part of the Global Intelligence Network, internal Blue Court

22  documents equated WebPulse with the Global Intelligence Network.  Trial Tr. 988:9-12, 990:10-

23  15, 1006:11-1008:8; 1142:9-12.  Thus, Dr. Layne-Farrar provided sufficient foundation for her

24  apportionment analysis.

25          Next, Dr. Layne-Farrar testified and Finjan offered evidence indicating that her reasonable

26

27  ───────────────

28  [1] Blue Coat alternatively requests the Court to issue a remittitur on damages at $0 or nominal
    damages.  The Court denies this request, having found substantial evidence supports the jury's
    award.

United States District Court
Northern District of California

11

United States District Court
Northern District of California

royalty analysis was a conservative floor for damages.  Trial Tr. 1044:21-1045:2-7; 1112:23-1114:24; 1116:21-1118:1; 1158:17-20; *see also id.* at 1113:9-14; 1150:17-1151:6; 1153:6-15.  As a result, the jury could have considered other evidence in the trial to determine the appropriate reasonable royalty and contrary to Blue Coat's arguments, the jury did not simply double Dr. Layne-Farrar's conservative numbers.  Thus, the jury's award was based on substantial evidence at trial.

Finally, Finjan did not recover damages multiple times for each accused figure.  Finjan sought damages for each of its patents, each of which covers different functionalities.  Although some of Blue Coat's products may contain multiple functionalities and thus, infringe more than one patent that does not equate to "double-dipping" or "triple-dipping" on damages.  Thus, the jury's award was based on substantial evidence.

In assessing the experts' credibility under Rule 59, *see Landes*, 833 F.2d at 1371 (9th Cir. 1987), the Court does not find Blue Coat's witnesses persuasive on the issue of damages.  *See, e.g.* Trial Tr. 1253:14-1253:23 (Mr. Schoenfeld testifying that it is not possible to equate values on any of the 24 functions).  The Court also finds the jury's award was not against the clear weight of the evidence.   Thus, the Court also denies Blue Coat's request for a new trial under the Rule 59 standard.

## F.    Infringement

### 1.    '844 Patent

Blue Coat argues that Finjan did not prove WebPulse infringes claims 1, 7, 11, 15, and 41 of the '844 patent and seeks judgment as a matter of law or a new trial for two reasons.  Mot. for New Trial 7-8, ECF 499.  First, Blue Coat claims that there is no evidence WebPulse generates a "[d]ownloadable security profile that identifies suspicious code" as required by the asserted claims.  *Id.*.  According to Blue Coat, at trial, Finjan argued that Cookie2 logs generated by WebPulse include the "security profile."  *Id.*  However, Blue Coat argues that Finjan did not prove where the "security profile" in Cookie2 identified suspicious code.  *Id.*  Second, Blue Coat argues that there is no evidence of WebPulse "linking…the first Downloadable security profile *before* a web server makes the Downloadable available to web clients."  *Id.* at 8-9.  Finjan responds that its

12

expert testified and documents show that WebPulse satisfies the "identifies suspicious code" element of the asserted claims when it generates a DRTR response.  Opp. to New Trial 7-9, ECF 518.  Second, Finjan argues that its expert's testing of Blue Coat's products, Blue Coat's own documents, and Blue Coat's experts provided evidence that WebPulse's "linking" occurs "before a webserver makes the Downloadable available to web clients."  *Id*. at 9.

The Court concludes that substantial evidence supports the jury's determination that WebPulse infringes the asserted claims of the '844 patent.  First, Finjan provided evidence that WebPulse creates a "security profile" through its DRTR component.  Trial Tr. 490:11-493:23.  Dr. Cole described an example where the DRTR analyzed Javascript within a webpage and generated a response that identifies suspicious code such as eval, unescape, and document.write functions. Trial Tr. 491:10-493:23.  Although Blue Coat claims the Cookie2 is the security profile, Dr. Cole testified that Cookie2 is actually evidence of a security profile created by WebPulse.  Trial Tr. 497:14-497:21 ("Evidence of the security profile is in a file that you've heard a lot about called Cookie2.").  However, Finjan also provided evidence that Cookie2 identifies suspicious code. Trial Tr. 490:1-515:16 ("If we go to the bottom you can see it will also track those suspicious system calls that we talked about so you see eval, unescape, document write and so it is tracking and creating a profile for that suspicious activity.").  Blue Coat's expert testified that Cookie2 did not identify suspicious code.  Trial Tr. 1424:3-1445:6.  The jury considered all the testimony and credited Finjan's evidence in reaching its infringement verdict.  The Court concludes that substantial evidence supports the jury's findings that WebPulse meets this limitation of the '844 patent.

Second, whether WebPulse meets the linking limitation revolves around whether WebPulse is part of the "web client" or an inspector that inspects content for suspicious code. Finjan provided evidence that WebPulse is an inspector that detects suspicious code.  Trial Tr. 469:2-472:25.  As a result, Finjan proffered evidence that WebPulse performs any linking before the web server makes the downloadable available to web clients.  *Id*.  While Blue Coat's expert provided testimony that WebPulse is a web client, and thus performs its linking after the downloadable is available to web clients, Trial Tr. 1453:8-17, the jury credited Finjan's evidence.

13

1    In reviewing the record, the Court concludes that substantial evidence supports the jury's findings

2    that WebPulse also meets this limitation of the '844 patent.  Accordingly, substantial evidence

3    supports the jury's verdict that WebPulse infringes the '844 patent.

4          Under Rule 59, however, the Court may make a credibility determination.  *See Landes*,

5    833 F.2d at 1371 (9th Cir. 1987).  The Court does not find Blue Coat's witnesses persuasive on the

6    issue of infringement of the '844 patent and does not find the jury's verdict was against the clear

7    weight of the evidence.  Thus, the Court also denies Blue Coat's request for a new trial under the

8    Rule 59 standard.

9          **2.   '731 Patent**

10         Blue Coat seeks judgment as a matter of law or a new trial because Finjan did not prove

11   ProxySG and WebPulse in combination meet the following limitation of claims 1 and 17 of the

12   '731 patent:  "deriving security profiles . . . [wherein each of] the security profile[s]

13   [comprises/includes] a list of [at least one] computer command[s]…."  Mot. for New Trial 9, ECF

14   499.  Blue Coat claims that Finjan did not provide any evidence that Cookie2 is a profile that

15   comprises or lists a "list of computer commands."  *Id*.  Finjan responds that Dr. Mitzenmacher

16   testified that the infringing security profile includes a list of computer commands.  Opp. to New

17   Trial, ECF 518.

18         The Court agrees with Finjan and finds there is substantial evidence to show that the

19   "security profile" includes "a list of computer commands."  For example, Dr. Mitzenmacher, when

20   asked whether the security profile contained a list of commands, testified that "It's clearly a list of

21   computer commands. You have in that case three computer commands…In fact, it's giving you

22   more detail and potentially more useful information and at a minimum certainly it comprises a list

23   of computer commands."  Trial Tr. 881:23-882:6; *see also* Trial Tr. at 769:15-770:2 ("…in the

24   course of scanning the file, it's going to look for many things, but of particular relevance to the

25   patent is that it's going to identify the existence -- identify various computer commands…"),

26   772:9-773:4,781:20-782:13, 794:3-23.  Thus, substantial evidence supports the jury's verdict that

27   ProxySG and WebPulse infringe the '731 patent.

28         In assessing the experts' credibility under Rule 59, *see Landes*, 833 F.2d at 1371 (9th Cir.

14

1987), the Court does not find Blue Coat's witnesses persuasive on the issue of infringement of

the '731 patent and does not find the jury's verdict was against the clear weight of the evidence.

Thus, the Court also denies Blue Coat's request for a new trial under the Rule 59 standard.

### 3.   '968 Patent

Blue Coat argues that Finjan did not prove ProxySG and WebPulse in combination meet

the following limitations of claim 1 of the '968 patent:  (1) "a memory storing…a policy index to

the cache contents, the policy index including entries that relate cache content and policies by

indicating cache content that is known to be allowable relative to a given policy…" and (2)

"content evaluator…for determining whether a given digital content is allowable relative to a

given policy, based on the content profile, the results of which are saved as entries in the policy

index." Mot. for New Trial 10, ECF 499.   Blue Coat seeks judgment as a matter of law or a new

trial.  At the *Markman* hearing, the parties agreed that "policy index" means "a data structure

indicating allowability of cached content relative to a plurality of policies." Order Construing

Claims 4, ECF 118.  According to Blue Coat, Finjan did not provide evidence that the "policy

index" required by claim 1 exists in the accused product.  *Id*.  Finjan argues that it presented

substantial evidence that the accused product contains a policy index which stores policy decisions

in variables that indicate allowability of analyzed content.  Opp. to New Trial 10-12, ECF 518.

After reviewing the record, substantial evidence supports the jury's conclusion that

ProxySG and WebPulse infringe claim 1 of the '968 patent.  Dr. Mitzenmacher testified that

ProxySG applies policies to digital content at checkpoints, saves the results of these policy

decisions in the policy index, and the policy decisions are used throughout the system.  Trial Tr. at

823:14-26:12, 833:5-35:23, 836:1-10, 24-842:4, 898:14-900:6.  He also confirmed his analysis

through testing of Blue Coat's products.  Trial Tr. 754:11-755:5, 820:12-823:1.  He also used Blue

Coat's own documents to support his opinion.  Trial Tr. 840:6-14.  Accordingly, there is

substantial evidence to support the jury's verdict that ProxySG and WebPulse infringe claim 1 of

the '968 patent.

In assessing the experts' credibility under Rule 59, *see Landes*, 833 F.2d at 1371 (9th Cir.

1987), the Court does not find Blue Coat's witnesses persuasive on the issue of infringement of

the '968 patent and does not find the jury's verdict was against the clear weight of the evidence. Thus, the Court also denies Blue Coat's request for a new trial under the Rule 59 standard.

### 4.   '780 Patent

Blue Coat seeks judgment as a matter of law or a new trial and argues that Finjan did not provide any evidence that ProxyAV and ProxySG in combination meet the following limitation of claims 9 and 13 of the '780 patent:  "an ID generator coupled to the communications engine…for performing a hashing function on the Downloadable and the fetched software components to generate a Downloadable ID."  Mot. for New Trial 9, ECF 498.  At the *Markman* hearing, the parties agreed to construe "performing a hashing function on the Downloadable and the fetched software components" as "performing a hashing function on the Downloadable *together* with its fetched software components."  Order Construing Claims 4, ECF 118 (emphasis added).  Blue Coat argues that Dr. Mitzenmacher testified only that a hashing function was performed on objects to create fingerprints and then the fingerprints were combined to correspond to a specific I.D. Mot. for New Trial 11, ECF 499.  Blue Coat claims that combining fingerprints after the hashing function is performed does not meet the claim's requirement that they happen together.  *Id.* Moreover, Blue Coat argues that despite Dr. Mitzenmacher's opinion, there is no evidence that fingerprints are combined after the hashing functions are performed.  *Id.*   Finjan argues that it provided evidence that when a web page is obtained, its components are fetched together.  Opp. to New Trial 13, ECF 518.

There is substantial evidence in the record to support the jury's verdict finding infringement of claims 9 and 13 of the '780 patent.  Finjan demonstrated that when a web page is obtained, its components are fetched in parallel via pipelining, and the objects are passed to ProxyAV.  Trial Tr. 851:9-852:11.  Dr. Mitzenmacher testified, based on documents, source code, and the testimony of Blue Coat engineers, that the web page and its components are gathered in a buffer and then hashes are related to form a Downloadable ID of the web page and its components. Trial Tr. 851:1-858:23; 1553:20-1554:13.  Thus, substantial evidence supported the jury's verdict.

In assessing the experts' credibility under Rule 59, *see Landes*, 833 F.2d at 1371 (9th Cir. 1987), the Court does not find Blue Coat's witnesses persuasive on the issue of infringement of

16

the '780 patent and does not find the jury's verdict was against the clear weight of the evidence. Thus, the Court also denies Blue Coat's request for a new trial under the Rule 59 standard.

### 5.   '633 Patent

Blue Coat argues that Finjan did not provide substantial evidence that the combination of ProxySG, CAS, and MAA infringe claim 14 of the '633 patent under the doctrine of equivalents and seeks judgment as a matter of law or a new trial for three reasons.   Mot. for New Trial 11, ECF 499.  First, Dr. Cole did not testify there were insubstantial differences between the accused products and claim 14.  *Id*. at 11-13.  Second, Finjan did not offer substantial evidence that the mobile protection code is communicated to the downloadable-information destination.  *Id*. at 13-14.  Third, Finjan did not proffer evidence that the MAA or its equivalent satisfies the claimed "downloadable-information destination."  *Id*. at 14-16.  Finjan responds that contrary to Blue Coat's argument, Dr. Cole testified that the accused products function in the same manner, same way, and yielded the same results as the asserted claim.  Opp. to New Trial 14, ECF 518.  Finjan also argues that it submitted evidence that mobile protection code is communicated to the downloadable-information destination.  *Id*. at 14-16.  Finally, Finjan responds that Dr. Cole explained that the MAA satisfies the claimed downloadable-information destination.

The Court concludes substantial evidence supports the jury's verdict that ProxySG, CAS, and MAA infringe claim 14 of the '633 patent.  First, Dr. Cole testified with particularized testimony and evidence on a limitation by limitation basis and explained how the accused product infringed claim 14 under the doctrine of equivalents.  *See, e.g.*, Trial Tr. 610:21-612:9.  In support of its argument, Blue Coat relies upon *Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1322-23 (Fed. Cir. 2003).   However, *Hewlett-Packard* is inapposite to the circumstances of this case.  In *Hewlett-Packard*, the expert simply replied with a "yes" when asked whether the accused products performed the same function, way, and result as the claim element, failing to provide any reasoning for his answer on a limitation by limitation basis.  *Id*. at 1322.  Here, Dr. Cole provided detailed testimony on a limitation by limitation basis for why the accused products function in the same manner, way, and yielded the same results.  Trial Tr. 610:21-612:9.

Second, there was substantial evidence through testimony and documents that the mobile

17

1    protection code element of the claim is met by the accused product.  Finjan demonstrated that

2    ProxySG receives executable code, acts as a re-communicator and sends the executable code to

3    CAS, which acts as a re-communicator and sends the executable code to the MAA.  *See, e.g.*, Trial

4    Tr. 578:15-584:12, 589:3-612:15.

5         Third, there was substantial evidence that the MAA satisfies the "downloadable-

6    information destination" element as Dr. Cole testified that the MAA is the information destination.

7    Trial Tr. 739:18-740:3.  As a result, there is sufficient evidence to support the jury's verdict.

8         In assessing the experts' credibility under Rule 59, *see Landes*, 833 F.2d at 1371 (9th Cir.

9    1987), the Court does not find Blue Coat's witnesses persuasive on the issue of infringement of

10   the '633 patent and does not find the jury's verdict was against the clear weight of the evidence.

11   Thus, the Court also denies Blue Coat's request for a new trial under the Rule 59 standard.

12        **G.     Invalidity of the '844, '822,'633, '731, '968, and '780 Patents**

13        Blue Coat argues that the asserted claims of the '844 patent are anticipated by U.S. Patent

14   No 6,253,370 ("Abadi"); the asserted claims of the '822 and '633 patents are anticipated by U.S.

15   Patent No. 5,983,348 ("Ji"); the asserted claims of the '731 patent are anticipated by a publication

16   entitled "IBM Websphere Edge Server: New Features and Functions in Version 2" dated April

17   2002 ("Braswell"); the asserted claim of the '968 patent is anticipated by U.S. Patent No.

18   6,772,214 ("McClain"); and the asserted claims of the '780 patent are anticipated by U.S. Patent

19   No. 5,815,709 ("Waldo").  Mot. for New Trial 16-18, ECF 499.  Blue Coat seeks judgment as a

20   matter of law or a new trial.  However, in its briefs, Blue Coat does not adequately explain how it

21   proved invalidity on an element-by-element basis, neglects to address Finjan's rebuttal evidence,

22   and instead makes conclusory statements.  *Id*.

23        In reviewing the record, the Court concludes that substantial evidence supports the jury's

24   finding that Blue Coat failed to prove by clear and convincing evidence that the asserted patents

25   are invalid.  Although Blue Coat argues its experts, Dr. Necula and Dr. Hicks, offered evidence

26   that the asserted patents were invalid, Finjan's experts, Dr. Lyon and Dr. Jaeger testified that the

27   asserted patent were not invalid.  *See* Trial Tr. 1923:20-1933:1 (explaining how Abadi does not

28   teach all the elements of the asserted claims of the '844 patent); Trial Tr. 1934:17-1940:20

United States District Court
Northern District of California

United States District Court
Northern District of California

(explaining how Ji does not teach all the elements of the asserted claims of the '822 patent); Trial Tr. 1940:21-1942:1 (explaining how Ji does not teach all the elements of the asserted claim of the '633 patent); Trial Tr. 1877:4-1877:22; 1880:15-1888:12 (explaining how Braswell does not teach all the elements of the asserted claims of the '731 patent); Trial Tr. 1888:13-1897:21 (explaining how McClain does not teach all the elements of the asserted claim of the '968 patent); Trial Tr. 1897:22-1904:18 (explaining how Waldo does not teach all the elements of the asserted claims of the '780 patent).  To the extent there was disagreement between the experts, the jury's verdict indicates they credited Finjan's experts.  Given the testimony by Finjan's experts with respect to the validity of the asserted patents, there was substantial evidence in the record for a reasonable jury to conclude that Blue Coat failed to prove by clear and convincing evidence the asserted patents were invalid.

Under Rule 59, however, the Court may make a credibility determination.  *See Landes*, 833 F.2d at 1371 (9th Cir. 1987).  The Court does not find Dr. Necula or Dr. Hicks persuasive on the issue of invalidity of the asserted patents and does not find the jury's verdict was against the clear weight of the evidence.  Thus, under the Rule 59 standard, Blue Coat's arguments also do not stand.

### H.    Jury Instructions

Although Rule 59 motions are generally governed by Ninth Circuit law, "[t]he legal sufficiency of jury instructions on the issue of patent law is a question of Federal Circuit law[.]" *Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 638 (Fed. Cir. 2011).  A new trial should only be granted based on erroneous instructions when "the movant can establish that the instructions were legally erroneous and that the errors had a prejudicial effect." *Id.*

Blue Coat argues that the jury instructions on the dates of inventions for the asserted claims of the '844 and '731 patents were confusing to the jury and highly prejudicial.  Mot. for New Trial 18-19, ECF 499.  Blue Coat claims the instructions were improper because the jury was asked to determine the invention dates of the '844 and '731 patents and regardless of the determination of such dates, the jury was also asked to determine whether the asserted claims of those patents are invalid or not.  *Id.*  Since the jury found the invention date of the '844 patent to

1    be November 8, 1996, Blue Coat argues it is not clear whether the jury found the '844 patent was

2    not invalid because the prior art introduced by Blue Coat is dated after November 8, 1996.  *Id.*

3           The Court disagrees with Blue Coat that the jury instructions on dates of inventions were

4    confusing and highly prejudicial.  As Blue Coat notes, the jury instructions explained that prior art

5    "does not include a publication that…was published less than one year before the date of

6    invention."  Jury Instructions 36, ECF 437.  However, the jury instructions continue and explain

7    that "In this case, [the jury] must determine the dates of invention for the asserted claims of the

8    '844 and '731 Patents.  The date of invention that you determine is related to the issue of whether

9    the prior art described in the evidence was published or patented before the invention was made."

10   *Id.*  The verdict form then instructed the jury that "Regardless of the dates [of invention] you find,

11   please answer Question 4 [on invalidity] with respect to each patent."  Verdict 4, ECF 438.  There

12   would be no reason for the verdict form to state that if, as Blue Coat argues, the jury was supposed

13   to use the invention date it found in determining anticipation.  If Blue Coat's argument is correct,

14   then the verdict form would simply have read "move on to the next question" without additionally

15   stating that the jury should disregard its answer to the date of invention in moving on to the next

16   question.  Thus, the jury instruction was proper and clear.  The verdict form expressly told the jury

17   to disregard the date of invention when determining whether the asserted patents were invalid.

18   Moreover, any error was not prejudicial.

19        **I.    Closing Arguments**

20          Blue Coat argues that Finjan made two highly prejudicial and confusing statements to the

21   jury.  Mot. for New Trial 19, ECF 499.  First, Blue Coat claims Finjan's request for $24 million in

22   damages for the '844 patent lacked any factual or legal basis.  *Id.*    Second, Blue Coat argues that

23   Finjan's attorney improperly gave his own personal opinion as to the credibility of Blue Coat's

24   witnesses.  *Id.* 19-20.  Specifically, Blue Coat asserts that Finjan's attorney's comments that he

25   "didn't believe him either.  I didn't.  I didn't think he was credible…I didn't believe Dr.

26   Bestavros…I didn't believe him" were highly prejudicial and improper under Rule 3.4(e) of the

27   Model Rules of Professional Conduct.  *Id.* at 19. Finjan argues that in closing, it properly

28   explained why Dr. Bestavaros was not credible.  Opp. to New Trial 21-22, ECF 518.

United States District Court
Northern District of California

United States District Court
Northern District of California

As the Court discussed *supra* II.E.1, there was adequate factual and legal basis for Finjan's request for $24 million in damages.

The Court also finds Finjan's closing argument regarding Dr. Bestavaros was neither highly prejudicial nor confusing.  As a threshold matter, Blue Coat never objected to any of the allegedly prejudicial statements during closing and has thus waived this argument.  Moreover, the purpose of closing argument is to explain the evidence, and where parties offer conflicting opinions, to explain why one side's evidence should be believed over the other.  Trial Tr. 2056:16-20 ("In these kinds of cases every time you have a patent case you're going to have two experts, both of them Ph.D.'s, and one is going to say A and the other one is going to say B, this is black and white, and what do you want to call it?").  In closing argument, Finjan, in an appropriate manner, argued to the jury why Dr. Bestavaros's opinions should not be believed.  *See, e.g.,*Trial Tr. 2057:7-11 ("He didn't mark any exhibits.  He just got up there and said Dr. Cole is wrong, Dr. Mitzenmacher is wrong, Dr. Medvidovic is wrong, Dr. Bims is wrong…")

In its briefing, Blue Coat principally relies on the ABA Model Rules of Professional Conduct and two cases in support of its argument: *Whitserve, LLC v. Computer Packages, Inc*., 694 F.3d 10, 34 n. 18 (Fed. Cir. 2012) *and Intellectual Ventures I, LLC v. Canon Inc.*, 104 F. Supp. 3d 629, 659 (D. Del. May 18, 2015).  First, the ABA Model Rules of Professional Conduct "impose no enforceable duties on lawyers until promulgated by state high courts or by federal courts."  *Childress v. Trans Union, LLC*, Case No. 12-cv-00184, 2013 WL 3071273, at *2 (S.D. Ind. June 18, 2013).  Blue Coat has not provided the Court with any identical provisions under the California Rules of Professional Conduct or this Court's local rules.  In *Whitserve*, counsel made an emotional plea and inaccurately stated the law when counsel argued that "'according to the law,' the jury could add $5–10 million to the award as 'compensation for the four years of hell' resulting from the litigation. It is beyond debate that juries may not award litigation costs or punish infringers."  *Whitserve*, 694 F.3d at 34 n. 18.  In *Intellectual Ventures I*, the defendant represented to the court and plaintiff that it would not offer evidence of non-infringement.  *Intellectual Ventures I*, 104 F. Supp. 3d at 659.  At trial, defendant offered the testimony of a fact witness for what it repeatedly told the court and plaintiff was for the purpose of explaining how

the accused devices work.  *Id*.  During closing arguments, however, defendant used its fact witness's testimony "as the bedrock for its closing argument to the jury that the accused devices do not [infringe.]"  *Id*.  The court found that Defendant's "counsel improperly played the role of expert witness by inferring from factual testimony that the accused devices do not meet the claim limitations."  *Id*.  Unlike *Whitserve*, Finjan did not make an improper emotional plea or misstate the law to the jury and unlike *Intellectual Ventures I*, Finjan did not mislead the court and Blue Coat about the nature of testimony and then use it for an improper purpose during closing arguments.  Accordingly, the Court concludes that a new trial based on Finjan's closing arguments is not warranted.

### J.   Amending Judgment

Blue Coat argues that the judgment needs clarification because contrary to the instructions on the verdict form, the jury, after finding several of the asserted patents were literally infringed, also found those same patents were infringed under the doctrine of equivalents.  Mot. for New Trial 21-22, ECF 499.  The verdict form instructed the jury to analyze infringement under the doctrine of equivalents only if the patent was not literally infringed.  *Id*.  Blue Coat seeks to have the judgment reflect that infringement under the doctrine of equivalents is moot for the '844, '968, and '780 patents.  *Id*. at 22.  Finjan argues that the judgment should not be altered because the jury's findings are not mutually exclusive.  Opp. to New Trial 23, ECF 518.

The Court agrees with Blue Coat that the judgment should be amended to reflect that infringement under the doctrine of equivalents is moot for the '844, '968, '780 patents and Finjan is not entitled to any relief under the doctrine of equivalents.  Pre-trial, the parties mutually agreed that the jury would be instructed not to answer questions on infringement under the doctrine of equivalents for any patents that were literally infringed.  The Court concurred and approved a jury verdict form instructing the jury as such.  The jury clearly misread the instruction.  Before the jury was released, the Court consulted counsel and both parties agreed that the mistake could be cured in post-trial motions.  Trial Tr. 2192:16-2193:8.  Counsel expressly waived the opportunity to send the jury back for further deliberations.  *Id*.  To be consistent with that agreement, the Court will amend the judgment accordingly.

United States District Court
Northern District of California

### III.   BLUE COAT'S MOTION TO AMEND FINDINGS AND JUDGMENT

#### A.   Legal Standard

Under Fed. R. Civ. P. 52(b), "the court may amend its findings—or make additional findings—and may amend the judgment accordingly."  Such motions may only be granted to "correct manifest errors of law or fact or to address newly discovered evidence or controlling case law."  *ATS Prods. Inc. v. Ghiorso*, Case No. 10-4880 BZ, 2012 WL 1067547, at *1 (N.D. Cal. Mar. 28, 2012) (citations omitted).  The moving party may not use a motion under Rule 52(b) "as a vehicle for a rehearing" nor as a way to "re-litigate facts and legal theories that have previously been rejected by the court." *Id.* (citations omitted).  Motions under rule 52(b) are "not [to] be granted if [they are] based on arguments that either were, or could have been, raised at any point prior to the entry of judgment." *PMI Mortg. Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, Case No. 02-1774-PJH, 2007 WL 1864780, at *2 (N.D. Cal. June 28, 2007) *aff'd*, 291 Fed. Appx. 40 (9th Cir. 2008).

#### B.   Discussion

Following the jury's verdict, the Court conducted a bench trial regarding the priority dates for the '844 and '731 patents, prosecution history estoppel, the patent eligibility of the '844 patent, and laches.   During the bench trial, the Court heard live testimony, received evidence and briefing, and found that (1) Finjan had not met its burden to show the priority date of the '844 patent is November 8, 1996 and therefore the presumptive invention date of the '844 patent is December 22, 1997; (2) the priority date of the '731 patent is November 6, 1997; (3) Finjan is not barred by prosecution history estoppel from asserting infringement under the doctrine of equivalents for the '633 patent and Blue Coat's prosecution history estoppel defense with respect to the '844, '863, and '780 patent is moot; and (4) Blue Coat had not met its burden to show that the '844 patent is invalid under 35 U.S.C. § 101.  Order Regarding Non-Jury Legal Issues, ECF 486.  Blue Coat moves to amend the Court's findings related to (1) the '731 patent's priority date, (2) whether there is patent prosecution history estoppel of the '633 patent, (3) whether the '844 patent is patent ineligible under 35 U.S.C. § 101, and (4) whether there is laches.  Mot. to Amend 1-10, ECF 500.

The Court has reviewed all of Blue Coat's arguments and finds Blue Coat has failed to establish any factual or legal grounds to support amending those findings.  A motion to amend findings should not be a means for re-litigating issues upon which the party did not prevail.  Blue Coat's 11 page motion contains nothing more than a rehashing of its original arguments made during the bench trial.   Accordingly, Blue Coat's motion to amend the Court's findings of fact and conclusions of law is DENIED.

## IV.    FINJAN'S MOTION FOR ATTORNEYS' FEES

Finjan argues that it is entitled to attorneys' fees based on Blue Coat's litigation conduct and tactics.  Mot. for Fees 5, ECF 491-4.  Blue Coat argues that this is not an exceptional case that warrants an award of attorneys' fees.  Under 35 U.S.C. § 285, a "court in exceptional cases may award reasonable attorney[s'] fees to the prevailing party."  In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014), the Supreme Court held "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  "'[T]here is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations we have identified.'" *Id*.

The Court finds the circumstances of this case and Blue Coat's conduct do not warrant an award of attorney's fees.  Blue Coat vigorously defended its position and the Court is not aware of any conduct by Blue Coat that makes this case exceptional.  Moreover, as the accused infringer, Blue Coat was obligated to defend against Finjan's numerous asserted patents and claims.  Blue Coat did not choose to bring this lawsuit, but once sued, defended itself in a determined manner.

## V.    FINJAN'S MOTION AMEND THE JUDGMENT TO INCLUDE ENHANCED DAMAGES AND PRE- AND POSTJUDGMENT INTEREST

Finjan seeks enhanced damages pursuant to 35 U.S.C. § 284 and pre- and post-judgment interest.  Mot., ECF 504-4.  Finjan argues that it is entitled to enhanced damages because Blue Coat intentionally copied its patents, did not have a good faith belief its patents were invalid or not infringed, and engaged in a vexatious litigation strategy.  *Id*. at 3-20.  Finjan also seeks

United States District Court
Northern District of California

United States District Court
Northern District of California

1   prejudgment interest at the prime rate compounded annually from the date it filed the complaint

2   and post-judgment interest at a rate equal to the weekly average 1-year constant maturity Treasury

3   yield.  *Id*. at 24-25.  Blue Coat argues that Finjan is not entitled to enhanced damages because it

4   did not claim willful infringement.  Opp. 2, ECF 513.  Blue Coat also argues that Finjan is not

5   entitled to pre-judgment interest because Finjan delayed in filing this lawsuit, but if pre-judgment

6   interest is awarded, it should be limited to the amount of damages prior to the entry of judgment,

7   to the amount originally requested for the '731, '633, and '968 patents, and reduced for the '844

8   patent.  *Id*. at 20-23.  Blue Coat also argues that pre-judgment interest should be awarded at the T-

9   Bill rate instead of the prime rate.  *Id*. at 24.  Finally, Blue Coat agrees with Finjan on the award of

10  post-judgment interest.  *Id*.

###         A.    Enhanced Damages

12      Under 35 U.S.C. § 284, in a case of infringement, courts "may increase the damages up to

13  three times the amount found or assessed."  The test for determining whether a case is exceptional

14  under § 284 previously came from the Federal Circuit's *en banc* decision in *In re Seagate*

15  *Technology, LLC*, 497 F.3d 1360 (2007).  On June 13, 2016, the Supreme Court rejected the

16  Seagate test as being inconsistent with the language of § 284.  *Halo Elecs., Inc. v. Pulse Elecs.,*

17  *Inc.*, --- U.S. ---, 2016 WL 3221515 (2016).  The Court found that § 284 "contains no explicit

18  limit or condition [and] the [use of the] word 'may,' clearly connotes discretion," *id*. at 8, and that

19  the *Seagate* test was "unduly rigid, and it impermissibly encumbers the statutory grant of

20  discretion to district courts," *id*. at 9.

21      *Halo* overruled *Seagate* and held that "[t]he sort of conduct warranting enhanced damages

22  has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate,

23  consciously wrongful, flagrant, or—indeed—characteristic of a pirate."  *Id*. at 8.  In other words,

24  while willfulness may support a finding of enhancement, *Halo* does not hold that willfulness is

25  necessary for enhanced damages.  The Supreme Court also cautioned that an award of enhanced

26  damages is not mandatory following a finding of egregious misconduct and instead, "courts

27  should continue to take into account the particular circumstances of each case in deciding whether

28  to award damages, and in what amount. Section 284 permits district courts to exercise their

discretion in a manner free from the inelastic constraints of the *Seagate* test." *Id.* at 11. *Halo* also established that enhanced damages are governed by a preponderance of the evidence standard. *Id.* at 12.

In determining whether this case presents egregious misconduct the Court must determine whether Blue Coat acted in a "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, or flagrant" manner. In *Read Corp. v. Portec, Inc.*, 970 F.3d 816, 826-27 (Fed. Cir. 1992), the Federal Circuit's enumerated eight factors that may guide an analysis of "the egregiousness of the defendant's conduct based on all the facts and circumstances." The *Read* factors include:

> (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) defendant's size and financial condition; (5) closeness of the case; (6) duration of defendant's misconduct; (7) remedial action by the defendant; (8) defendant's motivation for harm.

*Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006). In light of *Halo*, which clearly stated that district courts are not bound by any rigid formula or set of factors, the *Read* factors are now one set of guidelines courts can use to evaluate alleged misconduct, but are no longer the sole set of criteria. This Court finds the *Read* factors present useful guideposts in determining the egregious of the defendant's conduct, and will assess Blue Coat's conduct through those factors.

The *Read* factors do not support a finding of egregiousness misconduct. Factor 1— deliberate copying—weighs against a finding of egregious misconduct. Finjan argues that Blue Coat intentially copied the covered technology. Mot. 4, ECF 504-4. According to Finjan, Blue Coat shifted its corporate focus to security products in 2007 and began monitoring Finjan's offerings and then started copying Finjan's products. *Id.* at 4-6. As evidence, Finjan relies on documents showing that Blue Coat's employees discussed Finjan's products and capabilities. *Id.* Blue Coat argues that Finjan's evidence at most show there was competition between Finjan and Blue Coat but is not evidence that Blue Coat copied Finjan's products. Opp. 6-11, ECF 513. The

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Court agrees with Blue Coat and finds that Finjan's evidence is simply evidence of normal

2   business competition, perhaps fueled by the passion and the desire to beat the competition, and not

3   evidence of improper copying by Blue Coat.  In any competitive industry, businesses monitor and

4   discuss their competitors.  As a result, Finjan has not met its burden to show Blue Coat copied its

5   products and this factors weighs against a finding of misconduct.

6          Factors 2 and 3—any good faith belief that patents were invalid or not infringed and

7   infringer's behavior during litigation—weigh against enhancement.  Finjan argues that Blue Coat

8   engaged in a vexatious litigation strategy.  Mot. 7, ECF 504-4.  Blue Coat argues that it litigated

9   this case in compliance with all court scheduling orders and presented reasonable non-

10  infringement, invalidity, prosecution history estoppel, and laches defenses.  Opp. 11-17, ECF 513.

11  As the Court discussed in relation to Finjan's request for attorneys' fees, this was a hard fought

12  case but did not cross the line into improper conduct.  Although Finjan has presented some

13  evidence that Blue Coat generally knew of its patents, Finjan has not provided sufficient evidence

14  to show Blue Coat knew of the specific patents-in-suit prior to this lawsuit.  When this lawsuit was

15  filed, Blue Coat has reasonable good-faith non-infringement and invalidity defenses, they were not

16  rendered unreasonable because Finjan's prevailed at trial  As a result, Blue Coat had a good faith

17  belief that the patents were invalid or not infringed.

18         Factor 4—defendant's size and financial condition—is neutral.  Finjan argues that an

19  enhanced damages award of $120 million will not impact Blue Coat's financial condition because

20  Blue Coat grossed over $440 million in profit.  Mot. 21, ECF 504-4.  Blue Coat argues that an

21  award of $120 million would be disproportionate in light of its gross profit.  Opp. 17, ECF 513.

22  As framed by the parties, this factor is not relevant to determining the egregiousness of Blue

23  Coat's conduct.  Finjan is not relying on Blue Coat's size to argue that Blue Coat's large size

24  somehow enabled it to act egregiously.  Rather, Finjan's argument goes to the size of the enhanced

25  damages award should enhanced damages be appropriate in the first instance.  Since the Court

26  finds enhanced damages are not appropriate in this case, this factor not relevant and neutral.

27         Factor 5—closeness of the case—is neutral.  Both parties advanced reasonable positions

28  that were ultimately decided in Finjan's favor.  The fact the jury sided with Finjan over Blue Coat

1  does not negate the fact Blue Coat's positions survived summary judgment and reached a jury.

2  Accordingly, this factor is neutral.

3  Factor 6—the duration of infringement—is neutral.  Finjan argues that Blue Coat's

4  infringement has been going on since 2008 and Blue Coat continues to sell infringing products

5  today.  Mot. 19, ECF  504-4.  Blue Coat argues that Finjan limited its damages to those acts

6  occurring after August 28, 2013, and cannot now argue it deserves enhanced damages for

7  infringement prior to that time.  Opp. 18-19, ECF 513.  The Court agrees with Blue Coat that

8  Finjan cannot seek to achieve enhanced damages for infringement for which did not even seek

9  regular damages.  As to Blue Coat's continuing infringement, Blue Coat has filed post-judgment

10  motions and continues to challenge the jury verdict.  Thus, this factor weighs slightly in Finjan's

11  direction.

12  Factor 7—remedial action by the defendant—is neutral.  Finjan argues that Blue Coat

13  continues to sell infringing products and did not attempt to design around Finjan's patents.  Mot.

14  19-20, ECF 504-4.  Blue Coat responds that it did not engage in any remedial action because it

15  developed good faith non-infringement and invalidity defenses.  Opp. 12, ECF 524-24.  The lack

16  of remedial measures by Blue Coat is concerning but as Blue Coat continues to challenge the jury

17  verdict, this factor is neutral.

18  Factor 8—motivation for infringement—weighs against a finding of egregious misconduct.

19  Finjan argues that Blue Coat was driven by financial gain to copy its technology and infringe its

20  patent rights.  Mot. 20-21, ECF 504-4.  Blue Coat argues there is no evidence that it had a bad

21  faith motivation to harm Finjan.  Opp. 19, ECF 513.  The Court agrees with Blue Coat and finds

22  Finjan has not provided sufficient evidence to show Blue Coat was motivated financially to

23  infringe Finjan's patents.  This factor weighs against a finding of egregious misconduct.

24  In reviewing the *Read* factors and reviewing Blue Coat's conduct, the Court finds Blue

25  Coat has not engaged in egregious misconduct as described by *Halo*.  Thus, enhanced damages are

26  not warranted.

27  **B.     Pre- and Post-Judgement Interest**

28  Since the Court found Finjan did not unreasonably delay in bringing suit, *see supra* II.B,

United States District Court
Northern District of California

28

United States District Court
Northern District of California

1    the Court finds an award of pre-judgment interest is appropriate in this case.  Finjan's damages

2    award represents a lump-sum payment that would have been fully paid at the time of the

3    hypothetical negotiation.  Thus, the Court does not find persuasive Blue Coat's argument that pre-

4    judgment interest should be limited to the portion of the award representing damages occurring

5    prior to entry of judgment.  Opp. 20-21, ECF 513.  The purpose of pre-judgment interest is "to

6    compensate for the delay a patentee experiences in obtaining money he would have received

7    sooner if no infringement had occurred."  *Paper Converting Machine Co. v. Magna-Graphics*

8    *Corp.*, 745 F.2d 11, 23 (Fed. Cir. 1984).

9         As to the rate to be applied, Finjan asserts that it should be awarded pre-judgment interest

10   at the prime rate.  "Typically, Courts permit this where there is evidence that the plaintiff would

11   have been spared from borrowing money at the prime rate during the infringement period had the

12   infringer been paying royalties, and thus, prejudgment interest at the prime rate is necessary to

13   compensate for 'the forgone use of the money.'"  *Mars, Inc. v. Coin Acceptors, Inc.*, 513 F. Supp.

14   2d 128, 133 (D. N.J. May 22, 2007) (citations omitted).  Here, Finjan has not put forth evidence

15   that it borrowed any money during the infringement period at the prime rate.  As a result, the

16   Court finds the more appropriate approach is to utilize the T-Bill rate.  *See Laitram Corp. v. NEC*

17   *Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997) (affirming use of T-Bill rate where patent owner did not

18   provide any evidence that it borrowed money at a higher rate).  Whether to award simple or

19   compound interest is within the discretion of the district court.  *Lam Inc. v. Johns-Manville Corp.*,

20   718 F.2d 1056, 1066 (Fed. Cir. 1983).  According to *Chisum on* Patents, "most [courts] apply

21   some form of compounding."  Chisum, *Patents*, § 20.03 (collecting cases.  Thus, the Court will

22   allow compound prejudgment interest.  Finally, Finjan asks that interest be compounded annually

23   and Blue Coat does not offer an alternative suggestion.  The Federal Circuit has affirmed annual

24   compounding and the Court will adopt this approach.  Accordingly, the Court will apply the 52-

25   week T-Bill rate, compounded annually for pre-judgment interest.

26        Under 28 U.S.C. § 1961, the award of post-judgment interest is automatic and at a rate

27   equal to the weekly average 1-year constant maturity Treasury yield compounded annually.  28

28   U.S.C. § 1961.  Accordingly, the Court GRANTS Finjan's request for post-judgment interest.

**VI.    ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.   Blue Coat's motion for judgment as a matter of law is DENIED.

2.   Blue Coat's motion for a new trial and to amend the judgment is GRANTED IN PART AND DENIED IN PART.

3.   Blue Coat's motion to amend the findings of fact and conclusions of law is DENIED.

4.   Finjan's motion for attorney's fees is DENIED.

5.   Finjan's motion for enhanced damages, pre- and post-judgment interest is GRANTED IN PART AND DENIED IN PART.

6.   Finjan shall promptly submit a proposed amended/corrected judgment **on or before** July 25, 2016.  Finjan shall provide a copy to Blue Coat for review of the proposed amended/corrected judgment's adherence to this Order.

**IT IS SO ORDERED.**

Dated: July 18, 2016

_____
BETH LABSON FREEMAN
United States District Judge